SUSAN S. MUCK (CSB No. 126930)
smuck@fenwick.com
CATHERINE KEVANE (CSB No. 215501)
ckevane@fenwick.com
KATHERINE A. MARSHALL (CSB No. 327042)
kmarshall@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone:    415.875.2300
Facsimile:    415.281.1350

Attorney for Defendants Zuora, Inc.,
Tien Tzuo, and Tyler Sloat

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendant. | Case No.: 3:19-cv-03422-SI<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   April 3, 2020<br>Hearing Time:  10:00 a.m.<br>Dept.:            Courtroom 1, 17th Floor<br>Judge:           Hon. Susan Illston<br><br>Date Action Filed:  June 14, 2019 |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION TO DISMISS ................................................. 1

ISSUES TO BE DECIDED ........................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES .............................................. 1

I.      INTRODUCTION ........................................................................................... 1

II.     STATEMENT OF FACTS ............................................................................... 4

        A.     Zuora's Business Model and Products......................................... 4

        B.     Zuora's Growth Strategy.............................................................. 5

        C.     Following its Initial Public Offering, Zuora Experiences Strong Growth ............. 6

        D.     Parties and Claims........................................................................ 7

III.    PLAINTIFF IS REQUIRED TO MEET STRICT PLEADING STANDARDS ............ 7

IV.     PLAINTIFF FAILS TO PLEAD A FALSE OR MISLEADING STATEMENT ........... 9

        A.     Statements Regarding Zuora's Business Model And Products Are Not
               Actionable ..................................................................................... 9

        B.     Statements Regarding Zuora's Growth Strategy Are Not Actionable ............... 12

        C.     Statements Regarding RevPro Are Not Actionable ............................ 15

V.      PLAINTIFF FAILS TO ESTABLISH SCIENTER ........................................ 17

        A.     Plaintiff Fails to Identify Contemporaneous, Contradictory Information
               Known to Any Individual Defendant............................................ 18

        B.     Defendants' Post-Class Period Statements Negate Scienter................. 21

        C.     Defendants' Stock Sales Negate Scienter ................................... 22

        D.     Plaintiff's Remaining Generic Allegations Fail to Plead Scienter............... 24

        E.     Plaintiff's Allegations, Considered Holistically, Preclude Scienter ............... 24

VI.     CONCLUSION ............................................................................................. 25

FENWICK & WEST LLP
ATTORNEYS AT LAW

C{.small-caps}ASES

*Allison v. Brooktree Corp.*,
    999 F. Supp. 1342 (S.D. Cal. 1998) ...................................................................20

*Bao v. SolarCity Corp.*,
    2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ...........................................................19

*Bodri v. GoPro, Inc.*,
    252 F. Supp. 3d 912 (N.D. Cal. 2017) ...........................................................11, 15

*Brodsky v. Yahoo! Inc.*,
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) ..............................................................23

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. Align Tech., Inc.*,
    2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) .......................................................24

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
    880 F. Supp. 2d 1045 (N.D. Cal. 2012) ..............................................................23

*City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*,
    2019 WL 6877195 (N.D. Cal. Dec. 17, 2019) ....................................9, 11, 13, 14

*Gammel v. Hewlett-Packard Co.*,
    905 F. Supp. 2d 1052 (C.D. Cal. 2012) ..............................................................15

*Gompper v. VISX, Inc.*,
    298 F.3d 893 (9th Cir. 2002) ...............................................................................24

*In re Accuray, Inc. Sec. Litig.*,
    757 F. Supp. 2d 936 (N.D. Cal. 2010) ...........................................................18, 20

*In re Apple Computer Inc.*,
    127 F. App'x 296 (9th Cir. 2005) .......................................................................19

*In re Apple Computer Sec. Litig.*,
    243 F. Supp. 2d 1012 (N.D. Cal. 2002) ................................................................9

*In re Bare Escentuals, Inc. Sec. Litig.*,
    745 F. Supp. 2d 1052 (N.D. Cal. 2010) ..........................................................13, 14

*In re Cisco Sys. Inc. Sec. Litig.*,
    2013 WL 1402788 (N.D. Cal. Mar. 29, 2013) .................................................19, 22

*In re Copper Mountain Sec. Litig.*,
    311 F. Supp. 2d 857 (N.D. Cal. 2004) ................................................................16

*In re Cutera Sec. Litig.*,
    610 F.3d 1103 (9th Cir. 2010)..........................................................................9, 17

*In re ECOtality, Inc. Sec. Litig.*,
   2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ...............................................16

*In re Extreme Networks, Inc. Sec. Litig.*,
   2018 WL 1411129 (N.D. Cal. Mar. 21, 2018) ................................................24

*In re Facebook, Inc. Sec. Litig.*,
   2019 WL 4674347 (N.D. Cal. Sept. 25, 2019) ...............................................17

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..........................................................22

*In re Infonet Servs. Corp. Sec. Litig.*,
   310 F. Supp. 2d 1080 (C.D. Cal. 2003) ..........................................................14

*In re Intel Corp. Sec. Litig.*,
   2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) ............................................9, 16

*In re Leapfrog Enter., Inc. Sec. Litig.*,
   200 F. Supp. 3d 987 (N.D. Cal. 2016) ...........................................................19

*In re LeapFrog Enters., Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (N.D. Cal. 2007) ..........................................................12

*In re Mellanox Techs. Ltd. Sec. Litig.*,
   2014 WL 12650991 (N.D. Cal. Mar. 31, 2014) ..............................................13

*In re Nimble Storage, Inc. Sec. Litig.*,
   2016 WL 7209826 (N.D. Cal. Dec. 9, 2016) ...................................................20

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
   2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) .................................................17

*In re OmniVision Techs., Inc. Sec. Litig.*,
   937 F. Supp. 2d 1090 (N.D. Cal. 2013) .....................................................11, 15

*In re Read-Rite Corp. Sec. Litig.*,
   335 F.3d 843 (9th Cir. 2003) ...................................................................10, 21

*In re Restoration Robotics, Inc. Sec. Litig.*,
   2019 WL 5295059 (N.D. Cal. Oct. 18, 2019) ............................................10, 12

*In re Rigel Pharms., Inc. Sec. Litig.*,
   697 F.3d 869 (9th Cir. 2012) ...........................................................................7

*In re Siebel Sys., Inc. Sec. Litig.*,
   2005 WL 3555718 (N.D. Cal. Dec. 28, 2005) ................................................10

*In re Silicon Graphics Inc. Sec. Litig.*,
   183 F.3d 970 (9th Cir. 1999) .....................................................................22, 23

*In re SolarCity Corp. Sec. Litig.*,
   274 F. Supp. 3d 972 (N.D. Cal. 2017) ...........................................................16

FENWICK & WEST LLP
ATTORNEYS AT LAW

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
    160 F. Supp. 2d 1059 (N.D. Cal. 2001) ...............................................................10

*In re Stac Elecs. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ...............................................................................14

*In re Syntex Corp. Sec. Litig.*,
    855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996)................13

*In re Ubiquiti Networks Inc. Sec. Litig.*,
    33 F. Supp. 3d 1107 (N.D. Cal. Mar. 26, 2014), *aff'd in relevant part*, 669 F.
    App'x 878 (9th Cir. 2016)......................................................................................22

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002)...............................................................................23

*In re Violin Memory Sec. Litig.*,
    2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)..............................................8, 12, 17

*Kelly v. Elec. Arts Inc.*,
    2015 WL 1967233 (N.D. Cal. 2015) (Illston, J.)......................................9, 21, 22

*Mallen v. Alphatec Holdings, Inc.*,
    861 F. Supp. 2d 1111 (S.D. Cal. 2012), *aff'd sub nom.*
    *Fresno Cty. Emps. Ret. Ass'n v. Alphatec Holdings, Inc.*,
    607 F. App'x 694 (9th Cir. 2015) .........................................................................25

*McCasland v. FormFactor Inc.*,
    2009 WL 2086168 (N.D. Cal. July 14, 2009) (Illston, J.) .....................................21

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
    540 F.3d 1049 (9th Cir. 2008)...............................................................7, 18, 23, 24

*Monachelli v. Hortonworks, Inc.*,
    225 F. Supp. 3d 1045 (N.D. Cal. 2016) (Illston, J.)...................................... *passim*

*No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*,
    320 F.3d 920 (9th Cir. 2003)...................................................................................8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015)..............................................................................7, 8, 13, 16

*Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
    774 F.3d 598 (9th Cir. 2014)....................................................................................9

*Padnes v. Scios Nova Inc.*,
    1996 WL 539711 (N.D. Cal. Sept. 18, 1996) .......................................................20

*Paracor Fin, Inc. v. Gen. Elec. Capital Corp.*,
    96 F.3d 1151 (9th Cir. 1996)..................................................................................25

*Park v. GoPro, Inc.*,
    2019 WL 1231175 (N.D. Cal. Mar. 15, 2019).......................................................17

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012), *aff'd*, 759 F.3d 1051
  (9th Cir. 2014)..................................................................................................18

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)............................................................................12

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001).........................................................................8, 20

*Schuster v. Symmetricom, Inc.*,
  2000 WL 33115909 (N.D. Cal. Aug. 1, 2000)....................................................23

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008)...............................................................................................7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007).........................................................................................8, 18

*Tripp v. Indymac Fin. Inc.*,
  2007 WL 4591930 (C.D. Cal. Nov. 29, 2007).....................................................23

*Veal v. LendingClub Corp.*,
  2019 WL 5698072 (N.D. Cal. Nov. 4, 2019)...........................................11, 13, 15

*Webb v. SolarCity Corp.*,
  884 F.3d 844 (9th Cir. 2018).........................................................................8, 24

*Wochos v. Tesla, Inc.*,
  2018 WL 4076437 (N.D. Cal. Aug. 27, 2018)....................................................14

*Wochos v. Tesla, Inc.*,
  2019 WL 1332395 (N.D. Cal. Mar. 25, 2019)......................................................8

*Wozniak v. Align Tech., Inc.*,
  2011 WL 2269418 (N.D. Cal. June 8, 2011) ......................................................19

*Wozniak v. Align Tech., Inc.*,
  850 F. Supp. 2d 1029 (N.D. Cal. 2012) .............................................................14

*Yourish v. Cal. Amplifier*,
  191 F.3d 983 (9th Cir. 1999)...............................................................................21

*Zeid v. Kimberley*,
  930 F. Supp. 431 (N.D. Cal. 1996) ....................................................................17

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009)......................................................................8, 18, 24

**STATUTES AND RULES**

Private Securities Litigation Reform Act of 1995.............................................1, 7, 8

FENWICK & WEST LLP
ATTORNEYS AT LAW

Securities and Exchange Act of 1934
    Section 10(b), 15 U.S.C. § 78j(b) ............................................................... *passim*
    Section 20(a), 15 U.S.C. § 78t(a) ................................................................1, 7, 25
    Section 21D(b)(1)(B), 15 U.S.C. § 78u-4(b)(1)(B) .........................................7
    Section 21E(i)(1)(A), 15 U.S.C. § 78u-5(i)(1)(A) ........................................16
    Section 21E(c)(1)(A)(i), 15 U.S.C. § 78u-5(c)(1)(A)(i) ..........................8, 17
    Section 21E(i)(1)(C), 15 U.S.C. § 78u-5(i)(1)(C) ........................................16
    Section 21E(i)(1)(D), 15 U.S.C. § 78u-5(i)(1)(D) ........................................16

Federal Rule of Civil Procedure
    Rule 9(b) ........................................................................................................1, 7
    Rule 12(b)(6).......................................................................................................1

<u>**NOTICE OF MOTION AND MOTION TO DISMISS**</u>

PLEASE TAKE NOTICE that on April 3, 2020, at 10:00 a.m., in the courtroom of the Honorable Susan Illston, defendants Zuora, Inc. ("Zuora" or "Company"), Tien Tzuo and Tyler Sloat (collectively, "defendants") will and hereby do move to dismiss with prejudice all claims asserted against them in plaintiff's Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("CAC"). Defendants move pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds that plaintiff fails to state a claim under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"). The motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, defendants' Request for Judicial Notice, Declaration of Katherine A. Marshall ("Marshall Decl.") and exhibits,[1] the [Proposed] Order, pleadings and records on file, arguments of counsel, and such other matters properly before the Court.

<u>**ISSUES TO BE DECIDED**</u>

1.    Should plaintiff's Section 10(b) claim against all defendants be dismissed because plaintiff fails to plead particularized facts demonstrating any actionable misstatement or omission, and because it fails to plead particularized facts creating a strong inference of scienter?

2.    Should plaintiff's Section 20(a) claim against Messrs. Tzuo and Sloat be dismissed because plaintiff fails to plead an underlying violation of Section 10(b)?

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.    INTRODUCTION

In the twenty-one months since its initial public offering ("IPO"), Zuora has experienced double-digit revenue growth and met or exceeded its guidance in every single quarter. On May 30, 2019, just as it had in every other quarter, Zuora announced results that were in line with its earlier guidance, with subscription revenue growing by 32 percent year-over-year. In contrast to other quarters, however, the Company also announced that it was slightly lowering its forward-looking guidance and forecast for the remainder of 2020 to take into account two "headwinds":

---

[1] All references in the brief to exhibits (*e.g.*, "Ex. A") relate to exhibits to the Marshall Decl.

(1) sales execution challenges related to lower productivity from newer sales representatives; and

(2) technical challenges associated with the work required to integrate data systems for the small

percentage of the Company's customers who purchased both Zuora's Billing product ("Billing")

and its RevPro product ("RevPro").  Ex. A at 2.  Following this announcement, the stock price

declined, and plaintiff reflexively filed suit.

Plaintiff does not allege that Zuora's financial guidance was false or lacked a reasonable

basis.  Nor does plaintiff contest that Zuora accurately reported all of its financial results and met

or exceeded its guidance in every quarter of the "Class Period" – April 12, 2018 through May 30,

2019.  Indeed, plaintiff concedes that Zuora's overall revenue grew more than 20% during the

Class Period, that its subscription revenue grew by more than 30% each quarter, and that even

after May 30, 2019, Zuora continued to exceed its guidance with double-digit revenue growth.

Instead, plaintiff latches on to the Company's May 30, 2019 statement that the technical

work to integrate Billing and RevPro was "taking longer than expected" (¶ 12)[2] and tries to

manufacture a securities fraud claim out of Zuora marketing slogans, catchphrases and

promotional tweets in an effort to portray Zuora as having promised that its two flagship products

could be effortlessly integrated – a representation that appears nowhere in Zuora's public

statements.  Zuora's public filings are replete with warnings about difficulties inherent in

integrating a new subscription-based revenue recognition system at customers who had

previously used conventional enterprise resource planning software.  And although plaintiff twists

the May 30 disclosure to allege that the same technical challenges resulted in sales execution

issues and disappointing outlook (¶ 1), nowhere does plaintiff link product integration challenges

to sales execution.  In short, plaintiff alleges that Zuora's true statements regarding its business

model, products, growth strategy, and demand were somehow misleading because the Company

failed to disclose difficulties in integrating two standalone products, Billing and RevPro.

Plaintiff's attempt to convert generalized statements about the Company's business and

strategy into securities fraud fails for at least three reasons.  ***First***, all of the statements plaintiff

identifies as misleading are either inactionable statements of corporate optimism or forward-

_____

[2] All references in the brief to paragraph numbers refer to the paragraph numbers of the CAC.

FENWICK & WEST LLP
ATTORNEYS AT LAW

looking statements protected from liability by the "safe harbor" or bespeaks caution doctrine.

**Second**, plaintiff does not plead a single contemporaneous fact showing that any of the actual statements were false or misleading at the time that they were made, much less that any defendant knew them to be so. Nor can it. Nothing in the statements speaks to the Company's ability to integrate Billing and RevPro. And Zuora expressly advised investors of the risks plaintiff claims were concealed: that Zuora may encounter difficulties integrating products of acquired companies, that Zuora lacked experience selling RevPro and was "still determining how to best market, price, and support adoption" of Rev Pro, that deployment of the Company's products was complex, lengthy and might not be successful, and that any unexpected difficulties in deploying Zuora products could lead to a loss or delay in revenue or inability to generate revenue from selling additional products or services. Ex. B at 22; *see generally* risk factors at Exs. B through F.

**Third**, plaintiff fails to satisfy its burden of pleading ***particularized contemporaneous facts*** giving rise to an inference of scienter. Plaintiff relies almost exclusively on vague and conclusory anecdotes from four confidential witnesses (CW's), not one of whom is alleged to have had any contact with Mr. Tzuo or Mr. Sloat, much less any personal knowledge of what they knew and when. No CW offers any specific dates, meetings or details showing that Mr. Tzuo or Mr. Sloat knew their statements were false or misleading. In short, the CW allegations are precisely the sort of vague, speculative and unsupported conjecture that courts routinely reject as insufficient to raise an inference of scienter.

Plaintiff's other scienter theories actually negate scienter. The CAC points to "Senior Executives' insider sales," (¶ 248) but Mr. Tzuo – one of Zuora's largest shareholders – sold no stock during the Class Period, and Mr. Sloat, who retained the majority of his holdings, only sold shares pursuant to a non-discretionary 10b5-1 plan. Plaintiff argues that the statements by Mr. Tzuo on May 30, 2019 describing the headwinds facing the Company going forward are admissions that earlier statements were fraudulent. But nothing in the CAC raises an inference that Mr. Tzuo or Mr. Sloat concealed knowledge of the RevPro integration or sales execution headwinds prior to May 30, 2019; to the contrary, the Company met its prior financial guidance, negating any inference that such headwinds existed earlier. The far more plausible inference is

that Zuora determined that the integration of RevPro would be more difficult than anticipated and that new sales employees would need additional time to become fully productive and so reduced its forward-looking guidance accordingly. Defendants' motion to dismiss should be granted.

## II.     STATEMENT OF FACTS

### A.     Zuora's Business Model and Products

Zuora is a publicly-traded enterprise software company headquartered in Silicon Valley that provides cloud-based software for companies with a subscription business model. Ex. B at 1, 6. Mr. Tzuo co-founded Zuora in 2007 and is its Chief Executive Officer and Chairman of the Board of Directors. ¶ 24. Mr. Sloat is Zuora's Chief Financial Officer. ¶ 25.

On April 12, 2018, Zuora completed its IPO as one of the first enterprise software companies to provide software solutions for the emerging subscription economy. Ex. B at 2. Zuora's cloud-based solution consists of three components: (1) the Zuora Central Platform; (2) Zuora Billing, RevPro, and add-on products; and (3) an application marketplace. *Id.* at 107-08.

The Zuora Central Platform "acts as an intelligent subscription management hub, allowing customers to orient order-to-cash products around it to create a dynamic order to cash process designed specifically for subscription business models." *Id.* at 107. Customers use the Central Platform to create pricing packages, order and payment engines, accounting systems and other modules for subscription-based businesses. *Id.* In addition to the Central Platform, Zuora offers products to address aspects of a subscription business model, from receipt of customer orders to revenue recognition. Its two flagship products are Billing, which handles subscription billing, and RevPro,[3] which automates revenue recognition. Billing and RevPro are sold separately. ¶¶ 42, 44. Importantly, during the Class Period, fewer than 10% of Zuora's customers purchased both Billing and RevPro. *See* ¶ 211. Finally, the application marketplace offers industry-specific tools and third-party applications that extend Zuora's capabilities for its customers.

As Zuora explained, "Because of the transformative nature of the shift to subscription business models, especially in larger organizations, the initial selling process can be lengthy and

---

[3] Zuora began selling RevPro after its acquisition of Leeyo Software, Inc. ("Leeyo") in May 2017. RevPro is a revenue recognition automation solution that enables customers to recognize revenue in accordance with ASC 606, a new accounting standard as of January 2018. *Id.* at 22.

FENWICK & WEST LLP
ATTORNEYS AT LAW

complex" and "projects usually involve integrating [Zuora's product] with the customers' other business applications." Ex. B at 68-69. As a result, it typically takes between three to twelve months to "deploy, configure, and optimize" the products on a customer's system. *Id.* at 74. "[U]nexpected complexities or delays associated with deployment" could impact Zuora's performance and "lead a customer to not ultimately deploy our solution." *Id.* at 72.

## B. Zuora's Growth Strategy

As described in the Registration Statement, Zuora's growth strategy included new customer acquisition and expanding relationships with existing customers, among other things:

> New Customer Acquisition. Our two leading products, Zuora Billing and Zuora RevPro, attract new customers for two very distinct needs in the Subscription Economy—flexible subscription billing and revenue recognition automation. …
>
> Expand Relationships with Existing Customers. Once we acquire customers, we have multiple ways to expand our footprint and drive sustainable growth with them. These include increasing transaction volume and upsells and cross-sells with additional products and services.

Ex. B at 106. Zuora cautioned investors of risks to its growth strategy, including that:

> *If our existing customers do not expand their use of our solution over time or do not renew their subscriptions, our revenue may grow more slowly than expected, may not grow at all, or may decline*. …
>
> *A customer's failure to deploy our solution after it enters into a subscription agreement with us, or the incorrect or improper deployment or use of our solution could result in customer dissatisfaction and negatively affect our business, operating results, financial condition, and growth prospects.*
>
> *Our solution is deployed in a wide variety of technology environments and into a broad range of complex workflows. We believe our future success will depend in part on our ability to increase both the speed and success of our deployments* … *If we or our third-party partners are unable to deploy our solution successfully, or unable to do so in a timely manner and, as a result, customers do not utilize our solution, we would not be able to generate future revenue from such customers based on transaction or revenue volume and the upsell of additional products and services, and our future operating results could be adversely impacted.* In addition, customers may also seek refunds of their initial subscription fee. Moreover, customer perceptions of our solution may be impaired, our reputation and brand may suffer, and customers may choose not to renew or expand their use of our solution.

*Id.* at 16, 18 (emphasis added).

Zuora also cautioned that the market for RevPro was "rapidly evolving as a result of the effectiveness of ASC 606, *which makes it difficult to forecast adoption rates and demand for*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1 ***this product***, and could have a material adverse effect on our business and operating results." *Id.*

2 at 22 (emphasis added). The Registration Statement went on to explain additional risks that could

3 impact RevPro, including the lack of sales experience with respect to RevPro and uncertainty as

4 to whether "RevPro will achieve and sustain high levels of demand and market acceptance." *Id.*

5     **C.**    **Following its Initial Public Offering, Zuora Experiences Strong Growth**

6 From its IPO and throughout the Class Period, Zuora met or exceeded guidance in ***every***

7 ***quarter*** and consistently met its expected growth rate of 25% to 30% for subscription revenue:

| *Period* | *Guidance/Actuals[4]* | | *Growth* |
|---|---|---|---|
| Q1 2019 | Total Revenue: N/A | **$51.7m** | 60% |
| | Sub. Revenue: N/A | **$36.1m** | 39% |
| Q2 2019 | Total Revenue: $53.5m-$54.5m | **$57.8m** | 47% |
| | Sub. Revenue: $38.0m-$38.5m | **$41.5m** | 44% |
| Q3 2019 | Total Revenue: $58.3m-$59.3m | **$61.6m** | 33% |
| | Sub. Revenue: $42.0m-$42.5m | **$44.5m** | 43% |
| Q4 2019 | Total Revenue: $62.3m-$63.3m | **$64.1m** | 29% |
| | Sub. Revenue: $45.0m-$45.5m | **$46.7m** | 35% |
| FY 2019 | Total Revenue: $233.4m-234.4m[5] | **$235.2m** | |
| | Sub. Revenue: $167.1m-$167.6m | **$168.8m** | |
| Q1 2020 | Total Revenue: $63.5m-$64.5m | **$64.1m** | 22% |
| | Sub. Revenue: $46.0m-$46.5m | **$47.3m** | 32% |

16 On May 30, 2019, the last day of the Class Period, Zuora announced that it had continued

17 its unbroken streak of robust growth and met the Company's guidance near the top of the range.

18 Exs. J, K. However, Zuora explained that it had encountered two distinct execution headwinds

19 during the first quarter related to: (1) lower productivity from newer sales representatives; and

20 (2) the technical work to complete integration for the small set of Billing customers who also

21 purchased RevPro. Ex. A at 2.

22 As a result, Zuora tempered expectations going forward, slightly lowering its forecast for

23 total revenue for the remainder of fiscal 2020 from a range of $289 to $293.5 million to a range of

---

[4] *See* Exs. G, H, I, J, K. Zuora's fiscal year extends from February 1 to January 31 of a given year. Q1 ends April 30, Q2 ends July 31, Q3 ends October 31, and Q4 ends January 31. Revenue growth is expressed as a percentage of growth as compared with the previous year. Figures for Q1 2020 reflect guidance under ASC 606, effective February 1, 2019.

[5] The Company issued initial guidance for FY 2019 on May 31, 2018 and subsequently revised it upward on August 30, 2018 and again on November 29, 2018, landing at $233.4-$234.4M for total revenue and $167.1-$167.6M for subscription revenue. *See* Exs. G, H, I.

FENWICK & WEST LLP
ATTORNEYS AT LAW

$268 to $278 million, a change of less than 8%.  Exs. J, K.  Zuora went on to exceed its guidance for both Q2 and Q3 2020, reporting year-over-year growth for subscription revenue of 24% and 25% and increasing its revenue guidance to a range of $276.7 to $278.2 million.  Exs. L, M.

### D.  Parties and Claims

On June 14, 2019, the first securities fraud suit was filed against Zuora, and on November 8, 2019, plaintiff filed its CAC, which alleges false statements and omissions from April 12, 2018 (the date of the IPO) through May 30, 2019 (the date Zuora announced Q1 2020 results and its revised fiscal year 2020 guidance).  ¶¶ 1-16.  Plaintiff alleges violations of Section 10(b) of the 1934 Act and Rule 10b-5 thereunder against Zuora and Messrs. Tzuo and Sloat, and violations of Section 20(a) of the 1934 Act against Messrs. Tzuo and Sloat as "control persons."  ¶¶ 274-89.

Virtually all of the statements challenged by plaintiff are generalized descriptions of Zuora's business model and products.  *See* ¶¶ 27-38, 48-57, 121-136, 160-68, 171-84, 189-94, 202, 214, 216-17, 225-26, 231.  Plaintiff also challenges statements describing Zuora's "cross selling" growth strategy (¶¶ 186-87, 197-98, 215, 232-33) and future demand for RevPro (¶¶ 195-96, 203-11, 220-22, 227-28).

## III.  PLAINTIFF IS REQUIRED TO MEET STRICT PLEADING STANDARDS

Section 10(b) requires: (1) a material misstatement or omission; (2) scienter; (3) purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  Each element must be supported by particularized facts satisfying Rule 9(b) and the "formidable pleading requirements" of the PSLRA.  *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).  Among other things, the PSLRA requires plaintiff to identify each allegedly misleading statement and "the reason or reasons why [it] is misleading" (15 U.S.C. § 78u-4(b)(1)(B)), including specific contemporaneous facts showing the statement was false when made.  *Metzler*, 540 F.3d at 1071-72; *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 876 (9th Cir. 2012).

Alleging that material facts were omitted from a statement to investors "is no small task for an investor."  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1332 (2015).  An omission is only actionable if it "affirmatively create[s] an impression

FENWICK & WEST LLP
ATTORNEYS AT LAW

of a state of affairs that differs in a material way from the one that actually exists." *Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1054 (N.D. Cal. 2016) (Illston, J.). Plaintiff cannot rely "merely [on] conclusory assertions." *Omnicare*, 135 S. Ct. at 1332. Instead, plaintiff must plead "specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001).

The PSLRA creates a two-pronged "safe harbor" precluding liability for forward-looking statements. 15 U.S.C. § 78u-5(c)(1)(A)(i). The protection extends to "any statement regarding (1) financial projections, (2) plans and objectives of management for future operations, (3) future economic performance, or (4) the assumptions 'underlying or related to' any of these issues." *Wochos v. Tesla, Inc.*, 2019 WL 1332395, at *3 (N.D. Cal. Mar. 25, 2019) (quoting *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003)). Under the first prong, a statement identified as forward-looking and "accompanied by meaningful cautionary statements" is not actionable. *Monachelli*, 225 F. Supp. 3d at 1055. Even absent such language, under the second prong, a statement is not actionable if "plaintiffs fail to establish that the statement was made with actual knowledge . . . that the statement was false or misleading." *Id.* Forward-looking statements appearing in a Registration Statement are protected by the similar "bespeaks caution" doctrine to the extent the statements are accompanied by meaningful risk disclosures. *See In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *12-13 (N.D. Cal. Oct. 31, 2014) ("Registration Statement's extensive and specific disclosures" mandated finding that "no reasonable investor would have considered any of Plaintiffs' alleged misstatements or omissions material").

Plaintiff must also establish a "strong inference" of scienter as to each defendant – that misstatements were made with an intent to defraud or deliberate recklessness tantamount to actual intent. *Webb v. SolarCity Corp.*, 884 F.3d 844, 850-51 (9th Cir. 2018); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991-92 (9th Cir. 2009); *Monachelli*, 225 F. Supp. 3d at 1056. The inference "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues &*

FENWICK & WEST LLP
ATTORNEYS AT LAW

1  *Rights, Ltd.*, 551 U.S. 308, 309 (2007); *Monachelli*, 225 F. Supp. 3d at 1056.

2  **IV.    PLAINTIFF FAILS TO PLEAD A FALSE OR MISLEADING STATEMENT**

3      **A.    Statements Regarding Zuora's Business Model And Products Are Not
            Actionable**

4

5          Virtually every statement plaintiff challenges as "false and misleading" is a high-level

6  description of Zuora's overall business model or products contained in the background sections of

7  the Company's SEC filings or marketing.  For example, plaintiff assails statements that Zuora's

8  solution was "architected specifically for dynamic, recurring subscription business models";

9  "functions as an intelligent subscription management hub that automates and orchestrates the

10 entire subscription order-to-cash process, including billing and revenue recognition"; is the "first

11 and only complete subscription order-to-revenue solution on the market"; and "is the new system

12 of record for subscription businesses."  *See* ¶¶ 171-74, 178, 180, 189, 235, 237.[6]  Plaintiff's

13 allegations do not come close to stating a claim.

14         ***First***, generalized statements regarding a company's business are either inactionable

15 puffery, too vague to be actionable, or both.  *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111

16 (9th Cir. 2010); *In re Intel Corp. Sec. Litig.*, 2019 WL 1427660, at *9 (N.D. Cal. Mar. 29, 2019)

17 (statements that products provide a "robust multifactor verification solution," are "optimized

18 particularly for data protection," and "optimize interconnectivity with a focus on speed without

19 compromising data security" are vague and immaterial as a matter of law); *Kelly v. Elec. Arts*

20 *Inc.*, 2015 WL 1967233, at *7-8 (N.D. Cal. 2015) (Illston, J.) (statement that company

21 "derisk[ed]" its technology too vague to be actionable); *In re Apple Computer Sec. Litig.*, 243 F.

22 Supp. 2d 1012, 1018 (N.D. Cal. 2002) (statements promoting products as "drop dead,"

23 "incredibly functional," and the "whole thing is perfect" are nonactionable); *Or. Pub. Emps. Ret.*

24 *Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 606-07 (9th Cir. 2014) (statements describing enrollment

25 and revenue growth as "significant events" are inactionable); *City of Sunrise Firefighters'*

26

27 [6] Plaintiff points to similar language in Zuora's SEC filings (¶¶ 172, 178-84, 189, 235, 237), press
   releases (¶¶ 171, 174, 176), earnings call and investor conference transcripts (¶¶ 191-94, 202,
28 214, 216-17, 225-26, 231); website (¶¶ 160, 162), Twitter (¶ 166), and Facebook account (¶ 168).

FENWICK & WEST LLP
ATTORNEYS AT LAW

*Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *9 (N.D. Cal. Dec. 17, 2019) (dismissing statements regarding improved products and services as nonactionable puffery); *In re Restoration Robotics, Inc. Sec. Litig.*, 2019 WL 5295059, at *8 (N.D. Cal. Oct. 18, 2019) (generic phrase like "comprehensive" is too vague to be actionable); *In re Siebel Sys., Inc. Sec. Litig.*, 2005 WL 3555718, at *3 (N.D. Cal. Dec. 28, 2005) (dismissing allegation regarding vague statement promoting "highly accurate forecasting tool"). Such expressions of corporate optimism are so vague that no reasonable investor would rely on them when considering the total mix of available information. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1069 (N.D. Cal. 2001).

*Second*, even if these statements were actionable – and they are not – plaintiff fails to show how the statements were false. Plaintiff does not dispute, for example, that customers *can* "automate the entire customer lifecycle from a single platform" or that Zuora *was designed* "specifically for dynamic, recurring subscription models." Nor does plaintiff dispute that Zuora offered products that covered the "complete subscription order-to-revenue" process or that Zuora replaced home-grown systems for its customers and became the "system of record."

Instead, plaintiff claims that these general statements about the Company's overall business model were misleading because "customers using the Zuora Central Platform, together with Zuora Billing and Zuora RevPro, were unable to integrate the data between two models [RevPro or Billing] through automation." *See, e.g.*, ¶ 161. But even if those bare conclusions were sufficient to plead the existence of "adverse undisclosed facts" at the time of any of the challenged statements – and they are not – they cannot state a claim because they do not contradict the challenged statements. *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 848 (9th Cir. 2003) (requiring plaintiff to plead particularized facts that are "contradictory or necessarily inconsistent with the allegedly false public statements"); *Monachelli*, 225 F. Supp. 3d at 1054-55 (plaintiff failed to plead falsity where allegedly undisclosed facts, even if taken as true, did not contradict public statements).

In fact, *none* of the generalized statements regarding Zuora's business model or products challenged by plaintiff mentions integration of Billing and RevPro; only a handful even mention

RevPro at all.[7]  Nor can they be read "fairly and in context" as representations that Billing and RevPro could be integrated through "automation," much less that integration would be "seamless" or "concurrent."  *Bodri v. GoPro, Inc.*, 252 F. Supp. 3d 912, 924 (N.D. Cal. 2017) ("A statement is misleading only if a reasonable investor, reading [it] fairly and in context, would be misled").  For example, nothing in the admittedly accurate representation that Zuora Central operated from a "central platform" or "subscription management hub" could be fairly understood as a representation that the two distinct products, Billing and RevPro, were themselves fully integrated or that deployment of both products together would not require significant work.  *See Veal v. LendingClub Corp.*, 2019 WL 5698072, at *12 (N.D. Cal. Nov. 4, 2019) (statement not actionable where "the reasons Plaintiffs offer as to why many of the statements are false or misleading bear no connection to the substance of the statements"); *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1099-1100 (N.D. Cal. 2013) (attempt to turn general statements into representations about a specific product "simply reflects the 'false deductions' made by lead plaintiffs, not the false statements made by defendants").[8]

Moreover, plaintiff ignores the Company's express admonitions that deploying Zuora products was complex and lengthy, that customers might "not ultimately deploy our solution" for several reasons "including unexpected complexities or delays associated with deployment," and that "incorrect or improper deployment or use of our solution could result in customer dissatisfaction and negatively affect our business, operating results, financial condition, and growth prospects."  Ex. B at 18, 72; *see, e.g.*, Ex. C at 36, 44; Ex. D at 40, 46; Ex. E at 38, 44; Ex. F at 11, 18, 42.  The Company also disclosed that its solution is deployed "into a broad range of complex workflows," and that the Company's "future success" would "depend in part on [Zuora's] ability to increase both the speed and success of our deployments, by . . . increasing our

---

[7] Because none of the statements spoke to the integration of Billing and RevPro, plaintiff cannot establish any independent duty to disclose alleged complications regarding that integration.  *See Oracle*, 2019 WL 6877195, at *12 (absent affirmative representation on the specific subject matter plaintiff alleges was omitted, there is no "independent obligation to disclose").

[8] Even with respect to the small handful of statements that mention RevPro, not one mentions integration, and none is anything other than a straightforward description of the product, which plaintiff does not and cannot plead is false.  *See* Sec. IV.C.

FENWICK & WEST LLP
ATTORNEYS AT LAW

ability to integrate into large-scale, complex technology environments." Ex. B at 18. These
warnings defeat any claim that Zuora conveyed a "misleading impression" that deployment and
integration of Billing and RevPro together would be "seamless" or "concurrent." *See Violin
Memory*, 2014 WL 5525946, at *12-13.

### B. Statements Regarding Zuora's Growth Strategy Are Not Actionable

Plaintiff's assertions regarding Zuora's growth strategy are equally unavailing. Like
many companies, Zuora aimed to grow, in part, through expanding relationships with existing
customers by "increasing transaction volume and upsells and cross-sells with additional products
and services." Ex. B at 106. Zuora explained that this could occur in multiple ways, including
"upgrad[ing] to a more robust edition of the *Zuora Central Platform*," subscribing "to one or
more of our additional products," increasing "committed volume amounts" and for "Customers
that started with *Zuora Billing or Zuora RevPro*… subscrib[ing] to the other flagship product."
*Id.* at 69-70. Plaintiff's attempt to formulate a securities claim based on these common,
unremarkable statements fails for multiple independent reasons.

*First*, as with the other challenged statements, discussions of corporate strategy such as
increasing revenue by "upselling" or "cross-selling" are inactionable as a matter of law. *See
Restoration Robotics*, 2019 WL 5295059, at *8 ("our *goal* is to expand commercialization" by
"driv[ing] increased utilization …working collaboratively with our physician customers" is non-
actionable puffery); *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060
(9th Cir. 2014) ("opportunity for system placement ... was 'still very, very large'" and "there is
potential for growth in the [product] market" inactionable puffery); *In re LeapFrog Enters., Inc.
Sec. Litig.*, 527 F. Supp. 2d 1033, 1050 (N.D. Cal. 2007) (statement that "we continue to make
strong growth in supply chain" does not give rise to a securities fraud claim); *Monachelli*, 225 F.
Supp. 3d at 1055 (general statements of optimism are not actionable).

*Second*, plaintiff fails to show how these growth strategy statements were false. Although
plaintiff avers that "the described method for revenue growth was not viable or sustainable"
(¶ 188), plaintiff's "burden [i]s to show falsity, not inadequacy" of the Company's stated strategy.
*See Restoration Robotics*, 2019 WL 5295059, at *11. Plaintiff does not plead facts showing that,

FENWICK & WEST LLP
ATTORNEYS AT LAW

at the time of the challenged statements, the "growth strategy" was not "viable or sustainable," nor could it given Zuora's uncontested financial results.[9]  *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1094 (N.D. Cal. 1994) (no securities fraud where "predictions proved to be accurate"), *aff'd*, 95 F.3d 922 (9th Cir. 1996). [10]

Nor is the claim saved by plaintiff's assertion, created out of whole cloth, that "the integration failure between Zuora's flagship products was resulting in severe sales execution issues, reduced upsell opportunities, and diminished demand for Zuora Central and other homegrown products."  ¶ 188.  Zuora described the sales execution issue as a distinct "headwind" and plaintiff cites *no* witness, document, or other basis for concluding the two were linked.  Nor can plaintiff reconcile its assertion with Zuora's actual results throughout the Class Period.  *See Oracle*, 2019 WL 6877195, at *14 (rejecting CW allegations that "report[ed] on events within the Class Period generally without tying those reports to each alleged misstatement"); *Omnicare*, 135 S. Ct. at 1332 (plaintiffs cannot rely "merely [on] conclusory assertions").[11]

---

[9] Many of the statements are couched in language of belief or opinion (*see, e.g.*, ¶¶ 178, 187, 233), and therefore are not actionable because plaintiff fails to allege that the statements were not genuinely believed or the speaker lacked a reasonable basis for believing them. *See In re Mellanox Techs. Ltd. Sec. Litig.*, 2014 WL 12650991, at *10-11 (N.D. Cal. Mar. 31, 2014).

[10] Contrary to plaintiff's characterizations, no CW states that integration was a failure or could not be completed, nor does any CW provide a single particularized fact supporting that bare conclusion.  *See* Sec. V.A.  Likewise, the so-called "admissions" actually confirm that Zuora did successfully cross-sell its products and that it was not until later that it realized the integration would take longer than expected.  *See* Sec. V.B; *see In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1070-71 (N.D. Cal. 2010) (plaintiff failed to adequately allege falsity of representations regarding company's ability to cross-sell products where statements demonstrated that company had in fact cross-sold some products).

[11] Plaintiff's "sales execution" theory suffers from the additional defect that it disingenuously conflates the integration issue – which impacted less than 10% of Zuora's customers – with sales execution issues related to the hiring of new sales representatives focusing on Global 2000 companies.  As explained on the May 30, 2019 earnings call, the Company had expanded its strategic sales teams, refined its sales approach and "hired a number of talented salespeople over the past year" to deal with potential Global 2000 customers. Ex. A at 2.  Mr. Tzuo stated that the "sales execution" issues that created "headwinds" related specifically to the fact that in Q1, "the newer reps were less than half as productive than our more experienced reps." *Id.*  As a result, the Company was "finding that we need to improve the support of our new reps with training and experience oversight to help them ramp and close new businesses." *Id.*  Nothing about that disclosure has any connection whatsoever to the integration issue.  *See Veal*, 2019 WL 5698072, at *12.  Further, the Company expressly warned that "we may be unable to hire qualified sales personnel, may be unable to successfully train those sales personnel that we are able to hire, and sales personnel may not become fully productive on the timelines that we have projected or at all." Ex. B at 16; *see, e.g.*, Ex. B at 23; Ex. C at 34; Ex. D at 38; Ex. E at 36; Ex. F at 10.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    ***Third***, the challenged growth strategy statements are forward-looking and therefore

2    protected under the bespeaks caution doctrine (as to statements in Zuora's Registration

3    Statement) or the safe harbor (as to other public statements). *See In re Stac Elecs. Sec. Litig.*, 89

4    F.3d 1399, 1408-09 (9th Cir. 1996) (Section 10(b) claim based on forward-looking statements in

5    registration statement barred by bespeaks caution doctrine where investors were "specifically and

6    adequately cautioned" about relevant risks); *Monachelli*, 225 F. Supp. 3d at 1055-56 (forward-

7    looking statements not actionable where accompanied by meaningful cautionary language); *Bare*

8    *Escentuals,* 745 F. Supp. 2d at 1079-1080 (Section 10(b) claim premised on forward-looking

9    statements barred by bespeaks caution doctrine where accompanied by meaningful cautionary

10   language); *In re Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1089-92, 1003 (C.D. Cal.

11   2003) (bespeaks caution doctrine barred claim premised on forward-looking statements in

12   registration statement regarding future ability to sell additional services to new multinational

13   clients); *see also Wozniak v. Align Tech., Inc*., 850 F. Supp. 2d 1029, 1038-39 (N.D. Cal. 2012)

14   (stated plans to achieve growth are forward-looking); *Oracle*, 2019 WL 6877195, at *11

15   (statements regarding future growth barred by safe harbor despite allegation that defendants knew

16   revenue growth was unsustainable); *Wochos v. Tesla, Inc*., 2018 WL 4076437, at *6 (N.D. Cal.

17   Aug. 27, 2018) (safe harbor barred claim where plaintiff failed to show defendants' knowledge

18   that it was "impossible," "not merely highly unlikely" to meet stated goals).

19   Whenever it discussed its growth strategy, Zuora consistently warned investors that,

20   among other things, "customers may hesitate to migrate to a new product or service"; the

21   Company's programs "may not have the desired effect and may not expand sales"; "[i]f our

22   efforts to expand sales and renewals to existing customers are not successful, our business and

23   operating results could be adversely affected"; deployment failures could negatively impact the

24   ability to generate revenue from "the upsell of additional products and services"; customers who

25   purchased Billing or RevPro might not purchase other Zuora products; and Zuora was "still

26   determining how to best market, price and support adoption" of RevPro. Ex. B at 16-23.[12] Zuora

27   _____

[12] *See, e.g.*, Ex. B at 32; Ex. C at 34, 36, 40; Ex. D at 38, 40, 43; Ex. E at 36, 38, 41; Ex. F at 10,
11, 12, 15. The Company's conference calls properly invoked the safe harbor and referred back
to these risk factors. *See* Exs. N, O, P.

28

also publicly disclosed that the number of customers who had purchased both Billing and Zuora was less than 10% of its total customer base. *See* ¶ 211; Ex. Q. Against these disclosures, no reasonable investor would have been misled by Zuora's description of its strategy. *Bodri*, 252 F. Supp. 3d at 924 ("A statement is misleading only if a reasonable investor, reading [it] fairly and in context, would be misled.").

### C. Statements Regarding RevPro Are Not Actionable

Plaintiff alleges that a tweet promoting a Zuora user conference and statements regarding the functionality of RevPro and potential demand for RevPro following the ASC 606 compliance deadline were "false and misleading" because Zuora could not "provide automation and usability across Zuora Billing and Zuora RevPro." *See, e.g.,* ¶ 177. As with plaintiff's other allegations, these statements cannot support a securities law claim because they are inactionable and because plaintiff does not (and cannot) allege they were false.

*June 5, 2018 Tweet*. Plaintiff fails to plead that the Company's June 5, 2018 tweet promoting its Subscribed user conference – the *only* statement identified by plaintiff that even *mentions* integration – is actionable or false. *First*, the text of the tweet – "Don't underestimate the complexity of revenue recognition. The deep dark depths are very, very complex! Thank goodness for Zuora + RevPro integration for a seamless order-to-revenue process! #Subscribed #revrec" (¶ 164) – is inactionable puffery. *See Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal. 2012) (statement that company "underscores its strategy to provide a seamless, secure, context-aware experience across its product portfolio" is nonactionable). *Second*, plaintiff does not contest that RevPro was integrated into and part of the Zuora Central Platform and acknowledges that RevPro was successfully implemented at over 100 customers. *See, e.g.,* ¶ 35. These concessions – and the lack of any contemporaneous facts establishing falsity – eviscerate plaintiff's claim. *See Veal*, 2019 WL 5698072, at *12; *OmniVision*, 937 F. Supp. 2d at 1099-1100.[13]

*Statements Regarding Functionality*. The Company's statements that RevPro would provide a "more efficient month end close to meet ASC 606 revenue compliance through

---

[13] The CWs offer no reliable facts that would render any statement misleading. *See* Sec. V.A.

NOTICE OF MOTION AND MOTION TO
DISMISS CAC AND MPA IN SUPPORT                    15                    Case No.: 3:19-cv-03422-SI

FENWICK & WEST LLP
ATTORNEYS AT LAW

disclosure reporting and intelligent exception handling" (¶ 176); and would allow companies to "[a]ccount for revenue, comply with the latest revenue recognition rules, close books faster, orchestrate subscription transactions, and process revenue in real-time" (¶ 182) are inactionable because they are puffery (*see, e.g.*, *Intel*, 2019 WL 1427660, at *9) but also because they are true. Plaintiff does not contest that RevPro *did* create a "more efficient month end close" compared to customers' previous manual processes and that RevPro *did* allow customers to account for revenue, comply with revenue recognition rules, and "process revenue in real time." ¶ 35 ("RevPro automates the range of internal, multi-departmental processes required to comply with" ASC 606; RevPro was successfully implemented at "over 100" customers during the Class Period). Plaintiff does not identify a single witness, document, or contemporaneous fact to the contrary, dooming its claim. *See Omnicare*, 135 S. Ct. at 1332-33.

      ***Statements Regarding Potential Demand.***  The Company's statements regarding potential demand for RevPro, including that "I think what really excites us about the market opportunity for revenue recognition is that the overall trend is not going away … we see really long-term demand for more sophisticated revenue recognition solutions" (¶ 195), and "we do see a lot of tailwinds in the business" (¶¶ 195, 196) are classic statements of inactionable corporate optimism or puffery.  *See, e.g., In re ECOtality, Inc. Sec. Litig.*, 2014 WL 4634280, at *9 (N.D. Cal. Sept. 16, 2014) (statement that product and service offerings represented a "significant growth opportunity" was inactionable corporate optimism).

      To the extent the statements address ***future*** demand, they are also archetypal forward-looking statements protected by the safe harbor.  *See* 15 U.S.C. §§ 78u-5(i)(1)(A), (C), (D); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 877, 880 (N.D. Cal. 2004) (projection that demand will "continue to grow" is forward-looking); *In re SolarCity Corp. Sec. Litig.*, 274 F. Supp. 3d 972, 992 (N.D. Cal. 2017) (demand projections are forward-looking).  Far from providing "assurances" to investors that demand for RevPro would not drop off after the imposed ASC 606 implementation deadlines (¶ 37), Zuora cautioned investors that it had less experience with RevPro, that "Zuora RevPro is rapidly evolving as a result of the effectiveness of ASC 606, which makes it difficult to forecast adoption rates and demand for this product," and that it was

FENWICK & WEST LLP
ATTORNEYS AT LAW

"uncertain whether Zuora RevPro will achieve and sustain high levels of demand and market acceptance." Ex. B at 22.[14] Because the statements are forward-looking and accompanied by meaningful cautionary language, plaintiff's claim is barred under the safe harbor. *See* 15 U.S.C. § 78u-5(c)(1)(A)(i); *Cutera*, 610 F.3d at 1108; *Monachelli*, 225 F. Supp. 3d at 1055.[15]

Plaintiff attempts to circumvent these robust risk disclosures with the predictable allegation that "then-existing facts contradicted Defendants' statements" and therefore "any generalized risk disclosures made by Zuora were insufficient to insulate Defendants from liability". ¶ 264. As numerous courts have held, risk disclosures inherently convey the fact that the stated risks may already be occurring and therefore they cannot be invalidated merely because the risks have occurred. *See Zeid v. Kimberley*, 930 F. Supp. 431, 437 (N.D. Cal. 1996); *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010). In any case, plaintiff's blanket allegation that "then-existing facts contradicted Defendants' statements" does not come close to meeting plaintiff's burden to plead that any risks had "already transpired" and were "already affecting" the Company. *In re Facebook, Inc. Sec. Litig.*, 2019 WL 4674347, at *21-22 (N.D. Cal. Sept. 25, 2019) (risk disclosure that security breaches "could result in the loss or misuse of [user] data" not misleading where plaintiff failed to allege adequately that they were "already affecting" the company); *Park v. GoPro, Inc.*, 2019 WL 1231175, at *18 (N.D. Cal. Mar. 15, 2019) (risk factors regarding what "may" occur not deficient where plaintiffs "failed to show that the risk factors identified in the cautionary statement had already transpired").

## V. PLAINTIFF FAILS TO ESTABLISH SCIENTER

Plaintiff's Section 10(b) claim fails for the additional reason that it has not alleged the

---

[14] *See, e.g.*, *id.* at 13-22 (warning that market acceptance of Zuora's solution may be affected by "our ability to maintain high levels of customer satisfaction," "our ability to minimize the time and resources required to deploy our solution," "our ability to deploy upgrades and other changes to our solution without disruption to our customers," and "the level of customization or configuration we offer"); Ex. C at 31-40; Ex. D at 37-43; Ex. E at 35-41; Ex. F at 8-15. The Company's conference calls properly invoked the safe harbor and referred back to these risk factors. *See* Exs. N, Q, R, S, T.

[15] Even if not identified as forward-looking or accompanied by meaningful risk factors, plaintiff's claim would fail because it has not pled facts to show actual knowledge of falsity sufficient to overcome the safe harbor's second prong (*Cutera*, 610 F.3d at 1111-13; *Monachelli*, 225 F. Supp. 3d at 1055) or the bespeaks caution doctrine (*Violin Memory*, 2014 WL 5525946, at *12-13).

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    required strong inference of scienter.  Plaintiff is required to plead with particularity facts giving

2    rise to a strong, powerful, and cogent inference of scienter.  *See Tellabs*, 551 U.S. at 323;

3    *Monachelli*, 225 F. Supp. 3d at 1055.  Such pleading must be defendant by defendant, and "must

4    contain allegations of specific contemporaneous statements or conditions that demonstrate the

5    intentional or the deliberately reckless false or misleading nature of the statements when made."

6    *Metzler*, 540 F.3d at 1066.

7          A.    **Plaintiff Fails to Identify Contemporaneous, Contradictory Information**
                **Known to Any Individual Defendant**

8

9           Plaintiff makes no attempt to plead particularized facts showing the purported mental state

10   of Mr. Tzuo or Mr. Sloat at the time of any challenged statements.  *Monachelli*, 225 F. Supp. 3d

11   at 1057 (plaintiff must describe CWs "with sufficient particularity to establish their reliability and

12   personal knowledge").  There is no contemporaneous document, email, memorandum, meeting,

13   oral discussion, or witness account suggesting that either individual believed his statements were

14   false or misleading.  Instead, plaintiff relies on the vague and speculative musings of four CWs,

15   none of whom was employed throughout the Class Period,[16] and none of whom even purports to

16   have reported to, spoken to, interacted with, or otherwise been in contact with Mr. Tzuo or Mr.

17   Sloat during the Class Period.  Given their complete lack of personal knowledge, these CWs'

18   statements cannot be relied upon as a matter of law and any attempt to draw inferences about any

19   defendants' state of mind from their broad, unsupported statements is unwarranted.  *See Police*

20   *Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *20 (N.D. Cal. May 22,

21   2012) (where CWs did not "actually communicate[] with any of the Individual Defendants," they

22   "offer little, if any reliable basis from which to infer scienter"), *aff'd*, 759 F.3d 1051 (9th Cir.

23   2014); *Zucco*, 552 F. 3d at 998 (CW statements that do not reflect "reliable personal knowledge

24   of the defendants' mental state" fail to support scienter); *In re Accuray, Inc. Sec. Litig.*, 757 F.

25   Supp. 2d 936, 949 (N.D. Cal. 2010) (absent interaction with defendants, it is "difficult to surmise

26

27   _____

[16] **CW2**, upon whom plaintiff heavily relies, left the Company in September 2018, eight months
before the end of the 13-month Class Period.  ¶ 65.  **CW4** left in January 2019.  ¶ 110.  And **CW1**

28   and **CW3**, like all of the CWs, lack any personal knowledge of relevant facts.

how the opinions and observations of the CWs could support a reasonable inference about what these individual Defendants knew or did not know at the time [of] each of the challenged statements"); *In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *11 (N.D. Cal. Mar. 29, 2013) (rejecting CW allegations where they lacked "direct contact" with defendants).

Lack of personal knowledge aside, the CWs do not provide ***any*** specific details, relying instead on mundane, generalized facts and generic aspersions, none of which are sufficient to establish scienter. The bulk of the **CW** allegations focus on the Company's alleged efforts to integrate Billing and RevPro. For example, **CW1** and **CW2** allege that, like most companies, Zuora had "project meetings," "progress reports," and internal tracking documents for projects. *See, e.g.*, ¶¶ 74-77, 93, 97. But the CWs never allege that they attended any meeting where Mr. Tzuo or Mr. Sloat was present – in fact, they do not identify any specific meetings at all. Nor do the CWs identify a single specific detail as to what was discussed at any meeting, what any data or reports showed, let alone specific facts showing what was known and when or that would indicate that any challenged statement was false when made. *See, e.g.*, *In re Apple Computer Inc.*, 127 F. App'x 296, 302 (9th Cir. 2005) (no scienter where CW statements "demonstrate[d] [that] the engineers at Apple knew there were production problems with the Cube," but did not "establish exactly what Jobs knew, nor when he knew it"); *Monachelli*, 225 F. Supp. 3d at 1057-58 (no scienter where CW allegations do not adequately establish that any statement made by defendants was false); *Bao v. SolarCity Corp.*, 2016 WL 54133, at *6 (N.D. Cal. Jan. 5, 2016) (CW allegations that are not specific as to time cannot contribute to scienter); *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011) (vague and conclusory allegations as to meetings with executives not indicative of scienter).[17]

The CWs' opinions that integration involved "challenges" or "difficulties" and was

---

[17] The CW allegations themselves highlight the hypothetical, speculative, and hearsay nature of the allegations. *See, e.g.*, ¶ 96 ("at the C-Level they share all the information"); ¶ 94 ("they certainly would have been, 'in the loop for that'"); ¶ 73-75 (CW1 speculating on what was said at a "monthly" project meeting he did not attend and which took place at an unspecified date prior to the Class Period). Such allegations do not support scienter. *See In re Leapfrog Enter., Inc. Sec. Litig.*, 200 F. Supp. 3d 987, 1004-05 (N.D. Cal. 2016) (without allegations that there was something said during meetings that "would have demonstrated the challenged statements were false and knowingly so," the fact that meetings occurred did not add to an inference of scienter).

FENWICK & WEST LLP
ATTORNEYS AT LAW

"anything but ideal" (¶¶ 71, 74, 78, 90) are unsupported by allegations establishing personal

knowledge or specific facts. *Accuray*, 757 F. Supp. 2d at 949; *In re Nimble Storage, Inc. Sec.*

*Litig.*, 2016 WL 7209826, at *10 (N.D. Cal. Dec. 9, 2016) (no scienter where CWs failed to

provide "any facts or details upon which . . . conclusory allegations [were] based"). They are also

irrelevant: "[p]roblems and difficulties are the daily work of business people. That they exist

does not make a lie out of any of the alleged false statements." *Ronconi*, 253 F.3d at 434; *see*

*also Allison v. Brooktree Corp.*, 999 F. Supp. 1342, 1348 (S.D. Cal. 1998) ("[i]n bringing any

high-tech product to market, problems encountered . . . are the norm, not the exception" and do

not support a securities fraud claim).

The CWs' bare conclusions that a handful of customers – only two of whom are even

identified – were supposedly "unhappy with RevPro" are likewise devoid of any of the specific,

particularized facts required to establish scienter. For example, **CW1** alleges that Zoom decided

"not to implement it fully due to the integration failure." ¶ 98. But plaintiff does not plead any

specific facts as to what a decision "not to implement it fully" means, when that decision was

made, who was aware of that decision, or that the decision related to integration as opposed to

any other issue. Likewise, plaintiff never explains how the failure of a single customer to fully

implement RevPro establishes scienter – nor can it, given that the Company expressly cautioned

investors of this risk. *See Padnes v. Scios Nova Inc.*, 1996 WL 539711, at *9 (N.D. Cal. Sept. 18,

1996) (there can be no intent to deceive where information was "generally recognized by the

market"). **CW3**'s allegations that "a couple customers [] ended up spending large sums of money

to get Zuora to work with RevPro" and five unnamed customers were "upset about the delayed

integration" (¶¶ 104-05) are similarly unsupported by any particularized facts, much less facts

contradicting any public statement.[18] *See Nimble Storage*, 2016 WL 7209826, at *10.

Plaintiff's allegations that integration issues led to "reputational damage" and "reduced

---

[18] **CW3**'s allegation that he "observed" an email thread on which Mr. Tzuo was "made aware" of
an "issue" with a customer withholding payment (¶ 109) is meaningless. Plaintiff fails to explain
how such an email would establish knowledge that public statements by Zuora were false. And
Zuora disclosed the risk that customers would withhold payment if they were "unable to deploy
[Zuora's] solution successfully, or unable to do so in a timely manner" (Ex. B at 18), eliminating
any possibility of an intent to deceive. *See Padnes*, 1996 WL 539711, at *9.

FENWICK & WEST LLP
ATTORNEYS AT LAW

demand for all of Zuora's products" are, if anything, even more vague and unsupported. Plaintiff

relies almost entirely on **CW4**, who left the Company four months before the end of the Class

Period. Lack of personal knowledge aside, **CW4** does not provide a single, specific detail, only

rote generalities and absurdly vague allegations. *See, e.g.*, ¶ 113 ("the RevPro demo did not

always go so well and questions were asked of the engineers"); ¶ 116 ("there were concerns with

companies who had Zuora Central who heard about difficulties"). Taken collectively or apart,

none of these allegations contribute anything to scienter. *McCasland v. FormFactor Inc.*, 2009

WL 2086168, at *5 (N.D. Cal. July 14, 2009) (Illston, J.) (no scienter where no CW "provided

any *specific* information to defendants that contradicts any public statement made by

defendants").

### B. Defendants' Post-Class Period Statements Negate Scienter

Plaintiff alleges that Mr. Tzuo's May 30, 2019 and June 5, 2019 statements describing the

challenges in integrating Billing and RevPro are "admissions" that earlier statements were false

and misleading. ¶¶ 151, 154-56. However, a "later, sobering revelation" regarding the subject of

an "earlier, cheerier statement," will not suffice. *Yourish v. Cal. Amplifier*, 191 F.3d 983, 996-97

(9th Cir. 1999). A statement may only be considered an "admission" if a defendant effectively

concedes, "I knew it all along." *Id.*; *see also Read-Rite*, 335 F.3d at 846 (later statement must

"directly contradict[] or [be] inconsistent with the earlier statement"); *Kelly*, 2015 WL 1967233,

at *9-10 (no admission where later statement did not contradict any alleged misstatements).

Here, the May 30 statements make clear that the Company had successfully implemented

RevPro at "close to 100 customers" prior to ASC 606 and that it had begun the "heavy work on

the integration between RevPro and Billing," but that the integration for the two products was

"***taking longer than expected***." Ex. A at 2, 6-7 (emphasis added). None of these facts are

inconsistent with any of the challenged statements, much less establish scienter.[19]

---

[19] Plaintiff's emphasis on a single analyst's question about the integration of Leeyo is misplaced. *See ¶¶* 14, 150, 260. ***Nothing*** in that question goes to show that any statement was false or misleading or even remotely speaks to scienter. *See* Ex. A at 6 ("***I sort of get the integration of Billings and RevPro and how that could sort of slow some things down***. But I know I'm going to get this question tomorrow. I mean you bought Leeyo 2 years ago. So like it's hard -- like how can it not be integrated?" (emphasis added)).

FENWICK & WEST LLP
ATTORNEYS AT LAW

1    Plaintiff also points to Mr. Tzuo's June 5, 2019 hindsight observation about the evolution

2    of a technical aspect of the planned integration of RevPro and Billing, commenting that he

3    probably could have caught [a since-abandoned methodology] a little bit earlier" (¶ 155). The

4    statement is in no way an admission of prior misstatements; plaintiff never alleges that the

5    Company promised any kind of timetable for the integration. Far from establishing that any

6    defendant "knew all along" that integration of RevPro and Billing would be more difficult than

7    expected, the statement conveys just the opposite: that the Company *only recently* realized that its

8    initial path would not work.[20] Such statements negate scienter. *See Kelly*, 2015 WL 1967233, at

9    *9-10 (hindsight statements that product was launched "on an unfinished platform with

10   unfinished software" and there were "some things that can't get done until the very last minute

11   because the platform wasn't ready" were not admissions that optimistic statements regarding

12   product launch were false when made); *In re Ubiquiti Networks Inc. Sec. Litig.*, 33 F. Supp. 3d

13   1107, 1135 (N.D. Cal. Mar. 26, 2014) (hindsight statement about weak demand not an admission

14   where it did not raise an "inference that [defendant] contemporaneously knew about declining

15   sales or demand"), *aff'd in relevant part*, 669 F. App'x 878 (9th Cir. 2016); *Cisco*, 2013 WL

16   1402788, at *10 (hindsight explanation for disappointing performance not an "admission").[21]

17   **C.    Defendants' Stock Sales Negate Scienter**

18   In the Ninth Circuit, stock sales cannot support a strong inference of scienter unless the

19   sales are both (1) "dramatically out of line with prior trading practices" and (2) made "at times

20   calculated to maximize the personal benefit from undisclosed inside information." *In re Silicon*

21   *Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999). Mr. Tzuo – one of Zuora's largest

22   shareholders – did *not sell a single share of stock* during the Class Period, a fact plaintiff admits

23   and that itself negates scienter. *See In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142,

24   _____

25   [20] *See* Ex. U at 22 ("***This will sound obvious, like everything in hindsight. But in hindsight, that
     was silly right? … And so we probably could have caught that a little bit earlier, right?*** …** I

26   chalk it up to, look, innovation's off and you go down the wrong path and you've got to course
     correct.") (emphasis added).

27   [21] Likewise, nothing in the September 10, 2019 statement that we "had some challenges going
     through [integration] we highlighted on the Q1 call" (¶ 156) or the October 19, 2019 blog entry

28   describing the process for integration (¶ 158) can be read as an "admission" of prior knowledge.

FENWICK & WEST LLP
ATTORNEYS AT LAW

1160 (C.D. Cal. 2007) (inference of scienter "defeated" when defendants "end up reaping the same large losses as did Plaintiff"); *Tripp v. Indymac Fin. Inc.*, 2007 WL 4591930, at *4 (C.D. Cal. Nov. 29, 2007) (same).

Likewise, plaintiff's allegations as to Mr. Sloat and former Zuora employee Marc Diouane, who is not a defendant, negate rather than support any inference of scienter. As plaintiff concedes, Mr. Sloat's sales were made pursuant to non-discretionary 10b5-1 plans, which negates an inference of scienter. *See* ¶ 142, Ex. V. The assertion that the plans were adopted when he was already in possession of material, nonpublic information (*see* ¶ 249) is devoid of any factual support and cannot overcome "[t]his innocent, alternative explanation for the stock sales." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012). Plaintiff fails to meet its burden to demonstrate that the amounts, percentages, or timing of Mr. Sloat's sales were suspicious. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1095-96 (9th Cir. 2002) (no scienter where plaintiffs fail to provide a "meaningful trading history"). To the contrary, the fact that Mr. Sloat retained nearly half of his holdings (*see* ¶ 139, Ex. V) establishes that his sales were not suspicious. *See, e.g., Silicon Graphics*, 183 F.3d at 987-88 (no inference of scienter where stock sales were in excess of 75.3% of defendant's holdings); *Metzler*, 540 F.3d at 1067 (no scienter where one defendant sold 100% of his holdings and another sold 37%). That Mr. Sloat sold shares following earnings releases, "which is common practice among corporate executives," and received new stock options throughout the Class Period further negates scienter. *See Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1118-19 (N.D. Cal. 2009) (no scienter where only timing allegations were that defendants sold stock following earnings releases); *Schuster v. Symmetricom, Inc.*, 2000 WL 33115909, at *8 (N.D. Cal. Aug. 1, 2000) (no scienter where defendant received stock options "keyed to prices that plaintiff alleges were artificially inflated").

Mr. Diouane's stock sales cannot contribute to scienter for the same reasons. Plaintiff fails to identify anything suspicious about the timing or amount of shares sold and admits that Mr. Diouane retained over half of his shares during the Class Period (¶ 140), a fact that negates scienter.

FENWICK & WEST LLP
ATTORNEYS AT LAW

### D. Plaintiff's Remaining Generic Allegations Fail to Plead Scienter

None of the rest of plaintiff's allegations contribute to a strong inference of scienter. Asserting that defendants "must have been aware" of adverse facts because of their roles at the Company is insufficient. *See Metzler*, 540 F.3d at 1058, 1068 (rejecting inference of knowledge based on management's "hands on" style and access to information). Even if the "core operations" theory applied (and it does not), plaintiff has failed to allege a single particularized contemporaneous fact to contradict any challenged statement. *See Zucco*, 552 F.3d at 1001 (core operations doctrine applies only in "rare" case where facts show existence of adverse information so "prominent . . . that it would be 'absurd to suggest' top management was unaware" that their statements were false); *In re Extreme Networks, Inc. Sec. Litig.*, 2018 WL 1411129, at *29 (N.D. Cal. Mar. 21, 2018) (core operations may apply to defendants' knowledge of significant acquisition but not to "knowledge of the minutia of all integration efforts thereafter"). The absence of such facts likewise dooms plaintiff's "temporal proximity" theory regarding Zuora's 2019 Form 10-K filed on April 18, 2019, and the alleged "revelation" on May 30, 2019. *See* ¶ 252. Nor is Mr. Diouane's resignation relevant to scienter. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. Align Tech., Inc.*, 2013 WL 6441843, at *14 (N.D. Cal. Dec. 9, 2013) (resignation, without more, cannot contribute to an inference of scienter). Allegations that defendants were motivated to solicit funds for the IPO (*see* ¶ 255) "speak to precisely the 'routine corporate objectives such as the desire to obtain good financing and expand'" that the Ninth Circuit has rejected as a basis for scienter. *Webb*, 884 F.3d at 856.

### E. Plaintiff's Allegations, Considered Holistically, Preclude Scienter

Considered holistically and including all reasonable inferences (even those unfavorable to plaintiff), the CAC precludes an inference of scienter. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). Plaintiff's theory is that defendants invested significant resources to acquire, develop, market, and sell RevPro software knowing that customers who also owned Billing would be unable to integrate the two products – thereby risking the potential customer service issues that might ensue – all so that the Company could temporarily inflate its guidance (not its ***actual*** financials) by a trivial amount for one quarter of one year. The far more plausible inference is

that the integration proved to be more difficult than the Company expected and that as a result,
Zuora lowered the portion of its guidance that was based on anticipated cross-selling. Zuora also
took the opportunity to acknowledge that new sales employees had been less productive in the
quarter than expected and that the Company was taking steps to improve productivity going
forward. Viewed holistically, nothing in these events supports an inference of fraud. *See
Monachelli*, 225 F. Supp. 3d at 1057-58 (no scienter where plaintiff's allegation that company
knowingly made false or misleading predictions about future revenue is not at least as cogent or
compelling as plausible alternative inference); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d
1111, 1139 (S.D. Cal. 2012) (no scienter where company revised guidance downward after
announcing integration delays following an acquisition), *aff'd sub nom. Fresno Cty. Emps. Ret.
Ass'n v. Alphatec Holdings, Inc.*, 607 F. App'x 694 (9th Cir. 2015).[22]

## VI. CONCLUSION

For the reasons above, defendants respectfully request that this Court dismiss plaintiff's
CAC with prejudice.

Dated:   January 22, 2020                     FENWICK & WEST LLP

                                              By: /s/        *Susan Samuels Muck*
                                                            Susan Samuels Muck

                                              Attorneys for Defendants Zuora, Inc.,
                                              Tien Tzuo, and Tyler Sloat

FENWICK & WEST LLP
ATTORNEYS AT LAW

---

[22] The Section 20(a) claim fails because plaintiff has not pled a primary violation of Section
10(b). *See Paracor Fin, Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).