SUSAN S. MUCK (CSB No. 126930)
smuck@fenwick.com
CATHERINE KEVANE (CSB No. 215501)
ckevane@fenwick.com
KATHERINE A. MARSHALL (CSB No. 327042)
kmarshall@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 415.281.1350

Attorney for Defendants Zuora, Inc.,
Tien Tzuo, and Tyler Sloat

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendant. | Case No.: 3:19-cv-03422-SI<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>Hearing Date: April 3, 2020<br>Hearing Time: 10:00 a.m.<br>Dept.: Courtroom 1, 17th Floor<br>Judge: Hon. Susan Illston<br><br>Date Action Filed: June 14, 2019 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1

II. THE OPPOSITION CONFIRMS THAT PLAINTIFF CANNOT PLEAD A FALSE OR MISLEADING STATEMENT ................................................................. 2

    A. The Challenged Statements Regarding Zuora's Business Model and Products Are Not Actionable ............................................................................ 2

        1. The Challenged Statements Are Puffery ....................................................... 2

        2. Plaintiff Fails to Show That Any Statement is False or Misleading ........... 3

    B. The Opposition Fails to Establish That Any Statements Regarding Zuora's Growth Strategy Are Actionable .......................................................... 6

    C. The Opposition Fails to Establish That Any Statements Regarding RevPro Are Actionable ................................................................................................... 8

III. PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER ............... 9

    A. Repeating Deficient Confidential Witness Allegations Is No Substitute for Contemporaneous Facts and Does Not Support a Cogent and Compelling Inference of Scienter ........................................................................................ 9

    B. Statements Identified in the Opposition Are Not "Admissions" and Fail to Show Scienter .................................................................................................. 11

    C. The Opposition Has No Answer to the Fact that Defendants' Stock Sales Negate Scienter ............................................................................................... 12

    D. The Opposition Fails to Identify a Basis for Invoking Core Operations ............. 13

    E. Holistic Review Confirms Plaintiff's Inability to Plead Scienter ......................... 14

IV. CONCLUSION ................................................................................................................ 14

# TABLE OF AUTHORITIES

Page

**CASES**

*Atlas v. Accredited Home Lenders Holding Co.*,
  556 F. Supp. 2d 1142 (S.D. Cal. 2008) ................................................................................ 3

*Bao v. SolarCity Corp.*,
  2016 WL 54133 (N.D. Cal. Jan. 5, 2016) ............................................................................ 11

*Berson v. Applied Signal Tech., Inc.*,
  527 F.3d 982 (9th Cir. 2008) ................................................................................................ 6

*Brodsky v. Yahoo! Inc.*,
  630 F. Supp. 2d 1104 (N.D. Cal 2009) ............................................................................... 13

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) ...................................................................... 13

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
  880 F. Supp. 2d 1045 (N.D. Cal. 2012) .............................................................................. 13

*Colyer v. AcelRx Pharm., Inc.*,
  2015 WL 7566809 (N.D. Cal. Nov. 25, 2015) .................................................................... 14

*Curry v. Hansen Med., Inc.*,
  2012 WL 3242447 (N.D. Cal. Aug. 10, 2012) .................................................................... 11

*Fadia v. FireEye, Inc.*,
  2016 WL 6679806 (N.D. Cal. Nov. 14, 2016) .................................................................... 13

*Gammel v. Hewlett-Packard Co.*,
  905 F. Supp. 2d 1052 (C.D. Cal. 2012) ................................................................................ 8

*Hatamian v. AMD, Inc.*,
  87 F. Supp. 3d 1149 (N.D. Cal. 2015) ................................................................................ 11

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .............................................................................................. 2

*In re DDi Corp. Sec. Litig.*,
  2005 WL 3090882 (C.D. Cal. July 21, 2005) ...................................................................... 3

*In re ESS Tech., Inc. Sec. Litig.*,
  2004 WL 3030058 (N.D. Cal. Dec. 1, 2004) ........................................................................ 3

*In re Immune Response Sec. Litig.*,
  375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................................................................. 8

*In re Intuitive Surgical Sec. Litig.*,
  65 F. Supp. 3d 821 (N.D. Cal. 2014) .................................................................................... 3

*In re NVIDIA Corp. Sec. Litig.*,
　768 F.3d 1046 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 2349 (2015) ............................... 13, 14

*In re OmniVision Techs., Inc. Sec. Litig.*,
　937 F. Supp. 2d 1090 (N.D. Cal. 2013) .................................................................................. 6

*In re Read-Rite Corp. Sec. Litig.*,
　335 F.3d 843 (9th Cir. 2003) ................................................................................................ 12

*In re Restoration Robotics, Inc. Sec. Litig.*,
　417 F. Supp. 3d 1242 (N.D. Cal. 2019) .................................................................................. 7

*In re Splash Tech. Holdings Inc. Sec. Litig.*,
　160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................................. 3

*In re Syntex Corp. Sec. Litig.*,
　855 F. Supp. 1086 (N.D. Cal. 1994), *aff'd*, 95 F.3d 922 (9th Cir. 1996) ................................ 7

*In re Violin Memory Sec. Litig.*,
　2014 WL 5525946 (N.D. Cal. Oct. 31, 2014) ..................................................................... 6, 8

*In re VistaCare, Inc. Sec. Litig.*,
　2005 WL 8160681 (D. Ariz. Aug. 19, 2005) ........................................................................ 12

*Kelly v. Electronic Arts, Inc.*,
　2015 WL 1967233 (N.D. Cal. Apr. 30, 2015) (Illston, J.) ................................................. 2, 12

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
　416 F.3d 940 (9th Cir. 2005) .................................................................................................. 8

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
　513 F.3d 702 (7th Cir. 2008) .................................................................................................. 7

*Marksman Partners, L.P. v. Chantal Pharm. Corp.*,
　927 F. Supp. 1297 (C.D. Cal. 1996) ..................................................................................... 13

*Monachelli v. Hortonworks, Inc.*,
　225 F. Supp. 3d 1045 (N.D. Cal. 2016) (Illston, J.) ............................................... 5, 6, 10, 14

*Mulligan v. Impax Labs., Inc.*,
　36 F. Supp. 3d 942 (N.D. Cal. 2014) ................................................................................ 3, 14

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*,
　320 F.3d 920 (9th Cir. 2003) .................................................................................................. 3

*Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*,
　780 F. App'x 480 (9th Cir. 2019) ........................................................................................... 4

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
　575 U.S. 175 (2015) ............................................................................................................ 6, 7

*Provenz v. Miller*,
　102 F.3d 1478 (9th Cir. 1996) ................................................................................................ 6

| | | |
|---|---|---|
| *Ret. Trust v. RH, Inc.*, | | |
| 302 F. Supp. 3d 1028 (N.D. Cal. 2018) | ....................................................................... | 11, 14 |
| *Ronconi v. Larkin*, | | |
| 253 F.3d 423 (9th Cir. 2001) | ...................................................................................... | 11 |
| *S. Ferry LP, # 2 v. Killinger*, | | |
| 542 F.3d 776 (9th Cir. 2008) | ...................................................................................... | 14 |
| *S. Ferry LP No. 2 v. Killinger*, | | |
| 399 F. Supp. 2d 1121 (W.D. Wash. 2005) | ........................................................... | 3 |
| *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, | | |
| 551 U.S. 308 (2007) | ................................................................................................ | 14 |
| *Veal v. LendingClub Corp.*, | | |
| 2019 WL 5698072 (N.D. Cal. Nov. 4, 2019) | ....................................................... | 5 |
| *Webb v. SolarCity Corp.*, | | |
| 884 F.3d 844 (9th Cir. 2018) | ...................................................................................... | 14 |
| *Wozniak v. Align Tech., Inc.*, | | |
| 2011 WL 2269418 (N.D. Cal. June 8, 2011) | ....................................................... | 11 |
| *Zucco Partners, LLC v. Digimarc Corp.*, | | |
| 552 F.3d 981 (9th Cir. 2009) | ...................................................................................... | 11, 13 |

## I. INTRODUCTION

In their opening papers, defendants[1] challenged plaintiff to identify well-pleaded facts and legal authority demonstrating that Zuora made a material misstatement or omission regarding its business model, its growth strategy or its products. Plaintiff's opposition ("Opposition" or "Opp.") confirms its inability to meet that challenge for any of the categories of misstatements alleged in the Consolidated Amended Class Action Complaint ("CAC").

***First***, the Opposition completely ignores the robust body of law establishing that all of the challenged statements – the majority of which are generalized descriptions of Zuora's overall business model or run-of-the-mill recitations of Zuora's growth strategies – are nonactionable "puffery." *See* MPA at 9-10, 12, 15-16 (collecting cases). The Opposition does not cite a single case holding otherwise.

***Second***, even if the challenged statements were actionable (which they are not), plaintiff does not and cannot plead that any of them were false. Plaintiff's core theory is that Zuora deceptively represented that its RevPro product and its Billing product were themselves integrated offerings, so that purchase of one product assured the seamless use of the other. But plaintiff's Opposition points to only one instance in which the word "integration" is used near the word "RevPro" – a single tweet promoting a user conference at the beginning of the class period. Not only does plaintiff fail to explain how the tweet is anything other than nonactionable puffery, plaintiff fails to explain how it constitutes a representation to investors at all.

As to the remaining statements regarding Zuora's business model and growth strategies, plaintiff is unable to identify a single factual allegation establishing that the challenged statements were false. The Opposition does nothing to address the fact that Zuora successfully "cross-sold" its products as it projected it would, that its revenue met or exceeded guidance in every quarter of the class period, and that Zuora's forward-looking statements were accompanied by robust risk disclosures so that the statements are protected by the safe harbor or the bespeaks caution doctrine.

---

[1] All defined terms have the same meaning as in Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss ("MPA"), filed January 22, 2020.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CAC   1   Case No.: 3:19-cv-03422-SI

***Third,*** the Opposition confirms that plaintiff has not satisfied its burden of pleading particularized contemporaneous facts giving rise to an inference of scienter. Zuora's MPA showed that the confidential witnesses: (1) are not alleged to have had any contact with Mr. Tzuo or Mr. Sloat; (2) lacked any personal knowledge of what they might have known or when; and (3) did not identify any specific documents, meetings, dates, or other details showing that Mr. Tzuo or Mr. Sloat knew any statement was false or misleading. The Opposition makes no real effort to demonstrate otherwise, resorting instead to repetition of the same conclusory and deficient allegations from the CAC.

In short, the Opposition confirms that the CAC is nothing more than an impermissible fraud-by-hindsight pleading triggered by a reduction in guidance, not by the disclosure of some supposed "integration" failure. The CAC comes nowhere close to meeting plaintiff's burden of pleading particularized facts showing fraud and should therefore be dismissed.

## II. THE OPPOSITION CONFIRMS THAT PLAINTIFF CANNOT PLEAD A FALSE OR MISLEADING STATEMENT

### A. The Challenged Statements Regarding Zuora's Business Model and Products Are Not Actionable

#### 1. The Challenged Statements Are Puffery

Plaintiff's central theory is that Zuora's general statements about its products and business model were fraudulent because the Company failed to note that customers using both Billing and RevPro were supposedly unable to integrate data between the two products. *See, e.g.*, CAC ¶¶ 161, 163, 165, 167; Opp. at 10-12. Defendants' opening brief established that these statements are nonactionable puffery, too vague to be actionable, or both. *See* MPA at 9-10. Plaintiff tries to sidestep the issue by arguing that courts are reluctant to hold that statements are puffery at the pleading stage. *See* Opp. at 10 n.2. That erroneous assertion is refuted by the numerous cases from the Ninth Circuit and this Court dismissing claims on precisely this basis. *See* MPA at 9-10; *see, e.g.*, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (affirming dismissal of complaint on the basis of puffery); *Kelly v. Electronic Arts, Inc.*, 2015 WL 1967233, at *7-8 (N.D. Cal. Apr. 30, 2015) (Illston, J.) (dismissing securities class action on basis that alleged

misstatements were nonactionable puffery).[2]

The Opposition next pivots to arguing – again incorrectly – that the challenged statements cannot be puffery because the "purported integrated functionality of Zuora's solution" was a "material topic" for the Company's investors. Opp. at 10. This is not the law. Whether a *topic* is material has no bearing on whether particular statements are actionable; the appropriate inquiry is whether the particular *statement*, taken in context, is so generalized or vague that a reasonable investor would not rely on it when considering the total mix of available information. *See In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1069 (N.D. Cal. 2001).[3] Moreover, none of the statements plaintiff challenges mentions or refers to the "topic" of integration. Taking the challenged statements in context, they are precisely the sort of generalized statements about a company's business that courts repeatedly hold – in cases plaintiff fails to acknowledge – are too vague to be actionable. *See* MPA at 10 (citing cases).[4]

### 2. Plaintiff Fails to Show That Any Statement is False or Misleading

As set forth in the MPA, even if the identified statements were actionable (and they are not), plaintiff's claim would still fail because it fails to plead particularized facts that contradict any challenged statement. MPA at 10-12. Plaintiff has no meaningful response. The Opposition concedes that not one of the challenged statements mentions integration. Opp. at 11. The Opposition also concedes that Zuora did offer products that allowed customers to "quote, order,

---

[2] Neither of the cases plaintiff cites compels a different conclusion; in both cases, the court *did* engage in a puffery analysis. *See In re DDi Corp. Sec. Litig.*, 2005 WL 3090882, at *15 (C.D. Cal. July 21, 2005); *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 n.2 (N.D. Cal. 2014) (finding that two challenged statements were nonactionable puffery and dismissing claims).
[3] No case cited by plaintiff relies on a so-called "material topic" theory; instead the courts in each considered whether the challenged statement was too vague to be actionable. *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 834 (N.D. Cal. 2014); *Atlas v. Accredited Home Lenders Holding Co.*, 556 F. Supp. 2d 1142, 1155 (S.D. Cal. 2008).
[4] No case cited by plaintiff held that generalized business descriptions such as those here are actionable. Instead, plaintiff's cases involved statements containing specific measurable or quantifiable data, such as financial results, number of customers, or manufacturing and quality control changes. *S. Ferry LP No. 2 v. Killinger*, 399 F. Supp. 2d 1121, 1129 (W.D. Wash. 2005); *DDi*, 2005 WL 3090882, at *15; *Impax Labs*, 36 F. Supp. 3d at 966; *In re ESS Tech., Inc. Sec. Litig.*, 2004 WL 3030058, at *11 (N.D. Cal. Dec. 1, 2004). The remaining cases are entirely inapposite as they involved the failure to disclose allegedly known compliance violations (*In re Volkswagen "Clean Diesel" Mkg. Sales Practices, & Prods. Liab. Litig.*, 2017 WL 66281, at *17 (N.D. Cal. Jan. 4, 2017)) or governmental investigations (*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir. 2003)), allegations not present here.

DEFENDANTS' REPLY ISO MOTION TO
DISMISS CAC                3                Case No.: 3:19-cv-03422-SI

bill, recognize revenue, report and automate the entire customer lifecycle from a single platform," that Zuora's products did cover "both your quote-to-cash solution as well as your revenue automation," that Billing did "[c]apture orders, subscriptions, invoices, payments, and AR," and that RevPro did "[r]ecognize revenue." *See* Opp. at 8, 11-12. Indeed, both the Opposition and the CAC expressly acknowledge that Zuora **could and did** deploy its products and that RevPro was deployed on the systems of hundreds of clients (CAC ¶ 35; Opp. 4, 8-9, 11) – facts that refute any theory that Zuora misrepresented its business model and products.[5]

Next, plaintiff resorts to selectively excerpting and piecing together snippets from unrelated statements – often made months apart and on different topics – and then argues (incorrectly) that the resulting purported "statements" were misleading because they created an "impression" that "customers using the Zuora Central Platform, together with Zuora Billing and Zuora RevPro, are able to integrate the data between two models [RevPro or Billing] through automation." Opp. at 10-11. However, read in context, as plaintiff urges (*see* Opp. at 11), the statements say no such thing.

For example, plaintiff pulls a phrase from Zuora's December 11, 2018 press release titled "Zuora Announces its Winter '19 Release" that "Zuora's solution allowed 'automation and usability across Zuora Billing, Zuora Collect, and Zuora RevPro'" and then claims that it is "demonstrably false" because there was "no Zuora-RevPro integration." *Id.* at 10. Putting aside that *across* does not mean *between*, as plaintiff suggests, read in context (including those portions plaintiff purposefully omits), what the statement actually said was that Zuora "***today announced its Winter '19 product release with a focus on automation and usability across*** Zuora Billing, Zuora Collect, and Zuora RevPro." *See* CAC ¶ 176. The press release then went on to discuss

---

[5] Far from supporting plaintiff's claims, in *Oklahoma Police Pension & Ret. Sys. v. LifeLock, Inc.*, 780 F. App'x 480, 483 (9th Cir. 2019) – an unpublished non-precedential decision – the Ninth Circuit found that the defendant's generalized statements that its product "will keep members up to date on significant breaches" and is "the most comprehensive product on the market" were ***not*** misleading. *Id*. n.7. The representation that was deemed actionable – that the company provided "real-time" alerts – was controverted by facts showing that 70% of alerts were stale, that management received detailed statistics showing the alerts were stale, and that LifeLock had entered into an FTC consent decree requiring it to stop exaggerating its capabilities. *Id.* at 484. By contrast, plaintiff here does not allege any particularized facts that would render Zuora's generalized statements regarding its business model or products misleading.

each distinct product release, separately noting that Billing's "new Workflow tools enable users to: Automate Billing Tasks" and "Zuora RevPro Continues to Focus on Revenue Automation and ASC 606 Compliance," and ***never once*** discussing integration of the two products. *Id.* The law is clear: statements are not actionable where, as here, "the reasons Plaintiffs offer as to why many of the statements are false or misleading bear no connection to the substance of the statements." *Veal v. LendingClub Corp.*, 2019 WL 5698072, at *12 (N.D. Cal. Nov. 4, 2019); *see also Monachelli v. Hortonworks, Inc.*, 225 F. Supp. 3d 1045, 1054-55 (N.D. Cal. 2016) (Illston, J.) (dismissing claims where plaintiff failed to plead that allegedly undisclosed facts, even if taken as true, did not contradict public statements).[6]

Moreover, even if the statements could be read as plaintiff suggests (and they cannot), plaintiff's claim would still fail because plaintiff does not identify any facts to support its conclusion that Zuora and RevPro could not be integrated, much less that Mr. Tzuo or Mr. Sloat knew that to be the case. *See* Sec. III.A. Indeed, the Opposition and CAC acknowledge that some customers were able to integrate the two products. *See* CAC ¶¶ 35, 108, 158; Opp. at 4, 6.

Finally, the Opposition makes no effort to reconcile its theory with the numerous express, detailed risk disclosures in Zuora's securities filings, which specifically warned investors that, *inter alia*, deployment was complex and lengthy and "unexpected complexities or delays associated with deployment" could result in customer dissatisfaction and negatively affect the business, operating results, financial condition, and growth prospects. *See* MPA at 11-12. Instead, plaintiff claims that the risk factors should have also warned "investors that Zuora lacked

---

[6] By contrast, the cases cited by plaintiff involved allegations that specifically contradicted affirmative statements. *See In re Daou Sys. Inc.*, 411 F.3d 1006, 1020 (9th Cir. 2005) (statement that employee turnover was 6.8% was contradicted by allegation that actual turnover exceeded 40%); *In re Impinj, Inc. Sec. Litig.*, 2019 WL 4917101, at *2 (W.D. Wash. Oct. 4, 2019) (representation that product could track location within 1.5 feet was contradicted by allegation that it could not even track within the correct room); *Schueneman v. Arena Pharm, Inc.*, 840 F.3d 698, 706 (9th Cir. 2016) (statement that drug was safe and referring to animal studies was contradicted by allegation that animal study showed the drug caused brain and skin cancer in rats); *In re Atossa Genetics, Inc. Sec. Litig.*, 868 F.3d 784, 794-96 (9th Cir. 2017) (representation that product had "gone through all of the FDA clearance process" was contradicted by allegation that FDA had notified company that product was not cleared); *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, at *9-10 (C.D. Cal. Feb. 27, 2015) (representation that product for a specific contract was completed and that $67 million order was "in backlog" was contradicted by allegations showing that product was far from complete and order would be canceled).

a Zuora-RevPro integration altogether such that virtually no customer could operate the combined product." Opp. at 12. Plaintiff pleads no facts to support that assertion.[7] In any case, the legal standard does not require a company to have predicted the exact manner in which the disclosed risks would come to pass; it is sufficient that risk disclosures are specific, detailed, and cover the allegedly undisclosed facts. *See In re Violin Memory Sec. Litig.*, 2014 WL 5525946, at *12-13 (N.D. Cal. Oct. 31, 2014); *see also Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) (statements must be read "in light of all [the] surrounding text, including hedges, disclaimers, and apparently conflicting information").

In sum, plaintiff's failure to plead that any statement "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists" is fatal to its claims. *Monachelli*, 225 F. Supp. 3d at 1054-55; *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1099-1100 (N.D. Cal. 2013).

### B. The Opposition Fails to Establish That Any Statements Regarding Zuora's Growth Strategy Are Actionable

The opening papers challenged plaintiff to explain how statements regarding Zuora's growth strategy of "increasing transaction volume and upsells and cross-sells with additional products and services" were actionable in light of (1) the controlling authority holding that such statements are nonactionable puffery, (2) the lack of any particularized facts showing the statements were false, and (3) the protections of the bespeaks caution doctrine and safe harbor. MPA 12-14. Plaintiff fails to meet that challenge.

***First***, the Opposition completely ignores the cases cited by defendants holding that statements of corporate strategy regarding upselling and cross-selling are not actionable as a matter of law. *See* MPA at 12; *see, e.g.*, *Monachelli*, 225 F. Supp. 3d at 1055. Plaintiff does not cite a single case holding otherwise.

***Second***, the Opposition's conclusory assertion that "upselling was not a viable or

---

[7] *In re Quality Systems, Inc. Sec. Litig.*, 865 F.3d 1130, 1140 (9th Cir. 2017) is inapposite. *Quality Systems* does not excuse an inability to plead falsity. To the contrary, it merely asks courts to evaluate non-forward-looking portions of "mixed" statements (statements with distinctly forward and present/historical parts) as they do any other statement. *See* 865 F.3d at 1142-45. Neither *Provenz v. Miller*, 102 F.3d 1478, 1492-93 (9th Cir. 1996) nor *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) discusses risk factors or is otherwise relevant.

FENWICK & WEST LLP
ATTORNEYS AT LAW

sustainable method for revenue growth" fails to plead falsity. *See In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1258 (N.D. Cal. 2019) (plaintiff's "burden to show falsity, not inadequacy" of the Company's stated strategy). Plaintiff concedes that Zuora did successfully cross-sell its separate products (Opp. at 14), and Zuora's financial results reflect growth consistent with its guidance – facts that dispose of plaintiff's claim. *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1094 (N.D. Cal. 1994) (no fraud where "predictions proved to be accurate"), *aff'd*, 95 F.3d 922 (9th Cir. 1996).

***Third,*** plaintiff ignores both the statements themselves, which plainly discussed *future* strategies for expanding Zuora's business, *and* the ample case law confirming that those statements are forward-looking and protected by the PLSRA's safe harbor or the bespeaks caution doctrine. *See* MPA at 14-15 (citing cases); Marshall Dec. Ex. B at 106 (Zuora aimed to grow through expanding relationships with existing customers by "increasing transaction volume and upsells and cross-sells with additional products and services"). In their place, the Opposition cobbles together snippets from various statements and then claims that Zuora made "statements about their ability to and success in upselling." Opp. at 12-13; 15. The law, however, is clear: statements must be read in context; doing so here confirms they are forward-looking and non-actionable.[8] *See Omnicare*, 575 U.S. at 190-91 (statements must be read in context). The out-of-circuit cases cited by plaintiff confirm that conclusion. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 705 (7th Cir. 2008) (finding that a statement that "sales are '*still* going strong'" did not entitle defendant to safe harbor protection as to "the statement's representation *concerning current sales*") (emphasis added).

Plaintiff cannot demonstrate that Zuora's extensive, specific risk disclosures – which warned investors, among other things, that its programs "may not have the desired effect and may not expand sales" and that deployment failures could adversely impact the ability to "upsell" – did not provide meaningful cautionary language. *See* MPA at 14; Marshall Decl. Ex. B at 16,

---

[8] For example, plaintiff lifts the phrase "tailwinds in the business" from the May 31, 2018 earnings call transcript and suggests that it amounted to a representation about the Company's ability to cross-sell or upsell its products. But read in context, the statement said no such thing. CAC ¶ 196 ("We're not breaking out the RevPro-specific billings and revenue. However, we do see a lot of tailwinds in the business.").

18. The Opposition does not even address the actual disclosures, relying solely on the argument that Zuora's warnings were inadequate because they did not mention the Billing-RevPro integration. *See* Opp. at 15-16. That is not the law; *see Violin Memory*, 2014 WL 5525946, at *12-14 (risk disclosures are meaningful so long as they are sufficiently comprehensive to cover the alleged misrepresentations).[9]

### C. The Opposition Fails to Establish That Any Statements Regarding RevPro Are Actionable

Finally, the Opposition makes no meaningful effort to address defendants' arguments or legal authorities detailing why plaintiff's allegations regarding the June 5, 2018 tweet or statements regarding the functionality of and potential demand for RevPro fail to state a claim.

*June 5, 2018 Tweet.* The June 5, 2018 tweet which promoted a Zuora user conference is a paradigmatic example of nonactionable puffery. *See* MPA at 15. Plaintiff does not seriously argue otherwise, or address the cases which establish that it is nonactionable puffery. Instead, plaintiff pulls a single phrase, "Zuora + RevPro integration,"[10] out of context – and then claims that "there is nothing unclear or equivocal" about it. Opp. at 9. But the Opposition completely fails to demonstrate how, read in context, this tweet – which is the ***only*** challenged statement in the ***entire*** CAC that even ***mentions*** the word integration – makes any representation whatsoever, let alone one that is false and misleading. Plaintiff likewise does not identify a single contemporaneous fact to suggest that the tweet was false. *See* Sec. III. A.

---

[9] Neither of the cases plaintiff cites are to the contrary. In *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005), the defendant company's "warnings" about undisclosed efficacy studies consisted of (i) referring to the possibility of "additional clinical trials" and (ii) "risks set forth from time to time in [the company's] SEC filings." The court concluded that neither was sufficiently specific to warn investors that clinical studies already showed the drug to be ineffective. *Id.* at 1035. In *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 947 (9th Cir. 2005), the Ninth Circuit rejected application of the "bespeaks caution" doctrine where the alleged misstatement was deemed by the court to be a statement of historic fact.

[10] The Opposition parrots these three words *twelve times* and claims that Zuora "*repeatedly* promoted a non-existent 'Zuora + RevPro integration.'" Opp. at 2 (emphasis added). In fact, Zuora used the phrase ***only once***, in a single tweet, and the full text of the tweet (which the Opposition ignores) speaks for itself: "Don't underestimate the complexity of revenue recognition. The deep dark depths are very, very complex! Thank goodness for Zuora + RevPro integration for seamless order-to-revenue process! #Subscribed #revrec." *See* MPA at 15; *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal. 2012) (statement that company "underscores its strategy to provide a seamless, secure, context-aware experience across its product portfolio" is nonactionable).

***Statements Regarding Functionality.*** The moving papers demonstrated that statements regarding RevPro's functionality were not actionable both because they are puffery and because plaintiff never challenges their accuracy. Plaintiff does not purport to allege that RevPro could not "process in real time" or otherwise perform as described, and plaintiff concedes that RevPro was deployed at over 100 customers. CAC ¶¶ 35, 58, 151-158. The Opposition does not identify a single contemporaneous fact to the contrary, instead confirming that RevPro could process revenue and was deployed as a separate standalone product. Opp. at 11.

***Statements Regarding Demand for RevPro.*** Plaintiff has seemingly abandoned its claims based on statements regarding future demand for RevPro, mentioning the statements briefly in a discussion of cross-selling and then never addressing any of defendants' arguments. *See* Opp. at 12. The Opposition does not address any of the case law establishing that these statements are classic puffery, and that to the extent they address future demand, they are forward-looking statements protected by the safe harbor. *See* MPA at 16-17 (citing cases). Accordingly, plaintiff has entirely failed to meet its burden to plead that any of these statements are false or misleading.

## III. PLAINTIFF FAILS TO ALLEGE A STRONG INFERENCE OF SCIENTER

### A. Repeating Deficient Confidential Witness Allegations Is No Substitute for Contemporaneous Facts and Does Not Support a Cogent and Compelling Inference of Scienter

Defendants' opening brief highlighted the CAC's complete lack of any particularized facts that could possibly establish Mr. Tzuo or Mr. Sloat's purported mental state at the time of any statement, and challenged plaintiff to meet its burden to identify (1) allegations establishing any CW's personal knowledge or reliability and (2) specific, contemporaneous facts that could possibly suggest that Mr. Tzuo or Mr. Sloat knew that any statement was false or misleading when made. The Opposition confirms that plaintiff has not and cannot meet that challenge.

The Opposition does not meaningfully address the Ninth Circuit authority defendants cited establishing that the CW allegations are deficient. *See* MPA at 18-22. Instead, plaintiff brushes past this controlling authority, offering the blanket assertion in various footnotes that unlike in those cases, plaintiff here alleges "direct contact" between the CWs and Mr. Tzuo and Mr. Sloat and provides "much more detail" or "the exact" or "specific details." Opp. at 17 nn.6, 7

and 21, nn.12, 13, 14.  Not so.  There is not one allegation in the CAC establishing direct contact, a fact the Opposition itself confirms as none of the paragraphs plaintiff cites allege any direct contact between any CW and either Mr. Tzuo or Mr. Sloat.  *See* CAC ¶ 75 (Mr. Sloat spoke at a "monthly" meeting that CW-1 does not allege he attended), ¶ 76 (Mr. Sloat "would attend" "internal forums" with the "C-suite" that none of the CWs attended), ¶ 101 (Mr. Tzuo and Mr. Sloat participated in "weekly calls with the Company's Vice Presidents," which did not include any of the CWs; CW-1 was pulled into a "couple of executive meetings" with unspecified "founders" of Zuora (but not Mr. Tzuo or Mr. Sloat)).[11]  Plaintiff also asserts – with no factual support – that CW1 had personal knowledge, but then describes an allegation that CW1 *passed information* to a supervisor who may or may not have had calls with Mr. Tzuo or Mr. Sloat.  Opp. at 19.  That plaintiff does not allege that CW1 had *any knowledge* of whether this information was ever passed to Mr. Tzuo or Mr. Sloat renders the allegation entirely irrelevant to scienter.  *See id.*

The Opposition also confirms that plaintiff cannot identify any of the specific details necessary to plead scienter.  Although the Opposition spends pages repeating the CAC's conclusory allegations, repetition is no substitute for well-pleaded facts.  For example, plaintiff makes the boilerplate assertions that defendants "attended meetings, as well as received, reviewed and had access to reports and data, which undermined their representations," that "project meetings" might have been held at some unspecified times, and that "Sloat received Google documents and email threads tracking the project's status."  Opp. at 18-19.  But the Opposition does not cite a *single* allegation that a *single* fact was *ever* conveyed to Mr. Tzuo or Mr. Sloat that would have rendered any of the challenged statements false or misleading.  *See Monachelli*, 225 F. Supp. 3d at 1057-58 (no scienter where CW allegations do not adequately establish that any

---

[11] Plaintiff references legal standards that the CAC does not meet.  Although the Opposition cites a case stating that scienter may be found when a CW reports directly to an executive, the Opposition then proceeds to recount the alleged reporting structure for CW-2, who, based on plaintiff's own allegations, *did not report directly* to Mr. Sloat.  *See* Opp. at 18 n.8.  Moreover, plaintiff's transparent attempt to promote the CWs to "executives" is defied by allegations establishing they were lower-ranking employees, several layers below Mr. Tzuo and Mr. Sloat.  *See* ¶¶ 60, 65, 103, 110.  And although plaintiff tries to ascribe knowledge to Mr. Tzuo and Mr. Sloat by referring to the "C-suite," "executives," or "founders" (Opp. at 19), no CW actually alleges that he or she knows that relevant facts were conveyed to Mr. Tzuo or Mr. Sloat.

statement made by defendants was false); *Bao v. SolarCity Corp.*, 2016 WL 54133, at *6 (N.D. Cal. Jan. 5, 2016) (CW allegations that are not specific as to time cannot contribute to scienter); *Wozniak v. Align Tech., Inc.*, 2011 WL 2269418, at *12 (N.D. Cal. June 8, 2011) (vague and conclusory allegations as to meetings with executives not indicative of scienter).

Plaintiff's repetitive, generic discussion of the alleged technical projects to integrate Billing and RevPro is likewise devoid of any of the requisite specifics and, if anything, confirms that until the Company's announcement on May 30, 2019, Zuora was diligently working on integration. *See* Opp. at 17-20; MPA at 19-20. Moreover, to the extent that plaintiff alleges such projects faced difficulties, that alone "does not make a lie out of any of the alleged false statements." *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001).

Similarly, the opposition confirms that the CWs' allegations that "clients were upset" are wholly conclusory and unsupported by a single well-pleaded fact, and are ultimately irrelevant. For example, plaintiff claims CW3 "observed" a November or December 2018 email "thread" regarding a customer complaint, but does not allege that CW3 was copied on the email or that he actually read it, or provide any of the details that would provide credibility to its account. Opp. at 20; *see Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009) (CW statements that do not reflect "reliable personal knowledge of the defendants' mental state" fail to support scienter). None of the other allegations are supported by particularized facts, and even if they were, plaintiff failed to explain how they could render any of the challenged statements false or misleading. *See* MPA at 20.[12]

### B. Statements Identified in the Opposition Are Not "Admissions" and Fail to Show Scienter

Plaintiff ascribes various "admissions" to Mr. Sloat or Mr. Tzuo that supposedly support

---

[12] Unlike here, in each case cited by plaintiff, the CWs had direct, personal knowledge of what defendants knew based on first-hand observation or attendance at meetings with the defendants. *See City of Miami Gen. Emps.' & Sanitation Emps.' Ret. Trust v. RH, Inc.*, 302 F. Supp. 3d 1028, 1043-44 (N.D. Cal. 2018) (CWs alleged they personally observed defendant obtain knowledge of allegedly omitted fact); *Curry v. Hansen Med., Inc.*, 2012 WL 3242447, at *9 (N.D. Cal. Aug. 10, 2012) (CWs alleged they attended weekly meetings with defendants where allegedly omitted facts were discussed); *Hatamian v. AMD, Inc.*, 87 F. Supp. 3d 1149, 1164 (N.D. Cal. 2015) (CWs alleged they attended daily and weekly meetings with defendants where allegedly omitted facts were discussed).

an inference of scienter (Opp. 22-23), but none of the comments demonstrate what either executive knew at the time of the alleged Class Period misstatements. *See In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) (later statement must "directly contradict[] or [be] inconsistent with the earlier statement"); *Kelly*, 2015 WL 1967233, at *9-10 (no admission where later statement did not contradict any alleged misstatements).[13] Mr. Sloat's supposed statement "in early 2018," prior to the start of the Class Period, that "Zuora needed to get its act together with RevPro" does not even mention integration and, if anything, suggests that the Company was focused on supporting RevPro.[14] Likewise, the allegation that Mr. Tzuo made a decision to launch an integration project following a "proof of concept" (Opp. 22) in no way suggests that he knew integration was doomed to fail, but just the opposite – that Zuora was dedicating resources and working toward integration. And plaintiff's reliance on the May 30 statement is equally misplaced; the statement confirmed that RevPro had been successfully implemented at "close to 100 customers" prior to ASC 606, that Zuora was working on integration between RevPro and Billing, and that integration was "taking longer than expected" – nothing that contradicts an earlier statement. MPA at 21-22.

### C. The Opposition Has No Answer to the Fact that Defendants' Stock Sales Negate Scienter

Plaintiff has no answer for the fact that the CAC's trading allegations negate scienter. *See* MPA 22-23. Plaintiff concedes that Mr. Tzuo ***did not sell a* single share of stock** during the Class Period and remained one of Zuora's largest shareholders – facts that negate scienter. Plaintiff also concedes that Mr. Sloat's sales were made pursuant to a non-discretionary 10b5-1 and fails to identify any factual support to overcome this "innocent" explanation for stock sales.

---

[13] Plaintiff ignores these decisions and cites no cases finding that similar statements are admissions. *Cf. In re VistaCare, Inc. Sec. Litig.*, 2005 WL 8160681, at *2 (D. Ariz. Aug. 19, 2005) (noting plaintiff's admission theory based on allegations that company "implemented aggressive corrective action" to remedy undisclosed Medicare Cap violations).

[14] Indeed, the remark is entirely consistent with the Company's disclosures that its solution is deployed "into a broad range of complex workflows," and that the Company's "future success" would "depend in part on [Zuora's] ability to increase both the speed and success of our deployments, by . . . increasing our ability to integrate into large-scale, complex technology environments" (Marshall Decl. Ex. B at 18) and that Zuora was "still determining how best to market, price and support adoption" of RevPro (*id.* at 22).

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1069 (N.D. Cal. 2012). In fact, the Opposition confirms that Mr. Sloat's sales followed earning releases – a "common practice among corporate executives" – and that he retained over half of his shares during the Class Period; all of which negates scienter. Opp. at 23-24; *see Brodsky v. Yahoo! Inc.,* 630 F. Supp. 2d 1104, 1108-19 (N.D. Cal 2009); MPA at 23.[15] The Opposition likewise fails to explain how any sales made by Mr. Diouane – who is not named in this action – are relevant or unusual.[16]

### D. The Opposition Fails to Identify a Basis for Invoking Core Operations

Plaintiff's attempt to invoke the unpleaded "core operations" theory (Opp. at 24-25) falls flat. In order to invoke the core operations theory, plaintiff must put forth specific facts to show "actual access" to information contradicting the challenged statements. *Fadia v. FireEye, Inc.*, 2016 WL 6679806, at *16 (N.D. Cal. Nov. 14, 2016) (rejecting reliance on core operations theory based on general allegations of access to information). Here, plaintiff's generic allegations that Mr. Sloat and Mr. Tzuo received "reports" or attended "meetings" are decisively insufficient. *See Zucco*, 552 F.3d at 1000-01 (complaint must allege facts showing that falsity would have been "patently obvious" or that defendants had "actual access" to information specifically contradicting the challenged statements"); *Fadia*, 2016 WL 6679806, at *16 ("At a minimum, Plaintiffs needed to have provided information about precisely what was said by the parties in these meetings, which facts the Defendants were exposed to, and why this exposure supports an inference of scienter."); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1064 (9th Cir. 2014) (rejecting presumption of knowledge of financial impact of chip defect affecting "flagship

---

[15] Plaintiff largely ignores the cases cited in the opening papers which establish that such sales are not suspicious, and the lone case cited by plaintiff does not compel a different conclusion. *See Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1313 (C.D. Cal. 1996) (plaintiff met its burden of alleging that sales of 20% of defendant's holding were unusual where defendant had not sold any shares in prior 3 years and where sales were made when the defendants' "extreme overstatement of revenues on the only product [it] marketed" created an "unprecedented rise" in the stock price).

[16] Plaintiff confirms that Mr. Diouane retained three-quarters of his total holdings at the end of the class period (Opp. at 24; CAC ¶ 140) and fails to identify anything suspicious in his sales. Mr. Diouane's departure and the alleged changes in sales structure are likewise irrelevant, as plaintiff does not identify anything more than the "bare fact" of the resignation, which contributes nothing to scienter. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 6441843, at *14 (N.D. Cal. Dec. 9, 2013).

product" and problems with "two largest customers"), *cert. denied*, 135 S. Ct. 2349 (2015); *Colyer v. AcelRx Pharm., Inc.,* 2015 WL 7566809, at *12 (N.D. Cal. Nov. 25, 2015) (insufficient to claim that key product was at issue). In short, this is not one of the "exceedingly rare" cases where the core operations theory applies.[17] *S. Ferry LP, # 2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008).[18]

### E. Holistic Review Confirms Plaintiff's Inability to Plead Scienter

Considered individually or holistically, plaintiff's scienter allegations fall far short of supporting the required "strong inference of scienter." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Moreover, as demonstrated in the opening papers, taking all reasonable inferences, including those unfavorable to plaintiff as the law requires, it is clear that defendants competing inference far more plausible. *See id.* at 328; *see also Monachelli*, 225 F. Supp. 3d at 1057-58.[19]

## IV. CONCLUSION

For all of the reasons stated above and in their opening brief, defendants respectfully request that this Court dismiss plaintiff's CAC in its entirety with prejudice.

Dated: March 18, 2020          FENWICK & WEST LLP

By: */s/ Susan Samuels Muck*

Susan Samuels Muck

Attorneys for Defendants Zuora, Inc., Tien Tzuo, and Tyler Sloat

---

[17] Plaintiff's "corporate" scienter theory fails for the same reasons; plaintiff comes nowhere close to showing statements that are "so dramatically false" corporate officials would have known their falsity upon publication. *See NVIDIA*, 768 F. 3d at 1063.

[18] The cases cited in the opposition confirm this conclusion. *See RH, Inc.*, 302 F. Supp. 3d at 1045 (court found that scienter was sufficiently alleged without relying on core operations theory where "confluence of these specific allegations" met "PSLRA's high standard for alleging scienter"); *Impax*, 36 F. Supp. 3d at 970 (CEO and CFO of pharmaceutical company would have been aware of FDA Warning Letters and failed inspections).

[19] Given plaintiff's failure to set forth a predicate violation of Section 10(b), the control person claim must also be dismissed. *Webb v. SolarCity Corp.*, 884 F.3d 844 (9th Cir. 2018).