1 | Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
2 | 715 Hearst Ave., Suite 202
Berkeley, CA 94710
3 | Telephone: (510) 725-3000
Facsimile: (510) 725-3001
4 | lucasg@hbsslaw.com

5 | *Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

6 |
7 | [Additional counsel on signature page]

8 | UNITED STATES DISTRICT COURT

9 | NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ROBERTS, Individually and On Behalf Of All Other Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | No. 3:19-cv-03422-SI<br><br>**STIPULATED PROTOCOL REGARDING ELECTRONICALLY STORED INFORMATION; [PROPOSED] ORDER**<br><br>Judge: Hon. Susan Illston<br>Ctrm: 1 – 17th Floor |

The parties have agreed to the terms of this Stipulation Regarding Electronically Stored Information:

1. **Introduction.** Pursuant to this Court's Guidelines for the Discovery of Electronically Stored Information, and Federal Rules of Civil Procedure 16 and 26(f), the parties have conferred regarding matters affecting the discovery of electronically stored information ("ESI" or "e-discovery") and agreed on the following procedures and guidelines regarding the production of ESI in this case. ESI, as used herein, has the same meaning as in Federal Rule of Civil Procedure 34 and refers to computer-generated information or data of any kind stored in or on any storage media located on computers, cellular telephones, file servers, disks, tapes, or other real or virtual devices or media. This stipulation relates solely to the general protocol of identifying and producing ESI. Any party may bring a motion to modify or clarify the application of this Order to particular ESI or otherwise.

2. **Cooperation.** The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **E-Discovery Coordinator.** The parties will each identify an "E-Discovery Coordinator" to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each E-Discovery Coordinator will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the E-Discovery Coordinators, as needed, to confer about ESI and to help resolve disputes without Court intervention.

4. **Identification and Preservation of Relevant Systems and Custodians.** The parties have discussed their preservation obligations and needs and agree that following the deadline for Initial Disclosures under Federal Rule of Civil Procedure 26(a)(1), the parties will:

    a.    Meet and confer to attempt to agree on the relevant period of time for which ESI will be preserved and searched;

b. Meet and confer to attempt to agree on a list of the most likely custodians of relevant ESI or, in the alternative, the job descriptions of the most likely custodians;

c. Meet and confer to attempt to agree on the number of custodians per party for whom ESI will be preserved and searched;

d. Meet and confer to attempt to agree on likely relevant data sources, including meeting and conferring to attempt to agree on any data sources that the parties agree are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B);

e. Meet and confer to attempt to agree on whether discovery is limited to certain custodians or data sources in the first instance.

Where disputes arise concerning the production of allegedly inaccessible ESI, the parties shall follow the procedures set forth in the Court's Standing Order.

5. **Searches: Key Words and Other Search Methodologies.** To the extent that key words or other methodologies are to be used in limiting the universe of potentially responsive documents to be reviewed in advance of production, the parties shall meet and confer to develop a mutually agreeable list of search terms and protocols. Focused terms and queries, rather than overbroad queries should be employed.

6. **Format for Production.** Unless the parties agree otherwise, the provisions set forth in this paragraph shall govern the format for production of ESI: the parties will produce electronic documents in Tagged Image File Format (TIFF or .TIF), subject to paragraphs 7, 8, 9, 11 and 12 below. Each image should have a unique file name, which is the Bates number of the page. TIFF files shall be produced in single-page Group IV format, with a minimum resolution of 300 dpi (except that any native file that is in the form of a TIFF image need not be scanned or reprocessed simply to achieve such minimum resolution when produced). Certain ESI, as specified in Paragraph 10, will be produced in native format. After initial production in TIFF format is complete, a party may request in writing that the producing party produce additional specific documents in their native format. Should the parties not reach agreement after meeting and conferring in good faith, the requesting party may

2
ESI PROTOCOL                                                                                            Case No. 3:19-cv-03422-SI

move the Court for such production. Each document production will be accompanied by two load files: an image load file and a metadata load file. Those load files shall be produced in Concordance format (.DAT file using Concordance standard delimiters for the metadata load files and .OPT file using Concordance standard fields for the image load files). The image load file shall provide image and document break information for the TIFF files produced that correspond to the beginning Bates numbers contained in the metadata load file. Every TIFF file in each production must be referenced in the production's corresponding image load file. The total number of TIFF files referenced in a production's image load file should match the number of TIFF files in the production. In addition to any metadata collected and produced pursuant to paragraph 7 below, the metadata load file for each production shall provide the Bates numbers and the Bates number attachment range for email or other documents containing attachments. The producing party will produce an extracted text file for each electronic document and an Optical Character Recognition ("OCR") text file for each imaged paper document. For documents that contain redactions, the producing party will provide an OCR text for the unredacted portions of such documents. All non-redacted documents are to be provided with multi-page searchable text (.TXT) files. The OCR text files and image load files should indicate page breaks, to the extent possible.

7. **Metadata.** During the process of converting ESI from the electronic format of the application in which the ESI is normally created, viewed, and/or modified to TIFF, metadata values should be extracted and produced in a load file ("metadata load file"). To the extent they are available in collected data, and are not otherwise redacted, the metadata values that are to be extracted and produced in the metadata load files are:

| Field Name | Description | Data Type | Example |
|---|---|---|---|
| Begin Bates | Beginning Bates number of first page of a document | Text | ABCD000001 |
| End Bates | Ending Bates number of last page of a document<br><br>**This field should be populated for single-page items. | Text | ABCD000003 |
| Begin Family | Begin Bates of parent document of family of attachments | Text | ABCD000001 |
| End Family | End Bates of last attachment of family | Text | ABCD000004 |
| Pages | Number of Bates stamped pages for the PDF image each document. | Number | 3 |
| NativePath | Relative file path of native record within production, including filename and extension of native file within the production. Only for documents produced in native format. | Text | .\VOL001\natives\001\ABCD000001.xlsx |
| TextPath | Relative file path of text record within production, including filename and extension of the text file within the production. | Text | .\VOL001\text\001\ABCD000001.txt |
| Redacted | If this document has redactions (values: Y or N) | Text | Y |
| All Custodians | For deduplicated documents, list of all custodians the duplicate copy was collected from | | |
| Author | Creator of document | Text | Jones |
| Bcc | Additional blind recipients of an email (Blind Carbon Copy) | Text | bob@acme.com |
| Cc | Additional recipients of email (Carbon Copy) | Text | sue@acme.com |
| Custodian | Name of person from whom documents were collected | Text | Jones |
| Date Created | Datetime document was created | Datetime | 07/21/1969 02:56:00 |

| | | | |
|---|---|---|---|
| Date Modified | Datetime document was last modified | Datetime | 07/21/1969 02:56:00 |
| Date Received | Datetime document was received | Datetime | 07/21/1969 02:56:00 |
| Date Sent | Datetime an email was sent | Datetime | 07/21/1969 02:56:00 |
| File Extension | The suffix at the end of the native filename indicating file type | Text | .docx<br>.pdf<br>.xlsx |
| Filename | Original filename of native document, including extension | Text | interesting_spreadsheet.xlsx |
| File Path | Original source file path, including location, folder name, filename, and extension | Text | media.zip//jones.pst//sent mail/444.eml//interesting_spreadsheet.xlsx |
| From | Sender | Text | jones@acme.com |
| Message Id | Unique message id from internet headers | Text | |
| MD5 Hash | MD5 Hash value of Document | MD5 Hash | |
| Subject | Subject line | Text | Check this out! |
| To | Recipient | Text | mary@acme.com |
| Production Volume | Production volume | Text | |
| Confidentiality | User-generated field that will indicated confidentiality | Text | "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL" as applicable. Otherwise, blank. |
| Track Changes – Word Files Only | Indicates whether a document has track changes (values: Y or N) | Text | Y |

To the extent reasonably available, with respect to ESI gathered from an individual's hard drive or network share, metadata sufficient to identify the individual custodian from whose hard drive or network share such ESI has been gathered will be provided in the Custodian field. Data that is not collected from an individual's hard drive or network share and is not reasonably identifiable as to source will be designated as "company documents" in the Custodian field.

The Order does not create any obligation to create or manually code fields that are not automatically rendered or generated by the processing of the ESI, or that do not exist as part of the

original metadata of the document; provided, however, that the producing party must populate, where reasonably available, the (a) Begin Bates, (b)End Bates, (c) Begin Family, (d) End Family, (e) Custodian, (f) NativePath, if applicable, (g) TextPath, (h) Redacted, (j) Production Volume and (k) Confidentiality fields.  Where reasonably available, these fields should be populated for all produced ESI.

8. **Production of E-Discovery with Attachments.**  For all e-discovery (for example, email) that contains an attachment, to the extent practicable, such e-discovery shall be produced along with attachments in sequential order as part of a family, maintaining the parent-child relationship, although portions of families may be redacted as appropriate.  When available, the following fields should be produced and populated as part of the metadata load file to provide the parent/child or parent/sibling relationship:

Begin Family (first Bates number of family group)

End Family (Last Bates number of attachment range (*i.e.*, Bates number of last page of attachment.

9. **De-Duplication.** A party is only required to produce a single copy of any responsive document. A party may de-duplicate ESI across each party's custodians or sources, but if that option is exercised, the producing party must identify all custodians who were in possession of the de-duplicated document in the All Custodians metadata field specified in paragraph 7.  De-duplication shall not break apart families and shall be performed at a family level.  A duplicate or a document will not be removed as a duplicate if one version of it includes an attachment while another version does not include an attachment.  De-duplicated originals shall be preserved and made available for inspection and copying upon reasonable request.

10. **Production of Native Files.**  Spreadsheet application files (e.g., MS Excel, .csv., etc.) shall be produced in native format.  For files produced in native format, the producing party shall provide a single-page TIFF slipsheet with the applicable Bates stamp indicating that a native item was produced.  The corresponding load (.DAT) file shall include a NativeFileLink which provides the relative path linking information for each native file that is produced.

1    Word files will be printed to TIFF images to show tracked changes, redlines and comments.
MS PowerPoint will be printed to TIFF images to show any speaker notes. Upon request, if not unduly burdensome, the producing party shall produce documents identified by Bates Numbers in native format, provided however that the requesting party shall not make mass, indiscriminate requests.

11. **Production of Hard Copy Documents**. To the extent possible, all hard copy documents will be scanned and produced in electronic form. Unless reasonably requested pursuant to this Order, hard copy documents in color need not be scanned in color. Scanned color documents will be provided in JPG file format.

*Unitization of Paper Document:* To the extent practicable, hard copy documents shall be produced in the manner in which those documents were kept in the ordinary course of business.

*Identification*: Where a document or group of documents has an identification spine, "post-it note," or any other label, the information on the label shall be scanned and produced to the extent practicable.

*Custodian Identification:* The parties will utilize reasonable best efforts to ensure that paper records for a particular custodian or department level custodian, which are included in a single production, are produced in consecutive Bates stamp order.

*Metadata*: The metadata associated with each hard copy document need only identify the Bates number, the custodian associated with the hard copy document and any Confidential Designation or Redaction applied to that document.

*Hard-Copy Only Available:* If the producing party maintains the documents solely in hard copy form, then the producing party shall elect either to (i) copy the documents and produce a set to the requesting parties or (ii) make the documents available to the requesting parties' counsel for inspection and copying at a reasonably accessible location. In the event a producing party chooses to make documents available for inspection and copying, the parties shall negotiate in good faith to determine appropriate procedures applicable to that process.

12. **Color Documents**. If a receiving party reasonably believes it is necessary to view an original ESI document that contains color text, markings or graphics in its original color to understand its full meaning or content, then the receiving party may request that the ESI document be produced in

color format.  The producing party shall then reproduce such document(s) and/or ESI in color JPEG format, or in native format.  The section also applies to documents that are produced as TIFF images.

13. **Data Contained in Databases or Media Formats**. To the extent that any party requests data or information that is contained in database sources (including database or other structured or aggregated data source or data otherwise maintained by an application) or media sources (including, for example, audio and or video data), without waiving any objection to such a request, the parties will meet and confer to determine whether such data can be produced in existing report formats and without undue burden.   To the extent there are database sources or media sources for which production or data extraction would be unduly burdensome and/or the extracted format is not usable, the parties will meet and confer to determine whether there is a reasonable form of production based on the specific circumstances. If one or more other formats of electronically-stored information come to light that due to their complex nature may not be appropriate for production as TIFF images or as Native files, the parties will meet and confer in good faith to discuss a mutually agreeable production format or formats. Nothing in this paragraph prevents any party from asserting any objection(s) to a request for data or information from database sources or media files including, but not limited to, undue burden, relevance, proportionality, scope, and/or the imposition of costs on the other party.

14. **Bates Numbering.** Each page of a produced e-discovery document will contain a legible Bates number that (1) is unique across the document production, (2) has a constant length (0-padded) across the production, and (3) is sequential within a given document. Each page of a produced e-discovery document will also contain a confidentiality notice, if applicable. If a Bates number or set of Bates numbers is skipped in a production, the producing party will notify the receiving party in its cover letter to the production that the production contains skipped Bates numbers, and the reason for any gaps in the Bates numbering. Both the Bates number and confidentiality notice shall be placed on the page image in a manner that does not conceal or interfere with any information contained on the page. No other stamp or information will be placed on a document other than Bates number, confidentiality notice, and any redactions. This paragraph does not apply to spreadsheets or other files produced in native electronic format.

15. **Proprietary or Special Software**. To the extent that relevant ESI cannot be rendered or reviewed without the use of proprietary or special software, the parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format. Nothing in this paragraph prevents any Party from asserting any objection(s) to a request for ESI, but not limited to, undue burden, relevance, proportionality, scope, and/or the imposition of costs on the other Party.

16. **Redacted E-Discovery.** To the extent a producing party redacts any document, such redaction shall be clearly marked on the TIFF image of the document. Privileged redaction(s) shall specifically identify the reason(s) for such redactions or such information shall be otherwise provided in a list or log.

17. **Confidential Documents.** ESI that contains "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" information shall be handled utilizing the procedures set forth in the Stipulated Protective Order executed by the parties and entered by the Court on [DATE]. If a party converts native files to non-native format or other ESI designated "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" under the Stipulated Protective Order to non-native format, it shall mark the image with the appropriate designation.

18. **Production of Privileged Documents**. Pursuant to Fed. R. Evid. 502(d), the production of a privileged or work-product-protected document, whether inadvertent or otherwise, does not operate as and is not a waiver of privilege or protection from discovery in this case or in any other federal or state proceeding. For example, the mere production of privileged or work-product-protected documents in this case as part of a mass production is not itself a waiver in this case or in any other federal or state proceeding.

19. **Privileged Communications.** Production of privileged documents shall be handled utilizing the procedures set forth in the Stipulated Protective Order executed by the parties and entered by the Court. Privileged communications that post-date the commencement of this action need not be placed on a privilege log. Work product created by or for counsel in this matter after commencement of this lawsuit need not be placed on a privilege log. Communications may be identified on a privilege

log by category, rather than individually, if appropriate and subject to agreement by the parties, which agreement shall not be unreasonably withheld. Privilege logs will comply with Federal Rule of Civil Procedure 26(b)(5)(A).

20. **Modifications.** In the event of individual issues that arise with regard to the identification and production of ESI and ESI-related information, as set forth in this Order, any practice or procedure provided for herein as to such identification and/or production may be varied by written agreement of the parties. The parties shall meet and confer in the event of any dispute over the need for or nature of such variance in practice or procedure, in an effort to reach agreement prior to informing the Court of any unresolved issues.

21. **Other**. Nothing in this Order shall be construed as relieving or expanding the discovery obligations of any party under the Federal Rules of Civil Procedure. The parties do not waive any applicable privileges or immunities, including but not limited to the attorney-client privilege and the attorney work product doctrine, nor do the parties waive any objections as to the relevance, production, discoverability, admissibility, or confidentiality of documents and ESI.

| | | |
|---|---|---|
| 1 | DATED: August 25, 2020 | Respectfully submitted, |
| 2 | | HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | | By: *Lucas E. Gilmore* |
| 4 | | Lucas E. Gilmore (250893)<br>715 Hearst Avenue, Suite 202 |
| 5 | | Berkeley, CA 94710<br>Telephone: (510) 725-3000 |
| 6 | | Facsimile: (510) 725-3001 |
| 7 | | lucasg@hbsslaw.com |
| 8 | | Steve W. Berman (admitted *Pro Hac Vice*)<br>HAGENS BERMAN SOBOL SHAPIRO LLP |
| 9 | | 1301 Second Avenue, Suite 2000<br>Seattle, WA 98101 |
| 10 | | Telephone: (206) 623-7292<br>Facsimile: (206) 623-0594 |
| 11 | | steve@hbsslaw.com |
| 12 | | Peter A. Shaeffer (admitted *Pro Hac Vice*) |
| 13 | | HAGENS BERMAN SOBOL SHAPIRO LLP<br>455 North Cityfront Plaza Drive, Suite 2410 |
| 14 | | Chicago, IL 60611<br>Telephone: (708) 628-4949 |
| 15 | | Facsimile: (708) 628-4950 |
| 16 | | petersh@hbsslaw.com |
| 17 | | *Attorneys for Lead Plaintiff*<br>*New Zealand Methodist Trust Association* |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |
| 26 | | |
| 27 | | |

| | | |
|---|---|---|
| 1 | DATED: August 25, 2020 | FENWICK & WEST LLP |
| 2 | | By:/s/ *Catherine Kevane* |
| 3 | | Susan S. Muck |
| | | Catherine Kevane |
| 4 | | Fiona Y. Tang |
| | | Katherine Marshall |
| 5 | | FENWICK & WEST LLP |
| | | 555 California Street, 12th Floor |
| 6 | | San Francisco, CA 94104 |
| 7 | | Telephone: (415) 875-2325 |
| | | Facsimile: (415) 281-1350 |
| 8 | | smuck@fenwick.com |
| | | ckevane@fenwick.com |
| 9 | | ftang@fenwick.com |
| | | kmarshall@fenwick.com |
| 10 | | |
| 11 | | Felix Lee |
| | | FENWICK & WEST LLP |
| 12 | | 801 California Street |
| | | Mountain View, CA 94041 |
| 13 | | Telephone: (650) 988-8500 |
| | | Facsimile: (650) 938-5200 |
| 14 | | flee@fenwick.com |

*Attorneys for Defendants Zuora, Inc., Tien Tzuo, and Tyler Sloat*

\* \* \*

Pursuant to Civil L.R. 5-1(i)(3), all signatories concur in filing this stipulation.

DATED: August 25, 2020                HAGENS BERMAN SOBOL SHAPIRO LLP


By: /s/ *Lucas E. Gilmore*
        Lucas E. Gilmore

*Attorney for Lead Plaintiff*
*New Zealand Methodist Trust Association*

# [PROPOSED] ORDER

PURSUANT TO STIPULATION, IT IS SO ORDERED.

Dated: _____, 2020

_____
The Honorable Susan Illston
United States District Court Judge