# EXHIBIT 21

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkley, CA 94710
reed@hbsslaw.com
lucasg@hbsslaw.com

Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 981101
steve@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | No. 3:19-cv-03422-SI<br><br>**LEAD PLAINTIFF NEW ZEALAND METHODIST TRUST ASSOCIATION'S RESPONSES AND OBJECTIONS TO DEFENDANTS' SECOND SET OF INTERROGATORIES** |

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Lead Plaintiff New Zealand Methodist Trust Association ("Lead Plaintiff"), by and through its undersigned attorneys, hereby responds and objects to Defendants' Second Set of Interrogatories.

## I.     GENERAL OBJECTIONS

Lead Plaintiff generally objects to the Interrogatories on the following grounds, each of which is expressly incorporated by reference in the answers to the individual Interrogatories below. All answers set forth herein are subject to and without waiver of any of these General Objections:

1.     Lead Plaintiff objects to these Interrogatories to the extent they seek the production of information that is protected by various privileges and protections, including the attorney-client privilege, the attorney work-product doctrine, and any other legally recognized privilege and/or protection. Lead Plaintiff claims such privileges and objects to the production of any information subject thereto. Such production or disclosure as may hereafter occur pursuant to the Interrogatories shall not include any information protected by such privilege, doctrine, or immunity. If any privileged information, or privileged information within a document, is inadvertently produced, Lead Plaintiff does not waive, or intend to waive, the privilege pertaining to such information or documents.

2.     Lead Plaintiff objects to these Interrogatories to the extent they seek to impose obligations on Lead Plaintiff beyond those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Northern District of California, and any order entered by this Court.

3.     Lead Plaintiff objects to these Interrogatories to the extent they are vague, ambiguous, or incomprehensible and, therefore, require Lead Plaintiff to engage in conjecture as to their meaning.

4.     Lead Plaintiff objects to these Interrogatories to the extent they are harassing, unduly burdensome, overly broad, or outside the scope of Fed. R. Civ. P. 26(b)(1) and/or 34 and to the extent the discovery sought is unreasonably cumulative, duplicative, or disproportionate.

5.      Lead Plaintiff objects to the Interrogatories insofar as they seek information that is irrelevant to a claim, a defense, or the subject matter of the litigation or that are not proportional to the needs of the case.

6.      Lead Plaintiff objects to these Interrogatories as unduly burdensome to the extent they seek information that is obtainable from sources that are more convenient, less burdensome or less expensive; call for information already in the possession of any of the Defendants; or seek information that is publicly available.

7.      Lead Plaintiff objects to these Interrogatories to the extent they seek information not in its possession, custody, or control.

8.      Lead Plaintiff objects to the Interrogatories to the extent they purport to request information or documents from absent class members or purport to require Lead Plaintiff to provide information or documents on behalf of absent class members, as discovery from absent class members is improper at this time. To the extent Lead Plaintiff provides answers or produces information or documents in answer to these Interrogatories, such answers, information, and/or documents will be produced solely on Lead Plaintiff's behalf. Lead Plaintiff does not respond and does not intend to respond on behalf of any member of the putative class.

9.      Lead Plaintiff objects to these Interrogatories to the extent they seek or would require the production of confidential information regarding Lead Plaintiff's financial affairs unrelated to Zuora. Such information is not relevant to the subject matter of this action, to any claim or defense of any party, to any issues surrounding the merits of this litigation, or to any issue of class certification under Fed. R. Civ. P. 23. Nor is such information proportional to the needs of the case.

10.      Lead Plaintiff objects to the Interrogatories to the extent they exceed the number of interrogatories permitted under Fed. R. Civ. P. 23 and/or otherwise agreed to by the parties. Several of the Interrogatories contain discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories. Lead Plaintiff reserves the right to refuse to answer any Interrogatories that exceed the established limit in this Action.

11. Lead Plaintiff objects to these Interrogatories to the extent the substance of any Interrogatory takes the form of a contention interrogatory. Contention discovery has been held to be inappropriate before the substantial completion of pertinent fact and expert discovery. *See, e.g.*, *In re Convergent Technologies Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985); *Amgen Inc., et al. v. Sandoz Inc., et al.*, No. 14-cv-04741, 2016 U.S. Dist. LEXIS 31116, at *7-10, 2016 WL 913105, at *2-3 (N.D. Cal. Mar. 10, 2016). Discovery as to Defendants remains ongoing. Lead Plaintiff has propounded requests for admission to Defendants and have issued subpoenas for documents to third parties, all of which remain outstanding. Further, Lead Plaintiff's depositions of witnesses is just beginning. Lead Plaintiff therefore objects to Defendants' contention interrogatories as premature.

12. Lead Plaintiff objects to these Interrogatories to the extent the substance of any Interrogatory taking the form of a contention interrogatory calls for Lead Plaintiff to "state 'every fact' or 'all facts' supporting identified allegations or defenses," as they such interrogatories, as constructed, are overbroad and unduly burdensome. *Amgen Inc. v. Sandoz Inc.*, No. 14-cv-04741, 2017 U.S. Dist. LEXIS 57013, *9, 2017 WL 1352052, at *3 (N.D. Cal. Apr. 13, 2017) (internal citation omitted).

13. Lead Plaintiff objects to the Interrogatories to the extent they constitute premature expert discovery or otherwise call for the premature production of expert reports, analysis, opinions, or testimony. Pursuant to Fed. R. Civ. P. 33(a)(2), such discovery "need not be answered until designated discovery is complete," that is, until after the current expert discovery cutoff of August 19, 2022.

14. Lead Plaintiff objects generally to the definition of "You" or "Your" on the grounds that it is overly broad, unduly burdensome, vexatious, and not proportional to the needs of the case. In each Interrogatory, Lead Plaintiff will interpret "you" and "your" as referring to Lead Plaintiff solely. "You" and "your" shall not include Lead Plaintiff's counsel in this or any other litigation or any third parties, consultants, or others retained by Lead Plaintiff or Lead Plaintiff's counsel in this or any other litigation.

15. The providing of any information when it is objected to herein shall not constitute a waiver of any applicable objection and is without prejudice to Lead Plaintiff's right to object later that the provision of any such information was inadvertent.

16. No objection or limitation, or lack thereof, made in these objections shall be deemed an admission by Lead Plaintiff as to the existence or nonexistence of information.

17. Lead Plaintiff's answers to these Interrogatories are based upon, and therefore limited by, records and information still in existence, presently collected, and thus far discovered in the course of preparing these answers. Consequently, Lead Plaintiff reserves the right to revise or supplement these answers only to the extent required by the Federal Rules of Civil Procedure if it appears that at any time inadvertent errors or omissions have been made or additional or more accurate information becomes available.

18. Lead Plaintiff's answers to these Interrogatories shall not be construed as an admission of relevance, materiality, or admissibility of such information or the subject matter of such information or as a waiver or abridgement of any applicable privilege or of any applicable objection set forth above or below. Lead Plaintiff reserves the right to object to the admissibility in evidence of any part of the information provided in answer to these Interrogatories.

19. The fact that Lead Plaintiff has responded to a particular Interrogatory will not be interpreted as implying that responsive information exists or that Lead Plaintiff acknowledges the appropriateness of the applicable Interrogatory.

20. Lead Plaintiff reserves the right to supplement or modify any information herein, including evidentiary materials, as a result of expert opinion and discovery in this action.

**II.    OBJECTIONS AND RESPONSES TO SPECIFIC INTERROGATORIES**

In addition to the General Objections above, which Lead Plaintiff incorporates into the answer to each and every Interrogatory below, Lead Plaintiff has set forth the following Specific Objections. By setting forth such Specific Objections, Lead Plaintiff does not limit or restrict its General Objections. Lead Plaintiff reserves the right to amend, supplement or clarify any answers to these Interrogatories at any time hereafter.

A statement in the following answers that Lead Plaintiff will produce responsive information does not constitute a representation that the requested information exists but only a representation that Lead Plaintiff will conduct a reasonable search for any relevant and responsive and non-privileged information that exists and is in the possession, custody, or control of Lead Plaintiff.

### III.    INTERROGATORIES

**INTERROGATORY NO. 9:**

Identify the amount of damages that You contend are recoverable, both for Yourself and on behalf of the Class, as a result of the conduct alleged in the Complaint.

**ANSWER**:

Lead Plaintiff objects to this Interrogatory to the extent it takes the form of a contention interrogatory, which courts have found to be inappropriate until designated discovery is complete. As discussed in General Objection 11, discovery as to Defendants and third parties remains ongoing. Lead Plaintiff therefore objects to Defendants' contention interrogatories as premature.

Lead Plaintiff additionally objects to this Interrogatory to the extent it constitutes premature expert discovery or otherwise calls for the premature production of expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Subject to and notwithstanding the above, Lead Plaintiff responds as follows:

Lead Plaintiff seeks to recover as damages all "out-of-pocket" economic losses suffered by Class members caused by Defendants' actionable misconduct, which will be measured by the difference between the price Class members paid for Zuora, Inc. ("Zuora" or "the Company") common stock during the Class Period and the true value of Zuora's common stock (that is, absent the artificial price inflation that inhered in Zuora's common stock attributable to the alleged fraud). The computation and disclosure of the amount of Lead Plaintiffs' and the Class's damages in this matter is properly a topic for expert discovery. Lead Plaintiff will retain and designate an expert to

testify on damages and will provide Defendants with such expert's report at the appropriate stage of litigation.

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 10:**

With respect to the amount of damages set forth in Your response to the preceding interrogatory, explain in detail how You calculated this amount.

**ANSWER**:

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 9. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Subject to and notwithstanding the above, Lead Plaintiff states the following:

As set forth above in Lead Plaintiffs' response to the preceding interrogatory, the computation and disclosure of the amount of Lead Plaintiffs' and the Class's damages in this matter is properly a topic for expert discovery. Lead Plaintiff will retain and designate an expert to testify on damages and will provide Defendants with such expert's report at the appropriate stage of litigation.

Notwithstanding the foregoing, Lead Plaintiff understands that Lead Plaintiffs' and the Class's damages will be computed using a common and broadly accepted methodology and that can be applied on a class-wide basis and consistent with Lead Plaintiffs' theory of liability. In particular, this damage methodology is commonly referred to as an out-of-pocket measure of damages, which is routinely applied and is a virtual standard in federal securities litigation. Under this method, Lead Plaintiff understands that the expert will calculate damages suffered by Class members based on the investors' artificial inflation losses. Lead Plaintiff understands that daily

levels of artificial inflation in Zuora's common stock during the Class Period will be calculated by Lead Plaintiff's expert by computing the difference between the actual security price and the true value of the security, where the true value reflects the absence of the valuation effects from the alleged wrongdoing.

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 11:**

Describe fully all facts supporting the calculation of damages set forth in Your response to Interrogatory No. 9.

**ANSWER**:

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 9. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action, particularly with its call that Lead Plaintiff identify "all" facts.

Subject to and notwithstanding the above, Lead Plaintiff states that the following facts (non-exhaustive) and the following unchallenged expert opinions accepted by the Court in granting class certification demonstrate the extent of damages caused by the Defendants' fraudulent statements, omissions, and/or scheme:

- In April 2018, Zuora completed its Initial Public Offering ("IPO") in which it issued and sold 12.7 million of its newly authorized Class A shares at a price of $14.00 per share. Zuora SEC Form 10-K filed April 18, 2019, p. 67.

- On April 12, 2018, Zuora Class A common stock was listed and began trading on the New York Stock Exchange (the "NYSE") under the symbol "ZUO." *Id.* at 36.

- Prior to the completion of the IPO, the Company reclassified 30.5 million of its then outstanding common stock as Class B common stock. *Id.* at 67.

- All shares of convertible preferred stock outstanding prior to the IPO were converted on a one-to-one basis into 62 million shares of Class B common stock. *Id.*

- During the fiscal year ended January 31, 2019, approximately 63.5 million shares were converted from Class B to Class A common stock, and as of January 31, 2019, there were 77.1 million shares of Class A common stock and 32.6 million shares of Class B common stock outstanding. *Id.*

- On May 30, 2019, after the close of market, Zuora announced disappointing Q1 2020 financial results, disclosing declining revenue growth (22%, a decline of over 18% from the prior quarter) and reduced fiscal 2020 revenue guidance (from $289-$293.5 million to $268-$278 million). Compl. ¶¶ 143-45.

- That same day, Zuora divulged that the product integration for RevPro "is taking longer than expected" and that "the technical work to complete the integration is taking time as these are complex mission-critical systems." *Id.* ¶ 148.

- Zuora also reported sales execution problems that slowed down its ability to cross-sell its products. *Id.* ¶ 149.

- On the 1Q19 earnings call, Tzuo admitted that Defendants had long known of the integration failure:

  > [H]onestly, we didn't really have time and the resource to focus on the integration between [Billing and RevPro] until after the [ASC] 606 [wave] was complete. So we didn't really start heavy work on the integration until early last summer, late spring, early last summer. And long story short, we went down one direction that proved to be a dead end, a false direction. ¶ 151.

- On May 31, 2019, Zuora stock opened at $13.36 per share, down $6.54 from its previous close of $19.90 per share.

- On May 31, 2019, Zuora's common stock closed at $13.99 per share, down $5.91, or 29.7%, from its previous close of $19.90 per share.

- Throughout the Class Period, Zuora common stock traded in an efficient market. Ronen Report (ECF. No. 101-1, ¶ 92).

- As of May 31, 2019, the number of Class A common stock outstanding was 86.5 million and that of Class B common stock was 24.6 million. Zuora SEC Form 10-Q filed June 11, 2019, cover page.

- From April 12, 2018, to May 31, 2019, inclusive, a total of 455.3 million shares of Zuora common stock was traded by investors, and the average weekly volume was 7.6 million shares and the average (median) weekly turnover was 18.1% (11.4%). Ronen Report ¶ 31.

- Based on average daily turnover during 2016-2018, Zuora's average daily turnover during the that period was over the 95th percentile of NYSE and NASDAQ stocks. *Id.* ¶ 32.

- From April 12, 2018, to May 31, 2019, inclusive, at least nine investment research analysts covered Zuora. *Id.* ¶¶ 35-43.

- From April 12, 2018, to May 31, 2019, inclusive, Zuora stock was listed on the New York Stock Exchange and a large proportion of outstanding shares was held by sophisticated institutional investors, creating opportunities for arbitrage. *Id.* ¶ 44-55.

- From April 12, 2018, to May 31, 2019, inclusive, the amount of short interest in Zuora common stock ranged between 0.3 million and 6.8 million shares, with an average short interest of 3.6 million shares based on semi-monthly data. As a percentage of shares outstanding, short interest ranged from 2.4% to 20.8%, with an average of 6.9% and, as a percentage of public float, short interest also ranged from 2.4% to 20.8%, with an average of 6.9% based on semi-monthly data. *Id.* ¶ 54.

- At all times from April 12, 2018, to May 31, 2019, inclusive, Zuora common stock's public float was more than 16 times the SEC Form S-3 required threshold. *Id.* ¶ 54-55.

- From April 12, 2018, to May 31, 2019, inclusive, the market capitalization of Zuora common stock ranged between $0.2 billion and $1.9 billion, with an average of approximately $1.2 billion. *Id.* ¶¶ 59-61.

- From April 12, 2018, to May 31, 2019, inclusive, Zuora's public float was almost 100% or virtually the same as its market capitalization, ranging from $0.2 billion to $1.9 billion, with an average of $1.2 billion. *Id.* ¶¶ 63-64.

- From April 12, 2018, to May 31, 2019, inclusive, the average (median) bid-ask spread for Zuora common stock was $0.02 ($0.01) and the average (median) percent bid-ask spread was 0.08% (0.05%). *Id.* ¶¶ 65-68.

- From April 12, 2018, to May 31, 2019, inclusive, Zuora stock price did not react differently on earnings/guidance days than on all other days. *Id.* ¶¶ 73-78.

- From April 12, 2018, to May 31, 2019, inclusive, there was no systematic and persistent statistically significant autocorrelation for Zuora stock. *Id.* ¶¶ 79-80.

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 9

- The calculations of damages for violations of Section 10(b) of the Exchange Act (and SEC Rule 10b-5) are subject to a common methodology that can be applied on a class-wide basis. *Id.* ¶ 92.

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 12:**

Identify each Person with knowledge of any of the facts set forth in Your response to the preceding interrogatory.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 9. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action. Moreover, Lead Plaintiff objects to this Interrogatory to extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Subject to and notwithstanding the above, Lead Plaintiff states the following non-expert Persons (non-exhaustive) may have personal knowledge of facts relevant to the damages caused by Defendants' fraudulent statements, omissions, and/or scheme:

| Person | Role (if known) |
|---|---|
| New Zealand Methodist Trust Association | Lead Plaintiff |
| Mike Aaron | GM, Zuora Billing |
| Alvina Antar | CIO at Zuora, Inc. |

| Person | Role (if known) |
|---|---|
| Angela Ngo | RevPro Marketing Manager |
| Paolo Battaglini | Vice President of Finance and Chief Accounting Officer of Zuora, Inc. |
| Chris Bruner | |
| Srinivas Chadalavada | Senior Director Engineering of Zuora, Inc. |
| Kelly Cheng | |
| Nathan Creswell | |
| Brent Cromley | Senior Vice President of Technology at Zuora, Inc |
| Ajit Deshpande | |
| Pat Deskin | Vice President of RevPro at Zuora, Inc. |
| Joe Di Bari | |
| Marc Diouane | |
| Peter Fenton | Member of Board of Directors of Zuora, Inc. |
| Jack Friel | Regional Director at Zuora, Inc. |
| Ben Ghio | |
| Ken Goldman | Member of Board of Directors of Zuora, Inc. |
| Tim Haley | |
| Nicholas Harlow | |
| Peter Hegyi | Director, Media & Telecom, of Zuora, Inc. |
| Robert Hildenbrand | |
| Joon Huh | |
| Travis Huch | Vice President of Customer Success |
| Richard Inonog | |
| Lei Jin | Senior Director, Product Management/Chief Functional Architect at Zuora, Inc. |
| Sandy Joung | Senior GTM Strategy and Growth Leader of Zuora, Inc. |
| Daniel Kim | |
| Calvin Kong | |
| Scott Kozak | |
| Tom Krackeler | Chief Customer Officer at Zuora, Inc. |
| Arul Kumar | |
| Troy Lauer | |
| Christina Lemucchi | |
| Kevin Maresco | |
| Sai Prasad Marri | |
| Lee Mish | |
| Parveen Nandal | |
| Angela Ngo | |
| Peush Patel | Director of Product Management at Zuora, Inc. |
| Todd Pearson | Senior Vice President, Customer Success, at Zuora, Inc. |
| Jennifer W. Pileggi | Senior Vice President, General Counsel at Zuora, Inc. |
| Jason Pressman | Member of Board of Directors of Zuora, Inc. |
| Mike Quinn | |
| Jagan Reddy | |
| Karthik Ramamoorthy | Vice President & General Manager, Zuora RevPro |
| Matthew Rochester | |
| Monika Saha | |
| Jason Selby | |

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 11

| Person | Role (if known) |
|---|---|
| Tyler Sloat | Chief Financial Officer of Zuora, Inc. |
| Kenwood Tsai | Vice President, Product Architecture, of Zuora, Inc. |
| Tien Tzuo | Chief Executive Officer of Zuora, Inc. |
| Vishal Vachani | |
| Michelangelo Volpi | |
| Tyler Wallace | |
| Lauren Whelihan | Vice President, Zuora Revenue, at Zuora, Inc. |
| Mu Yang | Vice President of Engineering at Zuora, Inc. |
| Magdalena Yesil | Member of Board of Directors of Zuora, Inc. |
| | |
| Zoom Video Communications, Inc. | Customer of Zuora, Inc. |
| PTC | Customer of Zuora, Inc. |
| PWC | Customer of Zuora, Inc. |
| Carbonite | Customer of Zuora, Inc. |
| View the Space | Customer of Zuora, Inc. |
| Procore | Customer of Zuora, Inc. |
| Stansberry | Customer of Zuora, Inc. |
| Unity | Customer of Zuora, Inc. |
| FCA | Customer of Zuora, Inc. |
| Pivotal | Customer of Zuora, Inc. |
| Inspirato | Customer of Zuora, Inc. |
| HUDL | Customer of Zuora, Inc. |
| Tripwire | Customer of Zuora, Inc. |
| USS | Customer of Zuora, Inc. |
| Garter | Customer of Zuora, Inc. |
| Docusign | Customer of Zuora, Inc. |
| ModMed | Customer of Zuora, Inc. |
| LivePerson | Customer of Zuora, Inc. |
| Zenefits | Customer of Zuora, Inc. |
| Neustar | Customer of Zuora, Inc. |
| Shutterstock | Customer of Zuora, Inc. |
| Yext Inc. | Customer of Zuora, Inc. |
| General Motors | Customer of Zuora, Inc. |
| Hitachi Vantara | Customer of Zuora, Inc. |
| George Ahn | Chirotouch, Customer of Zuora, Inc. |
| Eric Yuan | Zoom, Customer of Zuora, Inc. |
| | |
| Goldman Sachs & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Morgan Stanley & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Allen & Company LLC | Underwriter of Zuora, Inc. IPO |
| Jefferies | Underwriter of Zuora, Inc. IPO |
| Canaccord Genuity LLC | Underwriter of Zuora, Inc. IPO |
| Needham & Company | Underwriter of Zuora, Inc. IPO |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 12

**INTERROGATORY NO. 13:**

Describe each materially false or misleading statement that You contend any Defendant made, including when and where each statement was made.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it takes the form of a contention interrogatory, which courts have found to be inappropriate until designated discovery is complete. As discussed in General Objection 11, discovery as to Defendants and third parties remains ongoing. Lead Plaintiff therefore objects to Defendants' contention interrogatories as premature.

Lead Plaintiff additionally objects to this Interrogatory to the extent it constitutes premature expert discovery or otherwise calls for the premature production of expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Subject to and notwithstanding the above, Lead Plaintiff identifies the following (non-exhaustive) types of false or misleading statements made by a Defendant:

| Statement | When | Where |
| --- | --- | --- |
| "Zuora's subscription management technology … you can quote, order, bill, recognize revenue, report, and automate the entire customer lifecycle from a single platform" (accompanying image omitted). *See* Compl. ¶ 160. | Throughout Class Period | Zuora website |
| "Zuora Central is a single platform for your order-to-revenue process and the connective tissue between your CRM and ERP" (accompanying image omitted). *See* Compl. ¶ 162. | Throughout Class Period | Zuora website |
| Zuora Central "easily connects the various applications in your order-to-revenue ecosystem." | Throughout Class Period | Zuora website |
| Zuora + RevPro "integration" provides a "seamless order-to-revenue process" (accompanying image omitted). *See* Compl. ¶ 164. | Throughout Class Period, including on June 5, 2018 | Zuora Twitter @Zuora |
| Zuora Billing and Zuora RevPro work together to "[c]apture orders, subscriptions, invoices, payments, and AR" and "[r]ecognize revenue" (accompanying image omitted). *See* Compl. ¶ 166. | Throughout Class Period | Zuora Twitter @Zuora |

| Statement | When | Where |
|---|---|---|
| Zuora Central is the "#Subscription Economy platform" or "Subscription Order-to-Revenue Platform" that allows a company to run its "dynamic order-to-cash platform on one central platform" (accompanying image omitted). *See* Compl. ¶ 168. | Throughout Class Period, including on Apr. 12, 2018 | Zuora Facebook page |
| "[T]he Zuora platform was architected specifically for dynamic, recurring subscription business models and acts as an intelligent subscription management hub that automates and orchestrates the entire subscription order-to-cash process, including billing and revenue recognition." Compl. ¶ 171. | Throughout Class Period, including on May 4, 2018, May 31, 2018 (x3), June 5, 2018 (x4), July 30, 2018, Aug. 1, 2018, Aug. 30, 2018, Oct. 5, 2018, Oct. 11, 2018, Nov. 1, 2018, Nov. 29, 2018, Dec. 11, 2018, Jan. 8, 2019, Jan. 15, 2019, Jan. 29, 2019, Feb. 4, 2019, Feb. 6, 2019, Feb. 13, 2019, Feb. 19, 2019, Feb. 20, 2019, Mar. 6, 2019, Mar. 8, 2019, Mar. 13, 2019, Mar. 21, 2019 (x2), Mar. 22, 2019, Apr. 29, 2019, May 3, 2019, and May 13, 2019 | Zuora Press Releases |
| Same | Throughout Class Period, including on May 31, 2018, Aug. 30, 2018, Nov. 29, 2018, and Mar. 21, 2019 | "Current Reports: Results of Operations and Financial Condition," filed with the SEC on Form 8-K |
| Zuora Central is the "first and only complete subscription order-to-revenue solution on the market. . . . [Through Zuora Central], [c]ompanies can rapidly acquire customers across multiple channels, seamlessly manage | June 5, 2018 | Zuora Press Release |

| Statement | When | Where |
|---|---|---|
| the entire customer lifecycle, and automate revenue recognition, in a single solution." Compl. ¶ 174. | | |
| Re: "automation and usability across Zuora Billing, Zuora Collect, and Zuora RevPro": <br><br> Zuora Solution would "help finance teams increase productivity," including: <br><br>     Reduced time spent on billing tasks and complex account updates with automated workflows[.] <br><br>     Easier collaboration amongst collection teams to resolve unpaid invoices and at risk accounts[.] <br><br>     More efficient month end close to meet ASC 606 revenue compliance through disclosure reporting and intelligent exception handling[.] <br><br>     Faster turnaround to create new automated processes, such as applying late fees, calculating usage, or previewing upcoming invoices, using the enhanced workflow user interface. <br><br> Compl. ¶ 176. | Dec. 11, 2018 | Zuora Press Release |
| "Architected specifically for dynamic, recurring subscription business models, our solution functions as an intelligent subscription management hub that automates and orchestrates the entire subscription order-to-cash process, including billing and revenue recognition. Our cloud-based software solution is the new system of record for subscription businesses." <br><br> Compl. ¶ 178. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora's platform offered customers "a flexible pricing model and automated billing, streamlined collection, and efficient accounting features." Compl. ¶ 179. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora's "[c]omprehensive solution built specifically to handle the complexities of subscription business models" is a "Competitive Strength[]."Compl. ¶ 180. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora's solution "functions as an intelligent subscription management hub that automates and orchestrates the entire subscription order-to-cash process and is architected specifically for dynamic subscription business models." Compl. ¶ 180. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora's connected "intelligent subscription management hub" [image excluded]. Compl. ¶ 180. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |

| Statement | When | Where |
|---|---|---|
| "Unlike many legacy ERP systems, Zuora was built specifically to handle the complexities of subscription business models from customer acquisition to financial records close, and it has become the system of record for managing subscriptions for our customers." Compl. ¶ 181. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora's "solution enables customers to successfully … [b]ill accurately with automated invoices that reflect everything from up-to-date proration and plan changes to usage-based billing," while concurrently "[a]ccount for revenue, comply with the latest revenue recognition rules, close books faster, orchestrate subscription transactions, and process revenue in real-time." Compl. ¶ 182. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| "We can deploy and configure our portfolio of order-to cash products to meet a wide variety of use cases for subscription business models . . ." Compl. ¶ 183. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora's solution "Free[d] Up IT and Engineering Resources," and that with Zuora, "engineering and IT departments no longer need to build in-house custom systems or customizations for their ERP systems to keep up with market changes, ongoing customer demands, and new order-to-cash processes." Compl. ¶ 184. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| "Once customers are operating on our solution, we have multiple ways to expand our footprint and drive revenue growth from these customers, which we refer to as upsell," including that "[c]ustomers that started with Zuora Billing or Zuora RevPro can also subscribe to the other flagship product." Compl. ¶ 186. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Identifying as a "key element" of its growth strategy: "Expand Relationships with Existing Customers" by "increasing transaction volume and upsells and cross-sells with additional products." Compl. ¶ 183. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| "[M]ultiple ways" to "expand [its] footprint" and "drive revenue growth" from existing customers (i.e., "upsell"), including "[c]ustomers that started with Zuora Billing or Zuora RevPro can also subscribe to the other flagship product[.]" Zuora also said it would "focus on acquiring new customers through [its] flagship products, Zuora Billing and Zuora RevPro." Compl. ¶ 187. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |
| Zuora expects future growth opportunities for RevPro because as "many industries transition[] to subscription business models," those businesses will "increasingly realize that their existing systems are insufficient." Compl. ¶ 187. | Apr. 11-12, 2018 | Zuora IPO Registration Statement |

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                                No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 16

| Statement | When | Where |
|---|---|---|
| "We provide cloud-based software on a subscription basis that enables any company in any industry to successfully launch, manage, and transform into a subscription business. Architected specifically for dynamic, recurring subscription business models, our solution functions as an intelligent subscription management hub that automates and orchestrates the subscription order-to-cash process, including quoting, billing, collections, analytics, and revenue recognition. We offer businesses the ability to meet the constantly-evolving needs of their subscribers, capitalize on new revenue opportunities, and accelerate business growth." Compl. ¶ 189. | June 13, 2018, Sept. 12, 2018, and Dec. 13, 2018 | Quarterly Reports filed with SEC on Form 10-Q |
| "[W]e continue to offer the only complete subscription management solution, 100% focused on helping companies of all sizes launch, scale, and transform into a subscription business. Third, we continue to believe that the changing expectations around IT architectures are creating a once-in-a-generation opportunity for us to build an enduring enterprise software company. And lastly, for investors, for you, we continue to see an investment in Zuora as a portfolio play on this entire subscription economy." Compl. ¶ 191. | May 31, 2018 | Earnings Call (Tzuo) |
| Zuora provides "cloud-based software that enables any company in any industry to successfully launch, manage, and transform into a subscription business." Compl. ¶ 192. | May 31, 2018 | Earnings Call (Sloat) |
| "Now, all of our products are underpinned, of course, by our Zuora Central Platform. It's a dynamic hub designed specifically to orchestrate and automate the entire subscription order-to-cash process. This is done through our six core engines, including our pricing engine, subscription order, rating, global payments, subscription metrics, and subscription accounting. All contributing to make our solution the system of record around the transactional data for the customer. Now why is this important? Because when you look at our customers and you see how they are standardizing on a CRM system, plus Zuora Central, plus an accounting system all in the cloud, you could see an emerging three-cloud architecture that modern companies are using to run these modern business models." Compl. ¶ 193. | May 31, 2018 | Earnings Call (Tzuo) |
| "We're betting on a big trend of the shift of the subscription-based business model. And as the only company that provides a full solution, 100% focused on | May 31, 2018 | Earnings Call (Tzuo) |

| Statement | When | Where |
|---|---|---|
| this business, we're kind of a portfolio play on the subscription economy." Compl. ¶ 194. | | |
| "ASC 606 was certainly a fantastic catalyst. It really put the spotlight on why revenue recognition is complex. We're still seeing a big tail for that, but I think what really excites us about the market opportunity for revenue recognition is that the overall trend is not going away. What's happening in the marketplace is when you use to sell products on a transaction basis, revenue recognition was pretty simple. But more and more, that's not how businesses work. They've got these dynamic business models based around subscriptions, based around customers, based around services. And we see really long-term demand for more sophisticated revenue recognition solutions. And as a leading player of the market, we are truly excited." Compl. ¶ 195. | May 31, 2018 | Earnings Call (Tzuo) |
| "Yes, I'll take the financial result. We're not breaking out the RevPro-specific billings and revenue. However, we do see a lot of tailwinds in the business. The deferred revenue hasn't come all the way through from what we purchased, but we are now looking at a lot of customers that have continued demand for both of our flagship products. We did talk about the professional services and I gave you those numbers because I do think that's important to see the trail-off of the 605 to 606 customers that are upgrading. Because we look at that as one-time as opposed to attached to a new business. But in general, we saw a strong demand for both products across the board." Compl. ¶ 196. | May 31, 2018 | Earnings Call (Sloat) |
| Zuora's strategy was based on the Company's ability to "not only attract brand new logos, companies that are entering the subscription economy, but also continue to drive growth within our installed base." Zuora has "created really a multipronged strategy to do that. We have our add-on products certainly; we can cross-sell our two flagship products where you can start with billing and we can come back and sell you RevPro or vice versa. And we have a set of add-on products." Compl. ¶ 197. | May 31, 2018 | Earnings Call (Sloat) |
| While reemphasizing the "strong demand" for both Zuora Billing and RevPro: "But it feels really good. There was no meaningful change either in terms of the mix of the upsell and where it was coming from. There's just strong demand all the way around for both add-on products, both flagship products, and then volume. I mean, you can see the volume increase that we talked about: over $7 | May 31, 2018 | Earnings Call (Sloat) |

| Statement | When | Where |
|---|---|---|
| billion of process volume in Q1. These are all positives across the board." Compl. ¶ 198. | | |
| "If you think back 5 months ago, and you're at our road show, you basically laid out our vision for Zuora. And it really boiled down to 3 things: first, that the shift to Subscription Economy is a global trend and it's happening across all industries and all geographies; second, Zuora has built the only complete subscription management solution focused 100% on helping companies of all sizes, launch, scale and transform into a subscription business; and finally, as a result, we are the portfolio at play across the entire Subscription Economy. And as a result of that, we have a unique opportunity to deliver sustainable long-term growth and build a great business. So question, if we were doing a road show presentation today, would you be saying the same exact things?" Compl. ¶ 202. | Aug. 30, 2018 | Earnings Call (Tzuo) |
| "I think we're seeing 2 things. One, ASC 606 and IFRS 15 is a good driver for customers kind of last year when we talk about 605, 606 upgrade, but what we're seeing is that companies had a time line. They had to get compliant and a lot of them chose to do that through kind of some manual band aid process, what we call. So we're seeing those guys now. They've gone through their first integration. But they know it's not sustainable, and they're going to need the revenue automation solution for 606 going forward. So those customers are still out there. But on top of that, it's all about -- the reason we did the acquisition was not 606. It is about business model complexity that hits both your quote-to-cash solution as well as your revenue automation. And that's really what we're seeing right now or the Hitachi example of that Tien touched on that, that's all about just complexity and manual processes. And they wake up -- a customer wakes up, and they realize they've outsourced all revenue to some other place, and they've got tens and tens of bodies doing this all manually. And that's not sustainable. And so that's where I think that the long kind of like tailwinds are going to be for 606 -- for RevPro." Compl. ¶ 203. | Aug. 30, 2018 | Earnings Call (Sloat) |
| "Again, we feel good. I mean -- so when we look at this year, the company has grown significantly as an independent company, and they have never raised a venture amount and so have limited ability to invest, and we've been able to invest in that business. And so -- look, when we pull back and you ask yourselves which company out there really has the most 606 experience, | Aug. 30, 2018 | Earnings Call (Sloat) |

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 19

| Statement | When | Where |
|---|---|---|
| and I would bet that it's this team. They've done, I mean, dozens or scores of 606 implementations. Ask around for all the tech companies that you guys cover. Chances are they're using RevPro for revenue recognition. And so that expertise is an asset, especially when we can apply more distribution capability against their products." Compl. ¶ 204. | | |
| Zuora Billing and RevPro were based on a "simple concept to automate the financial complexities generated by subscription models." Zuora's "value proposition [was] now more centered around automation and efficiencies versus simply compliance." Compl. ¶ 207. | Nov. 29, 2018 | Earnings Call (Tzuo) |
| "[Billing and RevPro are] both based on a simple concept to automate the financial complexities generated by subscription models that are highly, highly differentiated and mission-critical for our customers. … So what we're finding is that many public companies rush to get compliance, but a lot of them did so manually with spreadsheets, and they found this to be a short-term Band-Aid solution. These companies are realizing that the real problem with never ASC 606. The bigger, more systemic trend is that these companies were struggling to scale their revenue operations because of all these new flexible-consumption recurring models that the companies were launching, and they couldn't do it with a manual Excel-based approach. ASC 606 was the thing that only highlighted the problem. … So you can see that the underlying demand hasn't gone away, but our value proposition is now more centered around automation and efficiencies versus simply compliance. [It's nice to see] this quarter, we also signed on other public companies like Carbonite and Pivotal who both chose RevPro all because we got the best revenue automation platform on the market, and there's a big, big difference between being compliant and being competitive." Compl. ¶ 207. | Nov. 29, 2018 | Earnings Call (Tzuo) |
| "And that was the reason to bring on the RevPro product in the first place. The need for revenue automation is not just driven by ASC 606 compliant. It's a larger issue with many of these companies as the complexity of revenue recognition limits their ability to efficiently scale and meet their business goals. That's why we continue to see good demand for our RevPro product." Compl. ¶ 208. | Nov. 29, 2018 | Earnings Call (Sloat) |
| "So you obviously understand SaaS companies with subscription model, churn is going to have a big swing effect. So it's something that I wouldn't say there's anything that we put in place in the last 90 days, but it's obviously a huge focus of ours, and we hope to continue | Nov. 29, 2018 | Earnings Call (Sloat) |

| Statement | When | Where |
|---|---|---|
| to show continuous improvements year-over-year on these numbers. And so we feel really good. I think we benefited from the fact that we have a very sticky product, and when you look at our product, once it goes in, whether it's on billing on the revenue recognition side, right, it's sticky. It's running company's core operations. It's the heart of the businesses. And so the 2 factors for us that influence churn are, one, how are well are we doing bringing customers live, and that's where we continue to show improvements year-over-year." Compl. ¶ 209. | | |
| "When asked about Billing and RevPro cross-selling, Tzuo indicated that the percentage of clients using both solutions (said to be below 10% three months ago) is still low. But he added that the company did successfully cross-sell RevPro to some major clients last quarter, such as Pivotal Software and Carbonite, and argued that the challenges involved financially managing subscription businesses will drive additional traction. "'I think the broader message is, companies are realizing [that] these new business models...are just wreaking havoc in their financial operations,' he said. 'And the two key areas that [they're] wreaking havoc on is billing and revenue recognition.'" | Dec. 31, 2018 | TheStreet.com article re: "Zuora's CEO and CFO Talk to The Street About Their Firm's Growth Outlook and More" (Tzuo) |
| "Sure. So, if you're not familiar with Zuora and what we do, because the name explains everything, obviously. We are really the only public company focused on subscription management. So, what do we mean by subscription management? We are a software company. Our platform allows our customers to launch, manage and grow their subscription base. That gets reflected often times in the word Billing because it happened to be a very complex transaction set that comes out of it. And that's one of our two flagship products. Our other flagship product is Revenue Recognition." Compl. ¶ 214. | Jan. 15, 2019 | Needham Growth Conference (Sloat) |
| "But on the upsell component, it is a mix of companies buying other products where you could be a billing customer and you're buying RevPro or vice versa. We still have less than 10% overlap of our customer base using both of our flagship products, but we do see a lot of traction starting there." Compl. ¶ 215. | Jan. 15, 2019 | Needham Growth Conference (Sloat) |
| "We bought the Leeyo business; we brought on the RevPro product not because of ASC 606, even though there is a great tailwind behind that. We brought it on because we know that there's a lot of complexity that's driven from subscription business models and it breaks your downstream revenue, and we were seeing as for our customer base. In fact, our customer base is coming to us | Jan. 15, 2019 | Needham Growth Conference (Sloat) |

| Statement | When | Where |
|---|---|---|
| and say, hey, if you can't solve this for us, we're going to have to go figure out how to solve it ourselves. We had always had billing-based revenue recognition, but ASC 606 demands bookings-based revenue recognition, and that is what the RevPro product does. We knew all the players in that market and we had partnered with a lot of them, Leeyo was already a partner and we brought them on board. In our last call, we highlighted a couple of companies – a couple of existing billing customers that brought us on for RevPro. But we also highlighted public companies like Veeva who had already gotten ASC 606 compliant but then brought us on for RevPro because to point [out] a lot of companies are actually putting band-aids on this solution, they're using Excel to get compliant, and again to the first audit, but they realize that is not a sustainable solution, and that there's a ton of manual processes and those manual processes inevitably will force companies to bring in an actual software solution to manage those for them." Compl. ¶ 216. | | |
| "Yeah. Yeah, the revenue recognition – the complexity is coming around the different charge models that they have and the different – the way the company will sell, right. And then now, with ASC 606, you got have to be able to quantify everything and come off the SSP for every single product that you sell and then you have to be able to kind of itemize them out so when you bring it into the system, they could actually look at the whole order and then what the potential incremental buys of the customer might make against that order. What we find is that companies, if they think it's very simple as you dig through and you look historically how the way they sell and you actually kind of itemize every single, what we call charge model, that's where the complexities come in. We can still to handle them; you've just got to be able to actually document them all." Compl. ¶ 217. | Jan. 15, 2019 | Needham Growth Conference (Sloat) |
| While describing Zuora's role in the "digital transformation" of companies, which involve "true, true big, sticky implementations" that previously carried Oracle and SAP through "decades," and could now do the same for Zuora:<br><br>"So it's -- the SIs are really, really important for what we do, right. If you look at what we did, it's digital transformation, in these companies. And so yes, there's a billing revenue recognition subscription management engine, but there's a broader business model transformation, there's a broader process transformation. … But from a long-term perspective, | Feb. 13, 2019 | Goldman Sachs Technology & Internet Conference (Tzuo) |

| Statement | When | Where |
|---|---|---|
| it is these big implementations where you go into a company and you transform what the company does, and you're running the company's business. These are the true, true big, sticky implementations that carried Oracle through, right, decades, it's carried SAP through decades. And that's our world. And the SIs are definitely a big, big part of that world. And so we started talking about that, right, a couple of quarters ago on an earnings call, highlighting projects and accounts where we're working together, and we've signaled that you're going to see that trend continue to increase, right, just on a natural basis." Compl. ¶ 220. | | |
| "From a product perspective, you got your core billing product, and through an acquisition, you added RevPro, which helps companies gets ASC 606 compliant. I think the attach rate for RevPro is about 10% today, but given the importance of companies becoming compliant with 606, can you talk about the path of that, that attach improving over time?" Compl. ¶ 221. | Feb. 13, 2019 | Goldman Sachs Technology & Internet Conference (Tzuo) |
| "[W]e understand how to do this on the billing side. At a high level, it's the same idea on the revenue recognition side, but it was complex enough, we said, look, we - - we get this great partner that our customers are using, and we wound up acquiring these guys. But if you think about the level of billing complexity that we absorb -- revenue complexity is probably like another order of magnitude higher. And it's not going away, right? It's not going away. So people think okay, well this is just a compliance thing, right? So like the old GRC thing, where there's a period in time or a SOX thing, where you have to put in ASC 606 compliant solution, and you put it in, and you're done. No it's not ASC 606, it's the complexities of all these new business models that are destroying the finance department." Compl. ¶ 222. | Feb. 13, 2019 | Goldman Sachs Technology & Internet Conference (Tzuo) |
| Zuora was the "only pure play business doing what we do, which is essentially enabling our customers to launch, manage, transform [and] account for their subscription business." Compl. ¶ 225. | Feb. 26, 2019 | Morgan Stanley Technology, Media & Telecom Conference (Sloat) |
| Zuora's solution was "designed to think about [Zuora's] customer and the entire transaction set around the customer," which requires a "complete re-architecture" of a company's prior system. Compl. ¶ 226. | Feb. 26, 2019 | Morgan Stanley Technology, Media & |

| Statement | When | Where |
|---|---|---|
| | | Telecom Conference (Sloat) |
| Zuora operates under a premise that "every billing customer will eventually need a revenue automation solution": <br><br> "Yeah. So there are still different buyers, like the RevPro sales got a technical accounting, so we're selling to a controller ahead of revenue or something like that and trying to solve a specific problem. That specific problem is revenue automation. Now, the reason we did that is our customers were actually telling us, hey, we need your help in solving our revenue problem, and with ASC 606 revenue problem much more complex, but the reality is the long game is that in business model transformation in a subscription model, and I should clarify, subscription, we're talking, $10 a month, $120 a year, we are talking about a customer centric model that can have any kind of charge model that's surrounding it that you want, it could be premium all the way to pure usage. And the simple subscription is part of it clearly, but that complexity that that happens here breaks a lot of downstream things. And one of those things is revenue. And so the premise is that every billing customer will eventually need a revenue automation solution." <br><br> Compl. ¶ 227. | Feb. 26, 2019 | Morgan Stanley Technology, Media & Telecom Conference (Sloat) |
| "So I think it still holds that the complexity will break your revenue automation regardless of ASC 606 or not. I don't think the tail end of ASC 606 is done. We highlighted a company on our Q3 call that it gotten ASC 606 compliant through spreadsheets, which a lot did because they ran out of time. Yet, the ASC 606 is not like socks where you kind of get [indiscernible] (00:22:56) doing some ongoing validation. ASC 606 you actually have to get audited every single year and things like SSPs and things like that can change. And so you actually have to have a solution that can spit out a number. Ironically, I think it's going to be like a lot of work for a lot of companies to get to that auditable solution, yet still may not change the numbers. But you have to go through the work to prove it. So we feel pretty good about it." Compl. ¶ 228. | Feb. 26, 2019 | Morgan Stanley Technology, Media & Telecom Conference (Sloat) |
| Zuora was the "only game in town if you're looking for a complete end-to-end subscription platform, including | Mar. 21, 2019 | Earnings Call (Tzuo) |

| Statement | When | Where |
|---|---|---|
| billing and revenue recognition." Zuora was the "only choice when it comes to putting the platform to drive [] growth" for subscription businesses. "We're scaling our business and getting more efficient while we're doing it." Compl. ¶ 231. | | |
| "We feel really good. I mean we have a whole team in place now that's taking our learnings of how to make this business model work. And we have 2 big competitive moats. One is obviously the technology, and the other one, we believe that's just as important is our go-to-market expertise of how to engage with companies and how to help them understand what are the elements … . But we think we got knowledge. We've got a whole team that knows how to find the right folks, bring them onboard. We're doing a good job of hiring. We're doing a good job at enablement. We scaled this worldwide already. It was important for us to break through the international learnings actually before we went public, and so you're seeing our international business growing really, really well. But we feel good about where it is." Compl. ¶ 233 | Mar. 21, 2019 | Earnings Call (Tzuo) |
| "Zuora is a leading cloud-based subscription management platform. We provide software that enables companies across multiple industries and geographies to launch, manage or transform to a subscription business model. Architected specifically for dynamic, recurring subscription business models, our cloud-based software functions as an intelligent subscription management hub that automates and orchestrates the entire subscription order-to-revenue process, including billing and revenue recognition. Our solution enables businesses to easily change pricing and packaging for products and services to grow and scale, to efficiently comply with revenue recognition standards, and to build meaningful relationships with their subscribers." Compl. ¶ 235. | Apr. 18, 2019 | Annual Report filed with SEC on Form 10-K |
| "Many of today's enterprise software systems that businesses use to manage their order-to-revenue process were built for a product driven economy, and are extremely difficult to reconfigure for the dynamic, ongoing nature of subscription services." Compl. ¶ 236. | Apr. 18, 2019 | Annual Report filed with SEC on Form 10-K |
| While identifying Zuora's "[c]omprehensive solution built specifically to handle the complexities of subscription business models" as a "Competitive Strength": <br><br> Zuora's solution "functions as an intelligent subscription management hub that automates and | Apr. 18, 2019 | Annual Report filed with SEC on Form 10-K |

| Statement | When | Where |
|---|---|---|
| orchestrates the entire subscription order-to-revenue process," and is "[a]rchitected specifically for dynamic subscription business models." Compl. ¶ 237. | | |
| "We can deploy and configure our portfolio of order-to-revenue products to meet a wide variety of use cases for subscription business models." Compl. ¶ 238. | Apr. 18, 2019 | Annual Report filed with SEC on Form 10-K |
| Zuora's solution "Free[d] Up IT and Engineering Resources," and that with Zuora, "engineering and IT departments no longer need to build inhouse custom systems or customizations for their Enterprise Resource Planning (ERP) systems to keep up with market changes, ongoing customer demands, and new order-to-cash processes." Compl. ¶ 239. | Apr. 18, 2019 | Annual Report filed with SEC on Form 10-K |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 14:**

For each statement identified in response to the preceding interrogatory, describe all facts supporting Your contention that the statement was materially false or misleading.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 13. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action, particularly with its call that Lead Plaintiff identify "all" facts.

Subject to and notwithstanding the above, Lead Plaintiff states that the following facts (non-exhaustive) demonstrate the materiality and falsity of the Defendants' fraudulent statements, omissions, and/or scheme:

- During the Class Period, Zuora's subscription management technology was incapable of permitting a customer to bill and recognize revenue concurrently from a single platform. Specifically, customers using the Zuora Central Platform, together with Zuora Billing and Zuora RevPro, were unable to integrate the data between two modules through automation. *See, e.g.*, ZUO_00115958.

- During the Class Period, the Zuora platform could not:

  o concurrently provide month end close to meet ASC 606 revenue compliance through disclosure reporting and intelligent exception handling.

  o automate and orchestrate the entire subscription order-to-cash process, including billing and revenue recognition.

  o concurrently offer automated billing and efficient accounting features.

  o singularly handle the customer acquisition to financial records close process.

  o enable customers to successfully bill accurately with automated invoices while concurrently account for revenue, comply with the latest revenue recognition rules, close books faster, orchestrate subscription transactions, and process revenue in real-time.

  o be deployed and configured to concurrently operate Zuora Billing and Zuora RevPro at its intended use.

  *See, e.g.*, ZUO_00255489, ZUO_00003083, ZUO_00003209, ZUO_V_000005-000007, ZUO_00003341, ZUO_00115958, ZUO_00003598, ZUO_00302598; ZUO_00003757.

- During the Class Period, Zuora's solution did not obviate the need for customers' engineering and IT departments to build in-house custom systems or customizations for their ERP systems to address subscription order-to-cash processes. *See, e.g.*, ZUO_00003209, ZUO_0036615; ZUO_00003757, ZUO_00003853 ("even after K2 - there will still be the need to get GS involved 90% of the time to handle things like ramp deals, and to address the 'creative' way customers use our system"), ZUO_00003962, ZUO_00003963.

- During the Class Period, the only way to remove the friction from reconciling the Zuora Billing and Zuora RevPro systems and recognize revenue would be for the client to either export the data from Zuora Billing and import it into Zuora RevPro manually or build a customized integration that could ingest the required data from Zuora Billing into Zuora RevPro. *See, e.g.*, ZUO_0000334, ZUO_00003598

- During the Class Period, Zuora's "value proposition" was not "more centered around automation and efficiencies versus simply compliance."

- During the Class Period, Defendants omitted material facts from their material false or misleading statements, including the failure of the "Zuora on Zuora" and "Keystone" integration projects. *See, e.g.*, ZUO_00330041; ZUO_00329659.

- During the Class Period, Zuora's integration failures led to Zuora customers to mistrust Zuora. *See, e.g.*, ZUO_00191437; ZUO_00287209; ZUO_V_000037-40; ZUO_00203313; ZUO_0036615; ZUO_00177624; ZUO_00268653; ZUO_00270755; ZUO_00042886; ZUO_00271344.

- During the Class Period, Zuora's integration failures led to Zuora pausing the implementation of RevPro for several customers, including Yext and Carbonite. *See, e.g.*, ZUO_00335919;

- During the Class Period, the integration failure between Zuora's flagship products was resulting in severe sales execution issues, reduced upsell opportunities, and diminished demand for Zuora Central and other homegrown products such that the described method for revenue growth was not viable or sustainable. *See, e.g.*, ZUO_00287209; ZUO_00175506 (calling Keystone a "shitshow"); ZUO_00268033 ("Keystone disaster cannot be understated"); ZUO_V_000037-40; ZUO_00329758; ZUO_00003757.

- Despite working diligently on the "Zuora on Zuora" or "ZoZ" project, together with the ZoR extension of the project, Defendants failed to successfully connect RevPro internally through an automated solution. *See, e.g.*, ZUO_00160174; ZUO_00002195; ZUO_00192181; ZUO_00032081.

- During the Class Period, Defendants omitted material facts from their material false or misleading statements, including their customers' frustration over the failed integration between Zuora Billing and Zuora RevPro.

- In response to Zuora's May 31, 2018 Earnings Call, analysts including Jeffries and Canaccord Genuity reacted positively to the earnings results and reports about RevPro.

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 15:**

Identify each Person with knowledge of any of the facts set forth in Your response to the preceding interrogatory.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 13. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action. Moreover, Lead Plaintiff objects to this Interrogatory to extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Subject to and notwithstanding the above, Lead Plaintiff states the following non-expert Persons (non-exhaustive) may have personal knowledge of facts relevant to the materiality and falsity of Defendants' fraudulent statements, omissions, and/or scheme:

| Person | Role (if known) |
| --- | --- |
| New Zealand Methodist Trust Association | Lead Plaintiff |
| Mike Aaron | GM, Zuora Billing |
| Alvina Antar | CIO at Zuora, Inc. |
| Angela Ngo | RevPro Marketing Manager |
| Paolo Battaglini | Vice President of Finance and Chief Accounting Officer of Zuora, Inc. |
| Chris Bruner | |
| Srinivas Chadalavada | Senior Director Engineering of Zuora, Inc. |
| Kelly Cheng | |
| Nathan Creswell | |
| Brent Cromley | Senior Vice President of Technology at Zuora, Inc |
| Ajit Deshpande | |
| Pat Deskin | Vice President of RevPro at Zuora, Inc. |
| Joe Di Bari | |
| Marc Diouane | |
| Peter Fenton | Member of Board of Directors of Zuora, Inc. |
| Jack Friel | Regional Director at Zuora, Inc. |

| Person | Role (if known) |
| --- | --- |
| Ben Ghio | |
| Ken Goldman | Member of Board of Directors of Zuora, Inc. |
| Tim Haley | |
| Nicholas Harlow | |
| Peter Hegyi | Director, Media & Telecom, of Zuora, Inc. |
| Robert Hildenbrand | |
| Joon Huh | |
| Travis Huch | Vice President of Customer Success |
| Richard Inonog | |
| Lei Jin | Senior Director, Product Management/Chief Functional Architect at Zuora, Inc. |
| Sandy Joung | Senior GTM Strategy and Growth Leader of Zuora, Inc. |
| Daniel Kim | |
| Calvin Kong | |
| Scott Kozak | |
| Tom Krackeler | Chief Customer Officer at Zuora, Inc. |
| Arul Kumar | |
| Troy Lauer | |
| Christina Lemucchi | |
| Kevin Maresco | |
| Sai Prasad Marri | |
| Lee Mish | |
| Parveen Nandal | |
| Angela Ngo | |
| Peush Patel | Director of Product Management at Zuora, Inc. |
| Todd Pearson | Senior Vice President, Customer Success, at Zuora, Inc. |
| Jennifer W. Pileggi | Senior Vice President, General Counsel at Zuora, Inc. |
| Jason Pressman | Member of Board of Directors of Zuora, Inc. |
| Mike Quinn | |
| Jagan Reddy | |
| Karthik Ramamoorthy | Vice President & General Manager, Zuora RevPro |
| Matthew Rochester | |
| Monika Saha, | |
| Jason Selby | |
| Tyler Sloat | Chief Financial Officer of Zuora, Inc. |
| Kenwood Tsai | Vice President, Product Architecture, of Zuora, Inc. |
| Tien Tzuo | Chief Executive Officer of Zuora, Inc. |
| Vishal Vachani | |
| Michelangelo Volpi | |
| Tyler Wallace | |
| Lauren Whelihan | Vice President, Zuora Revenue, at Zuora, Inc. |
| Mu Yang | Vice President of Engineering at Zuora, Inc. |
| Magdalena Yesil | Member of Board of Directors of Zuora, Inc. |
| | |
| Zoom Video Communications, Inc. | Customer of Zuora, Inc. |
| PTC | Customer of Zuora, Inc. |
| PWC | Customer of Zuora, Inc. |
| Carbonite | Customer of Zuora, Inc. |

| Person | Role (if known) |
|---|---|
| View the Space | Customer of Zuora, Inc. |
| Procore | Customer of Zuora, Inc. |
| Stansberry | Customer of Zuora, Inc. |
| Unity | Customer of Zuora, Inc. |
| FCA | Customer of Zuora, Inc. |
| Pivotal | Customer of Zuora, Inc. |
| Inspirato | Customer of Zuora, Inc. |
| HUDL | Customer of Zuora, Inc. |
| Tripwire | Customer of Zuora, Inc. |
| USS | Customer of Zuora, Inc. |
| Garter | Customer of Zuora, Inc. |
| Docusign | Customer of Zuora, Inc. |
| ModMed | Customer of Zuora, Inc. |
| LivePerson | Customer of Zuora, Inc. |
| Zenefits | Customer of Zuora, Inc. |
| Neustar | Customer of Zuora, Inc. |
| Shutterstock | Customer of Zuora, Inc. |
| Yext Inc. | Customer of Zuora, Inc. |
| General Motors | Customer of Zuora, Inc. |
| Hitachi Vantara | Customer of Zuora, Inc. |
| George Ahn | Chirotouch, Customer of Zuora, Inc. |
| Eric Yuan | Zoom, Customer of Zuora, Inc. |
|  |  |
| Goldman Sachs & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Morgan Stanley & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Allen & Company LLC | Underwriter of Zuora, Inc. IPO |
| Jefferies | Underwriter of Zuora, Inc. IPO |
| Canaccord Genuity LLC | Underwriter of Zuora, Inc. IPO |
| Needham & Company | Underwriter of Zuora, Inc. IPO |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 16:**

Describe each materially false or misleading statement that You contend any Defendant made with scienter, including when and where each statement was made.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it takes the form of a contention interrogatory, which courts have found to be inappropriate until designated discovery is complete.

As discussed in General Objection 11, discovery as to Defendants and third parties remains ongoing. Lead Plaintiff therefore objects to Defendants' contention interrogatories as premature.

Lead Plaintiff additionally objects to this Interrogatory to the extent it constitutes premature expert discovery or otherwise calls for the premature production of expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Subject to and notwithstanding the above, Lead Plaintiff refers Defendants to its Answer to Interrogatory No. 13 and incorporates that Answer by reference in the interest of readability. Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 17:**

For each statement identified in response to the preceding interrogatory, describe all facts supporting Your contention that the statement was made with scienter.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 16. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action, particularly with its call that Lead Plaintiff identify "all" facts.

Subject to and notwithstanding the above, Lead Plaintiff states that the following facts (non-exhaustive) demonstrate that Defendants made the fraudulent statements identified in the Answer to Interrogatory No. 13 with scienter:

- Defendants knew of the Billing-RevPro integration failure before and throughout the entirety of the Class Period based on Zuora's failure to effectively integrate and implement RevPro internally. Compl. ¶ 242.

  o Despite working diligently on the "Zuora on Zuora" or "ZoZ" project, together with the ZoR extension of the project, Defendants failed to successfully connect RevPro internally through an automated solution. *See, e.g.*, ZUO_00160174; ZUO_00006724-25; ZUO_0000219 (Tzuo conceding ""we can't integrate with our own product, Revpro"); ZUO_0036615.

  o Zuora encountered the same integration failure customers experienced in performing an implementation of RevPro on its internal systems, including for GM, Zoom, and Yext. *See* Compl. ¶¶ 76-78; ZUO_00006721; ZUO_00287209; ZUO_00014597; ZUO_00252568; ZUO_00002424; ZUO_00022773; ZUO_00025796; ZUO_00103347; ZUO_00103857; ZUO_00255489; ZUO_0036615.

  o Indeed, the only way for Defendants to get RevPro online on Zuora's systems by April 2018 was after conducting a time and labor-intensive manual input of Billing data into the RevPro's system. *See* Compl. ¶ 78, ZUO_00006721; ZUO_00022773; ZUO_00025796; ZUO_00102917.

  o However, due to the manual implementation, Zuora then had to do a two-year retest, which continued at Zuora into at least March 2019. *See, e.g.*, Compl. ¶ 78; ZUO_00115958.

  o Given that Zuora failed to successfully configure and deploy RevPro internally, it is not plausible that Defendants did not know about the integration failure when making their misstatements and omissions. *See, e.g.*, ZUO_00115958; ZUO_00329758.

- Defendants took undisclosed steps that show their knowledge of the significant technical challenges to integrating RevPro and Billing.

  o At the same time Defendants were promoting the superior functionality and configuration of its solution on customers' systems, the Company secretly worked for years to develop a solution for the Billing-RevPro integration failure. Compl. ¶¶ 79-84.

  o Specifically, beginning in early 2018 through March 2019, Defendants worked on an unsuccessful integration technology project codenamed "Keystone" *See, e.g.*, Compl. ¶¶ 79-84; ZUO_00103043; ZUO_00255489.

- o However, after failed internal tests and tests on customers, reflecting that the Keystone technology and related OrderMetrics solution, Defendants determined that Keystone could not deliver the represented functionality for RevPro, as it did not have all the data points needed for RevPro as 80 to 90 percent of Zuora's customers would not be able to use the Keystone integration. *See, e.g.*, Compl. ¶¶ 83-84, 119; ZUO_00178812.

  - o In or about February or March 2019, Zuora's executives acknowledged the failure of the Keystone project and decided to abandon the project in favor of a separate technological approach internally called the K-2 Project, which remained ongoing well after the end of the Class Period. *See, e.g.*, Compl. ¶ 119; ZUO_00213746; ZUO_00003467; ZUO_00115958; ZUO_00302598; ZUO_00120450; ZUO_00039101; ZUO_00268993; ZUO_00003771; ZUO_00003784; ZUO_00003784; ZUO_00003940; ZUO_00003962; ZUO_00003963; ZUO_00004218.

- Defendants were directly and extensively involved in developing and marketing Zuora's platform and products, acquiring and integrating Leeyo, and leading the Billing-RevPro integration efforts. *See, e.g.*, ZUO_V_000021.

  - o Defendant Tzuo is a co-founder of the Company, has been with the Company since its inception, and was its CEO during the entirety of the Class Period.

  - o Defendant Tzuo has publicly touted his knowledge of the Zuora solution and involvement in the integration of Leeyo and its RevPro product, *See, e.g.*, ZUO_00003132; ZUO_00003784.

  - o Defendant Tzuo signed and certified the Company's SEC filings during the Class Period, as well as regularly spoke to investors about Zuora's solution's capabilities.

  - o Defendant Sloat was the Company's long-time CFO including throughout the Class Period.

  - o Defendant Sloat has promoted his "owning of the business" model and he also led the internal Zuora on Zuora implementation project as well as technical Billing-RevPro integration projects.

- Defendants were informed at internal meetings and had access to internal contemporaneous reports and data contradicting their statements to investors.

  - o Defendants attended meetings, as well as received, reviewed and had access to reports and data, which undermined their representations to investors about the functionality and the associated demand of Zuora's solution. *See, e.g.*, ZUO_V_00001-52; ZUO_0000192; ZUO_00002740; ZUO_00003209; ZUO_00003296; ZUO_00329758; ZUO_00003962; ZUO_00003963; ZUO_00271415.

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 34

○ For example, the Executive Defendants received testing reports and participated in monthly "Zuora on Zuora" or "ZoZ" project meetings where they were briefed on the progress of the internal implementation and implementation failure was discussed. *See, e.g.*, Compl. ¶¶ 85-87; ZUO_00003415; ZUO_00115958.

○ Similarly, Zuora's executives had access to reports detailing the status of the Keystone Project and were also apprised of the result of the Keystone failure through a multitude of internal meetings. *See, e.g.*, ZUO_00354485; ZUO_00002424; ZUO_V_000035; ZUO_00002575; ZUO_00028744; ZUO_00003209; ZUO_00120450; ZUO_00268653; ZUO_ 003298887

○ Defendants demanded ongoing updates regarding Keystone. *See, e.g.*, ZUO_V_000033; ZUO_00002600; ZUO_00213746 (Tzuo noting that Zuora "can't get Keysonte right").

○ In addition, senior management at Zuora, including the Executive Defendants, knew about customer dissatisfaction with the Keystone integration through a multitude of sources, including group forums, meeting minutes and global summaries of all the forums, quarterly review meetings, and customer focus groups all detailing the Keystone Project's failure and the integration failure with respect to customers. *See, e.g.*, Compl. ¶¶ 93-97; ZUO_00162471; ZUO_00162471; ZUO_00002424; ZUO_00002940; ZUO_00028426; ZUO_V_000037-40; ZUO_00120553.

○ In addition, the Executive Defendants were informed of the results of sales team meetings identifying customers that were upset with the integration and lost sales opportunities. *See*, e.g., ZUO_00191437; ZUO_00287209; ZUO_V_000037-40; ZUO_00203313; ZUO_0036615; ZUO_00177624; ZUO_00268653; ZUO_00270755.

○ The Executive Defendants further had access to the Company's SalesForce database that identified these and other client-specific issues. Compl. ¶¶ 107, 109.

• Defendants were informed directly by their customers with information contradicting their statements to investors.

○ Defendants, including Defendant Sloat attended client forums where he other Zuora executives received negative feedback from customers informing him and other executives that Zuora had not been able to get the solution to work as advertised on their systems. *See, e.g.*, ZUO_00294184.

○ In addition, Defendant Tzuo was informed through, among other things, email chains that a major customer of Zuora, Zoom, was so dissatisfied with the solution that it spent substantial sums of its own money to come up with an integration fix and withheld payment to Zuora. *See, e.g.*, Compl. ¶¶ 96, 107; ZUO_00197981.

- o    Defendants on occasion approved SOW discounts/rebates/fee-waivers for customers dissatisfied with RevPro integration. *See, e.g.*, ZUO_00162471; ZUO_00002424; ZUO_00294184; ZUO_00301574; ZUO_00043518.

- Defendants' admitted integration failures to their colleagues in advance of Zuora going public.

  - o    During a monthly "Zuora on Zuora" or "ZoZ" project meeting in early 2018, Defendant Sloat told the project team about how Zuora was "going to market as a combined product for ASC 606," that the market needed a seamless solution and that "Zuora needed to get its act together with RevPro. Compl. ¶ 75.

  - o    Further, in late 2018, Tien Tzuo gave Jagan Reddy and other executives a directive to start K2, acknowledging that Keystone/OrderMetrics wasn't working. Compl. ¶ 119.

- Zuora's Senior Executives made insider sales during the Class Period that were unusual and suspicious in both timing and amount.

  - o    During the Class Period, Defendant Sloat made $16.89 million insider sales.

  - o    The first significant sale occurred on September 7, 2018, after Defendants admit they knew of the integration issue, and earned Defendant Sloat approximately $8.8 million.

  - o    The second significant sale occurred on March 28, 2019, just a week after Zuora announced positive fourth quarter fiscal year 2019 and full fiscal year 2019 results, but just one month before Zuora's disastrous first quarter fiscal year 2020 ended.

  - o    Another Zuora insider, Marc Diouane, who was relieved of his position as President and head of sales when Zuora disclosed significant issues involving sales execution and the integration of RevPro with Zuora billing, earned approximately $11.13 million in insider sales.

  - o    Notably, nearly half of Mr. Diouane earnings from insider sales came in a transaction on April 30, 2019, which was the final day of Zuora's first quarter fiscal year 2020, and only a month before Zuora announced his removal.

  - o    Both Defendant Sloat and Mr. Diouane would have made substantially less had the stock price not been artificially inflated.

  - o    After the close of the Class Period up to the filing of this complaint, neither Defendant Sloat nor Diouane sold any shares they owned or controlled.

- o    While certain of these sales were made pursuant to 10b5-1 plans, Defendants entered into those plans during the Class Period while they were in possession of material non-public information.

- Defendants have admitted (post-Class Period) that they knew of the integration failure and began work to address it in late spring 2018 or early summer 2018, yet failed to disclose such information while continuing to promote the functionality of Zuora's solution.

  - o    At the May 30, 2019 earnings call, in responding to an analyst's question as to why the two systems had not been integrated given that Zuora had acquired Leeyo two years ago in 2017, Defendant Tzuo stated that the Company had been focused on getting RevPro customers live prior to the ASC 606 deadline and "didn't really have time and the resource to focus on the integration between [Billing and RevPro] until after the 606 [wave] was complete."

  - o    Defendant Tzuo admitted that the Company started "heavy work on the integration [] early last summer, late spring, early last summer. And long story short, we went down one direction that proved to be a dead end, a false direction."

  - o    Moreover, post-Class Period, Defendants admitted that, unbeknownst to investors, for the past year Company had been making extraordinary efforts to technically integrate the two products to make sure "that people that have our Billing product could also buy RevPro and have a clean integration across it."

  - o    However, these efforts were unsuccessful, and as a result, the Company had to pause implementations that Zuora had with Billing customers who had recently bought RevPro until the integration work was completed. Defendants also admitted that these paused implementations delayed cross-selling efforts with other customers..

- The integration issue affected Zuora's core operations.

  - o    Virtually all of Zuora's revenues come directly or indirectly from its sale and implementation of its platform and related software application products that are impacted by this integration issue. *See, e.g.*, ZUO_00003757.

  - o    Thus, the problem that the RevPro-Billing integration failure presented was so prominent it is not plausible that Tzuo, Sloat and other Zuora senior management, including Diouane, did not know about those problems when making false statements about the functionality of Zuora's solution. *See, e.g.*, ZUO_00103043; ZUO_00003940.

- The temporal proximity between Defendants' false statements and omissions and revelations of the truth supports an inference of scienter.

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 37

o On April 18, 2019, Zuora filed with the SEC its Annual Report for fiscal year 2019 on Form 10-K. This filing contained false and misleading statements concerning the Company's ability to concurrently deploy its two flagship products, Zuora RevPro and Zuora Billing. Just a little over a month later, on May 31, 2019, Zuora disclosed significant technical issues in integrating Zuora RevPro with Zuora Billing, that the technical issues adversely impacted revenue in both the first quarter but also for the entire fiscal year 2020, and that the work necessary to complete the integration would not occur until at least the end of the third quarter of fiscal year 2020. The close temporal proximity between the April 18, 2019 false statements and the May 10, 2018 disclosure supports a strong inference of Defendants' scienter..

- Defendants implemented significant management and operational changes after the end of the Class Period.

    o On May 30, 2019, the Company announced a change in sales leadership, disclosing that Marc Diouane would be immediately leaving his role as President and Head of Sales and would only be staying with the Company as advisor during the transition phase in securing new leadership. Defendants also announced realignment in the Company's entire sales structure, placing sales representatives under experienced managers.

    o The Company further announced a change in its sales strategy, moving from a broad brushed "build the market" to executing on the pipeline, which would be done under a new head of sales.

- The Executive Defendants held themselves out in their public statements as personally familiar with the Company's sales and implementation process, including integration of RevPro with Billing.

    o Defendants repeatedly touted their "full visibility" full visibility" into sales and deployment process.

    o In addition, during the Class Period, including at the May 31, 2018, August 31, 2018 and November 29, 2018 earnings calls, Defendant Tzuo regularly spoke to investors and securities analysts regarding, among other topics, the functionality of and demand for Zuora's RevPro product, and cross-selling opportunities RevPro provided, including customer-specific examples.

    o Similarly, Defendant Sloat held himself out as personally knowledgeable about the impact RevPro was having on Zuora's reported financials, including its revenue contributions.

    o Finally, after the Class Period, on June 6, 2019, given the importance of integrating the two flagship products, Defendant Tzuo stated he personally would be leading the charge to drive product innovation and completion of the integration project.

- Defendants' misrepresentations were necessary to go public.

  o Defendants made many of their misrepresentations and omissions while soliciting funds from investors in their initial public offering, with their misstatements allowing the Company to complete their long-desired IPO.

  o Once public, Zuora executives and insiders, including Defendant Sloat and Diouane, sold substantial amounts of personal shares in Zuora, which they otherwise could not have accomplished without becoming a public company.

- Defendants repeatedly spoke on the subject matters misrepresented.

  o The Executive Defendants made repeated statements to investors about the functionality of Zuora's solution throughout the Class Period in a multitude of press releases, social media messages, quarterly and annual reports filed with the SEC and signed by and/or approved by the Executive Defendants, and earnings calls.

  o Having spoken on these subjects so many times, the Executive Defendants knew, or were deliberately reckless in not knowing, that the statements about the functionality of Zuora's solution were false and misleading and omitted material information.

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 18:**

Identify each Person with knowledge of any of the facts set forth in Your response to the preceding interrogatory.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 16. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 39

records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action. Moreover, Lead Plaintiff objects to this Interrogatory to extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Subject to and notwithstanding the above, Lead Plaintiff states the following non-expert Persons (non-exhaustive) may have personal knowledge of facts relevant to the materiality and falsity of Defendants' fraudulent statements, omissions, and/or scheme:

| Person | Role (if known) |
| --- | --- |
| New Zealand Methodist Trust Association | Lead Plaintiff |
| Mike Aaron | GM, Zuora Billing |
| Alvina Antar | CIO at Zuora, Inc. |
| Angela Ngo | RevPro Marketing Manager |
| Paolo Battaglini | Vice President of Finance and Chief Accounting Officer of Zuora, Inc. |
| Chris Bruner | |
| Srinivas Chadalavada | Senior Director Engineering of Zuora, Inc. |
| Kelly Cheng | |
| Nathan Creswell | |
| Brent Cromley | Senior Vice President of Technology at Zuora, Inc |
| Ajit Deshpande | |
| Pat Deskin | Vice President of RevPro at Zuora, Inc. |
| Joe Di Bari | |
| Marc Diouane | |
| Peter Fenton | Member of Board of Directors of Zuora, Inc. |
| Jack Friel | Regional Director at Zuora, Inc. |
| Ben Ghio | |
| Ken Goldman | Member of Board of Directors of Zuora, Inc. |
| Tim Haley | |
| Nicholas Harlow | |
| Peter Hegyi | Director, Media & Telecom, of Zuora, Inc. |
| Robert Hildenbrand | |
| Joon Huh | |
| Travis Huch | Vice President of Customer Success |
| Richard Inonog | |
| Lei Jin | Senior Director, Product Management/Chief Functional Architect at Zuora, Inc. |
| Sandy Joung | Senior GTM Strategy and Growth Leader of Zuora, Inc. |
| Daniel Kim | |
| Calvin Kong | |
| Scott Kozak | |
| Tom Krackeler | Chief Customer Officer at Zuora, Inc. |

| Person | Role (if known) |
| --- | --- |
| Arul Kumar | |
| Troy Lauer | |
| Christina Lemucchi | |
| Kevin Maresco | |
| Sai Prasad Marri | |
| Lee Mish | |
| Parveen Nandal | |
| Angela Ngo | |
| Peush Patel | Director of Product Management at Zuora, Inc. |
| Todd Pearson | Senior Vice President, Customer Success, at Zuora, Inc. |
| Jennifer W. Pileggi | Senior Vice President, General Counsel at Zuora, Inc. |
| Jason Pressman | Member of Board of Directors of Zuora, Inc. |
| Mike Quinn | |
| Jagan Reddy | |
| Karthik Ramamoorthy | Vice President & General Manager, Zuora RevPro |
| Matthew Rochester | |
| Monika Saha, | |
| Jason Selby | |
| Tyler Sloat | Chief Financial Officer of Zuora, Inc. |
| Kenwood Tsai | Vice President, Product Architecture, of Zuora, Inc. |
| Tien Tzuo | Chief Executive Officer of Zuora, Inc. |
| Vishal Vachani | |
| Michelangelo Volpi | |
| Tyler Wallace | |
| Lauren Whelihan | Vice President, Zuora Revenue, at Zuora, Inc. |
| Mu Yang | Vice President of Engineering at Zuora, Inc. |
| Magdalena Yesil | Member of Board of Directors of Zuora, Inc. |
| | |
| Zoom Video Communications, Inc. | Customer of Zuora, Inc. |
| PTC | Customer of Zuora, Inc. |
| PWC | Customer of Zuora, Inc. |
| Carbonite | Customer of Zuora, Inc. |
| View the Space | Customer of Zuora, Inc. |
| Procore | Customer of Zuora, Inc. |
| Stansberry | Customer of Zuora, Inc. |
| Unity | Customer of Zuora, Inc. |
| FCA | Customer of Zuora, Inc. |
| Pivotal | Customer of Zuora, Inc. |
| Inspirato | Customer of Zuora, Inc. |
| HUDL | Customer of Zuora, Inc. |
| Tripwire | Customer of Zuora, Inc. |
| USS | Customer of Zuora, Inc. |
| Garter | Customer of Zuora, Inc. |
| Docusign | Customer of Zuora, Inc. |
| ModMed | Customer of Zuora, Inc. |
| LivePerson | Customer of Zuora, Inc. |
| Zenefits | Customer of Zuora, Inc. |
| Neustar | Customer of Zuora, Inc. |

| Person | Role (if known) |
|---|---|
| Shutterstock | Customer of Zuora, Inc. |
| Yext Inc. | Customer of Zuora, Inc. |
| General Motors | Customer of Zuora, Inc. |
| Hitachi Vantara | Customer of Zuora, Inc. |
| George Ahn | Chirotouch, Customer of Zuora, Inc. |
| Eric Yuan | Zoom, Customer of Zuora, Inc. |
|  |  |
| Goldman Sachs & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Morgan Stanley & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Allen & Company LLC | Underwriter of Zuora, Inc. IPO |
| Jefferies | Underwriter of Zuora, Inc. IPO |
| Canaccord Genuity LLC | Underwriter of Zuora, Inc. IPO |
| Needham & Company | Underwriter of Zuora, Inc. IPO |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 19:**

If You contend that the decline in Zuora's stock price on May 31, 2019 was solely caused by disclosure of Defendants' alleged wrongful conduct, state all facts supporting Your contention.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it takes the form of a contention interrogatory, which courts have found to be inappropriate until designated discovery is complete. As discussed in General Objection 11, discovery as to Defendants and third parties remains ongoing. Lead Plaintiff therefore objects to Defendants' contention interrogatories as premature.

Lead Plaintiff additionally objects to this Interrogatory to the extent it constitutes premature expert discovery or otherwise calls for the premature production of expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action, particularly with its call that Lead Plaintiff identify "all" facts.

Subject to and notwithstanding the above, Lead Plaintiff identifies the following (non-exhaustive) facts and previously disclosed expert opinions as evidence that the decline in Zuora's stock price on May 31, 2019 is fully attributable to the disclosure of Defendants' wrongful conduct.

- Throughout the Class Period, Zuora common stock traded in an efficient market. (ECF No. 101-1, ¶ 3).

- Defendants' May 30, 2019 disclosures "corrected" their prior misrepresentations and omissions, which caused catastrophic impact on Zuora's common stock.

- Information unrelated to Defendants' alleged misrepresentations and omissions (i.e., confounding information) did not impact Zuora's stock price over the May 30-31, 2019 trading period.

- In her unchallenged market efficiency report submitted with Plaintiffs' Motion to Certify Class (ECF No. 101-1), Dr. Ronen performed an event study to determine whether Zuora's Common Stock reacted to the release of corrective information in a statistically significant manner after controlling for market and industry factors. Dr. Ronen's event study demonstrates that there was a statistically significant negative price movement beyond the 95% confidence level (as well as beyond the 99% confidence level) for the May 30, 2019 disclosure.

- No Zuora-specific factors unrelated to Defendants' wrongful conduct could explain the observed price reactions, whether in whole or in part, during the window of May 30-31, 2019.

- Announcement of sales execution issues was not confounding information, but rather, a key piece of corrective information, as evidenced by the facts that:

  o Defendants conceded internally within Zuora that its failed Keystone integration presented a "meaningful sales headwind [for Zuora Billing] that our field needed to overcome"), and that"[Keystone] represents a severe risk not only to the RevPro product line, but to our overall business due to the importance of joint customers like Zoom and Yext." ZUO_00000906 at 926-27.

  o Tzuo acknowledged during the March 25, 2019 eComm meeting that "there is a lot of smashing going on with the customer base, and it is having an impact on sales" and that "upwards of 40% of a sales person, sales manager's time is spent on escalations, right, versus focusing on selling deals." *See* ZUO_V_000052 at 59:35.

  o At the May 30, 2019 earnings call, Tzuo himself connected the two "headwinds," when he stated the integration challenge "has slowed down our cross-sell motion," and "resulted in lower professional services and

subscription revenue in the quarter as well as tempered expectations going forward." Compl. ¶ 148.

- Throughout the Class Period, large price movements on days when Zuora specific value-relevant information was disclosed cannot be attributed to random volatility, or to market or industry factors. *See* Ronen Decl. (ECF No. 101-1, ¶ 78).

Lead Plaintiff reserves the right to supplement this response at the appropriate time, that is, after the completion of fact and expert discovery.

**INTERROGATORY NO. 20:**

Identify each Person with knowledge of any of the facts set forth in Your response to the preceding interrogatory.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 19. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff additionally objects to this Interrogatory to the extent it constitutes premature expert discovery or otherwise calls for the premature production of expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Subject to and notwithstanding the above, Lead Plaintiff responds as follows: With respect to information that requires expert analysis, opinions, or testimony, Lead Plaintiff shall supplement this response to identify, among other Persons, experts other than Dr. Ronen with knowledge of the relevant causation facts at the appropriate time, that is, after the substantial completion of fact and expert discovery. With respect to non-expert information, Lead Plaintiff states that the following Persons may have personal knowledge of relevant facts.

| Person | Role (if known) |
|---|---|
| New Zealand Methodist Trust Association | Lead Plaintiff |
| Mike Aaron | GM, Zuora Billing |
| Alvina Antar | CIO at Zuora, Inc. |
| Angela Ngo | RevPro Marketing Manager |
| Paolo Battaglini | Vice President of Finance and Chief Accounting Officer of Zuora, Inc. |
| Chris Bruner | |
| Srinivas Chadalavada | Senior Director Engineering of Zuora, Inc. |
| Kelly Cheng | |
| Nathan Creswell | |
| Brent Cromley | Senior Vice President of Technology at Zuora, Inc |
| Ajit Deshpande | |
| Pat Deskin | Vice President of RevPro at Zuora, Inc. |
| Joe Di Bari | |
| Marc Diouane | |
| Peter Fenton | Member of Board of Directors of Zuora, Inc. |
| Jack Friel | Regional Director at Zuora, Inc. |
| Ben Ghio | |
| Ken Goldman | Member of Board of Directors of Zuora, Inc. |
| Tim Haley | |
| Nicholas Harlow | |
| Peter Hegyi | Director, Media & Telecom, of Zuora, Inc. |
| Robert Hildenbrand | |
| Joon Huh | |
| Travis Huch | Vice President of Customer Success |
| Richard Inonog | |
| Lei Jin | Senior Director, Product Management/Chief Functional Architect at Zuora, Inc. |
| Sandy Joung | Senior GTM Strategy and Growth Leader of Zuora, Inc. |
| Daniel Kim | |
| Calvin Kong | |
| Scott Kozak | |
| Tom Krackeler | Chief Customer Officer at Zuora, Inc. |
| Arul Kumar | |
| Troy Lauer | |
| Christina Lemucchi | |
| Kevin Maresco | |
| Sai Prasad Marri | |
| Lee Mish | |
| Parveen Nandal | |
| Angela Ngo | |
| Peush Patel | Director of Product Management at Zuora, Inc. |
| Todd Pearson | Senior Vice President, Customer Success, at Zuora, Inc. |
| Jennifer W. Pileggi | Senior Vice President, General Counsel at Zuora, Inc. |
| Jason Pressman | Member of Board of Directors of Zuora, Inc. |
| Mike Quinn | |
| Jagan Reddy | |

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 45

| Person | Role (if known) |
|---|---|
| Karthik Ramamoorthy | Vice President & General Manager, Zuora RevPro |
| Matthew Rochester | |
| Monika Saha, | |
| Jason Selby | |
| Tyler Sloat | Chief Financial Officer of Zuora, Inc. |
| Kenwood Tsai | Vice President, Product Architecture, of Zuora, Inc. |
| Tien Tzuo | Chief Executive Officer of Zuora, Inc. |
| Vishal Vachani | |
| Michelangelo Volpi | |
| Tyler Wallace | |
| Lauren Whelihan | Vice President, Zuora Revenue, at Zuora, Inc. |
| Mu Yang | Vice President of Engineering at Zuora, Inc. |
| Magdalena Yesil | Member of Board of Directors of Zuora, Inc. |
| | |
| Zoom Video Communications, Inc. | Customer of Zuora, Inc. |
| PTC | Customer of Zuora, Inc. |
| PWC | Customer of Zuora, Inc. |
| Carbonite | Customer of Zuora, Inc. |
| View the Space | Customer of Zuora, Inc. |
| Procore | Customer of Zuora, Inc. |
| Stansberry | Customer of Zuora, Inc. |
| Unity | Customer of Zuora, Inc. |
| FCA | Customer of Zuora, Inc. |
| Pivotal | Customer of Zuora, Inc. |
| Inspirato | Customer of Zuora, Inc. |
| HUDL | Customer of Zuora, Inc. |
| Tripwire | Customer of Zuora, Inc. |
| USS | Customer of Zuora, Inc. |
| Garter | Customer of Zuora, Inc. |
| Docusign | Customer of Zuora, Inc. |
| ModMed | Customer of Zuora, Inc. |
| LivePerson | Customer of Zuora, Inc. |
| Zenefits | Customer of Zuora, Inc. |
| Neustar | Customer of Zuora, Inc. |
| Shutterstock | Customer of Zuora, Inc. |
| Yext Inc. | Customer of Zuora, Inc. |
| General Motors | Customer of Zuora, Inc. |
| Hitachi Vantara | Customer of Zuora, Inc. |
| George Ahn | Chirotouch, Customer of Zuora, Inc. |
| Eric Yuan | Zoom, Customer of Zuora, Inc. |
| | |
| Goldman Sachs & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Morgan Stanley & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Allen & Company LLC | Underwriter of Zuora, Inc. IPO |
| Jefferies | Underwriter of Zuora, Inc. IPO |
| Canaccord Genuity LLC | Underwriter of Zuora, Inc. IPO |
| Needham & Company | Underwriter of Zuora, Inc. IPO |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 21:**

Describe fully each Communication that You have had with any Person who has ever been an officer, director, employee, agent, or independent contractor, of Zuora, regarding o [sic] relating in any way to any of the matters alleged in the Complaint.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Additionally, Lead Plaintiff objects to this Interrogatory to the extent it seeks information that is not relevant to the claims, defenses, or subject matter of this Action, or to the extent the information is readily available to Defendants, including information in the possession of Zuora's current or former officers, employees, or agents. Lead Plaintiff further objects to this Interrogatory as it is overbroad, unduly burdensome, or disproportionate to the needs of the Action.

Subject to and notwithstanding the above, Lead Plaintiff states that the following officers, directors, employees, agents, or independent contractors of Zuora may have knowledge of any of the matters alleged in the Complaint.

| Person | Role (if known) |
|---|---|
| Mike Aaron | GM, Zuora Billing |
| Alvina Antar | CIO at Zuora, Inc. |
| Angela Ngo | RevPro Marketing Manager |
| Paolo Battaglini | Vice President of Finance and Chief Accounting Officer of Zuora, Inc. |
| Chris Bruner | |
| Srinivas Chadalavada | Senior Director Engineering of Zuora, Inc. |
| Kelly Cheng | |
| Nathan Creswell | |
| Brent Cromley | Senior Vice President of Technology at Zuora, Inc |
| Ajit Deshpande | |
| Pat Deskin | Vice President of RevPro at Zuora, Inc. |
| Joe Di Bari | |
| Marc Diouane | |
| Peter Fenton | Member of Board of Directors of Zuora, Inc. |

| Person | Role (if known) |
|---|---|
| Jack Friel | Regional Director at Zuora, Inc. |
| Ben Ghio | |
| Ken Goldman | Member of Board of Directors of Zuora, Inc. |
| Tim Haley | |
| Nicholas Harlow | |
| Peter Hegyi | Director, Media & Telecom, of Zuora, Inc. |
| Robert Hildenbrand | |
| Joon Huh | |
| Travis Huch | Vice President of Customer Success |
| Richard Inonog | |
| Lei Jin | Senior Director, Product Management/Chief Functional Architect at Zuora, Inc. |
| Sandy Joung | Senior GTM Strategy and Growth Leader of Zuora, Inc. |
| Daniel Kim | |
| Calvin Kong | |
| Scott Kozak | |
| Tom Krackeler | Chief Customer Officer at Zuora, Inc. |
| Arul Kumar | |
| Troy Lauer | |
| Christina Lemucchi | |
| Kevin Maresco | |
| Sai Prasad Marri | |
| Lee Mish | |
| Parveen Nandal | |
| Angela Ngo | |
| Peush Patel | Director of Product Management at Zuora, Inc. |
| Todd Pearson | Senior Vice President, Customer Success, at Zuora, Inc. |
| Jennifer W. Pileggi | Senior Vice President, General Counsel at Zuora, Inc. |
| Jason Pressman | Member of Board of Directors of Zuora, Inc. |
| Mike Quinn | |
| Jagan Reddy | |
| Karthik Ramamoorthy | Vice President & General Manager, Zuora RevPro |
| Matthew Rochester | |
| Monika Saha, | |
| Jason Selby | |
| Tyler Sloat | Chief Financial Officer of Zuora, Inc. |
| Kenwood Tsai | Vice President, Product Architecture, of Zuora, Inc. |
| Tien Tzuo | Chief Executive Officer of Zuora, Inc. |
| Vishal Vachani | |
| Michelangelo Volpi | |
| Tyler Wallace | |
| Lauren Whelihan | Vice President, Zuora Revenue, at Zuora, Inc. |
| Mu Yang | Vice President of Engineering at Zuora, Inc. |
| Magdalena Yesil | Member of Board of Directors of Zuora, Inc. |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 48

**INTERROGATORY NO. 22:**

Describe fully each Communication that You have had with any Person who has ever been an officer, director, employee, agent, or independent contractor of a customer or competitor of Zuora, regarding or relating in any way to any of the matters alleged in the Complaint.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Additionally, Lead Plaintiff objects to this Interrogatory to the extent it seeks information that is not relevant to the claims, defenses, or subject matter of this Action, or to the extent the information is readily available to Defendants, including information in the possession of Zuora's current or former officers, employees, or agents. Lead Plaintiff further objects to this Interrogatory as it is overbroad, unduly burdensome, or disproportionate to the needs of the Action.

Subject to and notwithstanding the above, Lead Plaintiff states that the following officers, directors, employees, agents, or independent contractors of Zuora's customers or competitors may have knowledge of any of the matters alleged in the Complaint.

| Person | Role (if known) |
| --- | --- |
| Zoom Video Communications, Inc. | Customer of Zuora, Inc. |
| PTC | Customer of Zuora, Inc. |
| PWC | Customer of Zuora, Inc. |
| Carbonite | Customer of Zuora, Inc. |
| View the Space | Customer of Zuora, Inc. |
| Procore | Customer of Zuora, Inc. |
| Stansberry | Customer of Zuora, Inc. |
| Unity | Customer of Zuora, Inc. |
| FCA | Customer of Zuora, Inc. |
| Pivotal | Customer of Zuora, Inc. |
| Inspirato | Customer of Zuora, Inc. |
| HUDL | Customer of Zuora, Inc. |
| Tripwire | Customer of Zuora, Inc. |
| USS | Customer of Zuora, Inc. |
| Garter | Customer of Zuora, Inc. |
| Docusign | Customer of Zuora, Inc. |
| ModMed | Customer of Zuora, Inc. |
| LivePerson | Customer of Zuora, Inc. |
| Zenefits | Customer of Zuora, Inc. |
| Neustar | Customer of Zuora, Inc. |

| Person | Role (if known) |
|---|---|
| Shutterstock | Customer of Zuora, Inc. |
| Yext Inc. | Customer of Zuora, Inc. |
| General Motors | Customer of Zuora, Inc. |
| Hitachi Vantara | Customer of Zuora, Inc. |
| George Ahn | Chirotouch, Customer of Zuora, Inc. |
| Eric Yuan | Zoom, Customer of Zuora, Inc. |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

**INTERROGATORY NO. 23:**

If You contend that Defendants may not properly invoke any of the affirmative defenses set forth in the Answer, for each such affirmative defense, describe all facts supporting such contention.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it takes the form of a contention interrogatory, which courts have found to be inappropriate until designated discovery is complete. As discussed in General Objection 11, discovery as to Defendants and third parties remains ongoing. Lead Plaintiff therefore objects to Defendants' contention interrogatories as premature.

Lead Plaintiff additionally objects to this Interrogatory to the extent it constitutes premature expert discovery or otherwise calls for the premature production of expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action, particularly with its call that Lead Plaintiff identify "all" facts.

Lead Plaintiff objects to this Interrogatory to extent that it seeks information and/or documents that are protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Moreover, Lead Plaintiff objects to this Interrogatory to the extent it relates to matters for which Defendants bear the burden of proof but have not yet identified which facts, if any, support any of Defendants' affirmative defenses. Lead Plaintiff similarly objects to this Interrogatory to the extent it requires Lead Plaintiff to identify facts to prove a negative, specifically, the absence of an affirmative defense.

In addition, Lead Plaintiff objects to this Interrogatory to the extent it implicitly contains discrete subparts, which, under the Federal Rules, should properly be counted as distinct interrogatories. Lead Plaintiff reserves the right to refuse to answer any Interrogatories that exceed the established limit in this Action.

Subject to and notwithstanding the above, Lead Plaintiff presently contends that Defendants cannot sustain any of the affirmative defenses set for in their Answer, and that the following facts demonstrate that they Defendants cannot invoke any of their purported affirmative defenses.

- During the Class Period, Zuora's subscription management technology was incapable of permitting a customer to bill and recognize revenue concurrently from a single platform. Specifically, customers using the Zuora Central Platform, together with Zuora Billing and Zuora RevPro, were unable to integrate the data between two modules through automation. *See, e.g.*, ZUO_00115958.

- During the Class Period, the Zuora platform could not:

    o concurrently provide month end close to meet ASC 606 revenue compliance through disclosure reporting and intelligent exception handling.

    o automate and orchestrate the entire subscription order-to-cash process, including billing and revenue recognition.

    o concurrently offer automated billing and efficient accounting features.

    o singularly handle the customer acquisition to financial records close process.

    o enable customers to successfully bill accurately with automated invoices while concurrently account for revenue, comply with the latest revenue recognition rules, close books faster, orchestrate subscription transactions, and process revenue in real-time.

    o be deployed and configured to concurrently operate Zuora Billing and Zuora RevPro at its intended use.

*See, e.g.*, ZUO_00255489; ZUO_00003083; ZUO_00003209; ZUO_V_000005-000007; ZUO_00003341; ZUO_00115958; ZUO_00003598; ZUO_00302598; ZUO_00003757.

- During the Class Period, Zuora's solution did not obviate the need for customers' engineering and IT departments to build in-house custom systems or customizations for their ERP systems to address subscription order-to-cash processes. *See, e.g.*, ZUO_00003209; ZUO_0036615; ZUO_00003757; ZUO_00003853 ("even after K2 - there will still be the need to get GS involved 90% of the time to handle things like ramp deals, and to address the 'creative' way customers use our system"); ZUO_00003962; ZUO_00003963.

- During the Class Period, the only way to remove the friction from reconciling the Zuora Billing and Zuora RevPro systems and recognize revenue would be for the client to either export the data from Zuora Billing and import it into Zuora RevPro manually or build a customized integration that could ingest the required data from Zuora Billing into Zuora RevPro. *See, e.g.*, ZUO_0000334; ZUO_00003598

- During the Class Period, Zuora's "value proposition" was not "more centered around automation and efficiencies versus simply compliance."

- During the Class Period, Defendants omitted material facts from their material false or misleading statements, including the failure of the "Zuora on Zuora" and "Keystone" integration projects. *See, e.g.*, ZUO_00330041; ZUO_00329659.

- During the Class Period, Zuora's integration failures led to Zuora customers to mistrust Zuora. *See, e.g.*, ZUO_00191437; ZUO_00287209; ZUO_V_000037-40; ZUO_00203313; ZUO_0036615; ZUO_00177624; ZUO_00268653; ZUO_00270755; ZUO_00042886; ZUO_00271344.

- During the Class Period, Zuora's integration failures led to Zuora pausing the implementation of RevPro for several customers, including Yext and Carbonite. *See, e.g.*, ZUO_00335919.

- During the Class Period, the integration failure between Zuora's flagship products was resulting in severe sales execution issues, reduced upsell opportunities, and diminished demand for Zuora Central and other homegrown products such that the described method for revenue growth was not viable or sustainable. *See*, e.g., ZUO_00287209, ZUO_00175506 (calling Keystone a "shitshow"), ZUO_00268033 ("Keystone disaster cannot be understated"); ZUO_V_000037-40; ZUO_00329758; ZUO_00003757.

- Despite working diligently on the "Zuora on Zuora" or "ZoZ" project, together with the ZoR extension of the project, Defendants failed to successfully connect RevPro internally through an automated solution. *See, e.g.*, ZUO_00160174; ZUO_00002195; ZUO_00192181; ZUO_00032081.

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                              No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 52

- During the Class Period, Defendants omitted material facts from their material false or misleading statements, including their customers' frustration over the failed integration between Zuora Billing and Zuora RevPro.

- In response to Zuora's May 31, 2018 Earnings Call, analysts including Jeffries and Canaccord Genuity reacted positively to the earnings results and reports about RevPro.

- Defendants knew of the Billing-RevPro integration failure before and throughout the entirety of the Class Period based on Zuora's failure to effectively integrate and implement RevPro internally. Compl. ¶ 242.

  - Despite working diligently on the "Zuora on Zuora" or "ZoZ" project, together with the ZoR extension of the project, Defendants failed to successfully connect RevPro internally through an automated solution. *See, e.g.*, ZUO_00160174; ZUO_00006724-25; ZUO_0000219 (Tzuo conceding ""we can't integrate with our own product, Revpro"); ZUO_0036615.

  - Zuora encountered the same integration failure customers experienced in performing an implementation of RevPro on its internal systems, including for GM, Zoom, and Yext. *See* Compl. ¶¶ 76-78; ZUO_00006721; ZUO_00287209; ZUO_00014597; ZUO_00252568; ZUO_00002424; ZUO_00022773; ZUO_00025796; ZUO_00103347; ZUO_00103857; ZUO_00255489; ZUO_0036615.

  - Indeed, the only way for Defendants to get RevPro online on Zuora's systems by April 2018 was after conducting a time and labor-intensive manual input of Billing data into the RevPro's system. *See* Compl. ¶ 78; ZUO_00006721; ZUO_00022773; ZUO_00025796; ZUO_00102917.

  - However, due to the manual implementation, Zuora then had to do a two-year retest, which continued at Zuora into at least March 2019. Compl. ¶ 78.

  - Given that Zuora failed to successfully configure and deploy RevPro internally, it is not plausible that Defendants did not know about the integration failure when making their misstatements and omissions. *See, e.g.*, ZUO_00115958; ZUO_00329758.

- Defendants took undisclosed steps that show their knowledge of the significant technical challenges to integrating RevPro and Billing.

  - At the same time Defendants were promoting the superior functionality and configuration of its solution on customers' systems, the Company secretly worked for years to develop a solution for the Billing-RevPro integration failure. Compl. ¶¶ 79-84.

- o Specifically, beginning in early 2018 through March 2019, Defendants worked on an unsuccessful integration technology project codenamed "Keystone" *See, e.g.*, Compl. ¶¶ 79-84; ZUO_00103043; ZUO_00255489.

- o However, after failed internal tests and tests on customers, reflecting that the Keystone technology and related OrderMetrics solution, Defendants determined that Keystone could not deliver the represented functionality for RevPro, as it did not have all the data points needed for RevPro as 80 to 90 percent of Zuora's customers would not be able to use the Keystone integration. Compl. ¶¶ 83-84, 119.

- o In or about February or March 2019, Zuora's executives acknowledged the failure of the Keystone project and decided to abandon the project in favor of a separate technological approach internally called the K-2 Project, which remained ongoing well after the end of the Class Period. *See, e.g.*, Compl. ¶ 119; ZUO_00213746; ZUO_00003467; ZUO_00115958; ZUO_00302598; ZUO_00120450; ZUO_00039101; ZUO_00268993; ZUO_00003771; ZUO_00003784; ZUO_00003784; ZUO_00003940; ZUO_00003962; ZUO_00003963; ZUO_00004218.

- Defendants were directly and extensively involved in developing and marketing Zuora's platform and products, acquiring and integrating Leeyo, and leading the Billing-RevPro integration efforts. *See, e.g.*, ZUO_V_000021.

  - o Defendant Tzuo is a co-founder of the Company, has been with the Company since its inception, and was its CEO during the entirety of the Class Period.

  - o Defendant Tzuo has publicly touted his knowledge of the Zuora solution and involvement in the integration of Leeyo and its RevPro product, *See, e.g.*, ZUO_00003132; ZUO_00003784.

  - o Defendant Tzuo signed and certified the Company's SEC filings during the Class Period, as well as regularly spoke to investors about Zuora's solution's capabilities.

  - o Defendant Sloat was the Company's long-time CFO including throughout the Class Period.

  - o Defendant Sloat has promoted his "owning of the business" model and he also led the internal Zuora on Zuora implementation project as well as technical Billing-RevPro integration projects.

- Defendants were informed at internal meetings and had access to internal contemporaneous reports and data contradicting their statements to investors.

  - o Defendants attended meetings, as well as received, reviewed and had access to reports and data, which undermined their representations to investors

about the functionality and the associated demand of Zuora's solution. *See, e.g.*, ZUO_V_00001-52; ZUO_0000192; ZUO_00002740; ZUO_00003209; ZUO_00003296; ZUO_00329758; ZUO_00003962; ZUO_00003963; ZUO_00271415.

o   For example, the Executive Defendants received testing reports and participated in monthly "Zuora on Zuora" or "ZoZ" project meetings where they were briefed on the progress of the internal implementation and implementation failure was discussed. Compl. ¶¶ 85-87.

o   Similarly, Zuora's executives had access to reports detailing the status of the Keystone Project and were also apprised of the result of the Keystone failure through a multitude of internal meetings. *See, e.g.*, ZUO_00354485; ZUO_00002424; ZUO_V_000035; ZUO_00002575; ZUO_00028744; ZUO_00003209; ZUO_00120450; ZUO_00268653; ZUO_ 003298887.

o   Defendants demanded ongoing updates regarding Keystone. *See, e.g.*, ZUO_V_000033; ZUO_00002600; ZUO_00213746 (Tzuo noting that Zuora "can't get Keysonte right").

o   In addition, senior management at Zuora, including the Executive Defendants, knew about customer dissatisfaction with the Keystone integration through a multitude of sources, including group forums, meeting minutes and global summaries of all the forums, quarterly review meetings, and customer focus groups all detailing the Keystone Project's failure and the integration failure with respect to customers. *See, e.g.*, Compl. ¶¶ 93-97, ZUO_00162471; ZUO_00162471; ZUO_00002424; ZUO_00002940; ZUO_00028426; ZUO_V_000037-40; ZUO_00120553.

o   In addition, the Executive Defendants were informed of the results of sales team meetings identifying customers that were upset with the integration and lost sales opportunities. *See, e.g.*, ZUO_00191437; ZUO_00287209; ZUO_V_000037-40; ZUO_00203313; ZUO_0036615; ZUO_00177624; ZUO_00268653; ZUO_00270755.

o   The Executive Defendants further had access to the Company's SalesForce database that identified these and other client-specific issues. Compl. ¶¶ 107, 109.

• Defendants were informed directly by their customers with information contradicting their statements to investors.

o   Defendants, including Defendant Sloat attended client forums where he other Zuora executives received negative feedback from customers informing him and other executives that Zuora had not been able to get the solution to work as advertised on their systems. ZUO_00294184.

- o In addition, Defendant Tzuo was informed through, among other things, email chains that a major customer of Zuora, Zoom, was so dissatisfied with the solution that it spent substantial sums of its own money to come up with an integration fix and withheld payment to Zuora. *See, e.g.*, Compl. ¶¶ 96, 107; ZUO_00197981.

- o Defendants on occasion approved SOW discounts/rebates/fee-waivers for customers dissatisfied with RevPro integration. *See, e.g.*, ZUO_00162471; ZUO_00002424; ZUO_00294184; ZUO_00301574; ZUO_00043518.

- Defendants' admitted integration failures to their colleagues in advance of Zuora going public.

  - o During a monthly "Zuora on Zuora" or "ZoZ" project meeting in early 2018, Defendant Sloat told the project team about how Zuora was "going to market as a combined product for ASC 606," that the market needed a seamless solution and that "Zuora needed to get its act together with RevPro. Compl. ¶ 75.

  - o Further, in late 2018, Tien Tzuo gave Jagan Reddy and other executives a directive to start K2, acknowledging that Keystone/OrderMetrics wasn't working. Compl. ¶ 119.

- Zuora's Senior Executives made insider sales during the Class Period that were unusual and suspicious in both timing and amount.

  - o During the Class Period, Defendant Sloat made $16.89 million insider sales.

  - o The first significant sale occurred on September 7, 2018, after Defendants admit they knew of the integration issue, and earned Defendant Sloat approximately $8.8 million.

  - o The second significant sale occurred on March 28, 2019, just a week after Zuora announced positive fourth quarter fiscal year 2019 and full fiscal year 2019 results, but just one month before Zuora's disastrous first quarter fiscal year 2020 ended.

  - o Another Zuora insider, Marc Diouane, who was relieved of his position as President and head of sales when Zuora disclosed significant issues involving sales execution and the integration of RevPro with Zuora billing, earned approximately $11.13 million in insider sales.

  - o Notably, nearly half of Mr. Diouane earnings from insider sales came in a transaction on April 30, 2019, which was the final day of Zuora's first quarter fiscal year 2020, and only a month before Zuora announced his removal.

- Both Defendant Sloat and Mr. Diouane would have made substantially less had the stock price not been artificially inflated.

- After the close of the Class Period up to the filing of this complaint, neither Defendant Sloat nor Diouane sold any shares they owned or controlled.

- While certain of these sales were made pursuant to 10b5-1 plans, Defendants entered into those plans during the Class Period while they were in possession of material non-public information.

• Defendants have admitted (post-Class Period) that they knew of the integration failure and began work to address it in late spring 2018 or early summer 2018, yet failed to disclose such information while continuing to promote the functionality of Zuora's solution.

- At the May 30, 2019 earnings call, in responding to an analyst's question as to why the two systems had not been integrated given that Zuora had acquired Leeyo two years ago in 2017, Defendant Tzuo stated that the Company had been focused on getting RevPro customers live prior to the ASC 606 deadline and "didn't really have time and the resource to focus on the integration between [Billing and RevPro] until after the 606 [wave] was complete."

- Defendant Tzuo admitted that the Company started "heavy work on the integration [] early last summer, late spring, early last summer. And long story short, we went down one direction that proved to be a dead end, a false direction."

- Moreover, post-Class Period, Defendants admitted that, unbeknownst to investors, for the past year Company had been making extraordinary efforts to technically integrate the two products to make sure "that people that have our Billing product could also buy RevPro and have a clean integration across it."

- However, these efforts were unsuccessful, and as a result, the Company had to pause implementations that Zuora had with Billing customers who had recently bought RevPro until the integration work was completed. Defendants also admitted that these paused implementations delayed cross-selling efforts with other customers.

• The integration issue affected Zuora's core operations.

- Virtually all of Zuora's revenues come directly or indirectly from its sale and implementation of its platform and related software application products that are impacted by this integration issue. *See, e.g.*, ZUO_00003757.

- Thus, the problem that the RevPro-Billing integration failure presented was so prominent it is not plausible that Tzuo, Sloat and other Zuora senior

management, including Diouane, did not know about those problems when making false statements about the functionality of Zuora's solution. *See, e.g.,* ZUO_00103043; ZUO_00003940.

- The temporal proximity between Defendants' false statements and omissions and revelations of the truth supports an inference of scienter.

  o On April 18, 2019, Zuora filed with the SEC its Annual Report for fiscal year 2019 on Form 10-K. This filing contained false and misleading statements concerning the Company's ability to concurrently deploy its two flagship products, Zuora RevPro and Zuora Billing. Just a little over a month later, on May 31, 2019, Zuora disclosed significant technical issues in integrating Zuora RevPro with Zuora Billing, that the technical issues adversely impacted revenue in both the first quarter but also for the entire fiscal year 2020, and that the work necessary to complete the integration would not occur until at least the end of the third quarter of fiscal year 2020. The close temporal proximity between the April 18, 2019 false statements and the May 10, 2018 disclosure supports a strong inference of Defendants' scienter.

- Defendants implemented significant management and operational changes after the end of the Class Period.

  o On May 30, 2019, the Company announced a change in sales leadership, disclosing that Marc Diouane would be immediately leaving his role as President and Head of Sales and would only be staying with the Company as advisor during the transition phase in securing new leadership. Defendants also announced realignment in the Company's entire sales structure, placing sales representatives under experienced managers.

  o The Company further announced a change in its sales strategy, moving from a broad brushed "build the market" to executing on the pipeline, which would be done under a new head of sales.

- The Executive Defendants held themselves out in their public statements as personally familiar with the Company's sales and implementation process, including integration of RevPro with Billing.

  o Defendants repeatedly touted their "full visibility" full visibility" into sales and deployment process.

  o In addition, during the Class Period, including at the May 31, 2018, August 31, 2018, and November 29, 2018, earnings calls, Defendant Tzuo regularly spoke to investors and securities analysts regarding, among other topics, the functionality of and demand for Zuora's RevPro product, and cross-selling opportunities RevPro provided, including customer-specific examples.

- o Similarly, Defendant Sloat held himself out as personally knowledgeable about the impact RevPro was having on Zuora's reported financials, including its revenue contributions.

- o Finally, after the Class Period, on June 6, 2019, given the importance of integrating the two flagship products, Defendant Tzuo stated he personally would be leading the charge to drive product innovation and completion of the integration project.

- Defendants' misrepresentations were necessary to go public.

  - o Defendants made many of their misrepresentations and omissions while soliciting funds from investors in their initial public offering, with their misstatements allowing the Company to complete their long-desired IPO.

  - o Once public, Zuora executives and insiders, including Defendant Sloat and Diouane, sold substantial amounts of personal shares in Zuora, which they otherwise could not have accomplished without becoming a public company.

- Defendants repeatedly spoke on the subject matters misrepresented.

  - o The Executive Defendants made repeated statements to investors about the functionality of Zuora's solution throughout the Class Period in a multitude of press releases, social media messages, quarterly and annual reports filed with the SEC and signed by and/or approved by the Executive Defendants, and earnings calls.

  - o Having spoken on these subjects so many times, the Executive Defendants knew, or were deliberately reckless in not knowing, that the statements about the functionality of Zuora's solution were false and misleading and omitted material information.

- Throughout the Class Period, Zuora common stock traded in an efficient market. (ECF No. 101-1, ¶ 3).

- Defendants' May 30, 2019 disclosures "corrected" their prior misrepresentations and omissions, which caused catastrophic impact on Zuora's common stock.

- Information unrelated to Defendants' alleged misrepresentations and omissions (i.e., confounding information) did not impact Zuora's stock price over the May 30-31, 2019 trading period.

- In her unchallenged market efficiency report submitted with Plaintiffs' Motion to Certify Class (ECF No. 101-1), Dr. Ronen performed an event study to determine whether Zuora's Common Stock reacted to the release of corrective information in a statistically significant manner after controlling for market and industry factors. Dr. Ronen's event study demonstrates that there was a statistically significant negative

price movement beyond the 95% confidence level (as well as beyond the 99% confidence level) for the May 30, 2019 disclosure.

- No Zuora-specific factors unrelated to Defendants' wrongful conduct could explain the observed price reactions, whether in whole or in part, during the window of May 30-31, 2019.

- Announcement of sales execution issues was not confounding information, but rather, a key piece of corrective information, as evidenced by the facts that:

  o Defendants conceded internally within Zuora that its failed Keystone integration presented a "meaningful sales headwind [for Zuora Billing] that our field needed to overcome"), and that"[Keystone] represents a severe risk not only to the RevPro product line, but to our overall business due to the importance of joint customers like Zoom and Yext." ZUO_00000906 at 926-27.

  o Tzuo acknowledged during the March 25, 2019 eComm meeting that "there is a lot of smashing going on with the customer base, and it is having an impact on sales" and that "upwards of 40% of a sales person, sales manager's time is spent on escalations, right, versus focusing on selling deals." *See* ZUO_V_000052 at 59:35.

  o At the May 30, 2019 earnings call, Tzuo himself connected the two "headwinds," when he stated the integration challenge "has slowed down our cross-sell motion," and "resulted in lower professional services and subscription revenue in the quarter as well as tempered expectations going forward." Compl. ¶ 148.

- Throughout the Class Period, large price movements on days when Zuora specific value-relevant information was disclosed cannot be attributed to random volatility, or to market or industry factors. *See* Ronen Decl. (ECF No. 101-1, ¶ 78).

- Defendants had a duty to disclose material information to investors regarding their false and misleading statements, as evidenced by the facts above.

- The false and misleading statements made by Defendants at issue in this action are not protected under the Private Securities Litigation Reform Act of 1995's safer harbor provisions, as evidenced by the facts above.

- The false and misleading statements made by Defendants at issue in this action are not protected by the "bespeaks caution" doctrine, as evidenced by the facts above.

- Each Defendant knowingly made the false and misleading statements at issue with scienter, as evidenced by the facts above.

- While certain of these sales were made pursuant to 10b5-1 plans, Defendants entered into those plans during the Class Period while they were in possession of

material non-public information and thus are not protected, as evidenced by the facts above.

- Plaintiffs may invoke *Basic's* rebuttable presumption of reliance based on the fraud-on-the-market theory, as evidenced by the facts above. Under that theory, investors rely on the market price of a company's security, which in an efficient market, reflects all of the company's public misrepresentations.

- Given the lack of confounding information released on that day, as evidenced by the facts above, class members may attribute the full $5.53 decline per share to artificial inflation that dissipated due to the corrective information revealed on May 30, 2019. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 372 (S.D.N.Y. 2009).

- The truth about the Defendants' misrepresentations and omissions was not fully revealed to the market until their corrective disclosure on May 30, 2019, as evidenced by the facts above.

- No facts demonstrate that Plaintiffs assumed the risk of Defendants' fraud.

- Defendants did not act in food faith, as evidence by the facts above.

- No facts demonstrate that Plaintiffs failed to mitigate damages during the Class Period.

- No facts demonstrate that Defendants may receive contribution and/or indemnity from entities other than their insurance providers, if any.

- No facts demonstrate that Plaintiffs were unjustly enriched by Defendants' fraud.

- No facts demonstrate that Defendants benefit from any equitable defenses.

- Plaintiffs have not waived any claim against Defendant.

- No facts disclosed by Defendants demonstrate that Defendants knowingly made false or misleading statements on professional advice upon which they were entitled to rely.

- Plaintiff Casey Roberts timely filed where complaint within the applicable statute of limitations.

Lead Plaintiff reserves the right to supplement this response at the appropriate time, that is, after the substantial completion of fact and expert discovery.

**INTERROGATORY NO. 24:**

Identify each Person with knowledge of any of the facts set forth in Your response to the preceding interrogatory.

**ANSWER:**

Lead Plaintiff objects to this Interrogatory to the extent it is dependent on Defendants' premature and presently inappropriate contention interrogatory. *See* Answer to Interrogatory No. 23. Lead Plaintiff additionally objects to this Interrogatory as premature because it calls for legal conclusions and prematurely seeks information contained in expert reports, analysis, opinions, or testimony. Such discovery "need not be answered until designated discovery is complete," Fed. R. Civ. P. 33(a)(2), that is, until after the August 19, 2022 expert discovery cutoff.

Lead Plaintiff further objects to this Interrogatory to the extent it seeks information that is readily accessible to Defendants, including information in the possession of Defendants and public records that are equally accessible to all parties. Lead Plaintiff also objects to this Interrogatory insofar as it is overboard, unduly burdensome, or disproportionate to the needs of the Action. Moreover, Lead Plaintiff objects to this Interrogatory to extent that it seeks information that is protected from disclosure by the attorney-client privilege and the attorney work-product doctrine.

Subject to and notwithstanding the above, Lead Plaintiff states that the following Persons may have personal knowledge of facts that are relevant Defendants' ability to meet their burden of proof as to any of their purported affirmative defenses.

| Person | Role (if known) |
| --- | --- |
| Casey Roberts | Initial Plaintiff |
| New Zealand Methodist Trust Association | Lead Plaintiff |
| Mike Aaron | GM, Zuora Billing |
| Alvina Antar | CIO at Zuora, Inc. |
| Angela Ngo | RevPro Marketing Manager |
| Paolo Battaglini | Vice President of Finance and Chief Accounting Officer of Zuora, Inc. |
| Chris Bruner | |
| Srinivas Chadalavada | Senior Director Engineering of Zuora, Inc. |
| Kelly Cheng | |
| Nathan Creswell | |
| Brent Cromley | Senior Vice President of Technology at Zuora, Inc |

| Person | Role (if known) |
| --- | --- |
| Ajit Deshpande | |
| Pat Deskin | Vice President of RevPro at Zuora, Inc. |
| Joe Di Bari | |
| Marc Diouane | |
| Peter Fenton | Member of Board of Directors of Zuora, Inc. |
| Jack Friel | Regional Director at Zuora, Inc. |
| Ben Ghio | |
| Ken Goldman | Member of Board of Directors of Zuora, Inc. |
| Tim Haley | |
| Nicholas Harlow | |
| Peter Hegyi | Director, Media & Telecom, of Zuora, Inc. |
| Robert Hildenbrand | |
| Joon Huh | |
| Travis Huch | Vice President of Customer Success |
| Richard Inonog | |
| Lei Jin | Senior Director, Product Management/Chief Functional Architect at Zuora, Inc. |
| Sandy Joung | Senior GTM Strategy and Growth Leader of Zuora, Inc. |
| Daniel Kim | |
| Calvin Kong | |
| Scott Kozak | |
| Tom Krackeler | Chief Customer Officer at Zuora, Inc. |
| Arul Kumar | |
| Troy Lauer | |
| Christina Lemucchi | |
| Kevin Maresco | |
| Sai Prasad Marri | |
| Lee Mish | |
| Parveen Nandal | |
| Angela Ngo | |
| Peush Patel | Director of Product Management at Zuora, Inc. |
| Todd Pearson | Senior Vice President, Customer Success, at Zuora, Inc. |
| Jennifer W. Pileggi | Senior Vice President, General Counsel at Zuora, Inc. |
| Jason Pressman | Member of Board of Directors of Zuora, Inc. |
| Mike Quinn | |
| Jagan Reddy | |
| Karthik Ramamoorthy | Vice President & General Manager, Zuora RevPro |
| Matthew Rochester | |
| Monika Saha, | |
| Jason Selby | |
| Tyler Sloat | Chief Financial Officer of Zuora, Inc. |
| Kenwood Tsai | Vice President, Product Architecture, of Zuora, Inc. |
| Tien Tzuo | Chief Executive Officer of Zuora, Inc. |
| Vishal Vachani | |
| Michelangelo Volpi | |
| Tyler Wallace | |
| Lauren Whelihan | Vice President, Zuora Revenue, at Zuora, Inc. |
| Mu Yang | Vice President of Engineering at Zuora, Inc. |

LEAD PLAINTIFF'S RESPONSES & OBJECTIONS                    No. 3:19-cv-03422-SI
TO DEFENDANTS' SECOND SET OF INTERROGATORIES – 63

| Person | Role (if known) |
|---|---|
| Magdalena Yesil | Member of Board of Directors of Zuora, Inc. |
| | |
| Zoom Video Communications, Inc. | Customer of Zuora, Inc. |
| PTC | Customer of Zuora, Inc. |
| PWC | Customer of Zuora, Inc. |
| Carbonite | Customer of Zuora, Inc. |
| View the Space | Customer of Zuora, Inc. |
| Procore | Customer of Zuora, Inc. |
| Stansberry | Customer of Zuora, Inc. |
| Unity | Customer of Zuora, Inc. |
| FCA | Customer of Zuora, Inc. |
| Pivotal | Customer of Zuora, Inc. |
| Inspirato | Customer of Zuora, Inc. |
| HUDL | Customer of Zuora, Inc. |
| Tripwire | Customer of Zuora, Inc. |
| USS | Customer of Zuora, Inc. |
| Garter | Customer of Zuora, Inc. |
| Docusign | Customer of Zuora, Inc. |
| ModMed | Customer of Zuora, Inc. |
| LivePerson | Customer of Zuora, Inc. |
| Zenefits | Customer of Zuora, Inc. |
| Neustar | Customer of Zuora, Inc. |
| Shutterstock | Customer of Zuora, Inc. |
| Yext Inc. | Customer of Zuora, Inc. |
| General Motors | Customer of Zuora, Inc. |
| Hitachi Vantara | Customer of Zuora, Inc. |
| George Ahn | Chirotouch, Customer of Zuora, Inc. |
| Eric Yuan | Zoom, Customer of Zuora, Inc. |
| | |
| Goldman Sachs & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Morgan Stanley & Co. LLC | Underwriter of Zuora, Inc. IPO |
| Allen & Company LLC | Underwriter of Zuora, Inc. IPO |
| Jefferies | Underwriter of Zuora, Inc. IPO |
| Canaccord Genuity LLC | Underwriter of Zuora, Inc. IPO |
| Needham & Company | Underwriter of Zuora, Inc. IPO |

Lead Plaintiff reserves the right to supplement this response throughout the course of fact and expert discovery.

DATED: April 4, 2022                    Respectfully Submitted,

                                        HAGENS BERMAN SOBOL SHAPIRO LLP

                                        By:    /s/ Lucas E. Gilmore
                                                LUCAS E. GILMORE

                                        Steve W. Berman (*pro hac vice*)
                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        1301 Second Avenue, Suite 2000
                                        Seattle, WA 981101
                                        steve@hbsslaw.com

                                        Reed R. Kathrein (139304)
                                        Lucas E. Gilmore (250893)
                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        715 Hearst Avenue, Suite 202
                                        Berkley, CA 94710
                                        reed@hbsslaw.com
                                        lucasg@hbsslaw.com

                                        Peter Austin Shaeffer (*pro hac vice*)
                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        455 North Cityfront Plaza Drive, Suite 2410
                                        Chicago, IL 60611
                                        petersh@hbsslaw.com

                                        Raffi Melanson (*pro hac vice*)
                                        **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                        55 Cambridge Pkwy, #301
                                        Cambridge, MA 02141
                                        raffim@hbsslaw.com

                                        *Attorneys for Lead Plaintiff*
                                        *New Zealand Methodist Trust Association*

# CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, I caused a true and correct copy of the foregoing document to be served by email in accordance with the Federal Rules of Civil Procedure on the following counsel of record:

Susan S. Muck
Kevin P. Muck
William Brenc
**WILMER CUTLER PICKERING HALE AND DORR LLP**
One Front Street, Suite 3500
San Francisco, CA 94111
susan.muck@wilmerhale.com
kevin.muck@wilmerhale.com
william.brenc@wilmerhale.com

Jeremy T. Adler
**WILMER CUTLER PICKERING HALE AND DORR LLP**
7 World Trade Center
250 Greenwich Street
New York, New York 10007
jeremy.adler@wilmerhale.com

Joseph M. Levy
**WILMER CUTLER PICKERING HALE AND DORR LLP**
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
joseph.levy@wilmerhale.com

*Attorneys for Defendants*
*Zuora, Inc., Tien Tzuo, and Tyler Sloat*

DATED: April 4, 2022                    HAGENS BERMAN SOBOL SHAPIRO LLP

                                        By:  ___*/s/ Lucas E. Gilmore*___
                                              LUCAS E. GILMORE

**VERIFICATION OF INTERROGATORY ANSWERS**

I, Stephen Walker, as an authorized representative of Lead Plaintiff New Zealand Methodist Trust Association, have read Defendants' Second Set of Interrogatories to Lead Plaintiff New Zealand Methodist Trust Association and the answers to those interrogatories, and certify under penalty of perjury that the foregoing answers are true and correct to the best of my knowledge, information and belief.

Executed on ___4 April 2022_____.

DocuSigned by:

ACB041F9B2EF426...

Stephen Walker, Executive Officer
New Zealand Methodist Trust Association