# EXHIBIT 37

CONFIDENTIAL

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


CASEY ROBERTS, Individually and )

On Behalf Of All Other            )

Similarly Situated,               )

      Plaintiffs,               )

       vs.                    ) Case No.

ZUORA, INC., TIEN TZUO, and       ) 3:19-cv-03422-SI

TYLER SLOAT,                      )

      Defendants.               )

_____)

CONFIDENTIAL


VIRTUAL VIDEOCONFERENCE VIDEO-RECORDED

DEPOSITION OF TAVY RONEN, PH.D.

Monday, October 17, 2022

Remotely Testifying from New York, New York




Stenographically Reported By:

Hanna Kim, CLR, CSR No. 13083

Job No. 5537869


PAGES 1 - 198

Page 1

CONFIDENTIAL

allowed to retract that, I would like to retract the exact sentence structure. To the extent that I'm not allowed to, then I'm sure that that is something that the lawyers in the room know, but I do not know what the legal rules are surrounding that.                    10:54:58

Q.   Regardless of what the legal words are, if there is something that you said that you want to change, I'd appreciate hearing about it. So that is helpful for you to -- to do that. And we can whine later about the legal effect of it. But I certainly   10:55:14 don't want you to leave here today having said something that you don't think is right. I'd rather have you correct it.

A.   Thank you.

Q.   Also in paragraph 39, you say that   10:55:27 Plaintiffs' attorneys asked you to assume "all of the reasons provided by Zuora management for lowered guidance for fiscal year and second quarter of 2020 are subsumed in the information that Zuora failed to disclose to the market."                    10:55:47

Do you see that? Were you following with me --

A.   Yes, I do.

Q.   Okay. Did you do anything to test that assumption?                    10:55:54

Page 58

CONFIDENTIAL

A.    To test it?  No, I did not.

Q.    Are you expressing any opinion as to whether this assumption is reasonable?

A.    I was not asked to opine on whether this was reasonable.  And, therefore, I did not test whether it was reasonable.                    10:56:15

Q.    Okay.  And then I think the last one in paragraph 39 is the that Plaintiffs asked you to assume that "all the sales execution issues mentioned by management on the earnings call on    10:56:31 May 30th, 2019 were the result of product integration failure alleged in the Complaint."  [As read]

        Do you see that?

A.    I do.                                          10:56:43

Q.    Did you do anything to test that assumption?

A.    I was not asked to test that assumption, and I, therefore, did not conduct any tests on whether that assumption was true.             10:56:54

Q.    And are you expressing any opinion about whether or not that assumption is a reasonable one?

A.    I was not asked to express an opinion on the assumption.  And, therefore, I do not have an explicit opinion expressed in the report on the    10:57:11

Page 59

reasonableness of the assumptions, any of the
assumptions that we discussed in paragraphs 38 and
39.

Q.   Okay.  So, let's go to paragraph 58 of
Exhibit 40, which appears on pages 31 and 32.          10:57:36

A.   Yes.

Q.   Okay.  In -- in your report, you quote
Mr. Tzou as saying, during the May 30th, 2019,
earnings call -- you'll see this in quotation marks.

"First, based on what I saw in Q1, we need   10:58:02
to improve our sales execution."

A.   I -- I -- I'm sorry.

Q.   Okay.  Sorry.  It is --

A.   Can you show me where?  I lost it.

Q.   Okay.  We'll start over.  I'll -- I'll   10:58:15
point you to it.  Sorry about that.  If you go to
the top of page 32 in the block quote.

A.   Okay.

Q.   Okay.  So I think you'll see the -- the
language I -- I started to quote.  But it will be     10:58:32
helpful if you follow along.

Are you with me now?

A.   I am.  Thank you very much.

Q.   Okay.  So your report, just to orient
everyone, paragraph 58, page 31 going on to page 32,  10:58:48

Page 60

CONFIDENTIAL

I'm going quote from something in your report which is a quote from Mr. Tzuo from the May 30th, 2019, earnings call at the top of page 32.

"First, based on what I saw in Q1, we need to improve our sales execution."     10:59:06

And then he goes on to say at the end of that first paragraph of that block quote:  "We're finding that we need to improve the support of our new reps with training and experienced oversight to help them ramp and close new business." [As read]     10:59:23

Did you see what I read from, Dr. Ronen?

A.    I did.

Q.    Okay.  Do you agree that Mr. Tzuo identified sales execution issues as one of the reasons for the guidance reduction on the -- the     10:59:40 May 30th, 2019, earnings call?

MR. GILMORE:  Object to form.

THE WITNESS:  I was just -- just about to ask you for permission to go back and read the entire paragraph 58 for context.     11:00:02

BY MR. BONGIORNO:

Q.    Sure.  You can read it to yourself.  Take your time.

A.    Thank you.

(Witness reviews.)     11:00:22

Veritext Legal Solutions
866 299-5127

I'm reaching for my coffee.  I read the paragraph.  Thank you.

Q.   Okay.  Thank you.  I'll ask the question again now.

Do you agree that Mr. Tzou identified    11:00:53 sales execution issues as one of the reasons for the guidance reduction on the May 30th, 2019, earnings call?

A.   I do agree Mr. Tzou provided two reasons for the disappointing outlook, and I agree that he    11:01:13 divided the reason as he -- as he described it into two issues that he thought were two separate issues.

Q.   And he said --

A.   Or that he stated.  Let me fix that because I -- I now know that I want to be careful    11:01:38 with my words, so that he stated were two separate -- were two reasons.  Two reasons.

Thank you.

Q.   And one of those reasons was -- sorry. Withdraw that.    11:02:01

And do you agree that the reason Mr. Tzou provided for the disappointing sales numbers was that Zuora needed to, quote, "improve the support," close quote, for new reps and provide then with, quote, "experienced [verbatim] oversight, "close    11:02:19

Page 62

CONFIDENTIAL

quote?

MR. GILMORE:  Object to form.

THE WITNESS:  In terms of what he said

specifically because now I don't remember your exact

question, if you want to repeat it or I can just          11:02:32

read from what it says in the paragraph.

BY MR. BONGIORNO:

Q.   I'm asking you -- I'll -- I'll -- I'll

repeat it.

I'm asking you whether or not you agree          11:02:41

that the reason Mr. Tzou provided for the

disappointing sales numbers was that Zuora needed

to, quote, "improve the support," close quote, for

new reps and provide them with, quote, "experienced

[verbatim] oversight," close quote?                       11:03:01

MR. GILMORE:  Object to form.

THE WITNESS:  Not -- not really.  I think

that what -- if you continue to read on that same

page through the second part of the block quote, I

think you will see that Mr. Tzou also -- and I -- is    11:03:17

it Tzou for the purposes of this deposition?  Is

that the correct pronunciation, Tzou?  Okay.

BY MR. BONGIORNO:

Q.   I think it's Tzou.

A.   So -- I'm sorry?                              11:03:30

Page 63

BY MR. BONGIORNO:

Q.    I'm not asking what you said, I'm asking you a question.

Please answer it.  Is there anything that you can point to, as you sit here today, in any of these analyst reports that you quote from and cite to in Exhibit 40 that would support your assumption that the product integration issues and the sales execution issues are connected?                    12:03:15

MR. GILMORE:  Object to form.                    12:03:33

THE WITNESS:  I would need time to review in order to be respon- -- fully responsive to your question as it is posed.  I would need time to sit back and look at those and be able to respond in full.                    12:03:51

BY MR. BONGIORNO:

Q.    Is there anything you can point to right now without going back and reading those reports that you cited or that you quoted --

(Interruption in audio/video.)                    12:04:04

THE COURT REPORTER:  Excuse me.  Counsel? Your audio went out just a little bit.

MR. BONGIORNO:  Okay.

BY MR. BONGIORNO:

Q.    Dr. Ronen, sitting here today, is there                    12:04:15

Page 95

anything you can point to in any of these analyst reports from which you have quoted and to which you have cited in your expert report that would support the conclusion -- sorry -- support the assumption that the product integration issue and the sales execution issues are connected without going back and rereading all of these re- -- analyst reports again?

        MR. GILMORE:  Object to form.

        THE WITNESS:  As I sit here today, I cannot offer you an opinion on anything in these analyst reports that would directly support the assumptions that were made, as I was not asked to test the assumptions that were made.

        If you wanted me to do so, I would hope to have considerable time.  But I'm not sure that that is within the scope of what I was asked to do because as I said before, I was not asked to test or form tests or support the assumptions I was asked to work under.

        I really am trying to be responsive to your answer, Mr. -- to your question, Mr. Bongiorno. I'm really trying, given how you phrased it.

BY MR. BONGIORNO:

    Q.   I'm not doubting you, Dr. Ronen.

Page 96

CONFIDENTIAL

So I take it it's at least it's fair to say that you did not include these analyst reports in your expert report in order to show or suggest in any way that the product integration issues and the sales execution issues are connected; is that a fair statement? 12:05:55

MR. GILMORE:  Object -- object to form.

THE WITNESS:  I stated affirmatively in my report why I was citing to these analyst reports. And I'm not ready to sit here, as I sit here, off the top of my head to walk through all the reasons that I may or may not have included any specific item in my report or the follow-up report, which I refer to as Expert Reply Report, which is Exhibit 41. 12:06:10 12:06:29

As I sit here today, I would -- I would really need to go back and -- and think and retrace all of the different reasons that I would have included something in my report.  And I'm trying to be as fully responsive to you as I possibly can. 12:06:43

BY MR. BONGIORNO:

Q.  You're not able, then, as you sit here today, to tell us why you included these analyst reports in your expert report?

A.  I did explain in my report why I included 12:06:56

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL

A.   If that's -- I think that's what you were asking.  So the 553 did come from the event study.  I believe Dr. Ferrell also uses the 553.  And I believe that he took that 553 from my event study.  $5 and fif- -- I'm sorry.    13:59:56

It's $5.53, so everywhere I said "553" there, I meant $5.53 for the reporter.

Q.   Okay.  So I'm not sure you've got to my question other than breaking it down a little bit.

Did you have anything more you want to    14:00:15 add?

A.   No.  And I'm sorry I'm breaking it down, but I'm -- I'm trying to answer it and it would be easier for me piece by piece.

Q.   That's okay.    14:00:26

Is it possible to take that $5.53 and disaggregate confounding information or a finder of fact to determine that not all of the $5.53 was attributable to integration issues?

A.   I really want you to not not like me.    14:00:55 Okay.  I'm trying very hard to break down the questions.  That one, too, was a little compound for me because there was something at the end that, you know, was not general enough for me to answer.  So I would -- if we take it piece by piece, would that be    14:01:12

Page 138

okay if I -- I listened to it piece by piece?

Q.   Yes.  But only because you are wearing glasses that say "love" on the side of them, but...

A.   Oh, you weren't supposed to say that for the record -- trying to hide them.                     14:01:29

Q.   Well, they're --

A.   So instead --

Q.   We're on video, so it doesn't matter what I --

A.   Okay.                                            14:01:33

Q.   But go ahead and break it down.

A.   Okay.  Could -- could -- could you read it -- could someone read it back to me.

Q.   I could read it back.

Is it possible to take the $5.53 and            14:01:45
disaggregate confounding information if a finder of fact were to determine that not all of the $5.53 was attributable to integration issues?

A.   So here is how I would answer you:  I would expect that if the finder of fact were to make   14:02:07 a determination that there were confounding -- that there was confounding information that I did not take into account that I should have, then my damages estimation would be altered.

And I'd like to complete my thought by      14:02:40

Page 139

referring you to the specific paragraph where I

affirmatively say in specific terms -- so it won't

map one to one to your question, but I think it

would tell you more accurately what my opinion

actually is.                                          14:03:00

So could you refer me to where I say that

about the confounding information in my report?

Q.   You -- I'm not sure, Dr. Ronen, but you

may referring to paragraph --

A.   My expert report.                                14:03:11

(Simultaneous speaking.)

(Interruption in audio/video.)

THE COURT REPORTER:  I'm sorry.  One

second.  I didn't hear you, Counsel.

BY MR. BONGIORNO:                                     14:03:16

Q.   I was going to refer her to paragraph 79

to 85, perhaps.  I wasn't -- I was not referring to

anything specific when I asked you the question.

But that is where you discuss confounding

information, I believe.                               14:03:36

Let me know if that's helpful.

A.   And back -- we're back to 85 where we were

before.

Q.   Okay.  Is that -- is that the portion of

your report that you wanted to look at?              14:04:05

Veritext Legal Solutions
866 299-5127