# Exhibit A

Steve Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated, | No. 3:19-cv-03422-SI |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVEN DAVIDOFF SOLOMON; MEMORANDUM OF POINTS AND AUTHORITIES** |
| ZUORA, INC., TIEN TZUO, and TYLER SLOAT, | |
| Defendants. | Judge:          Hon. Susan Illston<br>Hearing Date:   March 3, 2023<br>Hearing Time:   10:00 a.m.<br>Dept:           Courtroom 1, 17th Floor |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...........................................................................................................2

II. SUMMARY OF PROFESSOR SOLOMON'S PROPOSED TESTIMONY ......................4

III. LEGAL STANDARD ....................................................................................................5

IV. ARGUMENT ...............................................................................................................6

    A. The Court should exclude Professor Solomon's review of the disclosure practices of middle-market capitalization companies and narrative of events during the Class Period...........................................................................................6

        1. Professor Solomon's review of "disclosure custom and practices in middle-market capitalization companies" is irrelevant. ..................................6

        2. The bulk of Professor Solomon's report constitute an impermissible factual narrative that should be excluded. ........................................................7

            a. Professor Solomon's factual narrative concerning Zuora's disclosure process does not aid the fact-finder...................................8

            b. Professor Solomon's factual narrative concerning events during the Class Period touches on disputed facts, is misleading, and is not always supported by the factual record. .......................................9

            c. Professor Solomon's factual narrative violates Rules 702 and 403. ...............................................................................................12

    B. The Court should exclude Professor's Solomon testimony about how Zuora's disclosure process compared to other "middle-market capitalization companies." ...........................................................................................................12

        1. Professor Solomon's opinions comparing Zuora to other middle-market capitalization companies usurps the role of the fact-finder...............13

        2. Professor Solomon's comparison with the disclosure practices and processes of middle-capitalization companies is flawed.............................13

        3. Professor Solomon's testimony regarding Zuora's disclosure process is irrelevant and likely to confuse the jury.......................................................16

    C. Professor Solomon's opinions that address Defendants' state of mind should be excluded...................................................................................................17

    D. Professor Solomon's opinions address determinative factual issues and should be excluded...................................................................................................18

V. CONCLUSION ..........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Ampal-Am. Israel Corp.*,
2020 WL 2529337 (Bankr. S.D.N.Y. May 14, 2020) ................................................................ 2, 7

*In re Ampal-Am. Israel Corp.*,
Nos. 12-13689, 14-02110 (S.D.N.Y. Apr. 16, 2021) ...................................................................... 8

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
2020 WL 2553181 (S.D. Cal. May 12, 2020) ............................................................................... 19

*Base v. FCA US LLC*,
2019 WL 1117532 (N.D. Cal. Mar. 11, 2019) .................................................................... 14, 15, 18

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
2015 WL 138168 (N.D. Cal. Jan. 9, 2015)....................................................................................... 7

*Cooper v. Brown*,
510 F.3d 870 (9th Cir. 2007) .............................................................................................. 5, 6, 16

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ........................................................................................................................ 5

*Fujifilm Corp. v. Motorola Mobility LLC*,
2015 WL 757575 (N.D. Cal. Feb. 20, 2015)....................................................................... 7, 8, 9

*Jinro Am., Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001) ............................................................................................ 5, 12, 17

*Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*,
523 F.3d 1051 (9th Cir. 2008) ............................................................................................... 5, 17

*In re Novatel Wireless Sec. Litig.*,
2011 WL 5827198 (S.D. Cal. Nov. 17, 2011)................................................................................. 9

*Open Text S.A. v. Box., Inc.*,
2015 WL 349197 (N.D. Cal. Jan. 23, 2015).......................................................................... 5, 16

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) .................................................................. 13, 18, 19

*In re Pac. Steel Casting Co. LLC*,
2022 WL 3330422 (Bankr. N.D. Cal., Aug. 10, 2022) ............................................... 7, 14, 16, 18

*SEC v. Dain Rauscher, Inc.*,
254 F.3d 852 (9th Cir. 2001) .................................................................................................... 16

*SEC v. Jensen*,
      2013 WL 12129377 (C.D. Cal. Mar. 13, 2013) ........................................................................ 19

*SEC v. Mudd*,
      2016 WL 2593980 (S.D.N.Y. May 3, 2016) ....................................................................... 6, 9, 17

*Siqueiros v. Gen. Motors LLC*,
      2022 WL 74182 (N.D. Cal. Jan. 7, 2022)............................................................................*passim*

*In re Twitter, Inc. Sec. Litig.*,
      2020 WL 9073168 (N.D. Cal. Apr. 20, 2020)............................................................... 3, 13, 17, 18

*United States v. Hanna*,
      293 F.3d 1080 (9th Cir. 2002) .............................................................................................. 5

### OTHER AUTHORITIES

E. Norman Veasey & Christine T. Di Guglielmo, *What Happened in Delaware
      Corporate Law and Governance from 1992-2004? A Retrospective on Some Key
      Developments*, 153 U. Pa. L. Rev. 1399, 1412-13 (2005)............................................... 17

Fed. R. Evid. 403 ...............................................................................................................*passim*

Fed. R. Evid. 702 ...............................................................................................................*passim*

Jeffrey N. Gordon, *Governance Failures of the Enron Board and the New Information
      Order of Sarbanes-Oxley*, 35 Conn. L. Rev. 1125 (2003) ................................................ 6

PERMANENT SUBCOMM. ON INVESTIGATIONS, COMM. ON GOVERNMENTAL AFFAIRS,
      107TH CONG., REPORT ON THE ROLE OF THE BOARD OF DIRECTORS IN ENRON'S
      COLLAPSE (Comm. Print 2002) .................................................................................... 6

**NOTICE OF MOTION AND MOTION**

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on March 3, 2023, at 10:00 a.m., via videoconference, the Honorable Susan Illston presiding, Lead Plaintiff New Zealand Methodist Trust Association will and hereby does move to exclude testimony concerning the opinions and conclusions set forth in the Expert Report of Steven Davidoff Solomon ("Solomon Report"), dated August 5, 2022, based on Federal Rules of Evidence 702 and 403 and related case law. The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the materials cited therein, the pleadings and papers on file in this matter, oral argument, and such other materials and argument as may be presented.

**RELIEF REQUESTED**

Lead Plaintiff seeks an order excluding testimony from Professor Solomon regarding the following:

1. Professor Solomon's review of disclosure customs and practices of middle-market capitalization companies and impermissible factual narrative of Zuora's disclosure process and the key events in the case. *See* Ex. 1, ¶¶ 25-240 (Solomon Report).[1]

2. Professor Solomon's opinion that Zuora's processes and practices for preparing disclosures and guidance were comparable or consistent with the "customs and practices used by middle-market capitalization companies." *See, e.g.*, *id.*, ¶¶ 15(a) & (c), 68, 72-75, 82-84, 88-89, 93, 101, 104, 117, 124, 125, 129, 142-143, 161, 181, 237, 240-241.

3. Professor Solomon's opinions and conclusions related to Defendants' motive, intent, and state of mind. *See, e.g.*, *id.*, ¶¶ 15(b), 104, 107, 122, 123, 124, 125, 131, 134, 135, 143, 144, 145, 149, 151, 162, 164, 166, 177, 178, 182, 184, 185, 187, 189, 198, 203, 205, 215, 219, 220, 240, 241.

---

[1] All exhibits referenced herein are attached to the Declaration of Steve W. Berman in Support of Lead Plaintiff's Motion to Exclude Expert Testimony of Steven Davidoff Solomon, filed concurrently herewith, unless otherwise indicated.

4.      Professor Solomon's opinions and conclusions related to Defendants' statements during the Class Period, the role of Zuora's Twitter account, and analyst reactions to Defendants' disclosure on May 30, 2019. *See id.*, ¶¶ 101-103, 126, 130, 135, 238, 239.

## I.      INTRODUCTION

Pursuant to Federal Rules of Evidence 702 and 403, Lead Plaintiff New Zealand Methodist Trust Association respectfully requests that the Court exclude Professor Steven Davidoff Solomon's expert report and proposed testimony.

Defendants tasked Professor Solomon to provide (a) an overview of the disclosure customs and practices of middle-market capitalization companies and (b) opinions related to Zuora's disclosure practices from April 12, 2018, to May 30, 2019 (the "Class Period").  His opinions, however, fall short of Rule 702's relevance and reliability thresholds and Rule 403, as they will not assist the trier of fact, are unreliable, and would serve to mislead and confuse the jury.

As a preliminary matter, Professor Solomon's general discussion of middle-market capitalization companies' disclosure practices (*see* Ex. 1, ¶¶ 25-64) has no probative value in this case where Lead Plaintiff is not challenging the adequacy of Zuora's disclosure processes or the process by which Zuora's disclosures were formed.  Rather, Lead Plaintiff contends that Defendants committed securities fraud by making false and misleading statements regarding Zuora's products.  By way of example, an expert could have similarly opined on "best practices" for corporate governance related to Enron's disclosure practices, which would have had zero relevance to the issue of whether Enron *actually committed* fraud.

Furthermore, it is well-settled that expert opinions cannot be presented to the jury for the purpose of constructing a factual narrative.  For the bulk of his opinions, however, Professor Solomon provides impermissible factual narratives concerning Zuora's disclosure process and the key events during the Class Period. *Id.,* ¶¶ 65-240.  This is not Professor Solomon's first offense.  In fact, similar opinions by Professor Solomon have been excluded in at least one other case for constituting an impermissible factual narrative. *See In re Ampal-Am. Israel Corp.*, 2020 WL 2529337, at *4 (Bankr. S.D.N.Y. May 14, 2020).

Beyond these overarching defects, Professor Solomon offers several improper opinions and conclusions throughout his report that should be excluded:

First, Professor Solomon offers opinions comparing Zuora's processes and practices for preparing disclosures and guidance with the purported "customs and practices used by middle-market capitalization companies." The Honorable Jon S. Tigar in *In re Twitter, Inc. Securities Litigation*, 2020 WL 9073168 (N.D. Cal. Apr. 20, 2020), excluded a defense expert's opinions that similarly compared the defendant's process for preparing disclosures with those of large public companies, because they usurped the role of the fact-finder. The same result should occur here. Professor Solomon's analysis is also based on a flawed methodology, as he compared Zuora's practices and processes against *all* middle-market capitalization companies, without any attempt to compare Zuora against companies within Zuora's industry or limit the analysis in any way. In addition, as previously noted, Lead Plaintiff's case does not turn on whether Zuora's processes aligned with the processes of other middle-market companies. As such, Professor Solomon's opinions concerning Zuora's disclosure process are hardly reliable nor relevant to the issues in the case.

Second, Professor Solomon's opinions relating to Defendants' knowledge and perceptions—including, for example, that Zuora's disclosure process provided a "sound basis for Zuora's executives to rely" on the information generated through that process, and during the Class Period, "Keystone was increasingly perceived as a challenging project and a priority"—should be excluded. *See* Ex. 1, ¶¶ 166, 187. These opinions and conclusions, and numerous others in Professor Solomon's report, invade the jury's province by testifying to Defendants' state of mind, intent, or motive, and therefore are improper. *See In re Twitter*, 2020 WL 9073168, at *3 ("The determination of motive, intent, and state of mind is for the jury alone.").

Third, through his review of the record, Professor Solomon concludes that Defendants' public statements during the Class Period did not represent that Billing and RevPro were integrated, Zuora's Twitter account was not a source of investor disclosure, and analysts described the integration issues disclosed by Defendants on May 30, 2019, as a "short-term problem." Professor Solomon has no specialized expertise or articulated methodology to reach these conclusions, and a jury is just as

capable as Professor Solomon to "draw conclusions from the evidence." *Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *9 (N.D. Cal. Jan. 7, 2022). Accordingly, such testimony is not helpful and should be excluded. *Id.*

For all of these foregoing reasons, as well as the additional reasons expounded below, this Court should exclude from summary judgment and trial Professor Solomon's report and proposed testimony.

## II.    SUMMARY OF PROFESSOR SOLOMON'S PROPOSED TESTIMONY

Professor Solomon states that he was assigned to "provide information and background on the disclosure custom and practices of middle-market capitalization companies" and "review background information and offer my opinions related to Zuora's disclosure processes and practices as well [as] the information environment related to Zuora's overall disclosure during the Class Period." Ex. 1, ¶ 12. Professor Solomon summarizes his ultimate opinions as follows:

> *Opinion 1*: Zuora's practices and processes for preparing disclosure were robust and well-designed, and comparable to custom and practices utilized by middle-market capitalization companies. Such practices and processes provided a sound basis for Zuora's executives to rely on the information that was generated internally and that Zuora then disclosed to investors with respect to product development and usage.
>
> *Opinion 2*: Zuora's disclosures relating to products and product integration were generated through Zuora's disclosure practices and processes. During the Class Period, Zuora's disclosures were regularly assessed for updating and revision through these practices and processes. Such practices and processes provided investors with a rich source of relevant information.
>
> *Opinion 3*: Zuora's practices and processes for updating guidance and preparing earnings releases and related disclosures incorporated issues related to products and product integration, and were comparable to custom and practices utilized by middle-market capitalization companies. Such practices and processes provided a sound basis for Zuora's executives to rely on the guidance, earnings releases, and related disclosures that Zuora then disclosed to investors.

*Id.*, ¶ 15.

Apart from these enumerated opinions, Professor Solomon's report contains additional opinions and conclusions related to Defendants' state of mind, intent, and motive. *See, e.g.*, 15(b), 107, 122-125, 131, 134-135, 143-145, 149, 151, 162, 164, 166, 177, 178, 182, 184-185, 187, 189, 198, 203, 205, 215, 219-220, 240-241. Professor Solomon also espouses factual conclusions related to key issues in the case, including Defendants' public statements during the Class Period, the role of

LEAD PLAINTIFF'S MOTION TO EXCLUDE EXPERT
TESTIMONY OF STEVEN DAVIDOFF SOLOMON – 4                                    No. 3:19-cv-03422-SI

Zuora's Twitter account, and analyst reactions to the May 30, 2019 disclosure. *See id.*, ¶¶ 101-103, 126, 130, 135, 238, 239.

### III.    LEGAL STANDARD

Under Federal Rule of Evidence 702, a qualified expert witness may offer opinion testimony, so long as that testimony is both reliable and relevant. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589-91 (1993); *see also Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).[2] Given that testimony from an expert is "likely to carry special weight with the jury," "care must be taken to assure that … such testimony meets the requirements of Rule 702." *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).

Courts properly exclude expert testimony as unreliable where the link between the expert's experience and opinion drawn from the evidence amounts to a "black box" where "the jury cannot see how the pieces fit together." *See Open Text S.A. v. Box., Inc.*, 2015 WL 349197, at *6 (N.D. Cal. Jan. 23, 2015). As for relevancy, the "central concern" of Rule 702 is whether the expert's testimony is "helpful to the jury." *Cooper*, 510 F.3d at 942. Under Rule 702, "evidence that merely tells the jury what result to reach is not sufficiently helpful to the trier of fact to be admissible." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1060 (9th Cir. 2008). Nor does expert testimony assist the trier of fact if it does not address an issue "beyond the common knowledge of the average layperson." *See United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002).

Expert testimony is also inadmissible under Federal Rule of Evidence 403 "if its probative value is substantially outweighed by a danger" of unfair prejudice, confusing the issues, misleading the jury, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403.

---

[2] Unless otherwise noted herein, internal citations and quotation marks are omitted.

## IV.    ARGUMENT

**A.    The Court should exclude Professor Solomon's review of the disclosure practices of middle-market capitalization companies and narrative of events during the Class Period.**

    **1.    Professor Solomon's review of "disclosure custom and practices in middle-market capitalization companies" is irrelevant.**

Paragraphs 25-64 of Professor Solomon's report detail his review of "disclosure custom and practices in middle-market capitalization companies." *See* Ex. 1, ¶ 25. Zuora's disclosure processes and practices are not a theme of Lead Plaintiff's case-in-chief. *See SEC v. Mudd*, 2016 WL 2593980, at *8 (S.D.N.Y. May 3, 2016) (rejecting expert testimony concerning a company's disclosure process because "[t]he SEC has not alleged that [the company's] disclosure process was not adequate"). Nor is it clear how a general discussion of disclosure processes could support any legal defense Defendants may have.  *See Cooper*, 510 F.3d at 942. A company can employ "best practices" for corporate governance and still commit fraud, as exemplified by the Enron accounting scandal. Enron "followed many of the 'best practice' corporate governance procedures," including reliance on an audit committee that "operated under a state of the art charter" and was chaired by a Stanford Business School accounting professor. *See* Jeffrey N. Gordon, *Governance Failures of the Enron Board and the New Information Order of Sarbanes-Oxley*, 35 Conn. L. Rev. 1125, 1127 (2003). Despite employing "best practices," the "Board knowingly allowed Enron to use high risk accounting techniques, questionable valuation methodologies, and highly structured transactions," which ultimately led to the company's collapse. *See* PERMANENT SUBCOMM. ON INVESTIGATIONS, COMM. ON GOVERNMENTAL AFFAIRS, 107TH CONG., REPORT ON THE ROLE OF THE BOARD OF DIRECTORS IN ENRON'S COLLAPSE (Comm. Print 2002), at 20.

Lead Plaintiff contends the same is true here. Regardless of whether Defendants adhered to common or "best practice" disclosure processes, Defendants knowingly represented that Zuora's platform offered integrated functionality and failed to disclose material facts that would render their functionality representations no longer false or misleading. And the factual evidence of record demonstrates that Defendants indeed knew of facts that rendered their statements false.

The proposed testimony regarding customary disclosure practices also violates Rule 403, as it could mislead the jury into thinking that Zuora's use of disclosure processes in-line with those employed by other middle-market capitalization companies clear Defendants of liability, as a matter of law, for recklessly or intentionally misleading investors. *See* Fed. R. Evid. 403 (evidence should be excluded "if its probative value is substantially outweighed by a danger of … confusing the issues [or] misleading the jury"). The Court should thus exclude such testimony.

### 2.    The bulk of Professor Solomon's report constitute an impermissible factual narrative that should be excluded.

It is well-settled that an expert cannot be presented to the jury for the purpose of constructing a factual narrative. *See Biotechnology Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168, at *2 (N.D. Cal. Jan. 9, 2015) (where expert "does little more than read depositions and deposition exhibits and other such materials, and then proposes to render findings to the jury as to what happened, [a court] should draw the line and bar such testimony"); *In re Pac. Steel Casting Co. LLC*, 2022 WL 3330422, at *7 (Bankr. N.D. Cal., Aug. 10, 2022) ("'What actually happened' will be determined at trial. This sort of recitation is not appropriate for expert testimony."). Such factual evidence "is properly presented through percipient witnesses and documentary evidence, not through expert testimony." *See Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015) ("Where expert testimony simply rehash[es] otherwise admissible evidence about which [the expert] has no personal knowledge, such evidence – taken on its own – is inadmissible."). Narrative testimony does not "assist the trier of fact to understand or determine a fact in issue," as it provides no more than "simple inferences drawn from uncomplicated facts" that a "lay juror is equally capable of constructing." *See id.*

Notably, Professor Solomon—a law professor—is no stranger to this standard.  In *In re Ampal-Am. Israel Corp.*, 2020 WL 2529337, at *4, a federal bankruptcy court struck the "Factual Background" section of a report submitted by Professor Solomon because it was "plainly improper for Solomon to testify about the factual background of the case." As explained by that court, "these matters will be presented to the jury through fact witnesses and properly authenticated documents[.]" *Id.*  The court further reasoned that Professor Solomon's "factual findings" based on his "selective

reading" of the record "usurps the role of the jury." *Id.* The *Ampal* court's reasoning is even more applicable here because Professor Solomon's factual narrative extends beyond just providing background but covers the key events of the Class Period, and "[s]uch evidence is properly presented through percipient witnesses and documentary evidence, not through expert testimony." *See Fujifilm Corp.*, 2015 WL 757575, at \*27.

Here, nearly the entirety of Professor Solomon's report (Ex. 1, ¶¶ 65-240) constitutes an impermissible factual narrative covering Zuora's disclosure process and the key events of the case. Professor Solomon bases his narrative on his review of select documents provided by Defendants (Ex. 2 at 35:25-36:17 (Solomon deposition)), a review of some (but not all) deposition transcripts (*id.* at 40:22-43:11), a private interview with Tyler Sloat that came after the close of fact discovery (and after Mr. Sloat was already deposed), and public documents concerning Zuora. *See* Ex. 1 at Appendix C. As illustrated below, Professor Solomon offers no accepted methodology for his review and describes his self-serving narrative as no more than "review[ing] Zuora's disclosure practices relating to factors affecting integration and products," "examin[ing] the process that took place in the preparation of each relevant disclosure that the Company made during the Class Period," and "describ[ing] the internal processes and procedures that took place in order to arrive at the disclosures … in chronological order." *Id.*, ¶¶ 105, 141; *see also id.*, ¶ 187 ("I examine Zuora's disclosure practices and processes for the preparation of periodic guidance and how they related to any product integration and product issues.").  The Court should follow *Ampal* and exclude any part of Mr. Solomon's report and testimony intruding on the province of fact witnesses in this case.[3]

### a.    Professor Solomon's factual narrative concerning Zuora's disclosure process does not aid the fact-finder.

Paragraphs 65-104, which cover Professor Solomon's first opinion, concern Zuora's disclosure practices. Throughout this section of the report, Professor Solomon does no more than

---

[3] Professor Solomon eventually offered an "amended" report in *Ampal,* but per the offering party in that case, the amended report "did not discuss any of [the] facts in the case" and contained "no ultimate conclusions of fact and law that would usurp the role of the jury in the case or that would be overly prejudicial." *See* Dkt. 156-1 at 6 (Pl.'s Brief Opp. Def.'s Motion to Exclude)*, In re Ampal-Am. Israel Corp.*, Nos. 12-13689, 14-02110 (S.D.N.Y. Apr. 16, 2021).

describe the roles played by Zuora's board of directors, executives, and other internal teams in preparing disclosures (Ex. 1, ¶¶ 68-83), and detail step-by-step how Zuora prepared its IPO and periodic and voluntary disclosures (*id.*, ¶¶ 84-103). In doing so, Professor Solomon almost exclusively relies on Zuora's internal corporate governance documents, documents produced in this case, his private interview with Sloat, and deposition testimony—all of which will be presented to the jury for consideration at trial.  Such factual evidence regarding Zuora's disclosure process is better presented through fact witnesses and documents from the record.  Professor Solomon's added commentary would not help the fact finder, as a lay juror is capable of understanding Zuora's disclosure process without an expert's aid. *See Fujifilm Corp.*, 2015 WL 757575, at \*27; *see also In re Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at \*4 (S.D. Cal. Nov. 17, 2011) ("[The expert] quotes selectively from e-mails and prior sworn testimony …. [N]o specialized or technical knowhow is required to read and draw conclusions from the internal documents and testimony cited by [the expert].").

This proposed testimony is also not relevant (*see supra* § IV.A.1), as Lead Plaintiff does not challenge the adequacy of Zuora's generic disclosure process, but whether Defendants made false or misleading statements concerning the functionality of Zuora's products, including Billing and RevPro. *See Mudd*, 2016 WL 2593980, at \*8.

          **b.**        **Professor Solomon's factual narrative concerning events during the Class Period touches on disputed facts, is misleading, and is not always supported by the factual record.**

Professor Solomon's second and third opinions address key events during the Class Period, specifically the development of Zuora's disclosures related to products and product integration and Zuora's preparation of guidance and earnings releases. *See* Ex. 1, ¶¶ 105-240. In support of these opinions, Professor Solomon offers a lengthy, one-sided, and at times inaccurate factual narrative that touches on disputed facts that a jury will decide after full presentation of the evidence. The following discussion is meant to be illustrative, and not exhaustive, of the issues plaguing Professor Solomon's factual narrative in paragraphs 105-240.

For example, in paragraph 149, Professor Solomon purports to summarize Zuora executives' knowledge of Keystone integration issues in April 2018 to support his inappropriate "finding of fact"

that discussions of integration issues were "in the context of operational and business integration related to [Zuora's] acquisition of Leeyo":

> Meanwhile, a few individuals within Zuora began learning of potential integration issues from customers who had deployed both RevPro and Billing. Zuora's executives discussed potential integration issues in internal emails, these discussions were at a high level and in the context of operational and business integration related to its acquisition of Leeyo. For example, an internal email exchange between Mr. Sloat and Mr. Tzuo on April 24, 2018 noted the "rough journey over the past six months" regarding issues with integration and concerns from clients such as ▮▮▮▮▮▮▮ The email discussed an upcoming update to the Board about RevPro integration and proposed next steps for the company to tackle these concerns, including an emphasis on "[having] a stronger operational fabric … [and a] need to mandate singular ownership and accountability which will lead to integration."

Ex. 1, ¶ 149 (alterations in original).

As shown above, Professor Solomon's summary of record evidence adds nothing of appreciable help to the jury's understanding of the facts or issues of this case.  Moreover, he fails to address and quote from a document he cites in paragraph 149 that cuts against his narrative. Specifically, while Professor Solomon quotes from an April 24, 2018 email, he does not discuss a contemporaneous April 26, 2018 email exchange among Marc Diouane, Zuora's head of sales, Tzuo, and Sloat, where Diouane remarks that he is "worr[ied] about the keystone launch" and that Zuora has not "seen any kind of integration at the engineering level." *See* Ex. 3 at ZUO_00002381. This exchange shows that in April 2018, Tzuo and Sloat were aware of issues related to Keystone integration, not just operational and business integration issues related to Zuora's acquisition of Leeyo.

Additional portions of Professor Solomon's report present one-sided narratives favorable to Defendants. In paragraph 158, Professor Solomon notes, "Following its September 13, 2018 Form 10-Q filing, Zuora received additional complaints from early adopters of RevPro (*e.g.*, ▮▮▮▮), including about issues with integration. These complaints were considered by Zuora's executives and directors in the process of determining upcoming disclosure." While Professor Solomon cites to a September 25, 2018 email from Tzuo to Zuora executives in support of these statements, he deliberately ignores the fact that in the email, Tzuo called his executive team's plan to go forward

with implementing RevPro via Keystone on seven new customers "nonsense" and warned it would "tank [Zuora's] stock price":

> Guys, I know we all have the right intentions. But let me set the context here. RevPro is not some gnat on the back of a giant Oracle whale where it's [sic] performance doesn't matter. ***We have bookings targets baked into our plan, which is baked into what we tell the Street. The nonsense you guys are doing now will tank our stock price.***

Ex. 4, ZUO_00028744 (emphasis added).

In other paragraphs, Professor Solomon's narrative is not supported by the case record. For example, in paragraph 162, Professor Solomon writes that in January 2019, "Mr. Sloat and Mr. Tzuo discussed and confirmed issues with the Keystone integration through internal emails, and focused on identifying a solution to the integration issue as well as considering what, if any, information should be disclosed to investors and when the disclosure should occur." In support of the statement, Professor Solomon cites two documents and a video recording that seemingly contain no discussion of potential disclosures concerning Keystone. *See* Ex. 1, ¶ 162 (citing ZUO_00003341-42, ZUO_00175506-08, ZUO_V_000039).[4]  Similarly, in paragraph 235, Professor Solomon notes his "understand[ing] that the guidance revision delivered in the Q1 2020 earnings announcement was mainly based on the effect of bookings being substantially lower than planned in Q1 2020." The document cited in support of that statement, however, not only identifies the "▮▮▮▮▮▮▮▮▮▮," but also "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" as leading Zuora to reduce its guidance. *See* Ex. 7 at ZUO_00001166.

As shown above, the "expertise" Professor Solomon applies to paragraphs 105-240 of his report is little more than the crafting of a self-serving narrative of the events of the Class Period. In fact, like his discussion of Zuora's disclosure process, Professor Solomon cites almost exclusively to documents from the record, or his private interview with Mr. Sloat, without application to any

---

[4] Of those materials, ZUO_00003341 (*see* Ex. 5) has no discussion of potential disclosures concerning Keystone, while ZUO_00175506 (*see* Ex. 6) discusses what type of disclosures could be made to "the street" concerning "services growth" versus "subscription growth," not Keystone. Professor Solomon also quotes no language from the January 28, 2019 recording concerning a potential disclosure regarding Keystone, so the Court would need to take his word that such a discussion occurred.

scholarly literature or recognized expertise in judging the record better than a jury. Fact witnesses, including those directly involved in the disclosure process and key events in this case, are just as capable in situating and providing context to the documents as Professor Solomon, meaning his testimony, interpretation, and summary as to the facts would not be helpful to the fact finder. *See Siqueiros*, 2022 WL 74182, at \*9 (excluding portions of expert report which "essentially summarize evidence already in the record without the application of his expertise through reliable methodologies" because those opinions "invade the province of the jury and are not appropriate under Rule 702"). And unlike Professor Solomon's hearsay narrative, these fact witnesses can be cross-examined regarding their personal knowledge of actual events.

### c.    Professor Solomon's factual narrative violates Rules 702 and 403.

Professor Solomon's report and proposed testimony in the form of self-serving selective factual narratives concerning Zuora's disclosure process and the key events in this case are inadmissible under Rules 702 and 403. Professor Solomon's recitation of facts would be incomplete, selective, and duplicative, and is not based "on application of his expertise through reliable methodologies." *See Siqueiros*, 2022 WL 74182, at \*9. As such, it is inherently less reliable than percipient witness testimony and documentary evidence, would not assist the trier of fact, and any probative value it may have is substantially outweighed by the dangers of wasting time, misleading the jury, and needlessly presenting cumulative evidence. *See Jinro Am. Inc.*, 266 F.3d at 1004 (cautioning that allowing a witness to come before the jury as an expert is significant because it allows the witness to "testify based on hearsay information, and to couch … observations as generalized 'opinions' rather than as firsthand knowledge").

**B.    The Court should exclude Professor's Solomon testimony about how Zuora's disclosure process compared to other "middle-market capitalization companies."**

Professor Solomon offers opinions purportedly comparing Zuora's processes and practices for preparing disclosures and guidance with the "customs and practices used by middle-market capitalization companies." *See, e.g.*, Ex. 1, ¶¶ 15(a) & (c), 68, 72-75, 82-84, 88-89, 93, 101, 104, 117, 124, 125, 129, 142-143, 161, 181, 237, 240-241. As Judge Tigar previously ruled, however,

such opinions render Professor Solomon a fact-finder and should be excluded. *In re Twitter*, 2020 WL 9073168, at *11.

Such opinions must also be excluded because Professor Solomon fails to articulate any generally accepted methodology for selecting comparator companies in his analysis and, in fact, testified that he endeavored to compare Zuora's practices and processes against *all* middle-market capitalization companies, without any attempt to identify companies within Zuora's industry, companies that had been public for less than one year, or exclude companies that had committed securities fraud. Whether Zuora's disclosure processes were comparable or consistent to the processes of any other middle-market capitalization company is also not contested here and any opinion addressing this issue would not aid the fact-finder.

### 1. Professor Solomon's opinions comparing Zuora to other middle-market capitalization companies usurps the role of the fact-finder.

Professor Solomon's opinions that Zuora's practices and processes for preparing disclosures are comparable or consistent to the customs and practices of middle-market capitalization companies are conclusions that are properly made by the fact-finder, not a testifying expert.

Judge Tigar's ruling in *In re Twitter* is illustrative. In *In re Twitter*, Judge Tigar excluded any testimony from Twitter's expert on whether he believed that "Twitter's processes for preparing public disclosures are consistent or inconsistent with the customs and practices among large public companies." 2020 WL 9073168, at *11. Judge Tigar held that such an opinion was a "factual determination [] reserved for the jury." *Id.*; *see also Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146 at *7 (N.D. Cal. Dec. 11, 2018) ("An expert witness may not usurp the jury's role in making fact determinations."). The same outcome should result here, as Professor Solomon offers nearly identical opinions as those offered in *In re Twitter* that constitute factual determinations the jury, not a testifying expert, should make.

### 2. Professor Solomon's comparison with the disclosure practices and processes of middle-capitalization companies is flawed.

Even if the Court finds that a comparison between Zuora's disclosure process and the processes of other middle-capitalization companies is an appropriate topic for Professor Solomon to address, expert testimony that is premised solely on a person's say-so, and not on any reliable

methodology, is improper and should be excluded. *See, e.g.*, *In re Pac. Steel Casting Co. LLC*, 2022 WL 3330422, at *7 ("[The expert's] probability-of-failure determinations may have been based on his review of thousands of documents but they were not based on any reliable principles or discernable methods.").

When asked about his employed method during his deposition, Professor Solomon offered no discernible or reproducible methodology, as he testified that he simply "look[ed] at the disclosure processes and procedures of Zuora and whether they were comparable and in accord with customary and usual practices of middle-market companies." *See* Ex. 2 at 87:16-19. Per Professor Solomon, he relied on his "experience," including his practice of reading every day, to reach his opinion that Zuora's practices and processes were comparable or consistent to those of other middle-market capitalization companies.[5] *See, e.g.*, *id.* at 38:16-24 ("Q. So what documents are missing from this appendix that you considered? A. So, again, I drew on my experience of study, academic study, professional experience and otherwise. For the documents that I reviewed in the record, these are the ones that are listed, but I drew on my entire experience, which of course includes I read every day. So it includes all that, also."); *see also id.* at 98:17-20 ("I mean, I'm always reading documents about middle-market capitalization companies, and I'm drawing on the review of disclosure over my whole career."). Professor Solomon also drew on his prior work in "speak[ing] at director conferences" and "talk[ing] to the SEC" about disclosure processes and procedures. *Id.* at 64:19-22.

But Professor Solomon provides no factual comparison, no literature, and no method of comparison for reaching his opinions on Zuora's disclosure practices and processes that counsel or the jury could independently assess. *See Base v. FCA US LLC*, 2019 WL 1117532, at *6 (N.D. Cal. Mar. 11, 2019) (rejecting argument that expert's "methodology is reliable because he has done what all lemon law experts do, namely, review the repair records for the vehicle, documents about known

---

[5] While Professor Solomon currently sits on the board of directors for Social Capital Suvretta Holdings Corp. IV, and participates in approving disclosures, the company is not involved in software in any way. *See* Ex. 2 at 64:8-12, 66:10-14. Apart from that experience, Professor Solomon has not represented a public company of any size in "preparation of their disclosures or assisting them in preparation of their disclosures" since he stopped his practice as a corporate attorney in 2004. *See id.* at 63:23-64:6; *see also id.* at 64:23-25, 65:12-14, 65:21-23, 65:24-66:6.

issues in the same (or similar) model vehicle … and filter[] all that information through the lens of automotive knowledge and experience to arrive at an opinion"). For example, while Professor Solomon contends that his methodology is "accepted" (*see id.* at 87:14-15), during his deposition he could not identify any specific middle-market capitalization company he relied upon to compare Zuora's practices and processes for preparing disclosures to those processes utilized by middle-market capitalization companies.[6] *See id.* at 91:10-15 ("Q. So aside from a list of your prior testimony in Appendix C, do you identify or name a middle-market capitalization company anywhere else in your report? A. I'm not sure why I would. It's not relevant."). Solomon further admitted that he made no effort in his analysis to focus on companies in Zuora's industry *(id.* at 92:10-23) or companies that had been public for less than one year (*id.* at 93:1-94:7). Professor Solomon also did not attempt to remove from his analysis any company that committed securities fraud (*id.* at 95:18-96:5). Rather, his purported methodology was to compare Zuora's practices and processes to "all middle-market capitalization companies."[7] *Id.* at 94:2-7. Thus, Professor Solomon's "methodology" lacks any principles, and the Court cannot discern whether he applied his methodology reliably to the facts of the case. *See Base*, 2019 WL 1117532, at *6 (rejecting argument suggesting that it is "permissible to offer ultimate conclusions" on a subject "without offering any explanation how the expert's opinions were reached or the methodology that was used" so long as an expert "has sufficient expertise to address" the subject at issue).

If Professor Solomon is allowed to testify, the jury will have to accept his word at face value that his "background and experience," standing alone, provides a reliable basis to offer his opinion on Zuora's disclosure practices and processes and how they compare to other middle-market capitalization companies. Just taking Professor Solomon at his word cannot satisfy Rule 702's

[6] Appendix C to Professor Solomon's report identifies documents he "considered" in preparing the report and does not list any materials concerning the practices and processes for preparing disclosures of any specific company aside from Zuora. Professor Solomon testified that he did not list such documents in Appendix C because "they're part of [his] background and experience" and he was "always reading documents about middle-market capitalization companies." *See id.* at 97:20-23, 98:16-20.

[7] Per Professor Solomon, the number of middle-market capitalization companies could be between 500 and 1,000, although he could not say for certain. *See id.* at 86:7-15.

reliability requirement and is improper. *See In re Pac. Steel Casting Co. LLC*, 2022 WL 3330422, at *7 (noting the expert's conclusions "appear to emerge from a black box which means they are too unreliable and subjective to be of any assistance to the court"); *Open Text S.A.*, 2015 WL 349197, at *6.

### 3.   Professor Solomon's testimony regarding Zuora's disclosure process is irrelevant and likely to confuse the jury.

Not only must Professor Solomon's testimony be reliable, but Rule 702 demands that that the testimony be relevant. Professor Solomon's report and proposed testimony concerning Zuora's disclosure process falls short of this requirement, as this case does not concern the adequacy of Zuora's disclosure process, but whether statements made by Defendants to Zuora's investors were false and misleading. Simply put, Zuora's processes and procedures of disclosure are not at issue.

Indeed, when asked whether the "mere fact, standing alone, that a publicly traded company has robust and well-designed practices and processes for preparing disclosures means that company cannot commit [] 10b-5 securities fraud," Professor Solomon testified that "if you're saying it's a possibility, I agree with that." *See* Ex. 2 at 156:15-23. This is an understatement, to put it lightly, as evidenced by the fact that Enron employed many of the "best practices" in corporate governance and still committed historic accounting fraud. *See supra* § IV.A.1.  In light of Professor Solomon's admission and the lessons learned from the Enron scandal, testimony regarding Zuora's "robust" disclosure process will not "assist the trier of fact to understand or determine" whether Defendants made false and misleading statements in this case. *See Cooper*, 510 F.3d at 942.

Defendants may also argue that Professor Solomon's opinion bears on scienter, and whether Defendants deviated from the ordinary standard of care. But the Ninth Circuit cautions against using industry standards to judge a defendant's actions and, regardless, Professor Solomon testified that there is "not an industry standard for disclosure" and made no effort to identify an industry standard. *See SEC v. Dain Rauscher, Inc.*, 254 F.3d 852, 857 (9th Cir. 2001) (expressing concern that "standard setters will engage in a 'race to the bottom' to set the lead demanding standard to assess their conduct"); Ex. 2 at 92:10-23, 93:10-11. The Court will also not lack for evidence of scienter in this case, given the fact that Defendants have produced dozens of hours of video recordings of Zuora

executives, including Tzuo and Sloat, discussing key issues in this case. As such, it is not clear how Professor Solomon's opinions regarding Zuora's disclosure practices and processes will aid the fact-finder. *See Mudd*, 2016 WL 2593980, at *8 ("[The expert's] testimony that FNMA's disclosure process met industry standards is not relevant and is likely to confuse the jury. The SEC has not alleged that FNMA's disclosure process was not adequate.").

This tenuous relevance of Zuora's disclosure process to its liability under securities law must be weighed against the "special weight" Professor Solomon's testimony may "carry … with the jury." *See Jinro Am., Inc.*, 266 F.3d at 1004. Put differently, allowing Professor Solomon to testify that Zuora's disclosure processes were comparable to those of other middle-market capitalization companies and "provided a sound basis for Zuora's executives to rely on the information that was generated internally" (Ex. 1, ¶ 15(a)) may mislead the jury into thinking that "robust" disclosure processes clear Defendants of liability for recklessly or intentionally misleading investors. Such misleading testimony should be excluded.[8] *See* Fed. R. Evid. 403 (even if relevant, evidence should be excluded "if its probative value is substantially outweighed by a danger of … confusing the issues [or] misleading the jury"); *Nationwide Transp. Fin.*, 523 F.3d at 1060.

**C.     Professor Solomon's opinions that address Defendants' state of mind should be excluded.**

"The determination of motive, intent, and state of mind is for the jury alone." *See In re Twitter*, 2020 WL 9073168, at *3. An expert's opinion on motive and intent amounts to nothing more than "the drawing of an inference from the facts of the case" and admitting them would

---

[8] Professor Solomon's report and proposed testimony is also confusing to the jury in that it assumes universal practices and processes for preparing disclosures that are applicable to all middle-market capitalization companies, regardless of the industry or other relevant distinguishing factors. *See, e.g.*, E. Norman Veasey & Christine T. Di Guglielmo, *What Happened in Delaware Corporate Law and Governance from 1992-2004? A Retrospective on Some Key Developments*, 153 U. Pa. L. Rev. 1399, 1412-13 (2005) (citations omitted) ("Life in the boardroom is not black and white; directors and officers make decisions in shades of gray all the time. A 'clear' law, in the sense of one that is codified, is simply not realistic …. There can be no viable corporate governance regime that is founded on a "one size fits all' notion."). Professor's Solomon's failure to tackle this nuance is additional grounds for exclusion.

impermissibly "substitut[e] the expert's judgment for the jury's." *See Oracle*, 2018 WL 6511146, at *3.

Professor Solomon offers numerous opinions regarding Defendants' motive, intent, and state of mind during the Class Period that should be excluded. *See* Ex. 8 (detailing specific opinions from Solomon report); *see also In re Twitter*, 2020 WL 9073168, at *11 ("The Court further concludes that Coates' testimony with respect to whether Twitter's public-disclosure processes were designed for a certain purpose or intent, or whether they were consistent with Twitter's business strategies, is subject to exclusion on the ground that it amounts to impermissible testimony regarding Defendants' motives or intent."). Professor Solomon, moreover, has not demonstrated that he has applied his expertise through any methodology to reach these opinions, aside from generic callbacks to his "background and experience." *See* Ex. 2 at 149:15-150:2. Therefore, they are too "unreliable and subjective" to assist the Court and should be excluded on that basis. *See In re Pac. Steel Casting Co. LLC*, 2022 WL 3330422, at *7; *Base*, 2019 WL 1117532, at *6.

**D.     Professor Solomon's opinions address determinative factual issues and should be excluded.**

Professor Solomon also offers opinions on issues where he has no special expertise or methodology and a "jury is in as good a position as [the expert] to draw conclusions from the evidence, and is capable of drawing its own inferences." *See Siqueiros*, 2022 WL 74182, at *9. Such testimony is not helpful and should be excluded. *Id.*

For example, Professor Solomon opines on fact issues related to whether Zuora's statements concerning Zuora's platform during the Class Period were false and misleading, even though he acknowledged at deposition that he is not an industry expert on software (*see* Ex. 2 at 58:15):

- ¶ 126: "My review of Zuora's voluntary disclosure finds that Zuora did not disclose (or represent) that its products were seamlessly connected to each other. Rather, this disclosure shows that during this time period Zuora was continuously working to integrate Zuora RevPro with Zuora Billing. As part of this monitoring, EComm and the Board continued to monitor the status of projects aimed at developing product compatibility, and made disclosures consistent with its status."

- ¶ 130: "During 2018, Zuora described Zuora Billing and Zuora RevPro as separate business segments, and did not suggest that integration between

the two flagship products was a key factor of growth for Zuora at that time."

- ¶ 135: "Although by this time the Company had launched an internal project (Keystone) with the goal of integrating Zuora Billing and RevPro, the company did not state that its different products were full integrated."

(Footnotes omitted.)

Given that these are ultimate issues of fact beyond the province of Professor Solomon's expertise, and the fact-finder is equally if not more capable than Professor Solomon of reviewing the record and drawing inferences regarding Defendants' statements during the Class Period, his opinions should be excluded. *See, e.g.*, *Siqueiros*, 2022 WL 74182, at *9 (excluding testimony where expert cites deposition testimony and internal documents to conclude that "GM had ample evidence of the oil consumption defect"); *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 2020 WL 2553181, at *6 (S.D. Cal. May 12, 2020) (excluding expert testimony regarding the effect of contractual provisions "on competition and states of mind of industry participants" because "[s]uch testimony intrudes on the province of the jury, who is capable of evaluating the same evidence and drawing conclusions"); *SEC v. Jensen*, 2013 WL 12129377, at *4 (C.D. Cal. Mar. 13, 2013) ("But the Court finds that assessing the materiality of confounding factors in this case, if any, does not require scientific, technical, or other specialized knowledge.").

For similar reasons, Professor Solomon's opinions regarding Zuora's Twitter account (Ex. 1, ¶¶ 101-103) and analyst reactions to Zuora's May 30, 2019 disclosure (*id.*, ¶¶ 238-239), should be excluded. *See, e.g.*, *Oracle*, 2018 WL 6511146, at *6 ("An expert witness may not usurp the function of the jury to weigh the evidence and determine credibility. Those portions of [the expert's] testimony in which he purports to state conclusions about disputed issues of fact are inadmissible."). Here, fact witnesses, and not Professor Solomon, are better suited to testify about Zuora's Twitter account, and the jury can reach conclusions regarding the account without expert testimony. *See Siqueiros*, 2022 WL 74182, at *9; *AMN Healthcare, Inc.*, 2020 WL 2553181, at *6. Professor Solomon, moreover, has no expertise as a securities analyst, has articulated no methodology underlying his conclusions regarding how analysts reacted to the May 30, 2019 disclosure, and the jury is just as capable of reviewing the relevant analyst reports and drawing inferences. *Id.*

## V.    CONCLUSION

For the reasons stated herein, Lead Plaintiff respectfully requests that the Court exclude from summary judgment and trial testimony concerning the opinions and conclusions set forth in Professor Solomon's report.

DATED: December 9, 2022

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand Methodist Trust Association*