SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
WILLIAM BRENC (SBN 318544)
william.brenc@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002

JEREMY T. ADLER (admitted *pro hac vice*)
jeremy.adler@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 295-6417

MELINDA HAAG (SBN 132612)
ROBIN LINSENMAYER (SBN 244656)
ERIKA K. HOGLUND (SBN 327781)
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
mhaag@paulweiss.com
rlinsenmayer@paulweiss.com
ehoglund@paulweiss.com

KAREN L. DUNN (admitted *Pro Hac Vice*)
JUSTIN ANDERSON (admitted *Pro Hac Vice*)
JESSICA E. PHILLIPS (*Pro Hac Vice* forthcoming)
JAKE E. STRUEBING (*Pro Hac Vice* forthcoming)
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
janderson@paulweiss.com
jphillips@paulweiss.com
jstruebing@paulweiss.com

AUDRA J. SOLOWAY (admitted *Pro Hac Vice*)
JONATHAN HURWITZ (admitted *Pro Hac Vice*)
JASON A. DRISCOLL (*Pro Hac Vice* forthcoming)
BENJAMIN W. PEROTIN (*Pro Hac Vice* forthcoming)
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 6th Ave.
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asoloway@paulweiss.com
jhurwitz@paulweiss.com
jdriscoll@paulweiss.com
bperotin@paulweiss.com

*Attorneys for Defendants Zuora, Inc.,
Tien Tzuo, and Tyler Sloat*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CASEY ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | Case No.: 3:19-cv-03422-SI<br><br>**DEFENDANTS ZUORA, INC., TIEN TZUO, AND TYLER SLOAT'S NOTICE OF OPPOSITION AND OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVEN DAVIDOFF SOLOMON; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        March 3, 2023<br>Time:        10:00 a.m.<br>Dept.:       Courtroom 1, 17th Floor<br>Judge:      Hon. Susan Illston<br>Date Action Filed:  June 14, 2019 |

DEFS.' OPP. TO MOT. TO EXCLUDE SOLOMON                                   CASE NO.: 3:19-cv-03422-SI

**TABLE OF CONTENTS**

STATEMENT OF ISSUES TO BE DECIDED ...................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION .............................................................................................1

II.     BACKGROUND ...............................................................................................3

III.    LEGAL STANDARD.........................................................................................5

IV.     PROFESSOR SOLOMON'S TESTIMONY ABOUT DISCLOSURE
        PRACTICES IS RELEVANT AND ADMISSIBLE.............................................6

        A.    Professor Solomon's Testimony Regarding Disclosure Practices Generally
              Is Relevant and Admissible .......................................................................6

        B.    Professor Solomon's Testimony Regarding How Zuora's Disclosure
              Practices Compare to Other Mid-Market Companies Is Relevant and
              Admissible ................................................................................................8

V.      PROFESSOR SOLOMON'S TESTIMONY RESTS ON A PROPER
        FOUNDATION AND METHODOLOGY...........................................................11

        A.    Professor Solomon's Methodology Is Proper and Regularly Accepted by
              Courts as a Basis for Expert Testimony....................................................12

        B.    Plaintiffs' Other Challenges at Most Go to Weight, Not Admissibility ...............14

VI.     THE SCOPE OF PROFESSOR SOLOMON'S TESTIMONY IS PROPER....................15

        A.    Professor Solomon's Testimony About Zuora's Disclosure Practices Does
              Not Include Impermissible Factual Narrative.........................................15

        B.    Professor Solomon's Testimony Does Not Impermissibly Opine on
              Defendants' State of Mind ......................................................................20

        C.    Professor Solomon's Testimony Regarding Particular Factual Issues Falls
              Within His Expertise in Corporate Governance. .....................................22

        D.    Professor Solomon Does Not Improperly Invade the Province of the
              Factfinder ................................................................................................23

VII.    CONCLUSION.................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc.* v. *Avis Budget Grp., Inc.*,
738 F.3d 960 (9th Cir. 2013) ...........................................................................................15

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ................................................................................................8

*In re Ampal-Am. Israel Corp.*,
2020 WL 2529337 (Bankr. S.D.N.Y. May 14, 2020)......................................................19

*In re Ampal-Am. Israel Corp.*,
2020 WL 5242956 (Bankr. S.D.N.Y. Sept. 1, 2020)........................................................19

*S.E.C.* v. *BankAtlantic Bancorp, Inc.*,
2013 WL 12009694 (S.D. Fla. Nov. 14, 2013)............................................1, 9, 12, 24

*Beede* v. *Stiefel Lab'y, Inc.*,
2016 WL 916418 (N.D.N.Y. Mar. 7, 2016) ....................................................................10

*Berckeley Inv. Grp., Ltd.* v. *Colkitt*,
455 F.3d 195 (3d Cir. 2006)................................................................................7, 9, 12, 24

*Cisco Systems Inc.* v. *Arista Networks, Inc.*,
2016 WL 11752975 (N.D. Cal. Nov. 16, 2016) ..............................................................16

*United States* v. *Clardy*,
612 F.2d 1139 (9th Cir. 1980) .........................................................................................24

*ClearOne, Inc.* v. *PathPartner Tech., Inc.*,
2022 WL 1063733 (D. Utah Apr. 8, 2022)......................................................................16

*In re Columbia Pipeline Grp., Inc. Merger Litig.*,
2022 WL 2902769 (Del. Ch. July 14, 2022)....................................................................10

*S.E.C.* v. *Daifotis*,
2012 WL 2051193 (N.D. Cal. June 7, 2012) ...................................................................21

*S.E.C.* v. *Dain Rauscher, Inc.*,
254 F.3d 852 (9th Cir. 2001) ...............................................................................1, 2, 9, 19

*ECD Inv. Grp.* v. *Credit Suisse Int'l.*,
2017 WL 3841872 (S.D.N.Y. Sept. 1, 2017)....................................................................7

*Elosu* v. *Middlefork Ranch Inc.*,
26 F.4th 1017 (9th Cir. 2022) ..........................................................................14, 15, 16

*United States* v. *Finley*,
301 F.3d 1000 (9th Cir. 2002) .........................................................................................17

*Fortune Dynamic, Inc.* v. *Victoria's Secret Stores Brand Mgmt., Inc.*,
    618 F.3d 1025 (9th Cir. 2010) ...............................................................................................13

*S.E.C.* v. *Frost*,
    2021 WL 6103551 (C.D. Cal. Nov. 15, 2021)........................................................................10

*Gebhart* v. *S.E.C.*,
    595 F.3d 1034 (9th Cir. 2010) .................................................................................................8

*S.E.C.* v. *Goldsworthy*,
    2008 WL 2943398 (D. Mass. Jan. 3, 2008) ............................................................................10

*Gonzalez* v. *Valenzuela*,
    2001 WL 36387147 (C.D. Cal. Nov. 26, 2001)......................................................................17

*Hangarter* v. *Provident Life & Acc. Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) .......................................................................................... *passim*

*United States* v. *Hankey*,
    203 F.3d 1160 (9th Cir. 2000) .................................................................................................6

*Highland Capital Management, L.P.* v. *Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)....................................................................................16

*In re Homestore.com, Inc.*,
    2011 WL 291176 (C.D. Cal. Jan. 25, 2011) ....................................................................1, 7, 10

*Hsingching Hsu* v. *Puma Biotechnology, Inc.*,
    2018 WL 4956520 (C.D. Cal. Oct. 5, 2018)........................................................................7, 14

*S.E.C.* v. *Johnson*,
    525 F. Supp. 2d 70 (D.D.C. 2007) ..........................................................................................18

*Krommenhock* v. *Post Foods, LLC*,
    334 F.R.D. 552 (N.D. Cal. 2020)............................................................................................23

*Krys* v. *Aaron*,
    112 F. Supp. 3d 181 (D.N.J. 2015) ...........................................................................................7

*United States* v. *Mende*,
    43 F.3d 1298 (9th Cir. 1995) ...................................................................................................6

*Messick* v. *Novartis Pharms. Corp.*,
    747 F.3d 1193 (9th Cir. 2014) ...........................................................................................5, 11

*Microfinancial, Inc.* v. *Premier Holidays Int'l, Inc.*,
    385 F.3d 72 (1st Cir. 2004)......................................................................................................23

*Optronic Techs., Inc.* v. *Ningbo Sunny Elec. Co.*,
    2019 WL 4780183 (N.D. Cal. Sept. 30, 2019) .......................................................................23

*Oracle America, Inc* v. *Hewlett Packard Enterprise Co.*,
  2018 WL 6511146 (N.D. Cal. Dec. 11, 2018)..................................................................18

*Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec.*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010)..........................................................................14

*Primiano* v. *Cook*,
  598 F.3d 558 (9th Cir. 2010) ......................................................................................11

*S.E.C.* v. *Quan*,
  2013 WL 5566252 (D. Minn. Oct. 8, 2013) ...............................................................18

*United States* v. *Saeteurn*,
  504 F.3d 1175 (9th Cir. 2007) ....................................................................................13

*In re Safety-Kleen Corp. Rollins S'holders Litig.*,
  2004 WL 5504972 (D.S.C. Aug. 30, 2004)...................................................................7

*United States* v. *Schiff*,
  538 F. Supp. 2d 818 (D.N.J. 2008) .............................................................................14

*United States* v. *Shafi*,
  2018 WL 3159769 (N.D. Cal. June 28, 2018)..............................................................17

*Siring* v. *Or. State Bd. of Higher Educ. Ex rel E. Or. Univ.*,
  927 F. Supp. 2d 1069 (D. Or. 2013) ...........................................................................14

*New Jersey* v. *T.L.O.*,
  469 U.S. 325 (1985)......................................................................................................11

*In re Trulia, Inc. S'holder Litig.*,
  129 A.3d 884 (Del. Ch. 2016).......................................................................................4

*In re Twitter, Inc. Sec. Litig.*,
  2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) .......................................................18, 21

*In re Twitter, Inc. Sec. Litig.*,
  2021 WL 4168451 (N.D. Cal. Sept 11, 2021) ...............................................................8

*S.E.C.* v. *U.S. Env't, Inc.*,
  2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002).........................................................7, 14

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) .........................................................................................8

*Vernazza* v. *S.E.C.*,
  327 F.3d 851 (9th Cir. 2003) .........................................................................................9

*Wendell* v. *GlaxoSmithKline LLC*,
  858 F.3d 1227 (9th Cir. 2017) .......................................................................................5

*Whalen* v. *CSX Trans., Inc.*,
    2016 WL 5723877 (S.D.N.Y. Sep. 29, 2016) ........................................................................16

*Zucco Partners, LLC* v. *Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ...............................................................................................8

**Other Authorities**
Fed. R. Civ. P. 26 ..........................................................................................................................15

Fed. R. Evid. 401 ...........................................................................................................................11

Fed. R. Evid. 403 ....................................................................................................................5, 6, 11

Fed. R. Evid. 702 ....................................................................................................................*passim*

Fed. R. Evid. 704 ...........................................................................................................................23

Steven M. Davidoff & Claire A. Hill, *Limits of Disclosure*,
    36 SEATTLE U. L. REV. 599 (2013) .......................................................................................12

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should exclude the expert testimony of Steven Solomon and any testimony or evidence relying thereon.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Professor Steven Davidoff Solomon is a renowned expert, academic, and practitioner in the realm of corporate disclosure practices, who has been called upon by the likes of the Securities and Exchange Commission ("SEC") and the Department of Justice ("DOJ") to opine on proper corporate disclosure processes and related corporate governance issues.  Defendants retained Professor Solomon to provide information on the disclosure customs and practices of middle-market capitalization companies and to opine on the disclosure practices of Zuora and the information environment surrounding Zuora's disclosures.  Professor Solomon offers a comparative, qualitative analysis showing that Defendants consistently acted in accord with the disclosure customs and practices of other middle-market companies.  Expert testimony on this precise subject is regularly admitted by federal courts in securities fraud cases.  *See, e.g.*, *In re Homestore.com, Inc.*, 2011 WL 291176 at *10 (C.D. Cal. Jan. 25, 2011); *S.E.C.* v. *BankAtlantic Bancorp, Inc.*, 2013 WL 12009694, at *10–11 (S.D. Fla. Nov. 14, 2013).

Indeed, just last week another Northern District of California court allowed analogous expert testimony regarding corporate governance customs in the ongoing trial over shareholder fraud claims against Tesla.  *See* Ex. 01 at 279–80.  And courts, including the Ninth Circuit, have repeatedly found similar testimony relevant to showing that Defendants did not act with the requisite scienter.  *See, e.g.*, *S.E.C.* v. *Dain Rauscher, Inc.*, 254 F.3d 852, 857–59 (9th Cir. 2001) (holding that evidence of "industry standard is a relevant factor" in determining applicable standard of care, and that expert testimony regarding whether defendant "departed from the standard of the municipal securities industry" bore on "the element of *scienter* under the securities antifraud statutes and regulations"); *In re Homestore.com, Inc.*, 2011 WL 291176, at *10 (finding expert testimony regarding corporate governance probative of scienter).  Professor Solomon himself has provided similar opinions in federal courts in the past, including on behalf

of the SEC. *See, e.g.*, Expert Report of Steven Davidoff Solomon, *S.E.C.* v. *Hurgin*, No. 19-cv-05705 (S.D.N.Y. Nov. 1, 2021), ECF No. 119-1; Decl. of Joseph A. Fonti at 71, *In re Teva Sec. Litig.*, No. 17-cv-00558 (D. Conn. Apr. 28, 2022), ECF No. 952. His opinions are supported by extensive experience and rest on a proper methodology.

Plaintiffs do not challenge Professor Solomon's extensive expert qualifications or his expertise in this matter. Given his background and experience, they could not conceivably do so. Instead, Plaintiffs move to exclude his testimony through a panoply of scattershot arguments, including that his opinions are "irrelevant," constitute "impermissible factual narrative[s]," and "usurp the role of the jury." *See* Pls.' Mot. to Exclude at 6–8.[1] None is successful.

*First*, Plaintiffs argue that Professor Solomon's opinions on Zuora's disclosure practices and how those practices compare to the practices of other middle-market capitalization companies are irrelevant. *Id.* at 6–7, 16–17. This contradicts binding Ninth Circuit authority, which states that an "industry standard" and compliance therewith "is a relevant factor" in determining whether a party acted with the requisite scienter for a 10b-5 securities violation. *See Dain Rauscher, Inc.*, 254 F.3d at 856–57.

*Second*, Plaintiffs argue that Professor Solomon's review of Zuora's disclosure practices is an impermissible factual narrative that "usurps the role of the jury." Pls.' Mot. to Exclude at 7–8, 13 (*quoting In re Ampal-Am. Israel Corp.*, 2020 WL 2529337, at *4 (Bankr. S.D.N.Y. May 14, 2020)). But contrary to Plaintiffs' contentions, any descriptive aspects of Professor Solomon's testimony simply provide a foundation for his opinions and help explain a complex subject matter beyond a common lay juror's knowledge. By his own words, he does not purport to resolve any factual issues.

*Third*, Plaintiffs argue that Professor Solomon's comparison of Zuora's disclosure process with industry practices "usurps the role of the jury" and lacks any "discernible or reproducible methodology," failing Rule 702's reliability requirement. Pls.' Mot. to Exclude at 13–16. But the Ninth Circuit has rejected this argument, and has instead endorsed the basis for

---

[1] "Pls.' Mot. to Exclude" refers to Lead Plaintiff's Notice of Motion and Motion to Exclude Expert Testimony of Steven David Solomon, *Roberts* v. *Zuora Inc.*, No. 3:19-cv-03422 (N.D. Cal. Jun 14, 2019), ECF No. 192.

Professor Solomon's methodology and application of expertise. *See Hangarter* v. *Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004).

*Fourth*, Plaintiffs haphazardly cherry-pick portions of Professor Solomon's report and claim that these excerpted passages impermissibly opine on Defendants' state of mind. Pls.' Mot. to Exclude at 17–18. Plaintiffs neglect to explain *how* or *why* these passages constitute impermissible state of mind opinions, which they do not. These passages are merely *probative* of Defendants' state of mind—evidence that is plainly admissible.

*Fifth*, Plaintiffs argue that Professor Solomon's testimony on certain factual issues is outside his area of expertise. *Id.* at 18–19. But these issues, concerning the scope of Zuora's public disclosures, the nature of statements made on Zuora's Twitter account, and analyst reactions to Zuora's May 2019 disclosures, all fall squarely within Professor Solomon's extensive expertise in corporate governance and corporate disclosure processes.

The Court should deny Plaintiffs' motion to exclude the testimony of Professor Solomon.

## II.   BACKGROUND

Defendants retained Professor Solomon to opine on Zuora's disclosure customs and practices and how those practices compare to those of other middle-market capitalization companies. Professor Solomon's expertise in this area comes from his extensive experience as a practitioner, academic, and consultant. He practiced for approximately 10 years as a corporate attorney at Shearman & Sterling LLP and Freshfields Bruckhaus Deringer LLP, regularly advising companies on issues related to disclosure requirements, securities law, and corporate governance. Solomon Rep. ¶ 4.[2] He currently serves as the director of a publicly traded company and as head of that company's audit committee, a role which requires him to help implement the company's disclosure processes and prepare public disclosures. *Id.* ¶ 8; Ex. 02 Solomon Dep. 64:8-12.

Since 2014, Professor Solomon has also been a law professor at the University of California, Berkeley School of Law. Solomon Rep. ¶ 2, App. A. He has taught classes in Business Associations, Capital Markets, Contracts, Securities Regulation and Law, Mergers &

---

[2] The Solomon Report was filed as Exhibit 1 to Plaintiffs' Motion to Exclude the Expert Testimony of Steven Davidoff Solomon. *See* Dkt. No. 192-2.

Acquisitions, and Business & Accounting. *Id.* ¶ 3. His academic research focuses on the intersection of law, economics, and finance, with a focus on economic principles applied to corporate law and governance. *Id.* ¶ 3. He has written and published extensively on issues related to public disclosure practices, and his articles have been relied upon by courts to decide issues related to disclosure practices. *See id.* ¶¶ 3, 6, 8; *see, e.g.*, *In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884, 895 n.29 (Del. Ch. 2016) (citing Jill E. Fisch & Steven Davidoff Solomon, *Confronting the Peppercorn Settlement in Merger Litigation: An Empirical Analysis and a Proposal for Reform*, 93 Tex. L. Rev. 557 (2015)).

Professor Solomon regularly lends his expertise to parties in the litigation process. The SEC recently retained Professor Solomon to advise on disclosure-related issues in two matters, one with respect to a charging decision involving disclosure, and one in which he filed an expert report on behalf of the SEC. Solomon Rep. ¶ 7; Expert Report of Steven Davidoff Solomon, *S.E.C.* v. *Hurgin*, No. 19-cv-05705 (S.D.N.Y. Nov. 1, 2021), ECF No. 119-1. The DOJ has similarly retained Professor Solomon to opine on customs and practices related to corporate governance and corporate separateness. *See* Ex. 02 Solomon Dep. 39:13-16. Professor Solomon has also submitted expert reports and testified on issues related to disclosure customs and practices in various other matters in courts around the country. *See, e.g.*, Joint Decl. of Adam D. Hollander & Luke O. Brooks at 40, *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209 (D.N.J. May 23, 2022), ECF No. 351-2 (describing Professor Solomon's report opining "on disclosure practices under the securities laws"); Decl. of Joseph A. Fonti at 71, *In re Teva Sec. Litig.*, No. 17-cv-00558 (D. Conn. Apr. 28, 2022), ECF No. 952 (summarizing Professor Solomon's report opining on "SEC disclosure 'custom and practices'" of companies similar to the defendant).[3] Courts have regularly found Professor Solomon's expert testimony to be relevant and admissible. *See, e.g.*, Order Denying Def.'s Mot. to Exclude the Am. Expert Report and Test. of Steven D. Solomon, *In re Ampal-Am. Israel Corp.*, No. 12-13689 (Bankr. S.D.N.Y. August 29, 2012), ECF No. 159; Transcript of Trial Proceedings, *Hussein* v. *Razin*, No. 30-2013-00679600 (Cal. Super.

---

[3] Professor Solomon's reports in these two matters were filed under seal.

Ct. Oct. 4, 2013), Dkt. No. 2040 Ex. A; Minutes of Proceedings, *McClatchy* v. *Pruitt*, No. PES-11-294985 (Cal. Super. Ct. Sept. 13, 2011).

Professor Solomon draws on this extensive experience to provide background on complicated disclosure matters.  He then relies on this knowledge and experience to offer three opinions in this matter.  *First*, he describes his understanding of Zuora's practices and processes for preparing public disclosures.  Professor Solomon concludes that these procedures were robust and comparable to practices utilized by other middle-market capitalization companies, and that they provided a sound basis upon which Zuora's executives could rely.  Solomon Rep. ¶ 15(a). *Second*, he explains that Zuora's disclosures relating to products and product integration were generated through these robust disclosure practices.  Professor Solomon concludes these disclosures provided investors with a rich source of relevant information.  *Id.* ¶ 15(b).  *Third*, Professor Solomon opines that Zuora's processes for updating guidance and preparing earnings releases incorporated issues related to products and product integration, were comparable to processes used by other middle-market capitalization companies, and provided a sound basis for Zuora's executives to rely upon in making their public disclosures.  *Id.* ¶ 15(c).

## III.    LEGAL STANDARD

Plaintiffs ask the court to exclude Professor Solomon's opinions under Federal Rules of Evidence 702 and 403.  Rule 702 provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education," may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."  *Id.*

The bar for relevancy under Rule 702 is "low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'"  *Messick* v. *Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert* v. *Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)).  This inquiry is a "flexible" one, *Wendell* v. *GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017) (quoting *Daubert* v. *Merrell Dow*

*Pharms., Inc.*, 509 U.S. 579, 594 (1993)), and "should be applied with a 'liberal thrust' favoring admission," *Messick*, 747 F.3d at 1196 (quoting *Daubert*, 509 U.S., at 588).

Federal Rule of Evidence 403 permits a court to "exclude relevant evidence" only when "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* As the Ninth Circuit has emphasized, "the application of Rule 403 must be cautious and sparing" to exclude only those pieces of relevant evidence that are truly prejudicial. *United States* v. *Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting *United States* v. *Mills*, 704 F.2d 1553, 1559 (11th Cir. 1983)); *see also United States* v. *Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (describing Rule 403 as "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence" (citation omitted)).

## IV. PROFESSOR SOLOMON'S TESTIMONY ABOUT DISCLOSURE PRACTICES IS RELEVANT AND ADMISSIBLE

Plaintiffs' contention that Professor Solomon's review of the disclosure customs and practices of Zuora and other middle-market capitalization companies is irrelevant is plainly incorrect. *See* Pls.' Mot. to Exclude at 6–7, 16–17. Testimony about industry customs and practices for corporate disclosures generally is clearly relevant to contextualize and evaluate Zuora's disclosures here, and courts admit this sort of expert testimony almost as a matter of course. In addition, Professor Solomon's opinions regarding the adequacy of Zuora's disclosure practices specifically and how these practices compare to the practices of other middle-market capitalization companies is directly relevant to rebutting Plaintiffs' allegation that Defendants acted with scienter. Courts routinely admit similar testimony for this exact purpose.

### A. Professor Solomon's Testimony Regarding Disclosure Practices Generally Is Relevant and Admissible

As an initial matter, although Plaintiffs primarily challenge the portions of Professor Solomon's report concerning Zuora's practices and how those practices compare to the practices of other middle-market companies, Plaintiffs also half-heartedly challenge the portions of Professor Solomon's report that provide general expertise on disclosure customs and practices

within the securities industry more broadly.  *See id.* at 6–7 (arguing the Court should exclude "testimony regarding customary disclosure practices"); *see also* Solomon Rep. ¶ 1 (explaining Professor Solomon was retained to provide, among other things, "information and background on the disclosure custom and practices of middle-market capitalization companies").  This argument is wholly unconvincing.  "[C]ontextual information . . . on common customs and practices in the securities industry during the relevant period . . . [is] plainly relevant and this background information may prove infinitely helpful to the jury in unpacking the intricacies of this complex litigation."  *Krys* v. *Aaron*, 112 F. Supp. 3d 181, 193 (D.N.J. 2015).  Nearly as a matter of course, federal courts handling securities-related cases thus admit expert testimony regarding customs and practices within the securities industry.  *See, e.g.*, *id.* at 195 (denying motion to exclude expert testimony "on common customs and practices in the securities industry"); *In re Homestore.com, Inc.*, 2011 WL 291176, at *10 (denying motion to exclude expert testimony "regarding corporate governance, [and] fiduciary duties owed by corporate officers" because it "should provide helpful testimony to the jury on the appropriate standard of behavior a CEO owes its company and shareholders"); *In re Safety-Kleen Corp. Rollins S'holders Litig.*, 2004 WL 5504972, at *2 (D.S.C. Aug. 30, 2004) (admitting expert testimony on "general corporate governance structure; role of officers, directors, and audit committee members; and general examples of what the experts believe are good corporate practices in conformance with industry custom"). [4]  Indeed, just this past week, in the securities fraud trial *In re Tesla, Inc. Securities Litigation*, No. 18-cv-4865 (N.D. Cal.), Judge Edward M. Chen permitted an expert to testify regarding industry customs and norms in corporate governance and how the actions of the defendant compared to those norms.  *See* Ex. 01 at 279–80 (allowing expert to testify in securities fraud trial regarding "the norm is in the industry, and how it's been

---

[4] *See also, e.g.*, *Hsingching Hsu* v. *Puma Biotechnology, Inc.*, 2018 WL 4956520, at *1–2 (C.D. Cal. Oct. 5, 2018); (denying, in securities fraud suit, motion to exclude expert testimony about "industry standards for releasing press releases"); *Berckeley Inv. Grp., Ltd.* v. *Colkitt*, 455 F.3d 195, 218 (3d Cir. 2006) (finding that "background testimony" from "experienced former counsel for the SEC with expertise in offshore securities transactions" provided "important context which will aid the jury in determining whether [Defendant] had the requisite scienter at the time"); *ECD Inv. Grp.* v. *Credit Suisse Int'l.*, 2017 WL 3841872, at *11, 17 (S.D.N.Y. Sept. 1, 2017) (admitting expert testimony about "industry custom and practice with respect to the hedging of investments"); *S.E.C.* v. *U.S. Env't., Inc.*, 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002) (permitting securities industry expert to testify regarding the "practices and usages" of the securities trade in order to help the jury evaluate whether certain trading patterns were irregular).

---

DEFS.' OPP. TO MOT. TO EXCLUDE SOLOMON      7                CASE NO.: 3:19-cv-03422-SI

done, and how the facts of this case [compare to those norms]" because it is relevant to "state of mind").

Even the cases Plaintiffs cite to argue that the Court should exclude the portions of Professor Solomon's testimony comparing Zuora's disclosure practices to those of similar companies—which, as explained below, do not actually support exclusion here—allow expert testimony regarding general customs and practices in the security industry. *See, e.g.*, *In re Twitter, Inc. Sec. Litig.*, 2021 WL 4168451, at *1–2 (N.D. Cal. Sept 11, 2021) (related to *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168 (N.D. Cal. Apr. 20, 2020) (citied in Pls. Mot. to Exclude at 3, 13, 17, 18)) (explaining that expert testimony may cover "[a] description of customs and practices" for corporate disclosures, including an opinion that "it is consistent with customs and practices at public companies for public companies to internally monitor numerous metrics . . . but publicly disclose only a limited number of them"); Tr. of Hr'g on Mot. in Lim., *Spizz* v. *Eluz*, No. 14-ap-02110 (Bankr. S.D.N.Y. June 7, 2022), ECF No. 192 (related to *In re Ampal-Am. Israel Corp.*, 12-13689 (Bankr. S.D.N.Y.) (cited in Pls.' Mot. to Exclude at 2, 7, 8)) (allowing Professor Solomon to testify "as to typical or customary corporate structures and governance procedures"). Accordingly, the Court should deny Plaintiffs' motion to the extent it seeks to exclude as irrelevant Professor Solomon's industry standards testimony on corporate disclosure practices.

### B.    Professor Solomon's Testimony Regarding How Zuora's Disclosure Practices Compare to Other Mid-Market Companies Is Relevant and Admissible

Plaintiffs' relevancy arguments relating to Professor Solomon's testimony covering Zuora's disclosure practices specifically and how they compare to industry standards generally fare no better. To prevail on their claims, Plaintiffs must demonstrate that, among other things, Defendants gave "a misstatement or omission of material fact, made with scienter." *Gebhart* v. *S.E.C.*, 595 F.3d 1034, 1040 (9th Cir. 2010) (quoting *Ponce* v. *S.E.C.*, 345 F.3d 722, 729 (9th Cir. 2003)); *see also In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 700–01 (9th Cir. 2021); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 711 (9th Cir. 2012). To establish the requisite scienter, Plaintiffs must prove that Defendants made false or misleading statements knowingly or

intentionally, or with a "deliberate recklessness" that "reflects some degree of intentional or conscious misconduct." *In re Alphabet*, 1 F.4th at 701. Intentionality and recklessness can be shown, at least in part, through "an extreme departure from the standards of ordinary care." *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009). The Ninth Circuit has recognized that in Rule 10b-5 suits, evidence regarding "industry standard is a relevant factor" in determining whether the appropriate standard of care has been met, and has further recognized that evidence of "any departure by [a defendant] from the applicable standard" bears on whether a plaintiff can "satisfy the element of *scienter* under the securities antifraud statutes and regulations." *Dain Rauscher, Inc.*, 254 F.3d at 857–59. And because expert testimony is frequently the source of evidence regarding industry standards, the Ninth Circuit has also recognized that "[i]n general, expert testimony as to industry practice is relevant to show the standard of care necessary to a recklessness inquiry." *Vernazza* v. *S.E.C.*, 327 F.3d 851, 861 (9th Cir. 2003), *amended*, 335 F.3d 1096 (9th Cir. 2003).

Here, Professor Solomon's testimony about the adequacy of Defendants' disclosure practices and how they compared to similar companies is relevant for this exact purpose: the fact that Zuora had a robust, industry-standard disclosure process supports the inference that its executives did not act with scienter when making various allegedly misleading public statements.

Admitting Professor Solomon's testimony for this purpose would squarely align with the practice of other federal courts, including within the Ninth Circuit, that regularly admit expert testimony in securities fraud cases on the precise norms Professor Solomon addresses here. In *Berckeley Investment Group, Ltd.* v. *Colkitt*, for example, the Third Circuit held that expert testimony about the "customs and business practices in the securities industry . . . will aid the jury in determining whether [the defendant] had the requisite scienter" for a Rule 10b-5 securities violation. 455 F.3d 195, 218 (3d Cir. 2006). Such evidence would be "helpful to the jury" because it would be "probative of [the defendant's] scienter at the time." *Id.* at 218–19. Similarly, in *S.E.C.* v. *BankAtlantic Bancorp, Inc.*, a federal district court admitted expert testimony about the adequacy of the defendant's public disclosure practices in comparison to industry practice—the exact type of expert testimony that Professor Solomon provides here.

2013 WL 12009694, at *10 (S.D. Fla. Nov. 14, 2013).  In doing so, the court explained that "[a]dherence to, or departure from, industry standards can be probative of whether ordinary care was observed in conducting business," a consideration relevant to scienter.  *Id.*  And in *In re Homestore.com, Inc.*, a California district court considering securities fraud claims denied a motion to exclude expert testimony "regarding corporate governance, fiduciary duties owed by corporate officers and whether Defendant met his fiduciary duties" because this testimony "may impact the ultimate issue . . . of whether Defendant had the scienter necessary to establish a violation of Section 10(b)."  2011 WL 291176 at *10 (C.D. Cal. Jan. 25, 2011).  Another California district court reached a similar conclusion in *S.E.C.* v. *Frost*, a case involving alleged violations of the Investment Advisers Act, when the court admitted industry standard testimony from both the SEC's expert and the defendant's expert over competing *Daubert* motions.  *See* 2021 WL 6103551, at *3, *5 (C.D. Cal. Nov. 15, 2021).  The court explained that the SEC's expert "properly addresses industry standards regarding incubator fees, disclosure to investors, management fees, and governance norms," and held that "he may opine regarding industry standards and whether or not [the defendant's] actions deviated from those standards."  *Id.* at 5. The court further held that the defendant's expert's "opinion regarding the reasonableness of [the defendant's] equity stake in the portfolio" was "relevant . . . to whether [the defendant's] management practices generally aligned with industry standards, which among other things, may speak to whether the SEC can prove the requisite scienter to prevail on its claims."  *Id.* at *3. The same reasoning applies to Professor Solomon's testimony here.[5]  *See also In re Columbia Pipeline Grp., Inc. Merger Litig.*, 2022 WL 2902769, at *1 (Del. Ch. July 14, 2022) ("An expert can testify as to whether a party's actions . . . complied with or were consistent with industry standards and procedures").

---

[5] Other examples abound.  *See, e.g.*, *Beede* v. *Stiefel Lab'y, Inc.*, 2016 WL 916418, at *21–23 (N.D.N.Y. Mar. 7, 2016) (denying motion to exclude expert testimony "on Defendants' compliance with ESOP industry standards" because "compliance with these industry standards is relevant to the scienter element of Plaintiffs' securities fraud claim"); *S.E.C.* v. *Goldsworthy*, 2008 WL 2943398, at *1, *5 (D. Mass. Jan. 3, 2008) (denying, in securities prosecution, motion to exclude expert testimony "as to the industry standards and practices with respect to including not-yet-released products" in a particular kind of contract because "[s]uch testimony may be helpful to the jury and is relevant to the issue of scienter").

Plaintiffs also assert that Professor Solomon's testimony is not relevant because Zuora could adopt industry-standard disclosure practices and still be found liable for securities fraud. *See* Pls.' Mot. to Exclude at 6 (arguing that "[a] company can employ 'best practices' for corporate governance and still commit fraud"). This is a red herring. "[I]t is universally recognized that evidence, to be relevant to an inquiry, need not conclusively prove"—or disprove—"the ultimate fact in issue." *New Jersey* v. *T.L.O.*, 469 U.S. 325, 345 (1985); *see also Primiano* v. *Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Reliable expert testimony need only be relevant, and need not establish every element that the [party] must prove, in order to be admissible."). Rather, evidence need only have "any tendency to make a fact more . . . probable." Fed. R. Evid. 401(a). The adequacy of Zuora's disclosure practices is only one of many pieces of evidence that Defendants will present that make it "more . . . probable" that Defendants did not act with the requisite scienter.[6]

Accordingly, Professor Solomon's opinions more than satisfy the "low" standard of relevance under Rule 702, as they "logically advance[e] a material aspect of [Defendants'] case." *Messick*, 747 F.3d at 1196 (citation omitted).

## V.   PROFESSOR SOLOMON'S TESTIMONY RESTS ON A PROPER FOUNDATION AND METHODOLOGY

Plaintiffs lodge a number of challenges to the basis of Professor Solomon's opinions. Each of these arguments fail. The basis for Professor Solomon's methodology and application of expertise has been repeatedly ratified by the Ninth Circuit and courts within this District.

---

[6] Nor does the fact that the adequacy of Zuora's disclosure practices is not dispositive of scienter render it unduly prejudicial under Rule 403, as Plaintiffs allege. *See* Pls.' Mot. to Exclude at 7. Nothing in Professor Solomon's expert report or deposition suggests that his testimony will "mislead the jury into thinking that 'robust' disclosure processes clear Defendants of liability." *Id*. at 17. To the contrary, and as Plaintiffs' own motion recognizes, Professor Solomon himself agreed that the "mere fact" of a robust disclosure process alone does not absolve a company from securities fraud. *Id*. at 16; Ex. 02 Solomon Dep. at 156:15-23. Instead, as Professor Solomon agrees, this fact is simply one "factor [] taken into account." Ex. 02 Solomon Dep. 155:22-25. Accordingly, the risk of jury confusion does not outweigh—much less substantially outweigh—the probative value of Professor Solomon's testimony.

### A.    Professor Solomon's Methodology Is Proper and Regularly Accepted by Courts as a Basis for Expert Testimony

Plaintiffs assert that the methodology of Professor Solomon's qualitative testimony is flawed because "he relied on his 'experience,'" without providing any "factual comparison," "literature," or "method of comparison" for reaching his opinions. Pls.' Mot. to Exclude at 14. This assertion is wrong on many fronts.

To begin, Professor Solomon relies on a qualitative methodology that is commonly used and entirely valid. As he repeatedly explained during his deposition, he "used an accepted methodology, which is utilized in both cases, and academic study," as well as with the SEC, "which was to look at the disclosure processes and procedures of Zuora and whether they were comparable and in accord with customary and usual practices of middle-market companies." Ex. 02 Solomon Dep. 87:14-19; 88:2-8. This process does not require comparing Zuora's disclosure practices to the practices of "a list" of other specified companies. *Id.* 91:15-22. Rather, because "[d]isclosure is a corporate governance issue" common to "all companies," the methodology relies on expert review and analysis of Zuora's disclosures in the context of the relevant market information environment and their comparison to practices with other middle-market capitalization companies, *id.* 93:10-16, as well as review of the relevant factual record such as documents describing Zuora's disclosures, *see, e.g.*, *id.* 86:21–87:8, 129:24–130:11; *see also* Solomon Rep. App. C (detailing all the documents considered). As Professor Solomon further explained, review and analysis of this data "draw[s] on [his] almost 30-year experience of reviewing disclosures of middle-market capitalization companies and [his] other background and experience in dealing with middle-market capitalization companies," Ex. 02 Solomon Dep. 96:11-15, including "reading disclosure[s] for them, representing them, speaking with them," and advising them, *id.* 90:3-8.

This sort of qualitative assessment, drawing on extensive experience with the object of review, is a reliable and common expert methodology. Professor Solomon has written academically utilizing this methodology. *See, e.g.*, Steven M. Davidoff & Claire A. Hill, *Limits of Disclosure*, 36 SEATTLE U. L. REV. 599 (2013). Professor Solomon himself has also regularly

testified in courts using this precise methodology. *See e.g.*, Transcript of Trial Proceedings, *Hussein* v. *Razin*, No. 30-2013-00679600 (Cal. Super. Ct. Oct. 4, 2013), Dkt. No. 2040 Ex. A, Minutes of Proceedings, *McClatchy* v. *Pruitt*, No. PES-11-294985 (Cal. Super. Ct. Sept. 13, 2011) . Federal courts in other securities cases have admitted expert testimony based on a nearly identical methodology—i.e., comparing a party's actions with broader industry practice. *See*, *e.g.*, *Berckeley Inv. Grp.*, *Ltd.*, 455 F.3d at 218; *BankAtlantic Bancorp, Inc.*, 2013 WL 12009694, at *10; Ex. 01 at 279. And this is the methodology that Professor Solomon testified practitioners utilize in creating these processes, drawing on their knowledge of industry custom and practice to implement suitable disclosure processes. *See* Ex. 02 Solomon Dep. 89:16-24.

Moreover, Plaintiffs' attack on Professor's Solomon's reliance on his "experience," *see* Pls.' Mot. to Exclude at 14, is particularly unconvincing. Providing testimony based on "experience"—developed by academic study, prior work, and technical understanding—is what experts do. Indeed, the advisory committee notes to Rule 702 provide that "[n]othing" in the rule "is intended to suggest that experience alone . . . may not provide a sufficient foundation for expert testimony," and that "[i]n certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony")." Fed. R. Evid. 702 advisory committee notes, 2000 amendments.[7]

Reliance on experience is especially proper where, as here, Professor Solomon is not providing scientific testimony (i.e., conducting a quantitative analysis), but is instead using his extensive expertise in corporate governance to provide a qualitative assessment of Zuora's disclosure practices as compared to the practices of other middle-market companies. As the Ninth Circuit has explained, when it comes to "the reliability of non-scientific testimony," "the '*Daubert* factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of testimony, whose reliability depends heavily on the *knowledge and experience* of the expert, rather than the methodology or theory behind it.'" *Hangarter*, 373 F.3d at 1017 (quoting *Hankey*, 203 F.3d at 1169) (emphasis in original); *id.* at 1018 ("[U]nlike scientific or technical testimony, the reliability of [expert] testimony was not contingent upon a particular methodology

---

[7] *See United States* v. *Saeteurn*, 504 F.3d 1175, 1180 n.11 (9th Cir. 2007) ("We look to Advisory Committee Notes when interpreting a federal rule for guidance and insight." (quotation omitted)).

or technical framework."). Accordingly, the Ninth Circuit has reversed a district court's exclusion of testimony from an industry standards expert when the expert's "forty years of experience" in that industry gave him an "expertise . . . based on experience" that would aid the jury. *Fortune Dynamic, Inc.* v. *Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1043 (9th Cir. 2010).

District courts within the Ninth Circuit thus routinely allow testimony, akin to Professor Solomon's, where an expert relies on experience to assess a topic within his expertise. *See, e.g.*, *Hsingching Hsu* v. *Puma Biotechnology, Inc.*, 2018 WL 4956520, at *2 (C.D. Cal. Oct. 5, 2018) (admitting expert testimony about industry standards for biotechnology companies over objection that methodology is defective because expert "has sufficient credentials and experience to testify on the matters in his report" and "carefully draws on this experience" in his report and deposition"); *Siring* v. *Or. State Bd. of Higher Educ. Ex rel E. Or. Univ.*, 927 F. Supp. 2d 1069, 1074–76 (D. Or. 2013) (allowing expert testimony about university's tenure review process because expert's "experience, training, and education provide a sufficient foundation of reliability," and recognizing that "[a]ssessing the reliability of expert testimony based on specialized knowledge, unlike scientific or technical expert testimony, is not contingent upon a particular methodology or technical framework").[8]

Here, as Professor Solomon explains, he relies on his experience and expertise to analyze and review Zuora's disclosure practices in the context of the relevant market and how these practices come to similar companies. This is a sound and accepted methodology.

**B.    Plaintiffs' Other Challenges at Most Go to Weight, Not Admissibility**

Plaintiffs also contend that Professor Solomon's testimony "ignores" certain record evidence, is at times disputed by the record, and presents "one-sided narratives favorable to

---

[8] Federal courts outside the Ninth Circuit regularly reach the same conclusion. *See, e.g.*, *United States* v. *Schiff*, 538 F. Supp. 2d 818, 845–46 (D.N.J. 2008) (finding that expert's general knowledge of the industry and background expertise was sufficient foundation to allow him to testify on industry practices); *S.E.C.* v. *U.S. Env't, Inc.*, 2002 WL 31323832, at *3–4 (S.D.N.Y. Oct. 16, 2002) (finding that general knowledge of trading patterns developed through 30 years in securities industry was sufficient for expert testimony on what trading patterns would raise "red flags" for experienced traders); *Pension Comm. of Univ. of Montreal Pension Plan* v. *Banc of Am. Sec.*, 691 F. Supp. 2d 448, 463, 466 (S.D.N.Y. 2010) (stating that "[i]ndustry practices are not like scientific hypotheses, which can be tested through trial and error," so "the reliability" of an industry expert's opinions "largely depends on whether he has drawn the proffered industry standards from an adequate source—in this case, his experience").

Defendants." Pls.' Mot. to Exclude at 9–11. Even if Plaintiffs were correct—and they are not— these are not proper grounds for exclusion. The Ninth Circuit has unequivocally and repeatedly explained that such challenges "go to the weight of the testimony and its credibility, not its admissibility." *Elosu* v. *Middlefork Ranch Inc.*, 26 F.4th 1017, 1028 (9th Cir. 2022) (quotation omitted); *id.* (claims that an expert may have "relied too heavily on an 'interested party,' that his report was not sufficiently corroborated, or that he was biased towards [one side]" all "go to the weight of the testimony and its credibility, not its admissibility"); *Hangarter*, 373 F.3d at 1017 n.14 (concerns about expert's "selection of documents to review" goes "more to the 'weight' of his testimony—an issue properly explored during direct and cross-examination," than "to the reliability of his 'methodology' as an expert"); *Alaska Rent-A-Car, Inc.* v. *Avis Budget Grp., Inc.*, 738 F.3d 960, 969–70 (9th Cir. 2013) (expert testimony that a party contends is "[s]haky" should be "attacked by cross examination, [and] contrary evidence . . . not exclusion" (quoting *Primiano*, 598 F.3d at 564)).

As the "gatekeeper, not a fact finder," this Court "is not tasked with deciding whether [Solomon] is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car, Inc.*, 738 F.3d at 969–70 (citation omitted). Professor Solomon's testimony will help the jury determine whether Defendants possessed the requisite scienter, and thus comfortably clears this low bar for admissibility.

## VI.    THE SCOPE OF PROFESSOR SOLOMON'S TESTIMONY IS PROPER

Plaintiffs' other scattershot arguments regarding the scope of Professor Solomon's testimony fare no better than their relevancy or methodological challenges. Professor Solomon opines on topics that fall squarely within his expertise, without crossing the line into improper factual narrative or state-of-mind testimony.

### A.    Professor Solomon's Testimony About Zuora's Disclosure Practices Does Not Include Impermissible Factual Narrative

Plaintiffs argue that Professor Solomon provides nothing more than "impermissible factual narrative" that is not the proper subject of expert testimony. *See* Mot. to Exclude 7–9. This is plainly incorrect.

As an initial matter, to the extent that there are purely descriptive aspects of Professor Solomon's testimony, these are properly included as necessary factual background to explain the foundation for his opinions. Federal Rule of Civil Procedure 26 expressly requires experts to include in their written report "a complete statement of . . . the basis and reasons" for their opinions, and "the facts or data considered . . . in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii); *see also Elosu*, 26 F.4th at 1027 ("Rule 702's 'sufficient facts or data' element requires foundation"). The mere fact that Professor Solomon included the factual basis for his opinions thus cannot render his testimony inadmissible.

This principle is illustrated by the Ninth Circuit's recent decision in *Elosu* v. *Middlefork Ranch Incorporated*, 26 F.4th 1017 (9th Cir. 2022), reversing a district court's decision to exclude an expert's opinion. The district court had excluded the opinion partly on the basis that "only 20 to 25 pages of [the expert's] report were substantive in nature," while the "remainder" was merely "supporting documents." *Id.* at 1027. The Ninth Circuit disagreed that this was a basis for exclusion, explaining that "those 'supporting documents' formed an importing [sic] part of the 'facts and data'" and "foundation of the expert's opinion." *Id.* Courts across the country have made similar findings in the specific context of industry standard testimony, and have permitted experts to include factual background "regarding the customs and practices of [an] . . . industry." *Whalen* v. *CSX Trans., Inc.*, 2016 WL 5723877, at *10, *19 (S.D.N.Y. Sep. 29, 2016) (collecting cases). An expert's discussion of "various activities and documents in a context that may assist the jury in determining the extent to which [the defendant] complies with [] industry standards" is similarly admissible. *ClearOne, Inc.* v. *PathPartner Tech., Inc.*, 2022 WL 1063733, at *16 (D. Utah Apr. 8, 2022).

An expert's factual narrative is only impermissible when the expert is "merely acting as a 'historian' of facts," *Cisco Systems Inc.* v. *Arista Networks, Inc.*, 2016 WL 11752975, at *14 (N.D. Cal. Nov. 16, 2016), or "simply rehashing" facts, *Highland Capital Management, L.P.* v. *Schneider*, 379 F. Supp. 2d 461, 468 (S.D.N.Y. 2005). Professor Solomon's testimony does neither. Indeed, he repeatedly explains, both in his report and during his deposition, that he includes certain factual details in his report for purposes of background only, not so that he can

replace the jury as the ultimate fact-finder. *See, e.g.*, Solomon Rep. ¶ 16 ("I address certain relevant factual and legal matters insofar as they are relevant to my report but I am not opining on such matters"); Ex. 02 Solomon Dep. 152:3-10 ("I'm not here to determine [] the facts. . . . What I'm doing here is I'm giving opinions on disclosure processes and procedures and comparing them to middle-market companies and then looking at Zuora's disclosures and their alignment with their own practices and procedures in the information provided."); *id.* 75:11-14 ("I'm not an independent factfinder. I'm not here to determine whether the allegations in the complaint are true or not."). Nor do Defendants have any intention of asking Professor Solomon to provide any form of factual narrative at trial. And to the extent that Plaintiffs object to a particular question asked by Defendants that crosses the impermissible fact-finding line, such objections may be properly addressed at that time.

As to the actual *opinions* Professor Solomon provides, they clearly constitute proper expert testimony, not impermissible factual narrative, because they address a subject matter "beyond the common knowledge of the average layman." *United States* v. *Finley*, 301 F.3d 1000, 1007 (9th Cir. 2002). Indeed, Professor Solomon's testimony regarding the robustness of Zuora's public disclosure process in the context of the complex tangle of legal and regulatory requirements is a paradigmatic example of where expert testimony helps a lay jury. *Cf. Gonzalez* v. *Valenzuela*, 2001 WL 36387147, at *1 (C.D. Cal. Nov. 26, 2001) ("Expert testimony is most often appropriate in cases in which the average juror would have no basis for evaluating the type of evidence presented in the case without the assistance of an expert."). His report offers detailed insight into corporate disclosure policies, which stem from his extensive experience and expertise in the field. *See, e.g.*, Solomon Rep. ¶ 72 (explaining that Zuora's policies are "comparable with the SEC's principles-based approach to disclosure, which relies on a company's management to assess the significance of the information in the context of that company's facts and circumstances"); *id.* ¶ 73 (explaining functions of "audit committees" and "disclosure committees"); *id.* ¶ 104 (opining that "Zuora's practices and processes for preparing disclosures were robust and well-designed, and comparable to custom and practices utilized by middle-market capitalization companies").

These insights will help the jury understand the technical aspects of corporate financial disclosure and the complex web of legal and regulatory requirements relating to disclosures by helping to contextualize Zuora's processes within that framework. *See United States* v. *Shafi*, 2018 WL 3159769, at \*3 (N.D. Cal. June 28, 2018) (expert testimony admissible when it "would rest upon experience and knowledge that the jury does not have"); Fed. R. Evid. 702 (expert testimony admissible if expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence"). In the securities fraud context in particular, federal courts have observed that industry testimony "will assist the jury in understanding the complicated terminology, concepts and practices specific" to the securities industry. *S.E.C.* v. *Quan*, 2013 WL 5566252, at \*18 (D. Minn. Oct. 8, 2013), *aff'd*, 870 F.3d 754 (8th Cir. 2017); *see also S.E.C.* v. *Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007) (rejecting argument that expert's conclusions "are the product of common sense" and explaining that "in securities cases, expert testimony commonly is admitted to assist the trier of fact in understanding . . . securities industry practice, securities industry regulations, and complicated terms and concepts"). None of this technical testimony constitutes impermissible factual narrative.

Plaintiffs' reliance on *In re Twitter* does not render Professor Solomon's testimony inadmissible here. *See* Pls. Mot. to Exclude at 13. As an initial matter, the *Twitter* court actually admitted expert testimony regarding general disclosure practices in the industry, and thus the case actually supports admitting Professor Solomon's opinions on corporate disclosure standards. *In re Twitter, Inc. Sec. Litig.*, 2020 WL 9073168, at \*10–11 (N.D. Cal. Apr. 20, 2020). And as to the *Twitter* court's decision to exclude portions of an expert report that opined on whether the defendant's public disclosure processes were "consistent" with those of large public companies, *see id* at \*11, the *Twitter* court cited *Oracle America, Inc* v. *Hewlett Packard Enterprise Co.*, 2018 WL 6511146 (N.D. Cal. Dec. 11, 2018), to support this decision. But the statement from *Oracle* relied upon in *Twitter* was made in the context of concluding that an expert cannot "simply [] review deposition testimony and other evidence and then proffer an opinion about what actually happened in the case at hand." 2018 WL 6511146, at \*7 (quotation omitted). Here, Professor Solomon did not merely review the discovery record in order to make

factual findings about "what actually happened." *Id.* at *7. Rather, he synthesized Zuora's disclosures and disclosure practices based on documents and deposition testimony, and then relied on his extensive expertise to compare them to the practices of other middle-market companies. Any descriptive aspects of his testimony are not "an opinion about what actually happened in the case," *see id.*, but instead serve as foundation for his testimony.[9]

Plaintiffs' reliance on the fact that Professor Solomon's initial expert report was excluded in *In re Ampal-American Israel Corp.*—a bankruptcy proceeding concerning unrelated legal issues that is merely one of the many matters in which Professor Solomon has submitted expert reports and provided expert testimony—is similarly inapposite. *See* Pls.' Mot. to Exclude 7–8. That report was meaningfully different from the testimony that Professor Solomon provides in this case. The *Ampal* court took issue with a portion of Solomon's report that "summarize[d] the [Plaintiff's] allegations in the Complaint," because it ventured beyond opining on corporate governance procedures and instead provided information about the factual background of the case." *In re Ampal-Am. Israel Corp.*, 2020 WL 2529337, at *3–4 (Bankr. S.D.N.Y. May 14, 2020). That is not what Professor Solomon does here. As explained, he repeatedly emphasizes that he does not opine on any background facts, and instead merely provides—as he must—the factual basis for his expert opinions. *See supra* SectionVI.A. Moreover, the *Ampal* court permitted Professor Solomon to submit a revised report, *see In re Ampal-Am. Israel Corp.*, 2020 WL 5242956, at *6 (Bankr. S.D.N.Y. Sept. 1, 2020), that addressed issues related to corporate governance customs and practice and similarly included a factual background section. Dkt. No. 154-2 at 8 (Amended Expert Report of Prof. Steven Davidoff Solomon), *In re Ampal-Am. Israel Corp.*, No. 14-02110 (S.D.N.Y. Mar. 18, 2021). The court admitted in full this amended report over multiple attempts to exclude it, including over plaintiff's objections—identical to those raised here—that the report included "an impermissible, and highly prejudicial, factual

---

[9] Moreover, if Plaintiffs' characterization of the *Twitter* decision were correct, it would render that decision in tension with Ninth Circuit caselaw. Plaintiffs focus on *Twitter*'s discussion about the admissibility of testimony concerning "consistency" with customs and practices among large public companies, arguing this is an ultimate factual determination for the jury. 2020 WL 9073168, at *11. But the Ninth Circuit has held that compliance with industry standard is "one factor to be considered" in determining the standard of care in a securities fraud case "but it is not the determinative factor." *Dain Rauscher*, 254 F.3d at 854. And, as explained above, federal courts routinely allow similar expert testimony comparing a company's practices to industry norms.

narrative." Dkt. No. 154-4 at 10 (Pls.' Mot. to Exclude), *In re Ampal-Am. Israel Corp.*, No. 14-02110 (S.D.N.Y. Apr. 16, 2021). And ultimately the *Ampal* court allowed Professor Solomon to testify regarding "typical or customary corporate structures and governance . . . [because] the jury can benefit or be helped by expert testimony about how corporations are typically structured and governed," which is analogous to much of the testimony he would provide in this case. Hearing Transcript at 46:14-19, *In re Ampal-Am. Israel Corp.*, No. 14-02110 (S.D.N.Y. June 7, 2022), ECF No. 192.

There is thus no basis to exclude Professor Solomon's opinions for constituting nothing more than impermissible factual narrative.

**B.      Professor Solomon's Testimony Does Not Impermissibly Opine on Defendants' State of Mind**

Plaintiffs also assert that "Professor Solomon offers numerous opinions regarding Defendants' motive, intent, and state of mind during the Class Period that should be excluded." Pls.' Mot. to Exclude at 18. Plaintiffs are, once again, incorrect.

In support of this conclusory assertion, Plaintiffs simply cite to "Exhibit 8"—a six page long chart in which Plaintiffs have haphazardly cherry-picked portions of Professor Solomon's report, to which Plaintiffs have added italicized emphases, but absolutely no explanation as to *how* or *why* these excerpted passages impermissibly opine on Defendants' state of mind. And they do not. The Ninth Circuit permits experts to offer opinions that are probative of a party's state of mind, so long as the expert does not opine on the ultimate issue of whether a defendant acted with the requisite intent. *See, e.g.*, *Hangarter*, 373 F.3d at 1016 ("While [expert's] testimony that Defendants deviated from industry standards supported a finding that they acted in bad faith, [expert] never testified that he had reached a legal conclusion that Defendants actually acted in bad faith (i.e., an ultimate issue of law).").

The portions of Professor Solomon's testimony excerpted by Plaintiffs are merely probative of Defendants' state of mind without reaching the ultimate question whether Defendants made any alleged misstatements with the requisite scienter. For example, Plaintiffs challenge Professor Solomon's opinion that Zuora's disclosures "were regularly assessed for

updating and revisions through [the Company's disclosure] practices and processes," and that "[s]uch practices and processes provided investors with a rich source of relevant information." Pls.' Mot. to Exclude Ex. 8, line 1.  This opinion merely provides contextual information that might bear on scienter, and does not reach the ultimate question whether Defendants acted with the requisite intent.  As another example, Plaintiffs take issue with Professor Solomon's statement that Zuora's practices "provided a sound basis for Zuora's executives to rely on the information that was generated internally and that Zuora then disclosed to investors." *Id.* at line 2.  But, again, this statement does not opine directly on Defendants' actual state of mind, and provides only circumstantial evidence that bears on that question.  So too for the other cherry-picked portions that Plaintiffs challenge: none comes close to opining on the ultimate issue of whether Defendants actually acted with the requisite intent.

Plaintiffs' reliance on *Twitter* is similarly inapposite here.  *See* Pls.' Mot. to Exclude at 17–18.  The court in *Twitter* excluded expert testimony comparing Twitter's disclosure practices to those of other companies in part because the court took issue with the fact that the expert sought to opine that these processes were "designed for a certain purpose or intent."  2020 WL 9073168, at *11.  This testimony, the court concluded, "amounts to impermissible testimony regarding Defendants' motives or intent."  *Id.*  But Professor Solomon's testimony does not cross this line, as he opines only on Zuora's disclosures practices and the information provided to its executives, rather than on the purpose of those processes or whether the executives had a particular state of mind.  Moreover, *Twitter* relied upon *S.E.C.* v. *Daifotis*, where the court excluded expert testimony that ventured impermissibly into opining on whether "[the party's] process met the applicable regulatory standards."  2012 WL 2051193, at *4 (N.D. Cal. June 7, 2012).  Professor Solomon here opines only on the comparative robustness of Zuora's policies in relation to industry norms, without reaching the ultimate question whether Defendants actually complied with any regulations or laws.

And, in any event, Defendants have no intention of asking Professor Solomon to opine on Defendants' state of mind during trial.  Any objections that Plaintiffs may have regarding

specific questions asked by Defendants that creep into impermissible state of mind testimony may be appropriately addressed then.

**C.        Professor Solomon's Testimony Regarding Particular Factual Issues Falls Within His Expertise in Corporate Governance.**

Plaintiffs' claim that Professor Solomon opines on certain topics outside his area of expertise is specious. *See* Pls.' Mot. to Exclude at 18–19 (arguing that testimony concerning Zuora's public disclosures relating to Zuora's platform, Zuora's twitter account, and analyst reactions to Zuora's disclosures are all beyond Professor Solomon's area of expertise). The testimony that Plaintiffs challenge is closely related to Professor Solomon's expertise in corporate governance.

*First*, the nature of Zuora's disclosures and statements concerning Zuora's platform during the Class Period falls squarely within Professor Solomon's expertise on corporate governance and corporate disclosure policies. The fact that Professor Solomon is not, as Plaintiffs point out, "an industry expert on software," Pls.' Mot. to Exclude at 18, is beside the point. Professor Solomon's expertise comes from his extensive experience drafting public disclosures, consulting with companies on disclosure-related issues, chairing the audit committee for a public company, and advising the SEC on matters related to corporate governance and disclosure policies. This expertise qualifies him to opine on Zuora's disclosure practices, regardless of whether he has expertise specific to the software industry.

*Second*, how and whether statements on a corporate Twitter account form part of a company's disclosure policy is also directly within the ambit of Professor Solomon's corporate governance expertise. Professor Solomon is not opining on how companies use social media for marketing. Rather, his report explains corporate use of social media for public disclosure, including the obligations of the SEC's Regulation Fair Disclosure ("Regulation FD") rule. *See* Solomon Rep. ¶ 103; Ex. 02 Solomon Dep. 115:15–117:18. Professor Solomon further explains some of Regulation FD's basic requirements, including how companies can comply with these requirements when creating their corporate communications policies, and *how* investors will perceive statements made through such channels. *See* Ex. 02 Solomon Dep. 116:8–117:8. This

is precisely the sort of technical insight that an expert in corporate governance such as Professor Solomon can provide. And Professor Solomon's review of these materials is necessary to provide the factual predicate for his expert opinions.

*Finally*, Professor Solomon's analysis of analyst commentary is similarly grounded in his expertise. Quarterly earnings calls are part of the disclosure process for public companies—and these calls necessarily result in analyst engagement and market reactions. Understanding how the market will react to these disclosures and the nature of investor expectations in disclosures is necessarily part of Professor Solomon's expertise in corporate disclosures.

Thus, each topic that Professor Solomon addresses falls squarely within his expertise. *See Microfinancial, Inc.* v. *Premier Holidays Int'l, Inc.*, 385 F.3d 72, 80 (1st Cir. 2004) (explaining that "Rule 702 is not so wooden as to demand an intimate level of familiarity with every component of a transaction or device as a prerequisite to offering expert testimony" because "[w]hen, as in this case, an expert is 'qualified . . . by knowledge, skill, experience, training, or education,' he need not have had first-hand dealings with the precise type of event that is at issue" (quoting Fed. R. Evid. 702; internal citation omitted)). But even if Plaintiffs were correct—and they are not—these challenges go to the weight of Professor Solomon's testimony, not its admissibility. *See Optronic Techs., Inc.* v. *Ningbo Sunny Elec. Co.*, 2019 WL 4780183, at *3 (N.D. Cal. Sept. 30, 2019) (party's challenges against "qualified" expert that "testimony goes beyond [expert's] area of expertise" "are better left to the consideration of the jury through 'vigorous cross-examination" (citation omitted)), *aff'd*, 20 F.4th 466 (9th Cir. 2021); *Krommenhock* v. *Post Foods, LLC*, 334 F.R.D. 552, 585 (N.D. Cal. 2020) ("That [expert] has only limited experience directly addressing [particular topic] does not automatically undermine his ability to opine on areas that are within his expertise; it does provide a ground on which to attack his opinions on cross-examination.").

**D.   Professor Solomon Does Not Improperly Invade the Province of the Factfinder**

Finally, Plaintiffs object to certain portions of Professor Solomon's testimony because they relate to "ultimate issues of fact." Pls.' Mot. to Exclude at 18–19 (arguing that testimony

concerning the scope of Zuora's public disclosures, Zuora's twitter account, and analyst reactions to Zuora's disclosures are also inadmissible because it reaches ultimate factual issues). But "it is well-established . . . that expert testimony concerning an ultimate issue is not per se improper." *Hangarter*, 373 F.3d at 1016 (quotation omitted); *see also* Fed. R. Evid. 704(a) ("An opinion"—including from an expert—"is not objectionable just because it embraces an ultimate issue.").

Moreover, the Ninth Circuit has specifically explained that expert testimony relating to whether a defendant followed industry standards "did not improperly invade the province of the jury or the court." *Hangarter*, 373 F.3d at 1017. And courts regularly admit testimony like Professor Solomon's, so long as it does not venture into testimony regarding whether the "defendant complied with legal duties that arose under the federal securities laws." *Berckeley Inv. Grp.*, 455 F.3d at 218; *see also BankAtlantic Bancorp, Inc.*, 2013 WL 12009694, at *11 (concluding "expert testimony on regulatory requirements and industry practices is permissible and does not, without more, constitute improper legal conclusions"). Professor Solomon does not comment on whether any defendant violated the federal securities laws, and his testimony is in line with what courts commonly permit.[10] The fact that it may touch on certain factual issues is therefore not a basis for exclusion.

## VII.     CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to exclude the expert report and testimony of Steven Solomon.

Dated:    January 27, 2023

By: /s/ Melinda Haag
Melinda Haag

*Attorneys for Defendants Zuora, Inc., Tien Tzuo and Tyler Sloat*

---

[10] Moreover, any concern about the role and limits of Professor Solomon's testimony can be addressed through an appropriate jury instruction at trial. *See, e.g.*, *United States* v. *Clardy*, 612 F.2d 1139, 1153 (9th Cir. 1980) (holding any concern about admission of expert testimony was addressed by jury instruction "that the expert opinion could be given whatever weight the jury wished to give it, taking into consideration the position of the expert, his relationship to the parties . . . etc." (quotation omitted)).