SUSAN S. MUCK (SBN 126930)
susan.muck@wilmerhale.com
KEVIN P. MUCK (SBN 120918)
kevin.muck@wilmerhale.com
WILLIAM BRENC (SBN 318544)
william.brenc@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 94111
Telephone: (628) 235-1002

JEREMY T. ADLER (admitted *pro hac vice*)
jeremy.adler@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 295-6417

MELINDA HAAG (SBN 132612)
ROBIN LINSENMAYER (SBN 244656)
ERIKA K. HOGLUND (SBN 327781)
535 Mission Street, 24th Floor
San Francisco, CA 94105
Telephone: (628) 432-5100
Facsimile: (628) 232-3101
mhaag@paulweiss.com
rlinsenmayer@paulweiss.com
ehoglund@paulweiss.com

KAREN L. DUNN (admitted *Pro Hac Vice*)
JUSTIN ANDERSON (admitted *Pro Hac Vice*)
JESSICA E. PHILLIPS (*Pro Hac Vice* forthcoming)
JAKE E. STRUEBING (*Pro Hac Vice* forthcoming)
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
Facsimile: (202) 223-7420
kdunn@paulweiss.com
janderson@paulweiss.com
jphillips@paulweiss.com
jstruebing@paulweiss.com

AUDRA J. SOLOWAY (admitted *Pro Hac Vice*)
JONATHAN HURWITZ (admitted *Pro Hac Vice*)
JASON A. DRISCOLL (*Pro Hac Vice* forthcoming)
BENJAMIN W. PEROTIN (*Pro Hac Vice* forthcoming)
PAUL, WEISS, RIFKIND, WHARTON
    & GARRISON LLP
1285 6th Ave.
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
asoloway@paulweiss.com
jhurwitz@paulweiss.com
jdriscoll@paulweiss.com
bperotin@paulweiss.com

*Attorneys for Defendants Zuora, Inc.,*
*Tien Tzuo, and Tyler Sloat*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | Case No.: 3:19-cv-03422-SI<br><br>**DEFENDANTS ZUORA, INC., TIEN TZUO, AND TYLER SLOAT'S MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S MOTION TO EXCLUDE EXPERT TESTIMONY OF KEVIN DAGES**<br><br>Date:       March 3, 2023<br>Time:       10:00 a.m.<br>Dept.:      Courtroom 1, 17th Floor<br>Judge:      Hon. Susan Illston<br>Date Action Filed:  June 14, 2019 |

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | iii |
| STATEMENT OF ISSUES TO BE DECIDED | | 1 |
| MEMORANDUM OF POINTS AND AUTHORITIES | | 1 |
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 4 |
| | A. Kevin Dages's Expertise | 4 |
| | B. Mr. Dages's Report and Opinions | 5 |
| | 1. Opinion Regarding Zuora's Subscription Segment Revenues | 5 |
| | 2. Opinion Regarding Zuora's Global Services Segment Revenues | 6 |
| | 3. Overall Opinion Regarding Zuora's Revised FY 2020 Revenue Guidance | 6 |
| III. | LEGAL STANDARD | 7 |
| IV. | MR. DAGES'S OPINIONS ARE BASED ON SUFFICIENT FACTS AND DATA, AND PLAINTIFFS' ARGUMENTS TO THE CONTRARY GO TO WEIGHT, NOT ADMISSIBILITY | 7 |
| | A. Mr. Dages Reasonably and Properly Relied on the Record Evidence | 8 |
| | B. Mr. Dages Confirmed the Reliability of the Five Zuora Spreadsheets in Question, the Admissibility of Which Defendants Are Entitled to, and Will, Establish at Trial | 9 |
| | 1. ZUO_00448803 (CTTP reconciliation plans (Q1'20).xlsx) | 10 |
| | 2. ZUO_00448808 (FY'20Q1 Pipeline vs. Close.xlsx) | 11 |
| | 3. ZUO_00327212 (5.2019 analysis) | 11 |
| | 4. ZUO_00448805 (FY20 Plan - Global Services - v3 Keystone Impact - March 11, 2019, 3_45 PM) & ZUO_00448806 (FY20 Plan - GS - v4 Keystone Impact + Re-FCST - May 19, 2019, 8_45 PM) | 12 |
| | C. Mr. Dages Was Not Required to Interview Additional Zuora Employees Regarding Zuora's Decision to Revise Its Guidance | 13 |
| | D. AICPA Guidelines Are Not Dispositive | 14 |
| V. | MR. DAGES'S OPINIONS ARE THE PROPER SUBJECT OF EXPERT TESTIMONY | 15 |
| | A. Mr. Dages's Opinions Will Be Helpful to the Jury and Will Not Usurp the Jury's Role | 16 |
| | B. Mr. Dages's Conclusions Are the Product of Reliable Principles and Methods | 19 |
| VI. | MR. DAGES'S OPINIONS PROPERLY "FIT" THE CASE | 21 |

A.      Mr. Dages Offers Relevant Rebuttal Opinions That Directly Undermine a Prima Facia Element of Plaintiffs' Case...............................................................21

B.      Mr. Dages's Opinions Are Consistent with the Law on Damages .......................24

VII.    CONCLUSION.................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Rent-A-Car, Inc.,* v. *Avis Budget Grp., Inc.,*
    738 F.3d 960 (9th Cir. 2013) ....................................................................................7, 14

*Baker* v. *SeaWorld Ent., Inc.,*
    423 F. Supp. 3d 878 (S.D. Cal. 2019)...................................................2, 9, 17, 24, 25

*Cisco Sys. Inc.* v. *Arista Networks, Inc.,*
    2016 WL 11752975 (N.D. Cal. Nov. 16, 2016) .......................................................18

*Coffey* v. *Dowley Mfg., Inc.,*
    187 F. Supp. 2d 958 (M.D. Tenn. 2002), *aff'd,* 89 F. App'x 927 (6th Cir.
    2003) .........................................................................................................................14

*Daubert* v. *Merrell Dow Pharms., Inc.,*
    509 U.S. 579 (1993).............................................................................................9, 19, 20

*Dura Pharms. Inc.* v. *Broudo,*
    544 U.S. 336 (2005).................................................................................................23

*In re Ebix, Inc. S'holder Litig.,*
    No. 8526-VCS (Del. Ch. May 6, 2013) .....................................................................4

*Elosu* v. *Middlefork Ranch Inc.,*
    26 F.4th 1017 (9th Cir. 2022) ..............................................................13, 18, 19, 20

*In re EPD Inv. Co., LLC,*
    587 B.R. 711 (C.D. Cal. 2018) ..................................................................................9

*Frye* v. *Warden, San Quentin State Prison,*
    2010 WL 3210767 (E.D. Cal. Aug. 10, 2010)........................................................14

*Fujifilm Corp.* v. *Motorola Mobility LLC,*
    2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ...........................................................18

*Gen. Elec. Co.* v. *Joiner,*
    522 U.S. 136 (1997)....................................................................................................9

*Glam & Glits Nail Design, Inc.* v. *iGel Beauty, LLC,*
    2022 WL 3012522 (C.D. Cal. June 24, 2022) .........................................................16

*Hangarter* v. *Provident Life & Acc. Ins. Co.,*
    373 F.3d 998 (9th Cir. 2004) .....................................................................................9

*Hayes* v. *MagnaChip SemiConductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...................................................................17

*Highfields Cap. I, LP* v. *SeaWorld Ent., Inc.*,
2022 WL 1037210 (S.D. Cal. Apr. 6. 2022)............................................................. *passim*

*Humetrix, Inc.* v. *Gemplus S.C.A.*,
268 F.3d 910 (9th Cir. 2001) .............................................................................................20

*IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund* v. *Royal Bank of Scotland Group, PLC*,
783 F.3d 383 (2d Cir. 2015).............................................................................................21

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
252 F. Supp. 2d 1005 (C.D. Cal. 2003) .............................................................................17

*JH Kelly, LLC* v. *AECOM Tech. Servs.*,
2022 WL 1817415 (N.D. Cal. June 2, 2022) .....................................................................16

*Kennedy* v. *Collagen Corp.*,
161 F.3d 1227 (9th Cir. 1998) ...........................................................................................20

*Kottayil* v. *Insys Therapeutics, Inc.*,
2015 WL 4698439, at *15 (Ariz. Super. Ct. June 10, 2015) .......................................................4

*Liberty Media Corp. & Liberty Media LLC* v. *Bank of N.Y. Mellon Tr. Co.*,
No. 5702-VCL (Del. Ch. Aug. 6, 2010) ...............................................................................4

*Lloyd* v. *CVB Financial Corp.*,
811 F.3d 1200 (9th Cir. 2016) ...........................................................................................22

*Messick* v. *Novartis Pharms. Corp.*,
747 F.3d 1193 (9th Cir. 2014) .....................................................................................7, 21

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*,
643 F. Supp. 2d 482 (S.D.N.Y. 2009)................................................................................18

*Mighty Enters., Inc.* v. *She Hong Indus. Co.*,
2017 WL 901083 (C.D. Cal. Mar. 7, 2017)..........................................................................8

*Mighty Enters., Inc.* v. *She Hong Indus. Co.*,
745 F. App'x. 706 (9th Cir. Aug. 15, 2018) ....................................................................8, 9

*S.E.C.* v. *Moshayedi*,
2013 WL 12129282 (C.D. Cal. 2013)....................................................................13, 16, 17

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) .......................................................................21

*United States* v. *Nixon*,
694 F.3d 623 (6th Cir. 2012) ..................................................................................................16

*In re Novatel*,
2011 WL 5827198 (S.D. Cal. Nov. 17, 2011) ........................................................................18

*Novoa* v. *GEO Group, Inc.*,
2020 WL 8514832 (C.D. Cal. 2020)......................................................................................8, 9

*Nuveen Mun. High Income Opp. Fund* v. *City of Alameda, Cal.*,
730 F.3d 1111 (9th Cir. 2013) ................................................................................................23

*In re Oracle Corp. Sec. Lit.*,
2009 WL 1709050 (N.D. Cal. June 19, 2009) (Illston, J.).....................................................23

*In re Oracle Corp. Sec. Lit.*,
627 F.3d 376 (9th Cir. 2010) ..................................................................................................24

*Primiano* v. *Cook*,
598 F.3d 558 (9th Cir. 2010) ....................................................................................................7

*In re Rural Metro Corp.*,
88 A.3d 54 (Del. Ch. 2014)........................................................................................................4

*Spintouch Inc.* v. *Outform Inc.*,
2022 WL 17363902 (C.D. Cal. Sept. 28, 2022) .....................................................................18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2013 WL 124347 (N.D. Cal. Jan. 8, 2013) (Illston, J.)...........................................................15

*Turocy* v. *El Pollo Loco Holdings, Inc.*,
2018 WL 3343493 (C.D. Cal. July 3, 2018)............................................................................17

*United States for Use & Benefit of Bergelectric Corp.* v. *Sauer, Inc.*,
2020 WL 470273 (N.D. Cal. Jan. 29, 2020) ...........................................................................15

*United States* v. *Vallejo*,
237 F.3d 1008 (9th Cir. 2001) .................................................................................................16

*Villalpando* v. *Exel Direct Inc.*,
2015 WL 1598663 (N.D. Cal. Apr. 21, 2016) ...................................................................13, 14

*In re Vivendi Univ., S.A. Sec. Lit.*,
634 F. Supp. 2d 352 (S.D.N.Y. 2009)......................................................................................17

*Waymo LLC* v. *Uber Technologies, Inc.*,
2017 WL 6887043 (N.D. Cal. 2017) .......................................................................................17

*Wendell* v. *GlaxoSmithKline LLC*,
858 F.3d 1227 (9th Cir. 2017) ...................................................................................................7

*In re Xerox Corp. Sec. Litig.*,
 746 F. Supp. 2d 402 (D. Conn. 2010) ...............................................................................24

**Other Authorities**

Fed. R. Civ. P. 26 ...............................................................................................................18

Fed. R. Evid. 702 ........................................................................................................ *passim*

Fed. R. Evid. 703 ...........................................................................................................3, 8, 10

N.D. Cal. Local Rule 5.1(e) ...............................................................................................10

## STATEMENT OF ISSUES TO BE DECIDED

Whether the Court should exclude the expert testimony of Kevin Dages and any testimony or evidence relying thereon.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.       INTRODUCTION

Plaintiffs' securities fraud claims allege that Defendants made materially false and misleading statements about Zuora's integration of two of its products, Billing and RevPro, in light of challenges presented by an integration project internally referred to as Project Keystone. Plaintiffs allege they were harmed when the purported truth was revealed on a May 30, 2019 earnings call, during which Zuora reduced its revenue guidance for its FY 2020.  Plaintiffs contend that Zuora's May 30, 2019 announcement caused the Company's stock price to decline.

It is undisputed that the announcement identified two factors motivating the company's decision to lower its revenue guidance: (i) delays associated with the Billing-RevPro integration, and (ii) sales execution issues.  As shown in Defendants' Motion for Summary Judgment, because Plaintiffs do not allege that Defendants made any false or misleading statements about Zuora's sales execution efforts, the portion of the guidance reduction caused by sales issues unrelated to the integration delays cannot serve as the basis for Plaintiffs' damages claim, and must be disaggregated from any reasonable estimate of damages caused by the alleged fraud. *See* Defs.' Mot. Summ. J., Dkt. No. 185.  But Plaintiffs have failed to proffer evidence to meet their loss causation burden, as they have failed to disaggregate the portion of the May 31, 2019 stock drop attributable to the integration issues from the portion attributable to the separately disclosed sales execution issues. *See id.*  On the contrary: Plaintiffs' experts were merely instructed to assume, incorrectly, that *all* sales execution issues disclosed by Zuora were the result of the integration issues, and have not provided any estimate of the portion of the decline in Zuora's revised FY 2020 revenue guidance or the decline in its stock price attributable to the integration delay.

In contrast, Kevin Dages was retained by Defendants to apply his forensic accounting expertise and estimate what percentage—at most—of the decline in Zuora's revised FY 2020

---

revenue guidance could be attributable to the disclosed integration issues that Plaintiffs claim caused their damages. Mr. Dages is a CPA who has testified about accounting and valuation issues for more than 25 years, and whose testimony has been routinely accepted and relied upon by courts and has never been excluded under Rule 702 or *Daubert*. As part of his analysis in this case, Mr. Dages reviewed the factual record, interviewed witnesses, and analyzed and reconciled a range of revenue forecast, sales pipeline, and revenue guidance data from Zuora's business records relevant to its FY 2020 guidance. He concluded that at most 15% of Zuora's guidance reduction could be attributable to the alleged integration issues. In other words, at least 85% of the reduction in Zuora's revised FY 2020 guidance was unrelated to the alleged fraud. Mr. Dages's conclusions and testimony remain the only competent evidence in the case that speaks to the issue of disaggregation.

Now, having themselves chosen not to offer expert testimony on this critical issue, Plaintiffs attack Mr. Dages's opinions and seek to exclude his testimony. But Plaintiffs' predicament is of their own making, and their effort to prevent Defendants from providing relevant expert testimony is wholly unpersuasive. Plaintiffs do not challenge Mr. Dages's expert qualifications—nor could they, in light of his extensive experience conducting and providing expert testimony about forensic analyses. Instead, they criticize Mr. Dages's report on grounds that are unsuited for a *Daubert* motion and question the basis for his conclusions without even identifying any allegedly better methodology. Nor is there one: Mr. Dages's forensic analysis was based on reliable principles and methods, and such forensic accounting opinions are routinely admitted as helpful to the jury on the topic of disaggregation in securities suits. *See, e.g.*, *Highfields Cap. I, LP* v. *SeaWorld Ent., Inc.*, 2022 WL 1037210, *15 (S.D. Cal. Apr. 6. 2022) (admitting expert's analysis of issuer's internal, nonpublic park attendance data to disaggregate fraud and non-fraud related reasons for stock drop); *Baker* v. *SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 904–06 (S.D. Cal. 2019) (same). Plaintiffs' motion should therefore be denied.

***First***, Plaintiffs claim that Mr. Dages based his opinions on insufficient facts and data, arguing that it was improper for Mr. Dages to rely on Zuora sales and revenue spreadsheets

without independently verifying all of the data contained in these business records. Contrary to the premise of Plaintiffs' argument, Mr. Dages did in fact independently verify much of the data he relied upon. More fundamentally, however, Plaintiffs' argument contradicts the plain text of Federal Rule of Evidence 703 and case law holding that experts are entitled to rely on data that "the expert has been made aware of," without any such independent verification. Plaintiffs also ignore Federal Rule of Evidence 703's clear dictate that the facts and data underlying an expert opinion "need not be admissible for the opinion to be admitted." In any case, Defendants are entitled to, and will, address any relevant foundational issues regarding this data at the appropriate time prior to or during trial.

*Second*, Plaintiffs argue that Mr. Dages's report is an inadmissible narrative summation of documents that usurps the role of the jury. This straw person characterization should be rejected, as Mr. Dages's opinions are the result of an expert forensic accounting analysis that will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Specifically, Mr. Dages's expert testimony will assist jurors in interpreting the financial evidence in order to determine the relative significance of the two factors motivating Zuora's guidance reduction. To the extent Plaintiffs further argue that Mr. Dages's conclusions themselves are unreliable, their arguments rest on factually incorrect premises and are not the proper subject of a *Daubert* motion.

*Third*, Plaintiffs argue that Mr. Dages's opinions do not "fit" the case, overlooking the core issue of loss causation (and their own burden of establishing it) and the fact that Mr. Dages's disaggregation opinion directly rebuts this prima facie element of their claim. By lodging this argument, Plaintiffs continue to ignore their obligation to present evidence that the jury can consider to disentangle the fraud-related and non-fraud-related factors underlying Zuora's stock drop.

In sum, because Mr. Dages's forensic analysis easily meets the standards articulated in *Daubert* and Rule 702, his testimony and opinions should not be excluded and Plaintiffs' motion should be denied.

## II.     FACTUAL BACKGROUND

For a comprehensive discussion of the facts underlying Mr. Dages's report and opinions, Defendants refer the Court to the statement of undisputed facts in their currently pending Motion for Summary Judgment.  *See* Defs.' Mot. Summ. J., Dkt. No. 185.  By way of additional background, Defendants herein elaborate on Mr. Dages's experience, expert report, and opinions.

### A.     Kevin Dages's Expertise

Kevin Dages is an eminently qualified Certified Public Accountant ("CPA") who is regularly retained to opine and testify on matters related to valuation and damages.  He has served as a testifying damages expert in accounting and valuation cases for more than 25 years.  Courts have recognized that he is a "highly experienced professional who has testified in some of the most famous cases in Delaware Chancery Court," and have characterized his testimony as "conservative, balanced, and well-supported."[1]  He has also served as a forensic accounting expert in numerous litigations that did not involve trial testimony.[2]  For nearly 10 years, he has been the Executive Vice President of the economic consulting firm Compass Lexecon, where he also directs expert work regarding valuation and damages.  *See* Expert Report of Kevin Dages ("Dages Rep.") App'x A.[3]  Particularly relevant to this case, Mr. Dages has past experience preparing damages opinions in the securities context.  *See, e.g.*, Expert Rep. of Kevin F. Dages at 1, *In re CMS Sec. Litig.*, No. 02-CV 72004 (Aug. 16, 2006) (stating was retained "to develop reasonable estimates of the amount of per share inflation. . . during [class period] . . . [and to] examine the impact on damages of additional disclosures related to the [alleged fraud ]").  No

---

[1] *See, e.g.*, *Kottayil* v. *Insys Therapeutics, Inc.*, 2015 WL 4698439, at *15 (Ariz. Super. Ct. June 10, 2015) ("The Defendants' valuation expert was Kevin Dages, a highly experienced professional who has testified in some of the most famous cases in Delaware Chancery Court."); *In re Rural Metro Corp.*, 88 A.3d 54, 107 (Del. Ch. 2014) ("The plaintiffs' expert, Kevin Dages, presented a conservative, balanced, and well-supported DCF model."); *Liberty Media Corp. & Liberty Media LLC* v. *Bank of N.Y. Mellon Tr. Co.*, No. 5702-VCL (Del. Ch. Aug. 6, 2010); *In re Ebix, Inc. S'holder Litig.*, No. 8526-VCS  (Del. Ch. May 6, 2013).

[2] *See, e.g.*, *In re General Mills, Inc.* SEC File No. C-03760-A; *Carpenters Health & Welfare Fund* v. *Coca-Cola Co.*, No. 1:00-CV-2838 (N.D. Ga. Oct. 27, 2000); *S.E.C.* v. *Schmidgall*,  No. 4:08-cv-00677 (W.D. Mo. Sept. 15, 2008).

[3] The Dages Report was filed as Exhibit 1 to Plaintiffs' Motion to Exclude.  *See* Dkt. No. 194-2.  The Dages Report was also filed as Exhibit 16 to Defendants' Motion for Summary Judgment.  *See* Dkt. No. 185-17.

---

DEFS.' MEM. OF LAW IN OPP. TO MOT. TO. EXCLUDE EXP. TEST. OF KEVIN DAGES           4
CASE NO.: 3:19-cv-03422-SI

testimony proffered by Mr. Dages has ever been excluded under Rule 702 or the standards articulated in *Daubert*.

### B.    Mr. Dages's Report and Opinions

Mr. Dages was retained by Defendants to review the record and provide his expert opinion on what portion, if any, of the decline in Zuora's revised FY 2020[4] revenue guidance could be attributable to the delay in executing Keystone—referred to in Mr. Dages's report as the "Keystone Integration Issues." Dages Rep. ¶ 12. Mr. Dages applied his forensic accounting expertise to review and interpret the record evidence bearing on Zuora's financial condition in the first and second quarters of Zuora's FY 2020. *See generally id.* To that end, Mr. Dages analyzed both publicly available information and financial documents internal to Zuora. Specifically, Mr. Dages reviewed (i) Zuora's SEC filings and publicly disclosed revenue guidance; (ii) various internal revenue projection spreadsheets; (iii) Zuora's customer sales and sales pipeline data; (iv) board materials related to revenue and guidance; and (v) relevant deposition testimony regarding Zuora's financial condition and revenue guidance. *See id.* App'x B. Mr. Dages further spoke with two individuals at Zuora with relevant knowledge, Robert Hildenbrand (Senior Vice President of Global Services), and Rachel Noel (Director of Revenue Accounting), to confirm certain details and assumptions in his report. *See* Ex. 01 Dages Dep. 26:22–30:7.

In conducting his analysis, Mr. Dages focused separately on the two relevant segments of Zuora's business—its Subscription segment, which includes revenues attributable to sales of subscriptions, and its Global Services segment, which includes revenues from the provision of professional services. Dages Rep. ¶¶ 3, 26–30.

### 1.    Opinion Regarding Zuora's Subscription Segment Revenues

Mr. Dages began his analysis by determining what portion of Zuora's FY 2020 Q1 Subscriptions segment bookings miss could be attributable to the Keystone Integration Issues. Dages Rep. ¶¶ 46–54. To that end, Mr. Dages analyzed Zuora's customer pipeline and sales data to identify prospective customers in the Q1 2020 sales pipeline that had either purchased or were

---

[4] Zuora's FY 2020 runs from February 1, 2019 to January 31, 2020.

considering purchasing both Billing and RevPro—i.e., customers or prospective customers that could have been impacted by delays associated with the integration of those two products. *See id.* Mr. Dages identified five existing or prospective customer accounts that met those criteria, and therefore could have been impacted by the Keystone delay. *Id.* ¶ 49. Mr. Dages calculated the portion of the Company's Q1 2020 bookings miss related to these accounts, and determined that, at most, 9% of the $7.25 million midpoint of the $5.5–$9.0 million downward revision in Zuora's FY 2020 Subscription revenue guidance could be attributable to the Keystone Integration Issues. Dages Rep. ¶¶ 13, 54.

### 2. Opinion Regarding Zuora's Global Services Segment Revenues

Mr. Dages then conducted an analysis of Keystone's revenue implications on Zuora's other major business segment, Global Services (also known as professional services). *Id.* ¶¶ 55–59. He reviewed additional spreadsheets specific to forecasted Global Services revenue and spoke to Zuora management regarding their contents. *See id.* ¶ 55. After isolating and analyzing the revenue estimates impacted by Keystone, Mr. Dages estimated that, at most, 19% of the $11 million midpoint of the $10–$12 million downward revision in Zuora's FY 2020 Global Services revenue guidance could be attributable to the Keystone Integration Issues. *Id.* ¶ 59.

### 3. Overall Opinion Regarding Zuora's Revised FY 2020 Revenue Guidance

Mr. Dages then combined these opinions to determine the maximum percentage of the decline in Zuora's overall FY 2020 revenue guidance that could be attributable to the disclosed integration issues. *See id.* ¶ 60. To do so, he added the portion of the decline in Subscription revenues and the portion of the decline in Global Services revenues that could have been attributable to the Keystone Integration Issues. *Id.* Comparing these figures against Zuora's overall downward revision to FY 2020 revenue guidance, Mr. Dages estimates that, at most, 15% of the overall downward revision could be attributable to the Keystone Integration Issues. *Id.* ¶¶ 13, 60–61. Thus, Mr. Dages ultimately opines that any estimate of the damages attributable to Zuora's alleged failure to timely disclose the Keystone Integration Issues should take into

account his estimate that the Keystone Integration Issues represented, at most, 15% of Zuora's downward revision to revenue guidance disclosed on May 30, 2019. *Id.* ¶¶ 13, 62.

## III.   <u>LEGAL STANDARD</u>

Under Rule 702, an expert witness may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Courts apply Rule 702 "with a 'liberal thrust' favoring admission." *Messick* v. *Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert* v. *Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993)).  Rule 702 is meant to keep "junk science" out of the courtroom by allowing the judge "to screen the jury from unreliable, nonsense opinions." *Wendell* v. *GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017); *see also Alaska Rent-A-Car, Inc.,* v. *Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).  However, "the interests of justice favor leaving difficult issues" relating to the weight given to expert opinions "in the hands of the jury." *Wendell*, 858 F.3d at 1237; *see also Primiano* v. *Cook*, 598 F.3d 558, 564 (9th Cir. 2010) ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion.").  In this endeavor, the court is "a gatekeeper, not a fact finder." *Id.* at 568 (citation omitted).

## IV.   <u>MR. DAGES'S OPINIONS ARE BASED ON SUFFICIENT FACTS AND DATA, AND PLAINTIFFS' ARGUMENTS TO THE CONTRARY GO TO WEIGHT, NOT ADMISSIBILITY</u>

Contrary to Plaintiffs' assertions, Mr. Dages relied on sufficient facts and data when conducting his forensic analysis.  The data underlying Mr. Dages's analysis and his analytical process have been repeatedly found by this court and others to be proper grounds for expert testimony.  Plaintiffs' arguments to the contrary miscite the applicable legal standards, and any critiques identified by Plaintiffs at most provide grounds for cross examination at trial, not exclusion under *Daubert*.

### A.    Mr. Dages Reasonably and Properly Relied on the Record Evidence

Plaintiffs argue that Mr. Dages's opinions must be excluded because he failed to verify or corroborate certain details in Zuora spreadsheets provided to him in connection with his forensic analysis.  *See* Pls.' Mot. to Exclude at 10.[5]  The premise of this argument is wrong: as discussed in the next section, Mr. Dages did independently verify the spreadsheets' contents, including by cross-referencing the data against other record evidence, and the spreadsheets are Zuora business records.  In any event, however, whether Mr. Dages independently verified the data is irrelevant.  Federal Rule of Evidence 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of," and further makes clear that such facts or data "need not be admissible for the opinion to be admitted" as long as "experts in the particular field would reasonably rely on those kinds of facts or data in forming their opinion on the subject."  That is the case here, and nothing in the Federal Rules of Evidence or *Daubert* forecloses Mr. Dages's reasonable reliance on this data.

"Experts can rely on data provided to them without independent verification."  *Mighty Enters., Inc.* v. *She Hong Indus. Co.*, 745 F. App'x. 706, 709 (9th Cir. Aug. 15, 2018) (citing *Hangarter* v. *Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1018 n.14 (9th Cir. 2004))).  This includes an expert's reliance on "financial data supplied by a [party]" so that the expert may "conduct a financial analysis."  *Mighty Enters., Inc.* v. *She Hong Indus. Co.*, 2017 WL 901083, at *8 (C.D. Cal. Mar. 7, 2017), *aff'd*, 745 Fed. Appx. 706, 709 (9th Cir. Aug. 15, 2018).  The court's discussion in *Novoa* v. *GEO Group, Inc.*, 2020 WL 8514832 (C.D. Cal. 2020), is instructive.  There, the relevant expert was a Certified Public Accountant with 30 years' accounting experience, including conducting forensic accounting investigations and valuations.  2020 WL 8514832, at *4.  Plaintiffs sought to exclude the expert's damages opinion, arguing that the opinion was based on "an unblinking reliance on information provided by GEO's counsel, not objective, verified facts or data."  *Id.* at *5.  The court rejected this argument and further noted that independent verification is particularly unnecessary where, as here, the

---

[5] "Pls.' Mot. to Exclude" refers to Lead Plaintiff's Notice of Motion and Motion to Exclude Expert Testimony of Kevin Dages, filed on December 9, 2022.  *See* ECF No. 194.

expert's "background make[s] [them] competent to review the[] different sources of information and form a reasoned opinion." *Id.* This conclusion is consistent with the emphasis in *Daubert* that an expert need not testify based on "firsthand knowledge or observation." *Daubert*, 509 U.S at 592. Rather, experts "commonly extrapolate from existing data." *Gen. Elec. Co.* v. *Joiner*, 522 U.S. 136, 146 (1997).

Mr. Dages's reliance on Zuora's internal sales and forecasting data was eminently reasonable for the forensic accounting he was asked to conduct. Indeed, these business records are the exact categories of documents one would expect such an expert to rely on when performing such an analysis. *See*, *e.g.*, *Highfields Cap. I, LP*, 2022 WL 1037210, at *15 (admitting expert's analysis of issuer's internal, nonpublic park attendance data to disaggregate fraud and non-fraud related reasons for stock drop); *Baker*, 423 F. Supp. 3d at 904–06 (same).

In any case, Plaintiffs' criticism of Mr. Dages's reliance on this data at most "goes to the credibility of the testimony, not [its] admissibility." *Mighty Enters. Inc.*, 745 F. App'x. at 709 (quoting *Hangarter*, 373 F.3d at 1018 n.14); *Novoa*, 2020 WL 8514832, at *5 (same); *see also Highfields Cap. I, LP*, 2022 WL 1037210, at *14 ("The *Daubert* standard tests the reliability of an expert's methods and attacks on the specific data used goes to the weight of the evidence and is more appropriately addressed via cross-examination and argument to the jury."); *In re EPD Inv. Co., LLC*, 587 B.R. 711, 719 (C.D. Cal. 2018) (rejecting argument that expert improperly relied on "unaudited financial statements" and "partial forensic accounting" as one going to weight). Thus, disputes regarding the extent to which Mr. Dages independently verified the underlying data is "an issue properly explored during direct and cross-examination" and is not the proper basis for a *Daubert* motion. *Hangartner*, 373 F.3d at 1018 n.14.

**B.** **Mr. Dages Confirmed the Reliability of the Five Zuora Spreadsheets in Question, the Admissibility of Which Defendants Are Entitled to, and Will, Establish at Trial**

Plaintiffs further raise multiple red herrings challenging not the actual contents of the spreadsheets that were the subject of Mr. Dages's analysis, but their authenticity. *See* Pls.' Mot. to Exclude at 12–16. Again, these criticisms have no force at this stage of the case, and do not

render Mr. Dages's analysis unreliable or improper.  *See* Fed. R. Evid. 703; *Highfields Cap. I, LP*, 2022 WL 1037210, at \*14.  In any case, these red herrings are easily dismissed, as the documents on which Dages relied are admissible Zuora business records, the contents of which Mr. Dages in fact verified through a forensic analysis of the documents against other evidence. Defendants can and will address any issues regarding the admissibility of these documents if necessary at the appropriate time prior to or during trial.  We briefly address Plaintiffs' criticisms of each document in turn.[6]

### 1.  ZUO_00448803 (CTTP reconciliation plans (Q1'20).xlsx)

This document is a business record that was used by Zuora employees to record and forecast Zuora's sales commit and "Closest to the Pin" ("CTTP")[7], figures in early 2019.  This document was created and maintained by Zuora's Go-to-Market team in 2019.  While Plaintiffs note that the metadata does not reflect a particular custodian other than "Zuora, Inc.," or the date on which the document was created, the metadata merely reflects the fact that the document was collected from the Company's Google Drive.  This metadata does not suggest any nefarious authenticity issue undermining the integrity of the document.  Plaintiffs' additional argument that this document is unreliable because the second tab of the Excel sheet includes a "DRAFT" notation is also unpersuasive.  The notation is specific only to the second "CTTP summary" tab of the Excel, not the entire Excel file.  And as Plaintiffs acknowledge, Mr. Dages relied on the document primarily for the data contained in a different tab labeled "RevPro (315)."  Dages Rep. Ex. 8 n.1; Pls.' Mot. to Exclude at 7.  His analysis is not dependent on the second tab of the Excel file at all.

Finally, Mr. Dages took additional steps to confirm that the data in this document tied out to other information he reviewed.  For example, Mr. Dages's report notes that ███████ ████████████████████████ derived from this document tied out to the information

---

[6] The five documents (Ex. 02 ZUO_00448803, Ex. 03 ZUO_00448808, Ex. 04 ZUO_00327212, Ex. 05 ZUO_00448805, and Ex. 06 ZUO_00448806) are Excel spreadsheets that Defendants will provide to the Court in native format in compliance with Local Rule 5.1(e).  Defendants accordingly file Manual Filing Notifications in place of these documents on the docket.

[7] CTTP represents the sales managers' best estimate of total bookings for the quarter.  Dages Rep. Ex. 9 n.1.

contemporaneously provided to Zuora's Board of Directors on February 28, 2019.  Dages Rep. Ex. 9 n.1 & n.4; *see also* MSJ Ex. 33[8] ZUO_00000906, -918 ██████████████████ ██████████████.[9]

### 2.    ZUO_00448808 (FY'20Q1 Pipeline vs. Close.xlsx)

This document is a compilation of Zuora's Q1 FY 2020 Salesforce data maintained in the regular course of Zuora's business.  The spreadsheet was generated by Zuora Financial Planning & Analysis employee Boris Goldenberg.  Again, to the extent Plaintiffs note that the metadata does not reflect a particular custodian other than "Zuora, Inc.," or the date on which the document was created, Plaintiffs' attack does not undermine the contents of the document.  Mr. Dages's analysis confirmed that the spreadsheet's data tied out to other record evidence.  *See* Dages Rep. Ex. 9 n.2–4 (citing Ex. 03 ZUO_00448808 ██████████████████ ██████████████, Ex. 07 ZUO_00000992, -1014, -1025 ██████████████ ██████████████, and MSJ Ex. 30 ZUO_00001166, -175–176 ██████████████ ██████████████████████).

### 3.    ZUO_00327212 (5.2019 analysis)

This document is a business record that was created by the company's Corporate Financial Planning & Analysis team in May 2019 for purposes of outlining revenue and financial guidance scenarios.  Regarding Plaintiffs' argument that the metadata reflects a possible modification to the document in August 2019, Mr. Dages verified the information he used from this document by observing that the data in the spreadsheet tied out to other record evidence.  Specifically, as noted in his report, Mr. Dages's analysis confirmed that the revenue scenarios assumptions in the spreadsheet reflected the same decline in the Subscription, Global Services, and Total Revenues guidance estimates as the actual decline in revenue guidance disclosed to the market between the March 2019 and May 2019.  *See* Dages Rep. Ex. 7; *compare* MSJ Ex. 01 at 4, with MSJ Ex. 22 at 10.  Mr. Dages's reliance on this data was therefore patently reasonable.

---

[8] "MSJ Ex." refers to the corresponding exhibit filed in support of Defendants' Motion for Summary Judgment and to Exclude Evidence, filed on December 9, 2022.  *See* Dkt. No. 185.

[9] Notably, this February 28, 2019 Board of Directors presentation is a document on which Plaintiffs' own expert relies.  *See* MSJ Ex. 39 n.46, n.89.

Plaintiffs' criticism of Mr. Dages's use of Scenario D in the Subscription Revenue tab as a basis for his calculations is similarly baseless.  Mr. Dages used that scenario after corroborating his understanding of it through fact witness interviews and by consulting record evidence.  *See* Ex. 01 Dages Dep. 28:10-17 (describing that purpose of call with Robert Hildenbrand was "confirm[ing] [his] understanding" with "someone from the management team who was familiar" with the facts, so that the report "coincides with [management's] understanding of the way the process went")[10]; *compare* Ex. 04 ZUO_00327212 at ███████████████, *with supra* Part IV.B.2 ████████████████ ███.

**4.   ZUO_00448805 (FY20 Plan - Global Services - v3 Keystone Impact - March 11, 2019, 3_45 PM) & ZUO_00448806 (FY20 Plan - GS - v4 Keystone Impact + Re-FCST - May 19, 2019, 8_45 PM)**

These documents are business records created by Zuora's Finance team to define the annual financial plan for Zuora's Global Services segment.  These documents were used in the regular course of Zuora's business to update the Finance leadership team and the Go-to-Market team, as well as to provide inputs used by the Finance team to define Zuora's external guidance. Again, in relying on these documents, Mr. Dages took reasonable steps to verify that the information contained therein tied out to other record evidence reflecting Zuora's financial condition at the time.  *See* Dages Rep. Ex. 5 n.1 (noting that forecasted revenue amounts approximate to those labeled as forecast in Keystone Financial Impact Analysis, March 11, 2019 deck (Pls.' Mot. to Exclude Ex. 21 ZUO_00329887-99 at 893)[11]); Dages Rep. at Ex. 5 n.2 (tying FY 2020 forecast amounts out to FY'20 GS Plan Comparison, May 20, 2019 presentation (Ex. 08 ZUO_00407064-74 at 68)); *see also* Dages Rep. ¶ 55.

[10] Although Hildenbrand testified at his deposition that he was not involved in developing the actual guidance, *see* Pls.' Mot. to Exclude Ex. 13 Hildenbrand Dep. 242:10-14, Defendants can proffer that he did provide input to the Finance team that was used to define the guidance.

[11] This is also a document on which Plaintiffs' expert, Charles Lundelius, relies.  *See* MSJ Ex. 39 n.84; n.89.

### C.    Mr. Dages Was Not Required to Interview Additional Zuora Employees Regarding Zuora's Decision to Revise Its Guidance

Plaintiffs next question whether Mr. Dages sufficiently corroborated his findings through interviews with Zuora employees. *See* Pls.' Mot. to Exclude at 11–12. Mr. Dages interviewed two Zuora employees in connection with his forensic analysis—Robert Hildenbrand (Senior Vice President of Global Services) and Rachel Noel (Director of Revenue Accounting), both of whom provided clarifying and corroborating information for Mr. Dages's Report—and also consulted the transcripts of depositions of five senior Zuora witnesses.[12] Plaintiffs cite no case law in support of their criticism that more fact witness interviews were required. That is because, again, the case law does not impose such an obligation. As the Ninth Circuit recently explained, "Rule 702's 'sufficient facts or data' element requires foundation, not corroboration." *Elosu* v. *Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022).

As an expert conducting a forensic accounting analysis, Mr. Dages's opinions are based on his quantitative analysis of data contained in the various spreadsheets and public disclosures he reviewed. Thus, although Mr. Dages took the additional step of interviewing witnesses, his analysis did not require further corroboration through interviews with fact witnesses. *See Villalpando* v. *Exel Direct Inc.*, 2015 WL 1598663, at *3, 20 (N.D. Cal. Apr. 21, 2016) (Certified Public Accountant and Financial Forensics expert testified on damages, having "relied on documents produced by [defendant], deposition testimony, and [another] [e]xpert [r]eport"); *cf. S.E.C.* v. *Moshayedi*, 2013 WL 12129282, at *3 (C.D. Cal. 2013) ("Assessment of facts and measurement of those facts against a standard are a core part of a forensic expert's report."). In any case, as noted, Mr. Dages also reviewed the transcripts of depositions of five senior Zuora officials: that of Robert Hildenbrand (Senior Vice President of Global Services); Karthik Ramamoorthy (Vice President of Global Services); Tyler Sloat (Chief Financial Officer); Tien Tzuo (Chief Executive Officer); and Marc Diouane (President). Dages Rep. App'x B. These are

---

[12] It is of no moment that Mr. Dages could not recall Rachel Noel's name during his deposition testimony. As he testified, consulting his notes on this case would have provided him with the answer and Defendants can properly refresh Mr. Dages's recollection on this score in advance of trial.

entirely appropriate sources on which a forensic accounting expert may reasonably rely. *See Villalpando*, 2015 WL 1598663, at *3.

And again, Plaintiffs' criticisms are not a basis for excluding expert testimony. Rather, attacks on the purported need for corroborating evidence "go[] to the weight of the testimony and its credibility, not its admissibility," and can be the subject of cross examination at trial. *Alaska Rent-A-Car*, 738 F.3d at 970; *see also Frye* v. *Warden, San Quentin State Prison*, 2010 WL 3210767, at *3 (E.D. Cal. Aug. 10, 2010) (notion that expert "could, or should, have reviewed more data goes to the weight, [and] not the admissibility of his opinions.").

### D.    AICPA Guidelines Are Not Dispositive

Finally, Plaintiffs contend that Mr. Dages should be excluded because he failed to comply with the American Institute of Certified Public Accountants' ("AICPA") published standards requiring that he critically analyze the records and data underlying his report. *See* Pls.' Mot. to Exclude at 16. Plaintiffs misconstrue both the AICPA standards and the work Mr. Dages performed in preparing his report.

As an initial matter, Mr. Dages did follow the applicable AICPA standards. The AICPA guidelines are a four-page set of high-level principles. They note that accounting professionals "shall . . . [o]btain sufficient relevant data to afford a reasonable basis for conclusions." Pls.' Mot. to Exclude Ex. 19, ¶ 6. Plaintiffs incorrectly claim that Mr. Dages failed to meet this requirement because he failed to "critically analyze records Defendants' counsel provided to him." Pls.' Mot. to Exclude at 16. But as explained, Mr. Dages did in fact reconcile the data contained in the subject spreadsheets by comparing their contents to record evidence, observing that the relevant data reliably tied out. *See supra* Part IV.B. And in doing so, he made proper use of standard accounting techniques, as well as his specialized knowledge and experience in forensic analysis. Indeed, Plaintiffs' argument is belied by the fact that their proffered damages expert, Charles Lundelius, relies on much the same data as Mr. Dages. *See supra* Part IV.B.

In any event, Plaintiffs provide no support for the novel proposition that adherence to AICPA guidelines is required by Rule 702 or *Daubert*. Nor are Defendants aware of any such authority. The sole case cited by Plaintiffs, *Coffey* v. *Dowley Mfg., Inc.*, 187 F. Supp. 2d 958

(M.D. Tenn. 2002), *aff'd*, 89 F. App'x 927 (6th Cir. 2003), is inapposite both legally and factually. As a legal matter, the Middle District of Tennessee did not conclude or imply that the failure to comply with a piece of industry guidance mandated exclusion. The court merely cited to industry guidance as a factor supporting its conclusion that the expert's method was unreliable. *Id.* at 978. And as a factual matter, *Coffey* dealt with an engineering expert who was retained to analyze whether a product was defective. *Id.* at 962. The expert failed to follow certain guidance within the engineering and materials industry because he only conducted a "theoretical" analysis rather than testing the product at issue. *Id.* at 976. The court observed that this was a clear breach of the generally accepted principles in that industry. *Id.* at 978. Thus, the expert was excluded because he chose "the wrong tool for the wrong job." *Id.* at 976. This is a far cry from Mr. Dages, who conducted a robust forensic accounting analysis that conformed with AICPA principles.

Even if Plaintiffs believe Mr. Dages should have relied on more or different data, such an argument is again not grounds for exclusion. *See United States for Use & Benefit of Bergelectric Corp.* v. *Sauer, Inc.*, 2020 WL 470273, at *2 (N.D. Cal. Jan. 29, 2020) ("District courts within and outside this district have often concluded that experts' decisions about what data to use in their analysis bear on the weight, not the admissibility, of expert testimony." (quotation and citation omitted)); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 124347, at *1 (N.D. Cal. Jan. 8, 2013) (Illston, J.) (same).

Ultimately, Mr. Dages's forensic accounting analysis rests on sufficient facts and data given the nature of the opinions rendered in this case, and Plaintiffs' arguments to the contrary should be rejected.

## V.   MR. DAGES'S OPINIONS ARE THE PROPER SUBJECT OF EXPERT TESTIMONY

Plaintiffs argue that Mr. Dages's testimony should be excluded because he merely summarized spreadsheets using no expert analysis or application of any generally accepted accounting principles. *See* Pls.' Mot. to Exclude at 16–19. This is false. Mr. Dages, conducting his forensic accounting analysis, did not simply determine the meaning of facts and documents

that speak for themselves: he conducted a comprehensive analysis to reconcile revenue forecast and sales data in order to disaggregate the two factors motivating Zuora's FY 2020 guidance reduction. Specifically, Mr. Dages dissected sales and financial spreadsheets in order to isolate the customers in Zuora's sales pipeline that might have been affected by the Keystone Integration Issues. Mr. Dages then calculated the total account values attributable to this subset of customers and the corresponding revenue impact. Finally, Mr. Dages compiled Global Services revenue estimates from disparate sources, conducted a complex series of calculations to reconcile the data, and then compared the data to Zuora's overall financial guidance. This analysis is a recognized scientific process under *Daubert* "where [experts] combine investigative and accounting skills." *United States* v. *Nixon*, 694 F.3d 623, 629 (6th Cir. 2012) (quotation omitted). And courts routinely recognize the crucial contributions that forensic accountants like Mr. Dages make, rejecting the contention that forensic accountants "merely read the documents and depositions" in a way that the jury is perfectly capable of doing. *Moshayedi*, 2013 WL 12129282, at *3; *see also JH Kelly, LLC* v. *AECOM Tech. Servs.*, 2022 WL 1817415, *3 (N.D. Cal. June 2, 2022) (rejecting argument that forensic analysis was not based on real accounting principles). Accordingly, Mr. Dages's opinions should be admitted to assist the jury at trial.

A.    **Mr. Dages's Opinions Will Be Helpful to the Jury and Will Not Usurp the Jury's Role**

"To be admissible, expert testimony must [] address an issue beyond the common knowledge of the average layman." *United States* v. *Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001); *see also* Fed. R. Evid. 702(a) (expert may testify when their "scientific, technical, or other specialized knowledge will help the trier of fact"). Mr. Dages's disaggregation analysis meets this threshold. This is because, while a juror could potentially read a line item on a spreadsheet, or a company's disclosures in press releases and earnings call transcripts, the relevant analysis at issue—how these documents can be reconciled and analyzed—does not fall within the ordinary lay juror's knowledge. *See Glam & Glits Nail Design, Inc.* v. *iGel Beauty, LLC*, 2022 WL 3012522, at *9 (C.D. Cal. June 24, 2022) (rejecting similar argument that "a CPA [who] rests his opinion on his review of financial evidence" should be excluded, because "[w]hile the general

concepts at issue may be understood by a lay jury, [his] expertise is relevant in identifying how certain financial records may show" disputed issues); *Moshayedi*, 2013 WL 12129282, at *3 (rejecting similar challenge against forensic accountant observing "[t]he world of corporate finance and securities disclosures is not within the knowledge of the typical lay juror").

Indeed, courts actively *encourage* the use of experts like Mr. Dages to assist the jury on this subject. *See In re Vivendi Univ.*, *S.A. Sec. Lit.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009) ("Sorting out which declines were caused by such extraneous factors and which were caused by a materialization of the concealed risk is generally the province of an expert."); *Turocy* v. *El Pollo Loco Holdings, Inc.*, 2018 WL 3343493, at *19 (C.D. Cal. July 3, 2018) (explaining that proving "loss causation is often highly contentious and complicated, necessitating expert testimony" (citation omitted )); *Hayes* v. *MagnaChip SemiConductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) (similar); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1015 (C.D. Cal. 2003) (noting need for expert analysis).

The case law cited by Plaintiffs is readily distinguishable, involving experts who proffered basic, unspecialized testimony. Plaintiffs' reliance on *Baker* v. *SeaWorld Entertainment, Inc.*, 423 F. Supp. 3d 878 (S.D. Cal. 2019) (cited in Pls.' Mot. to Exclude at 19), misses the mark because the court there *admitted* the expert testimony of financial analysts who conducted disaggregation analyses like Mr. Dages. There, the expert who was excluded for usurping the role of the jury was a political scientist whose "methodology consist[ed] of solely evaluating empirical research" including market research materials prepared for the board of directors. *Id.* at 911–13. In contrast, the testimony from financial analysts conducting disaggregation analyses were not excluded. *Id*. at 909, 917–18 (admitting plaintiffs' disaggregation expert and defendants' loss causation expert on similar grounds). The court reasoned that these experts, like Mr. Dages, "appl[ied] accepted methodologies in reaching [their] conclusions" and their testimony would be helpful to a jury. *Id*. at 909.

*Waymo LLC* v. *Uber Technologies, Inc.*, 2017 WL 6887043 (N.D. Cal. 2017) (cited in Pls.' Mot. to Exclude at 18), is similarly inapposite. There, the challenged expert conducted "grade-school arithmetic" that consisted of simply multiplying "a straightforward $20 million

figure," pulled from an internal document, by the number of months of development plaintiffs alleged defendants "saved" by appropriating trade secrets. *Id.* at *5–6. The expert was excluded after the court concluded that the expert brought "no specialized knowledge to the table [as] an inactive CPA and inactive lawyer," and because the jury could follow the arithmetic "on an easel." *Id.* That is not this case here, as Mr. Dages is an active, highly experienced CPA and forensic accountant, and his work is well beyond the capabilities of the ordinary juror. *See Spintouch Inc.* v. *Outform Inc.*, 2022 WL 17363902, at *5–6 (C.D. Cal. Sept. 28, 2022) (rejecting argument that testimony was "unreliable, unhelpful, and irrelevant," because expert's reliance on party's "spreadsheets [did] not negate the fact that he applied his own knowledge and experience").[13]

Any purely descriptive summaries in Mr. Dages's report are also properly included as necessary background to explain how he reached his conclusions. As the Ninth Circuit recently found, it is even proper for the vast majority of an expert's report to consist of factual background and the "supporting documents" necessary to inform the expert's conclusions. *Elosu*, 26 F.4th at 1027; *see also Cisco Sys. Inc.* v. *Arista Networks, Inc.*, 2016 WL 11752975, at *14 (N.D. Cal. Nov. 16, 2016) (distinguishing cases where an expert "merely act[s] as a historian" for the jury, from those where the expert "has applied [their] expertise" and finding the latter admissible (internal citation and quotations omitted)). Indeed, Federal Rule of Civil Procedure 26 expressly requires experts to include in their written report "a complete statement of . . . the basis and reasons" for their opinions, and "the facts or data considered . . . in forming them." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). The mere fact that Mr. Dages included the factual basis for his opinions—as he must—cannot render his testimony inadmissible.

---

[13] Plaintiffs' other cases only warrant brief mention. In *In re MTBE*, the excluded expert testimony merely regurgitated "the basic chronology and substance of [relevant] DEC and EPA enforcement actions." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 482, 499 (S.D.N.Y. 2009) (reasoning that not only are these documents capable of being understood by laypeople, but expert was "not an attorney" or "expert in regulatory enforcement," but a "well-qualified expert in hydrogeology"). In *In re Novatel*, the court excluded testimony of an expert who "quote[d] selectively from e-mails and prior sworn testimony," documents the court observed "are not complicated and speak for themselves." 2011 WL 5827198, at *4 (S.D. Cal. Nov. 17, 2011). Finally, the expert in *Fujifilm Corp.* v. *Motorola Mobility LLC* "simply rehash[ed] otherwise admissible evidence" to outline key dates in a relevant business relationship. 2015 WL 757575, at *26 (N.D. Cal. Feb. 20, 2015) (quotation marks and citations omitted).

**B.    Mr. Dages's Conclusions Are the Product of Reliable Principles and Methods**

Plaintiffs' argument that Mr. Dages's "conclusions are at best unsupported by, and at worst contradicted by, the evidence" flies in the face of hornbook evidence law. Pls.' Mot. to Exclude at 19. This is not the subject of a proper *Daubert* motion, where the focus is "solely on [an expert's] principles and methodology, *not the conclusions that they generate*." *Daubert*, 509 U.S. at 595 (emphasis added). Plaintiffs' argument fails for this reason alone, for it is the jury's role to "weigh[ ] the evidence" for and against an expert's conclusions. *Elosu*, 26 F.4th at 1027–28.

In any case, Plaintiffs' criticisms of Mr. Dages's conclusions are factually incorrect. For example, Plaintiffs contend that Mr. Dages "speculates" that Zuora management used a buffer of $3 million below its forecasted revenues when determining the revenue guidance it would disclose to the market, and that this figure represented a "buffer of 2.7 rounded to 3." Pls.' Mot. to Exclude at 20. This contention rests on a misreading of Mr. Dages's report and the underlying documents. Far from speculative, as Mr. Dages outlines in his report and testified at his deposition, Zuora spreadsheets reveal that the Company selected a buffer of $2.7 million, representing the difference between its forecasted subscription revenues ($205.7 million) and the midpoint of its anticipated public guidance ($203 million, representing the midpoint of $200 million and $206 million). Dages Rep. ¶ 44 & Exs. 3, 11; Ex. 01 Dages Dep. 199:23–204:11. This $2.7 million buffer is clearly reflected in the spreadsheet Mr. Dages reviewed at cell M46, and was derived both from the evidence and Mr. Dages's analysis, not speculation. *See* Ex. 04 ZUO_00327212, at "Sub Revenues" tab; *see also* Dages Rep. Ex. 3. As far as the ±$3 million guidance range disclosed by the company, that too is directly noted in the spreadsheet Mr. Dages reviewed, at cells M65 and N65. *See* Ex. 04 ZUO_00327212, at "Sub Revenues" tab; *see also* Dages Rep. Exs. 3, 11. This range was also the range reflected in the actual public guidance disclosed to the market on May 30, 2019. *See* MSJ Ex. 01 at 5.

Nor was it Mr. Dages's obligation to explain every purported discrepancy Plaintiffs attempt to glean from the record. For example, Plaintiffs make much of the fact that Mr. Dages was not able to answer why Zuora's revenue guidance range appears to have changed from $70-

to-$72 million on May 20, 2019, to $68-to-$72 million on May 30, 2019. Pls.' Mot. to Exclude at 20. Although Mr. Dages could not render an opinion on this issue, in seeking to investigate the issue, he encountered no information that undermined the contents of his report. *See* Dages Rep. ¶ 44 n.80. Weighing the merits of an expert's testimony or "fixat[ing]" on potentially contradictory evidence is not the proper inquiry at this stage. *Elosu*, 26 F.4th at 1027 (district court incorrectly "fixat[ed]" on adverse evidence "while simultaneously ignoring the evidence advanced on [expert's] behalf" (quotation omitted)). Otherwise, admissibility rulings would replace the "vigorous cross-examination" and "capabilities of the jury and the adversary system" that *Daubert* sought to preserve. *Daubert*, 509 U.S. at 596. Thus, any purported or actual gaps in the record at this stage are merely grounds for cross examination to be addressed at trial, and should not result in the exclusion of an expert opinion. *See Kennedy* v. *Collagen Corp.*, 161 F.3d 1227, 1230 (9th Cir. 1998) (concluding "the gap was of the district court's making" when it excluded "expert testimony simply because [it] disagree[d] with the conclusions of the expert").

Similarly, "the reasonableness of the assumptions underlying" Mr. Dages's report attacked by Plaintiffs are "a matter for jury consideration in weighing the evidence," not grounds of inadmissibility. *Humetrix, Inc.* v. *Gemplus S.C.A.*, 268 F.3d 910, 919 (9th Cir. 2001) (quotation and citations omitted). Indeed, Mr. Dages consulted additional evidence, including deposition transcripts, and determined that "the documents and data [he] reviewed [we]re consistent with the assumption that the Keystone Integration Issues affected, at most, only potential sales to [a small number of] RevPro and Billing cross-sell customers." Dages Rep. n.37. That evidence not only independently supports this assumption, but overwhelmingly supports it. *See, e.g.*, Dages Report ¶ 15 (noting only about 20 of over 950 customers used both products and collecting evidence); ███████████████ ; MSJ Ex. 12 at 11 (noting a "less than 10% overlap [between RevPro and Billing Customers."); Ex. 10 Diouane Dep. 273:15–274:11 (Keystone did not present a "meaningful sales headwind"). Given that Mr. Dages's assumptions have a basis in the record, they are admissible.

Plaintiffs further claim that Mr. Dages fails to account for certain qualitative information. Pls.' Mot. to Exclude at 24.  But even were this true—and it is not—it is not a grounds for exclusion.  Plaintiffs' reliance on *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund* v. *Royal Bank of Scotland Group, PLC*, 783 F.3d 383 (2d Cir. 2015) (cited in Pls.' Mot. to Exclude at 25), does not support this proposition.  This case addressed pleading standards on a motion to dismiss. *Id.* at 389–91.  Nowhere in *IBEW* does the Second Circuit opine on what information a defense expert must consider in a loss causation or damages analysis.  Indeed, other witnesses at trial—such as fact witnesses involved in Zuora's disclosure processes and management—will elaborate on the qualitative issues surrounding Mr. Dages's forensic analysis.  As Tzuo testified, after the May 30, 2019 disclosure, the market reacted to Zuora's guidance, and the "guid[ance] was primarily tied to the sales team."  MSJ Ex. 11 Tzuo Dep. 276:15–277:14; *see also infra* at 23.  At most, Plaintiffs' argument is a potential line of cross examination they could pursue, but it is not grounds for exclusion. *See, e.g.*, *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 967 (N.D. Cal. 2018) ("It traditionally falls upon cross-examination to negate the facts or factual assumptions underlying an expert's opinion.").

## VI.     MR. DAGES'S OPINIONS PROPERLY "FIT" THE CASE

Finally, Plaintiffs argue that Mr. Dages's opinions fail *Daubert*'s "fit" requirement.  *See* Pls.' Mot. to Exclude at 22–25.  But Mr. Dages's opinions bear obvious relevance here: he proffers the only evidence in the case that seeks to quantify the impact of the Keystone Integration Issues on Zuora's finances.  As explained in more detail in Defendants' Motion for Summary Judgment, this strikes at the heart of a prima facie element of Plaintiffs' case.  As such, Mr. Dages's opinions comfortably clear the low bar imposed by Rule 702, which demands "only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick*, 747 F.3d at 1196 (quoting *Daubert*, 43 F.3d at 1315).

### A.     Mr. Dages Offers Relevant Rebuttal Opinions That Directly Undermine a Prima Facia Element of Plaintiffs' Case

Plaintiffs' "fit" argument confuses Mr. Dages's opinions and their role in this case.

For example, Plaintiffs attack Mr. Dages's method of analyzing the change in Zuora's revenue guidance between March 21, 2019, and May 30, 2019, arguing that the change in guidance is not a relevant measure of their damages. Pls.' Mot. to Exclude at 23–24. When Zuora disclosed its revenue guidance on March 21, 2019, however, Zuora had already taken steps to account for the anticipated revenue impact of Keystone. *See* Dages Rep. ¶¶ 34–36 & Ex. 2. And because Plaintiffs allege that the corrective disclosure was the Company's decision to *lower* its FY 2020 guidance on May 30, 2019 (revised from the numbers previously announced on March 21, 2019), Mr. Dages's method properly analyzed what portion of the decline in guidance might be explained by Keystone.

Plaintiffs also criticize Mr. Dages for not determining what possible factors might explain the remaining 85% of the reduction in Zuora's FY 2020 revenue guidance. Plaintiffs imply that because Mr. Dages did not seek to explain the sources of the remaining 85%, he might have overlooked that some portion of this 85% was possibly affected by the Keystone Integration Issues. *See id.* Plaintiffs' criticism is based on a flawed premise. Mr. Dages reviewed the record evidence to determine the universe of deals in Zuora's sales pipeline that could have been affected by Keystone. *See* Dages Rep. ¶¶ 48–50, 55–59 & Exs. 5, 8. This universe formed the basis of his 15% estimate and the remainder was necessarily excluded as unrelated to the Keystone Integration Issues. *See id.* ¶¶ 60–61. What other factors might have impacted this remainder were irrelevant to Mr. Dages's analysis—which only sought to quantify the portion of the reduction in Zuora's revised guidance that could have been impacted by Keystone. Thus, although Mr. Dages did not analyze the effects of various other factors, in reaching his opinions he did exclude the remaining 85% as unrelated to Keystone.[14]

Mr. Dages's analysis and opinions are relevant and "fit" the case because it is *Plaintiffs'* burden to demonstrate that the purported fraud—rather than "other events"—caused their alleged

---

[14] Plaintiffs' citation to *Lloyd* v. *CVB Financial Corp.*, 811 F.3d 1200 (9th Cir. 2016), is misleading. Nowhere does the Ninth Circuit in *Lloyd* say that a *defendants'* expert witness must "offer competent testimony on what the 'other fact' was that caused Zuora's stock price decline." Pls.' Mot. to Exclude at 24. In fact, *Lloyd*—which dealt with a motion to dismiss, and did not address the proper ambit for expert testimony at all—stated that it is "the *Plaintiff*" who "must demonstrate that an economic loss was caused by the defendant's misrepresentations." *Id.* at 1209 (emphasis added).

losses. *Dura Pharms. Inc.* v. *Broudo*, 544 U.S. 336, 343 (2005); *see also Highfields Cap. I, LP*, 2022 WL 1037210, at *14 ("Because it is undisputed that the alleged Corrective Disclosure revealed various pieces of information, Plaintiffs will ultimately need to establish that the alleged fraud was nonetheless a substantial factor in the abnormal return on that date by apportioning or disaggregating the other market-known factors."). Failure to provide such evidence is fatal to Plaintiffs' claim. *See Nuveen Mun. High Income Opp. Fund* v. *City of Alameda, Cal.*, 730 F.3d 1111, 1123 (9th Cir. 2013) (cited in Pls.' Mot. to Exclude at 22); *In re Oracle Corp. Sec. Lit.*, 2009 WL 1709050, at *17 (N.D. Cal. June 19, 2009) (Illston, J.) (granting summary judgment for defendants where "plaintiffs have not identified evidence that could lead a juror to conclude that defendants' alleged misrepresentations about [the product at issue, rather than an earnings miss] were a 'substantial cause' of the decline in value of Oracle's stock"), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Plaintiffs' criticisms merely underscore deficiencies in their prima facie case.

Moreover, Plaintiffs continue to ignore overwhelming evidence that sales execution issues unrelated to Keystone contributed to Zuora's decision to revise its guidance, and thus its stock drop. *See, e.g.*, MSJ Ex. 30 ZUO_00001166 at -176 ████████████████ ████████████████████ ; *id.* ████████████ ████████████████████████ ████████████████ ; *id.* at -177 ████████████ ████████████████ ████████████████████ ; MSJ Ex. 33 ZUO_00004218 at -218 ████████████ ████████████████ ██████████████ ; Ex. 10 Diouane Dep. 138:4–139:4, 147:2-4 (explaining the guidance reduction was significantly impacted by one failed deal, to sell the Billing product to ██ , which was not "related to Keystone").

Given that Zuora reduced its guidance for multiple reasons, Mr. Dages's opinions help rebut Plaintiffs' loss causation theory by quantifying the portion of the guidance reduction

potentially attributable to the Keystone Integration Issues.  This will be helpful for the jury as it determines what percentage, if any, of the stock drop on May 31, 2019, was attributable to the alleged fraud.  Mr. Dages's testimony—which again can provide the jury with the only expert testimony in the case regarding the disaggregation of the fraud and non-fraud-related causes of Zuora's stock drop—is thus relevant to rebutting a prima facie element of Plaintiffs' case.

**B.      Mr. Dages's Opinions Are Consistent with the Law on Damages**

Plaintiffs further argue that Mr. Dages's opinions must be excluded because his "use[ of] internal Zuora documents that were not available to market participants" is somehow fundamentally in tension with the standards governing damages in a securities disclosure case. Pls.' Mot. to Exclude at 24.  But courts routinely permit experts conducting a disaggregation analysis, like Mr. Dages, to rely on internal company information and documents.  *See Highfields Cap. I, LP*, 2022 WL 1037210, *15 (affirming expert's analysis of issuer's internal, nonpublic park attendance data to disaggregate fraud and non-fraud related reasons for stock drop); *Baker*, 423 F. Supp. 3d at 904–06 (same and collecting cases); *In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 413 (D. Conn. 2010) (finding the expert's disaggregation analysis proper where he considered both public statements and an internal document).  Indeed, Plaintiffs' argument—relying on *In re Oracle Corp. Securities Litigation*, 627 F.3d 376 (9th Cir. 2010)—has been specifically rejected by federal courts in California on multiple occasions.

The decision in *Baker* v. *Seaworld*, is particularly instructive.  In *Baker*, the expert attempted to disaggregate fraud and non-fraud-related causes of a stock drop by reviewing non-public park attendance data and "internal company documents" to better understand the underlying factors affecting the company's business during the relevant time.  423 F. Supp. 3d at 904–05.  The opposing party made much the same argument Plaintiffs do here.  *Id.*  The court squarely rejected the argument, finding that the "use of internal information, as one factor in [the expert's] analysis, [did] not justify exclusion of his testimony."  *Id.* at 906.  The court further concluded that the challenging party's arguments that the expert should have considered other factors or interpreted the evidence differently were not proper grounds for exclusion.  *Id.* at 905–06.  This reasoning was reiterated and endorsed in *Highfields Capital I, LP*.

Like the defendants in *Baker* and *Highfields Capital*, Plaintiffs' reliance on *In re Oracle Corp. Securities Litigation*, is misguided. *Compare* Pls.' Mot. to Exclude at 24 (citing *Oracle*), *with Highfields Capital I, LP*, 2022 WL 1037210, \*15 (noting that argument was "red herring" and "*Oracle* case is inapposite"), *and Baker*, 423 F. Supp. 3d at 905 n.12 ("Defendant' reliance on [*Oracle*] is misplaced."). Nowhere in *Oracle* did the Ninth Circuit state that experts may not rely on internal documents when conducting a disaggregation analysis. Instead, as the court in *Highfields Capital* explained in detail, *Oracle* concerned an expert's reliance "on one internal email to say that the contents of that email caused the price drop," to which "[t]he Ninth Circuit stated that the internal email [was] not evidence of what the market learned." 2022 WL 1037210, \*15. However, *Highfields Capital* draws a clear distinction between an expert's use of internal company information not available to the market to prove loss causation generally—which *Oracle* did not permit—and an expert's use of internal data to "disentangle" disclosed fraud and non-fraud-related reasons for a company's stock drop as part of a disaggregation analysis—which is permitted. *Id.* Specifically, the court concluded that "unlike in *Oracle*, which involved the first step in the loss causation analysis—identifying the factors that impacted the abnormal return—here, [the expert's] use of non-public information is within the final step: disaggregating the known factors." *Id.* This is precisely the analysis Mr. Dages conducted: analyzing internal Zuora data to disaggregate the two factors (sales execution issues and Keystone Integration Issues) disclosed to the market on May 30, 2019.

## VII.    CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to exclude the expert testimony of Kevin Dages and any testimony or evidence relying thereon.

Dated:    January 27, 2023

By:    */s/ Melinda Haag*
Melinda Haag

*Attorneys for Defendants Zuora, Inc., Tien Tzuo and Tyler Sloat*