# EXHIBIT 10

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

**Page 1**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CASEY ROBERTS,                )
Individually and On    ) Case No. 3:19-cv-03422-SI
Behalf Of All Other    )
Similarly Situated,      )
                        )
             Plaintiff,  )
                        )
     vs.                )
                        )
ZUORA, INC., TIEN TZUO,)
and TYLER SLOAT,        )
                        )
             Defendants. )
_____)

REMOTE DEPOSITION OF MARC DIOUANE

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

(Via Zoom Videoconference)

Thursday, May 5, 2022

REPORTED BY:  Michelle Milan Fulmer
              CSR No. 6942, RPR, CRR, CRC

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CASEY ROBERTS,               )
Individually and On     ) Case No. 3:19-cv-03422-SI
Behalf Of All Other     )
Similarly Situated,     )
                        )
          Plaintiff,  )
                        )
   vs.                  )
                        )
ZUORA, INC., TIEN TZUO,)
and TYLER SLOAT,        )
                        )
          Defendants. )
_____)

Remote deposition of MARC DIOUANE, taken before Michelle Milan Fulmer, a Certified Shorthand Reporter for the State of California, with principal office in the County of Orange, commencing at 9:05 a.m., Thursday, May 5, 2022.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 137

know how you said it.  I don't know how can you draw

that conclusion.

So can you please be more specific there?

BY MR. SHAEFFER:

Q    I can't really be more -- I don't mean to    12:52:02

be more specific.

It's a direct question relating to by the

time of the results of the Q1 fiscal year '20, your

testimony is that there was not a systemic breakdown

of Zuora's sales process and methodology; is that    12:52:21

right?

MS. MUCK:  Object to form.

THE WITNESS:  I didn't say that.

We had a booking miss in Q1.  This is what

I said I agree with.  Now try to tell you where it's    12:52:34

coming from, first of all, it was four years ago and

it's not -- I cannot point to a specific situation.

BY MR. SHAEFFER:

Q    This is a yes-or-no question.

You do not agree with the conclusion that    12:52:54

there was a systemic breakdown in Zuora's sales

process and methodology by the end of the first

quarter of fiscal year 2020?

A    I don't -- you know, I don't understand

where you want to go because to be able to provide    12:53:12

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 138

you and formulate like, you know, an answer, I need to understand where you want to go, what do you mean by this.

We had a miss, yes, one deal in the accounts that has led the company to revise the output.  Correct.    12:53:27

BY MR. SHAEFFER:

Q    So there was one miss in fiscal year -- Q1 fiscal year 2020; is that correct?

A    I'm saying one deal.  This is what I recall.  One big deal and, once again, nothing related to Keystone.  Nothing.  It's Zuora Billing as far as I remember, yes.    12:53:44

Q    So the fact that Zuora missed on one deal in the first quarter of fiscal year 2020, that doesn't mean there was a systemic breakdown in Zuora's sales process and methodology.  Is that your testimony?    12:54:03

MS. MUCK:  Object to form.

THE WITNESS:  I'm saying here that we are trying to make it to, more or less, so many thing.  Sales process methodology to missing one quarter to revising the other.    12:54:16

I'm saying here, yes, the facts are the facts.  We had a miss in the booking that has led    12:54:32

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 139

the company to revise the output for the entire year

and that miss was, as far as I remember, not related

to Keystone, RevPro.  It was mainly around the --

the largest miss was mainly around Zuora Billing.

BY MR. SHAEFFER:                                    12:55:06

    Q    Do you agree with the conclusion that Zuora

missing its billing goal in the fis- -- in the first

quarter of fiscal year 2020 was a reflection of

problems in Zuora's sales organization, Zuora's

sales process, and its methodology?                 12:55:32

    A    No.  I would say no.  Remember, we are

talking about booking here.  The company disclosed

only the revenue.  The company doesn't disclose the

booking.

    Q    By the close of the first quarter of fiscal  12:55:53

year 2020, isn't it true that Zuora had a flawed

process for hiring its ZBRs?

        MS. MUCK:  Object to form.

        THE WITNESS:  I don't know what you are

referring to, once again, here.                     12:56:09

        So if -- if we had the flaw, it had been

there forever.  So why Q1 versus Q4 '17 or Q4 '16?

So I don't understand the correlation there.

BY MR. SHAEFFER:

    Q    So you don't agree with the conclusion      12:56:23

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 140

that -- that there was a flawed process for hiring

Zuora's ZBRs?

MS. MUCK:  Object to form.

THE WITNESS:  I don't.  Once again, the

context is very, very important.  The context is          12:56:43

very important in this situation.

BY MR. SHAEFFER:

Q    So what context am I missing that would --

that would help you answer this question?

A    The context is where this is coming from,          12:56:55

when it has been said or written or -- very

important for me to understand the context.

Q    But you -- it's fair to say that your

previous testimony was -- strike that.

By the time you left Zuora, did you believe          12:57:28

that there was a flawed process for hiring ZBRs?

MS. MUCK:  Object to form.

THE WITNESS:  I don't recall that.  I don't

recall that.

BY MR. SHAEFFER:                                          12:57:43

Q    Okay.  So you -- your testimony is you

don't recall, one way or the other, whether there --

by the time you left, whether Zuora had a flawed

process for hiring its ZBRs?

A    I don't recall that we had a bad process of          12:57:58

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 146

THE WITNESS:  I'm saying here that, as far as I recall, we had a big deal and that big deal didn't happen and this is what has -- hits the booking targets and the miss on the booking targets.

BY MR. SHAEFFER:                                    01:05:07

Q    So you do not attribute that one missed deal to inexperienced sales reps led by inexperienced managers; is that right?

A    I'm saying here that it's things that happen.  So like it's very difficult to control a    01:05:21 long sales cycle.  You never know what could happen in the middle.  So that's what I'm saying.  It happens.  It happened to Zuora, it happened to me before Zuora, and it will likely happen in other companies.  It happens to a lot of people and this    01:05:36 is what I meant.

Q    But I'm asking a very kind of specific question.

You're not attributing that one missed deal to an inexperienced sales rep; is that right?    01:05:46

MS. MUCK:  Object to form.

THE WITNESS:  I don't -- I don't recall the team or the people in charge of that deal exactly.  So I don't recall that.

///                                                01:06:11

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 147

BY MR. SHAEFFER:

Q    Do you know what customer that deal -- what customer was involved in that missed deal?

████████████████████████████████████

MR. SHAEFFER:  You know, I think we're at a   01:06:27
good stopping point.  So we can go off the record.

THE VIDEOGRAPHER:  Going off the record.
The time is 1:06 p.m.

(Recess taken.)

(Off the record at 1:06 p.m.  Back on the   01:06:42
record at 2:00 p.m.)

THE VIDEOGRAPHER:  We are back on the
record.  The time is 2:00 p.m.

BY MR. SHAEFFER:

Q    Welcome back, Mr. Diouane.   02:00:16

You understand that you're still under oath?

A    Yes, I do.

Q    Okay.  You have a personal Twitter account;
is that right?   02:00:28

A    It's correct.  That I haven't used for a long, long time, yeah.

Q    Is your handle @marcdiouane?

A    It's correct.

Q    And do you follow the Twitter handle of   02:00:40

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 148

Zuora?

A    I'm a follower, but I haven't used Twitter for a long, long time.  So yeah.

Q    You're a follower of Zuora?

A    I am, yes.  Uh-huh.                                                  02:00:49

Q    Okay.  Are you a follower of Mr. Tzuo?

A    I might actually, but it's Zuora.  I might, yeah.

Q    Okay.  Do you recall using Twitter during the period of April -- April 2018 through May 2019?    02:01:04

A    I will say usually, if I'm back to Zuora, we use social media to, you know, somehow communicate or bridge with some important message from the marketing or from the customer, yes. Correct.                                                               02:01:28

Q    So is Twitter a --

        Would you consider Twitter a cost-effective way of engaging with Zuora's customer base?

        MS. MUCK:  Object to form.

        THE WITNESS:  I would say not at all at    02:01:54 Zuora, no.

BY MR. SHAEFFER:

Q    It's not?

A    It's not.  It's not cost -- it's not the best media to communicate for the customer for sure.    02:02:04

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 272

represents a severe risk not only to the RevPro

product line, but to Zuora's overall business.  You

don't agree with that statement; right?

          MS. MUCK:  Object to form.

          THE WITNESS:  What I said here is we are          05:43:58

talking about Zuora RevPro, and from a business

standpoint, at least bookings standpoint, what I'm

responsible for, this situation and what's clearly

stated here has been identified earlier and has been

a part of many risk upside and challenges that the          05:44:17

organization has to face to.

BY MR. SHAEFFER:

     Q    So you were -- so you were in charge of the

Zuora Billing; is that right?

     A    In terms of what?          05:44:37

     Q    At this time in February of 2019.

     A    In February 2019, I was responsible for

everything from the sales standpoint.

     Q    Okay.  So if you want to go back up to the

Zuora Billing portion that we discussed, there          05:44:52

          Do you see that?          05:45:15

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 273

A    I can see it, yes.

Q    And do you see that one of the points that

Do you see that?

A    I see that, yeah.

Q    And you see the last bullet point in this

Do you see that?

A    I see it.  I see it, yeah.

Q    So Keystone presented a meaningful sales    05:45:48
headwind that the field needed to overcome?

MS. MUCK:  Is that a question?

MR. SHAEFFER:  Yes.

Q    Is that right?

A    Once again, the context is really, really    05:46:08
important.

We are talking about the board meeting,
first board meeting for a new fiscal year where you
are trying to bring everyone up to speed about what
had happened last year, where we are at, problem,    05:46:19

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 274

challenges, upside, as I said before, and formulate

it here.

I didn't, as you know, write this document

and I am just trying to do my best here to tell you

what I think about what they are trying to say here.    05:46:36

So for me it's not correct.

Q    So your testimony is that as of

February 28th, 2019, Keystone did not -- Keystone

was not a meaningful sales headwind that your sales

organization needed to overcome?                        05:46:58

A    Correct.

Q    Okay.  Did you review this document at all

before it was presented to the board of directors?

A    Usually we are reading the document before

the board meeting when Tien and Tyler are putting      05:47:11

the document together, yeah.  Usually the C-staff

and me, being invited to the board only for the

business portion, I have access to the document.

Q    So even if you had access to this document

before it was given to the board of directors, you     05:47:33

didn't make any effort to change this statement

about the meaningful sales headwind; is that right?

MS. MUCK:  Object to form.

THE WITNESS:  Not correct.  I'm saying

that.                                                   05:47:46

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 275

MR. SHAEFFER:  Okay.  I'd like to go off the record.

THE VIDEOGRAPHER:  Are all counsel in agreement?

MS. MUCK:  Of course.                          05:48:00

THE VIDEOGRAPHER:  We're going off the record.  The time is 5:48 p.m.

(Recess taken.)

(Off the record at 5:48 p.m.  Back on the record at 6:02 p.m.)                        06:02:45

THE VIDEOGRAPHER:  We are back on the record.  The time is 6:02 p.m.

BY MR. SHAEFFER:

Q    Mr. Diouane, do you understand that you're still under oath?                             06:02:56

A    Yes, I do.

Q    Okay.  I have already uploaded what's been marked as Exhibit Number 236 to your deposition.

Do you want to open up that?

A    236.  Okay.                                06:03:12

Q    Yes.

A    Yeah.  I can see it.

Q    Okay.  This is an email that you sent on March 11th, 2019, to Tyler Sloat and Tien Tzuo.

Do you see that?                           06:03:35