# EXHIBIT 51

## [REDACTED VERSION]

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CASEY ROBERTS,                )
Individually and On      ) Case No. 3:19-cv-03422-SI
Behalf Of All Other       )
Similarly Situated,       )
                          )
          Plaintiff,      )
                          )
     vs.                  )
                          )
ZUORA, INC., TIEN TZUO,)
and TYLER SLOAT,          )
                          )
          Defendants. )
_____)

REMOTE DEPOSITION OF ▮▮▮▮▮▮▮▮▮▮

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

(Via Zoom Videoconference)

Wednesday, May 11, 2022

REPORTED BY:  Michelle Milan Fulmer

CSR No. 6942, RPR, CRR, CRC

Page 1

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

A   No, I don't.

Q   So do you remember --
How do you remember specifically that it was five other customers?

A   That was purely a guess.   10:40:15

Q   Okay.  So you don't remember which customers were upset?

A   Huh-uh.

Q   And for --

A   No.   10:40:26

Q   Sorry.

A   I was just saying no instead of huh-uh.

Q   Got it.
And so for the customers that you sort of were guessing about here, you know they were upset   10:40:37   or you believed they were upset just based on what the person sitting next to you had said?

A   Just overhearing.  He was a very quiet, not a talkative person.  Yeah.

Q   Okay.   10:40:56

A   Just overhearing.

Q   And you were overhearing sort of what he was saying to customers?

A   Just t███████r to our boss.

Q   Okay.  You never spoke to anyone, you never   10:41:04

Page 74

spoke to any customer that was upset about a delayed integration?

A   That's correct.

Q   Okay.  And it says here that they were major Zuora customers.   10:41:18
What does that mean?

A   They spent a lot of money.

Q   Okay.  Is that how you determined they were major customers?

A   Yeah.  Major.  That's not an official name,   10:41:28   major, but they were --

Q   Yeah.

A   They were big customers.

Q   Okay.  So they spent more money than other customers?   10:41:39

A   Yes.

Q   Did anyone sort of tell you at Zuora that they were spending more money than the other customers?

A   No.  Just knew.   10:41:47

Q   How did you know?

A   Just looking at our internal systems.

Q   What internal system was that?

A   We had Salesforce and we had a -- like an internal system that could see how much billing   10:42:06

Page 75

volume people were processing.

Q   Okay.  So you remember they were major customers, but you don't remember which customers they were?

A   I do not.   10:42:21

Q   Okay.  And you were guessing that it was about five customers here?

A   It could be less.

Q   Okay.

A   Yeah.  But I would say five or less.   10:42:33

Q   Okay.  Five or less.
So in that next line it says that you said, "each of these customers were material to Zuora's financial health - they were some of the company's biggest customers."   10:42:49
Do you remember telling that to plaintiffs?

A   No, because that doesn't sound like my vernacular.  But, I mean, in some sense of that, yeah, they were -- they were important customers.

Q   Okay.  So do you remember telling the   10:43:08   person you spoke to that they were material?

A   I did not use that -- I don't know.  I really don't.  But I probably indicated that they were important to the health of Zuora.

Q   Got it.   10:43:27

Page 76

Do you know what would be meant here by the word "material"?

A   Important.

Q   Okay.  And how did you determine that these customers were important to Zuora's financial   10:43:40   health?

A   Again, that they spent a lot of money and they were big, big names.

Q   Okay.  But no one ever told you they were material?   10:43:55

A   No.

Q   And to be clear, you don't know what percentage of customers this represented for Zuora?

A   No, but probably very small.

Q   Okay.  And you didn't help prepare any   10:44:06   financial forecasts for Zuora?

A   No.

Q   Okay.  And just to be clear, you only worked for Zuora for about a year; right?

A   Yes.   10:44:24

Q   Okay.  So let's move to Paragraph 106 here.  That's on Line 15.

Q   Did you tell plaintiffs that "the lack of an integration solution and the fact that customers were unhappy that their products did not work   10:44:45

Page 77

20 (Pages 74 - 77)

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

together came up in meetings all the time"?

A  Probably something along those lines.

Q  Okay.  And was that in that same sort of five-minute phone call you had?

A  That -- yeah.  When I said that, yeah, that would have been in that call.

Q  Got it.

And do you see at the end of that line it's showing, again, as a direct quotation from you?

A  "Came up in team meetings all the time"?

Q  Yeah.

A  Yeah.

Q  Is that quotation accurate, to your understanding?

A  Yeah.  I mean, the guy who managed these customers ███ ould bring it up in meetings.

Q  He would bring what up?

A  That customers wanted the integration finished.

Q  Got it.

Were these customers who were using, to your understanding, Keystone?

A  They had both Billing and RevPro.

Q  But did they have Keystone or any sort of implementation of Keystone?

Page 78

MR. GILMORE:  Object to form.

THE WITNESS:  I don't know.  Maybe they got early access to something.  Again, these weren't my customers.  I don't -- I didn't really know what was going on.  I could just hear, you know, my coworkers here.

BY MS. MIZZI:

Q  Okay.

A  Yeah.

Q  Are you aware of any customers that you had that sort of were using Keystone or that were implementing Keystone?

A  Huh-uh.  No.

Q  Okay.  And how often were these team meetings?

A  These would be once a week, our forecast meetings.

Q  Okay.  And did these meetings run the entire time that you were at Zuora?

A  Yes.

Q  Okay.  Who attended these meetings?

A  Our team, the customer account executive team.

Q  So that would have been sort of the other customer account executives and who else?

Page 79

A  Our boss ██████████

Q  Okay.  Anyone else?

A  No.

Q  No?

A  No, no one else.

Q  Okay.  And about how long were these meetings?

A  30 minutes to an hour.

Q  Got it.

And who spoke at these meetings?

A  Everyone had to give an update.

Q  Got it.

Were these sort of a couple-minute sort of spoken updates, they sort of went around the room, or were these like --

A  Yes.

Q  -- presentations?

A  Just we would talk for like 15 to 30 seconds at a time.

Q  Okay.  And do you know what customers it's talking about here or you were talking about here --

A  No.

Q  -- that were unhappy?

A  I do not.

Q  So you wouldn't be able to give me any

Page 80

examples of customers that were unhappy about this?

A  No.

Q  Okay.  In this same paragraph in the next sentence, it says that you and your colleagues would inform your supervising vice presidents of particular customers who were unhappy and needed a workable integration for Zuora Billing and RevPro.

Do you see that?

A  Yeah.  Yes, I do.

Q  Do you know what particular customers, again, who were unhappy?

A  No.  I don't know the customers.

Q  Do you remember ever informing your supervisors of particular customers that were unhappy?

A  No.  That would -- I never did.

Q  Okay.  Did you have any customers that were unhappy about sort of the lack of solution there?

A  No.

Q  Okay.  Are you aware if any of your coworkers ever told your vice presidents about particular customers?

A  Yes.

Q  Do you know what particular customers were discussed with those vice presidents?

Page 81

21 (Pages 78 - 81)

Veritext Legal Solutions
866 299-5127

CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

***

I ███████████ o solemnly declare under penalty of perjury that the foregoing is my deposition under oath; that these are the questions asked of me and my answers thereto; that I have read same and have made the necessary corrections, additions, or changes to my answers that I deem necessary.

In witness thereof, I hereby subscribe my name this day of _____, 2022.

_____
WITNESS SIGNATURE

Page 142

CERTIFICATION OF COURT REPORTER
FEDERAL JURAT

I, the undersigned, a Certified Shorthand Reporter of the State of California do hereby certify:

That the foregoing proceedings were taken before me at the time and place herein set forth; that any witnesses in the foregoing proceedings, prior to testifying, were placed under oath; that a verbatim record of the proceedings was made by me using machine shorthand which was thereafter transcribed under my direction; further, that the foregoing is an accurate transcription thereof; that before completion of the deposition, a review of the transcript [ ] was [X] was not requested.

I further certify that I am neither financially interested in the action nor a relative or employee of any attorney of any of the parties.

IN WITNESS WHEREOF, I have this date subscribed my name:  Date: May 25, 2022.



Michelle Milan Fulmer
CSR 6942, RPR, CRR, CRC

Page 143

ANNA MIZZI, ESQ.

anna.mizzi@wilmerhale.com

May 25, 2022

RE: ROBERTS VS. ZUORA, INC.

MAY 11, 2022, ███████ JOB NO. 5210092

The above-referenced transcript has been completed by Veritext Legal Solutions and review of the transcript is being handled as follows:

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Contact Veritext to schedule a time to review the original transcript at a Veritext office.

__ Per CA State Code (CCP 2025.520 (a)-(e)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, notating the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Code of Civil Procedure.

__ Waiving the CA Code of Civil Procedure per Stipulation of Counsel - Original transcript to be released for signature as determined at the deposition.

__ Signature Waived – Reading & Signature was waived at the time of the deposition.

Page 144

__ Federal R&S Requested (FRCP 30(e)(1)(B)) – Locked .PDF Transcript - The witness should review the transcript and make any necessary corrections on the errata pages included below, notating the page and line number of the corrections. The witness should then sign and date the errata and penalty of perjury pages and return the completed pages to all appearing counsel within the period of time determined at the deposition or provided by the Federal Rules.

_X_ Federal R&S Not Requested - Reading & Signature was not requested before the completion of the deposition.

Page 145

37 (Pages 142 - 145)