# Exhibit A

Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | No. 3:19-cv-03422-SI<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF STEVEN DAVIDOFF SOLOMON**<br><br>Judge:      Hon. Susan Illston<br>Hearing Date:  March 3, 2023<br>Hearing Time:  10:00 a.m.<br>Dept:       Courtroom 1, 17th Floor |

**[FILED UNDER SEAL]**

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED ...................................................................................1

I.      INTRODUCTION ..................................................................................................................1

II.     ARGUMENT .........................................................................................................................2

        A.      Expert testimony concerning Zuora's disclosure process is not relevant....................2

                1.      Plaintiffs' case does not depend on the adequacy of Zuora's disclosure process. ..................................................................................................................2

                2.      Professor Solomon does not identify an "industry standard" that can be meaningfully applied to evaluate Defendants' scienter.................................3

                3.      Professor Solomon's opinion comparing Zuora's disclosure process to the processes of all middle-market capitalization companies is not relevant to scienter because he provides no "industry standard," customs, or practices. .............................................................................................4

        B.      Professor Solomon's report and proposed expert testimony are unreliable. ..............6

        C.      Professor Solomon provides an impermissible factual narrative that goes beyond the background of the case and foundation for his opinions. .........................9

        D.      Professor Solomon improperly invades the realm of the jury by reaching conclusions on Defendants' scienter. .......................................................................12

        E.      Professor Solomon's report and proposed expert testimony address factual issues reserved for the jury. ........................................................................................14

                1.      The jury can reach conclusions concerning Defendants' statements, Zuora's Twitter account, and analyst reactions to Defendants' May 30, 2019 disclosure..................................................................................................14

                2.      Professor Solomon's opinion comparing Zuora to other middle-market capitalization companies usurps the role of the fact-finder..........................15

III.    CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Ampal-Am. Israel Corp.*,
  2020 WL 2529337 (Bankr. S.D.N.Y May 14, 2020) ...................................................... 6, 11

*Arjangrad v. JPMorgan Chase Bank, N.A.*,
  2012 WL 1890372 (D. Or. May 23, 2012) ........................................................................ 7

*Base v. FCA US LLC*,
  2019 WL 1117532 (N.D. Cal. Mar. 11, 2019) .................................................................. 7

*Beede v. Stiefel Lab'y, Inc.*,
  2016 WL 916418 (N.D.N.Y. Mar. 7, 2016) ...................................................................... 6

*Berckeley Inv. Grp., Ltd. v. Colkitt*,
  455 F.3d 195 (3d Cir. 2006) ............................................................................................ 5

*Biotechnology Value Fund, L.P. v. Celera Corp.*,
  2015 WL 138168 (N.D. Cal. Jan. 9, 2015) ................................................................. 10, 13

*ClearOne, Inc. v. PathPartner Tech., Inc.*,
  2022 WL 1063733 (D. Utah. Apr. 8, 2022) ................................................................... 12

*In re Columbia Pipeline Grp., Inc. Merger Litig.*,
  2022 WL 2902769 (Del. Ch. July 14, 2022) .................................................................... 5

*ECD Inv. Grp. v. Credit Suisse Int'l*,
  2017 WL 3841872 (S.D.N.Y. Sept. 1, 2017) .................................................................... 5

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ........................................................................................ 11

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ......................................................................................... 8

*Fujifilm v. Motorola Mobility, LLC*,
  2015 WL 757575 (N.D. Cal. Feb. 20, 2015) ................................................................ 9, 11

*Highland Cap. Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005) ........................................................................... 12

*In re Homestore.com*,
  2011 WL 291176 (C.D. Cal. Jan 25, 2011) ..................................................................... 5

*Hsingching Hsu v. Puma Biotechnology, Inc.*,
  2018 WL 4956520 (C.D. Cal. Oct. 5, 2018) ................................................................. 5, 8

*Jinro Am. Inc. v. Secure Invs. Inc.*,
   266 F.3d 993 (9th Cir. 2001) ..................................................................................................9

*Krys v. Aaron*,
   112 F. Supp. 3d 181 (D.N.J. 2015).........................................................................................5

*Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*,
   2011 WL 290986 (S.D. Cal. Jan. 27, 2011) ...........................................................................7

*Oracle Am., Inc. v. Hewlett Packard Enter. Co.*,
   2018 WL 6511146 (N.D. Cal. Dec. 11, 2018) ...............................................................14, 15

*In re Pac. Steel Casting Co. LLC*,
   2022 WL 3330422 (N.D. Cal. Aug. 11, 2022) ........................................................................7

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010) ....................................................................................9

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) ....................................................................................5

*S.E.C. v. BankAtlantic Bancorp., Inc.*,
   2013 WL 12009694 (S.D. Fla. Nov. 14, 2013) .......................................................................6

*S.E.C. v. Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) ..........................................................................................4, 15

*S.E.C. v. Frost*,
   2021 WL 6103551 (C.D. Cal. Nov. 15, 2021) ........................................................................5

*S.E.C. v. Goldsworthy*,
   2008 WL 2943398 (D. Mass. Jan. 3, 2008)............................................................................6

*S.E.C. v. Johnson*,
   525 F. Supp. 2d 70 (D.D.C. 2007).......................................................................................12

*S.E.C. v. Mudd*,
   2016 WL 2593980 (S.D.N.Y. May 4, 2016) ..........................................................................2

*S.E.C. v. Quan*,
   2013 WL 5566252 (D. Minn. Oct. 8, 2013) .........................................................................12

*S.E.C. v. U.S. Env't, Inc.*,
   2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002)....................................................................5, 9

*Siqueiros v. Gen. Motors LLC*,
   2022 WL 74182 (N.D. Cal. Jan. 7, 2022).........................................................................7, 14

*Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*,
   927 F. Supp. 2d 1069 (D. Or. 2013) ......................................................................................9

*In re Twitter Inc. Sec. Litig.*,
　　2020 WL 9073168 (N.D. Cal. Apr. 20, 2020)...................................................................13, 15

*In re Twitter, Inc. Sec. Litig.*,
　　2021 WL 4168451 (N.D. Cal. Sept. 11, 2021)....................................................................6, 13

*U.S. v. Schiff*,
　　538 F. Supp. 2d 818 (D.N.J. 2008)..........................................................................................9

*Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*,
　　2012 WL 243308 (N.D. Cal. Jan. 25, 2012)...........................................................................14

*Vernazza v. S.E.C.*,
　　327 F.3d 851 (9th Cir. 2003) ...................................................................................................4

*Whalen v. CSX Trans., Inc.*,
　　2016 WL 5723877 (S.D.N.Y. Sept. 29, 2016) ...................................................................11, 12

### OTHER AUTHORITIES

Steven M. Davidoff & Claire A. Hill, *Limits of Disclosure*, 36 SEATTLE U. L. REV.
　　599, 605-623 (2013) ................................................................................................................8

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should exclude Professor Steven Davidoff Solomon's report and proposed expert testimony.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Professor Solomon's report and proposed testimony do not meet the requirements of Rules 403 and 702. Zuora's disclosure process is not at issue and has zero relevance to whether Defendants committed fraud. In addition, Professor Solomon's purported "industry standard"—where all middle-market capitalization companies have disclosure processes to comply with SEC rules and prepare voluntary disclosures—is too general and vague to be useful in a jury's evaluation of the actual disclosure issues in this case and Defendants' scienter. For example, reference to this general standard will not aid the jury to evaluate the scienter of Tien Tzuo when he told his executive team in January 2019 that Zuora was "_____" and "_____." *See* Pls. Opp. to SJ (ECF No. 219) at 8. Furthermore, just because Professor Solomon is opining on an "industry standard" does not mean the Court must accept that his expertise, standing alone, makes his analysis reliable. Professor Solomon must still do the work of an expert and explain how his experience is a sufficient basis for his "industry standard" and how he applied his experience to the facts of the case. He has not done so here. Nor has he offered any corroborating literature or study to support his conclusions related to Zuora's disclosure process. Indeed, Professor Solomon offers the kind of "ipse dixit" analysis defendants often accuse plaintiffs of offering.

Aside from being irrelevant and unreliable, Professor Solomon's report and testimony should be excluded on the grounds that he serves as a mouthpiece for counsel's arguments about the evidence and invades the realm of the jury in making conclusions on disputed facts and the law. First, Professor Solomon's report in many sections is simply an unvarnished, impermissible factual narrative concerning Zuora's disclosure process and key events of the case. Second, Professor Solomon steps into the role of the jury in addressing critical issues in this case. By opining that Zuora designed a "robust" disclosure process that ensured its disclosures complied with relevant SEC rules and regulations and provided Defendants with accurate information to give to investors,

Professor Solomon makes determinations regarding Defendants' disclosures and scienter that are outside his role as an expert. Professor Solomon also makes improper factual determinations relating to other elements of Plaintiffs' claim, including falsity. For the reasons stated in this reply and Plaintiffs' opening motion, the Court should exclude Professor Solomon's report and testimony.

## II.    ARGUMENT

### A.    Expert testimony concerning Zuora's disclosure process is not relevant.

#### 1.    Plaintiffs' case does not depend on the adequacy of Zuora's disclosure process.

Plaintiffs need not establish that Zuora employed an inadequate disclosure process to prevail. *S.E.C. v. Mudd*, 2016 WL 2593980 (S.D.N.Y. May 4, 2016), is illustrative on this issue. In that case, the court addressed opinions mirroring Professor Solomon's, including that the defendants' "disclosure process was robust and met the applicable standards of good corporate governance," and that defendants "could reasonably rely on the effectiveness of the company's disclosure process." *Id.* at *7. The court excluded the opinions as irrelevant and unreliable, as the SEC made no allegations concerning the disclosure process, and the expert could not "articulate any standard by which she judged [the] compliance process to be adequate." *Id*. at *7-8.

Moreover, the fact that companies can have a robust disclosure process and still commit securities fraud is not a "red herring." Opp. at 11.[1] The truth is that a company can have a "best practice" disclosure process and still commit fraud. *See* Mot. at 6.[2] The real "red herring" is the assertion that Professor Solomon offers an "industry standard" by which to evaluate Defendants' scienter. *See infra* at § II.A.2-3. At its essence, Professor Solomon's "industry standard" is that every middle-market capitalization company has disclosure processes in place to comply with SEC rules and regulations and prepare voluntary disclosures. *Id.* The fact that Zuora aligns with a "standard" for all middle-market capitalization companies is not relevant to liability in this case. For example, in September 2018, Tzuo called his executive team's plan to go forward with implementing RevPro via

---

[1] "Opp." refers to the Opposition to Plaintiffs' Motion to Exclude Expert Testimony of Steven Davidoff Solomon, ECF No. 212.

[2] "Mot." refers to Lead Plaintiff's Motion to Exclude Expert Testimony of Steven Davidoff Solomon, ECF No. 192.

Keystone on seven new customers "nonsense." *See* Ex. 4.[3] Professor Solomon's "industry standard" says nothing about whether concerns with Keystone implementation should have been disclosed in September 2018 and whether the failure to do so is evidence of scienter. *See* Ex. 1, ¶ 158.

As such, any probative value of the "industry standard" testimony is substantially outweighed by the risk that the jury, given Professor Solomon's role as an authoritative expert, will find that the presence of Zuora's disclosure process forecloses any finding of scienter. The opinions should be excluded pursuant to Federal Rule of Evidence 403.[4]

### 2. Professor Solomon does not identify an "industry standard" that can be meaningfully applied to evaluate Defendants' scienter.

A review of Professor Solomon's report shows that he provides no "industry standard" or "industry customs and practices" concerning disclosure processes among middle-market capitalization companies by which to evaluate Defendants' scienter. *See, e.g.,* Opp. at 2, 6.

First, Professor Solomon offers an overview of SEC disclosure requirements and a general, vague discussion concerning the processes companies utilize to comply with those rules and regulations. *See* Ex. 1, ¶¶ 25-51, 60-63. By his own admission, there is no "industry standard" for disclosures. Ex. 2, at 92:10-23, 93:10-11. Accordingly, Professor Solomon did not analyze disclosure practices of companies in Zuora's industry (*id.* at 92:10-23) or companies that had been public for less than one year (*id.* at 93:1-94:7). Rather, he compared Zuora's practices and processes to "all middle-market capitalization companies," which could number between 500-1,000. *See id.* at 86:7-15, 94:2-7.

Second, Professor Solomon highlights different types of "voluntary disclosures" made by middle-market capitalization companies. *See* Ex. 1, ¶¶ 52-59, 64. Professor Solomon notes, unremarkably, that these companies typically supplement their required disclosures with voluntary

---

[3] All exhibits referenced herein are attached to the Berman Declaration, ECF No. 192-1.

[4] Defendants claim that Professor Solomon's testimony is not misleading because, as he testified, "the 'mere fact' of a robust disclosure process alone does not absolve a company from securities fraud." Opp. at 11 n.6. The jury may still be misled, however, because he concludes that Zuora's disclosure process "provided a sound basis for Zuora's executives to rely on the information" generated through the process. Ex. 1, ¶ 15(a). In other words, Professor Solomon's testimony that a "robust" disclosure process will not absolve *a company* from securities fraud is not at odds with a conclusion that *Zuora's* disclosure process absolved Defendants of liability *in this case*.

disclosures in the form of press releases, earnings calls, and investor conferences. *See, e.g., id.*, ¶¶ 53, 55, 64. Professor Solomon offers little insight into how companies prepare these disclosures, let alone an "industry standard" for preparing voluntary disclosures separate from what companies do to comply with SEC regulations. *See, e.g., id.*, ¶ 55 (noting the "process" for preparing earnings calls "is similar to the preparation of SEC filings").

3.  **Professor Solomon's opinion comparing Zuora's disclosure process to the processes of all middle-market capitalization companies is not relevant to scienter because he provides no "industry standard," customs, or practices.**

Since Professor Solomon offers no "industry standard" for preparing required or voluntary disclosures, his opinion is not relevant to scienter and should be excluded under Rule 702.

Defendants' relevance argument centers on *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852 (9th Cir. 2001). In that case, the Ninth Circuit discussed how a "sparse," albeit defined "industry standard" related to the "offerings of taxable municipal notes" could be applied as a "relevant factor" in determining whether a party acted with scienter. *Id.* at 856-59. In other words, the purpose of evidence relating to "industry standards" in a securities fraud action is to determine whether a defendant departed from those standards, which could, in theory, assist in a finding of scienter. *Id.*

Defendants' reliance on *Dain* is misplaced, as *Dain* arguably stands for the proposition that evidence of an "industry standard" is only relevant and helpful to the trier of fact where it pertains to a specific and well-defined standard that can be clearly understood and reliably applied. *See also Vernazza v. S.E.C.*, 327 F.3d 851, 861 (9th Cir. 2003) (discussing "industry practice" of investment advisers "completing Forms ADV" relating to referral fees and financial interests). Here, Professor Solomon fails to articulate any meaningful standards, but merely provides an overview of SEC disclosure requirements and makes broad, unhelpful statements about how 500-1,000 middle-market capitalization companies typically attempt to satisfy those requirements and provide other voluntary disclosures to the market. *See supra* at § II(A)(2). Professor Solomon does not articulate any practices by specific companies or industries. *Id.* More glaringly, he does not distinguish between effective and ineffective practices by failing to exclude the disclosure practices of middle-market capitalization companies that have resulted in securities fraud and other disclosure-related violations. *See* Ex. 2 at 95:18-96:5. At its essence, Professor Solomon's "industry standard" is that all middle-

market companies have disclosure processes to comply with SEC rules and regulations and prepare voluntary disclosures. *See supra* at § II(A)(2). Such a standard is too vague and amorphous to assist the fact finder in assessing Defendants' scienter. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 543 (S.D.N.Y. 2004) (excluding expert testimony that is "'so vague as to be unhelpful'").

Defendants cite to numerous cases where courts have allowed expert testimony on "industry standards" generally and how a defendant's practices compare to that standard. Opp. at 7-10. Professor Solomon's failure to identify a meaningful "industry standard" makes those cases inapposite. For example, *In re Homestore.com*, 2011 WL 291176, at *10 (C.D. Cal. Jan 25, 2011), addressed the "appropriate accounting standards that a corporate [CEO] should adhere to in the management of a public company." Likewise, in *In re Tesla, Inc. Securities Litigation*, No. 18-cv-4865 (N.D. Cal.), the expert testimony related to the typical process of management buyout transactions. *See* Dkt. No. 583 at 2-3 (Pl.'s Resp. to Defs.' Obj.) (Jan. 17, 2023). Defendants' reliance on *Hsingching Hsu v. Puma Biotechnology, Inc.*, 2018 WL 4956520, at *1 (C.D. Cal. Oct. 5, 2018), is also misplaced, as the expert offered testimony limited to the standards for issuing press releases regarding the results of clinical trials within the specific industry of biopharmaceutical companies. Finally, *S.E.C. v. Frost*, 2021 WL 6103551, at *3, 5 (C.D. Cal. Nov. 15, 2021), involved expert testimony regarding the "reasonableness" of a certain equity stake in a portfolio as well as venture capital standards regarding "incubator fees, disclosure to investors, management fees, and governance norms." Unlike the specifically tailored testimony regarding "industry standards" offered in *In re Homestore.com*, *In re Tesla*, *Puma*, and *Frost*, Professor Solomon's testimony concerning the generic "custom and practices" of roughly 500 to 1,000 unnamed middle-market companies is too generic and vague to aid in assessing scienter here.[5]

---

[5] Defendants' non-Ninth Circuit case law also involved meaningful "industry standards" that a fact finder could reliably assess when determining any deviation from those standards. *See Krys v. Aaron*, 112 F. Supp. 3d 181, 192 (D.N.J. 2015) ("CFTC and CEA segregation and auditing requirements"); Pls.' Mot. Strike, *In re Safety-Kleen Rollins S'holder Litig.*, No. 3:00-cv-01343 (D.S.C. Dec. 24, 2003), ECF No. 371 at 17-18 (practices in the context of a "reverse acquisition" and the preparation of financial statements); *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 216 (3d Cir. 2006) ("offshore transactions and the availability of exemptions"); *ECD Inv. Grp. v. Credit Suisse Int'l*, 2017 WL 3841872, at *17 (S.D.N.Y. Sept. 1, 2017) (the term "hedging" in the context of "convertible arbitrage"); *S.E.C. v. U.S. Env't, Inc.*, 2002 WL 31323832, at *1, 3 (S.D.N.Y. Oct. 16, 2002) (analysis of trading patterns in stock of specific company); *In re Columbia Pipeline Grp.*,

Moreover, the expert testimony allowed in *S.E.C. v. BankAtlantic Bancorp., Inc.*, 2013 WL 12009694 (S.D. Fla. Nov. 14, 2013), is not the "exact type" Professor Solomon provides here. Opp. at 9-10. In *BankAtlantic Bancorp*, the expert offered an opinion regarding disclosures by banks with gross loans between $1 billion and $20 billion. *See* Dkt. No. 155 at 17 (SEC's Mot. to Exclude), *S.E.C. v. BankAtlantic Bancorp, Inc. and Alan B. Levan*, No. 12-cv-60082 (S.D. Fla. July 19, 2013). Professor Solomon made no such efforts to develop an industry-specific disclosure opinion here. *See supra* at § II(A)(2). Notably, the *BankAtlantic Corp.* court also held that expert testimony comparing defendants' disclosures to other banks would only be "admissible at trial to rebut scienter" if defendants "knew of the disclosures" of the other banks and "relied upon that knowledge" when making decisions. *Bancorp*, 2013 WL 12009694, at *10 n.17.

Nor does *In re Twitter, Inc. Sec. Litig.*, 2021 WL 4168451, at *1-2 (N.D. Cal. Sept. 11, 2021), support Professor Solomon testifying generally about the "industry standard" for disclosures, as Judge Tigar did not exclude expert testimony regarding customs and practices as it related to the specific disclosure of "performance" metrics. *See id.* Here, Professor Solomon's testimony regarding general "industry practice" is not limited to disclosures of product functionality or something more tailored to the facts of the case, but rather disclosure processes in general, without limitation. *See* Ex. 1, ¶¶ 25-64. Similarly, Defendants cannot rely on *In re Ampal-Am. Israel Corp.*, where Professor Solomon offered a limited amended report regarding the "reasons for and role of a special committee" (after having his first report excluded for providing an impermissible factual narrative). *See* Tr. of Hr'g on Mot. in Lim., *Spizz v. Eluz*, No. 14-ap-02110 (Bankr. S.D.N.Y. June 7, 2022), ECF No. 192, at 46:19-20; Mot. at 7-8. Such an opinion offers a meaningful "industry practice" as compared to Professor Solomon's standard that applies to all middle-market companies.

### B.    Professor Solomon's report and proposed expert testimony are unreliable.

Experts like Professor Solomon "who rely 'solely or primarily on experience[]' must explain

---

*Inc. Merger Litig.*, 2022 WL 2902769, at *3 (Del. Ch. July 14, 2022) ("best practices in negotiating M&A transactions"); *Beede v. Stiefel Lab'y, Inc.*, 2016 WL 916418, at *21 (N.D.N.Y. Mar. 7, 2016) ("ESOP industry and how ESOP fiduciaries actually act"); *S.E.C. v. Goldsworthy*, 2008 WL 2943398, at *1 (D. Mass. Jan. 3, 2008) ("meaning of and intent of the parties to [an] OEM agreement").

'how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *See Arjangrad v. JPMorgan Chase Bank, N.A.*, 2012 WL 1890372, at *5 (D. Or. May 23, 2012) (quoting Fed. R. Evid. 702 Advisory Committee Notes). Accordingly, an expert cannot simply "filter[] … information through the lens of [] knowledge and experience" without explaining how the "opinions were reached or the methodology that was used." *See Base v. FCA US LLC*, 2019 WL 1117532, at *6 (N.D. Cal. Mar. 11, 2019); *see also In re Pac. Steel Casting Co. LLC*, 2022 WL 3330422, at *7 (N.D. Cal. Aug. 11, 2022) (finding the expert's conclusions "appear to emerge from a black box" and were therefore unreliable). But that is what Professor Solomon does here, as he invokes his expertise but offers no clear link between his experience and his conclusions, aside from generalities regarding how his review of unspecified disclosures and work with unnamed middle-market capitalization companies informed his analysis here. Opp. at 12-13. He also provides no personal observations, no factual comparison, no literature, and no method of comparison for reaching his opinions. *See* Mot. at 13-14; *see also Arjangrad*, 2012 WL 1890372, at *5 (excluding expert who did not detail any "personal observations … from his experience" establishing that companies "adhere[d]" to the "standards").

Moreover, while Plaintiffs maintain Professor Solomon cannot testify as to the factual narrative he offers in his report (*infra* at § II.C), his discussion and analysis of the facts of the case is also unreliable because he makes no showing that he "appl[ed] his knowledge of the industry to the facts of the case," but rather simply "summariz[e]d the facts." *See Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, 2011 WL 290986, at *2 (S.D. Cal. Jan. 27, 2011). Indeed, nearly all the citations covering Professor Solomon's analysis of Zuora's disclosure process and the key events refer to Zuora public records, internal documents, deposition transcripts, and EComm video recordings. Ex. 1, ¶¶ 65-240. Fact witnesses who were directly involved in preparing Zuora's disclosures are just as capable to situate and contextualize Zuora's disclosure process within the facts of the case. *See Siqueiros v. Gen. Motors LLC*, 2022 WL 74182, at *10 (N.D. Cal. Jan. 7, 2022) (excluding expert testimony "summariz[ing]" evidence "without the application of [] expertise").

Nonetheless, Defendants maintain that Professor Solomon's "qualitative assessment, drawing on extensive experience" is common and reliable. Opp. at 12-13. But Defendants offer no specifics

regarding Professor Solomon's review of disclosures and work with middle-market capitalization companies and instead focus on one law review article (not cited in his report) as well as instances where Professor Solomon "testified in courts using this precise methodology" without any detail regarding the topic of testimony or the scope of his opinions.[6] *Id.* Furthermore, the cases cited by Defendants for the proposition that courts have admitted expert testimony based on a similar methodology of "comparing a party's actions with broader industry practice" are inapplicable, as explained in Section II.A.3, because Professor Solomon failed to identify a meaningful "industry practice." Opp. at 13.

Defendants' remaining Ninth Circuit cases, which permitted testimony where an "expert relies on experience to assess a topic within his expertise," are distinguishable. Opp. at 14. *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025 (9th Cir. 2010), involved an expert testifying in a trademark infringement case about the "standard practice" in the advertising industry to perform a cursory investigation "to avoid possible conflicts or confusion." *Id.* at 1043. The expert had "forty years of experience in the marketing and advertising industry" which "strongly suggest[ed]" his familiarity with the applicable "industry practice." *Id.* Likewise, the expert in *Puma Biotechnology* reviewed "thousands" of press releases and participated in several clinical drug trials before providing his expert opinion on "industry standards for biotechnology companies releasing clinical trial results." *See* 2018 WL 4956520, at *1.

In contrast to the experts in *Fortune Dynamic* and *Puma Biotechnology*, there is little explanation in Professor Solomon's report or testimony for why his knowledge and experience, standing alone, is enough to offer opinions regarding the disclosure practices of *all* middle-market

---

[6] Unlike his expert report here, where Professor Solomon fails to discuss specific disclosures or disclosure practices of any company other than Zuora, the law review article cited by Defendants includes an analysis comparing specific securities disclosure offered by a variety of banks. *See* Steven M. Davidoff & Claire A. Hill, *Limits of Disclosure*, 36 SEATTLE U. L. REV. 599, 605-623 (2013). Defendants also cite to Professor Solomon's expert reports in other cases but fail to note that the courts never ruled on the substance of any *Daubert* challenges. *See* Order, *S.E.C. v. Hurgin*, No. 19-cv-05705 (S.D.N.Y. Nov. 1, 2021), ECF No. 177 (denying *Daubert* motion as premature); Decl., *In re Teva Sec. Litig.*, No. 17-cv-00558 (D. Conn. Apr. 28, 2022), ECF No. 952 at 75 (settlement before filing of *Daubert* motions); Joint Decl., *In re Novo Nordisk Sec. Litig.*, No. 3:17-cv-00209 (D.N.J. May 23, 2022), ECF No. 351-2 at 51 (settlement before decision on summary judgment).

capitalization companies regardless of the industry or the nature of the disclosures. Opp. at 12. This is particularly important because Professor Solomon has not represented a public company of any size in "preparation of their disclosures or assisting them in preparation of their disclosures" since he stopped his practice as a corporate attorney in 2004.[7] *See* Mot. at 14 n.5.

Along similar lines, the expert in *Siring v. Or. State Bd. of Higher Educ. ex rel. E. Or. Univ.*, 927 F. Supp. 2d 1069 (D. Or. 2013), included in her report "numerous examples of her personal observations and experience" with the subject of her testimony as evidence of the reliability of her opinions predominately based on knowledge and experience. *Id.* at 1075-76. Here, Professor Solomon provides no examples of his personal observations upon which to evaluate how his experience and knowledge are reliable bases for his opinions.

Simply put, without providing an explicit methodology and corroborating sources, but rather invoking "expertise," Plaintiffs cannot cross-examine Professor Solomon on his key opinions. The Court should not simply take Professor Solomon's word on reliability and exclude his opinions.

## C.    Professor Solomon provides an impermissible factual narrative that goes beyond the background of the case and foundation for his opinions.

Professor Solomon cannot present a factual narrative to the jury, as such factual evidence is "properly presented through percipient witnesses and documentary evidence."[8] *Fujifilm v. Motorola Mobility, LLC*, 2015 WL 757575, at *27 (N.D. Cal. Feb. 20, 2015); Mot. at 7 (citing cases).

But that is precisely what Professor Solomon does here, as the bulk of his report and

---

[7] For similar reasons, the remaining cases cited in footnote 8 of the opposition are unavailing, as the experts' experiences had a more direct relationship to the subject of testimony than Professor Solomon's. *See U.S. v. Schiff*, 538 F. Supp. 2d 818, 844-45 (D.N.J. 2008) (expert worked as a broker-dealer, registered investment adviser, and Chartered Financial Analyst and opined on "what information is important to a reasonable investor"); *U.S. Env't, Inc.*, 2002 WL 31323832, at *1-3 (expert worked for thirty years as a "regulator, a compliance director, and securities consultant" and provided analysis of trading patterns in stock of specific company); *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, 691 F. Supp. 2d 448, 463, 466 (S.D.N.Y. 2010) (expert conducted more than fifty due diligence reviews of hedge funds and testified on conducting hedge fund due diligence and the duties of hedge fund administrators and directors).

[8] Defendants cite to Professor Solomon's report and testimony where he disclaims offering opinions on the facts of the case. Opp. at 16-17. But such disclaimers still risk jury confusion as to whether Professor Solomon is opining or providing background if the testimony at trial includes the factual narrative that permeates his report. *See also Jinro Am. Inc. v. Secure Invs. Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001) (cautioning that allowing expert testimony is significant because it allows the witness to "couch … observations as generalized 'opinions' rather than as firsthand knowledge").

proposed testimony encompasses a factual narrative that summarizes the key events during the Class Period. *See* Ex. 1, ¶¶ 65-240. By way of example, Professor Solomon details the January 28, 2019 EComm meeting where Tien Tzuo and other executives discussed Zoom's suspension of its RevPro implementation. *Id.*, ¶¶ 162-163. Professor Solomon further notes that Tzuo "expressed frustration with the approach" to address Keystone issues and summarizes Tzuo's deposition testimony where he claimed that "he used his frustration as a tool to emphasize the need to respond" to Keystone customers. *Id.*, ¶ 162. These type of improper summaries of Zuora EComm meetings, board documents, and internal discussions regarding RevPro-Billing integration and resulting issues abound his entire report. *See, e.g., id.* ¶ 149 (describing internal emails and discussion during June 4, 2018 EComm meeting); ¶¶ 152-153 (discussing internal August and September 2018 emails regarding customer complaints); ¶ 166 (summarizing February 28, 2019 board meeting discussions on Keystone); ¶¶ 170-172 (summarizing documents related to transition to K2); ¶ 215 (discussing Tzuo's email to Board regarding preliminary results for Q1 2020).

Defendants claim that Professor Solomon's factual narrative is "necessary factual background to explain the foundations of his opinions" or otherwise encompasses "purely descriptive aspects." Opp. at 15-16. But the scope of Professor Solomon's opinions concerning Zuora's disclosure processes do not require the fact recitation he provides in his report. *See* Ex. 1, ¶ 15(a)-(c). Indeed, Professor Solomon's report goes beyond providing a chronology of the disclosures during the Class Period, a list of Zuora personnel and entities involved in the disclosure process, a summary of Zuora's disclosure process, and a timeline of selected meetings at Zuora concerning its disclosures. *See* Ex. 1, at Exs. 1, 3-6. Rather, based on his review of Defendants' documents, video recordings, and deposition testimony, Professor Solomon "proposes to render findings to the jury as to what happened" during the Class Period. *See Biotechnology Value Fund, L.P. v. Celera Corp.*, 2015 WL 138168, at *2 (N.D. Cal. Jan. 9, 2015). It is unclear how Professor Solomon's findings as to the events during the Class Period provide mere "background" or "descriptive aspects" for his opinions on Zuora's disclosure process.[9] What is clear is the testimony is a summary of the evidence with

___

[9] As Defendants note (*see* Opp. at 14-15), Plaintiffs highlighted issues related to Professor Solomon's selection of records and one-sided narrative. *See* Mot. at 9-11. While Plaintiffs

Professor Solomon as the fact finder.

Moreover, Professor Solomon is no stranger to this standard, as his original report in *In re Ampal-Am. Israel Corp.*, 2020 WL 2529337 (Bankr. S.D.N.Y May 14, 2020), was excluded due to his inclusion of a "factual background" section and "factual findings" based on a "selective reading" of the record that "usurp[ed] the role of the jury." *See id.* at *4. Defendants' efforts to distinguish *In re Ampal* fall flat. Opp. at 19. Professor Solomon's original report in that case went beyond summarizing the allegations of the complaint but also contained a narrative regarding the determination of the former CFO's compensation and the Special Committee's lack of outside advisors. *See In re Ampal*, 2020 WL 2529337, at *2-4. The *Ampal* court characterized all these opinions as "Improper Fact Testimony." *Id.* at *4-6. Furthermore, when Professor Solomon submitted an amended report in the case, the factual background section only cited to the complaint and not to any litigation documents. *Compare* Dkt. No. 89-2 at 7-10 (Expert Report of Prof. Steven Davidoff Solomon) *with* Dkt. No. 154-2 at 8 (Amended Expert Report of Prof. Steven Davidoff Solomon), *In re Ampal-Am. Israel Corp.*, No. 14-02110 (S.D.N.Y. Mar. 18, 2021). The amended opinions also did not address any facts whatsoever. *See* Dkt. No. 154-2.

None of Defendants' remaining cases support a finding that Professor Solomon's factual narrative is necessary foundation for his opinions. Opp. at 16. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017 (9th Cir. 2022), involved an expert's "fire origin and cause report" that discussed "photographs and artifacts obtained from the fire site, weather data, a forensics report, and a reconstruction of the cabin" that provided the "foundation of the expert's opinion." *Id.* at 1026-27. Unlike *Elosu*, where the expert had a readily apparent need to detail the supporting documents at issue to opine on the cause of the fire, Professor Solomon's narrative reflecting EComm meetings, board meetings, and internal emails are not foundational for his opinions on Zuora's disclosure process. Defendants also cite *Whalen v. CSX Trans., Inc.*, 2016 WL 5723877 (S.D.N.Y. Sept. 29,

highlighted these specific examples of deficiencies with the report, the overarching concern is Professor Solomon's factual narrative, which does no more than provide "simple inferences drawn from uncomplicated facts" and will not "assist the trier of fact to understand or determine a fact in issue." *See Fujifilm Corp.*, 2015 WL 757575, at *27.

2016), but that case involved an expert considering whether an opposing expert's examination of the product at issue complied with a specific "industry standard" and did not address any factual narrative. *Id.* at \*19. Finally, *ClearOne, Inc. v. PathPartner Tech., Inc.*, 2022 WL 1063733 (D. Utah. Apr. 8, 2022), involved an expert applying "factual evidence" to a specific project management methodology related to software implementation. *Id.* at \*16. In contrast, Professor Solomon summarizes factual evidence without application to any meaningful "industry standard," which is a prerequisite for relevance under 702. *See supra* at § II.A.3.

Finally, Defendants spin Professor Solomon's factual narrative as providing "insight into corporate disclosure" policies by citing to portions of his report that do not reflect Professor Solomon's fact recitation. Opp. at 17. But as explained in Section II.A.3, Professor Solomon does not identify a meaningful "industry standard" relating to disclosures by which Defendants' scienter can be evaluated. Regardless, Defendants have not established that corporate disclosure practices and policies and corresponding SEC rules and regulations—which have the simple premise that public companies should not mislead investors—are beyond the comprehension of a layman. *See, e.g.*, *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 472 (S.D.N.Y. 2005) (excluding expert's generic discussion of federal securities laws due, in part, to fact that it provided "no 'indirect evidence' of anything that would not be readily discernable to an ordinary juror"). None of Defendants' cited cases relating to the securities fraud context address this particular topic. *See* *S.E.C. v. Quan*, 2013 WL 5566252, at \*18 (D. Minn. Oct. 8, 2013) (addressing "complicated terminology, concepts, and practices" of "asset based lending and the hedge fund industry"); *S.E.C. v. Johnson*, 525 F. Supp. 2d 70, 77 (D.D.C. 2007) (finding average juror does not have knowledge of "accounting principles underlying recognition of revenue, materiality, the conduct of audits, etc.").

**D.    Professor Solomon improperly invades the realm of the jury by reaching conclusions on Defendants' scienter.**

Professor Solomon finds that Zuora's disclosure processes were "robust and well-designed," "comparable" to the processes of other middle-market capitalization companies, "provided a sound basis for Zuora's executives to rely on the information," and gave investors a "rich source of relevant information." *See* Ex. 1, ¶ 15(a)-(c). When considered holistically, these opinions amount to a

conclusion that Defendants did not have the requisite scienter because Zuora designed a "robust" disclosure process that complied with SEC rules and regulations and provided Zuora executives with accurate information to give to investors. The jury, and not Professor Solomon, should make that determination. *See In re Twitter Inc. Sec. Litig.*, 2020 WL 9073168, at *3 (N.D. Cal. Apr. 20, 2020) ("The determination of motive, intent, and state of mind is for the jury alone.").

Defendants claim Professor Solomon's testimony is merely probative of Defendants' state of mind. Opp. at 20-21. This assertion is not based on a fair reading of Professor Solomon's report and proposed testimony. To start, Defendants mischaracterize Professor Solomon's testimony as opining only "on the comparative robustness of Zuora's policies in relation to industry norms." *Id.* at 21. The primary "industry norms" discussed in Professor Solomon's report, however, concern SEC rules and regulations. *See supra* at § II.A.2. Accordingly, by concluding that Zuora had a "robust" disclosure process to meet SEC requirements, Professor Solomon is finding that Zuora "met the applicable regulatory standards" through its disclosure process. Opp. at 21 (quoting *S.E.C. v. Daifotis*, 2012 WL 2051193, at *4 (N.D. Cal. June 7, 2012)). Such a conclusion is for the jury to reach. *See Biotechnology Value Fund, L.P.*, 2015 WL 138168, at *4 (not permitting expert to "testify … whether defendants' actual conduct was in compliance with industry standards").

Furthermore, in *In re Twitter*, Judge Tiger explicitly excluded opinions in line with what Professor Solomon offers in this case, including that Twitter's disclosure process was "designed to ensure Twitter's disclosed metrics were accurate, informative, and reflected and were aligned with Twitter's business strategy." *See, e.g., In re Twitter*, 2020 WL 9073168, at *10. Judge Tiger found that opinions regarding whether processes were "designed for a certain purpose or intent … amount[ed] to impermissible testimony regarding Defendants' motive or intent." *Id.* at *11. Professor Solomon's offers similar opinions here—that Zuora's disclosure processes were in place to provide investors with a "rich source" of information and allow executives to "rely" on information generated through the processes.[10] These and other similar conclusions should be excluded as

---

[10] Throughout the opposition, Defendants argue that any issues Plaintiffs have with the subject and scope of Professor Solomon's testimony can be addressed through objections at trial or jury instructions. *See* Opp. at 16-17, 21-22, 24 n.10. But Defendants' proposal ignores that pretrial motions to exclude evidence are meant to "streamline trials and settle evidentiary disputes in

improper findings on Defendants' state of mind.[11] *See, e.g.*, Ex. 1, ¶ 144 (noting Zuora's IPO process "was designed to ensure appropriate disclosure in its S-1 Registration statement."); ¶ 151 (describing process as "facilitat[ing] investors' interpretation of the guidance").

**E.    Professor Solomon's report and proposed expert testimony address factual issues reserved for the jury.**

**1.    The jury can reach conclusions concerning Defendants' statements, Zuora's Twitter account, and analyst reactions to Defendants' May 30, 2019 disclosure.**

Defendants mischaracterize the arguments against Professor Solomon drawing factual conclusions on Defendants' statements regarding Billing and RevPro, Zuora's Twitter account, and analyst reactions to Defendants' May 30, 2019 disclosure. Opp. at 22-23. Plaintiffs object not just because Professor Solomon lacks the expertise to address these issues, but also because a "jury is in as good a position as [the expert] to draw conclusions from the evidence, and is capable of drawing its own inferences." *See Siqueiros*, 2022 WL 74182, at *9; Mot. at 19.

These factual conclusions, moreover, are not simply part of Professor Solomon's opinions regarding Zuora's disclosure processes and their alignment with a purported "industry standard." Opp. at 23-24. Rather, they determine ultimate issues of fact concerning the falsity of Defendants' statements ("My review of Zuora's voluntary disclosure finds that Zuora did not disclose (or represent) that its products were seamlessly connected to each other" (*see, e.g.*, Ex. 1, ¶ 126)), whether Zuora's Twitter account was a "source of investor disclosure" (*id.*, ¶ 103) and materiality, including how the analysts viewed the sales "headwinds" Defendants disclosed on May 30, 2019 (*id.*, ¶¶ 238-239). Opinions that "state conclusions about disputed issues of fact are inadmissible" because an expert "may not usurp the function of the jury to weigh the evidence." *See Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 2018 WL 6511146, at *6 (N.D. Cal. Dec. 11, 2018).

---

advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *See Valley Forge Ins. Co. v. Zurich Am. Ins. Co.*, 2012 WL 243308, at *1 (N.D. Cal. Jan. 25, 2012). The trial here would not be streamlined under Defendants' preferred course.

[11] Defendants also ignore the other opinions littered throughout Professor Solomon's report where he opines on Defendants' state of mind in relation to their risk assessment of Keystone (*see* Ex. 1, ¶¶ 122, 143, 145, 178), their evaluation of RevPro and Billing as separate business segments and separate sources of growth for Zuora (*id.*, ¶¶ 124-125, 131, 134), and their understanding of Keystone's development as the Class Period progressed (*id.*, ¶¶ 149, 162, 164, 166, 177, 182, 203).

**2.      Professor Solomon's opinion comparing Zuora to other middle-market capitalization companies usurps the role of the fact-finder.**

Professor Solomon's opinion that Zuora's disclosure processes are comparable to the disclosure processes of other middle-market capitalization companies is nearly identical to the expert opinion excluded in *In re Twitter*, 2020 WL 9073168. In that case, Judge Tigar excluded testimony regarding whether "Twitter's processes for preparing public disclosures are consistent or inconsistent with the customs and practices among large public companies" because such a comparison was a "factual determination [] reserved for the jury." *Id.*

Defendants attempt to distinguish *In re Twitter* based on a tortured reading of the decision, arguing that Judge Tigar excluded the expert testimony comparing the disclosure processes because Twitter's expert simply reviewed the discovery record and made factual findings about "what actually happened." Opp. at 18-19. This purported rationale is not based on any analysis or discussion in Judge Tigar's decision, but rather on the fact that he cited to his decision in *Oracle America*, 2018 WL 6511146, where he noted that experts cannot proffer opinions about "what actually happened." *Id.* at *7. Nothing in Judge Tigar's decision indicates that by citing to *Oracle*, he thought the facts and circumstances of that case were relevant to his decision to exclude the testimony. *See In re Twitter*, 2020 WL 9073168, at *11. Regardless, Defendants' reading of *In re Twitter* would not save the opinions in this case, because Professor Solomon made factual findings about "what actually happened" based on his review of Zuora's documents and other evidence.[12] *See supra* at § II.C.

### III.      CONCLUSION

For the reasons stated herein and in the opening motion, Plaintiffs respectfully request that the Court exclude the opinions set forth in Professor Solomon's report and proposed testimony.

---

[12] Defendants also raise the concern that the decision in *In re Twitter* is in tension with the Ninth Circuit's decision in *S.E.C. v. Dain Rauscher, Inc.*, 254 F.3d 852 (9th Cir. 2001). *See supra* at § II.A.2-3. Whether *Twitter* conflicts with *Dain Rauscher* is immaterial to this case, however, because Professor Solomon does not offer a meaningful "industry standard" by which to compare Zuora's disclosure process. *Id.* Rather, he provides an overview of SEC rules and regulations and a general discussion about voluntary disclosures and proceeds to compare Zuora's disclosure process to the processes of *all* middle-market capitalization companies. *Id.* Accordingly, Professor Solomon's opinions should be excluded on wholly separate grounds from *In re Twitter*.

DATED: February 17, 2023

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand Methodist Trust Association*