# Exhibit B

Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | No. 3:19-cv-03422-SI<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF JEFFREY L. HAGINS**<br><br>Judge:      Hon. Susan Illston<br>Hearing Date:   March 3, 2023<br>Hearing Time:   10:00 a.m.<br>Dept:      Courtroom 1, 17th Floor |

**[FILED UNDER SEAL]**

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUED TO BE DECIDED ................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.................................................................1

I.      INTRODUCTION .................................................................................................................1

II.     ARGUMENT ........................................................................................................................3

        A.      Hagins's Ipse Dixit Does Not Constitute Expert Testimony......................................4

        B.      Hagins Does Not Define "Integration" or Other Key Terms ....................................6

        C.      Hagins's Opinions Do Not Shed Light on Scienter...................................................12

        D.      Hagins's Value, If Any, Is Substantially Outweighed by FRE 403
                Dangers.........................................................................................................................14

III.    CONCLUSION ....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Andrews v. Metro N. Commuter R.R. Co.*,
882 F.2d 705 (2d Cir. 1989) ...................................................................................................9

*Applications in Internet Time, LLC v. Salesforce.com, Inc.*,
2021 WL 5238767 (D. Nev. Nov. 9, 2021)..............................................................................7

*Fail-Safe, L.L.C. v. A.O. Smith Corp.*,
744 F. Supp. 2d 870 (E.D. Wis. 2010) .....................................................................................6

*Garcia v. Los Banos Unified Sch. Dist.*,
2007 WL 715526 (E.D. Cal. Mar. 8, 2007)..............................................................................9

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .................................................................................................................4

*Golden Hour Data Sys. v. Health Servs. Integration, Inc.*,
2008 WL 2891059 (N.D. Cal. July 22, 2008) ........................................................................10

*Goodman v. Smart Modular Techs., Inc.*,
2015 WL 12777374 (S.D. Tex. June 4, 2015)..........................................................................8

*GPNE Corp. v. Apple, Inc.*,
2014 WL 1494247 (N.D. Cal. Apr. 16, 2014)...........................................................................6

*Illumina, Inc. v. BGI Genomics Co.*,
2021 WL 4979799 (N.D. Cal. Oct. 27, 2021) ........................................................................12

*Informatica Corp. v. Bus. Objects Data Integration, Inc.*,
2007 WL 607792 (N.D. Cal. Feb. 23, 2007)..........................................................................12

*Jinro Am., Inc. v. Secure Invs., Inc.*,
266 F.3d 993 (9th Cir. 2001).................................................................................................15

*Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*,
2011 WL 290986 (S.D. Cal. Jan. 27, 2011) ............................................................................4

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) .............................................................................................10

*Timeline, Inc. v. Proclarity Corp.*,
2007 WL 321387 (W.D. Wash. Jan. 31, 2007) ........................................................................7

*United States v. Hermanek*,
289 F.3d 1076 (9th Cir. 2002)...............................................................................................11

*United States v. Plunk,*
    161 F.3d 15 (9th Cir. 1998)................................................................................................8

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.,*
    395 F.3d 416 (7th Cir. 2005)........................................................................................5, 11

**OTHER AUTHORITIES**

Fed. R. Evid. 702 ...............................................................................................................................4

"Seamless," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/
    seamless?utm_campaign=sd&utm_medium=serp&utm_source=jsonld .................................7

"Seamless," Oxford Dictionary.
    https://www.oxfordlearnersdictionaries.com/us/definition/english/
    seamless...............................................................................................................................7

**STATEMENT OF ISSUED TO BE DECIDED**

Even where a proposed witness appears qualified to offer expert opinions on industry norms and practices, under FRE 702, they still must do the work of an expert—that is, explain how their experience leads to the conclusions reached, why their testimony is relevant, and how their opinions reliably apply to the facts at hand. Here, Defendants' proposed software expert, Jeffrey Hagins, provides no definition for key terms like integration, cites no reliable authority to corroborate the bulk of his ipse dixit opinions, and focuses exclusively on how future software features are developed in a case about promised existing functionality. Is Hagins's testimony admissible under FRE 702 and 403?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION**

Defendants' opposition to Plaintiffs' motion to exclude Hagins's testimony rests on two flawed and interconnected premises. First, in this case centering on the purported functionality between Billing and RevPro, Defendants contend their many statements touting "Billing + RevPro integration" never promised its platform provided a "full," "complete," or "seamless" solution for its customers which would allow near-frictionless data transfers without the need for significant customizations.[1] Instead, Defendants maintain their misstatements about Billing + RevPro integration merely advertised Zuora was on its way to developing future functionality.[2] And in doing so, they claim key terms like "automation" and "integration" have industry-specific meanings which Hagins supposedly defines and contextualizes in his proffered opinions.[3] The record establishes neither premise is true.

As Plaintiffs have stressed at each stage of this litigation, this case is not about the development or implementation of future software features. This case has always turned on whether Defendants' misrepresentations about the then-existing functionality of Zuora's cloud-based subscription management platform and already released flagship software application products, Billing and RevPro, were false or misleading at the time those representations were made.

---

[1] *See* Defs.' Opp. to Mot. to Exclude Expert Testimony of Jeffrey L. Hagins at 1 ("Opp.") (ECF No. 211).

[2] *See, e.g.*, *id.* at 13.

[3] *See id.* at 11-12.

From day one of the Class Period (April 12, 2018) until the truth was revealed (May 30, 2019), Defendants promoted the purported "Zuora [Billing] + RevPro integration" and "seamless order-to-revenue process" of Zuora's solution in various forms—*e.g.*, that it offered a complete and integrated solution which could "automate" and "orchestrate" the entire "order-to-cash process" from billing to revenue recognition.[4] This is not Plaintiffs' strained construction of Defendants' words or industry terms of art. No, Defendants themselves defined an integrated Billing + RevPro as a full solution that could "deliver[] a seamless experience to [Zuora's] joint customers."[5] Defendants sold customers on the idea Billing + RevPro integration offered a seamless and turnkey (i.e., out-of-the-box) solution.[6] And Defendants refused to release this purported "out-of-the-box integration" solution from limited availability until it worked "seamless[ly]"—i.e., with "minimal/no GS customizations."[7]

The fact Zuora attempted to *develop* a customized Billing + RevPro integration solution during the Class Period and encountered setbacks and delays during that process has no probative value other than demonstrating (i) Defendants' statements touting already existing integration functionality *continued* to be false and misleading after the start of the Class Period, and (ii) Defendants, who lived through these setbacks, *continued* to act with scienter—meaning they at no point during the Class Period had reason to believe that Keystone or any other productized integration solution developed by

---

[4] *See* Compl., ECF No. 60, ¶¶ 159-240. Herein, "¶" refers to paragraphs in the operative complaint, unless otherwise indicated.

[5] Zuora Nov. 2017 PowerPoint (ECF No. 185-18 at ZUO_00431008) (setting forth Zuora's goals for Keystone integration, which, as alleged in the Complaint, it would publicly tout as existing functionality beginning at the start of the Class Period (April 2018)).

[6] *E.g.*, Jan. 12, 2018 Email from Zuora Engineer Matthew Rochester to Zuora Employees (ECF No. 217-11 at ZUO_00006603) ("████ was sold and is under the impression that [Keystone] is all turnkey"); Sept. 21, 2018 Email from ████ to Zuora (ECF No. 217-17 at ZUO_00255415) ("For us Zuora was not a billing solution at the point we met with you regarding the integrated solution. For us, *we bought the vision of a complete solution.* This is what your team sold us. That's what we bought, but is not what we are getting." (Emphasis added.)); *see also* Ex. 1, June 2018 "Keystone Overview for RevPro GS" PowerPoint at ZUO_00336648 (messaging Billing as "*fully* integrated with the best in class Zuora[] RevPro" (emphasis added)). All exhibits referenced herein are to the Decl. of Steve W. Berman in Supp. of Lead Pls.' Reply in Supp. of Mot. to Exclude Expert Testimony of Jeffrey L. Hagins, unless otherwise indicated.

[7] Ex. 2, Sept. 2018 "RevPro" PowerPoint at ZUO_00422136 (defining Zuora's limited availability exit criteria); Ex. 3, March 2018 "Keystone Update for EComm" PowerPoint at ZUO_00341136 (setting roadmap under which Keystone would require a "smaller number of GS customizations" after May 2018 and "minimal/no GS customizations" after August 2018).

Zuora had achieved the level of "seamless" and "automated" integration functionality Zuora had aimed for and publicly claimed it had.

Hagins's proposed testimony regarding how software is generally developed—cumulative and duplicative of Zuora-employee-witness accounts regarding Keystone's delayed and defect-ridden development cycle—will add nothing meaningful to the jury's scienter inquiry. Nor will Hagins's proposed testimony, which fails to positively define key concepts (including what it means for two pieces of software to be integrated), assist the jury in understanding the falsity of Defendants' misstatements. This is because Hagins's hyper-generalized opinions—derived primarily from "his experience"—lack any verifiable methodology and include no explanation as to how they reliably apply to the facts and events of this case. At best, his testimony risks misleading the jury as to the true disputed issues of this case. Neither cross-examination nor curative instructions will be sufficient to remedy these FRE 403 risks. His expert testimony must therefore be excluded under FRE 702 and 403.

## II.     ARGUMENT

Defendants contend Hagins's opinions are "highly relevant" to this case for two reasons. First, they think Hagins's testimony is necessary to refute Plaintiffs' construction of Defendants' misrepresentations regarding "integration"—e.g., that Zuora Billing + RevPro integration provided a "seamless order-to-revenue process"—derived from the plain meaning of those terms and supplemented by Zuora's own internal criteria.[8] Second, they assert Hagins's testimony bears on Defendants' scienter, by "explaining how terms of art like 'integration' are actually understood by anyone with knowledge of the enterprise software industry."[9] At no point in Hagins's 33-page expert report, however, does he offer an admissible expert opinion attempting to define "integration" between two software products or a "seamless order-to-revenue process." And as Hagins testified at deposition, he does not "intend for [his] opinion to be relied upon by the jury for the purpose of understanding any Zuora employee's specific mental state[]" or "what a reasonable investor understood about Zuora's products including Keystone during the class period."[10] Defendants' opposition fails from the start.

[8] Opp. at 9.

[9] *Id.* at 2.

[10] Ex. 4, Hagins Dep., at 93:13-19; *id.* at 100:23-101:4.

## A.    Hagins's Ipse Dixit Does Not Constitute Expert Testimony

As a preliminary matter, Defendants incorrectly presume that, just because courts regularly allow expert witnesses to opine on industry norms, this Court must give Hagins free reign under FRE 702 to testify on any software matter or factual dispute he asserts to be within his expertise.[11] An expert's qualifications are simply one element of the *Daubert* analysis. To be admissible, the expert's proponent must demonstrate that the specific opinions being offered are also relevant and reliable.[12] "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."[13] Courts are more than free to "conclude that there is simply too great an analytical gap between the data and the opinion proffered."[14] Even where a proposed witness "appears qualified to offer a reliable opinion on industry standards and practices," under FRE 702, they still must do the work of an expert—"apply [their] industry knowledge and experience to the facts of the case" and explain how such experience reliably leads to the conclusions they intend to repeat to the jury.[15]

Here, Hagins's report is replete with instances in which he provides no clear tether between his proposed opinions and the actual facts and evidence of this case.[16] For example, Hagins opines, under the guise of offering information on industry norms, that "enterprise software customers often do not fully understand the features they need (also known as 'use cases' or 'requirements') until they test enterprise software."[17] Though identified in Hagins's report's summary as a key opinion, Hagins provides no discussion or analysis explaining this naked assertion. And at deposition, Hagins admitted

---

[11] *See* Opp. at 9.

[12] *See* Fed. R. Evid. 702.

[13] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[14] *Id.*

[15] *See Med. Sales & Consulting Grp. v. Plus Orthopedics USA, Inc.*, 2011 WL 290986, at *2 (S.D. Cal. Jan. 27, 2011) (precluding expert from testifying about specific aspects of party's business because the expert did "not apply his knowledge of the industry to the facts of the case"); *see also* Fed. R. Evid. 702 advisory committee's note to 2000 amendments ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.").

[16] *See* Mot. to Exclude Expert Testimony of Jeffrey L. Hagins (ECF No. 193) at 7-8 (discussing analytical gap in Hagins's analysis in more detail).

[17] ECF No. 191-12 ("Hagins Report") ¶¶ 10(3).

he had no actual understanding as to whether "Zuora customers in particular d[id] not fully understand the features they needed from Zuora or Zuora products during the class period," or as to whether "the discovery of new use cases caused Zuora['s] specific implementation of its software products and features during the class period to be time consuming."[18] Why does he then offer this opinion?

This example is not an isolated incident. Indeed, Hagins conceded that in drafting his report, he "primarily relied upon knowledge and authorities that [he was] already familiar with," and "did not review academic materials beyond those that [he was already] familiar with" to confirm or corroborate his understanding of purported norms and facts.[19] Even when opining on matters such as the correlation between issues and defects—an opinion Defendants specifically cite as relevant context as to falsity in their opposition papers[20]—Hagins admitted he had "not done any formal research on it" and that his opinions "really stem[med]" from just his "own personal experience."[21] Hagins similarly failed to cite any reliable authorities to support his reported opinions regarding early adopter programs for software, even though he admittedly has never "been involved in the early adoption of an integrator between two products developed and sold by a singular company"[22]—or put in the specific terms of this case, software like Zuora's Keystone integrator for Billing, and RevPro.

Put bluntly, it is not enough for Hagins (or Defendants for that matter) to invoke the magic words "my expertise" in lieu of the analytical or research-corroborating strategies widely used by other potential specialists in Hagins's field,[23] especially for Hagins's so-called opinions that step outside the

---

[18] Ex. 4, Hagins Dep., at 222:18-22, 224:7-13.

[19] *Id.* at 79:8-24.

[20] *See* Opp. at 13 ("Mr. Hagins also makes clear that the discovery of new issues during this development process does not necessarily suggest foundational defects in the software, and that the number of issues that arise also does not necessarily correlate to the amount of time needed to resolve those issues. *Id.* ¶ 79. This serves to directly rebut Plaintiffs' theory that Zuora's public statements about the functionality of its platform and products were misleading because of the supposed defects and issues in the Keystone development and implementation cycle.").

[21] Ex. 4, Hagins Dep., at 115:20-116:8 (Q: "Have you done any research or studies on the correlation between issues and defects?" A: "I have not done any formal research on it, no. This is, you know, an opinion that really stems from my own personal experience…."); *see also id.* at 116:22-117:1 (Q: "[Y]ou yourself have done no regression analysis comparing the time it takes to resolve an issue list to defects present in the software development project; correct?" A: "That's correct.").

[22] *Id.* at 227:25-228:3 (Q: "Have you ever been involved in the early adoption of an integrator between two products developed and sold by a singular company?" A: "No, I don't believe I have.").

[23] *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005) ("A witness who

arena of norms. Without an explicit methodology or citation to corroborating sources, Plaintiffs cannot cross-examine Hagins on the bases for his opinions, the most pertinent of which "fundamentally reduce to taking his … [40+] years of experience for granted."[24] Likewise, the Court cannot simply take Hagins's words on specific propositions just because Defendants contend they fall under the umbrella of norms.[25] Because Hagins's report fails to show how the bulk of his opinions (particularly ¶¶ 52-85 (Opinions 3-5), for which he cites no meaningful corroborating sources) meet the rigors of Rule 702's reliability requirements, he should not be permitted to offer such opinions to the jury as an expert.

**B.    Hagins Does Not Define "Integration" or Other Key Terms**

Turning to Hagins's specific opinions, Defendants argue they are relevant to this litigation because "'integration' has a specific usage within the enterprise software industry," which Defendants contend "*may* differ from its usage in common parlance"[26] (and, as discussed above, presumably from how Zuora defined "integration" in its own documents).[27] Yet despite litigating this matter for 3+ years, Defendants have not put forward a positive definition of what it means for Zuora's products to be integrated, let alone explain how their hypothetical alternative definition differs from the term's ordinary use. Contrary to their assertions, Hagins's report does not fill the purported definition gap.

Knowing this case centers on Zuora's materially misleading statements that it offered an "automated" and "seamless" Billing + RevPro "integration" (and that Defendants would challenge the natural construction of these words at trial), Defendants, for reasons unknown, chose not to instruct their software expert to define these terms in his report, as Defendants' opposition seems to suggest.

**Automate.**    Technology-assisted searches of Hagins's Report reveal he uses the term "automate" (or derivatives of automate) only twice in the main body—specifically, on page 21 while

invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term.").

[24] *GPNE Corp. v. Apple, Inc.*, 2014 WL 1494247, at *6 (N.D. Cal. Apr. 16, 2014).

[25] *Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 888 (E.D. Wis. 2010) ("the court cannot simply take an expert's word for a specific proposition").

[26] Opp. at 11 (emphasis added).

[27] *See* Part I, *supra*, at 1 (discussing how Zuora documents (Zuora Nov. 2017 PowerPoint, ECF No. 185-18) defined an integrated Billing and RevPro, for example, as "deliver[ing] a seamless experience to [Zuora's] joint customer and ensure their success in timely adoption of ASC 606/IFRS 15").

providing an example for another software concept, "process flows."[28] As such, Hagins's proffered expert opinion provides no basis for deviating from the ordinary meaning of the term (e.g., "without user input or analysis") and its usage in the intrinsic evidence of record.[29]

**Seamless.** The term "seamless" is not mentioned in passing anywhere in Hagins's report, even though the term is core to Plaintiffs' theory of falsity. At his deposition, Hagins conceded the term has no industry-specific meaning differing from its ordinary use[30]—e.g., "with no spaces or pauses between one part and the next,"[31] or "having no awkward transitions, interruptions, or indications of disparity."[32]

**Integration.** Though Hagins uses the term "integrate" in his report, his discussion provides no aid to the jury's understanding, particularly as to what "integration" means for two distinct software applications like Billing and RevPro that are used together. The bulk of Hagins's integration discussion is in ¶¶ 66-71 of his report, in a section titled "Integration." Just like with "seamless" and "automate," Hagins includes no positive definition for "integration" or what it means to be "integrated." Nor does he set criteria for evaluating the extent to which products are integrated on Defendants' spectrum.

Instead, Hagins uses the term "integration" in the context of discussing the implementation of new software into a customer's existing business system. And in doing so, he only details the reasons why integrating enterprise software into a customer's existing business system can be complicated.[33]

---

[28] *See* Hagins Report at 21.

[29] *See, e.g.*, *Applications in Internet Time, LLC v. Salesforce.com, Inc.*, 2021 WL 5238767, at *6 (D. Nev. Nov. 9, 2021) ("The term 'automatic' by definition means 'without human intervention.'"); *Timeline, Inc. v. Proclarity Corp.*, 2007 WL 321387 (W.D. Wash. Jan. 31, 2007) ("[T]he term 'automatically' means 'without user input or analysis.'").

[30] Ex. 4, Hagins Dep., at 84:20-22 ("But I will say that the term seamless, as an engineer, really has no specific meaning from a software engineering perspective.").

[31] "Seamless," Oxford Dictionary. https://www.oxfordlearnersdictionaries.com/us/definition/english/seamless.

[32] "Seamless," Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/seamless?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

[33] Hagins does not spell out what these opinions (or, for that matter, any other of his opinions ) mean in the context of this case. As discussed below, here, the record evidence indisputably shows early adopters like ███ were sold on Zuora under the belief that, *regardless of complexity*, they were getting a complete (and integrated) order-to-revenue system. These early users then withheld payments when Zuora failed to deliver. Factual disconnects like these highlight why Hagins's hyper-generalized opinions are improper. Like a random Tupperware lid, though Hagins's opinions appear at first glance to be probative given their software subject matter, upon closer inspection, they do not fit the contours

As shown below, this so-called "context" fails to plausibly advance the factfinder's understanding of the key litigation issue—was Zuora's software integrated/seamlessly automated—beyond an understanding consistent with ordinary meaning and the intrinsic evidence.

**Para.   Hagins's Failure to Define What it Means to be Integrated**

¶ 66   In this short introductory paragraph, Hagins introduces the term "integrating" to explain the integration phase of software development. ¶ 66 ("The integration phase focuses on integrating the enterprise software with any existing business systems that need to exchange information with the new system."). To the extent Defendants point to ¶ 66 as their proffered, alternative definition of "integration," such a construction is circular and unhelpful.[34]

¶ 67   Here, Hagins discusses the "various factors that influence the complexity of any integration," which can range from "relatively simple to exceedingly complex." The complexity of Zuora's promised integration solution is neither relevant nor in dispute. Zuora did not, for example, mislead the investing public regarding the complexity of their value-add proposition—the integration of Billing and RevPro. Instead, it promised an out-of-the-box integration that could seamlessly automate the combined using of Billing and RevPro regardless of complexity, telling the public, for example: "Don't underestimate the complexity of revenue recognition. The deep dark depths are very, very complex! Thank goodness for Zuora + RevPro integration for a seamless order-to-revenue process! #Subscribed #revrec."[35]

¶ 68   In ¶ 68, Hagins asserts that the overall "difficulty or complexity of an integration is a function of both the data model compatibility" and the complexity of the underlying business process. Again, the difficulty of a Billing-RevPro integration is not a material issue and is not in dispute.

¶ 69   Here, Hagins simply discusses the various ways integration can generally be accomplished—*i.e.*, through "off-the-shelf … solutions (such as MuleSoft ) … or custom built solutions" like Keystone. In doing so, Hagins simply reiterates the same background information providable by nearly every deposed Zuora employee, who (unlike Hagins, who purports to opines on nothing specific to Zuora) will be able to provide further information of how Zuora explored off-the-shelf and custom-built integration solutions before and throughout the Class Period.[36] As such, Hagins's needlessly cumulative testimony repeating the same basic facts about MuleSoft are excludable under Fed. R. Evid. 403.[37]

---

of the facts or legal theories at play in this case.

[34] *See Goodman v. Smart Modular Techs., Inc.*, 2015 WL 12777374, at *18 (S.D. Tex. June 4, 2015) (rejecting circular and an unhelpful" construction of key term, which used term in its own definition).

[35] *See* e.g., ¶ 164 (discussing Zuora's June 5, 2018 tweet).

[36] *See, e.g.*, Ex. 5, Cromley Dep. at 54:3-9 (Q: "Instead of using Keystone, Zuora decided to rely on a Mulesoft application for its revenue recognition purposes?" A: "The Mulesoft application pulled data out of Zuora Billing into RevPro. It was an integration piece, not a revenue recognition piece."); Ex. 6, Ramamoorthy Dep. at 241:3-242:6 (discussing Zuora's usage of MuleSoft and Keystone).

[37] *See United States v. Plunk*, 161 F.3d 15 (9th Cir. 1998) (affirming exclusion of expert "testimony

¶ 70    In ¶ 70, Hagins confirms his basic misunderstanding of the nature of this case, stating: "I understand that this case involves efforts by Zuora *to design* a productized integration of its Billing and RevPro products that the Company would be able to provide to its customers." (Emphasis added.) In other words, for Hagins, this case is not about whether Billing and RevPro were integrated at the start of the Class Period. (Indeed, Hagins conceded at deposition in the context of discussing ¶ 70 that lack-of-integration was a foregone conclusion.[38]) Instead, Hagins believes this case to be about the reasonableness of Zuora's efforts to develop Keystone during the Class Period after its initial deadlines passed. As stressed above and in Plaintiffs' initial motion, that is not Plaintiffs' theory. Additionally, Hagins stepped out of his assignment focused on industry norms to opine that Zuora was developing Keystone for enterprises with disparate use cases—which he later retracted at deposition conceding: (i) it was outside his assignment scope, (ii) he had done no comparative analysis or research, and (iii) his use "of the term disparate … only mean[t] to convey" that, in his lay view, customers' use cases were not all 100% identical.[39]

¶ 71    In ¶ 71, Hagins offers another off-the-cuff opinion regarding Keystone, which he later conceded under deposition cross-examination was "outside the scope of [his] assignment." [40] As such, Hagins had not "really develop[ed] a deep understanding here" as to ¶ 71,[41] had not reviewed the software architecture among Billing, RevPro, and Keystone, and had no understanding of the use cases covered and not covered by Keystone as of August 2018 or otherwise. Hagins's opinions ¶¶ 70-71 thus reflect no expertise or expert analysis that would render it admissible under Rule 702.[42]

And to the extent Defendants would have Hagins relay the information about Keystone use cases cited in ¶ 71 (presumably after fact witnesses with personal knowledge have testified regarding those very facts), his testimony would be duplicative and improperly suggest the "truthfulness" of factual testimony.[43]

---

[that] was merely cumulative of evidence presented earlier in the trial").

[38] Ex. 4, Hagins Dep., at 158:8-159-8 (Q: "Is it your understanding that a minimal viable product version of Keystone was completed at the beginning of the class period in this case?" A: "I don't know when or if it happened is because had -- in any context if a software company has a real MVP [minimum viable product], they might choose to make that generally available. And my understanding is that Keystone was never made generally available. So I don't know that they ever met a real MVP definition.").

[39] *See id.* at 210:24-215:15.

[40] *Id.* at 163:1-13. This opinion is: "although Zuora was designing a productized integration that would eventually be made available to all of its customers who purchased both the Billing and RevPro products, that does not mean that the integration would work the same way for all customers or that implementation of the productized integration for new customers would be straightforward."

[41] *Id.* at 163:1-13.

[42] *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 708 (2d Cir. 1989) (expert testimony "must be directed to matters within the witness' scientific, technical, or specialized knowledge").

[43] *Garcia v. Los Banos Unified Sch. Dist.*, 2007 WL 715526, at *15 (E.D. Cal. Mar. 8, 2007) (excluding expert testimony as "it would be duplicative to have the expert recite in detail" factual assertions, noting "it is not the province of the expert to testify to the truthfulness of the allegations.").

Beyond these defects, Hagins fails in his discussion about the complexity (but not the meaning) of integration to address the evidentiary context of the disputed term, which "provides substantial guidance as to how persons skilled in the art would understand the disputed term."[44] Because a term's meaning "as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically," courts operating as factfinders in the patent context generally look to "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean.'"[45] Hagins, however, admittedly did not familiarize himself entirely with "what Zuora may or may not have represented to investors or the public," and conceded he did not even know whether Zuora had "represented to its customers or the public that they could seamlessly export data from Zuora Billing to Zuora RevPro using a Zuora productized integration solution."[46] Accordingly, Hagins failed to perform the sufficient diligence to opine on what Zuora's representations regarding "integration" means in the context of this case.

The dangers of Hagins's lack of diligence and ipse-dixit support for his opinions were put on full display during his deposition, where he opined for the first time that a "truly out-of-the-box [Keystone] integration … would not be possible" and instead "would always require configuration or customization"[47]—a truly novel admission, as Defendants never mentioned this detail in their disclosures, and there is no evidence any third party adopted such an interpretation. Defendants nevertheless claim this "opinion[] and testimony help[s] contextualize Zuora's statements regarding the integration of its products."[48] Notably, Hagins did not include this opinion in his report, and

---

[44] *Golden Hour Data Sys. v. Health Servs. Integration, Inc.*, 2008 WL 2891059, at *3 (N.D. Cal. July 22, 2008).

[45] *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)).

[46] Ex. 4, Hagins Dep., at 82:16:83:3 (Q: "Is it your understanding that throughout the class period Zuora had not represented to its customers or the public that they could seamlessly export data from Zuora Billing to Zuora RevPro using a Zuora productized integration solution?" A: "I don't know. I'm not familiar with the entirety of what Zuora may or may not have represented to investors or the public. Again my assignment was to describe industry norms. So I'm not familiar with, you know, the full scope of what they may or may not have represented.").

[47] Ex. 4, Hagins Dep., at 199:13-16. In Hagins's view, "an off-the-shelf integration is a product … that works … with no customization and minimal configuration." *Id.*

[48] Opp. at 13.

conceded that "it was outside the scope of [his] assignment to—to really develop a deep understanding" whether "Zuora's Keystone product, the feature, was intended to be an out-of-the-box or … an off-the-shelf product."[49] Further, Hagins was confronted at deposition with Zuora internal documents (cited in Hagins's report) referring to Keystone as an "out-of-the-box integration,"[50] describing Billing as "fully integrated with the best in class Zuora[] RevPro,"[51] and noting Zuora planned for their integration solution to require "minimal/no GS customizations" after August 2018— all facts Hagins acknowledged during his on-the-record review of the documents. Yet even after seeing evidence of what Zuora actually represented regarding a "full" and "out of the box" integration, Hagins declined to rescind his out-of-assignment opinion that Zuora did not intend to offer an out-of-the box Keystone integration solution.[52] Nor could Hagins identify any document in which Zuora had adopted his "experience-based" construction of Zuora-specific terms.[53] Such baseless construction does not fall under the umbrella of industry norms and practices on which Hagins was recruited to opine.[54]

In sum, though Defendants claim that "'integration' has a specific usage within the enterprise software industry,"[55] neither they nor Hagins provide any positive, evidence-based definition themselves of what it means for Zuora's two pieces of software to be fully or seamlessly integrated, as represented by Zuora during the Class Period. As such, Defendants have offered no basis for claiming

---

[49] Ex. 4, Hagins Dep., at 162:24-163:13.

[50] *Id.* at 181:13-21 (referencing Ex. 1, June 2018 Keystone Overview PowerPoint).

[51] *Id.* at 189:13-21 (again referencing Ex. 1, June 2018 Keystone Overview PowerPoint).

[52] *See generally* Ex. 4, Hagins Dep., at 181:13-202:6 (discussing Hagins's new, outside-his-assignment opinion regarding whether Zuora intended to offer out-of-the-box functionality).

[53] *See Zenith Elecs. Corp.*, 395 F.3d at 419 ("A witness who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term."); Ex. 4, Hagins Dep., at 201:13-202:2 (Q: "Can you identify in this document where it sufficiently explains the construction of those terms as you know them based off your experience?" A: "I'm sorry. Which? Which terms are we talking about?" Q: "Out-of-the-box integration and flexibility." A: "If you're asking can I identify in this document where does it sufficiently explain those to a lay person, no. I don't think it does. But to someone with 42 years of software experience I know.").

[54] *See, e.g.*, *United States v. Hermanek*, 289 F.3d 1076 (9th Cir. 2002). In *Hermanek*, for example, the Court of Appeals reversed a district court's decision to allow an expert to interpret words and phrases solely on the basis of his "general qualifications," as the witness did not explain in detail the methods he used to arrive at his interpretations of words he was not familiar with before the investigation. The court determined that there was "simply too great an analytical gap between the data and the opinion proffered." *Id.* at 1095 (quoting *Joiner*, 522 U.S. at 146).

[55] Opp. at 11.

that Plaintiffs' understanding of "integration" is incorrect. Defendants must at the very least be precluded from having Hagins invent a never-before-previewed definition for the jury that has no basis in the record, in industry literature, or in any scientific methodology. If allowed, such a definition would be based on pure junk science.[56] Likewise, Hagins should not be allowed to offer interpretations of Zuora's misstatements for the very first time on the stand.[57]

## C.      Hagins's Opinions Do Not Shed Light on Scienter

Defendants' scienter arguments fare no better. Defendants contend Hagins's opinions are relevant to scienter because they "contextualize the meaning of Defendants' statements and the process of developing Keystone" by, among other things, "describing the process enterprise software companies undertake in developing new products and features …."[58] Despite being less than three months out from the original trial date, Defendants again fail to explain *why* the process for *developing software matters* is relevant to the dispositive question about whether Zuora's platform in fact, *already had the full/seamless integration functionality* it claimed in its public statements.[59]

---

[56] *See Illumina, Inc. v. BGI Genomics Co.*, 2021 WL 4979799, at *28 (N.D. Cal. Oct. 27, 2021) ("If an expert's testimony is not found in his or her expert report, that evidence will not be allowed at trial."); *Informatica Corp. v. Bus. Objects Data Integration, Inc.*, 2007 WL 607792, at *2 (N.D. Cal. Feb. 23, 2007) ("[T]he Court generally will exclude expert opinions that were not disclosed in reports or at least at deposition.").

[57] Defendants' citation to cases like *Wochos* are simply inapposite. *See* Opp. at 11-12 (citing *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1194 (9th Cir. 2021)). In *Wochos*, for example, the plaintiffs alleged that statements regarding the preparation and development of the Tesla Model 3 (*e.g.*, company was "on track" to achieving production goals and there were "no issues" preventing the company from achieving said goals), rather than the Model 3's then-existing functionality, were false and misleading. Additionally, the plaintiffs cited no facts supporting their unique construction of the key term "production car." Here, by comparison, Plaintiffs' claims focus on Zuora's statements regarding the then-existing functionality of its products and in doing so, rely on the ordinary meaning of key terms, together with Zuora's own explanations, as provided in internal documents and private statements.

[58] Opp. at 12. Defendants also contend Hagins's opinions are relevant to scienter because they "shed[] light on how terms like 'integration' and 'automation' are understood in the enterprise software industry." *Id.* But as discussed in Part II.B, *supra*, Hagins provides no definitions for these terms.

[59] *See, e.g.*, ¶ 164 (June 5, 2018 Tweet by Zuora: "Don't underestimate the complexity of revenue recognition. The deep dark depths are very, very complex! Thank goodness for Zuora + RevPro integration for a seamless order-to-revenue process! #Subscribed #revrec."); *id.* ¶ 162 (Zuora on its website: Zuora Central "is a single platform for your order-to-revenue process and the connective tissue between your CRM and ERP"; Zuora Central "easily connects the various applications in your order-to-revenue ecosystem"); *id.* ¶¶ 190, 194 (Defendant Tzuo during Zuora's Q1 2019 Earnings Call: "[W]e continue to offer the only complete subscription management solution," and "[Zuora is] the only company that provides a full solution.");

Defendants nevertheless assert that Hagins's expert-provided context on how software is generally developed will aid the factfinder in its scienter inquiry. But these arguments suffer from the same flaws. For example, Defendants contend that Hagins's opinions regarding the natural discovery of software defects during the software development process (Opinions 1 & 2) "helps show that the information passed to executives regarding defects delays, or customer requests during the Keystone integration project would not have been abnormal or cause for alarm."[60] But Hagins conceded at deposition that his opinions should not be used for such a purpose, stating he did not intend for his opinions to "be relied upon by the jury for the purpose of understanding any Zuora employee's specific [mental] state in not disclosing information concerning the current development state of Keystone to the public during the class period."[61] And even if Hagins did not, Defendants' "cause-for-alarm" argument misses the point. That executives received reports that Keystone suffered from foundational defects, and that tentpole customers like ███ were withholding six-figure payments because they had not received what they believed Zuora had promised, show Zuora executives knew the Company was not yet offering the integration solution the public believed it had promised. Indeed, these reports came to such a boiling point that in Winter 2019, Defendant Tzuo exclaimed on video before his full executive team: "███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████?"[62]

Similarly, Defendants contend that Hagins's opinion that enterprise software implementations "are often lengthy and complicated" (Opinion #3) refutes scienter because "Defendants' awareness of customer-specific issues arising during this [implementation] process would not have necessarily led them to question the *ultimate* functionality of Zuora's software."[63] But Defendants' representations (and Plaintiffs' fraud theory) focused on *existing* functionality, not forward-looking promises.[64]

[60] Opp. at 13.
[61] Ex. 4, Hagins Dep., at 101:20-102:2.
[62] *See* Jan. 2019 eComm Meeting Video at 0:04:10-0:04:36 (ECF No. 217-3).
[63] Opp. at 14 (emphasis added).
[64] *See* Order Denying Defs.' Mot. to Dismiss at 14-15 (ECF No. 75) (rejecting Defendants' contention that their misleading statements "are either inactionable statements of corporate optimism or forward-looking statements protected from liability" because "throughout the class period, defendants

Defendants did not tell the investing public, for example, that "Zuora + RevPro integration [would *eventually/ultimately* allow] for a seamless order-to-revenue process,"[65] or that Billing would *eventually/ultimately* be "fully integrated with the best in class Zuora[] RevPro."[66] Defendants' repeated conflation of this core concept is not grounds for allowing Hagins to waste the jury's time on irrelevant matters, or worse, risk confusing the jury as to the true nature of Plaintiffs' scienter theory.

### D.    Hagins's Value, If Any, Is Substantially Outweighed by FRE 403 Dangers

Under FRE 403, the court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of … confusing the issues, misleading the jury, … wasting time, or needlessly presenting cumulative evidence." Defendants' opposition refuses to engage with this balancing exercise. Focusing solely on the probative value-side of the equation, Defendants contend "[r]eliable expert testimony need only be relevant" to be admissible under FRE 403.[67] They then go on to repeat their prior relevancy arguments, including that Hagins's testimony helps support Defendants' construction of terms like integration, which they assert deviates from its ordinary meaning.

Under this one-sided framework, Plaintiffs have already refuted Defendants' explanations as to why Hagins's opinions are relevant. Contrary to Defendants' assertion, Hagins does not in fact define key terms like "automation," "seamless," or "integration" in his report. Nor do his software-development-focused opinions shed light on the actual scienter theories at play.

Defendants, on the other hand, fail to address the substantial risks Hagins's testimony poses. For example, as explained in Plaintiffs' opening motion, Hagins's generalized opinions—all premised on the faulty assumption that "a central issue in this litigation is Zuora's efforts to develop an integration product"[68]—risks confusing the jury about the nature of this case. If allowed to testify, Hagins will offer opinions exclusively regarding the development, implementation, and integration of

---

repeatedly marketed Zuora's platform and applications as a functioning, combined solution when in fact Billing and RevPro only could function as standalone products").

[65] ¶ 164.

[66] Ex. 1, June 2018 "Keystone Overview for RevPro" PowerPoint at ZUO_00336648.

[67] Opp. at 23 (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *New Jersey v. T.L.O.*, 469 U.S. 325, 345 (1985)).

[68] *See* Hagins Report ¶ 45 (emphasis added).

software that indisputably did not exist at the start of the Class Period. This will erroneously suggest to the jury that this case hinges on whether Defendants misrepresented Zuora's then-present efforts to develop a proprietary software solution to integrate Billing and RevPro. Indeed, Defendants' opposition suggests they themselves have fallen into this very trap, perhaps explaining why they make no attempt to refute this risk. Nor do they acknowledge the danger that Hagins's statements, regardless of content, are "likely to carry special weight with the jury."[69]

Given the ability of Zuora's own witnesses to explain not only the facts of this case, but the context regarding how Zuora's solution works, Hagins's testimony has no purpose other than to create a sideshow trial on the reasonableness of Zuora's protracted and defect-ridden road to developing integration functionality—a daytime drama that, while perhaps interesting to a handful of jurors, has no relevance to the legitimate claims and defenses of this case. Accordingly, the Court should exclude Hagins's opinions as they would be misleading, cumulative, and a waste of the jury's valued time.

## III.    CONCLUSION

For the foregoing reasons, the Court should exclude Hagins's expert testimony. Alternatively, should the court reserve ruling on whether Hagins's purported normative opinions are relevant and admissible, the Court should preclude Hagins from (i) offering trial testimony defining key terms like "integration" and "automation" found in Zuora's representations, (ii) explaining how reasonable investors would construe such terms, and (iii) baselessly treading beyond the arena of norms and practices, as he does in ¶¶ 70-71 of his report.

DATED: February 17, 2023

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

---

[69] *Jinro Am., Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand Methodist Trust Association*