# Exhibit G

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CASEY ROBERTS, Individually   ) No. 3:19-cv-03422-SI
And On Behalf of All Other    )
Similarly Situated,           )
                              )
             Plaintiff,       )
                              )
     vs.                      )
                              )
ZUORA, INC., TIEN TZUO, and   )
TYLER SLOAT,                  )
_____)

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

ARIC OLSEN and JAMES ALPHA     )Case No. 20-CIV-01918
MULTI STRATEGY ALTERNATIVE     )
INCOME PORTFOLIO, Individually )
And On Behalf of All Others    )
Similarly Situated,            )
                               )
             Plaintiff,        )
                               )
     vs.                       )
                               )
ZUORA, INC., TIEN TZUO, TYLER  )
SLOAT, PETER FENTON, KENNETH   )
A. GOLDMAN, TIMOTHY HALEY,     )
JASON PRESSMAN, MICHAELANGELO  )
VOLPI, MAGDALENA YESIL,        )
et al.,                        )
                               )
                               )
             Defendants.       )
_____)

ZOOM AND VIDEOTAPED DEPOSITION OF

KARTHIK RAMAMOORTHY

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 2

KARTHIK RAMAMOORTHY DEPOSITION,

Taken on behalf of the Plaintiffs, Commencing at 9:00 a.m. Pacific Time, on March 24, 2022, pursuant to notice.

BEFORE:  SHEILA MOORE, RPR, RMR, CMRS, CRR, CSR No. 501

Page 3

APPEARANCES:

For Lead Plaintiff New Zealand Methodist Trust Association:

    LUCAS GILMORE, ESQ.
    RAFFI MELANSON, ESQ.
    HAGENS BERMAN SOBOL & SHAPIRO LLP
    715 Hearst Avenue, Suite 202
    Berkeley, CA  94710
    510.725.3000
    lgilmore@hbsslaw.com
    rmelanson@hbsslaw.com
        and
    PETER SHAEFFER, ESQ.
    HAGENS BERMAN SOBOL & SHAPIRO LLP
    455 North Cityfront Drive, Suite 2410
    Chicago, IL  60611
    708.628.4949
    petersh@hbsslaw.com

For Plaintiff In the State Court Case:
    YURY A. KOLESNIKOV, ESQ.
    BOTTINI & BOTTINI, INC.
    7817 Ivanhoe Avenue, Suite 102
    La Jolla, CA  92037
    858.914.2001
    ykolesnikov@bottinilaw.com

For the Defendants Zuora, Inc., Tien Tzuo and Tyler Sloat:

    JEREMY ADLER, ESQ.
    ILYA FELDSHEROV, ESQ.
    WILMER CUTLER PICKERING HALE AND DORR LLP
    7 World Trade Center
    250 Greenwich Street
    New York, NY  10007
    212.230.8800
    jeremy.adler@wilmerhale.com
    ilya.feldersherov@wilmerhale.com

        and

    WILLIAM BRENC, ESQ.

Page 4

    WILMER CUTLER PICKERING HALE AND DORR LLP
    One Front Street, Suite 3500
    San Francisco, CA  94111
    628.235.1000
    william.brenc@wilmerhale.com

For the State Court Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Allen & Company LLC, Jeffries LLC, Canaccord Genuity LLC, and Needham & Company, LLC:

    ALYSE RIVETT, ESQ.
    MORGAN, LEWIS & BOCKIUS LLP
    One Market, Spear Street Tower
    San Francisco, CA  94105
    415.442.1109
    ali.rivett@morganlewis.com

ALSO PRESENT:

    Anthony Gulino, Video Specialist
    Diane Lorenz, In-House Counsel at
        Zuora, Inc.
    Sylvia Lexington, In-House Counsel at
        Zuora, Inc.
    Lisa Napoleon,  Paralegal, Hagens Berman
      - - - - -

Page 5

INDEX

EXAMINATION BY:                    PAGE

  MR. SHAEFFER                    11

  MR. KOLESNIKOV                    259

INDEX OF MARKED EXHIBITS

NO.                              PAGE

Exhibit 51 Notice of Deposition                15

Exhibit 52 Karthik Ramamoorthy LinkedIn Profile        17

Exhibit 53 Email Chain ZUO_00000001-ZUO_00000005        22

Exhibit 54 Email Chain ZUO_00000006-ZUO_00000008        25

Exhibit 55 Email Chain ZUO_00000009-ZUO_00000011        26

Exhibit 56 Zuora SEC Filing                64

Exhibit 57 Email Chain ZUO_1644-ZUO_1655            96

Exhibit 58 Email Chain ZUO_6721-ZUO_6723            107

Exhibit 59 Global Services Customer Account Portfolio
    Review RevPro 3/8/2018            117

Exhibit 60 Video ZUO_V_000026 CONFIDENTIAL 3/19/2018  130

Exhibit 61 Global Services Customer Account Portfolio
    Review RevPro 4/18/2018            139

Exhibit 62 Global Services Customer Account Portfolio
    Review RevPro 4/20/2018            148

Exhibit 63 Global Services Customer Account Portfolio
    Review RevPro 4/27/2018            150

Exhibit 64 Email Chain 13529-13538                152

Exhibit 65 Email Chain 13503-13505                164

Exhibit 66 Email Chain 2424-2429                168

Exhibit 67 Email Chain 16429-16430                174

2 (Pages 2 - 5)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 238

You saw the escalations. Keystone will set us back big time. We do not -- we do so much data message for ZOZ before load and IT owns all that.

Do you see that?

A. Yeah.

Q. Okay.

A. I think all that I am basically saying, for Zuora Keystone is not a fit because of -- see, all the data massage that we are doing is not a Keystone problem. Let me just differentiate. We bring data from different systems for which Keystone is not built. All of our -- one thing is coming from financial that somebody massaging, IT team is massaging today.

I think the context -- because Jagan knows something that not everything is in the context, right? But the problem is not saying Keystone is a problem, right? The problem is Keystone as in its shape or form won't fit for Zuora and Zuora because where our data is, what kind of massaging are the IT team is doing today.

Q. Okay. And so it's still your testimony that when Mr. Tzuo at his March, 2018 meeting implored Zuora that we need to adopt our own product, he was not referring to adopting Keystone internally?

MR. ADLER: Objection to form.

Page 239

THE WITNESS: I don't know what he was referring to, but -- yeah, I would assume he was referring to adopting Keystone, but then as he says for all these reasons is why we sat down with IT and it wasn't ready for LA for us to test it. It wasn't capturing all the data that it needed for revenue for Zuora.

You can understand our systems, our systems and data are much beyond what we have in our billing application. I think Tien broadly say they wanted to us to adopt and be on Keystone, right, but I think if you go into the depth not all of our data is actually within Zuora.

BY MR. GILMORE:

Q. Okay. And then you then write, FYI, we have many RevPro issues?

A. Yeah.

Q. It's not aware for all broader teams.

A. Yes.

Q. But weekend teams were trying to resolve.

A. Yes.

Q. But don't have solution yet related to RevPro perspective.

A. Yes. Can you -- can I explain you this one a little?

Page 240

Q. Yeah.

A. So at this point we are implementing the project for the testing without Keystone. Okay? So in doing that testing, where, like, we get testing from Billing, we get data from financial folks, we use this MuleSoft to do all the massaging, and then feed data into RevPro. RevPro has a stand-alone application, right? We've run into a lot of issues is what I'm saying here.

So there are bugs or issues or use case, whatever, that we need to resolve that not the entire project team may not be aware of that we are working to resolve. This is all inside the RevPro application, nothing about Keystone. We are not even using Keystone at this point in this project. Do you see -- nowhere have we done for during in 2018. Or in 2019 for Z-on-Z we use Keystone. I think I just want to make sure all of us understand that.

Q. Okay.

A. Because we never went down that path. We just used the MuleSoft and integrated, and these are issues in that project.

Q. Okay. And so it's your testimony that Zuora never attempted to implement Keystone internally?

A. Yes.

MR. ADLER: Objection.

Page 241

THE WITNESS: In that time frame, yes.

BY MR. GILMORE:

Q. Okay, does Zuora to this date, does it still use MuleSoft to integrate RevPro --

A. We moved to Keystone. We moved to Keystone. It's no longer Keystone, but we moved to standard productized integration.

Q. So you moved to the K-2; is that right?

A. That is -- we don't offer any of the Keystone or K-2. We have software referring to about two years back, but we moved to productized connector.

Q. Okay, okay. So when -- when did that occur?

A. I don't have exact date. We can check with IT function.

Q. Okay. So isn't that what Mr. -- Mr. Tzuo was referring to years ago, like in March of 2018, about being able to adopt your own product?

MR. ADLER: Objection to form.

THE WITNESS: Again, I don't know exactly what Tien was thinking, right? So let me explain. So when I am saying we moved to the productized connector, we also continue to keep MuleSoft for the portions of the other data points if you look at it, right? There are other business units and data points that are not in Zuora. We continued

61 (Pages 238 - 241)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 242

to use the MuleSoft data and massage it to consolidate the use cases.

BY MR. GILMORE:

Q. Okay. So at some point Zuora made the decision to use the productized integration solution internally, correct?

A. Some point much later, yes.

Q. Okay. But up to that point the -- the productized solution that it was -- that it was intending to offer on the market was not workable internally, correct?

MR. ADLER: Objection to form.

THE WITNESS: I wouldn't -- I wouldn't -- I wouldn't categorize it that way, because there's a lot of nuances and details to kind of say what you said.

BY MR. GILMORE:

Q. Okay. But and Mr. Reddy is referring here, though, to scrapping ZOZ?

A. I don't know what -- really I don't know what he's meaning. When you say scrap, right, we have to go public. We had to report these numbers in 2019 and under 606. So what does it mean, okay, we scrap, how do we report these numbers. See, first year we could report on 605, second year we had to report on 606 and

Page 243

doing RevPro was the only way to do it.

STENOGRAPHER: Excuse me, I'm sorry. I need you to slow down a little bit. The first year we report on 605, and then?

THE WITNESS: Second year we had to report on 606 in April, 2019. So we had to implement RevPro to do that, right? So I'm not sure, when somebody says scrapping, I was not exposed to the conversation at all. And I may be very particular, like, if people are saying something and I'm not in the conversation, I can't -- I can't verify.

MR. GILMORE: Okay. Can I have -- I'm through with this exhibit, and I would ask that tab -- tab 43 be marked as the next exhibit.

BY MR. GILMORE:

Q. Okay, showing you what's been marked as Plaintiff's Exhibit 86, this is a Global Service Customer Account Portfolio Review RevPro Report, dated January 25th, 2019, generated from your custodial files, correct, sir?

A. Yes.

Q. Okay. And I wanted to highlight the ▮ account, if we can take a look at that.

A. Yeah.

Page 244

Q. The ▮ account, if you just note, that is in over all schedule in red, correct?

MR. ADLER: Objection to form. Different document, but asked and answered.

THE WITNESS: I'm not gonna comment on these colors because I don't trust these documents. If you look at next milestone it says August 31, 2018. I really don't know what's the update on these documents.

BY MR. GILMORE:

Q. Okay. I'm just trying to figure out why the budget and scope has turned to green for ▮.

A. Okay, what usually happens, right, I think I can explain why it could be, but I don't -- so what happens is you time to time you determine a schedule, you actually agree to taking the project live on some time, and -- and there are times where you don't meet that for various reasons, customer availability, our availability, and then you actually sign to extend beyond that.

Actually with ▮, I don't recollect any time where budget was an issue. So we would -- we would actually have somebody assigned to the work. We were not investing on the hours, we would actually be -- which is why I think ▮ shows us green. I don't know

Page 245

if maybe last time when we saw maybe normal or something there was a connotation around it, and then when that gets approved and we have a budget for next six, nine months, then it shows up green.

Q. Okay, but --

A. It's a multiyear project. Like, ▮ wasn't, like, a small project.

Q. Okay, understood, but in this case then the project manager, in this case, has updated the account profile to reflect the budget and scope is now green.

MR. ADLER: Objection, form.

THE WITNESS: Okay.

BY MR. GILMORE:

Q. Okay. And I'm just wondering if there were times in which overall schedule, budget or scope had turned green for an account, you know, why wouldn't the account manager indicate that on the customer report if they're taking the time to update that?

MR. ADLER: Objection to form, lack of foundation.

THE WITNESS: I -- I don't know how the PMs were doing. The status income from sales force. The actual updates maybe it was manual so they didn't do the manual update. I -- I don't see -- feel comfortable on these updates here.

62 (Pages 242 - 245)

Veritext Legal Solutions

212-267-6868                    www.veritext.com                    516-608-2400

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

Page 278

pursuant to the confidentiality orders in these two cases.

MR. GILMORE: Okay. Mr. Ramamoorthy, on behalf of lead plaintiff I'd like to thank you for taking the time to appear.

THE WITNESS: Thank you. Thank you, everyone.

VIDEO SPECIALIST: All right. If there's nothing further, we are off the record at 5:48 p.m. Pacific Daylight Time. And this concludes today's testimony given by Karthik Ramamoorthy. The total number of media units used was 8 and will be retained by Veritext Legal Solutions.

(Deposition concluded at 5:48 p.m.
Pacific Standard time.)

- - - - -

Page 279

I, KARTHIK RAMAMOORTHY, hereby certify that I have read the foregoing typewritten pages, 1 through 279, inclusive, and corrections, if any, were noted by me, and the same is now a true and correct transcript of my testimony.

DATED: _____, California, _____

_____

KARTHIK RAMAMOORTHY

Signed before me this _____
Day of _____, 20___.

_____

Case: Casey Roberts, etc. + Aric Olsen, Plaintiffs vs. Zuora, Inc, etc.

Case Nos.: 3:19-cv-03422-SI + 20-CIV-01918

Deposition Dated: March 24, 2022

Taken by: Sheila Moore

Page 280

CERTIFICATE

I, Sheila Moore, Certified Shorthand Reporter, do Hereby certify:

That the foregoing deposition was taken before me on the date and at the time shorthand and was thereafter reduced to typewriting; that the foregoing represents, to the best of my ability, a true and correct transcript of the proceedings had in the foregoing matter.

That pursuant to Rule 30(e) of the Hawaii Rules of Civil Procedure, a request for an opportunity to review and make changes to this transcript:

___ Was made by the deponent or a party (and/or their attorney) prior to the completion of the deposition.

_X_ Was NOT made by the deponent or a party (and/or their attorney) prior to the completion of the deposition.

___ Was waived.

I further certify that I am not an attorney for any of the parties thereto, nor in any way concerned with the cause.

Dated this 15th day of April, 2022, in Honolulu, Hawaii.

_____
Sheila Moore, CSR No. 50_

Page 281

ERRATA SHEET
VERITEXT/NEW YORK REPORTING, LLC

CASE NAME: Roberts, Casey, Et Al v. Zuora, Inc., Et Al
DATE OF DEPOSITION: 3/24/2022
WITNESSES' NAME: Karthik Ramamoorthy

| PAGE | LINE (S) | CHANGE | REASON |
|------|----------|--------|--------|
| | | | |

_____
Karthik Ramamoorthy
SUBSCRIBED AND SWORN TO BEFORE ME
THIS ___ DAY OF _____, 20__.

_____
(NOTARY PUBLIC)          MY COMMISSION EXPIRES:

71 (Pages 278 - 281)

## CERTIFICATE OF DEPONENT

I hereby certify that I have read and examined the foregoing transcript, and the same is a true and accurate record of the testimony given by me with the exception of the changes and corrections indicated by me in the attached deposition errata sheet.

_____
Karthikeyan Ramamoorthy

WITNESS:    Karthikeyan Ramamoorthy

DATE:    March 24, 2022

MATTERS:    *Roberts v. Zuora, Inc., et al.*, No. 3:19-cv-03422-SI (N.D. Cal.)
*Olsen v. Zuora, Inc. et al.*, Case No. 20-CIV-1918 (Cal. Super. Ct.)

### ERRATA SHEET

| Page: Line(s) | Language from Transcript | Correction | Reason for Change |
|---|---|---|---|
| 10:3 | "Feldsheron" | "Feldsherov" | Typographical error |
| 22:16 | "if" | delete "if" | Typographical error |
| 53:6 | "be" | delete "be" | Typographical error |
| 55:10 | "was" | "were" | Typographical error |
| 57:3 | "of" | "off" | Typographical error |
| 59:8 | "do" | "doing" | Typographical error |
| 72:18 | "was" | "wasn't" | Typographical error |
| 76:8 | "the" | delete "the" | Typographical error |
| 78:19 | "don't" | "put our" | Typographical error |
| 78:22 | "everything" | "something" | Typographical error |
| 79:5 | "was" | "was not" | Typographical error |
| 88:9 | "I'm" | "I" | Typographical error |
| 88:10 | "adopter" | "adopters" | Typographical error |
| 94:23 | "booking" | "booking is" | Typographical error |
| 95:9 | "wasn't" | "hasn't" | Typographical error |
| 106:15 | "saying" | "saying is" | Typographical error |
| 113:15 | ■ | ■ | Typographical error |
| 114:21 | ■ | ■ | Typographical error |
| 122:21 | "gage" | "gauge" | Typographical error |
| 138:23 | "corrector" | "connector" | Typographical error |
| 143:24 | "availability" | "available" | Typographical error |
| 157:6 | "gonna" | "gone" | Typographical error |
| 168:10 | "we're" | "we've" | Typographical error |
| 168:14 | "much" | "much more" | Typographical error |
| 182:8 | "gonna" | "going" | Typographical error |
| 191:11 | "gonna" | "gonna be" | Typographical error |
| 225:20 | "final" | "time" | Typographical error |
| 239:24 | "explain" | "explain to" | Typographical error |
| 256:22 | "-so" | "So" | Typographical error |
| 276:9 | "most" | "months" | Typographical error |
| 276:23 | "dec" | "deck" | Typographical error |