# Exhibit H

Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>                                        Plaintiff,<br><br>        v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>                                        Defendants. | No. 3:19-cv-03422-SI<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OF KEVIN DAGES**<br><br>Judge:          Hon. Susan Illston<br>Hearing Date:   March 3, 2023<br>Hearing Time:   10:00 a.m.<br>Dept:           Courtroom 1, 17th Floor |

## [FILED UNDER SEAL]

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ....................................................................................................................1

II.    ARGUMENT ........................................................................................................................3

    A.    Dages' Opinions Are Based on Insufficient Facts and Data and Have No Methodological Basis ............................................................................3

        1.    Defendants Cannot Explain Away Dages' Failure to Independently Verify the Data Upon Which His Opinions Are Based ................................................................................................3

        2.    Rule 703 Does Not Obviate Dages' Obligation to Independently Verify the Accuracy of the Facts and Data Underlying his Opinions ...................................................................5

        3.    Defendants Cannot Cure the Methodological Defects in Dages' Opinions by Claiming the Spreadsheets Are Business Records that Will Later Come into Evidence Through Unnamed Lay Witnesses at Trial ..............................................................................8

            a.    ZUO_00448803 (CTTP reconciliation plans (Q1'20).xlsx) is an Unreliable "DRAFT" Document........................10

            b.    ZUO_00448808 (FY'20Q1 Pipeline vs. Close.xlsx) Remains a Mystery ..................................................................10

            c.    ZUO_00327212: Sloat's Post-Litigation Modifications Still Unexplained ..............................................................11

            d.    ZUO_00448805 and ZUO_00448806: No Explanation of Their Relationship to Fiscal Year Guidance ................................11

    B.    Dages' Testimony Adds No Value and Usurps the Jury's Role ...............................12

    C.    Dages' Opinions Do Not "Fit" the Case...............................................................14

III.    CONCLUSION .....................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Baker v. Firstcom Music*,
    2018 WL 2676636 (C.D. Cal. May 8, 2018)................................................................6

*Baker v. SeaWorld Entm't, Inc.*,
    423 F. Supp. 3d 878 (S.D. Cal. 2019) .....................................................................3

*Bruno v. Bozzuto's, Inc.*,
    311 F.R.D. 124 (M.D. Pa. 2015) ........................................................................5, 8

*Call Delivery Sys., LLC v. Morgan*,
    2022 WL 1252412 (C.D. Cal. Mar. 7, 2022) ...........................................................6

*Claar v. Burlington Northern R.R. Co.*,
    29 F.3d 499 (9th Cir. 1994) .................................................................................6

*Coffey v. Dowley Mfg., Inc.*,
    187 F. Supp. 2d 958 (M.D. Tenn. 2002) ................................................................6

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...........................................................................................6

*In re EPD Inv. Co., LLC*,
    587 B.R. 711 (C.D. Cal. 2018).............................................................................8

*Fujifilm Corp. v. Motorola Mobility LLC*,
    2015 WL 757575 (N.D. Cal. Feb. 20, 2015)...........................................................13

*Glam & Glits Nail Design, Inc. v. iGel Beauty, LLC*,
    2022 WL 3012522 (C.D. Cal. June 24, 2022)..........................................................13

*Hayes v. MagnaChip SemiConductor Corp.*,
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)........................................................13

*In re Imperial Credit Indus., Inc. Sec. Litig.*,
    252 F. Supp. 2d 1005 (C.D. Cal. 2003).................................................................13

*JH Kelly, LLC v. AECOM Tech. Servs., Inc.*,
    605 F. Supp. 3d 1295 (N.D. Cal. 2022).................................................................13

*Lyman v. St. Jude Med. S.C., Inc.*,
    580 F. Supp. 2d 719 (E.D. Wis. 2008) ............................................................*passim*

*Mighty Enterprises, Inc. v. She Hong Industrial Co.*,
    745 F. App'x 706 (9th Cir. 2018)..........................................................................7

*In re Novatel Wireless Sec. Litig.*,
   2011 WL 5827198 (S.D. Cal. Nov. 17, 2011)...............................................................12, 13

*Novoa v. GEO Group, Inc.*,
   2020 WL 8514832 (C.D. Cal. Dec. 18, 2020)...........................................................................7

*Oracle Am., Inc. v. Google Inc.*,
   798 F. Supp. 2d 1111 (N.D. Cal. 2011).....................................................................................9

*S.E.C.* v. *Moshayedi*,
   2013 WL 12129282 (C.D. Cal. 2013) ................................................................................5, 13

*Turocy v. El Pollo Loco Holdings, Inc.*,
   2018 WL 3343493 (C.D. Cal. July 3, 2018) ...........................................................................13

*U.S. v. Nixon*,
   694 F.3d 623 (6th Cir. 2012)..................................................................................................13

*Villalpando* v. *Exel Direct Inc.*,
   2015 WL 1598663 (N.D. Cal. Apr. 21, 2016)............................................................................5

*In re Vivendi Univ., S.A. Sec. Litig.*,
   634 F. Supp. 2d 352 (S.D.N.Y. 2009) ....................................................................................13

*Waymo LLC v. Uber Techs., Inc.*,
   2017 WL 6887043 (N.D. Cal. Nov. 14, 2017).........................................................................13

**STATEMENT OF ISSUES TO BE DECIDED**

Whether the Court should exclude the expert report of Kevin Dages ("Dages") and any testimony or evidence relying thereon.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

As Plaintiffs outline in their opening brief, Dages—a forensic accountant Defendants retained to opine on the portion of the decline in Zuora's FY 2020 revised revenue guidance attributable to the "Keystone Integration Issues"—identifies no evidence reflecting Zuora management's apportionment of the downward revision to the disclosed Billing-RevPro integration failure versus the purportedly unrelated sales execution headwind Tzuo described on the May 30, 2019 earnings call. Instead, to reach his opinion that only 15% of the decrease to FY 2020 revenue guidance is attributable to the Keystone Integration Issues, Dages intuits Zuora executives' rationale by interpreting five never-authenticated, internal Zuora spreadsheets that defense counsel handpicked.

Dages, however, failed to conduct any investigation to ensure that these spreadsheets are final, complete documents that Zuora management actually used in developing the Company's FY 2020 guidance or its revision. *See, e.g.*, Ex. 3, ECF No. 191-17 ("Dages Dep."), at 193:5-196:1.[1] Dages never communicated with any individual involved in the FY 2020 guidance process, even though he perceived the need to do so. *Id.* at 37:19-38:15. Nor does Dages rely on any witness testimony discussing these documents (because none exists). *Id.* at 176:23-177:5. Dages also does not know the basic details concerning these records, such as who prepared them, how they were prepared, when, and who saw them. *Id.* at 175:7-176:6. Had Dages conducted even the most basic investigation—as a professional in his field of forensic accounting must do (Ex. 19, ECF No. 194-7, ¶ 6)—Dages quickly would have identified strong indicia of untrustworthiness present in these documents. A portion of one of the spreadsheets prominently notes the document is a "**DRAFT**." Ex.

---

[1] All exhibits referenced herein as "Ex." are to the Declaration of Steve W. Berman in Support of Lead Plaintiff's Motion to Exclude Expert Testimony of Kevin Dages. All exhibits referenced herein as "Reply Ex." are to the Declaration of Steve W. Berman in Support of Lead Plaintiff's Reply in Support of Motion to Exclude Expert Testimony of Kevin Dages, filed concurrently herewith.

14, ECF No. 191-27 (ZUO_00448803). For another of the spreadsheets, Defendant Sloat modified *its contents four months after this litigation commenced* (Ex. 5, ECF No. 191-19 (ZUO_00327212 metadata)); Dages, however, does not know what modifications Sloat made. Dages Dep. at 186:18-188:2. Further, two documents Dages relies on do not include a discussion or data on the guidance given; instead, they are internal Zuora Fiscal Year Plans that bear no apparent relationship to Zuora's revenue guidance. Ex. 6, ECF No. 191-20 (ZUO_00448805); Ex. 7, ECF No. 191-21 (ZUO_00448806). Thus, as Plaintiffs explained, this proffered expert testimony is neither grounded on reliable facts and data nor reflects the sound application of any reliable accounting methodology or principle.

Defendants' opposition only confirms the methodological flaws in Dages' testimony. Unable to credibly defend Dages' failure to verify the facts and data defense counsel spoon-fed him, Defendants suggest that the Court should permit Dages' testimony now and deal with the spreadsheets' admissibility issues later. Opp. at 3.[2] But this argument skirts the most salient issues at the *Daubert* stage—whether the expert's testimony is the product of reliable principles and methods. Even assuming the spreadsheets ultimately come into evidence, it still does not fix Dages' flawed methodology. Dages' complete failure to investigate the basis for the underlying facts, the data, or his own assumptions all mean that he had no methodological basis, let alone one rooted in his accounting background, to offer the opinions when he made them. *See, e.g.*, *Lyman v. St. Jude Med. S.C., Inc.*, 580 F. Supp. 2d 719, 726 (E.D. Wis. 2008) (excluding expert accountant's testimony because even if the underlying projections tied out with other record evidence, the expert, who failed to independently verify the data, offered opinions not sufficiently rooted in the principles and methodology of accounting).

Defendants' opposition also reinforces that Dages' testimony adds no probative value. Defendants apparently intend to introduce the spreadsheets through Zuora lay witnesses better suited than Dages to testify as to how Zuora's management actually used these records. Opp. at 9-10.

---

[2] Defs.' Opp. to Lead Pls.' Mot. to Exclude Expert Testimony of Kevin Dages ("Opp."). ECF No. 213.

Defendants also do not dispute that their counsel can make the arguments as well as Dages. Thus, permitting Dages to provide his subjective interpretation of the spreadsheets runs the risk of unduly influencing the jurors. *See, e.g.*, *Baker v. SeaWorld Entm't, Inc.*, 423 F. Supp. 3d 878, 912 (S.D. Cal. 2019) (excluding expert's testimony summarizing internal management documents).

Finally, Defendants' opposition bolsters the conclusion that Dages' testimony fails *Daubert's* "fit" requirement. Defendants still cannot explain how Dages' determination that cross-sells changed very little from early March 2019 (*i.e.*, when Zuora had secretly halted cross-sell efforts) to the end of April 2019 has any bearing on loss causation and damages in a fraud-on-the-market case. Accordingly, the Court should exclude Dages' testimony.

## II.    ARGUMENT

### A.    Dages' Opinions Are Based on Insufficient Facts and Data and Have No Methodological Basis

#### 1.    Defendants Cannot Explain Away Dages' Failure to Independently Verify the Data Upon Which His Opinions Are Based

Unable to defend Dages' actual investigation into the reliability of the spreadsheets, Defendants embellish. For example, Defendants claim that Dages "interviewed" two Zuora employees. Opp. at 11. But in truth, Dages testified that he could only recall speaking with one individual, Hildenbrand, an employee with no connection to the Finance Department. Dages Dep. at 18:10-14; Ex. 1, ECF No. 191-15 ("Dages Rep."), ¶ 26, n.54. Dages testified that the conversation lasted only a half hour and it occurred on August 4, 2022 (the eve of his report's deadline), after Dages had already formed his opinions and drafted his report. Dages Dep. at 28:4-8, 36:10-17. Dages further testified that the sole purpose of the call was for somebody at Zuora to confirm the accuracy of certain discrete portions of his already drafted report, and Dages "left it up to [defense counsel] to decide who the best person is to have a call with." *Id.* at 37:19-38:15. During the call, Dages mistakenly believed that Hildenbrand had input into the development of Zuora's fiscal year 2020 guidance and therefore he used Hildenbrand to confirm certain facts with respect to Zuora's management's decisions concerning the downward revisions. *Id.* at 202:10-15, 28:9-21. But Hildenbrand's deposition testimony proves he was not a reliable confirmatory source for this information. Ex. 13, ECF No. 191-26, at 242:10-14. When asked about Zuora's practices for

developing its guidance, Hildenbrand testified unequivocally that he is not involved in developing guidance and therefore could not respond to how Zuora's guidance was formulated. *Id.*

Defendants now claim that Dages also "interviewed" a second Zuora employee, Rachel Noel. Opp. at 5, 13. But Dages' testimony confirms that Ms. Noel was a passive participant on Dages' same August 4 conference call with Hildenbrand and defense counsel. Dages testified that he did not remember Ms. Noel's name or her role at Zuora, and he could not recall anything Ms. Noel said on the call. *Id.* at 27:11-30:2. Dages further stated that Hildenbrand was the confirmatory source on the call. *Id.*[3]

Next, Defendants contend that Dages "consulted the transcripts of depositions of five senior Zuora witnesses." Opp. at 13. But Dages concedes that none of those depositions touched on the spreadsheets in question and did not use them to verify the spreadsheets' accuracy; instead, Dages accepted without question that the five spreadsheets provided to him by defense counsel were final and complete versions actually relied on by Zuora management. *See, e.g.*, Dages Dep. at 176:23-177:5.

Further, throughout the opposition, Defendants repeatedly contend that because certain of the figures in the spreadsheets given to him by defense counsel "tied out" with numbers found in other Zuora business records, Dages did in fact "confirm" the accuracy of the spreadsheets. Opp. at 10-12, 14. But even if the numbers always "tied out," which they do not (see *infra* § II.A.3), the record does not support this categorical position. Dages admitted, from the beginning, he always assumed the spreadsheets given to him by counsel were accurate. Dages Dep. at 176:23-177:5. Dages' testimony contradicts Defendants' argument that he took steps to verify the accuracy of the spreadsheets. Thus, Dages had no foundation whatsoever for these assumptions. *See Lyman*, 580 F. Supp. 2d at 726 (rejecting expert accountant's argument that underlying projections tied out with other of defendants'

---

[3] In any event, Ms. Noel similarly was not a proper confirmatory source. While Defendants note that Ms. Noel is presently a Director of Revenue Accounting at Zuora, throughout the Class Period, Ms. Noel did not hold a management position with Zuora. *See* Reply Ex. 1 (Ms. Noel's LinkedIn profile). There is no evidence that Ms. Noel authored, received, or contributed to any of the spreadsheets in question. Finally, Defendants did not identify Ms. Noel as an individual likely to have discoverable information in its disclosures. Reply Ex. 2.

documents because "the bottom line is that [the expert] never talked to anyone at [the company] to verify the accuracy of the information in any of the documents he reviewed").

Finally, Defendants contend that because Dages bases his opinions on his quantitative analysis of data contained in the various spreadsheets, his opinions required no corroboration from a witness. Opp. at 13. But Dages does much more than mere numbers crunching.[4] He opines regarding Zuora's management's process for establishing its FY 2020 Q1 revenue guidance (Dages Rep. ¶¶ 20-24), what led management to reducing the guidance (*id.* ¶¶ 25-61), and most critically from the defense perspective the numerical portion of the reduction attributable to the Keystone Integration Issues. *Id.* ¶¶ 15-18. The spreadsheets constitute the foundation for these opinions, about which no witness had testified. Nothing on the face of the spreadsheets indicate that they: (a) were prepared by Zuora's finance department; (b) accurately represented Zuora's sales pipeline and bookings during the relevant period; and (c) were utilized by management in establishing and revising guidance. Dages Dep. at 176:23-177:5. Under these circumstances, Dages was duty-bound to verify the reliability of the data with a knowledgeable source. *See, e.g.*, *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 137, 144 (M.D. Pa. 2015) (expert's "blind adherence to data absent any sort of independent investigation stops short of the type of reliability contemplated by *Daubert*").

### 2. Rule 703 Does Not Obviate Dages' Obligation to Independently Verify the Accuracy of the Facts and Data Underlying his Opinions

Defendants also argue that testifying experts have no duty to verify the reliability of the facts and data underlying their opinions. Opp. at 8. Specifically, Defendants point to Fed. R. Evid. 703, which provides that an expert "may base an opinion on facts or data in the case that the expert has been made aware of," and further makes clear that such facts or data "need not be admissible for the opinion to be admitted" as long as "experts in the particular field would reasonably rely on those

---

[4] Contrary to Defendants' suggestion, *Villalpando v. Exel Direct Inc.*, 2015 WL 1598663, at *3, 20 (N.D. Cal. Apr. 21, 2016), and *S.E.C.* v. *Moshayedi*, 2013 WL 12129282, at *3 (C.D. Cal. 2013), neither hold nor suggest an expert conducting a forensic accounting analysis has no obligation to verify the reliability of the facts and data underlying their opinions. Opp. at 13. In those cases, the propriety of the accounting expert's independent investigation was not at issue.

kinds of facts or data in forming an opinion on the subject." *Id.* Defendants misapply the law under Rule 703 in two material respects.

*First*, contrary to Defendants' assertions, Rule 703 does not eliminate an expert's duty to verify independently the reliability of the facts and data underlying the expert's conclusions; it "merely relaxes, for experts, the requirement that witnesses have personal knowledge of the matter to which they testify." *Claar v. Burlington Northern R.R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994); *see also Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993) (noting that Rule 703's "relaxation of the usual requirement of firsthand knowledge ... is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline"). Consequently, district courts within the Ninth Circuit routinely exclude expert testimony where, as here, the expert fails to evaluate independently the reliability of the facts and data provided by counsel before forming opinions. *See, e.g.*, *Call Delivery Sys., LLC v. Morgan*, 2022 WL 1252412, at *1 (C.D. Cal. Mar. 7, 2022); *Baker v. Firstcom Music*, 2018 WL 2676636, at *2 (C.D. Cal. May 8, 2018).

*Second*, Plaintiffs have offered considerable evidence demonstrating that under the present circumstances, no expert in Dages' field would reasonably rely on the spreadsheets in determining what percentage of the revenue guidance change was due to the product integration failure. *See Lyman*, 580 F. Supp. 2d at 726 (if the data underlying the expert's opinion is "so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded") (quoting *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999)). As an initial matter, by simply relying exclusively on defense counsel to supply him with the documents relevant to the revenue guidance reduction, Defendants cannot credibly maintain that Dages complied with generally accepted forensic accounting practices. Ex. 19, ECF No. 194-7, ¶ 6 (AICPA mandates that professionals "shall … [o]btain sufficient relevant data to afford a reasonable basis for conclusions or recommendations in relation to any professional services performed"). Defendants characterize Plaintiffs' argument that Dages must comply with AICPA guidelines to satisfy Rule 702 and *Daubert* as "novel." Opp. at 14. But courts consider industry guidance as a factor in determining the reliability of the expert's method. *See Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 978 (M.D. Tenn. 2002), *aff'd*, 89 F.

App'x 927 (6th Cir. 2003) (excluding expert engineer's testimony that failed to comply with American Society for Testing and Materials (ASTM) standards, reasoning that "[a]n expert must not compromise his or her own professional standards when acting as an 'expert' in a court of law").

Additionally, as demonstrated in Plaintiffs' rebuttal expert Charles Lundelius' Report, in reaching his opinions, Dages deviated from accepted forensic accounting norms. Ex. 24, ECF No. 191-35 (Lundelius Report), ¶ 34. Rather than looking to the most relevant internal documents to determine why Zuora management decreased revenue guidance (*i.e.*, Board of Director materials), Dages relied on internal Zuora documents that bear no clear relationship with revenue guidance. *Id.*

Finally, in the face of this significant showing, Defendants have offered no rebuttal evidence establishing that experts in the forensic accounting field rely on this kind of information. Nor can they. No reasonable forensic accounting expert would blindly rely on the spreadsheets given their content indicating the document is a "**DRAFT**," metadata reflecting that an individual Defendant made post-litigation modifications to the document, or metadata failing to show that management even received the document. Indeed, these records are the antithesis of information a forensic accounting expert relies on, whose very expertise is to thoroughly vet and verify underlying facts and data in order to generate reasoned conclusions. Accordingly, Rule 703 provides no support for the admissibility of Dages' testimony. *See Lyman*, 580 F. Supp. 2d at 726 (rejecting argument that accountant's testimony should be permitted under Rule 703).

Contrary to Defendants' suggestion, *Mighty Enterprises, Inc. v. She Hong Industrial Co.*, 745 F. App'x 706 (9th Cir. 2018), and *Novoa v. GEO Group, Inc.*, 2020 WL 8514832 (C.D. Cal. Dec. 18, 2020), do not stand for the proposition that a testifying expert has no obligation to independently verify the facts or data provided to them by an interested party. Opp. at 8-9. Rather, these cases hold that courts overrule such objections where a knowledgeable witness has already verified the accuracy of the underlying data and the court has admitted the data into evidence. *See Mighty Enters., Inc.*, 745 F. App'x at 709 (holding that the expert could rely on that defendants' cost data without independent verification since "those numbers had already been admitted into evidence through a Mighty employee"); *Novoa*, 2020 WL 8514832, at *5 (rejecting plaintiffs' challenge to defendants' expert accountant for valuing plaintiffs' lost wage claims for failing to consider actual wages

defendants paid to similar employees, where expert relied on established rates derived from U.S. Immigrations and Customs Enforcement contracts and the Service Contract Act schedules). Here, Defendants have made no such showing.

Likewise, Dages' reliance on the spreadsheets in question is in no way analogous to the economic experts' use of the issuer's internal documents to disaggregate fraud- and non-fraud-related reasons for stock drops in the SeaWorld securities litigation. Opp. at 9 (citing *Highfields Cap. I, LP v. SeaWorld Ent., Inc.*, 2022 WL 1037210, at *15 (S.D. Cal. Apr. 6, 2022); *Baker*, 423 F. Supp. 3d at 904-06). There, the plaintiffs' economic experts independently analyzed the defendants' internal, nonpublic park attendance data, and the defendants did not challenge the reliability of their own data. *Id.* Similarly, Defendants erroneously contend that Plaintiffs' criticism of Dages' reliance on spreadsheets goes merely to the weight of Dages' testimony. Opp. at 9. But courts decide the weight-admissibility distinction by determining "whether the contested flaws are tertiary or central [to] the evidence." *Bruno*, 311 F.R.D. at 140. Here, Plaintiffs do not critique a distant finding in Dages' report or a minor calculation error. Rather, Plaintiffs call into question the reliability of Dages' methodology in reaching his core opinions.[5] Accordingly, Plaintiffs' challenges go directly to the threshold question of admissibility, not Dages' credibility.

**3.    Defendants Cannot Cure the Methodological Defects in Dages' Opinions by Claiming the Spreadsheets Are Business Records that Will Later Come into Evidence Through Unnamed Lay Witnesses at Trial**

Defendants attempt to downplay the serious accuracy and reliability questions the spreadsheets' content and metadata present as "red herring" criticisms that "have no force at this stage of the case, and do not render Dages' analysis unreliable or improper." Opp. at 9-10. But these challenges undermine the soundness of Dages' methodology and the sufficiency of the facts and data underlying Dages' opinions—the very issues courts decide at the *Daubert* motion stage. *See, e.g.*,

---

[5] *In re EPD Inv. Co., LLC*, 587 B.R. 711, 719 (C.D. Cal. 2018), is inapposite. Opp. at 9. There, the expert cured the perceived defects in relying on unaudited financial statements instead of tax returns by submitting a supplemental declaration indicating that he had in fact reviewed the tax returns in question and they did not change his conclusion. Since the expert easily cured the identified error, the court held the challenge went to the weight of the expert's testimony, not admissibility. *Id.* Here, Dages cannot go back in time to cure his flawed process.

*Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1114 (N.D. Cal. 2011) (*Daubert* requires that an expert witness base opinion testimony "upon sufficient facts or data").

Next, Defendants' unsupported contention that the spreadsheets qualify as "business records" does not magically render Dages' opinions reliable. Opp. at 10. Defendants neglect to make the requisite showing. And even assuming that a proper witness ultimately attests that the spreadsheets are Zuora business records, that fact alone lends nothing to resolve Dages' serious methodological flaws. Establishing the spreadsheets as Zuora business records is not tantamount to establishing that Zuora management actually used the spreadsheets in the manner in which Dages opines. In other words, there *was* no foundation for the spreadsheets at the time Dages rendered his opinions, and there surprisingly *remains* no foundation for them even now. Therefore, Dages' opinions based on such foundationless information cannot reach the jury. Defendants cannot fill in the foundational holes with these critical documents now, when they *already* form the basis for Dages' expert opinions.

Defendants further suggest that even though Dages did not properly rely on a Rule 701 lay witness to substantiate his opinions, Defendants can cure that defect through unnamed foundational witnesses that Defendants will present at trial. Opp. at 11. Defendants offer no authority for this novel position. A party cannot satisfy the foundation for an expert's opinion by their counsel representing that the foundation will come—for the first time—later at trial. That violates *Daubert* and its progeny, not to mention Federal Rule of Civil Procedure 26(a)(1). The time to lay a proper foundation for Dages' opinions has long passed. Permitting undisclosed witnesses to suddenly testify at trial to shore up the foundational defects of Dages' opinions would substantially prejudice Plaintiffs. Defendants cannot fix the glaring foundational deficiencies in Dages' methodology and opinions after the fact.

More fundamentally, this "alleviation" in no way renders Dages' opinions reliable. Even if the spreadsheets come into evidence, it still does not fix Dages' flawed methodology. Dages' complete failure to investigate the basis for the underlying facts, the data, or his own assumptions all mean that he has no methodological basis, let alone one rooted in his accounting background, to offer the opinions he made. *See, e.g.*, *Lyman*, 580 F. Supp. 2d at 726.

In any event, as explained below, Defendants fail to mollify the principal concerns Plaintiffs raise regarding the spreadsheets' trustworthiness.

### a.   ZUO_00448803 (CTTP reconciliation plans (Q1'20).xlsx) is an Unreliable "DRAFT" Document

For example, Defendants claim ZUO_00448803 (CTTP reconciliation plans (Q1'20).xlsx) is a business record used by Zuora employees to record and forecast Zuora's sales commit and "Closest to the Pin" ("CTTP") figures in early 2019 maintained by Zuora's Go-to-Market team in 2019 and collected from the Company's Google Drive. Opp. at 10. While Defendants concede that portions of the document indicate it is a "DRAFT," Defendants submit the "DRAFT" notation is specific only to the second "CTTP summary" tab of the spreadsheet, not the entire Excel file, including the tab Dages relies on labeled "RevPro (315)." *Id.* Tellingly, Defendants provide no declaration or record cites for these representations. *Id.* Moreover, while Defendants note that the $15.548 million projected sales figure derived from this document ties out to the projected sales figure provided to Zuora's Board of Directors on February 28, 2019, Defendants fail to substantiate Dages' speculation that Zuora's management used this record to generate its forecast for new bookings. *Id.*

### b.   ZUO_00448808 (FY'20Q1 Pipeline vs. Close.xlsx) Remains a Mystery

Similarly, Defendants represent that ZUO_00448808 is a compilation of Zuora's Q1 FY 2020 Salesforce data generated by Zuora Financial Planning & Analysis employee Boris Goldenberg and maintained in the regular course of Zuora's business. Opp. at 11. But again, Defendants provide no declaration or record cite for these representations. *Id.* Additionally, Defendants fail to explain why the metadata for the document identifies no individual custodian or creation date for the document. *Id.* Further, Defendants provide no assurance that this is a final and complete document accurately reflecting all of the deals booked by the close of Q1 FY 2020. *Id.* Finally, while Defendants claim the spreadsheet's data "ties out" to other record evidence, each of the cited documents identifies a different total dollar amount for the Q1 Closed Deals. *See* Ex. 1, ECF No. 191-15 (Dages Rep.), at Ex. 9 nn.2-4 (citing ZUO_00448808 (Ex. 15, ECF No. 191-28) at "Q1 Closed Deals" tab (noting ███████████████████); ZUO_00000992, -1014, -1025 (Ex. 7, ECF No.191-21) (reflecting

██████████████████████████); and ZUO_00001166, -175-76 (MSJ Ex. 30, ECF No. 187-8) (May 22, 2019 Board of Director minutes reflecting roughly ██████████████████████)).

####    c.    ZUO_00327212: Sloat's Post-Litigation Modifications Still Unexplained

Once again, Defendants present no affidavit or citation to record evidence for their statement that ZUO_00327212 is a business record that was created by Zuora's Corporate Financial Planning & Analysis team in May 2019 for purposes of outlining revenue and financial guidance scenarios. Opp. at 11. Additionally, Defendants fail to disclose the nature of the modification Defendant Sloat apparently made to the document in August 2019, four months after the commencement of this litigation. *Id.* Further, Defendants do nothing to address the plausible conclusion that this document is a draft superseded by another document. In particular, Defendants persist in claiming that Zuora management selected revenue Scenario D, when the Whiteboard tab of the spreadsheet plainly indicates that management was leaning toward revenue Scenario C at the time the document was drafted. *Cf.* Opp. at 12 *with* Ex. 18, ECF No. 191-30, at Whiteboard tab. Finally, Defendants confirm that the sole basis for using the formula embedded in Scenario D in the Subscription Revenue tab as a basis for his calculations was through his brief confirmatory call with Hildenbrand. Opp. at 12. But Hildenbrand testified at his deposition that he was not involved in developing the guidance. Ex. 13, ECF No. 191-26, at 242:10-14. Accordingly, Hildenbrand is not competent to confirm whether this is the actual formula Zuora management utilized in developing Zuora's guidance. *Id.*

####    d.    ZUO_00448805 and ZUO_00448806: No Explanation of Their Relationship to Fiscal Year Guidance

Lastly, Defendants again present no affidavit or citation to supporting evidence for their statement that Zuora's financial services team used ZUO_00448805 and ZUO_00448806, the annual fiscal year 2020 financial plan for Zuora's Global Services segment, to provide inputs to define Zuora's external guidance. Opp. at 12. Likewise, Defendants fail to explain the relationship, if any, between Zuora's internal Fiscal Year 2020 Plan and the revenue guidance Zuora provides to investors. As noted in Plaintiffs' motion, changes to the Fiscal Year Plan are not at all equivalent to

changes in Zuora's guidance. Mot. at 3.[6] For example, professional services revenue in the FY 2020 Plan declined by approximately $9 million from March to April/May 2019, whereas professional services revenue in the guidance declined by $11 million. *Id.* But just like Dages, Defendants fail to address this significant discrepancy. Dages Dep. at 209:13-19 ("Q. Changes to the fiscal year 2020 plan and forecasted revenue were not equivalent to changes in revenue guidance; correct? … A. If your question was, did they match dollar for dollar, I think it's fair to say the answer to that is no.").

In sum, defense counsel's clarifications and additional information regarding the spreadsheets are unavailing. Even accepting these representations as true, they in no way cure the undeniable fact that Dages' methodology was such that he believed it proper to render opinions based on facts and data for which he had no foundation and sufficient indicia of reliability. This alone dooms Dages' expert opinions.

**B.    Dages' Testimony Adds No Value and Usurps the Jury's Role**

Defendants' opposition confirms that Dages' testimony is inadmissible for the additional reason that it amounts to summaries of the spreadsheets in question that do not involve any actual expert analysis or application of any generally accepted accounting principle, but instead "invade[] the authority of the trier of fact to determine for itself the plain meaning of the facts and the documents." *In re Novatel Wireless Sec. Litig.*, 2011 WL 5827198, at *5 (S.D. Cal. Nov. 17, 2011). As noted above, Defendants contend the spreadsheets cited by Dages will independently come into evidence through Zuora witnesses. Opp. at 9-10. Moreover, Defendants fail to dispute that defense counsel can easily raise the same points Dages raises to the jury. Defendants also acknowledge that Dages encountered several instances in which management failed to document its reasoning for making adjustments to its revenue guidance, forcing Dages to speculate as to management's rationale and decisions. *Id.* at 19-20.[7] Defendants further do not dispute Dages' testimony that, rather than

_____

[6] Lead Pls.' Mot. to Exclude Expert Testimony of Kevin Dages ("Mot."). ECF No. 194.

[7] Specifically, Defendants concede Dages is unable to substantiate management's rationale for the $2.7-$3 million buffer between Zuora's internal calculations in the Sub Revenues tab of ZUO_00327212 and Zuora's revised guidance. Opp. at 19. Likewise, they concede Dages is unable to answer why Zuora's revenue guidance range appears to have changed from $70 to $72 million on May 20, 2019, to $68 to $72 million on May 30, 2019. *Id.* at 20.

him, "the people who prepared" the spreadsheets "would be the best source" for telling the jury how these documents were actually used. Dages Dep. at 177:18-178:1. Thus, it is unclear what probative value Dages' testimony adds for the jury. Instead, under these circumstances, Dages' testimony will "muddy the uncomplicated facts with his facade of expertise." *Waymo LLC v. Uber Techs., Inc.*, 2017 WL 6887043, at *6 (N.D. Cal. Nov. 14, 2017). This is all the more true since the spreadsheets were intended for a lay audience—*i.e.*, Zuora's management. *See also, e.g.*, *In re Novatel*, 2011 WL 5827198, at *4 ("[The expert] quotes selectively from e-mails and prior sworn testimony …. [N]o specialized or technical knowhow is required to read and draw conclusions from the internal documents and testimony cited by [the expert].").[8]

Likewise, Defendants put up no credible defense for the admissibility of Dages' argumentative narrative summaries of documentary evidence. For example, in § IV.A. of his report, Dages describes the background and import of Zuora's internal Keystone Integration by summarizing portions of Hildenbrand's deposition testimony and the contents of various Zuora business records and executive and Board presentations. Ex. 1, ECF No. 191-15, ¶¶ 15-18. Defendants mischaracterize such commentary as "necessary background to explain how he reached his conclusions." Opp. at 18. But in truth, Dages cites the evidence to support his improper observation that Keystone Issues were of minimal economic consequence to Zuora—a disputed fact matter outside of Dages' accounting expertise that the jury will decide after a full presentation of the evidence (*id.*, ¶ 19). *See, e.g.*, *Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 757575, at *27

---

[8] The authorities Defendants cite, Opp. at 16-17, do not suggest Dages' opinions will be helpful to the jury. In *U.S. v. Nixon*, 694 F.3d 623, 628 (6th Cir. 2012), *JH Kelly, LLC v. AECOM Tech. Servs., Inc.*, 605 F. Supp. 3d 1295 (N.D. Cal. 2022), *Glam & Glits Nail Design, Inc. v. iGel Beauty, LLC*, 2022 WL 3012522, at *9 (C.D. Cal. June 24, 2022), and *Moshayedi*, 2013 WL 12129282, at *3, the forensic accountants analyzed financial records and public disclosures based on generally accepted accounting principles. Here, by contrast, Dages analyzes Zuora's internal documents and provides cumulative testimony as to how Zuora management used them. Defendants' remaining cases relate to event studies prepared by expert economists offered to assist the jury in isolating stock declines associated with market-wide and industry-wide downturns from those specific to the company itself; Dages does not offer any market event study here. *See, e.g.*, *In re Vivendi Univ., S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009); *Turocy v. El Pollo Loco Holdings, Inc.*, 2018 WL 3343493, at *19 (C.D. Cal. July 3, 2018); *Hayes v. MagnaChip SemiConductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) (similar); *In re Imperial Credit Indus., Inc. Sec. Litig.*, 252 F. Supp. 2d 1005, 1015 (C.D. Cal. 2003).

(N.D. Cal. Feb. 20, 2015) (striking testimony "replete with observations and inferences that jurors are perfectly capable of making for themselves without [expert] assistance").

## C.    Dages' Opinions Do Not "Fit" the Case

Defendants' opposition fails to articulate how Dages' testimony—that Zuora's forecasted FY 2020 cross-sells changed little between early March 2019 (when Zuora had already decided to pause all cross-sells until at least June 2019) and the end of April 2019—has any bearing on loss causation and damages. To establish loss causation, Plaintiffs need not show that a misrepresentation was the *sole reason* for the investment's decline, but a *substantial* factor in causing the loss. *See*, *Mineworkers' Pension Scheme v. First Solar Inc.*, 881 F.3d 750, 751-52 (9th Cir. 2018). Consistent with Dages' testimony, Defendants do not dispute that Zuora's abandonment of the Keystone project in early March 2019 in favor of developing the new K2 approach prevented sales personnel from cross-selling to new customers, as well as upselling to Zuora's 20 Keystone customers. Dages Dep. at 72:14-20, 83:3-15, 121:4-9. Also, in line with Dages' testimony, Defendants do not challenge that had Zuora possessed the ability to cross-sell/upsell this customer group, as they led investors to believe, Zuora would have met or exceeded the bookings target underlying its FY 2020 revenue guidance. *Id.* at 117:4-118:9. Nor can they. Defendant Tzuo identified the Keystone Integration failure and the resulting sales execution issues as the sole "reason" for the bookings shortfall in Q1 FY 2020, which led to the downward guidance reduction. *See* Ex. 8, ECF No. 191-22, at ZUO_00003940. Defendants' opposition provides no answer as to why this admissible evidence fails to conclusively show that the misrepresented and omitted facts (*i.e.*, the integration failure and the corresponding sales execution issues) directly and foreseeably caused the dismal outlook, the decline in Zuora's stock, and resulting investor losses.

Instead, Defendants' sole basis for arguing that Dages' opinions fit this case is to change the facts and ignore market reality. Defendants argue that Dages' method of analyzing the change in FY 2020 revenue guidance hues to loss causation and properly measures investors' damages because Zuora's initial FY 2020 revenue published on March 21, 2019 "had already taken steps to account for the anticipated revenue impact of Keystone." Opp. at 22. But Defendants did not disclose this material fact to investors on March 21, 2019. Zuora management also did not disclose that they

based Zuora's initial FY 2020 revenue projections on their reckless belief that they could make up for their inability to cross-sell/upsell by aggressively pushing RevPro or Billing individually on non-cross-sold customers at the end of the quarter. Nevertheless, to accept Dages' opinions and utilize it in any damages estimate, one must erroneously assume these concealed facts were known to the market and reflected in Zuora's stock price as of May 30, 2019.

The cases Defendants cite where courts permitted experts to rely on internal company documents to assist in their disaggregation analysis undermines Dages' testimony.[9] In each of those cases, the plaintiff's economic expert prepared an event study, made an affirmative determination regarding the company-specific confounding information released on the disclosure date, and quantified both the confounding and fraud-related factors' impact on the stock price decline. Thereafter, the expert used internal company documents, in combination with other economic evidence, to substantiate the expert's conclusions regarding the portion of the stock drop attributable to the fraud. Here, in contrast, neither Dages nor any of Defendants' other experts have conducted this analysis or offer these opinions. Rather, Dages (and Defendants) improperly attempts to use the materially, non-public information reflected in the Zuora's internal documents (*i.e.*, the Billing-RevPro integration failure and Zuora's inability to upsell/cross-sell) as indicative of what the market knew prior to the corrective disclosure.

### III.    CONCLUSION

Based on the foregoing, the Court should exclude the expert report of Dages and any testimony or evidence relying thereon.

DATED: February 17, 2023                    Respectfully submitted,

                                            */s/ Steve W. Berman*
                                            Steve W. Berman (pro hac vice)
                                            **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                            1301 Second Avenue, Suite 2000
                                            Seattle, WA 98101
                                            Telephone: (206) 623-7292
                                            Facsimile: (206) 623-0594
                                            Email: steve@hbsslaw.com

---

[9] Opp. at 24 (citing *Highfields Cap. I, LP,* 2022 WL 1037210, at *15; *Baker*, 423 F. Supp. 3d at 904-06; *In re Xerox Corp. Sec. Litig.*, 746 F. Supp. 2d 402, 413 (D. Conn. 2010)).

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand Methodist Trust Association*