1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Steve Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>                                     Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>                                     Defendants. | No. 3:19-cv-03422-SI<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: Friday, June 23, 2023<br>Hearing Time: 10:00 a.m.<br>Courtroom: 1 – 17th Floor<br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

**Page**

I.      PRELIMINARY STATEMENT ..................................................................... 2

II.     OVERVIEW OF THE LITIGATION .............................................................. 3

    A.    Factual Background ............................................................ 3

    B.    Procedural History ............................................................ 4

III.    THE PROPOSED SETTLEMENT ................................................................. 6

IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ........................... 9

    A.    Standards Governing Approval of a Class Action Settlement ................................. 9

    B.    The Court "Will Likely Be Able to" Approve the Proposed Settlement
        Under Rule 23(e)(2) ......................................................... 11

        1.    Lead Plaintiff and Lead Counsel have adequately represented the
            Settlement Class. ...................................................... 11

        2.    The proposed settlement is the result of good faith, arm's-length
            negotiations by informed, experienced counsel who were aware of
            the risks of litigation. ................................................. 12

        3.    The settlement provides adequate relief for the Settlement Class. ........... 13

            a.    The costs, risks, and delay of trial and appeal support
                approval of the settlement. .......................................... 14

            b.    The proposed method for distributing relief is effective. .............. 16

            c.    Proposed attorneys' fees, expenses, and Lead Plaintiff's
                award. ............................................................... 17

            d.    Identification of agreements. ........................................ 19

        4.    The proposed Plan of Allocation treats Settlement Class Members
            equitably and does not confer preferential treatment. ...................... 20

    C.    The Remaining Ninth Circuit Factors Support Preliminary Approval of the
        Settlement ................................................................... 21

        1.    The extent of discovery completed and the stage of the proceedings
            at which the settlement was achieved strongly support preliminary
            approval. .............................................................. 21

        2.    Risks of maintaining class action status through trial. ..................... 22

3.      Experience and views of counsel. ............................................................. 22

V.      THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE
        PSLRA,  AS WELL AS DUE PROCESS REQUIREMENTS ...................................... 23

VI.     THE PROPOSED CLAIMS ADMINISTRATOR .......................................... 24

VII.    PROPOSED SCHEDULE OF EVENTS ....................................................... 25

VIII.   CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) ........................................................................ 10

*Alexander* v. *FedEx Ground Package Sys.*,
   2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ........................................................ 20

*In re Allergan, Inc. Proxy Violation Deriv. Litig.*,
   2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ........................................................ 17

*In re Am. Apparel, Inc. S'holder Litig.*,
   2014 WL 10212865 (C.D. Cal. July 28, 2014) ...................................................... 15

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................ 15

*Booth v. Strategic Realty Tr., Inc.*,
   2015 WL 6002919 (N.D. Cal. Oct. 15, 2015) ........................................................ 13

*Bower v. Cycle Gear, Inc.*,
   2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) ...................................................... 16

*In re Celera Corp. Sec. Litig.*,
   2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) .................................................. 9, 15

*Ciuffitelli v. Deloitte & Touche LLP*,
   2019 WL 1441634 (D. Or. Mar. 19, 2019) ............................................................ 21

*Craft v. Cty. of San Bernardino*,
   624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................ 18

*In re CV Therapeutics, Inc. Sec. Litig.*,
   No. 03-cv-03709-SI (N.D. Cal. Apr. 4, 2007) ...................................................... 18

*Davis et al. v. Yelp, Inc. et al.*,
   No. 18-cv-00400-EMC (N.D. Cal. Jan. 27, 2023) ................................................ 18

*In re ECOtality, Inc. Sec. Litig.*,
   2015 WL 5117618 (N.D. Cal. Aug. 28, 2015)........................................................ 22

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)................................................................................................ 23

*In re Extreme Networks, Inc. Sec. Litig.*,
　2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................................. 10, 11, 12

*Fleming et al. v. Impax Labs. Inc. et al.*,
　No. 16-cv-06557-HSG (N.D. Cal. July 15, 2022) ...................................................................... 18

*Foster v. Adams & Assocs., Inc.*,
　2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ................................................................................. 13

*In re Gilead Scis. Sec. Litig.*,
　No. 03-cv-04999-SI (N.D. Cal. Nov. 5, 2010) ............................................................................ 18

*Griffith v. Providence Health & Servs.*,
　2017 WL 1064392 (W.D. Wash. Mar. 21, 2017) ...................................................................... 12

*In re Haier Freezer Consumer Litig.*,
　2013 WL 2237890 (N.D. Cal. May 21, 2013) ............................................................................ 10

*Hanlon v. Chrysler Corp.*,
　150 F.3d 1011 (9th Cir. 1998) ................................................................................................ *passim*

*Hayes v. MagnaChip Semiconductor Corp.*,
　2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) .......................................................................... 15

*Hefler v. Wells Fargo & Co.*,
　2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ............................................................................ 20

*Hefler v. Wells Fargo & Co.*,
　2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................................. 11, 13, 15

*In re Hyundai & Kia Fuel Econ. Litig.*,
　926 F.3d 539 (9th Cir. 2019) ....................................................................................................... 9

*Lane v. Facebook, Inc.*,
　696 F.3d 811 (9th Cir. 2012) ..................................................................................................... 10

*In re LendingClub Sec. Litig.*,
　2018 WL 1367336 (N.D. Cal. Mar. 16, 2018) ........................................................................ 8, 10

*In re LinkedIn User Privacy Litig.*,
　309 F.R.D. 573 (N.D. Cal. 2015) ............................................................................................... 14

*Low v. Trump Univ., LLC*,
　881 F.3d 1111 (9th Cir. 2018) .................................................................................................... 19

*Mendoza v. Hyundai Motor Co.*,
　2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ............................................................................. 10

*In re Merit Med. Sys., Inc., Sec. Litig.*,
　No. 19-cv-02326-DOC (C.D. Cal. Apr. 15, 2022) ................................................................... 18

*In re MGM Mirage Sec. Litig.*,
 708 F. App'x 894 (9th Cir. 2017) ........................................................................................ 23

*Mild v. PPG Indus., Inc.*,
 2019 WL 3345714 (C.D. Cal. July 25, 2019) ...................................................................... 11

*Nelson v. Bennett*,
 662 F. Supp. 1324 (E.D. Cal. 1987) ...................................................................................... 9

*Norton v. LVNV Funding, LLC*,
 2021 WL 3129568 (N.D. Cal. Jul. 23, 2021) ...................................................................... 14

*In re NVIDIA Corp. Deriv. Litig.*,
 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ..................................................................... 22

*In re Omnivision Tech., Inc.*,
 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... 17, 22

*In re Portal Software, Inc. Sec. Litig.*,
 2007 WL 1991529 (N.D. Cal. June 30, 2007) ..................................................................... 12

*In re Portal Software, Inc. Sec. Litig.*,
 2007 WL 4171201 ................................................................................................................ 23

*Rabkin v. Lion Biotechnologies, Inc.*,
 No. 17-cv-02086-SI (N.D. Cal. Apr. 17, 2019) .................................................................... 8

*In re Restoration Robotics, Inc. Sec. Litig.*,
 2021 WL 4124089 (N.D. Cal. Sept. 9, 2021) ...................................................................... 19

*In re RH, Inc. Sec. Litig.*,
 2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) ...................................................................... 24

*Rieckborn v. Velti PLC*,
 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) .......................................................................... 21

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ...................................................................................... 9, 12, 22

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) ............................................................................................... 17

*Steiner v. Am. Broadcasting Co.*,
 248 F. App'x 780 (9th Cir. 2007) ........................................................................................ 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ....................................................................... 18

*Vataj v. Johnson*,
 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ...................................................................... 23

*In re Vivendi Universal, S.A., Sec. Litig.*,
 2012 WL 362028 (S.D.N.Y. Feb. 6, 2012) ................................................................. 15

*In re Wash. Public Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ...................................................................................... 17

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
 2019 WL 13020734 (N.D. Cal. May 14, 2019) ................................................ 9, 13, 20, 23

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
 445 F. Supp. 3d 508 (N.D. Cal. 2020) ........................................................................ 19

*West v. Circle K Stores, Inc.*,
 2006 WL 1652598 (E.D. Cal. June 13, 2006) ................................................................. 9

*Wong v. Arlo Techs., Inc.*,
 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ................................................................ 14

*In re Zynga Inc. Sec. Litig.*,
 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................................ 14

### OTHER AUTHORITIES

28 U.S.C. § 1715 (2005) ................................................................................................. 24

Fed. R. Civ. P. 23(e)(1)–(2) ....................................................................................... 9, 10

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................ 10

*Procedural Guidance for Class Action Settlements* (N.D. Cal.),
 https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-
 settlements/ ......................................................................................................... *passim*

Securities Class Action Settlements, 2021 Review and Analysis by Cornerstone
 Research, https://www.cornerstone.com/wp-
 content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-
 and-Analysis.pdf ....................................................................................................... 13

Securities Class Action Settlements, 2022 Review and Analysis by Cornerstone
 Research, https://www.cornerstone.com/wp-
 content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-
 and-Analysis.pdf ..................................................................................................... 3, 13

1

## NOTICE OF MOTION AND MOTION

2

**TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3

**PLEASE TAKE NOTICE** that on Friday, June 23, 2023, at 10:00 a.m. PST, or as soon

4  thereafter as counsel may be heard, Lead Plaintiff and Class Representative New Zealand Methodist

5  Trust Association ("MTA," "Lead Plaintiff," or "Class Representative"), on behalf of itself and all

6  members of the certified Class, will and do hereby move the Court for an Order, pursuant to Rule

7  23 of the Federal Rules of Civil Procedure: (1) preliminarily approving the proposed settlement

8  ("Settlement") of this action as set forth in the Stipulation;[1] (2) approving the form and manner of

9  giving notice of the proposed Settlement to the Settlement Class; (3) scheduling a hearing before

10  the Court to determine whether the proposed Settlement, the proposed Plan of Allocation, and Lead

11  Counsel's motion for an award of attorneys' fees and litigation expenses, including an Award to

12  Lead Plaintiff, should be approved; and (4) providing such other and further relief as this Court

13  deems just and proper.

14

This motion is based on the Memorandum of Points and Authorities below, the Declaration

15  of Steve Berman and exhibits attached thereto, all prior pleadings in this Action, and such additional

16  evidence or argument as may be requested by the Court.

17

A [Proposed] Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class

18  Action Settlement, For Issuance of Notice to the Class, and for Scheduling of Fairness Hearing

19  ("Preliminary Approval Order") is also submitted herewith as Exhibit A to the Stipulation.

20

## STATEMENT OF ISSUES TO BE DECIDED

21

1.    Whether the proposed $75,000,000.00 cash recovery and the other terms of the

22  proposed Settlement of this action are within the range of fairness, reasonableness, and adequacy

23  to warrant the Court's preliminary approval and the dissemination of notice of its terms to

24  Settlement Class Members.

25

_____

26

[1] All capitalized terms not defined herein shall have those meanings as set forth in the
Stipulation and Agreement of Settlement dated May 12, 2023 ("Stipulation"), a true and correct

27  copy of which is attached as Exhibit 2 to the Declaration of Steve W. Berman in Support of Lead
Plaintiff's Motion for Preliminary Approval of Proposed Class Action Settlement ("Berman

28  Decl."). Emphasis is added and citations are omitted throughout unless otherwise noted.

2.     Whether the Court should approve the form and substance of the proposed Notice of Pendency and Proposed Settlement of Class Action ("Notice"), Proof of Claim and Release ("Proof of Claim"), and the Summary Notice of Proposed Settlement of Class Action ("Summary Notice"), appended as Exhibits A-1 through A-3 to the Stipulation, as well as the manner of notifying the Settlement Class of the proposed Settlement and the Agreement.

3.     Whether the Court should set a date for a hearing to determine whether the Settlement and the Plan of Allocation should be finally approved and to consider Lead Counsel's application for an award of attorneys' fees and payment of expenses, including an Award to Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4) ("Fairness Hearing").

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    PRELIMINARY STATEMENT

Lead Plaintiff and Defendants Zuora, Inc. ("Zuora"), Tien Tzuo, and Tyler Sloat (collectively, "Defendants" and with Lead Plaintiff, the "Settling Parties") have reached a proposed Settlement of this securities fraud suit brought on behalf of a certified class consisting of all persons and entities who purchased or otherwise acquired the publicly traded common stock of Zuora from April 12, 2018, through May 30, 2019, inclusive (the "Class Period"), and were damaged thereby, in exchange for $75,000,000.00 (seventy-five million U.S. dollars) in cash. Lead Plaintiff now moves the Court, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, applicable Ninth Circuit precedent, and the guidelines set forth in the Northern District of California's *Procedural Guidance for Class Action Settlements* ("N.D. Cal. Guid.")[2] to preliminarily approve the proposed Settlement.

The Settling Parties reached the proposed Settlement on the eve of the Court's hearing on Defendants' motion for summary judgment and Lead Plaintiff's motions to exclude three of Defendants' experts, which came after almost four years of hard-fought litigation and at a time when the Settling Parties were aware of the strengths and potential weaknesses of their respective positions. As set forth below, the Settlement was reached following multiple negotiations between

---

[2] The Guidelines may be accessed at https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.

experienced counsel with the assistance of Robert A. Meyer, Esq. of JAMS, a well-regarded mediator who has extensive experience in complex securities litigation. The Settlement Amount, which represents approximately 21% of the estimated maximum damages in this case, and 138% of damages had the jury accepted Defendants' view of Lead Plaintiff's potential recovery, is an excellent result for the Settlement Class and falls significantly above the typical range of approvals.

Prior to reaching the Settlement, Lead Plaintiff had, among other things, (1) filed a detailed Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 60); (2) litigated Defendants' motion to dismiss; (3) completed extensive fact discovery involving the exchange of over 50,000 documents encompassing over 400,000 pages between the Settling Parties and more than a dozen fact witness depositions; (4) successfully obtained class certification; (5) distributed notice of the pendency of this action to more than 50,000 potential class members; (6) completed expert discovery, involving the exchange of six expert reports and five expert witness depositions; (7) briefed Defendants' motion for summary judgment; and (8) briefed three *Daubert* motions. Against this background, when evaluating the merits of the Settlement, Lead Plaintiff recognized that, even if they were to prevail at trial, Defendants likely would appeal any favorable judgment, delaying and possibly jeopardizing any recovery.

The Settlement is thus exceptional. The recovery is five times greater than the median recovery obtained in such cases last year.[3] Accordingly, Lead Plaintiff respectfully submits that the Settlement is in the best interests of the Settlement Class, represents a significant recovery, and merits preliminary approval.

## II.    OVERVIEW OF THE LITIGATION

### A.    Factual Background

Lead Plaintiff alleged that during the Class Period, Defendants made materially false and misleading statements in violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, and § 20(a) of the Exchange Act, which caused the

---

[3] *See* Securities Class Action Settlements, 2022 Review and Analysis by Cornerstone Research, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (observing that the 2022 median and average settlement was a percentage of "simplified tiered damages" of 3.6% and 5.4%, respectively).

price of Zuora stock to trade at artificially inflated prices. Specifically, Lead Plaintiff alleged that Defendants misled investors during the Class Period by making public statements and omissions that did not reflect the actual state of the functionality of Zuora's platform as a combined solution, the integrated nature of its flagship products, Billing and RevPro, and Zuora's path for growth via cross-selling and upselling Billing and RevPro. Lead Plaintiff alleged that persons who purchased Zuora stock during the Class Period suffered economic losses when the price of Zuora stock declined as a result of the May 30, 2019 disclosure of the integration failure, sales execution issues, and disappointing financial performance and outlook. Defendants deny Lead Plaintiff's allegations.

**B.    Procedural History**

On June 14, 2019, plaintiff Casey Roberts filed the instant action. ECF No. 1. Following the submission of various motions to appoint lead plaintiffs and lead counsel, by Order dated September 9, 2019 (ECF No. 55), the Court appointed New Zealand Methodist Trust Association as Lead Plaintiff and Hagens Berman Sobol Shapiro LLP as lead counsel in this action.

Lead Plaintiff filed the operative Complaint on November 8, 2019. ECF No. 60. The Complaint asserted claims on behalf of all persons who purchased or otherwise acquired Zuora's common stock between April 12, 2018, and May 30, 2019, inclusive. Defendants thereafter moved to dismiss the Complaint. ECF No. 64. Lead Plaintiff opposed the motion (ECF No. 67), and on April 28, 2020, the Court denied Defendants' motion in its entirety (ECF No. 75).

Defendants answered the Complaint on June 11, 2020 (ECF No. 84), and the Parties began formal fact discovery in June 2020. Berman Decl. ¶ 5. Lead Plaintiff served 74 document requests (*id.*) and the parties held extensive discussions regarding the method and form of Defendants' document production, including negotiating an ESI protocol (ECF No. 95), protective order (ECF No. 94), search terms, and custodians. Berman Decl. ¶ 5. Ultimately, Defendants produced more than 54,000 documents (encompassing over 400,000 pages) from over 15 custodians, along with dozens of hours of video recordings of internal meetings involving Zuora executives. *Id.* After comprehensively reviewing the document discovery and video recordings, Lead Plaintiff conducted 10 fact witness depositions, including the examinations of Defendants Tzuo and Sloat. Lead Plaintiff also served Requests for Admissions to Defendants (*id.*) and issued subpoenas to three

Zuora third-party customers, which resulted in additional document discovery. *Id.* In addition, Lead Plaintiff produced over 9,000 pages of document discovery, sat for a deposition, and provided responses to two sets of document requests and interrogatories. *Id.* Lead Plaintiff also participated in the depositions of four confidential witnesses referenced in the Complaint. *Id.*

On December 4, 2020, Lead Plaintiff filed a motion for class certification, appointment of class representative, and appointment of class counsel. ECF. No. 100. Lead Plaintiff's class certification motion included the Expert Report of Tavy Ronen, Ph.D., who opined on, among other issues, the efficiency of the market for Zuora common stock and a methodology for calculating classwide damages. ECF No. 101-1.

On March 15, 2021, the Court granted Lead Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel (ECF No. 113) after Defendants declined to oppose the motion (ECF No. 112). That Order certified a class of all persons and entities who purchased or otherwise acquired publicly-traded common stock of Zuora during the period from April 12, 2018, through May 30, 2019, inclusive, and were damaged thereby (ECF No. 113). The Court also appointed New Zealand Methodist Trust Association as Class Representative and Hagens Berman Sobol Shapiro LLP as Class Counsel. *Id.*

On June 24, 2022, the Court issued its Order approving the Dissemination of Class Notice (ECF No. 151), which required that any persons or entities that chose to exclude themselves from the Class do so by October 30, 2022. After the Court issued the Order, the Court-appointed administrator, Epiq Systems, Inc., began distributing notice of the Class Action to potential class members on August 12, 2022. ECF No. 243. As of April 5, 2023, over 51,000 class notices were disseminated to potential class members and nominees by First-Class Mail. *Id.* Three valid and timely requests to be excluded from the Class were returned. *Id.*

After the close of fact discovery in May 2022, the parties engaged in extensive expert discovery on issues including materiality, loss causation, damages, corporate disclosure requirements, and software development norms and practices. Berman Decl. ¶ 8. Defendants produced four expert reports and one expert rebuttal report. *Id.* Lead Plaintiff then took the depositions of all four of Defendants' expert witnesses. *Id.* Lead Plaintiff produced one expert

1  report and two expert rebuttal reports. *Id.* Lead Plaintiff defended the depositions of both of its

2  expert witnesses. *Id.*

3      On December 9, 2022, Defendants filed a motion for summary judgment on all of Lead

4  Plaintiff's claims. ECF No. 185. As part of that motion, Defendants also sought to exclude both of

5  Lead Plaintiff's loss causation/damages experts. *Id.* On January 27, 2023, Lead Plaintiff filed its

6  opposition to the summary judgment motion. ECF No. 219. Defendants filed their reply in support

7  of the summary judgment motion on February 17, 2023. ECF No. 229.

8      The same day Defendants filed their summary judgment motion, Lead Plaintiff filed three

9  separate motions to exclude testimony from three of Defendants' experts (ECF Nos. 192–194).

10  Defendants filed their responses on January 27, 2023 (ECF Nos. 211–213), and Lead Plaintiff filed

11  its replies on February 17, 2023 (ECF Nos. 234–236).

12      During the course of the litigation, the parties engaged a third-party mediator, Robert A.

13  Meyer, Esq., of JAMS. Berman Decl. ¶ 11. After the submission of comprehensive mediation

14  statements and other materials concerning the parties' respective views on the merits of the

15  litigation, the parties participated in a mediation via videoconference with Mr. Meyer on January

16  18, 2022. *Id.* The parties did not reach a resolution with Mr. Meyer at that time. *Id.* On May 31,

17  2022, the Court entered an Order referring this action to Magistrate Judge Kandis Westmore for

18  settlement. *Id.* As part of the conferences with Judge Westmore, the parties agreed to resume further

19  mediation with Mr. Meyer. ECF No. 176. On February 2, 2023, the parties conducted an in-person

20  mediation with Mr. Meyer after submitting mediation statements and summary judgment and

21  *Daubert* briefing. Berman Decl. ¶ 11. Although no resolution was reached, the parties continued

22  discussions with Mr. Meyer. *Id.* On March 31, 2023—just one week before oral arguments on

23  Defendants' summary judgment motion and motion to exclude expert testimony and Lead

24  Plaintiff's motions to exclude expert testimony—the parties reached an agreement to settle the

25  litigation for $75,000,000, subject to approval by the Court. *Id.*

26              ### III.    THE PROPOSED SETTLEMENT

27      The Settlement requires Defendants to pay, or cause to be paid, $75,000,000.00 (the

28  "Settlement Amount"). The Settlement Amount, plus all interest and accretions thereto, comprises

1    the Settlement Fund. *See* Stipulation ¶¶ 2.1, 2.5. Under the Preliminary Approval Order, the

2    Settlement Amount shall be deposited into the Escrow Account within 30 days after the Court signs

3    and enters the Preliminary Approval Order. *Id.* ¶ 2.1. The Settlement Fund will then begin earning

4    interest for the benefit of the Settlement Class. *Id.* ¶ 2.5.

5         Once Notice and Administration Expenses, Taxes and Tax Expenses, and Court-approved

6    attorneys' fees and expenses and any award to Lead Plaintiff pursuant to 15 U.S.C. § 78u4(a)(4) in

7    connection with its representation of the Settlement Class have been paid from the Settlement Fund,

8    the remaining amount (the "Net Settlement Fund"), shall be distributed pursuant to the Court-

9    approved Plan of Allocation to Authorized Claimants. Stipulation ¶ 6.1. Any balance that still

10   remains in the Net Settlement Fund after reallocation(s) and payment(s) and that is not feasible or

11   economical to reallocate shall be contributed to a non-sectarian, non-profit Section 501(c)(3)

12   organization as may be deemed appropriate by the Court. *Id.* ¶ 4.15; *see also* N.D. Cal. Guid. ¶ 8.[4]

13   The Settlement is not a claims-made settlement, and if approved, Defendants will have no right to

14   return of any portion of the Settlement Fund based on the number or value of Claims submitted or

15   the amounts to be paid to eligible Settlement Class Members. Stipulation ¶ 2.3; *see also* N.D. Cal.

16   Guid. ¶ 1(g).

17        As defined in the Stipulation, the Settlement Class (or "Class") is consistent with the Class

18   previously certified by the Court in this action. *See* ECF No. 113; *see also* N.D. Cal. Guid. ¶ 1(a).

19   Specifically, the Settlement Class includes "all Persons who purchased or otherwise acquired Zuora

20   common stock between April 12, 2018 and May 30, 2019, inclusive (the 'Class Period'), and were

21   damaged thereby." *See* Stipulation ¶ 1.40.[5]

22

23        ───────────────

24   [4] For ease of reference, a chart setting forth the N.D. Cal. procedural guidance requirements, along with where the information addressing the requirements can be found in Lead Plaintiff's preliminary approval papers, is attached as **Appendix A** hereto.

25   [5] Excluded from the Settlement Class are: (i) the Defendants; (ii) members of the immediate family of defendants Tien Tzuo and Tyler Sloat; (iii) any person who was an officer or director of Zuora; (iv) any firm or entity in which Defendants has or had a controlling interest; (v) Defendants' liability insurance carriers; (vi) any affiliates, parents, or subsidiaries of Zuora; (vii) all Zuora plans that are covered by ERISA; (viii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as

26

27

28

1    In exchange for the benefits provided under the Stipulation, all Settlement Class
2    Members—except those who previously submitted valid and timely exclusion requests pursuant to
3    the Notice of Pendency of Class Action distributed to Settlement Class Members beginning on
4    August 12, 2022—will release the "Released Claims." *See* Stipulation ¶¶ 1.34, 3.2. The
5    Settlement's release provision is tailored to the Settlement Class's claims, as they are limited to
6    (1) the actual claims asserted in the Action or (2) unasserted claims that could have been brought
7    but only if they "both (a) arise out of the facts, matters, statements, or omissions alleged in the
8    Complaint and (b) relate to the purchase or other acquisition of Zuora common stock during the
9    Class Period." *Id*. ¶ 1.34; *see also* N.D. Cal. Guid. ¶ 1(b).

10    Accordingly, the proposed release is tailored to the conduct at issue in the Action and is
11    consistent with release provisions approved by this Court and other courts in this district. *See, e.g.*,
12    *Rabkin v. Lion Biotechnologies, Inc.*, No. 17-cv-02086-SI, slip op. at 4-5 (N.D. Cal. Apr. 17, 2019),
13    ECF No. 139, and ECF No. 132-3 at 27 (approving substantially similar release of claims that
14    "could have [been] asserted in any court or forum that arise out of or are based upon the allegations,
15    transactions, facts, matters or occurrences, representations, or omissions set forth in the Amended
16    Complaint and that relate to the purchase or acquisition of shares of Lion common stock during the
17    Class Period"); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018)
18    (approving similar release in securities class action because it was "anchored to 'the purchase,
19    acquisition, holding, sale, or disposition of LendingClub common stock'").

20    As this Court is aware, there is currently a related action pending in the Superior Court of
21    California for the County of San Mateo captioned *Olsen v. Zuora, Inc.*, Lead Case No. 20-CIV-
22    01918 (Cal. Super. Ct., Cty. of San Mateo) ("State Action"), that asserts claims for false and
23    misleading statements contained in Zuora, Inc.'s initial public offering registration statement and
24    prospectus under Sections 11 and 15 of the Securities Act of 1933 against Defendants and other
25    parties. Berman Decl. ¶ 20. By court order dated October 14, 2021, the State Action was certified
26    as a class action on behalf of "[a]ll persons and entities who purchased or otherwise acquired shares

27
28    such; and (ix) those Persons who previously have requested exclusion from the class certified in
this Action (*see* ECF No. 243). *See* Stipulation ¶ 1.40.

of Zuora, Inc. common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with Zuora's April 12, 2018 initial public offering" (the "State Class"). *Id.* The Settlement does not fully release claims asserted in the State Action. *Id.* Rather, to the extent that Settlement Class Members are also members of the State Class and seek recovery in the State Action, those claims are preserved to the extent that class members in the State Action "have non-duplicative damages available under the Securities Act, if any such non-overlapping damages can be established in the State Action (which Defendants dispute)." *See* Stipulation ¶ 1.34. The Settling Parties are not aware of any other pending cases that will be affected by the Settlement or the proposed release. *See* N.D. Cal. Guid. ¶ 1(d).

## IV.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.     Standards Governing Approval of a Class Action Settlement

As a matter of public policy, settlement is a strongly favored method for resolving disputes, "particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Nelson v. Bennett*, 662 F. Supp. 1324, 1334 (E.D. Cal. 1987) (noting that with respect to "complex securities actions," federal courts have "long recognized the public policy in favor of … settlement"). Settlement of complex cases contributes to the efficient utilization of scarce judicial resources and achieves the speedy resolution of justice. *See, e.g.*, *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 2019 WL 13020734, at *3 (N.D. Cal. May 14, 2019) ("The Ninth Circuit maintains a 'strong judicial policy' that favors the settlement of class actions."). Moreover, the Ninth Circuit "has long deferred to the private consensual decision of the parties" in such cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Rule 23(e) requires judicial approval of class action settlements. Approval of class action settlements normally proceeds in two stages: (i) preliminary approval (followed by notice to the class) and (ii) final approval. *See* Fed. R. Civ. P. 23(e)(1)–(2); *see also In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015); *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006). At the preliminary approval stage, the court must "determine whether the settlement falls 'within the range of possible approval.'" *In re Wells Fargo*

1   *& Co.*, 2019 WL 13020734, at *4. Courts grant preliminary approval when the proposed settlement

2   "appears to be the product of serious, informed, non-collusive negotiations, has no obvious

3   deficiencies, does not improperly grant preferential treatment to class representatives or segments

4   of the class, and falls within the range of possible approval."[6] *See In re LendingClub Sec. Litig.*,

5   2018 WL 1367336, at *2.

6        If the court "finds the proposed settlement fair to its members," it will then "schedule[] a

7   fairness hearing where it will make a final determination of the class settlement." *In re Haier*

8   *Freezer Consumer Litig.*, 2013 WL 2237890, at *3 (N.D. Cal. May 21, 2013). At final approval,

9   the Court will be asked to determine whether the Settlement is "fair, reasonable, and adequate."

10  *See* Fed. R. Civ. P. 23(e)(2)(A)–(D) (listing factors courts consider when approving class action

11  settlements); *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (N.D. Cal.

12  July 22, 2019) ("[T]he Court applies the framework set forth in Rule 23 with guidance from the

13  Ninth Circuit's precedent[.]").

14       In addition, the Ninth Circuit uses the following factors for preliminary approval, several

15  of which overlap with Rule 23(e)(2): "the strength of the plaintiffs' case; the risk, expense,

16  complexity, and likely duration of further litigation; the risk of maintaining class action status

17  throughout the trial; the amount offered in settlement; the extent of discovery completed and the

18  stage of the proceedings; [and] the experience and views of counsel." *See Hanlon v. Chrysler Corp.*,

19  150 F.3d 1011, 1026 (9th Cir. 1998); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir.

20  2012) (discussing the *Hanlon* factors).[7]

21

22      [6] Pursuant to Fed. R. Civ. P. 23(e)(1)(B), the court should "direct notice" to "all class members
who would be bound by the proposal" if the parties show that the court "will likely be able to:
23  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on
the proposal." As to the latter requirement, the Court need not determine whether it could certify a
24  class here because it already has certified the Class. *See* ECF No. 113.

25      [7] "Because there is no governmental entity involved in this litigation," the seventh *Hanlon*
26  factor ("presence of a governmental participant") is inapplicable. *Mendoza v. Hyundai Motor Co.*,
2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017). Regarding the eighth *Hanlon* factor ("the reaction
27  of the class members to the proposed settlement"), the Settlement Class's reaction is not yet
available for consideration because Notice of the Settlement has not yet been provided to the
28  Settlement Class. *See, e.g.*, *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (noting

As discussed below, the proposed Settlement readily satisfies each of the factors identified under Rule 23(e)(2), as well as the applicable Ninth Circuit *Hanlon* factors and Northern District Guidelines. Therefore, notice of the proposed Settlement should be sent to the Class in advance of the final Fairness Hearing.

## B. The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)

### 1. Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class.

Lead Plaintiff and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A). The Settlement is the result of approximately four years of diligent prosecution of this action on behalf of the Class. *See supra* § II.B.; *see also Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*6 (N.D. Cal. Dec. 18, 2018) (finding Rule 23(e)(2)(A) satisfied and reiterating that counsel "prosecuted this action through dispositive motion practice, extensive … discovery, and formal mediation"); *In re Extreme Networks*, 2019 WL 3290770, at \*7 (same).

Similarly, the Ninth Circuit tasks trial courts with resolving two questions to determine "legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The Court previously found Lead Plaintiff and Lead Counsel adequate to represent the Settlement Class, and no evidence to the contrary has since emerged. *See* ECF No. 113 at 2. Moreover, Lead Plaintiff and Class Counsel have no interests antagonistic to other Settlement Class Members: Lead Plaintiff's claims are typical of the Settlement Class's claims and Lead Plaintiff's interest in obtaining the largest possible recovery for Zuora investors is aligned with that of the Settlement Class. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at \*3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class Members."). Finally, the

---

"'a full fairness analysis is unnecessary at this stage'" because some factors bearing on the propriety of settlement cannot be assessed prior to a final approval hearing).

substantial monetary recovery obtained after the almost four years of litigation preceding the Settlement speaks for itself and is an excellent result for Lead Plaintiff and the Settlement Class.

### 2. The proposed settlement is the result of good faith, arm's-length negotiations by informed, experienced counsel who were aware of the risks of litigation.

Rule 23(e)(2)(B) asks whether a proposed settlement is procedurally adequate—*i.e.*, whether "the proposal was negotiated at arm's length." There is an initial presumption that a proposed settlement is fair and reasonable when it is "the product of arms-length negotiations." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *see also Rodriguez*, 563 F.3d at 965 (noting that courts "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

Here, the proposed Settlement was achieved only after two formal mediations with Robert A. Meyer, Esq. of JAMS—an experienced mediator with considerable knowledge, experience, and expertise in the field of federal securities law—as well as various teleconferences with Mr. Meyer and correspondences regarding a potential resolution of the litigation. *See supra* § II.B. Lead Counsel and Defendants' Counsel prepared and presented submissions to Mr. Meyer concerning their respective views on the merits of the litigation, along with supporting evidence obtained through discovery, and the negotiations were at all times adversarial and performed at arm's length. *Id.* The protracted negotiations under the supervision of a neutral experienced mediator are evidence that the $75,000,000 Settlement was reached at arm's length. *See Griffith v. Providence Health & Servs.*, 2017 WL 1064392, at *4 (W.D. Wash. Mar. 21, 2017) ("The terms and provisions of the Settlement were entered into by experienced counsel and only after extensive, arm's-length negotiations conducted in good faith and with the assistance of an experienced third party mediator, Robert Meyer, Esq. The Settlement is not the result of collusion."); *In re Extreme Networks*, 2019 WL 3290770, at *3 (granting final approval based on agreement following "rigorous arm's length negotiations led by Mr. Meyer").

Moreover, Lead Plaintiff not only completed exhaustive fact and expert discovery at the time it negotiated the Settlement on behalf of the Settlement Class, but the Settlement was reached just prior the Court hearing oral argument on the Defendants' summary judgment motion and six

months before the start of trial. *See supra* § II.B. "Class settlements are presumed fair when they are reached following sufficient discovery and genuine arms-length negotiation." *See Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022). In sum, Lead Counsel— experienced securities litigators—were armed with extensive information generated through almost four years of litigation at the time the Settling Parties negotiated the Settlement.

### 3.   The settlement provides adequate relief for the Settlement Class.

Pursuant to Rule 23(e)(2)(C), the Court also must consider whether "the relief provided for the class is adequate, taking into account" four relevant factors that are addressed below. "To evaluate the adequacy of the settlement amount, 'courts primarily consider [the] expected recovery balanced against the value of the settlement offer.'" *See Hefler*, 2018 WL 6619983, at *9. "The court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'" *In re Wells Fargo & Co.*, 2019 WL 13020734, at *4.

Here, the $75 million non-reversionary, all cash Settlement is well-within the range of reasonableness under the circumstances to warrant preliminary approval of the Settlement and the issuance of notice to the Class. Lead Plaintiff's damages expert estimates that if the Class had fully prevailed on its Exchange Act claims after a jury trial, if the Court and jury accepted Lead Plaintiff's damages theory, and the jury verdict survived the inevitable appeals, the ***total maximum aggregate damages would be approximately $360 million***. Berman Decl. ¶ 27; *see also* N.D. Cal. Guid. ¶ 1(c) (potential class recovery if plaintiffs fully prevailed on all claims). Therefore, the Settlement recovers approximately 21% of the total maximum damages potentially recoverable in this case. Berman Decl. ¶ 27. This is approximately 4.29 times the median percentage recovery for cases settled with estimated damages between $250–$499 million or more in 2021 (4.9%) and approximately 4.88 times the median recovery, on a percentage basis, of similar cases settled in 2022 (4.3%).[8] Berman Decl. ¶ 27; *see also Booth v. Strategic Realty Tr., Inc.*, 2015 WL 6002919,

---

[8] *See* Figure 5, Securities Class Action Settlements, 2021 Review and Analysis by Cornerstone Research, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf; Figure 5, Securities Class Action Settlements, 2022 Review and Analysis by Cornerstone Research, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf.

at \*5 (N.D. Cal. Oct. 15, 2015) (finding that the "20% recovery provided for by the proposed settlement weighs in favor of approval"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at \*11 (N.D. Cal. Oct. 27, 2015) (14% recovery "exceeds the typical recovery" in securities fraud class action settlements).

Moreover, during expert discovery, Defendants' loss causation and damages experts opined that at best, 15% of Lead Plaintiff's damages could be attributed to Defendants' alleged failure to timely disclose the issues related to RevPro-Billing integration. *See* ECF No. 185-17 at 33; ECF No. 229-4 at 15. Given that 15% of Lead Plaintiff's best-case scenario for damages—$360,000,000—is $54,000,000, the $75,000,000 settlement therefore amounts to a 138% recovery of the maximum damages as calculated by Defendants' experts. Berman Decl. ¶ 28.

As discussed more fully below, the benefits conferred on Settlement Class Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and the attorneys' fees and expenses to be requested are reasonable. Accordingly, the relief provided by the Settlement is undeniably an excellent result for the Settlement Class and supports approval. *See Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at \*9 (N.D. Cal. Apr. 19, 2021) (noting "relief" provided by settlement is a "central concern, though it is not enumerated among the factors of Rule 23(e)").

### a. The costs, risks, and delay of trial and appeal support approval of the settlement.

The factors presented by Rule 23(e)(2)(C)(i) are satisfied because the $75,000,000 recovery provides a significant and immediate benefit to the Settlement Class, especially in light of the costs, risks, and delay posed by continued litigation.[9] "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Here, "'securities actions are highly complex and … securities class litigation is notably difficult and

---

[9] Rule 23(e)(2)(C)(i) essentially incorporates the first three traditional *Hanlon* factors. *See, e.g.*, *Wong*, 2021 WL 1531171, at \*8 (citing *Hanlon*, 150 F.3d at 1026); *Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at \*5 (N.D. Cal. Jul. 23, 2021) ("The first three [*Hanlon*] factors are addressed together and require the court to assess the plaintiff's 'likelihood of success on the merits and the range of possible recovery' versus the risks of continued litigation and maintaining class action status through the duration of the trial.").

notoriously uncertain.'" *Hefler*, 2018 WL 6619983, at *13; *see also In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting shareholders had still received no recovery two years after jury verdict in plaintiffs' favor). Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

While Lead Plaintiff at all times remained confident in its ability to ultimately prove its claims at trial, it would be required to prove all elements of its claims to prevail, while Defendants needed to succeed on only one defense to potentially defeat the entire action. Here, Defendants advanced several arguments disputing both liability and damages; for example, during mediation Defendants raised numerous challenges disputing the falsity and materiality of their alleged misstatements and vigorously disputed scienter. Berman Decl. ¶ 31; *see also Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) (granting preliminary approval of settlement and noting that "[p]laintiffs may not ultimately have been able to adduce sufficient facts to demonstrate the scienter … of their securities fraud claim"). Defendants also challenged Lead Plaintiff's theory of loss causation and damages at summary judgment, arguing that the alleged corrective stock price movements were caused by factors unrelated to Lead Plaintiff's allegations. Berman Decl. ¶ 31; *see also In re Celera Corp.*, 2015 WL 1482303, at *5 ("Among the issues that would be contested at trial are proof of loss causation and the amount of damages incurred by class members, which would be difficult to prove."). Moreover, the complexity of the underlying issues here—including the impact of Zuora's issues in integrating Billing and RevPro and the impact on Zuora's growth and revenues—and the fact that Defendants engaged competing expert witnesses to testify in support of Defendants' major defenses, were substantial obstacles to Lead Plaintiff's potential for success at trial. *See supra* § II.B; *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *9 (C.D. Cal. July 28, 2014) (noting plaintiff's proof of loss causation "would have turned on expert testimony presented by both sides, making his ability to prevail uncertain").

Barring the Settlement, this case would require the expenditure of substantial additional sums of time and money at trial and beyond, with no guarantee that any additional benefit would be provided to the Settlement Class. Even if Lead Plaintiff succeeded at trial and met its burdens with respect to falsity, materiality, scienter, class-wide reliance under the "fraud on the market" presumption, loss causation, the measure of per-share damages (if any), and control person liability, the case would still be far from over. In this respect, Defendants would have had the opportunity to challenge an individual Settlement Class Member's membership in the Class, challenge the presumption of reliance as to each Class Member (including Lead Plaintiff), and challenge the amount of damages due each Settlement Class Member. Berman Decl. ¶ 33. Such a process would have been lengthy, complex, and extremely costly. *Id.* Moreover, Defendants would almost certainly file an appeal—a process that would further extend the litigation for years and risk reversal of any Lead Plaintiff's verdict. *Id.* ¶ 34. Conversely, the Settlement confers a substantial and immediate benefit on the Settlement Class, and avoids the risks associated with obtaining a wholly speculative (though potentially larger) sum in the future. *Id.*

In sum, Defendants have denied any wrongdoing and had "significant defenses to liability that could substantially reduce the class members' recovery (or preclude it entirely)." *See Bower v. Cycle Gear, Inc.*, 2016 WL 4439875, at *4 (N.D. Cal. Aug. 23, 2016). The Settlement thus balances the risks, costs, and delay inherent in complex cases. Given the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through trial and beyond, the $75,000,000 Settlement is a meaningful recovery that is in the Settlement Class's best interests.

**b.     The proposed method for distributing relief is effective.**

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard, well-established, and effective procedures for processing claims and efficiently distributing the Net Settlement Fund, and is therefore an effective method of distribution to the Settlement Class under Rule 23(e)(2)(C)(ii). The notice plan includes direct mail notice to all those who can be identified with reasonable effort supplemented by publication of the Summary Notice in *Investor's Business Weekly* and once on the *PRNewswire*. *See* Decl. of Cameron R. Azari, Esq. Regarding Notice Plan ("Azari Decl."), ¶¶ 28–30. The Notice and

1    Summary Notice also will be posted on the case website established in connection with the Class

2    Notice. *Id.* ¶ 31.

3         The claims process also includes a standard claim form that requests the information

4    necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation. As discussed

5    in § IV.B.4, the Plan of Allocation will govern how Settlement Class Members' claims will be

6    calculated and, ultimately, how money will be distributed to Authorized Claimants. The Plan of

7    Allocation was prepared with the assistance of Lead Plaintiff's damages expert and is based

8    primarily on the expert's event study and analysis estimating the amount of artificial inflation in

9    the price of Zuora common stock during the Class Period. Berman Decl. ¶ 37.

10                **c.**     **Proposed attorneys' fees, expenses, and Lead Plaintiff's award.**

11         Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees,

12    including timing of payment." Lead Counsel intends to seek an award of attorneys' fees of no more

13    than 30% of the Settlement Fund and expenses in an amount not to exceed $1.25 million, plus

14    interest on both amounts. *See* N.D. Cal. Guid. ¶ 6. Lead Counsel will provide more detailed

15    information in their forthcoming application for attorneys' fees and expenses, which will be filed

16    with the Court prior to the Fairness Hearing.

17         Although the Ninth Circuit in *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003), stated

18    that "25% of the common fund" was a "benchmark award for attorney fees," a guiding principle

19    for fee awards in this Circuit remains the idea that they must be "reasonable under the

20    circumstances." *See In re Wash. Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295 n.2 (9th

21    Cir. 1994) (explaining "neither [the lodestar/multiplier method nor the percentage method] should

22    be applied in a formulaic or mechanical fashion"). As applied, this means that "in most common

23    fund cases, the award exceeds that benchmark." *See In re Omnivision Tech., Inc.*, 559 F. Supp. 2d

24    1036, 1047 (N.D. Cal. 2008).

25         In view of the result obtained (*i.e.*, 21% recovery of the total maximum damages available

26    to the Class), the contingent fee risk, the number of hours dedicated to this matter by Lead Counsel,

27    and the important public policy advanced by securities litigation such as this, an award of up to

28    30% of the Settlement Fund is appropriate. *See In re Allergan, Inc. Proxy Violation Deriv. Litig.*,

2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (noting that a 30% award is "the norm" in the Ninth Circuit). Indeed, within the last year, multiple courts in the Ninth Circuit awarded attorneys' fees of 30% or more of a settlement fund in securities class actions. *See, e.g.*, *Davis et al. v. Yelp, Inc. et al.*, No. 18-cv-00400-EMC (N.D. Cal. Jan. 27, 2023) ("*Yelp*"), ECF No. 210 at 3 (awarding counsel 33.3% of $22,250,000 settlement fund); *Fleming et al. v. Impax Labs. Inc. et al.*, No. 16-cv-06557-HSG (N.D. Cal. July 15, 2022) ("*Impax*"), ECF No. 133 at 6 (awarding counsel 30% of $33,000,000 settlement fund); *In re Merit Med. Sys., Inc., Sec. Litig.*, No. 19-cv-02326-DOC (C.D. Cal. Apr. 15, 2022) ("*In re Merit*"), ECF No. 118 at 2 (awarding counsel 30% of $18,250,000 settlement fund). This Court has also previously awarded 30% of a settlement fund in securities class actions. *See, e.g.*, *In re Gilead Scis. Sec. Litig.*, No. 03-cv-04999-SI (N.D. Cal. Nov. 5, 2010), ECF No. 282 at 1 (awarding counsel 30% of $8,250,000 settlement fund); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 03-cv-03709-SI (N.D. Cal. Apr. 4, 2007) ("*In re CV Therapeutics*"), ECF No. 455 at 1 (awarding counsel 30% of $13,000,000 settlement fund). The 21% recovery of maximum damages in this case also exceeds the percentage of maximum damages recovered in many of the cases cited herein where counsel received 30% of a settlement fund.[10]

Moreover, the proposed attorney fee award here is based on a lodestar of approximately $5 million as of the date of this Motion and accounts for time expended over the nearly four years of litigation. *See* Berman Decl. ¶ 59. A fee award of up to 30% of the Settlement Fund would result in a multiplier of no more than 4.5. *See* N.D. Cal. Guid. ¶ 6. This multiplier is reasonable and within the range of lodestar multipliers that courts in this Circuit approve. *See, e.g.*, *Steiner v. Am. Broadcasting Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (cross-check multiplier of 6.85); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *13 (N.D. Cal. Apr. 3, 2013) (awarding attorney fee award applying 5.22 multiplier); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (granting fee award applying multiplier of 5.2). If

---

[10] *See, e.g.*, *Yelp*, Mot. Prelim. Appr., ECF No. 188, at 16 (recovered 12.4% of maximum damages); *Impax*, Mot. Prelim. Appr., ECF No. 110, at 21 (recovered 12.5% of maximum damages); *In re Merit*, Memo ISO Mot. Attorneys' Fees & Expenses, ECF No. 11, at 12 (recovered at a minimum 12% of maximum damages); *In re CV Therapeutics*, Memo ISO Mot. Attorneys' Fees & Expenses, ECF No. 440, at 8 (recovered 13.35% of maximum damages).

preliminary approval is granted, Lead Counsel will present their total lodestar with their fee application prior to the Fairness Hearing.

Lead Counsel also intends to seek payment of their litigation expenses in an amount not to exceed $1,250,000, which includes expert costs, mediation fees, and online legal and factual research, among other costs. Berman Decl. ¶ 60. Lead Counsel will provide appropriate detail in support of any request for reimbursement of litigation expenses with their fee and expense application prior to final approval. Lead Counsel will request that any award of fees and expenses be paid at the time the Court makes its award. *See* Stipulation ¶ 7.2. Approval of the requested attorneys' fees is also separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *Id.* ¶ 7.5.

Finally, Lead Counsel also intend to seek an award of up to $25,000 for Lead Plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(4), as reimbursement for Lead Plaintiff's costs and expenses related to its representation of the Settlement Class. Berman Decl. ¶ 61; *see also In re Wells Fargo & Co. S'holder Deriv. Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal. 2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (noting $25,000 incentive award "may be appropriate where class representatives expend significant time and effort on the litigation[;] where the class overall has greatly benefitted from the class representatives' efforts; and where the incentive awards represent an insignificant percentage of the overall recovery"); *see also In re Restoration Robotics, Inc. Sec. Litig.*, 2021 WL 4124089, at *2 (N.D. Cal. Sept. 9, 2021) (awarding incentive payment of up to $25,000). Lead Counsel believes this amount is fully supported by the work undertaken throughout the Action, which will be set forth in greater detail in connection with Lead Plaintiff's fee and expense motion. *See* N.D. Cal. Guid. ¶ 7.

### d.    Identification of agreements.

Settlement Class Members were provided with the opportunity to opt out of the Class in response to the Notice of Pendency.[11] *See* N.D. Cal. Guid. ¶ 4. As such, a second opportunity to request exclusion is not provided here. Berman Decl. ¶ 55; *see also Low v. Trump Univ., LLC*, 881

---

[11] *See* ECF No. 151 (describing class notice and opt-out procedure, and setting exclusion deadline on October 30, 2022).

F.3d 1111, 1121 (9th Cir. 2018) ("[There is] no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out. We think it does not."); *Alexander* v. *FedEx Ground Package Sys.*, 2016 WL 1427358, at *6 (N.D. Cal. Apr. 12, 2016) (noting that the language of Rule 23(e)(4) "implies courts are not required to give a second opt-out opportunity after class certification").

Nevertheless, should the Court decline to enforce its previous Order requiring that all exclusions be received by October 30, 2022, the Settling Parties have agreed, out of an abundance of caution, to a Supplemental Opt-Out Agreement (the "Supplemental Agreement") providing Zuora with the option to terminate the Settlement if Settlement Class Members who request exclusion from the Class meet the conditions set forth in the Supplemental Agreement. Stipulation ¶ 10.5. As Courts in this district recognize, the existence of the Supplemental Agreement "does not by itself render the Settlement unfair." *See Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018). As is standard in securities class actions, the Supplemental Agreement is identified in the Stipulation, but its terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See id.* at *7 (sealing supplemental agreement). The Settling Parties are willing to file this confidential Supplemental Agreement (with a motion to seal) should the Court wish to examine it.

There are otherwise no agreements requiring identification under Rule 23(e)(3).

### 4. The proposed Plan of Allocation treats Settlement Class Members equitably and does not confer preferential treatment.

Rule 23(e)(2)(D) asks whether the proposal (here, the Plan of Allocation) treats class members equitably relative to each other. *See also* N.D. Cal. Guid. ¶ 1(e). Drafted with the assistance of Lead Plaintiff's damages expert, the Plan of Allocation is fair, reasonable, and adequate, and it does not "improperly grant" Lead Plaintiff or any other Settlement Class Member "preferential treatment." Berman Decl. ¶¶ 37–41; s*ee also In re Wells Fargo & Co.*, 2019 WL 13020734, at *4 (granting preliminary approval and noting settlement "does not improperly grant preferential treatment to class representatives or segments of the class"). Specifically, the Plan of Allocation provides formulas for calculating the recognized claim of each Settlement Class

1   Member, based on the timing of the purchases and sales of Zuora common stock and the declines

2   that occurred in the price of the stock following the alleged corrective disclosures. *See* Berman

3   Decl. ¶ 40; *see also Rieckborn v. Velti PLC*, 2015 WL 468329, at *10 (N.D. Cal. Feb. 3, 2015)

4   ("[G]overning law recognizes that shareholders are damaged differently according to when they

5   purchased and sold their shares in relation to the corrective disclosures. … It is reasonable to design

6   a distribution plan based on this principle.").

7       Each Authorized Claimant, including Lead Plaintiff, will receive a *pro rata* distribution

8   pursuant to the Plan of Allocation.[12] *See* Berman Decl. ¶ 38. No special, preferential formula for

9   distribution will apply to Lead Plaintiff. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL

10  1441634, at *18 (D. Or. Mar. 19, 2019) ("[T]he proposed Plan of Allocation compensates all Class

11  Members and [Plaintiffs] equally in that they will receive a *pro rata* distribution[.]").

12  **C.    The Remaining Ninth Circuit Factors Support Preliminary Approval of the**
       **Settlement**

13

14      Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2) analysis

15  above (*i.e.*, the third, fifth, and sixth *Hanlon* factors) also support preliminary approval.

16          **1.    The extent of discovery completed and the stage of the proceedings at which**
               **the settlement was achieved strongly support preliminary approval.**

17      The fifth *Hanlon* factor (the extent of discovery completed and the stage of the proceedings

18  at which the settlement was achieved) unquestionably supports preliminary approval of the

19  Settlement. As the Settlement was reached during the late stages of this litigation—just before the

20  hearing on Defendants' motion for summary judgment and discovery had long since been

21  completed—the Settling Parties had a thorough understanding of the arguments, evidence, and

22  witnesses that would be presented at trial. Berman Decl. ¶¶ 11, 29-34. Accordingly, there can be

23  no question that Lead Plaintiff was able to knowledgably evaluate the merits of the Settlement by

24  the time it was reached. As discussed more fully above, Lead Plaintiff's decision to enter into the

25  _____

26      [12] For short sellers, under the Plan of Allocation, the recognized loss amount on "short sales"
    and the purchases covering "short sales" is zero. In the event that a claimant has an opening short

27  position in Zuora, Inc. common stock, the earliest purchases of Zuora, Inc. common stock during
    the Class Period will be matched against such opening short position, and not be entitled to a

28  recovery, until that short position is fully covered. *See* Stipulation, Ex. A-1 ("Notice"), at 13.

Settlement was based on its understanding of the strengths and potential weaknesses of its claims and Defendants' defenses. *See supra* § IV.B.3.a; *see also Rodriguez*, 563 F.3d at 967 (factor weighed in favor of approving settlement where parties had conducted extensive discovery and had gone through a round of summary judgment motions).

### 2. Risks of maintaining class action status through trial.

Given the pending summary judgment decision and imminence of trial at the time the Settlement was reached, Lead Counsel believes the risk of maintaining class action status through to the end of trial (the third *Hanlon* factor) was minimal. Nevertheless, because Rule 23(c)(1) provides that a class certification order may be altered or amended at any time prior to a decision on the merits, Defendants still could have moved to decertify the Settlement Class or shorten the Class Period up until the time the jury reached a verdict. *See Rodriguez*, 563 F.3d at 966.

### 3. Experience and views of counsel.

The opinion of experienced counsel (the sixth *Hanlon* factor) as to the merit of class settlement after arm's-length negotiation is entitled to considerable weight. *See In re ECOtality, Inc. Sec. Litig.*, 2015 WL 5117618, at *3 (N.D. Cal. Aug. 28, 2015). Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* Berman Decl., Ex 1 (Lead Counsel's firm resume). Here, "[t]here is nothing to counter the presumption that … Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043.

Since being appointed by this Court, Lead Counsel defeated Defendants' motion to dismiss, obtained class certification, aggressively pursued discovery critical to the claims asserted, prepared arguments to defeat Defendants' motion for summary judgment and exclude the majority of their expert testimony. *See supra* § II.B. As a result of this experience and with the assistance of sophisticated experts when appropriate, Lead Counsel had gained a firm understanding of the strengths and weaknesses of the claims by the time the Settlement was reached, with pre-trial preparation and trial right around the corner. *See In re NVIDIA Corp. Deriv. Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

In sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied. The Settlement is fair, adequate, and reasonable, and meets each of the applicable factors such that notice of the Settlement should be sent to the Settlement Class.

## V.      THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AS WELL AS DUE PROCESS REQUIREMENTS

Rule 23(c)(2)(B) requires the Court to "direct to class members the best notice that is practicable under the circumstances." *See also* N.D. Cal. Guid. ¶ 3. The notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See In re Wells Fargo & Co.*, 2019 WL 13020734, at *9. Similarly, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires "sufficient notice" so class members can "weigh the risks and rewards of proceeding to trial or participating in the proposed settlement." *See In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *7.

Here, Lead Plaintiff proposes to give interested parties notice in two ways: (i) individual copies of the Notice, together with a copy of the Proof of Claim, will be sent by first class mail, postage prepaid, to all potential Settlement Class Members; and (ii) by publication of a summary version of the Notice in *Investor's Business Daily* and transmittal on the *PRNewswire* , as well as online at the website www.ZuoraSecuritiesLitigation.com. *See* Stipulation, Ex. A, ¶ 18; Azari Decl. ¶ 31. The proposed methods for providing notice satisfy the requirements of Rule 23, the PSLRA, and due process. *See, e.g.*, *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (requiring notice be sent to all class members "whose names and addresses may be ascertained through reasonable effort"); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *Vataj v. Johnson*, 2021 WL 5161927, at *5 (N.D. Cal. Nov. 5, 2021) (finding notice by mail and published in a newswire with national distribution "provided the best practicable notice to the class members").

The form and substance of the notice program are sufficient. *See* N.D. Cal. Guid. ¶ 3. The proposed forms of notice describe the terms of the Stipulation and the Settlement Class's recovery; the factors that Lead Plaintiff and Lead Counsel considered in determining that the Settlement is fair, adequate, and reasonable; the maximum attorneys' fees and expenses that may be sought; the procedure for objecting to the Settlement and the deadline to do so; the procedure for participating

1   in the Settlement and instructions on how to complete and submit a Proof of Claim to the Claims

2   Administrator and the deadline to do so; the proposed Plan of Allocation for the settlement

3   proceeds; and the date, time, and place of the Settlement Hearing. Berman Decl. ¶ 51; *see also In*

4   *re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *2 (N.D. Cal. Oct. 25, 2019). The Notice also provides

5   contact information for Lead Counsel, the proposed Claims Administrator, as well as information

6   regarding the website created for the case. Berman Decl. ¶ 51.[13]

## VI.    THE PROPOSED CLAIMS ADMINISTRATOR

8       Lead Counsel proposes that Epiq Class Action and Claims Solutions, Inc. ("Epiq") serve as

9   the Claims Administrator for the Settlement in order to provide all notices approved by the Court

10  to Settlement Class Members, to process Proofs of Claim, and to administer the Settlement. Berman

11  Decl. ¶ 42; *see also* N.D. Cal. Guid. ¶ 2(a). Epiq is a recognized leader in legal administration

12  services for class action settlements and legal noticing programs in the country. Berman Decl.

13  ¶ 44.[14]

14      At this time, only a rough estimate of the total Notice and Administration Expenses can be

15  provided as the costs are highly dependent on how many notices are ultimately mailed as well as

16  emails sent, and how many claims are ultimately received and processed. *See* Azari Decl. ¶ 37.

17  Epiq will send the Notice to all individuals and entities who can be identified with reasonable effort.

18  *Id.* ¶ 24. It estimates that Notice and Administration Expenses for the Litigation may be no more

19  than $275,000. *Id.* ¶ 37. These costs and expenses, which are necessary in order to fully and

20  properly administer notice and claims administration, represent well under 1% of the total value of

21  ─────────────

22  [13] The Settling Parties have agreed that, no later than 15 days following the filing of the Stipulation, Defendants shall serve the notice required under the Class Action Fairness Act, 28

23  U.S.C. § 1715 (2005) *et seq.* ("CAFA"). *See* Stipulation ¶ 4.3. The Settling Parties are not aware of any other such required notices to government entities or others. *See* N.D. Cal. Guid. ¶ 10.

24  [14] Lead Counsel selected Epiq in a competitive selection process. *See* Berman Decl. ¶ 43. Specifically, Lead Counsel sent a request for proposal and cost estimate to five reputable and

25  experienced notice and claims administrators, all of which proposed notice to the Class in substantially the same manner as presented here. *Id.*; *see also* N.D. Cal. Guid. ¶ 2(a). Lead Counsel

26  choose Epiq based on their estimated costs in comparison to their competitors, and in light of Epiq previously disseminating notice to this Class at the class certification stage. *See* Berman Decl. ¶ 14.

27  In the past two years, Lead Counsel has retained Epiq eight times in connection with class notice, claims processing, or settlement administration matters. *See id.*; *see also* N.D. Cal. Guid. ¶ 2(a).

28

the Settlement. Berman Decl. ¶ 45; *see also* N.D. Cal. Guid. ¶ 2(b). All Notice and Administration

Expenses will be paid from the Settlement Fund. *Id.; see also* Stipulation ¶ 1.27.

## VII.    PROPOSED SCHEDULE OF EVENTS

As part of preliminarily approving the Settlement, the Court must also set dates for certain

future events (*i.e.*, the Settlement Hearing, mailing and publication of notices, and deadlines for

submitting claims or objecting to the Settlement. Lead Plaintiff respectfully proposes the schedule

set forth in **Appendix B** hereto, as agreed to by the Settling Parties and set forth in the proposed

Preliminary Approval order.

## VIII.   CONCLUSION

The proposed $75,000,000 Settlement is an outstanding result for the Settlement Class. The

Settlement Class should have its chance to evaluate it. For the reasons set forth above, Lead Plaintiff

respectfully requests that the Court preliminarily approve the proposed Settlement and enter the

Preliminary Approval Order.

DATED: May 15, 2023                    Respectfully submitted,

By: /s/ *Steve W. Berman*
Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
Email: lucasg@hbsslaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
Email: petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand Methodist Trust Association*