**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated, | No. 3:19-cv-03422-SI |
| Plaintiff, | CLASS ACTION |
| v. | |
| ZUORA, INC., TIEN TZUO, and TYLER SLOAT, | |
| Defendants. | |

**DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN**

I, Cameron R. Azari, Esq., hereby declare and state as follows:

1.    My name is Cameron R. Azari, Esq.  I have personal knowledge of the matters set forth herein, and I believe them to be true and correct.

2.    I am a nationally recognized expert in the field of legal notice and have served as an expert in hundreds of federal and state cases involving class action notice plans.

3.    I am a Senior Vice President of Epiq Class Action and Claims Solutions, Inc. ("Epiq") and the Director of Legal Notice for Hilsoft Notifications, a firm that specializes in designing, developing, analyzing, and implementing large-scale, un-biased, legal notification plans.  Hilsoft Notifications is a business unit of Epiq.  References to Epiq in this declaration include Hilsoft Notifications.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

4.    Hilsoft has been involved with some of the most complex and significant notice programs in recent history, examples of which are discussed below.  With experience in more than 575 cases, including more than 70 multidistrict litigation settlements, Hilsoft has prepared notices which have appeared in 53 languages and been distributed in almost every country, territory, and dependency in the world.  Courts have recognized and approved numerous notice plans developed by Hilsoft, and those decisions have invariably withstood appellate and collateral review.

## RELEVANT EXPERIENCE

5.    I have served as a notice expert and have been recognized and appointed by courts to design and provide notice in many significant cases, including:

a)    *In Re: Zoom Video Communications, Inc. Privacy Litigation*, 3:20-cv-02155 (N.D. Cal.), involved an extensive notice plan for a $85 million privacy settlement involving Zoom, the most popular videoconferencing platform.  Notice was sent to more than 158 million class members by email or mail and millions of reminder notices were sent to stimulate claim filings.  The individual notice efforts reached approximately 91% of the class and were enhanced by supplemental media notice, which was provided regional newspaper notice, nationally distributed digital and social media notice (delivering more than 280 million impressions), sponsored search, an informational release, and a settlement website.

b)    *In re Takata Airbag Products Liability Litigation*, MDL No. 2599, 1:15-md-02599 (S.D. Fla.), involved $1.91 billion in settlements with BMW, Mazda, Subaru, Toyota, Honda, Nissan, Ford, and Volkswagen regarding Takata airbags.  The notice plans for those settlements included individual mailed notice to more than 61.8 million potential class members and extensive nationwide media via consumer publications, U.S. Territory newspapers, radio, internet banners, mobile banners, and behaviorally targeted digital media.  Combined, the notice plans reached more than 95% of adults aged 18+ in the U.S. who owned or leased a subject vehicle, with a frequency of 4.0 times each.

c)    *In Re: Capital One Consumer Data Security Breach Litigation*, MDL No. 2915, 1:19-md-02915 (E.D. Va.), involved an extensive notice program for a $190 million data breach settlement.  Notice was sent to more than 93.6 million settlement class members by email or mail.  The individual notice efforts reached approximately 96% of the identified settlement class members and were enhanced

2

by a supplemental media plan that included banner notices and social media notices (delivering more than 123.4 million impressions), sponsored search, and a settlement website.

d)    *In re: Disposable Contact Lens Antitrust Litigation*, 3:15-md-02626 (M.D. Fla.), involved several notice programs to notify retail purchasers of disposable contact lenses regarding four settlements with different settling defendants totaling $88 million. For each notice program more than 1.98 million email or postcard notices were sent to potential class members and a comprehensive media plan was implemented, with a well-read nationwide consumer publication, internet banner notices (delivering more than 312.9 million – 461.4 million impressions per campaign), sponsored search listings, and a case website.

e)    *In re: fairlife Milk Products Marketing and Sales Practices Litigation*, 1:19-cv-03924 (N.D. Ill.), involved a $21 million settlement with The Coca-Cola Company, fairlife, LLC, and other defendants regarding allegations of false labeling and marketing of fairlife milk products. A comprehensive media based notice plan was designed and implemented, which included a consumer print publication notice, targeted banner notices, and social media (delivering more than 620.1 million impressions in English and Spanish nationwide). Combined with individual notice to a small percentage of the class, the notice plan reached approximately 80.2% of the class. The reach was further enhanced by sponsored search, an informational release, and a website.

f)    *In re Morgan Stanley Data Security Litigation*, 1:20-cv-05914 (S.D.N.Y.), involved a $60 million settlement for Morgan Stanley Smith Barney's account holders in response to "Data Security Incidents." More than 13.8 million emailed or mailed notices were delivered, reaching approximately 90% of the identified potential settlement class members. The individual notice efforts were supplemented with nationwide newspaper notice and a settlement website.

g)    *In re: Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D.N.Y.), involved a $6.05 billion settlement reached by Visa and MasterCard. An intensive notice program included more than 19.8 million direct mail notices sent to potential class members, together with insertions in over 1,500 newspapers, consumer magazines, national business publications, trade and specialty publications, with notices in multiple languages, and an extensive online notice campaign featuring banner notices that generated more than 770 million adult impressions. Sponsored search listings and a settlement website in eight languages expanded the notice program. For

3

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

the subsequent, $5.54 billion settlement reached by Visa and MasterCard, an extensive notice program was implemented, which included over 16.3 million direct mail notices to class members together with more than 354 print publication insertions and banner notices, which generated more than 689 million adult impressions. The Second Circuit recently affirmed the settlement approval. *See* No. 20-339 *et al.*, — F.4th —, 2023 WL 2506455 (2d Cir. Mar. 15, 2023).

    h) *In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179 (E.D. La.), involved landmark settlement notice programs to distinct "Economic and Property Damages" and "Medical Benefits" settlement classes for BP's $7.8 billion settlement of claims related to the Deepwater Horizon oil spill.  Notice efforts included more than 7,900 television spots, 5,200 radio spots, and 5,400 print insertions and reached over 95% of Gulf Coast residents.

  6. In addition, I have served as a legal notice expert in more than 25 cases in the United States District Court for the Northern District of California, including:

| Cases | Case No. |
|---|---|
| *In re: Zoom Video Communications, Inc. Privacy Litigation* | 5:20-cv-02155 |
| *Ford et al. v. [24]7.AI, Inc.* (Best Buy Data Incident) | 5:18-cv-02770 |
| *Yamagata et al. v. Reckitt Benckiser LLC* | 3:17-cv-03529 |
| *Pennington v. Tetra Tech, Inc. et al.* | 3:18-cv-05330 |
| *In re: Optical Disk Drive Products Antitrust Litigation* | MDL 2143 |
| *Coffeng, et al. v. Volkswagen Group of America, Inc.* | 17-cv-01825 |
| *Cochran et al. v. The Kroger Co. et al.* | 5:21-cv-01887 |
| *Maldonado et al. v. Apple Inc, et al.* | 3:16-cv-04067 |
| *Grace v. Apple, Inc.* | 17-cv-00551 |
| *Richards, et al. v. Chime Financial, Inc.* | 4:19-cv-06864 |
| *Bautista v. Valero Marketing and Supply Co.* | 3:15-cv-05557 |
| *McKinney-Drobnis, et al. v. Massage Envy Franchising* | 3:16-cv-6450 |
| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation* (Audi $CO_2$) | MDL 2672 |
| *Bias v. Wells Fargo & Company, et al.* | 4:12-cv-00664 |
| *Elder v. Hilton Worldwide Holdings, Inc.* | 16-cv-00278 |
| *In re: HP Printer Firmware Update Litigation* | 5:16-cv-05820 |

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

| *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation* (Bosch Settlement) | MDL 2672 |
|---|---|
| *In re: Lithium Ion Batteries Antitrust Litigation* | MDL 2420 |
| *Naiman v. Total Merchant Services, Inc., et al.* | 4:17-cv-03806 |
| *Izor v. Abacus Data Systems, Inc.* | 19-cv-01057 |
| *McKnight et al. v. Uber Technologies, Inc. et al.* | 3:14-cv-05615 |
| *Abante Rooter and Plumbing v. Pivotal Payments Inc., d/b/a/ Capital Processing Network and CPN,* | 3:16-cv-05486 |
| *Parsons v. Kimpton Hotel & Restaurant Group, LLC* | 3:16-cv-05387 |
| *Rose v. Bank of America Corporation et al.* | 5:11-cv-02390 & 5:12-cv-00400 |

7.    Courts have recognized my firm's testimony as to which method of notification is appropriate for a given case, and I have testified on numerous occasions on whether a certain method of notice represents the best notice practicable under the circumstances. Numerous court opinions and comments regarding my testimony, and the adequacy of our notice efforts, are included in our *curriculum vitae* included as **Attachment 1**.

8.    In forming expert opinions, my staff and I draw from our in-depth class action case experience, as well as our educational and related work experiences. I am an active member of the Oregon State Bar, having received my Bachelor of Science from Willamette University and my Juris Doctor from Northwestern School of Law at Lewis and Clark College. I have served as the Director of Legal Notice for Epiq since 2008 and have overseen the detailed planning of virtually all of our court-approved notice programs during that time. Overall, I have more than 22 years of experience in the design and implementation of legal notification and claims administration programs, having been personally involved in well over one hundred successful notice programs.

9.    The facts in this declaration are based on my personal knowledge, as well as information provided to me by my colleagues in the ordinary course of my business at Epiq.

**OVERVIEW**

10.    This Declaration describes the Settlement Notice Plan ("Notice Plan") and notices (the "Notice" or "Notices") for *Roberts v. Zuora, Inc., et al.*, Case No.: 3:19-cv-03422-SI, pending in the United States District Court for the Northern District of California. Epiq designed this Notice Plan based

5

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

on our extensive prior experience and research into the notice issues particular to this case. We designed a Notice Plan that is the best method practicable under the circumstances to provide notice to the Class Members.

## DATA PRIVACY AND SECURITY

11. Epiq has procedures in place to protect the security of class data. As with all cases, Epiq will maintain extensive data security and privacy safeguards in its official capacity as the Claims Administrator for this Action. A Services Agreement, which formally retains Epiq as the Claims Administrator, will govern Epiq's notice and settlement administration responsibilities for this Action. Service changes or modification beyond the original contract scope will require formal contract addendum or modification. Epiq maintains adequate insurance in case of errors.

12. As a data processor, Epiq performs services on data provided, only as outlined in a contract and/or associated statement(s) of work. Epiq does not utilize or perform other procedures on personal data provided or obtained as part of its services to a client. All data provided directly to Epiq will be used solely for the purpose of effectuating the terms of the Stipulation and Agreement of Settlement. Epiq will not use such information or information to be provided by Class Members for any other purpose than the administration of the Settlement in this Action, specifically the information will not be used, disseminated, or disclosed by or to any other person for any other purpose.

13. The security and privacy of clients' and class members' information and data are paramount to Epiq. That is why Epiq has invested in a layered and robust set of trusted security personnel, controls, and technology to protect the data we handle. To promote a secure environment for client and class member data, industry leading firewalls and intrusion prevention systems protect and monitor Epiq's network perimeter with regular vulnerability scans and penetration tests. Epiq deploys best-in-class endpoint detection, response, and anti-virus solutions on our endpoints and servers. Strong authentication mechanisms and multi-factor authentication are required for access to Epiq's systems and the data we protect. In addition, Epiq has employed the use of behavior and signature-based analytics as well as monitoring tools across our entire network, which are managed 24 hours per day, 7 days per week, by a team of experienced professionals.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

14. Epiq's world class data centers are defended by multi-layered, physical access security, including formal ID and prior approval before access is granted, CCTV, alarms, biometric devices, and security guards, 24 hours per day, 7 days per week. Epiq manages minimum Tier 3+ data centers in 18 locations worldwide. Our centers have robust environmental controls including UPS, fire detection and suppression controls, flood protection, and cooling systems.

15. Beyond Epiq's technology, our people play a vital role in protecting class members' and our clients' information. Epiq has a dedicated information security team comprised of highly trained, experienced, and qualified security professionals. Our teams stay on top of important security issues and retain important industry standard certifications, like SANS, CISSP, and CISA. Epiq is continually improving security infrastructure and processes based on an ever-changing digital landscape. Epiq also partners with best-in-class security service providers. Our robust policies and processes cover all aspects of information security to form part of an industry leading security and compliance program, which is regularly assessed by independent third parties.

16. Epiq holds several industry certifications including: TISAX, Cyber Essentials, Privacy Shield, and ISO 27001. In addition to retaining these certifications, we are aligned to HIPAA, NIST, and FISMA frameworks. We follow local, national, and international privacy regulations. To support our business and staff, Epiq has a dedicated team to facilitate and monitor compliance with privacy policies. Epiq is also committed to a culture of security mindfulness. All employees routinely undergo cybersecurity training to ensure that safeguarding information and cybersecurity vigilance is a core practice in all aspects of the work our teams complete.

17. Upon completion of a project, Epiq continues to host all data until otherwise instructed in writing by a customer to delete, archive or return such data. When a customer requests that Epiq delete or destroy all data, Epiq agrees to delete or destroy all such data; provided, however, that Epiq may retain data as required by applicable law, rule or regulation, and to the extent such copies are electronically stored in accordance with Epiq's record retention or back-up policies or procedures (including those regarding electronic communications) then in effect. Epiq keeps data in line with client retention requirements. If no retention period is specified, Epiq returns the data to the client or securely deletes it as appropriate.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

## NOTICE PLAN METHODOLOGY

18.    Federal Rules of Civil Procedure, Rule 23 directs that notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" and that "the notice may be by one or more of the following: United States mail, electronic means, or other appropriate means."[1]    The proposed Notice Plan satisfies these requirements.

19.    The proposed Notice Plan is designed to reach the greatest practicable number of Class Members.  Given our experience with similar notice efforts for securities class action settlements, we expect the proposed Notice Plan will provide notice to Class Members with individual mailed notice, a published Summary Notice, an informational release, and a settlement website.  These methods of providing Notice to Class Members are customary for securities class action settlements.  In my experience, the Notice Plan is consistent with other court-approved notice plans for securities class action settlements, is the best notice practicable under the circumstances of this case and has been designed to satisfy the requirements of due process, including its "desire to actually inform" requirement.[2]

## NOTICE PLAN DETAIL

20.    The proposed Notice Plan was designed to provide notice to the following "Settlement Class" as defined in the Stipulation and Agreement of Settlement as:

> [A]ll Persons who purchased or otherwise acquired Zuora common stock between April 12, 2018, and May 30, 2019, inclusive (the "Class Period"), and were damaged thereby.
>
> Excluded from the Settlement Class are: (i) the Defendants; (ii) members or the immediate family of defendants Tien Tzuo and Tyler Sloat; (iii) any person who was an officer or director of Zuora; (iv) any firm or entity in which Defendants

---

[1] Fed. R. Civ. P. 23(c)(2)(B).

[2] *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950) ("But when notice is a person's due, process which is a mere gesture is not due process.  The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it.  The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . ."); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) ("To satisfy Rule 23(e)(1), settlement notices must 'present information about a proposed settlement neutrally, simply, and understandably.' 'Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'") (citations omitted); N.D. Cal. Procedural Guidance for Class Action Settlements, Preliminary Approval (3) (articulating best practices and procedures for class notice).

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

has or had a controlling interest; (v) any person who participated in the wrongdoing alleged; (vi) Defendants' liability insurance carriers; (vii) any affiliates, parents, or subsidiaries of Zuora; (viii) all Zuora plans that are covered by ERISA; (ix) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such; and (x) those Persons who previously have requested exclusion from the class certified in this Action (*see* ECF No. 243).

## NOTICE PLAN

### *Individual Notice*

21. For the class certification stage, Epiq received data from Zuora, a list of persons and entities who purchased or otherwise acquired Zuora common stock between April 12, 2018, and May 30, 2019, inclusive (the "Class Period"). Epiq loaded this data into its database for the case.

22. Epiq has developed and maintained a proprietary database with names and addresses of the largest and most common nominee holders, which consists of U.S. banks, brokerage firms, and nominees, including national and regional offices of certain nominees (the "Nominee Database"). Epiq's Nominee Database is continually monitored and updated as brokerage firms change addresses, merge, go out of business and/or come into existence. It includes approximately 1,100 names and addresses of nominees, many of which deal in securities of all types, acting either as the executing broker or introducing broker for their customers' transactions. Epiq has developed strong working relationships over the past 30 years with these banks, brokerage firms and nominees. The Nominee Database was used to provide notice for the class certification stage.

23. Beginning in August 2022 Epiq sent 806 Class Certification Notices to identified Class Members and sent 14,795 Class Certification Notices to nominees in Epiq's Nominee Database as well as potential Class Members identified by nominees or custodians that contacted Epiq to receive Class Certification Notices to provide directly to records owners, based on stockholder information. The Class Certification Notices were sent via United States Postal Service ("USPS") first class mail. This existing data will be used to provide Notice of the Settlement.

### *Individual Notice – Direct Mail*

24. Epiq will send a Notice and Proof of Claim form ("Notice Package") via USPS first class mail to all identified Class Members with an associated physical address, who can be identified with

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

reasonable effort, including nominees or custodians who purchased or acquired shares of Zuora common stock during the Class Period as record owners. The Notices will clearly describe the case, the Settlement, and the legal rights of the Class Members. In addition, the Notices will also direct the recipients to the settlement website where they can access additional information.

25.    Nominees or custodians receiving the Notice will be directed, within ten (10) calendar days of receipt of the Notice and Proof of Claim form, to either (a) forward copies of the Notice and Proof of Claim to their beneficial owners or (b) provide the Claims Administrator with lists of the names, last known addresses and email addresses (to the extent known) of such beneficial owners, in which case the Claims Administrator will send the Notice and Proof of Claim form promptly to such identified beneficial owners. Nominee purchasers who elect to send the Notice and Proof of Claim to their beneficial owners will be directed to send a statement to the Claims Administrator confirming that the mailing was made as directed. Additional copies of the Notice will be made available to any record holder requesting such for the purpose of distribution to beneficial owners.

26.    Prior to Epiq sending the Notice Packages, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure the address information is up-to-date and accurately formatted for mailing. In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and will be verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the industry and for the majority of promotional mailings that occur today.

27.    The return address on the Notice Packages will be a post office box that Epiq maintains for this case. The USPS will automatically forward Notice Packages with an available forwarding address order that has not expired ("Postal Forwards"). Notice Packages returned as undeliverable will be re-mailed to any new address available through USPS information (for example, to the address provided by the USPS on returned mail pieces for which the automatic forwarding order has expired, but is still within the time period in which the USPS returns the piece with the address indicated), and to better addresses that may be found using a third-party lookup service. Upon successfully locating better addresses, Notice Packages will be promptly remailed.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

***Publication Notice***

28.    The Summary Notice ("Publication Notice") will appear in the national edition of the industry periodical *Investor's Business Weekly*.

***Informational Release***

29.    To build additional reach and extend exposures, a party-neutral Informational Release will be issued broadly over PR Newswire to approximately 5,000 general media (print and broadcast) outlets, including local and national newspapers, magazines, national wire services, television and radio broadcast media across the continental United States and U.S. Territories as well as approximately 4,500 websites, online databases, internet networks and social networking media.

30.    The Informational Release will include the case website address and the toll-free telephone number.  Although there is no guarantee that any news stories will result, the Informational Release will serve a valuable role by providing additional notice exposures beyond notice that will be provided by the paid media.

***Settlement Website***

31.    The existing informational website (www.ZuoraSecuritiesLitigation.com) that was established for the class certification notice efforts will be updated with additional information regarding the Settlement.  Relevant documents, including the Notice, Summary Notice, Proof of Claim form, Stipulation and Agreement of Settlement, Consolidated Amended Class Action Complaint, and the Preliminary Approval Order will be available on the settlement website.  The website will continue to include information for Nominees.  In addition, the website will include updated relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Class Members may opt-out (request exclusion) from or object to the Settlement, contact information for the Claims Administrator, and how to obtain other case-related information.  Class Members will be able to file a Claim on the settlement website.  The settlement website address will be prominently displayed in all notice documents.

***Toll-Free Number and Other Contact Information***

32.    The existing toll-free telephone number (1-855-914-4696) that was established for the class certification notice efforts will be updated with additional information regarding the Settlement.  Callers will be able to hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Notice be mailed to them.  The automated phone

11

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

system will be available 24 hours per day, 7 days per week. The toll-free telephone number will be prominently displayed in all notice documents.

33. The existing postal mailing address and email address that were established for the class certification notice efforts will continue to be available, providing Class Members with the opportunity to request additional information or ask questions.

### *Comparable Cases*

34. The Northern District of California's *Procedural Guidance for Class Action Settlements* requires that cases with comparable outcomes should be identified and presented to the Court. This includes settlement outcomes for comparable class action settlements involving the same or similar claims, parties, issues, etc. Based on Epiq's experience handling class action settlements, details regarding three comparable securities class action settlements have been compiled. Details regarding the three selected comparable cases are included in **Attachment 2**.

### *Projected Claims Rate*

35. As in most securities class actions, a large majority of potential Settlement Class Members are beneficial purchasers whose securities are held in "street name," i.e., the securities are purchased by banks, brokers and other nominees ("Nominees") in the name of the Nominee, on behalf of the beneficial purchasers. Because of this street name system, even corporate entities often do not know the identity of the vast majority of their shareholders. In estimating class size for any case, Epiq uses a qualitative model, which utilizes historical settlement data from other cases Epiq has administered and the trading volume of the relevant security during the proposed class period, in order to develop an estimate of the number of potential class members that will be identified, within a very broad range. In our experience, in settlements in federal securities class actions, we typically receive claim forms from approximately 10%-20% of potential class members to whom Epiq mails notice. This is consistent with other settlements Epiq has administered, including the following examples in which the number of notices mailed were similar to the number of notices that Epiq estimates mailing here (73,000 notices estimated to be mailed and 18,250 claims estimated to be received, minus invalid claims).

- *In re Salix Pharmaceuticals, Ltd.*, 14-cv-08925 (S.D.N.Y.)
  - Notices mailed: 73,955

12

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

- Claims: 26,821
- 36.2% "claims rate" based on notices mailed
- *Westchester Putnam Counties Heavy & Highway Laborers Local 60 Benefit Funds*, 1:16-cv-02400 (S.D.N.Y.)
  - Notices mailed: 93,949
  - Claims: 15,253
  - 16.2% "claims rate" based on notices mailed
- *In re Allergan, Inc. Proxy Violation Securities Litigation*, 8:14-cv-02004 (C.D. Cal.)
  - Notices mailed: 63011
  - Claims: 37,335
  - 59.2% "claims rate" based on notices mailed
- *In re Wilmington Trust Securities Litigation*, 10-cv-00990 (D. Del.)
  - Notices mailed: 95,018
  - Claims: 22,236
  - 23.4% "claims rate" based on notices mailed
- *Medina v Clovis Oncology, Inc.*, 1:15-cv-02546 (D. Colo.)
  - Notices mailed: 54,242
  - Claims: 6,871
  - 12.6% "claims rate" based on notices mailed
- *In re HD Supply Holdings, Inc. Securities Litigation*, 1:17-CV-02587 (N.D. Ga.)
  - Notices mailed: 62,095
  - Claims: 38,158
  - 61.4% "claims rate" based on notices mailed
- *In re Celestica Inc. Securities Litigation*, 07-cv-00312 (S.D.N.Y.)
  - Notices mailed: 65,484
  - Claims: 23,882
  - 36.4% "claims rate" based on notices mailed

36. It is important to note that claims rate vary depending on a multitude of factors, including, but not limited to, the dollar value of the settlement, available remedy, prominence of the defendant(s)' company name, class period timeframe (particularly how far the class period dates back), and the sophistication of the class members.

### *Cost of Notice Implementation and Administration*

37. The combined cost to implement the notice plan and handle the settlement administration is estimated to be no more than $275,000. The actual total cost for providing settlement administration is dependent upon variables such as the number of: notices sent (and associated postage); claims received; calls to the toll-free telephone line received; undeliverable notices received; and Class Members sent a

13

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

payment (and associated postage), etc. All costs are subject to the Service Contract under which Epiq will be retained as the Claims Administrator, and the terms and conditions of that agreement.

## CONCLUSION

38. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by federal and local rules and statutes, and by case law pertaining to notice. This framework directs that the notice plan be designed to reach the greatest practicable number of potential class members and, in a settlement class action notice situation such as this, that the notice or notice plan not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All of these requirements will be met in this case.

39. This proposed Notice Plan is designed to reach the greatest practicable number of Class Members. Given our experience with similar notice efforts for securities class action settlements, we expect the proposed Notice Plan will provide notice to Class Members with individual mailed notice, a published Summary Notice, an informational release, and a settlement website. These methods of providing Notice to Class Members are customary for securities class action settlements.

40. The proposed Notice Plan follows the guidance for satisfying due process obligations that a notice expert gleans from the United States Supreme Court's seminal decisions, which emphasize the need: (a) to endeavor to actually inform the Settlement Class, and (b) to ensure that notice is reasonably calculated to do so:

    a) "[W]hen notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it," *Mullane v. Central Hanover Trust*, 339 U.S. 306, 315 (1950); and

    b) "[N]otice must be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (citing *Mullane*, 339 U.S. at 314).

41. The proposed Notice Plan for this Settlement will provide the best notice practicable under the circumstances, conforms to all aspects of Federal Rules of Civil Procedure Rule 23 regarding notice as well as the N.D. Cal. Procedural Guidance for Class Action Settlements, comports with the guidance for

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN

effective notice stated in the Manual for Complex Litigation, Fourth and applicable FJC materials, and satisfies the requirements of due process, including its "desire to actually inform" requirement.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed May 15, 2023.

_____
Cameron R. Azari, Esq.

DECLARATION OF CAMERON R. AZARI, ESQ. REGARDING NOTICE PLAN