Steve Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>                                   Plaintiff,<br><br>    v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>                                   Defendants. | No. 3:19-cv-03422-SI<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Hearing Date: January 12, 2024<br>Time: 10:00 a.m.<br>Courtroom: 1, 17th Floor<br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ...................................................................................................2

II.   THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL......................................4

    A.    Class certification remains appropriate. ..........................................................................4

    B.    The Settlement warrants final approval...........................................................................4

    C.    The Settlement satisfies the requirements of Rule 23(e)(2). .......................................5

        1.    Lead Plaintiff and Lead Counsel have adequately represented the class. ................................................................................................................5

        2.    The Settlement was negotiated at arm's length after mediation with an experienced mediator.......................................................................6

        3.    The Settlement provides the Settlement Class adequate relief, considering the costs, risks, and delay of litigation and the other Ninth Circuit factors addressing whether a settlement is fair, reasonable, and adequate. .............................................................................8

            a.    The amount offered in the settlement....................................................8

            b.    The strength of Lead Plaintiff's case....................................................9

            c.    The complexity, expense, and duration of continued litigation.................................................................................................10

            d.    The risk of maintaining class action status.........................................11

            e.    The extent of discovery completed and the stage of the proceedings.........................................................................................11

            f.    The experience and views of counsel..................................................12

            g.    The reaction of Settlement Class Members to date. ...........................12

        4.    The remaining Rule 23(e)(2) factors also support final approval. ................................................................................................................13

III.  THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL ....................................................14

IV.   NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA ................................................................17

V.    CONCLUSION ........................................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ............................................................................. 9

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) .................................................................................. 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...................................................................................................... 7

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ............................................................................ 16

*Brown v. Hain Celestial Grp., Inc.*,
2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ............................................................................. 14

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ................................................................................................ 4, 5

*Chang v. Wells Fargo Bank, N.A.*,
2023 WL 6961555 (N.D. Cal. Oct. 19, 2023) ........................................................................... 10

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019)............................................................................... 5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) .................................................................................... 5, 8, 10, 12

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) .................................................................................................. 15

*Davis v. Yelp, Inc.*,
2023 WL 3063823 (N.D. Cal. Jan. 27, 2023)............................................................................. 5

*Destefano v. Zynga*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................................................................. 8

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................................. 15

*Edwards v. Nat'l Milk Producers Fed'n*,
2017 WL 3623734 (N.D. Cal. June 26, 2017)............................................................................ 6

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ..................................................................................................... 6

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................................................. 7

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022) ................................................................... 4, 10, 18

*Fleming v. Impax Lab'ys Inc.*,
2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ............................................................................. 16

*Foster v. Adams & Assocs., Inc.*,
2022 WL 425559 (N.D. Cal. Feb. 11, 2022) ........................................................................... 7, 11

*In re Google LLC Street View Elec. Commc'ns Litig.*,
2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ............................................................................. 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................................................ 6

*Hartless v. Clorox Co.*,
273 F.R.D. 630 (S.D. Cal. 2011) .................................................................................................. 11

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ............................................................................. 18

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ..................................................................... 5, 6, 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .......................................................................................................... 6

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................................................... 6, 9

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017) ........................................................................................... 9

*Kuraica v. Dropbox, Inc.*,
2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ............................................................................... 12

*Mendoza v. Hyundai Motor Co.*,
2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .................................................................................. 5

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ................................................................................ 6

*In re OmniVision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal 2008) ............................................................................. 11, 12, 15

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) ........................................................................................................ 17

*Vinh Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................................................................. 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
895 F.3d 597 (9th Cir. 2018) ..................................................................................................... 4

*Young v. LG Chem Ltd.*,
783 F. App'x 727 (9th Cir. 2019) ....................................................................................... 17, 18

**STATUTES**

15 U.S.C. § 78u-4(a)(7) .............................................................................................................. 18

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

*Hsu v. Puma Biotech., Inc.*,
No. 15-cv-00865, ECF No. 913 (C.D. Cal. Aug. 3, 2022) ........................................................ 10

Cornerstone Research, *Securities Class Action Settlements, 2021 Review and
Analysis*, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-
Class-Action-Settlements-2021-Review-and-Analysis.pdf (last accessed Dec. 7,
2023) ......................................................................................................................................... 8

Cornerstone Research, *Securities Class Action Settlements, 2022 Review and
Analysis*, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-
Class-Action-Settlements-2022-Review-and-Analysis.pdf (last accessed Dec. 7,
2023) ......................................................................................................................................... 8

### NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 12, 2024, at 10:00 a.m. PST, via Zoom, the Honorable Susan Illston presiding, the Court-appointed Lead Plaintiff, New Zealand Methodist Trust Association, will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure 23: (1) granting final approval of the proposed settlement (the "Settlement") set forth in the Amended Stipulation and Agreement of Global Settlement dated June 22, 2023 ("Stipulation"); and (b) approving the proposed Plan of Allocation.[1]

This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows; the accompanying declarations, including the Declaration of Steve W. Berman, the Declaration of Stephen Walker; and the Declaration of Eric Blow; the Stipulation; the pleadings and records on file in the Federal Action; the arguments of counsel; and all such other matters as the Court may consider in evaluating the Motion.

Lead Plaintiff is not aware of any opposition to the Motion. A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order granting approval of the proposed Plan of Allocation will be submitted with Lead Plaintiff's reply submission on January 5, 2024, after the December 22, 2023 deadline for Settlement Class Members to object to the Settlement or Plan of Allocation has passed.

### STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should grant final approval of the proposed Settlement.

2. Whether the Court should grant final approval of the proposed Plan of Allocation.

---

[1] All capitalized terms not defined herein shall have those meanings as set forth in the Stipulation, attached as **Exhibit 1** to the Declaration of Steve W. Berman in Support of Lead Plaintiff's (1) Motion for Final Approval of Proposed Class Action Settlement and (2) Motion for an Award of Attorneys' Fees, Litigation Expenses, and Service Award ("Berman Decl.").

Emphasis is added and citations are omitted throughout unless otherwise noted. All exhibits referenced herein are attached to the Berman Declaration, unless otherwise indicated.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff New Zealand Methodist Trust Association, on behalf of itself and the Settlement Class, respectfully submits this Memorandum in support of its Motion for final approval of the proposed Settlement and Plan of Allocation.

## **I.       PRELIMINARY STATEMENT**

Lead Plaintiff, through Lead Counsel, has obtained a Settlement for $75,500,000 in cash in exchange for the dismissal of all claims brought in the Federal Action and State Action against the Federal Action Defendants[2] and State Action Defendants.[3] The Settlement is an exceptional result for the Settlement Class and falls significantly above the typical range of damages recovered in securities class actions, as it represents approximately 21% of the estimated maximum damages in this case, and 139% of damages had the jury accepted the Federal Action Defendants' view of Lead Plaintiff's potential recovery. *See* Berman Decl. ¶¶ 49-50. Indeed, after mailing more than 69,000 settlement notice packets, to date no Settlement Class Member has objected to the Settlement or Plan of Allocation. *Id. ¶¶* 53, 90.

The decision to settle the case was well-informed by an extensive investigation, hard-fought litigation, and arm's-length negotiations between the Settling Parties under the supervision of an experienced mediator, Robert A. Meyer, Esq. of JAMS.[4] *See id.* ¶¶ 9-32. Based on these extensive efforts, Lead Plaintiff and Lead Counsel possessed a thorough understanding of the relative strengths and weaknesses of the claims and whether the Settlement obtained was fair, reasonable, and adequate. *Id. ¶* 4. As made clear during the litigation and settlement discussions, both sides believed in the strength of their claims and defenses. *Id. ¶¶* 36-44. Lead Counsel, moreover, consistently stated throughout the discussions that it was willing and able to take the case to trial rather than settle for less

---

[2] The Federal Action Defendants are Zuora, Inc., Tien Tzuo, and Tyler Sloat.

[3] The State Action Defendants are Zuora, Inc., Tien Tzuo, Tyler Sloat, Peter Fenton, Kenneth A. Goldman, Timothy Haley, Jason Pressman, Michelangelo Volpi, Magdalena Yesil, Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Allen & Company LLC, Jefferies LLC, Canaccord Genuity LLC, and Needham & Company, LLC.

[4] Lead Plaintiff respectfully refers the Court to the Berman Declaration filed herewith. The Berman Declaration contains a detailed description of, among other things, the nature of the claims asserted, the procedural history of the Federal Action, the negotiations leading up to the Settlement, and the terms of the Plan of Allocation.

than fair value. *Id. ¶* 84. The result is an excellent recovery for the Settlement Class that readily satisfies Rule 23(e)(2)'s standards for final approval.

Lead Plaintiff also requests that the Court approve the proposed Plan of Allocation, which was detailed in the Notice. *See id.* ¶ 59. The Plan of Allocation governs the calculation of claims and the distribution of Settlement proceeds among Authorized Claimants. *Id.* Based on the analysis of Lead Plaintiff's expert, the Plan of Allocation subjects all Class Members to the same formulas for calculating damages (*i.e.*, the difference between what Class Members paid for their Zuora securities during the Class Period and what they would have paid had the alleged misstatements and omissions not been made). *Id. ¶¶* 58, 60-64.

The Court granted preliminary approval of the Settlement on August 14, 2023. *See* ECF No. 268. In that Order, the Court approved the process by which Settlement Class Members would receive notice of the Settlement and submit claims and objections. *Id.* To date, the Court-authorized Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), has disseminated over 69,000 copies of the Notice to potential Settlement Class Members and nominees. *See* **Exhibit 5**, Declaration of Eric Blow ("Blow Declaration") ¶ 11. The Notice, Claim Form, and other key Settlement documents have been made available on a dedicated website maintained for the Settlement by Epiq. *Id.* ¶ 20. In addition, the Summary Notice was published in *Investor's Business Weekly* and transmitted once over *PRNewswire*. *Id.* ¶ 15. While the deadline to submit objections from the Settlement Class is not until December 22, 2023, to date no Settlement Class Member has objected to the Settlement or Plan of Allocation.[5] *See* Berman Decl. ¶ 56. Moreover, Lead Plaintiff fully supports the Settlement. *See* **Exhibit 2**, Declaration of Stephen Walker ("Walker Decl.") ¶ 7.

---

[5] The Northern District's *Procedural Guidance for Class Action Settlements*, Final Approval § 1 states that the motion for final approval briefing should include information about the number of undeliverable class notices and claim packets, the number of valid claims, the number of opt outs and objections and address any objections. The number of undeliverable notices and current objections to the Settlement is addressed in the Blow and Berman Declarations. *See* Blow Decl. ¶ 12; Berman Decl. ¶ 56. Lead Counsel will address any objections and detail the number of valid claims received in the reply brief to be filed January 5, 2024. *See* Berman Decl. ¶ 56. As the Court preliminarily approved the Settlement with no second opportunity for Class Members to opt-out, such numbers are not addressed in the declaration from Epiq. *See* ECF No. 268.

For these reasons, Lead Plaintiff submits that the Settlement meets the standards for final approval under Rule 23 and is a fair, reasonable, and adequate result for the Settlement Class. As such, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and approve the Plan of Allocation as the method for distributing the Net Settlement Fund to the Settlement Class.

## II.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

### A.    Class certification remains appropriate.

In granting preliminary approval, the Court certified the Settlement Class that encompassed both the Federal Class and the class from the State Action, and appointed Lead Plaintiff as Class Representative of the Settlement Class and Hagens Berman Sobol Shapiro LLP as Class Counsel for the Settlement Class.[6] *See* ECF No. 268 at 4-5. Class certification for settlement purposes remains appropriate, as nothing has changed since preliminary approval that would undermine the Court's conclusion. *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *4 (N.D. Cal. July 15, 2022).

### B.    The Settlement warrants final approval.

The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). "Deciding whether a settlement is fair is … best left to the district judge." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

Under Rule 23(e)(2), "a district court may approve a class action settlement only after finding that the settlement is 'fair, reasonable, and adequate.'" *Campbell*, 951 F.3d at 1120-21. In making that determination, the Court must consider the factors laid out in Rule 23(e)(2)(A)-(D), which will be

---

[6] The Court previously granted class certification in the Federal Action and appointed Lead Plaintiff as Class Representative and Hagens Berman Sobol Shapiro LLP as Class Counsel. *See* ECF No. 113. As explained in the preliminary approval motion, given that the Federal Class encompasses those investors within the State Class, the Settlement Class did not modify the size of the class initially before the Court in the Federal Action. *See* ECF No. 248 at 15. Accordingly, the release of the State Action claims pursuant to the Stipulation is appropriate, particularly in light of the additional compensation ($500,000) provided by Defendants pursuant to the amended settlement terms. *See id.* at 15-16.

addressed below. Consistent with the Rule 23(e)(2) considerations, courts in the Ninth Circuit look at the following factors when assessing final approval of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[7]

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004).[8]

After a preliminary review, the Court found the Settlement was fair, reasonable, and adequate, subject to further consideration at the Settlement hearing. *See* ECF No. 268. The Court's conclusion on preliminary approval is equally true now, as nothing has changed between August 14, 2023, and the present. *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now."); *Davis v. Yelp, Inc.*, 2023 WL 3063823, at *1 (N.D. Cal. Jan. 27, 2023) (reaffirming finding at preliminary approval stage). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

**C.     The Settlement satisfies the requirements of Rule 23(e)(2).**

**1.     Lead Plaintiff and Lead Counsel have adequately represented the class.**

When determining final approval of a class action settlement, the Court should consider whether Lead Plaintiff and Lead Counsel "have adequately represented the class." *See* Fed. R. Civ. P. 23(e)(2)(A). In evaluating adequacy, courts consider (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and (2) whether "the named plaintiffs

---

[7] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

[8] The 2018 amendments to Rule 23(e)(2) were not meant to "displace" any of the factors historically applied by the Ninth Circuit, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See Campbell*, 951 F.3d at 1121 n.10. The Court should therefore apply the "framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

and their counsel [will] prosecute the action vigorously on behalf of the class." *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019).

Lead Plaintiff has no interests antagonistic to those of other Class Members, as their claims are based on a common course of alleged wrongdoing by the Federal Action Defendants. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Lead Plaintiff and all Settlement Class Members share the same interest in obtaining the largest possible recovery from the Federal Action Defendants. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019).

As detailed in the accompanying declaration, Lead Plaintiff has also adequately represented the interests of the Settlement Class in its vigorous prosecution of the Federal Action during the last four years. *See* Walker Decl. ¶¶ 5, 11. Likewise, Lead Counsel is highly qualified and experienced in securities litigation, actively pursued the claims of Zuora investors in this Court, and zealously advocated for the Class's best interests throughout the litigation and during settlement negotiations. *See* Berman Decl. ¶¶ 9-32, 83-84. Rule 23(e)(2)(A)'s adequacy factor therefore clearly weighs in favor of the Settlement. *Hefler*, 2018 WL 6619983, at *6 (finding Rule 23(e)(2)(A) satisfied when counsel "prosecuted this action through dispositive motion practice, [] discovery, and formal mediation").

**2.    The Settlement was negotiated at arm's length after mediation with an experienced mediator.**

Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also Edwards v. Nat'l Milk Producers Fed'n*, 2017 WL 3623734, at *5 (N.D. Cal. June 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021) (noting that the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution"). In assessing whether a settlement was negotiated at arm's length, the Court can look at circumstances supporting procedural fairness, including the (i) involvement of a mediator, *see In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007); and (ii) "the extent of discovery completed and the stage of the proceedings," *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

Here, the proposed Settlement was achieved only after two formal mediations and various teleconferences and written communications with Mr. Meyer—an experienced mediator with considerable knowledge, experience, and expertise in the field of securities law. *See* Berman Decl. ¶ 30. During the mediation sessions, Lead Counsel, State Class Counsel, and Defendants' Counsel prepared and presented submissions to Mr. Meyer concerning their respective views on the merits of the Federal and State Actions, along with supporting evidence obtained through discovery. *Id.* The protracted negotiations under the supervision of a neutral mediator like Mr. Meyer are evidence that the Settlement was reached at arm's length. *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at \*3 (N.D. Cal. July 22, 2019) (granting final approval based on agreement following "rigorous arm's length negotiations led by Mr. Meyer").

In addition, Lead Plaintiff possessed a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement. Lead Plaintiff not only completed exhaustive fact and expert discovery at the time it negotiated the Settlement on behalf of the Settlement Class, but the original settlement was reached just prior to the Court hearing oral argument on the Federal Action Defendants' summary judgment motion and six months before the start of trial. *See* Berman Decl. ¶¶ 9-32. "Class settlements are presumed fair when they are reached 'following sufficient discovery and genuine arms-length negotiation.'" *Foster v. Adams & Assocs., Inc.*, 2022 WL 425559, at \*6 (N.D. Cal. Feb. 11, 2022).

Finally, there is no indicia of possible collusion identified by the Ninth Circuit, as Lead Counsel is not receiving a "disproportionate distribution of the settlement" and there are no provisions in the Stipulation allowing settlement proceeds to revert to the Federal Action Defendants or preventing the Federal Action Defendants from challenging Lead Counsel's request for attorneys' fees.[9] *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

In sum, these facts demonstrate that the Settlement is the result of arm's-length negotiations and readily satisfy Rule 23(e)(2)(B).

---

[9] *See* Stipulation ¶ 2.3 ("The Settlement is non-recapture, *i.e.* it is not a claims-made settlement."); *id.* ¶¶ 7.1-7.7 (reflecting no agreement that the Federal Action Defendants will not challenge Lead Counsel's fee application).

**3.    The Settlement provides the Settlement Class adequate relief, considering the costs, risks, and delay of litigation and the other Ninth Circuit factors addressing whether a settlement is fair, reasonable, and adequate.**

The issue considered under Rule 23(e)(2)(C)—whether the "relief provided for the class is adequate"—overlaps considerably with the additional Ninth Circuit factors used to assess final approval of a settlement, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide." *See* Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill*, 361 F.3d at 575-77. As will be demonstrated below, these considerations weigh in favor of the Settlement.

**a.    The amount offered in the settlement.**

In evaluating the adequacy of a recovery coming from a settlement, "courts primarily consider [the] expected recovery balanced against the value of the settlement offer." *See Hefler*, 2018 WL 6619983, at \*9; *see also Destefano v. Zynga*, 2016 WL 537946, at \*11 (N.D. Cal. Feb. 11, 2016) (amount of settlement is "generally considered the most important" factor).

As previously described in support of preliminary approval, the $75.5 million Settlement constitutes an exceptional result for the Settlement Class. Lead Plaintiff's damages expert estimated that in the best-case scenario, the total maximum aggregate damages would be approximately $360 million. *See* Berman Decl. ¶ 49. Therefore, the Settlement recovers approximately 21% of the total maximum damages potentially recoverable in this case. *Id.* Such a recovery is approximately 4.29 times the median percentage recovery for cases settled with estimated damages between $250–$499 million or more in 2021 (4.9%) and approximately 4.88 times the median recovery, on a percentage basis, of similar cases settled in 2022 (4.3%).[10] *Id.* The recovery also represents a 139% recovery of the maximum damages as calculated by the Federal Action Defendants' experts. *Id.* ¶ 50.

---

[10] *See* Cornerstone Research, *Securities Class Action Settlements, 2021 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf, at Figure 5 (last accessed Dec. 7, 2023); Cornerstone Research, *Securities Class Action Settlements, 2022 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf, at Figure 5 (last accessed Dec. 7, 2023).

As discussed more fully below, the benefits conferred on Settlement Class Members by the Settlement far outweigh the costs, risks, and delays of further litigation. Accordingly, the relief provided by the Settlement supports approval.

### b.    The strength of Lead Plaintiff's case.

To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of [a] recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017). Given the "complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty inherent in long, costly trials." *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at \*8 (S.D.N.Y. Apr. 6, 2006).

While Lead Plaintiff at all times remained confident in its ability to ultimately prove its claims at trial, it would be required to prove all elements of its claims to prevail, while the Federal Action Defendants needed to succeed on only one defense to potentially defeat the entire action. Over the course of the litigation, including the mediation sessions, the Federal Action Defendants disputed the falsity and materiality of their alleged misstatements and vigorously challenged scienter. *See* Berman Decl. ¶¶ 36-38; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1172 (noting that scienter is "complex and difficult to establish at trial"). The Federal Action Defendants also challenged Lead Plaintiff's theory of loss causation and damages at summary judgment. *See* Berman Decl. ¶ 40; *see also Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at \*2 (C.D. Cal. May 6, 2014) (noting to prove and calculate damages involves "complex analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex area of the law," rendering "the outcome of that analysis … inherently difficult to predict and risky").

Other substantial obstacles to Lead Plaintiff's success at trial included the complexity of the underlying issues related to Billing-RevPro integration and resulting impact on Zuora's growth and revenues and the fact that any jury would have heard competing expert witnesses testifying in support of the Federal Action Defendants' main defenses. *See* Berman Decl. ¶¶ 26, 37, 42; *see also In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at \*9 (C.D. Cal. July 28, 2014) (noting plaintiff's

proof of loss causation "would have turned on expert testimony presented by both sides, making his ability to prevail uncertain").

Lead Counsel carefully analyzed all of these risks prior to reaching the Settlement Agreement and recognized that had the Federal Action Defendants succeeded on only one of their defenses, there would have been no recovery for the Settlement Class. *See* Berman Decl. ¶¶ 44-48. In contrast, the resolution of the litigation through the Settlement guarantees the Settlement Class a recovery of $75.5 million. This factor strongly warrants final approval of the Settlement.

### c.     The complexity, expense, and duration of continued litigation.

In evaluating the fairness of the Settlement, the Court should also account for the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i). In general, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *See Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *4 (N.D. Cal. Oct. 19, 2023); *see also Fleming*, 2022 WL 2789496, at *5 ("Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case.").

Barring the Settlement, the continued litigation of the Federal Action would require the expenditure of substantial additional sums of time and money at trial and beyond, with no guarantee that any additional benefit would be provided to the Settlement Class. Even if Lead Plaintiff prevailed at trial and met its burdens in establishing falsity, materiality, class-wide reliance under the "fraud of the market" presumption, loss causation, the measure of per-share damages (if any), and control person liability, the case would still be far from over. *See* Berman Decl. ¶ 46. For example, the Federal Action Defendants would have had the opportunity to challenge an individual Settlement Class Member's membership in the Class, the presumption of reliance for any Class Member, and the amount of damages due each Settlement Class Member. *Id.* Moreover, the Federal Action Defendants would have certainly filed an appeal, which would further delay (and risk entirely) any additional benefit received via trial. *Id.* ¶ 47; *see also Hsu v. Puma Biotech., Inc.*, No. 15-cv-00865, ECF No. 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial).

As opposed to continued litigation, with its risk, expense, and potential delay, the Settlement provides a certain, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members … favors settlement of this action."). This factor favors the Court granting final approval of the Settlement.

### d.    The risk of maintaining class action status.

At the time the parties reached the Settlement, there was a pending summary judgment hearing. *See* Berman Decl. ¶ 30. Therefore, Lead Counsel believes the risk of maintaining class action status through the end of trial was minimal. *Id. ¶* 45. Nevertheless, this factor still favors the Settlement, as Rule 23(c)(1) allows a class certification order to be altered or amended at any time prior to a decision on the merits. *Id.* In other words, the Federal Action Defendants still could have moved to decertify the Settlement Class or shorten the Class Period up until the time the jury reached a verdict. *See In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal 2008) ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

### e.    The extent of discovery completed and the stage of the proceedings.

The extent of discovery completed and the stage of the proceedings at which settlement was achieved supports final approval of the Settlement. The original settlement was reached just before hearing on the Federal Action Defendants' motion for summary judgment and after the parties had completed substantial document, deposition, and expert discovery. *See* Berman Decl. ¶¶ 9-32. The discovery provided significant insight into the strengths and challenges of the Federal Action, and the Settling Parties had a thorough understanding of the arguments, evidence, and potential witnesses that would inform the trial. *Id. ¶* 4. There can be no question that Lead Plaintiff and Lead Counsel had sufficient information to evaluate the case and the merits of the Settlement by the time it was reached. *See Foster*, 2022 WL 425559, at *6 (finding "[p]laintiffs were 'armed with sufficient information about the case' to broker a fair settlement" given the discovery conducted, years of litigation, and multiple settlement conferences).

**f.**    **The experience and views of counsel.**

The opinion of experienced counsel as to the merits of a class settlement after arm's-length negotiation is entitled to considerable weight. *See OmniVision*, 559 F. Supp. 2d at 1043 ("'The recommendation of plaintiffs' counsel should be given a presumption of reasonableness.' … In addition to being familiar with the present dispute, Lead Counsel has significant experience in securities litigation.").

Lead Counsel has significant experience in securities and other complex class action litigation and has negotiated numerous other substantial class action settlements throughout the country. *See* Berman Decl. ¶¶ 83-84; **Exhibit 8**, Hagens Berman's firm resume. Lead Counsel has successfully defeated a motion to dismiss, obtained class certification, reviewed thousands of documents, conducted over a dozen fact and expert depositions, and prepared arguments to defeat summary judgment. *See* Berman Decl. ¶¶ 9-29. Based on these extensive efforts, and with the aid of sophisticated experts where appropriate, Lead Counsel possessed a firm understanding of Lead Plaintiff's claims by the time the Settlement was reached, and accordingly, Lead Counsel concluded that the Settlement is an outstanding result for the Class. *Id. ¶¶* 4, 9-29. Therefore, in this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *OmniVision*, 559 F. Supp. 2d at 1043.

**g.**    **The reaction of Settlement Class Members to date.**

In assessing the fairness of a class action settlement, "courts within the Ninth Circuit typically consider 'the reaction of the class members to the proposed settlement.'" *In re Google LLC Street View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. Specifically, "[a] court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v. Dropbox, Inc.*, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021). While the deadline to object to the Settlement is December 22, 2023, to date, no objections have been received. *See* Berman Decl. ¶ 56. Lead Plaintiff supports the Settlement as well. *See* Walker Decl. ¶ 7. The lack of objections from Settlement Class Members favors approval of the Settlement.

**4.    The remaining Rule 23(e)(2) factors also support final approval.**

Under Rule 23(e)(2), the Court should consider the remaining factors in evaluating the Settlement: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorneys' fees, including the timing of payment; (iii) any agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These additional Rule 23(e)(2) factors also support the Court's approval of the Settlement.

To start, the proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members, as their claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D); *see* infra § III. The Court-authorized Claims Administrator, Epiq, will review and process all the received Claims, provide each Claimant an opportunity to cure any deficiency in a Claim or request judicial review of a denied Claim, if applicable, and if the Settlement is approved, will distribute Authorized Claimants their *pro-rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See* Berman Decl. ¶¶ 57-70; *infra* § III.

Furthermore, the Settlement relief remains adequate when considering the proposed award of attorneys' fees and litigation expenses incurred in prosecuting the Federal Action, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As detailed in the fee and expense papers accompanying this Motion, the requested attorneys' fees of 30% of the Settlement Fund, to be paid upon the Court's approval, are reasonable based on Lead Counsel's efforts and the risks undertaken in obtaining the exceptional result of a $75.5 million cash recovery, and are in line with fee awards granted in the Ninth Circuit.[11] Any fee award is also separate from approval of the

---

[11] In connection with the fee request, Lead Counsel also seeks payment from the Settlement Fund of their expenses in the total amount of $1,100,008.81 and Lead Plaintiff MTA's costs incurred in representing the Settlement Class in the amount of $25,000. In addition, State Class Counsel, Bottini & Bottini, Inc., intends to seek attorneys' fees and expenses totaling $1,000,000, based on the benefit added to the Federal Action through their efforts in the State Action. *See* **Exhibit 3**, Declaration of Francis A. Bottini, Jr. ¶¶ 3, 5-20. Significantly, any award of attorneys' fees and expenses to State Class Counsel will come out of the award of attorneys' fees and expenses to Lead Counsel. *See* Stipulation ¶ 7.2. Likewise, any award for the State Court Class Representative will come out of the

Settlement, and no Party may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation ¶¶ 7.7, 11.9. In addition, the proposal that any attorneys' fees be paid upon the entry of the Court's order is reasonable and consistent with common practice in similar cases, as the Stipulation states that if the Settlement is terminated or any fee award is subsequently modified, Lead Counsel must repay the subject amount with interest.[12] *See* Stipulation ¶ 7.4.

Finally, Settlement Class Members were provided with the opportunity to opt-out of the Federal and State Classes in response to the joint notice issued in both actions. *See* ECF No. 248 at 26. As previously disclosed, the only agreement Lead Plaintiff and the Federal Action Defendants entered into in addition to the initial Term Sheet, the original Stipulation, and the Amended Stipulation, was a confidential Supplemental Agreement regarding requests for exclusion that would govern if the Court allowed a second opt-out opportunity. *Id.* Given that the Court preliminarily approved the Settlement with no second opportunity for Class Members to opt-out, the Supplemental Agreement is moot. *See* ECF No. 268.

For the reasons set forth above and in the accompanying declarations, the Settlement is fair, reasonable, and adequate when evaluated under the Rule 23(e) and Ninth Circuit standards, and therefore, warrants the Court's final approval.

### III. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

Along with requesting final approval of the Settlement, Lead Plaintiff requests final approval of the Plan of Allocation that the Court preliminarily approved on August 14, 2023. *See* ECF No. 268 at 7. Per Rules 23(e)(2)(C)(ii) and (e)(2)(D), the Plan of Allocation must "treat[] class members equitably relative to each other" and be "effective[]." Assessment of the Plan of Allocation "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan

---

award of attorneys' fees and expenses to State Class Counsel, *see* Stipulation ¶ 7.5, and the basis for such an award is detailed in the declaration from the State Court Class Representative. *See* **Exhibit 4**, Declaration of State Court Class Representative Aric Olsen.

[12] "Courts in this district approve these 'quick pay' provisions routinely." *Brown v. Hain Celestial Grp., Inc.*, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016).

must be fair, reasonable and adequate." *OmniVision*, 559 F. Supp. 2d at 1045; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).

Developed in consultation with Lead Plaintiff's damages expert, Dr. Tavy Ronen, Ph.D, the Plan of Allocation details the method for equitably distributing the Net Settlement Fund to Settlement Class Members who suffered economic losses as a result of the alleged violations of the Securities Exchange Act of 1934 ("Exchange Act") as set forth in the Federal Action and timely submit a valid Claim. *See* Berman Decl. ¶ 58. To have a Recognized Claim and recover under the Plan of Allocation, a Claimant must have purchased or otherwise acquired Zuora common stock between April 12, 2018, and May 30, 2019, inclusive (*i.e.*, the Class Period) and held those shares through May 30, 2019, when corrective information was released to the market and removed the alleged artificial inflation from the price of Zuora common stock. *Id.* ¶ 61. The artificial inflation used to calculate a Recognized Claim is consistent with what Dr. Ronen calculated in her merits expert report.[13] *Id.* ¶¶ 61, 65.

A Recognized Claim is the sum of a Claimant's Recognized Loss Amounts for all of his, her, or its Class Period transactions. *Id.* ¶ 65. In general, Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Zuora common stock at the time of purchase or acquisition and at the time of sale (*i.e.*, the difference between the actual purchase price and sale price). *Id.* ¶ 61. Recognized Loss Amounts will depend upon several factors, including the date(s) the shares were purchased/acquired, whether such shares were sold, and if sold, the date and price of the sale(s), taking into the account the PSLRA's limitation on recoverable damages.[14] *Id.* ¶ 62.

---

[13] Specifically, for the Plan of Allocation, Dr. Ronen calculated the estimated amount of artificial inflation in the per-share closing price of Zuora common stock which was allegedly proximately caused by the Federal Action Defendants' alleged material false and misleading statements and omissions during the Class Period. *See* Berman Decl. ¶ 60. In calculating the estimated artificial inflation throughout the Class Period to be $5.53, Dr. Ronen considered price changes in Zuora common stock in reaction to certain public announcements allegedly revealing the truth concealed by the Federal Action Defendants' alleged misrepresentations and omissions, adjusting for price changes that were attributable to market or industry forces. *Id.*

[14] In practice, and as detailed in the Plan of Allocation, for each share of Zuora common stock purchased or otherwise acquired during the Class Period, and sold on or before May 30, 2019, the Recognized Loss Amount will be $0.00. *See* Berman Decl. ¶ 63; *see also Dura Pharms. v. Broudo*, 544 U.S. 336, 342 (2005) ("[T]he logical link between the inflated share purchase price and any later

The Claims Administrator will determine whether a Claimant has "Market Gains" or "Market Losses" with respect to overall transactions during the Class Period. *Id.* ¶ 65. If a Claimant had a Market Gain, the value of the Claimant's Recognized Claim will be zero, and the Claimant will still be bound by the Settlement. *Id.* If a Claimant suffered an overall Market Loss but the Market Loss was less than the Claimant's Recognized Claim, then the Claimant's Recognized Claim will be limited to the amount of the Market Loss. *Id.*

The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.* ¶ 67; *see also Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *11 (N.D. Cal. Nov. 22, 2021) (approving allocation "on a *pro rata* basis according to each class member's recognized loss"). One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. *Id.* ¶ 67. If any funds remain after an initial distribution to Authorized Claimants, subsequent cost-effective distributions will be conducted. *Id.* ¶ 68. Any distribution via *cy pres* to a 501(c)(3) organization identified by the Court will only be made when the residual amount left for re-distribution to Authorized Claimants is so small that a further re-distribution would not be cost effective. *Id.*

Critically, more than 69,000 notice packets advising Settlement Class Members of the Plan of Allocation and their right to object to the Plan of Allocation have been mailed to potential Settlement Class Members and Nominees. Blow Decl. ¶ 12. To date, there have been no objections to the Plan of Allocation. *See* Berman Decl. ¶ 70.

Based on the foregoing, the Plan of Allocation is fair, reasonable, and adequate, and it should be approved. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) ("no indication that the distribution and allocation methods proposed … will result in

---

economic loss is not invariably strong. … [I]f, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

For each share purchased or otherwise acquired during the Class Period, and sold from May 31, 2019, through August 28, 2019, the Recognized Loss Amount will be the lesser of (i) $5.53 or (ii) the purchase price minus the average closing price on the sale date. *Id.* For each share purchased or otherwise acquired during the Class Period and held as of the close of trading on August 28, 2019, the Recognized Loss Amount will be the lesser of (i) $5.53, or (ii) the purchase price minus $14.90, the average closing price for Zuora common stock between May 31, 2019, and August 28, 2019. *Id.* ¶ 64.

unequitable treatment of Class Members" where the "Claims Administrator will determine each Authorized Claimant's share of the Net Settlement Fund based upon the information submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on a pro rata basis").

## IV.    NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

A district court "must direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B). The notice also must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019). The PSLRA further requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007).

The substance of the Notice, which the Court preliminarily approved as amended, satisfies Rule 23 and due process. The Claims Administrator has mailed more than 69,000 copies of the Court-approved Notice to potential Class Members and their nominees who could be identified with reasonable effort. *See* Blow Decl. ¶ 12. In addition, the Court-approved Summary Notice was published in *Investor's Business Weekly* and transmitted once over *PRNewswire*. *Id.* ¶ 15. The Claims Administrator also provided all information regarding the Settlement online through the Settlement website, which also provided access to downloadable copies of the Notice, Claim Form, and other Settlement related documents. *Id.* ¶ 20. Pursuant to the Stipulation, Defendants issued notice pursuant to CAFA. *See* ECF No. 251.

The notice program provides the necessary information for Class Members to make an informed decision regarding the proposed Settlement, as required by the PSLRA. Specifically, the Notice and Summary Notice apprise Settlement Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share of Zuora common stock; (iv) the maximum amount of attorneys' fees and

expenses that will be sought; (v) the identity and contact information for a representative from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to object to the Settlement; (vii) the binding effect of a judgment on Settlement Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Federal Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website. *See* Berman Decl. ¶ 52; *see also* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also details the Plan of Allocation and further explains that the Net Settlement Fund will be distributed to eligible Class Members who submit valid and timely Proofs of Claim under the Plan of Allocation. *See* Berman Decl. ¶ 57.

Based on the foregoing, the notice program fairly apprises Class Members of their rights with respect to the Settlement, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval order, Rule 23, the PSLRA, and due process. *See, e.g.*, *Young*, 783 F. App'x at 736; *Fleming*, 2022 WL 2789496, at *5-6; *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

## V.    CONCLUSION

Lead Plaintiff and Lead Counsel achieved an outstanding settlement for the Class. Lead Plaintiff therefore respectfully requests that the Court approve the Settlement and Plan of Allocation.

DATED: December 8, 2023                          Respectfully submitted,

                                                 */s/ Steve W. Berman*
                                                 Steve W. Berman (pro hac vice)
                                                 **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                                 1301 Second Avenue, Suite 2000
                                                 Seattle, WA 98101
                                                 Telephone: (206) 623-7292
                                                 Facsimile: (206) 623-0594
                                                 Email: steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand
Methodist Trust Association*