Steve Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | No. 3:19-cv-03422-SI<br><br><u>CLASS ACTION</u><br><br>**LEAD COUNSEL'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARD, AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Hearing Date: January 12, 2024<br>Time: 10:00 a.m.<br>Courtroom: 1, 17th Floor<br>Judge: Hon. Susan Illston |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................................................2

II.   THE WORK UNDERTAKEN BY LEAD COUNSEL ..........................................................4

    A.    Lead Counsel filed an Amended Class Action Complaint and conducted extensive briefing related to the motion to dismiss, class certification, summary judgment, and expert testimony. ..........................................4

    B.    Lead Counsel engaged in substantial discovery efforts on behalf of the Class that were both necessary and unavoidable...........................................5

        1.    Lead Counsel issued and responded to substantial written discovery and took and defended multiple fact depositions..........................5

        2.    Lead Counsel engaged in extensive expert discovery...................................6

    C.    Lead Counsel engaged in significant mediation and settlement negotiations..................................................................................................7

    D.    Work performed by State Class Counsel in the State Action....................................7

III.  ARGUMENT .......................................................................................................................8

    A.    The requested attorneys' fee award is fair and reasonable and should be approved. ..............................................................................................8

        1.    Lead Counsel is entitled to an award of attorneys' fees from the Settlement Fund..........................................................................................8

        2.    The Court should calculate the fee as a percentage of the Settlement Fund..........................................................................................9

        3.    The requested fee's approval is supported by the factors considered by courts in the Ninth Circuit......................................................10

            a.    The quality of the result achieve supports the fee request..............................................................................................10

            b.    The substantial risks of the litigation support the fee request..............................................................................................11

            c.    The skill required and the quality of work performed supports the fee request. ..................................................13

            d.    The contingent nature of the fee and the financial burden carried by counsel support the fee request. ..........................14

            e.    A 30% fee award is consistent with fee awards in similar, complex, contingent litigation...........................................15

            f.    The reaction of the Class supports the requested fee. .......................17

4.    A lodestar cross-check supports the requested fee. ......................................18

IV.    THE REQUESTED LITIGATION EXPENSES ARE REASONABLE AND
SHOULD BE APPROVED.........................................................................................20

V.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS
AND EXPENSES UNDER 15 U.S.C. §78U-4(A)(4)...........................................21

VI.    STATE CLASS COUNSEL'S REQUEST FOR FEES AND EXPENSES
AND A SERVICE AWARD FOR STATE CLASS REPRESENTATIVE..........................22

VII.    CONCLUSION ......................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989)..................................................................................9

*In re Allergan, Inc. Proxy Violation Deriv. Litig.*,
    2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) ................................................................16

*In re. Am. Apparel, Inc. S'holder Litig.*,
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ...............................................13, 16, 19

*Ambrosino v. Home Depot U.S.A., Inc.*,
    2014 WL 3924609 (S.D. Cal. Aug. 11, 2014)................................................................17

*In re Apollo Grp. Inc. Sec. Litig.*,
    2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ..................................................................19

*Baker v. SeaWorld Ent., Inc.*,
    2020 WL 4260712 (S.D. Cal. July 24, 2020) ..........................................................10, 21

*In re Banc of Cal. Sec. Litig.*,
    2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ...............................................................16

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013)....................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
    472 U.S. 299 (1985) .........................................................................................................8

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) .........................................................................................................8

*Brown v. China Integrated Energy Inc.*,
    2016 WL 11757878 (C.D. Cal. July 22, 2016) ..............................................................12

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011)................................................................20

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...............................................................13

*In re Dairy Farmers Am., Inc. Cheese Antitrust Litig.*,
    80 F. Supp. 3d. 838 (N.D. Ill. 2015)...............................................................................12

*Destefano v. Zynga, Inc.*,
    2016 WL 537946 (N.D. Cal. Feb. 11, 2016)......................................................13, 14, 20

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...........................................................................................11

*In re Equity Funding Corp. of Am. Sec. Litig.*,
438 F. Supp. 1303 (C.D. Cal. 1977) ..................................................................................14

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) .....................................................................15

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) .............................................................................................19

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) .......................................................................................18

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) .............................................................................................15

*In re Google Referrer Header Privacy Litig.*,
869 F.3d 737 (9th Cir. 2017) .............................................................................................18

*Gunter v. Ridgewood Energy Corp.*,
223 F.3d 190 (3d Cir. 2000) ................................................................................................8

*Hayes v. MagnaChip Semiconductor Corp.*,
2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ..................................................................12

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................................................19, 20

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...........................................................................................................10

*In re Heritage Bond Litig.*,
2005 WL 1594389 (C.D. Cal. June 10, 2005) ...................................................................13

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ..............................................................14, 17

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .........................................................................17, 21

*In re Lidoderm Antitrust Litig.*,
2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ..................................................................16

*In re Lucent Techs., Inc. Sec. Litig.*,
327 F. Supp. 2d 426 (D.N.J. 2004) ....................................................................................17

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ..................................................................16

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ........................................................................................12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ..............................................................................................15

*Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ..............................................................................9

*In re Omnicom Grp., Inc. Sec. Litig.*,
  597 F.3d 501 (2d Cir. 2010) ....................................................................................................15

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................................. *passim*

*In re Online DVD-Rental Antirust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .....................................................................................................9

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 19, 2009) ..........................................................................15

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .....................................................................................................13

*Quezada v. Schneider Logistics Transloading & Distrib., Inc.*,
  2014 WL 12584436 (C.D. Cal. May 12, 2014) ........................................................................14

*Quiruz v. Specialty Commodities, Inc.*,
  2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ...........................................................................10

*Schwartz v. TXU Corp.*,
  2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...........................................................................12

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .................................................................................................8, 15

*Tellabs, Inc. v. Makor Issues & Rights Ltd.*,
  551 U.S. 308 (2007) ...................................................................................................................9

*Testone v. Barlean's Organic Oils, LLC*,
  2023 WL 2375246 (S.D. Cal. Mar. 6, 2023) ..............................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ............................................................................20

*In re Twitter Inc. Sec. Litig.*,
  2022 WL 17248115 (N.D. Cal. Nov. 21, 2022) ........................................................................19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) .........................................................................................18

*In re Verifone Holdings, Inc. Sec. Litig.*,
2014 WL 12646027 (N.D. Cal. Feb. 18, 2014) ........................................................................19

*Vincent v. Reser*,
2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ............................................................................20

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ...................................................................................... *passim*

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .........................................................................19

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) .......................................................................................8, 10, 14, 16

*In re Wells Fargo & Co. S'holder Deriv. Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020) .....................................................................................21

*In re Xcel Energy, Inc., Sec., Deriv & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ......................................................................................12

## STATUTES

15 U.S.C. § 78u-4(a)(4) ........................................................................................................................21

15 U.S.C. § 78u-4(a)(6) ..........................................................................................................................9

## OTHER AUTHORITIES

*In re CV Therapeutics, Inc. Sec. Litig.*,
No. 3:03-cv-03709-SI, ECF No. 455 (N.D. Cal. Apr. 4, 2007) ...............................................17

*In re CV Therapeutics, Inc. Sec. Litig.*,
No. 3:03-cv-03709-SI, ECF No. 440 (N.D. Cal. Mar. 2, 2007) ..............................................17

*Davis et al. v. Yelp, Inc. et al.*,
No. 3:18-cv-00400-EMC, ECF No. 210 (N.D. Cal. Jan. 27, 2023) .........................................16

*Davis et al. v. Yelp, Inc. et al.*,
No. 3:18-cv-00400-EMC, ECF No. 188 (N.D. Cal. Apr. 21, 2022) .........................................17

*Fleming et al. v. Impax Lab'ys Inc. et al.*,
No. 4:16-cv-06557-HSG, ECF No. 110  (N.D. Cal. July 30, 2021) .........................................17

*Fleming et al. v. Impax Lab'ys Inc. et al.*,
No. 4:16-cv-06557-HSG, ECF No. 133 (N.D. Cal. July 15, 2022) .........................................16

*In re Gilead Scis. Sec. Litig.*,
No. 03-cv-04999-SI, ECF No. 282 (N.D. Cal. Nov. 5, 2010) ..................................................16

*In re Merit Med. Sys., Inc. Sec. Litig.*,
No. 8:19-cv-02326-DOC, ECF No. 110 (C.D. Cal. Mar. 9, 2022) ...........................................17

*In re Merit Med. Sys., Inc. Sec. Litig.*,
No. 8:19-cv-02326-DOC, ECF No. 118 (C.D. Cal. Apr. 15, 2022)...........................................16

*In re Tezos Sec. Litig.*,
No. 3:17-cv-06779-RS, ECF No. 255 (N.D. Cal. July 28, 2020)................................................17

*In re Tezos Sec. Litig.*,
No. 3:17-cv-06779-RS, ECF No. 262 (N.D. Cal. Aug. 28, 2020) .............................................16

Cornerstone Research, *Securities Class Action Settlements, 2021 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf (last accessed Dec. 7, 2023)..................................................................................................................................................11

Cornerstone Research, *Securities Class Action Settlements, 2022 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (last accessed Dec. 7, 2023)..................................................................................................................................................11

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on January 12, 2024, at 10:00 a.m. PST, via Zoom, the Honorable Susan Illston presiding, the Court-appointed Lead Counsel Hagens Berman Sobol Shapiro LLP ("Lead Counsel") will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure 23 granting an award of attorneys' fees, litigation expenses, and a service award.

This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the supporting Memorandum that follows; the accompanying declarations, including the Declaration of Steve W. Berman and the Declaration of Stephen Walker; the Stipulation;[1] the pleadings and records on file in the Federal Action; the arguments of counsel, and all such other matters as the Court may consider in evaluating the Motion.

Lead Counsel is not aware of any opposition to the motion. Pursuant to the Court's preliminary approval order (ECF No. 268), any objections to the request for attorneys' fees and litigation expenses must be filed by December 22, 2023, and will be addressed in Lead Counsel's reply papers to be filed on January 5, 2024. A proposed order granting the relief requested herein will be submitted with Lead Counsel's reply papers after the objection deadline has passed.

### STATEMENT OF ISSUES TO BE DECIDED

1.     Whether the Court should approve Lead Counsel's request for an award of 30% of the Settlement Fund as attorneys' fees in connection with the settled claims.

2.     Whether the Court should approve Lead Counsel's request for reimbursement of litigation expenses.

3.     Whether the Court should approve Lead Counsel's request for a service award of $25,000 for Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(4).

---

[1] All capitalized terms not defined herein shall have those meanings as set forth in the Amended Stipulation and Agreement of Global Settlement dated June 22, 2023 ("Stipulation"), attached as **Exhibit 1** to the Declaration of Steve W. Berman in Support of Lead Plaintiff's (1) Motion for Final Approval of Proposed Class Action Settlement and (2) Motion for an Award of Attorneys' Fees, Litigation Expenses, and Service Award ("Berman Decl.").

Emphasis is added and citations are omitted throughout unless otherwise noted. All exhibits referenced herein are attached to the Berman Declaration, unless otherwise indicated.

4.    Whether the Court should approve State Class Counsel's request for an award of attorneys' fees and expenses of $1,000,000 to be paid out of any award to Lead Counsel, as well as an award of $10,000 to the State Class Representative to be paid out of any award to State Class Counsel.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Counsel respectfully submits this Memorandum of Points and Authorities in support of its motion for: (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; (ii) reimbursement of litigation expenses in the amount of $1,100,008.81; (iii) a service award to Lead Plaintiff in the amount of $25,000; and (iv) an award of attorneys' fees and expenses of $1,000,000 for State Class Counsel, which will come out of any award to Lead Counsel, as well as a $10,000 award to the State Class Representative to come out of any award to State Class Counsel.[2]

## I.    INTRODUCTION

After nearly four years of hard-fought litigation, Lead Counsel Hagens Berman Sobol Shapiro LLP has settled this case for $75.5 million on behalf of Lead Plaintiff New Zealand Methodist Trust Association ("Lead Plaintiff") and the Settlement Class. The $75.5 million settlement fund represents an exceptional result for the Class. Lead Plaintiff and Lead Counsel faced the challenge of proving that the Federal Action Defendants misled investors during the Class Period by making public statements and omissions that did not reflect the actual state of the functionality of Zuora's platform as a combined solution, the integrated nature of its flagship products, Billing and RevPro, and Zuora's path for growth via cross-selling and upselling Billing and RevPro. *See* Berman Decl. ¶ 11. Prior to reaching the Settlement, Lead Counsel, on behalf of Lead Plaintiff, conducted an extensive investigation prior to filing an amended complaint, survived a motion to dismiss, certified the Class, and fully briefed the Federal Action Defendants' summary judgment motion and three *Daubert* challenges to the Federal Action Defendants' experts. *Id.* ¶¶ 9-29. In litigating the Federal Action, Lead Counsel conducted significant fact and expert discovery—reviewing over 50,000 documents,

---

[2] The bases for the award to State Class Counsel and the State Class Representative are fully detailed in **Exhibit 3**, the Declaration of Francis A. Bottini, Jr. ("Bottini Decl."), and **Exhibit 4**, the Declaration of State Class Representative Aric Olsen ("Olsen Decl.").

issuing and responding to discovery requests, and taking and defending over 15 depositions. *Id.* ¶¶ 16-20.

Lead Counsel's work resulted in a substantial recovery for the Class. The $75.5 million common fund represents approximately 21% of estimated damages according to Lead Plaintiff's expert. *See* Berman Decl. ¶ 49. Given the risks that persisted right up to the end, and the work required to achieve this Settlement, this is a strong result for the Class. *Id.* The requested fee award of 30% of the Settlement Fund is reasonable compared to awards in other securities class actions (which did not recover nearly as high a percentage of damages as Lead Counsel in this case). *See infra* § III.A.3. The reasonableness of the requested award is further confirmed by a "lodestar cross-check." *See infra* § III.A.4. Lead Counsel's total lodestar for the Federal Action is $5,256,134.50. *See* Berman Decl. ¶ 78. An award of 30% results in a current multiplier of 4.3, within the range for a class action of this size and complexity. *See* Berman Decl. ¶ 82; *infra* § III.A.4. Furthermore, the expenses born by Lead Counsel were critical to representation of the Class and consistent with expenses reimbursed in comparable cases. *See* Berman Decl. ¶¶ 93-95; *infra* § IV. The requested service award, moreover, is reasonable given Lead Plaintiff's substantial expenditure of time and commitment to the Class. *See* **Exhibit 2**, Declaration of Stephen Walker ("Walker Decl.") ¶¶ 5, 11.

Similarly, State Class Counsel seeks $1,000,000 in fees and expenses, as well as a $10,000 award to the State Class Representative, given their efforts that benefitted the Federal Action. *See* Bottini Decl. ¶¶ 3, 5-20. Olsen Decl. ¶ 4. Any payments to State Class Counsel and the State Class Representative will also come out of any award to Lead Counsel and, therefore, will not reduce the recovery to the Settlement Class. *See* Stipulation ¶¶ 7.2, 7.5.

Finally, the reaction of the Settlement Class to date supports Lead Counsel's request for fees and expenses. Pursuant to this Court's Preliminary Approval Order, more than 69,000 notice packets have been mailed to potential Settlement Class Members and Nominees, and the Summary Notice was published in *Investor's Business Weekly* and transmitted over *PR Newswire*. *See* **Exhibit 5**, Declaration of Eric Blow, ¶¶ 11, 15. The notices advise Class Members that Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement Fund, payment of expenses in an amount not to exceed $1,250,000, and a service award of $25,000 for Lead Plaintiff.

*See* Berman Decl. ¶¶ 90, 94. The notices also explain that State Class Counsel and the State Class Representative will seek fees, expenses, and a service award. *Id.* ¶ 72. The notices further inform Settlement Class Members that they have until December 22, 2023, to object to these requests. *Id.* ¶ 56. While the deadline to object has not yet passed, to date, there have been no objections to the fee and expense amounts set forth in the notice. *Id.* ¶¶ 56, 72, 90, 94.

For the reasons set forth herein, Lead Counsel respectfully requests from the Settlement Fund: (1) an award of $22,650,000 in attorneys' fees, a percentage recovery of 30% and in line with awards for securities class actions in this District; (2) reimbursement of expenses fronted by Lead Counsel in litigating this matter ($1,100,008.81); (3) a service award for Lead Plaintiff in the amount of $25,000 based on its contribution and efforts; and (4) an award of attorneys' fees and expenses to State Class Counsel totaling $1,000,000 to come out of any award to Lead Counsel, and a service award of $10,000 to State Class Representative to come out of any award to State Class Counsel.

## II.  THE WORK UNDERTAKEN BY LEAD COUNSEL[3]

**A.  Lead Counsel filed an Amended Class Action Complaint and conducted extensive briefing related to the motion to dismiss, class certification, summary judgment, and expert testimony.**

In drafting the Consolidated Amended Class Action Complaint (ECF No. 60) (the "Complaint"), Lead Counsel conducted an extensive factual investigation, which included a detailed review of (i) Zuora's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by the Federal Action Defendants prior to, during, and after the Class Period; (ii) public documents, reports, announcements, and news articles concerning Zuora; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data. *See* Berman Decl. ¶ 10. Lead Counsel also conducted numerous fact

---

[3] Consistent with this District's *Procedural Guidance for Class Action Settlements* ("Northern District Guidelines"), Lead Counsel has focused on including facts and background related to its work in the Federal Action for purposes of this Motion, rather than more specific information related to the nature of the claims asserted and the procedural history of the Federal Action. *See* Northern District Guidelines, § 2 ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions. The motion for attorneys' fees should refer to the history and facts set forth in the motion for final approval."). Such information is discussed in detail in the Berman Declaration.

interviews with former employees and third parties and reviewed other publicly available material and data. *Id.*

The Federal Action Defendants subsequently moved to dismiss the Complaint, arguing that Lead Plaintiff failed to identify false and misleading statements related to Zuora's business model and products and growth strategy and failed to establish scienter. *See* ECF No. 64. Lead Counsel opposed the motion and engaged in extensive legal research relating to the strengths and weaknesses of the claims asserted in the Federal Action. *See* Berman Decl. ¶ 13; ECF No. 67. The Court ultimately denied the motion without oral argument. *See* ECF No. 75.

On December 4, 2020, Lead Plaintiff filed its Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel. ECF No. 100. Lead Plaintiff's briefing was extensive and included the declaration of one expert. *Id.* After deposing Lead Plaintiff's representative, Stephen Walker, the Federal Action Defendants did not oppose the motion for class certification. ECF No. 112. The Court entered granted class certification on March 15, 2021. ECF No. 113.

After the close of fact and expert discovery, Lead Plaintiff opposed the Federal Action Defendants' motion for summary judgment and the exclusion of its experts, as well as filed opening briefs and replies in support of motions to exclude three of the Federal Action Defendants' experts. *See* ECF Nos. 192-194, 219, 234-236. Lead Plaintiff and the Federal Action Defendants reached agreement on the original settlement a week before the Court was to hear arguments on these motions. *See* Berman Decl. ¶ 30.

**B.      Lead Counsel engaged in substantial discovery efforts on behalf of the Class that were both necessary and unavoidable.**

**1.      Lead Counsel issued and responded to substantial written discovery and took and defended multiple fact depositions.**

Lead Counsel engaged in substantial discovery, which was necessary and contributed to the success of the Federal Action. Lead Counsel issued seventy-four (74) requests for production.[4] *See* Berman Decl. ¶ 16. In response to Lead Plaintiff's document requests, the parties held extensive

---

[4] Lead Counsel also drafted and served Requests for Admission to the Federal Action Defendants and issued subpoenas to three third parties, which resulted in additional document discovery. *See* Berman Decl. ¶ 19.

discussions regarding the method and form of the Federal Action Defendants' document production, including negotiating an ESI protocol, protective order, search terms, and custodians. *Id.* By the close of fact discovery, the Federal Action Defendants produced more than 54,000 documents—encompassing over 400,000 pages—from over 15 custodians. *Id.* The Federal Action Defendants also produced dozens of hours of video recordings of internal meetings involving Zuora executives that spanned the entirety of the Class Period. *Id.* Lead Counsel employed a team of contract attorneys and Hagens Berman associates to comprehensively review the document discovery and video recordings and develop detailed memoranda distilling the most important evidence. *Id.* ¶ 17. Upon completion of this review, Lead Plaintiff conducted ten fact witness depositions between March 2022 and May 2022, including the examinations of Defendants Tien Tzuo and Tyler Sloat. *Id.* ¶ 18.

In turn, the Federal Action Defendants issued thirty (30) requests for production and twenty-four (24) interrogatories, including several contention interrogatories served near the end of fact discovery. *Id.* ¶ 20. Lead Counsel worked with Lead Plaintiff to respond to these requests and produce 9,000 pages of documents. *Id.* Lead Counsel also prepared for and defended Lead Plaintiff's deposition and participated in the depositions of four confidential witnesses referenced in the Complaint. *Id.* ¶ 20.

### 2. Lead Counsel engaged in extensive expert discovery.

Lead Counsel hired two experts for the Federal Action. *See* Berman Decl. ¶¶ 21, 25. At Class Certification, Lead Counsel offered testimony from Dr. Tavy Ronen, Ph.D., who opined that Zuora common stock traded in an efficient market throughout the Class Period, and that damages could be calculated on a class-wide basis using the "out-of-pocket" method. *Id.* ¶ 21.

After the close of fact discovery, Lead Plaintiff served a second expert report from Dr. Ronen, where she stated that the Federal Action Defendants' false and misleading statements proximately caused losses to Zuora's investors, calculated the artificial inflation per share in Zuora common stock for each day during the Class Period that was attributable to the alleged misrepresentations and omissions, and provided a model to quantify Rule 10b-5 damages for Zuora common stock on a per-share basis that could be applied to each Class Member. *Id.* ¶ 25. In addition, Lead Plaintiff served a report from rebuttal expert Charles Lundelius, Jr., CPA/ABV/CEF, to address certain conclusions from the Federal Action Defendants' damages expert relating to what percentage of investors' losses in

Zuora common stock were directly attributable to Zuora's failure to timely disclose issues related to RevPro-Billing integration. *Id.* In developing this rebuttal report, Lead Counsel quickly analyzed the opposing expert reports, identified potential experts, and worked with Mr. Lundelius to draft his report in less than two months. *Id.*

The Federal Action Defendants offered four experts after the close of fact discovery. *Id.* ¶ 26. Allen Ferrell, Ph.D. and Kevin Dages addressed Lead Plaintiff's expert testimony on damages. *Id.* The remaining two experts—Professor Steven Davidoff Solomon and Jeffrey L. Hagins—respectively offered opinions on Zuora's disclosure processes and industry norms and practices related to software development, enterprise software, and software implementation and integration. *Id.*

Lead Counsel deposed all four of the Federal Action Defendants' experts, which required extensive preparation given the claims and areas of testimony. *Id.* ¶ 27. Lead Counsel also defended three depositions, which included time preparing the experts, with Dr. Ronen being deposed twice. *Id.*

**C.      Lead Counsel engaged in significant mediation and settlement negotiations.**

The parties engaged in two mediations with Robert A. Meyer, Esq. of JAMS—one via Zoom in January 2022 and one in person in February 2023. *See* Berman Decl. ¶ 30. Along with these formal mediation sessions, the parties remained in contact with Mr. Meyer after the sessions to continue discussions regarding a potential resolution of the litigation. *Id.* In advance of these mediation sessions, Lead Counsel prepared extensive statements that contained significant analysis and discussion of the Federal Action Defendants' discovery. *Id.*

After the Federal Action settled, Lead Counsel extensively negotiated the terms of the Stipulation, at first with just the Federal Action Defendants for purposes of the original agreement, and then with the Federal Action Defendants, State Action Class Representative, and State Action Defendants for the amended agreement. *Id.* ¶¶ 31-32. Lead Counsel also spent significant time and effort drafting and revising the original settlement agreement, the amended agreement, the preliminary approval motion, and the notices to be sent to all class members. *Id.* ¶ 32.

**D.      Work performed by State Class Counsel in the State Action.**

As explained in greater detail in the Bottini Declaration, State Class Counsel Bottini & Bottini, Inc. devoted substantial time and resources in prosecuting the State Action, and such efforts provided

a benefit to the litigation efforts in the Federal Action. *See* Bottini Decl. ¶¶ 5-20. For example, State Class Counsel overcame multiple demurrers, issued discovery requests that resulted in the production of tens of thousands of documents and other material, appeared and participated in the fact depositions conducted by Lead Counsel in the Federal Action, responded to discovery requests from the State Action Defendants, and prepared for and defended the deposition of the State Class Representative. *See* Bottini Decl. ¶¶ 9-16. State Class Counsel also successfully obtained a stipulation for class certification in the State Action. *Id.* ¶ 17. Finally, State Class Counsel and the State Class Representative participated in the initial mediation with Mr. Meyer in January 2022, and prepared a comprehensive mediation statement for those settlement discussions. *Id.* ¶ 20. After the Federal Action parties reached a settlement agreement in March 2023, State Class Counsel participated in further discussions with Mr. Meyer, and the parties reached the global resolution of the State Action and Federal Action. *Id.*

## III.    ARGUMENT

**A.      The requested attorneys' fee award is fair and reasonable and should be approved.**

**1.      Lead Counsel is entitled to an award of attorneys' fees from the Settlement Fund.**

The Supreme Court has explained that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Staton v. Boeing Co., 327 F.3d 938, 967 (9th Cir. 2003) (same). Awarding attorneys' fees from a common fund supports the policy rationale that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994).

An award of attorneys' fees from a common fund also ensures that "competent counsel continue to be willing to undertake risky, complex, and novel litigation." *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000). As the Supreme Court has emphasized, private securities actions, such as this case, provide an "effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *See Bateman Eichler, Hill Richards, Inc. v.*

*Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights Ltd.*, 551 U.S. 308, 313 (2007). The facts and circumstances of this case do not justify a departure from the common practice of awarding fees from a settlement fund.

### 2.     The Court should calculate the fee as a percentage of the Settlement Fund.

Courts in the Ninth Circuit award attorneys' fees in common fund cases under either the "percentage-of-recovery" method or the "lodestar" method. *In re Online DVD-Rental Antirust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). The percentage-of-recovery method has been the prevailing method used in this Circuit. *See, e.g.*, *Testone v. Barlean's Organic Oils, LLC*, 2023 WL 2375246, at *5 (S.D. Cal. Mar. 6, 2023); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing cases).

Despite the discretion to use the lodestar method, courts prefer the percentage-of-recovery method for awarding attorneys' fees in cases with a common fund because it (i) aligns with the common use of percentage-based contingency fee contracts in private litigation; (ii) ensures the lawyers' interests align with those of the class in achieving the maximum possible recovery; and (iii) reduces the court's burden by eliminating the detailed and time-consuming lodestar analysis. *See In re Omnivision*, 559 F. Supp. 2d at 1046. In contrast, applying the lodestar method "to common fund cases does not achieve the stated purposes of proportionality, predictability and protection of the class" but rather "encourages abuses such as unjustified work and protracting the litigation." *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989).

The use of the percentage-of-recovery method also is consistent with the language of the PSLRA, which states: "Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount of any damages and prejudgment interest actually paid to the class." *See* 15 U.S.C. § 78u-4(a)(6); *see also Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable.").

For these reasons, Lead Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-recovery basis and use an informal lodestar cross-check to assess the reasonableness of the percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th

Cir. 2002) ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure[.]").

### 3. The requested fee's approval is supported by the factors considered by courts in the Ninth Circuit.

A guiding principle for fee awards in the Ninth Circuit is that they must be "reasonable under the circumstances." *See In re Wash. Pub. Power Supply Sys.*, 19 F.3d at 1295 n.2. In making such a determination, the Court should consider the following factors: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Class; and (6) awards made in similar cases. *See In re Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048-51). The Ninth Circuit has explained that these factors are not a rigid checklist and should not be weighed individually, but rather, should be evaluated considering the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048-50. As detailed below, each of these factors, along with the lodestar cross-check, support approving the requested fee.

### a. The quality of the result achieve supports the fee request.

Courts generally acknowledge that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *11 (N.D. Cal. Nov. 9, 2020) ("The foremost consideration is the benefit obtained for the class."); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *9 (S.D. Cal. July 24, 2020) (same).

As explained in the preliminary approval motion, Lead Plaintiff's damages expert estimates that if the Class had fully prevailed on its Exchange Act claims after a jury trial, if the Court and jury accepted Lead Plaintiff's damages theory, and the jury verdict survived the inevitable appeals, the ***total maximum aggregate damages would be approximately $360 million***. *See* Berman Decl. ¶ 49. Therefore, the Settlement recovers approximately 21% of the total maximum damages potentially recoverable in this case. *Id.* This is approximately 4.29 times the median percentage recovery for cases

settled with estimated damages between $250–$499 million or more in 2021 (4.9%) and approximately 4.88 times the median recovery, on a percentage basis, of similar cases settled in 2022 (4.3%).[5] *Id.*

Moreover, during expert discovery, the Federal Action Defendants' loss causation and damages experts opined that at best, 15% of Lead Plaintiff's damages could be attributed to the Federal Action Defendants' alleged failure to timely disclose the issues related to RevPro-Billing integration. *See* Berman Decl. ¶ 50 (citing ECF No. 185-17 at 33; ECF No. 229-4 at 15). Given that 15% of Lead Plaintiff's best-case scenario for damages—$360,000,000—is $54,000,000, the $75,500,000 settlement therefore amounts to a 139% recovery of the maximum damages as calculated by the Federal Action Defendants' experts. *Id.*

Given the possible alternative results in this litigation (*see infra* III.A.3.b), including a possibility of no recovery whatsoever, the creation of the $75.5 million Settlement Fund constitutes a considerable achievement and weighs heavily in favor of the requested fee.

### b.    The substantial risks of the litigation support the fee request.

When awarding attorneys' fees, courts in the Ninth Circuit also consider "[t]he risk that further litigation might result in [p]laintiffs not recovering at all, particularly in a case involving complicated legal issues." *See In re Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees).

From the outset, Lead Counsel faced substantial risks in prosecuting the Federal Action. For example, the PSLRA's heightened pleading standard meant overcoming the motion to dismiss was no sure thing. *See* Berman Decl. ¶ 89; *see also Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is not an easy standard to comply with—it was not intended to be[.]").

---

[5] *See* Cornerstone Research, *Securities Class Action Settlements, 2021 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf, at Figure 5 (last accessed Dec. 7, 2023); Cornerstone Research, *Securities Class Action Settlements, 2022 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf, at Figure 5 (last accessed Dec. 7, 2023).

Another proxy for assessing risk is "whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter," which "provides insight into whether class counsel benefitted from the work of others." *See In re Dairy Farmers Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d. 838, 848 (N.D. Ill. 2015). Here, there were no proceedings initiated by the SEC or DOJ and no journalistic investigation into the allegations at issue. *See* Berman Decl. ¶ 88. Rather, Lead Counsel was "truly the author[] of the favorable outcome for the class." *See id.*; *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).

The Court should also consider the fact that this was not a restatement case, which set additional hurdles to overcome. *See* Berman Decl. ¶ 88; *see also In re Xcel Energy, Inc., Sec., Deriv & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials). In restating financials, companies admit to a material misstatement of their financial reporting. Accordingly, a case based on a restatement is less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See, e.g.*, *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not involve restatement of TXU's previously issued financial statements or any other acknowledgments of wrongdoing.").

The litigation risks certainly did not end with investigating the claims and filing the complaint. Here, as discussed in greater detail in the Berman Declaration, the Federal Action Defendants advanced several arguments over the course of the litigation disputing both liability and damages. For example, during mediation, the Federal Action Defendants challenged the falsity and materiality of their alleged misstatements and vigorously disputed scienter. *See* Berman Decl. ¶¶ 37-38; *see also Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish."); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) (noting "[p]laintiffs may not ultimately have been able to adduce sufficient facts to demonstrate [] scienter"). Lead Plaintiff's theory of loss causation and damages was also called into question at summary judgment, where the Federal Action Defendants argued that the alleged corrective stock price

movements were caused by factors unrelated to Lead Plaintiff's allegations. *See* Berman Decl. ¶ 40; *see also In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (noting loss causation and damages "would be difficult to prove" at trial). Finally, the fact that the Federal Action Defendants engaged competing expert witnesses to testify in support of their major defenses was a substantial obstacle to Lead Plaintiff's potential for success at trial. *See* Berman Decl. ¶¶ 26, 42-43; *see also In re. Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *9 (C.D. Cal. July 28, 2014) (noting plaintiff's proof of loss causation "would have turned on expert testimony presented by both sides, making his ability to prevail uncertain").

It is beyond doubt that the risks posed by litigation were substantial and were present every step of the way (including an inevitable appeal had Lead Plaintiff succeed at trial). Given the possibility of no recovery whatsoever, the Settlement is a considerable achievement and weighs heavily in favor of the requested fee. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks"),

###### c.    The skill required and the quality of work performed supports the fee request.

In determining the reasonableness of a fee award, courts also look at the skill required and the quality of the work performed. *See In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005). Courts recognize that the "prosecution and management of a complex national class action requires unique legal skills and abilities." *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Id.*

Here, the attorneys at Hagens Berman Sobol Shapiro LLP are some of the most experienced practitioners in the securities litigation field and have a long and successful track record in securities cases in this Circuit and throughout the country. *See* Berman Decl. ¶ 84; **Exhibit 8** (Hagens Berman firm resume). Lead Counsel demonstrated this experience and skill through the effective prosecution of this Federal Action, culminating in the Settlement. *See supra* §§ II.A–C. Moreover, the fact that the case did not settle at the initial mediation meant that Lead Counsel and Lead Plaintiff refused to settle cheaply. *See* Berman Decl. ¶ 84. Lead Counsel's extensive efforts, zealous advocacy, skill, and

demonstrated willingness to litigate rather than accept a below-value settlement directly resulted in the recovery of $75.5 million and strongly supports the requested fee. *Id.*

The quality of opposing counsel is also important in evaluating the Lead Counsel's work. *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005). Defendants in the Federal Action were represented by experienced counsel from the nationally prominent defense firms Paul, Weiss, Rifkind, Wharton & Garrison LLP and Wilmer Cutler Pickering Hale and Dorr LLP, extremely capable and highly respected national law firms that vigorously defended the Federal Action. *See* Berman Decl. ¶ 86. In the face of this formidable opposition, Lead Counsel obtained a highly favorable recovery for the Class, thereby supporting an award of the requested fee. *See, e.g.*, *Quezada v. Schneider Logistics Transloading & Distrib., Inc.*, 2014 WL 12584436, at *9 (C.D. Cal. May 12, 2014) (approving requested fee and noting "[d]efense counsel in this case were also highly skilled, and Schneider is a sophisticated company that presumably used extensive resources to defend itself against the claims in this case"); *In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977) ("plaintiffs' attorneys in this class action have been up against established and skillful defense lawyers, and should be compensated accordingly").

### d.    The contingent nature of the fee and the financial burden carried by counsel support the fee request.

In assessing a requested fee, courts recognize that a premium is appropriate where attorney fees are contingent in nature, given the risk that counsel will receive no compensation for their efforts. *See In re Wash. Pub. Power Supply Sys.*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *see also In re Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee[.]"). This is especially true where Lead Counsel "has significant experience in the particular type of litigation at issue; indeed, in such contexts, courts have awarded an even higher 33 percent fee award." *Destefano*, 2016 WL 537946, at *18.

Lead Counsel has to date received no compensation, has worked 8,920.60 hours equating to a total lodestar of $5,256,134.50, and has incurred expenses of $1,100,008.81 in prosecuting the Federal Action. *See* Berman Decl. ¶¶ 78, 93; **Exhibits 6, 7, 10**. Implementing the Settlement and claims administration will also require additional work. *Id. ¶* 80; *see also In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (noting the "need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims … support[s] a conclusion that a 33% fee award in this matter is reasonable").

Since the start of this case, Lead Counsel has shouldered the risk that any compensation and expense reimbursement would depend on the result achieved, as well as on the Court's discretion in awarding fees and expenses. *See* Berman Decl. ¶ 87. Indeed, there have been many class actions in which plaintiffs' counsel pursued claims on a contingency basis and expended thousands of hours and millions of dollars, yet received no renumeration whatsoever. *See, e.g.*, *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 504 (2d Cir. 2010) (affirming grant of summary judgment in favor of defendant on loss-causation grounds after years of litigation); *In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd*, 627 F.3d 376 (9th Cir. 2010). Even plaintiffs who prevail at trial may have favorable judgments overturned on appeal or on a post-trial motion. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

Here, Lead Counsel committed significant resources, time, and money to prosecute the Federal Action for the Settlement Class's benefit without any compensation nor any guarantee of a fee. *See* Berman Decl. ¶¶ 78, 87, 93. Under circumstances like these, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

        e.        **A 30% fee award is consistent with fee awards in similar, complex, contingent litigation.**

Although the Ninth Circuit in *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003), stated that "25% of the common fund" was a "benchmark award for attorney fees," a guiding principle for

fee awards in this Circuit remains the idea that they must be "reasonable under the circumstances." *See In re Wash. Pub. Power Supply Sys.*, F.3d at 1295 n.2; *see also Vizcaino*, 290 F.3d at 1048 ("Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."). As applied, this means that "in most common fund cases, the award exceeds that benchmark." *See In re Omnivision*, 559 F. Supp. 2d at 1047; *see also In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) (awarding 33⅓% of $104,750,000 and stating: "a fee award of one-third is within the range of awards in this Circuit"); *Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions"). "This is particularly true in securities class actions such as this." *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *23.

In view of the result obtained (*i.e.*, 21% recovery of the total maximum damages available to the Class), the contingent fee risk, the number of hours and financial commitment dedicated to this matter by Lead Counsel, and the important public policy advanced by securities litigation such as the Federal Action, an award of 30% of the Settlement Fund is appropriate. *See In re Allergan, Inc. Proxy Violation Deriv. Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (noting that a 30% award is "the norm" in the Ninth Circuit). Indeed, within the last several years, multiple courts in the Ninth Circuit awarded attorneys' fees of 30% or more of a settlement fund in securities class actions. *See, e.g.*, *Davis et al. v. Yelp, Inc. et al.*, No. 3:18-cv-00400-EMC, ECF No. 210, at 3 (N.D. Cal. Jan. 27, 2023) (awarding counsel 33.3% of $22,250,000 settlement fund); *Fleming et al. v. Impax Lab'ys Inc. et al.*, No. 4:16-cv-06557-HSG, ECF No. 133, at 6  (N.D. Cal. July 15, 2022) (awarding counsel 30% of $33,000,000 settlement fund); *In re Merit Med. Sys., Inc. Sec. Litig.*, No. 8:19-cv-02326-DOC, ECF No. 118, at 2 (C.D. Cal. Apr. 15, 2022) (awarding counsel 30% of $18,250,000 settlement fund); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement fund); *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS, ECF No. 262, at 2 (N.D. Cal. Aug. 28, 2020) (awarding 33.33% of $25 million settlement fund). This Court has also previously awarded 30% of a settlement fund in securities class actions. *See, e.g.*, *In re Gilead Scis. Sec. Litig.*,

No. 3:03-cv-04999-SI, ECF No. 282, at 1 (N.D. Cal. Nov. 5, 2010) (awarding counsel 30% of $8,250,000 settlement fund); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 3:03-cv-03709-SI, ECF No. 455, at 1  (N.D. Cal. Apr. 4, 2007) (awarding counsel 30% of $13,000,000 settlement fund). Notably, the 21% recovery of maximum damages in this case exceeds the percentage of maximum damages recovered in many of the aforementioned cases.[6] In sum, Lead Counsel's fee request is in line with other comparable complex cases and should be approved.

### f.    The reaction of the Class supports the requested fee.

"The existence or absence of objectors to the requested attorneys' fee is a factor i[n] determining the appropriate fee award." *In re Heritage Bond*, 2005 WL 1594403, at *21. While Settlement Class Members have until December 22, 2023, to object to the requested fee and expenses, to date, not a single objection has been received by Lead Counsel or filed with the Court. *See* Berman Decl. ¶ 91. "The lack of objection from any Class Member supports the attorneys' fees award." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007); *In re Omnivision*, 559 F. Supp. 2d at 1048 (same).

Lead Plaintiff, who took an active role in the Federal Action and closely supervised the work of Lead Counsel, also supports the approval of the requested fee based on the risks undertaken and the result obtained. *See* Walker Decl., ¶ 8; Berman Decl. ¶ 91. This endorsement of the fee request further supports its approval. *See, e.g.*, *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request."); *Ambrosino v. Home Depot U.S.A., Inc.*, 2014 WL 3924609, at *2 (S.D. Cal. Aug. 11, 2014) (approving requested fee and noting that "each plaintiff has approved this amount").

---

[6] *See, e.g.*, *Davis et al. v. Yelp, Inc. et al.*, No. 3:18-cv-00400-EMC, ECF No. 188, at 16 (N.D. Cal. Apr. 21, 2022) (recovered 12.4% of maximum damages); *Fleming et al. v. Impax Lab'ys Inc. et al.*, No. 4:16-cv-06557-HSG, ECF No. 110, at 21 6  (N.D. Cal. July 30, 2021) (recovered 12.5% of maximum damages); *In re Merit Med. Sys., Inc. Sec. Litig.*, No. 8:19-cv-02326-DOC, ECF No. 110, at 12 (C.D. Cal. Mar. 9, 2022) (recovered at a minimum 12% of maximum damages); *In re CV Therapeutics, Inc. Sec. Litig.*, No. 3:03-cv-03709-SI, ECF No. 440, at 8 (N.D. Cal. Mar. 2, 2007) (recovered 13.35% of maximum damages); *In re Tezos Sec. Litig.*, No. 3:17-cv-06779-RS, ECF No. 255, at 23 (N.D. Cal. July 28, 2020) (recovered 16% of maximum damages).

**4.      A lodestar cross-check supports the requested fee.**

Although not required, to ensure the reasonableness of a fee awarded under the percentage-of-recovery method, courts in this Circuit may cross-check the proposed fee award against counsel's lodestar. *See In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017) ("Although ***not required to do so***, the district court took an extra step, cross-checking this result by using the lodestar method."), *vacated on other grounds sub nom. Frank v. Gaos*, 139 S. Ct. 1041 (2019).

Under the lodestar method, courts routinely award positive multipliers to account for the contingent nature or risk involved in the case and the quality of the attorneys' work. *See Vizcaino*, 290 F.3d at 1051. When the lodestar is used as a cross-check, "the focus is not on the 'necessity and reasonableness of every hour' of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009).

Here, the lodestar method—whether used directly or as a "cross-check" on the percentage method—demonstrates the reasonableness of the requested fee. Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total 8,920.60 hours to the prosecution of the Federal Action. *See* Berman Decl. ¶ 78. Lead Counsel believes the hours submitted in support of the lodestar calculation were necessary for the successful and efficient litigation of the case. *Id.* ¶¶ 74-92. Despite it taking years to settle the Federal Action, the individual attorneys working day-to-day on the case remained relatively consistent. *Id.* ¶ 75. This consistent staffing allowed those individuals to maintain a high level of institutional knowledge about the law and facts of the case, which improved litigation efficiency. *Id.* Lead Counsel also utilized attorneys with the appropriate experience level to conduct the various tasks, including employing staff attorneys to review documents, assigning associates with preparing and responding to discovery, and having partners conduct higher-level depositions. *Id.*; **Exhibits 6, 7, 9**.

For purposes of a lodestar cross-check[7], Lead Counsel is submitting a chart that includes a schedule breaking down its lodestar by individual, position, billing rate, and hours billed for specific tasks.[8] *See* **Exhibit 7**. The hourly rates utilized by Lead Counsel in calculating their lodestar range from: (i) \$935 to \$1,285 per hour for partners; (ii) \$350 to \$750 for other attorneys; (iii) \$200 per hour for the investigator; and (iv) \$225 to \$400 per hour for paralegals and other support staff. *Id.* Such hourly rates are within the range of reasonable rates for attorneys and staff working on sophisticated class action litigation in the Northern District of California. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*14 (N.D. Cal. Dec. 18, 2018) (approving fee based on rates from \$650 to \$1,250 for partners or senior counsel and \$400 to \$650 for associates); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at \*5 (N.D. Cal. Mar. 17, 2017) (approving fee following lodestar cross-check calculated using "billing rates ranging from \$275 to \$1600 for partners, \$150 to \$790 for associates, and \$80 to \$490 for paralegals").

Based on current hourly rates,[9] Lead Counsel's lodestar is \$5,256,134.50. *See* Berman Decl. ¶ 78. Thus, the 30% fee request (equal to \$22,650,000) yields a multiplier of 4.3. *See id.* ¶ 82. As more fully explained in the Berman Declaration, given the risk undertaken by Lead Counsel and the result achieved for the Class—21% recovery of the maximum total damages—a multiplier of 4.3 is reasonable here, and is also within the range of lodestar multipliers that courts in the Ninth Circuit approve. *See In re Twitter Inc. Sec. Litig.*, 2022 WL 17248115, at \*2 (N.D. Cal. Nov. 21, 2022) (awarding fee representing 4.14 multiplier); *In re Verifone Holdings, Inc. Sec. Litig.*, 2014 WL

---

[7] For purposes of this fee request, Lead Counsel has only included time through November 30, 2023. *See* Berman Decl. ¶ 76. Lead Counsel will continue to perform legal work on behalf of the Settlement Class should the Court approve the Settlement, including addressing inquiries and working with the Claims Administrator, Epiq Class Action and Claims Solutions, Inc., to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. *Id.* ¶ 80. No additional legal fees will be sought for this work. *Id.*

[8] *See* Northern District Guidelines, Final Approval, § 2; *see also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at \*7 n.2 (D. Ariz. Apr. 20, 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at \*23 ("In contrast to the use of the lodestar method as a primary tool for setting a fee award, the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

[9] Courts use current rather than historic rates to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *See Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

12646027, at *2 (N.D. Cal. Feb. 18, 2014) (awarding fee where multiplier was 4.3); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2013 WL 1365900, at *13 (N.D. Cal. Apr. 3, 2013) (awarding attorney fee award applying 5.22 multiplier); *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (finding "multiplier of 4.3 is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary"); *Vizcaino*, 290 F.3d at 1051-52 (finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers). Since Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court, the multiplier will diminish as the case moves forward because Lead Counsel will not seek any additional compensation for this work. *See* Berman Decl. ¶ 80.

In sum, Lead Counsel's requested fee award is reasonable, justified, and consistent with what courts in the Ninth Circuit have awarded counsel in cases like the Federal Action, whether calculated as a percentage of the fund or as a multiple of Lead Counsel's lodestar.

## IV.    THE REQUESTED LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

"Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In deciding which expenses are compensable in a common fund case, the appropriate analysis to apply is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace. *See In re Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters."); *Hefler*, 2018 WL 6619983, at *16 ("An attorney is entitled to 'recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.'").

The expenses sought by Lead Counsel were required to prosecute the litigation and are of the type typically charged to paying clients. *See Destefano*, 2016 WL 537946, at *22 ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing,

postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation.") From the start of the litigation, Lead Counsel was aware that recovery of expenses and fees would not happen without successful resolution of the case. *See* Berman Decl. ¶ 95. Therefore, Lead Counsel minimized expenses when practicable without sacrificing the vigorous and efficient prosecution of the case. *Id.*

In total, Lead Counsel has $1,100,008.81 in expenses in prosecuting the Federal Action on behalf of the Settlement Class. *See* Berman Decl. ¶ 93. The amount sought, as detailed in the Berman Declaration, is less than the $1,250,000 amount published in the notices, to which no Class Member has objected to date. *Id. ¶* 94. The vast majority of these expenses were for the retention of experts ($786,774.40), expenses related to depositions ($100,343.18), document management ($69,836.84), the mediator ($17,271.00), and class notice ($109,032.87). *See* Berman Decl. ¶ 97; **Exhibit 10**. These expenses total $1,083,258.29 or approximately 98% of the total litigation expenses. *Id.* Courts routinely approve litigation expenses such as these, and there is no basis not to approve them here. *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees").

## V.    LEAD PLAINTIFF SHOULD BE AWARDED ITS REASONABLE COSTS AND EXPENSES UNDER 15 U.S.C. §78U-4(a)(4)

As part of their application for fees and costs, Lead Counsel also seeks an award of $25,000 for Lead Plaintiff for costs incurred directly related to its representation of the Settlement Class. The PSLRA permits the Lead Plaintiff in this case to recoup litigation costs incurred as a result of serving as Lead Plaintiff and ensuring that the Class was adequately represented. 15 U.S.C. § 78u-4(a)(4). Courts in this Circuit have routinely granted such awards to plaintiffs, including amounts greater than $25,000. *See, e.g.*, *Baker*, 2020 WL 4260712, at *12 (awarding $10,569 and $60,000 to institutional lead plaintiffs); *In re Immune Response*, 497 F. Supp. 2d at 1173 (approving $40,000 reimbursement to lead plaintiff); *In re Wells Fargo & Co. S'holder Deriv. Litig.*, 445 F. Supp. 3d 508, 534 (N.D. Cal.

2020), *aff'd*, 845 F. App'x 563 (9th Cir. 2021) (noting $25,000 award "may be appropriate ... where the class overall has greatly benefitted from the class representatives' efforts" and the award represents an "insignificant percentage" of the recovery).

Consistent with the Northern District Guidelines, Lead Plaintiff has submitted a declaration setting forth the time and effort spent monitoring the Federal Action and directing Lead Counsel.[10] Among other things, Lead Plaintiff: (i) reviewed all significant pleadings, briefs and Court orders in the Federal Action; (ii) regularly communicated with his attorneys via email and video conference about case developments and litigation strategy; (iii) participated in discovery by, *inter alia*, overseeing the collection and production of documents, preparing and sitting for his deposition, and responding to interrogatories; (iv) consulted with counsel regarding the mediations and, ultimately, approved the Settlement; and (v) communicated with counsel regarding the process for finalizing the Settlement. *See* Walker Decl. ¶ 5. These efforts required Lead Plaintiff's employees to dedicate substantial time to the Federal Action. *Id. ¶* 11.

The Notice advises Settlement Class Members that Lead Plaintiff may seek reimbursement of its reasonable costs in an aggregate amount not to exceed $25,000. To date, there have been no objections to this request. *See* Berman Decl. ¶ 94. For the reasons stated herein, the amount sought here is reasonable and justified under the PSLRA and should be granted.

## VI.    STATE CLASS COUNSEL'S REQUEST FOR FEES AND EXPENSES AND A SERVICE AWARD FOR STATE CLASS REPRESENTATIVE

As disclosed in the Notice, in connection with Lead Counsel's fee request, State Class Counsel seeks attorneys' fees and expenses totaling $1,000,000 based on the work performed by State Class Counsel (*see supra* § II.D) and the resulting benefit added to the Federal Action. *See* Bottini Decl. ¶¶ 5, 15, 19, 20. Likewise, based on State Class Representative's efforts in the State Action, including reviewing key pleadings and briefs, participating in discovery through collecting documents, reviewing discovery responses, and sitting for a deposition, and communicating with State Class Counsel regarding the prosecution and settlement of the State Action, State Class Representative seeks

---

[10] *See* Northern District Guidelines, Final Approval, § 3.

an award of $10,000. *See* Olsen Decl. ¶ 4. There have been no objections to State Class Counsel and the State Class Representative receiving fees, expenses, and a service award. *See* Berman Decl. ¶ 72.

Any award of attorneys' fees and expenses to State Class Counsel will come out of the award of attorneys' fees and expenses to Lead Counsel. *See* Stipulation ¶ 7.2. In turn, any award to the State Class Representative will come from the award to State Class Counsel. *Id. ¶* 7.5. Accordingly, the Net Settlement Fund will not be decreased based on awards to the State Class Counsel and State Class Representative.

## VII.   CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the fee and expense application.

DATED: December 8, 2023

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725.3000
Facsimile: (510) 725.3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile: (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff New Zealand Methodist Trust Association*