Steve Berman (pro hac vice)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>                                        Plaintiff,<br><br>    v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>                                        Defendants. | No. 3:19-cv-03422-SI<br><br><u>CLASS ACTION</u><br><br>**DECLARATION OF STEVE W. BERMAN IN SUPPORT OF LEAD PLAINTIFF'S (1) MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND (2) MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARD** |

I, Steve Berman, declare as follows:

1.   I am licensed to practice law in Illinois and Washington, and I am admitted to practice pro hac vice before this Court. I am the managing partner of the law firm of Hagens Berman Sobol Shapiro LLP ("Lead Counsel" or "Hagens Berman"), and counsel of record for Lead Plaintiff New Zealand Methodist Trust Association ("Lead Plaintiff" or "MTA") in the above-titled action (the "Federal Action" or "Action").

2.   I submit this declaration in support of Lead Plaintiff's (1) Motion for Final Approval of Proposed Class Action Settlement and (2) Motion for an Award of Attorneys' Fees, Litigation Expenses, and Service Award (the "Fee and Expense Motion"). The following statements are based on my personal knowledge through my direct involvement in this litigation and information provided by other attorneys working under my supervision, and if called upon to do so, I could and would testify competently thereto.[1]

## I.   INTRODUCTION

3.   The proposed Settlement before the Court provides for the resolution of all claims in the Federal Action and the dismissal of the claims in the State Action in exchange for a cash payment of $75,500,000 for the benefit of the Settlement Class. As detailed herein, the Settlement provides a significant benefit to the Settlement Class by conferring a substantial, certain, and near-term recovery, while avoiding the significant risks of continuing litigation, including the risk that the Settlement Class could recover nothing or less than the Settlement Amount.

4.   The proposed Settlement is the result of extensive efforts by Lead Plaintiff and Lead Counsel, which included, among other things: (i) extensive investigation; (ii) the filing of a detailed amended complaint; (iii) a round of motion-to-dismiss briefing; (iv) obtaining and reviewing tens-of-thousands of documents in discovery and conducting ten fact depositions; (v) the serving of several expert reports (vi) deposing of four expert witnesses and defending two expert witnesses; (vii) fully briefing summary judgment and *Daubert* challenges; and (viii) extensive arm's-length negotiations

---

[1] All capitalized terms not defined herein shall have those meanings as set forth in the Amended Stipulation and Agreement of Global Settlement dated June 22, 2023 (the "Stipulation"), attached hereto as **Exhibit 1**.

with Robert A. Meyer, Esq. of JAMS. Due to these and other efforts, Lead Plaintiff and Lead Counsel had a thorough understanding of the arguments, evidence, and potential witnesses that would inform the trial and were well-informed of the strengths and weaknesses of the claims against the Federal Action Defendants at the time we achieved the proposed Settlement. Accordingly, Lead Plaintiff and Lead Counsel believe that the Settlement is in the best interest of the Settlement Class.

5.      In addition, Lead Plaintiff actively participated in the Federal Action and closely supervised the work of Lead Counsel, and it strongly endorses the approval of the Settlement. *See* Declaration of Stephen Walker, attached hereto as **Exhibit 2** ("Walker Decl.").

6.      As discussed later in this declaration, the proposed Plan of Allocation—developed with the input of Lead Plaintiff's damages expert—provides for the equitable distribution of the Net Settlement Fund to Settlement Class Members who submit Claims on a *pro rata* basis fairly based on losses attributable to the alleged fraud.

7.      In securing the proposed Settlement, Lead Counsel worked diligently and efficiently to achieve the proposed Settlement in the face of substantial risks. Lead Counsel prosecuted the Federal Action on a fully contingent basis and advanced all litigation-related expenses. Accordingly, Lead Counsel solely bore the risk of an unfavorable result, including no recovery whatsoever. Based on the efforts in achieving in the Settlement, Lead Counsel requests attorneys' fees in the amount of 30% of the Settlement Fund, and payment of $1,100,008.81 in litigation expenses incurred in the institution, prosecution, and settlement of the Federal Action. As discussed more fully in the Fee and Expense Motion, the requested fee is reasonable compared to awards in other securities class actions, and considering the efforts of Lead Counsel, the results achieved in the Federal Action, and the risks and complexity of the litigation. Lead Counsel also respectfully submits that the expenses it incurred in litigating the Federal Action for nearly four years—$1,100,008.81—were expended for the benefit of the Settlement Class and therefore warrant approval. Finally, the requested service award for Lead Plaintiff, $25,000, is reasonable given Lead Plaintiff's substantial commitment to the Class.

8.      In addition, in connection with the fee request, State Class Counsel, Bottini & Bottini, Inc., intends to seek attorneys' fees and expenses totaling $1,000,000, based on the benefit added to

the Federal Action through their efforts in the State Action. *See* Declaration of Francis A. Bottini, Jr. ("Bottini Decl."), attached hereto as **Exhibit 3**. Significantly, any award of attorneys' fees and expenses to State Class Counsel will come out of the award of attorneys' fees and expenses to Lead Counsel. *See* Stipulation ¶ 7.2. Likewise, any award for the State Class Representative—who is requesting $10,000—will come out of the award of attorneys' fees and expenses to State Class Counsel (*see* Stipulation ¶ 7.5), and the basis for such an award is detailed in the declaration from the State Class Representative. *See* Declaration of State Court Class Representative Aric Olsen ("Olsen Decl."), attached hereto as **Exhibit 4**.

## II.    BACKGROUND

### A.    Commencement of the Federal Action

9.    On June 14, 2019, Plaintiff Casey Roberts filed the first of several related putative class action complaints, styled *Casey Roberts v. Zuora, Inc., et al.*, No. 19-cv-03422 (ECF No. 1), alleging violations of federal securities laws against Zuora, Inc., Tien Tzuo, and Tyler Sloat (collectively, the "Federal Action Defendants"). Following the submission of various motions to appoint lead plaintiffs and lead counsel, by Order dated September 9, 2019 (ECF No. 55), the Court appointed New Zealand Methodist Trust Association as Lead Plaintiff and Hagens Berman Sobol Shapiro LLP as Class Counsel in this action.

### B.    The Comprehensive Pre-Filing Investigation, Preparation of the Complaint, and the Federal Action Defendants' Motion to Dismiss the Complaint

10.    In advance of filing the operative complaint, Lead Counsel undertook an extensive investigation into the alleged fraud and potential claims that could be asserted in the Federal Action, including: (a) a detailed review of (i) Zuora's Securities Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by the Federal Action Defendants prior to, during, and after the Class Period; (ii) public documents, reports, announcements, and news articles concerning Zuora; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) conducting numerous fact interviews with former employees and third parties; and (c) a review and analysis of other publicly available material and data.

11.     On November 8, 2019, Lead Plaintiff filed the Consolidated Amended Class Action Complaint (the "Complaint"). ECF No. 60. Lead Plaintiff alleged that during the period between April 12, 2018, and May 30, 2019 (the "Class Period"), the Federal Action Defendants made materially false and misleading statements in violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), Rule 10b-5 promulgated thereunder, and § 20(a) of the Exchange Act, which caused the price of Zuora stock to trade at artificially inflated prices. Specifically, Lead Plaintiff alleged that the Federal Action Defendants misled investors during the Class Period by making public statements that did not reflect the actual state of the functionality of Zuora's platform as a combined solution, the integrated nature of its flagship products, Billing and RevPro, and Zuora's path for growth via cross-selling and upselling Billing and RevPro. Lead Plaintiff alleged that persons who purchased Zuora stock during the Class Period suffered economic losses when the price of Zuora stock declined as a result of the May 30, 2019 disclosure of the integration failure, sales execution issues, and disappointing financial performance and outlook.

12.     The Federal Action Defendants moved to dismiss the Complaint on January 22, 2020. ECF No. 64. The Federal Action Defendants argued that the Complaint should be dismissed because Lead Plaintiff had not adequately alleged that the Federal Action Defendants had made any materially false and misleading statements; the majority of the challenged statements relating to RevPro-Billing integration were non-actionable, forward-looking statements; and the Complaint failed to allege "particularized contemporaneous facts" giving rise to a strong inference of scienter. *Id.* at 9-10. Along with their motion to dismiss, the Federal Action Defendants also filed a request that the Court consider documents incorporated by reference in the Complaint and take judicial notice of additional documents submitted to the Court, including Zuora's SEC filings and press releases. *See* ECF No. 64-24.

13.     On February 19, 2020, Lead Plaintiff filed its opposition to the motion to dismiss. *See* ECF No. 67. In the opposition, Lead Plaintiff asserted that the Complaint adequately identified the actionable false and misleading statements and omissions, detailed the reasons why the challenged statements were false or omitted material facts, and raised a strong inference of scienter. *Id.* at 9-11.

The drafting of the opposition required Lead Counsel to engage in extensive legal research relating to the strengths and weaknesses of the claims asserted in the Federal Action.

14.    On March 18, 2020, the Federal Action Defendants filed their reply brief in support of their motion to dismiss. ECF No. 68.

15.    On April 28, 2020, the Court denied the Federal Action Defendants' motion without oral argument. ECF No. 75. In the detailed 21-page opinion, the Court overruled all the Federal Action Defendants' challenges to Lead Plaintiff's claims. Specifically, the Court rejected the Federal Action Defendants' argument that their alleged misstatements were immaterial or otherwise inactionable, finding that the Federal Action Defendants' statements gave "a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.'" *Id.* at 15 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)). The Court also rejected the Federal Action Defendants' scienter challenges. *Id.* at 18-20.

**C.    Lead Plaintiff's Fact Discovery Efforts**

16.    Following the Court's denial of the Federal Action Defendants' motion to dismiss, Lead Plaintiff served 74 document requests and the parties held extensive discussions regarding the method and form of the Federal Action Defendants' document production, including negotiating an ESI protocol, protective order, search terms, and custodians. Ultimately, the Federal Action Defendants produced more than 54,000 documents—encompassing over 400,000 pages—from over 15 custodians. The Federal Action Defendants also produced dozens of hours of video recordings of internal meetings involving Zuora executives that spanned the entirety of the Class Period.

17.    Hagens Berman employed a team of contract attorneys and Hagens Berman associates to comprehensively review the document discovery and video recordings. These documents and video recordings were reviewed, analyzed, and distilled into a workable set of "hot" documents. Detailed memoranda, including a chronology of relevant events, were also prepared based on the documents. Regular team meetings were held to discuss, *inter alia*, the status of the document review, the evidence uncovered to date, and the adequacy and scope of the production.

18. Upon substantially completing the review of the Federal Action Defendants' document and video-recording productions, Lead Plaintiff conducted ten fact witness depositions between March 2022 and May 2022, including the examinations of Defendants Tien Tzuo and Tyler Sloat. In advance of each deposition, Lead Counsel prepared extensive deposition outlines, which included a set of proposed exhibits for each witness, as well as detailed outlines which included relevant factual research, analyses, and proposed lines of questioning specific to each deposition exhibit.

19. On behalf of Lead Plaintiff, Hagens Berman also drafted and served Requests for Admission to the Federal Action Defendants and issued subpoenas to three third-parties, which resulted in additional document discovery after negotiations over the scope of the subpoenas.

20. Hagens Berman worked with Lead Plaintiff to respond to discovery requests issued by the Federal Action Defendants. Over the course of the litigation, Lead Plaintiff produced over 9,000 pages of document discovery, sat for a deposition, and provided responses to 30 document requests and 24 interrogatories, including comprehensive contention interrogatories served close to the end of fact discovery. Lead Counsel defended Lead Plaintiff's deposition and also participated in the depositions of four confidential witnesses referenced in the Complaint.

**D.    Class Certification Briefing, Related Expert Discovery, and the Distribution of Notice in the Federal and State Actions**

21. On December 4, 2020, Lead Plaintiff filed a motion for class certification, appointment of class representative, and appointment of class counsel. ECF. No. 100. Lead Plaintiff's class certification motion included the Expert Report of Tavy Ronen, Ph.D., who opined on, among other issues, the efficiency of the market for Zuora common stock and a methodology for calculating class-wide damages. ECF No. 101-1. The Federal Action Defendants deposed Dr. Ronen on January 25, 2021.

22. On March 15, 2021, the Court granted Lead Plaintiff's Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel (ECF No. 113) after the Federal Action Defendants declined to oppose the motion (ECF No. 112). That Order certified a class of all persons and entities who purchased or otherwise acquired publicly traded common stock of Zuora during the period from April 12, 2018, through May 30, 2019, inclusive, and were damaged thereby

(the "Federal Class") (ECF No. 113). The Court also appointed New Zealand Methodist Trust Association as Class Representative and Hagens Berman Sobol Shapiro LLP as Class Counsel. *Id.*

23. Several months later, on October 14, 2021, in a separate but related action brought by State Class Representative asserting claims under Sections 11 and 15 of the Securities Act of 1933 captioned *Olsen v. Zuora, Inc.*, Lead Case No. 20-CIV-01918 (Cal. Super. Ct., Cty. of San Mateo) (the "State Action"), the State Court certified a class of "[a]ll persons and entities who purchased or otherwise acquired shares of Zuora, Inc. common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with Zuora's April 12, 2018 initial public offering" (the "State Class"). *See* State Action Dkt No. 181.

24. Given that the Federal Class encompassed the entirety of the State Class, Lead Counsel and State Class Counsel coordinated on the sending of notice to the certified classes in the Federal Action and State Action. On June 24, 2022, the Court issued its Order approving the Dissemination of Class Notice (the "Class Notice Order") (ECF No. 151), which required that any persons or entities that chose to exclude themselves from the Class do so by October 30, 2022. The State Court issued a nearly identical order on June 29, 2022. *See* State Action Dkt. No. 192 (the "State Class Notice Order"). After the courts issued their respective orders, the Court-appointed administrator, Epiq Systems, Inc., began distributing the joint notice of the Federal Action and State Action to potential class members on August 12, 2022. ECF No. 243. As of April 5, 2023, over 51,000 class notices were disseminated to potential class members and nominees by First Class Mail. *Id.* Four valid requests to be excluded from the Class were returned. *See* State Action Dkt No. 206.

**E.     Expert Discovery**

25. After the close of fact discovery in May 2022, Lead Plaintiff and the Federal Action Defendants engaged in substantial expert discovery. Initially, Lead Plaintiff served a second expert report from Dr. Ronen, who opined the Federal Action Defendants' false and misleading statements proximately caused losses to Zuora's investors, calculated the artificial inflation per share in Zuora common stock for each day during the Class Period that was attributable to the alleged misrepresentations and omissions, and provided a model to quantify Rule 10b-5 damages for Zuora

common stock on a per-share basis that could be applied to each Class Member. Upon receiving the expert reports from the Federal Action Defendants, Lead Plaintiff served a rebuttal expert report from Charles R. Lundelius, Jr., CPA/ABV/CFF, to address certain conclusions from the Federal Action Defendants' damages expert relating to what percentage of investors' losses in Zuora common stock were directly attributable to Zuora's failure to timely disclose issues related to Keystone integration. In developing this rebuttal report, Lead Counsel had to quickly analyze the opposing expert reports, identify potential experts, and work with Mr. Lundelius to draft his report in less than two months.

26.    The Federal Action Defendants offered four experts after the close of fact discovery. Two experts, Allen Ferrell, Ph.D. and Kevin Dages, addressed Lead Plaintiff's expert testimony on damages. The remaining two experts, Professor Steven Davidoff Solomon and Jeffrey L. Hagins, offered opinions on Zuora's disclosure processes and industry norms and practices related to software development, enterprise software, and software implementation and integration, respectively.

27.    Hagens Berman deposed all four of the Federal Action Defendants' experts. These depositions required extensive preparation given the claims and areas of testimony. Hagens Berman also prepped their experts for and defended three depositions, with Dr. Ronen being deposed twice.

**F.    Summary Judgment and *Daubert* Briefing**

28.    On December 9, 2022, the Federal Action Defendants filed a motion for summary judgment on all of Lead Plaintiff's claims. ECF No. 185. Specifically, the Federal Action Defendants argued that Lead Plaintiff could not establish loss causation and prove damages. *Id.* As part of that motion, the Federal Action Defendants also sought to exclude both of Lead Plaintiff's loss causation/damages experts. *Id.* On January 27, 2023, Lead Plaintiff filed its opposition to the summary judgment motion (ECF No. 219). The Federal Action Defendants filed their reply in support of the summary judgment motion on February 17, 2023 (ECF No. 229).

29.    The same day the Federal Action Defendants filed their summary judgment motion, Lead Plaintiff filed three separate motions to exclude testimony from three of the Federal Action Defendants' experts (ECF Nos. 192-194). The Federal Action Defendants filed their responses on

January 27, 2023 (ECF Nos. 211-213), and Lead Plaintiff filed its replies on February 17, 2023 (ECF Nos. 234-236)

### G.      Mediation Efforts and Settlement Negotiations

30.      During the course of the litigation, the parties engaged a third-party mediator, Robert A. Meyer, Esq., of JAMS. After the submission of comprehensive mediation statements and other materials concerning the parties' respective views on the merits of the litigation, including analysis and discussion of the Federal Action Defendants' discovery, Lead Plaintiff, State Class Representative, and Defendants participated in a mediation via videoconference with Mr. Meyer on January 18, 2022. The parties did not reach a resolution with Mr. Meyer at that time. On May 31, 2022, the Court entered an order referring this action to Magistrate Judge Kandis Westmore for settlement. As part of the conferences with Judge Westmore, Lead Plaintiff and the Federal Action Defendants agreed to resume further mediation with Mr. Meyer. On February 2, 2023, the parties conducted an in-person mediation with Mr. Meyer after submitting mediation statements and summary judgment and *Daubert* briefing. Although no resolution was reached during the mediation, the parties continued discussions with Mr. Meyer. On March 31, 2023—just one week before oral arguments on the Federal Action Defendants' summary judgment motion and motion to exclude expert testimony and Lead Plaintiff's motions to exclude expert testimony—the parties agreed to settle the Federal Action. The parties' original settlement, however, did not fully resolve the State Action.

31.      After Lead Plaintiff filed its motion for preliminary approval of the Settlement on May 15, 2023 (ECF No. 245), the parties conducted additional negotiations with counsel for the State Class Representative and counsel for the State Action Defendants. On June 1, 2023, with the assistance of Mr. Meyer, the parties reached an amended settlement agreement in principle for $75,500,000, which would resolve the Federal Action and the State Action concurrently.

32.      Lead Counsel spent significant time and effort in negotiating, drafting, and revising the original settlement agreement, the amended agreement, the preliminary approval motion, and the notices to be sent to all class members.

DECL. OF STEVE W. BERMAN IN SUPP. OF (1) MOT. FOR FINAL
APPROVAL & (2) MOT. FOR FEES, EXPENSES, & SERVICE AWARD – 9           No. 3:19-cv-03422-SI

**H.     Preliminary Approval of the Settlement**

33.     On August 14, 2023, the Court issued its order granting preliminary approval to the proposed Settlement. *See* ECF No. 268.

34.     The Settlement Class includes "(a) all Persons who purchased or otherwise acquired Zuora common stock between April 12, 2018, and May 30, 2019, inclusive (the 'Class Period'), and were damaged thereby; and (b) all persons and entities who purchased or otherwise acquired shares of Zuora, Inc. common stock pursuant or traceable to the Registration Statement and Prospectus issued in connection with Zuora's April 12, 2018 initial public offering." *See* Stipulation ¶ 1.41.[2] Given that the Federal Class encompasses those investors within the State Class, the Settlement Class does not modify the size of the class initially before this Court in the Federal Action.

**III.     THE RISKS OF CONTINUED LITIGATION**

35.     Through the non-revisionary cash payment of $75,500,000, the Settlement provides an immediate and certain benefit to the Settlement Class. As explained below, there were substantial risks that the Settlement Class might recover significantly less than the Settlement Amount—or even nothing at all—if the case were to proceed to a jury trial and was inevitably appealed.

**A.      Risks to Proving Liability**

36.     Lead Plaintiff and Lead Counsel faced numerous risks at trial, including establishing the Federal Defendants' liability. Throughout the litigation, the Federal Action Defendants strongly argued that Lead Plaintiff could not establish the elements of the Exchange Act claims.

37.     For example, the Federal Action Defendants argued, and would continue to argue, that their public statements during the Class Period were not materially false or misleading. Specifically,

---

[2] Excluded from the Settlement Class are: (i) the Defendants; (ii) members of the immediate family of Defendants Tien Tzuo, Tyler Sloat, Peter Fenton, Kenneth A. Goldman, Timothy Haley, Jason Pressman, Michelangelo Volpi, and Magdalena Yesil; (iii) any person who is or was an officer or director of Zuora; (iv) any firm or entity in which Defendants have or had a majority ownership interest; (v) Zuora's liability insurance carriers; (vi) any affiliates, parents, or subsidiaries of Zuora; (vii) all Zuora plans that are covered by ERISA; (viii) the legal representatives, agents, affiliates, heirs, beneficiaries, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such; and (ix) those Persons who previously have requested exclusion from the classes certified in the Federal Action or State Action (*see* ECF No. 243; State Action Dkt. No. 201). *See* Stipulation ¶ 1.41.

the Federal Action Defendants argued that Zuora's customers, shareholders, and market observers understood that "integration" did not mean automatic and frictionless data transfer out-of-the-box, but would require some customization to meet the needs of each individual customer. Moreover, the Federal Action Defendants argued that Zuora's products, including RevPro and Billing, did automate otherwise manual processes and thus, contrary to Lead Plaintiff's assertions, the statements were true. Finally, the Federal Action Defendants argued that statements related to Zuora's strategy of "cross-selling" its customers different products to expand its business were true, as any delays in RevPro-Billing integration affected only a minority of potential customers.

38.    The Federal Action Defendants would also continue to argue that Lead Plaintiff could not establish scienter. For instance, the Federal Action Defendants would argue that the conduct of Zuora's senior management undermines scienter, as once they became aware of challenges facing RevPro-Billing integration, they worked to understand and account for its impact in Zuora's financial statements. Zuora, moreover, included the forecasted impact of the RevPro-Billing related issues in its guidance. As for motive, the Federal Action Defendants noted that Defendant Tien Tzuo sold no stock during the Class Period, and Defendant Tyler Sloat only sold shares pursuant to a non-discretionary 10b5-1 plan.

**B.    Risks to Proving Loss Causation and Damages**

39.    If Lead Plaintiff overcame the risks in proving falsity and scienter and successfully established the Federal Action Defendants' liability, Lead Plaintiff would have confronted challenges in establishing loss causation and class-wide damages.

40.    While Lead Plaintiff maintained that the decline in Zuora's stock price was fully attributable to correction of the alleged misstatements and omissions, the Federal Action Defendants would have argued that the decline was due to other negative news. Specifically, at summary judgment, the Federal Action Defendants argued that there were two completely separate causes of the drop in Zuora's stock price after the May 30, 2019 announcement: (i) sales execution issues and (ii) a delay in integrating Billing and RevPro. According to the Federal Action Defendants, Lead Plaintiff's failure

to disaggregate the impact of confounding information—in this case, the sales execution issues—severely impacted Lead Plaintiff's ability to prove loss causation.

41.     To prove its claims, Lead Plaintiff would have proffered Dr. Ronen's expert testimony demonstrating, among other things, (i) that Zuora investor losses were proximately caused by the alleged misrepresentations and omissions; (ii) the quantification of the amount of loss attributable to the revelation of the allegedly misrepresented and omitted facts; and (iii) the amount by which the value of Zuora common stock was inflated by the alleged material misstatements and omissions.

42.     The Federal Action Defendants' damages expert, Kevin Dages, presented opposing theories and conclusions for Zuora's price declines on the alleged disclosure date. Specifically, Mr. Dages determined that, at most, 15% of Zuora's reduction in revenue guidance could be attributable to the disclosure of issues with Billing-RevPro integration. In other words, Mr. Dages found that Lead Plaintiff could only recover 15% of Lead Plaintiff's estimated class-wide damages of $360 million (*i.e.*, $54 million).

43.     This "battle of the experts" creates an additional litigation risk because the reaction of a trier of fact to such expert testimony is highly unpredictable and creates uncertainty regarding how much weight a judge or jury will give the analysis of the competing experts. Moreover, expert testimony rests on many assumptions, any of which risks being rejected by a jury. For example, a jury here could have reacted negatively to Dr. Ronen's assumption that all of the new information released on the corrective disclosure date, May 30, 2019, related to RevPro-Billing integration. Therefore, the amount of damages that the Class would actually recover at trial, if successful on liability issues, was uncertain. Similarly, if the Court granted the Federal Action Defendants' request to exclude Dr. Ronen's expert testimony, that would have seriously affected Lead Plaintiff's ability to successfully prosecute the action and prove damages.

44.     As the foregoing paragraphs demonstrate, had any of the Federal Action Defendants' damages arguments been accepted, they could have dramatically limited—if not outright eliminated—any potential recovery for the Class.

**C.      Other Risks**

45.      Although Lead Counsel believes the risk of maintaining class action status through the end of trial was minimal, because Rule 23(c)(1) allows a class certification order to be altered or amended at any time prior to a decision on the merits, the Federal Action Defendants still could have moved to decertify the Settlement Class or shorten the Class Period up until the time the jury reached a verdict.

46.      Moreover, even if Lead Plaintiff prevailed at trial and met its burdens in establishing falsity, materiality, class-wide reliance under the "fraud of the market" presumption, loss causation, the measure of per-share damages (if any), and control person liability, the case would still be far from over. The Federal Action Defendants would have had the opportunity to challenge an individual Settlement Class Member's membership in the class, the presumption of reliance for any Class Member, and the amount of damages due each Settlement Class Member.

47.      The Federal Action Defendants also certainly would have appealed any favorable judgment for Lead Plaintiff. An appeal would not only renew all of the risks faced by Lead Plaintiff, given that the Federal Action Defendants would have reasserted all their arguments detailed above, but also would have resulted in significant additional delay.

48.      Given these significant litigation risks, Lead Plaintiff and Lead Counsel believe that the Settlement is an exceptional result for the Class.

**D.      The Settlement is Reasonable in Light of the Potential Recovery in the Action**

49.      The Settlement is fair and reasonable when considering the full extent of available damages. If Lead Plaintiff had succeeded at trial and if the jury awarded Lead Plaintiff the maximum amount of damages (*i.e.*, Lead Plaintiff's best-case scenario), the estimated recoverable damages would have been approximately $360,000,000. Thus, the $75,500,000 Settlement represents approximately 21% of the recoverable damages potentially available if Lead Plaintiff had fully prevailed at trial. This represents approximately 4.29 times the median percentage recovery for cases

settled with estimated damages of $250–$499 million or more in 2021 (4.9%) and approximately 4.88 times the median recovery, on a percentage basis, of similar cases settled in 2022 (4.3%).[3]

50. As noted above, the Federal Action Defendants' damages experts opined that at best, 15% of Lead Plaintiff's damages could be attributed to the Federal Action Defendants' alleged failure to timely disclose the issues related to RevPro-Billing integration. *See* ECF No. 185-17 at 33; ECF No. 229-4 at 15. Therefore, under the Federal Action Defendants' theory of damages, the most Lead Plaintiff could recover was $54,000,000 (*i.e.*, 15% of $360,000,000). The $75,500,000 settlement therefore amounts to a 139% recovery of the maximum damages as calculated by the Federal Action Defendants.

## IV. LEAD PLAINTIFF'S COMPLIANCE WITH THE COURT'S PRELIMINARY APPROVAL ORDER REGARDING THE NOTICE PROGRAM

51. In its Preliminary Approval Order, the Court authorized Lead Counsel to retain Epiq Class Action and Claims Solutions, inc. ("Epiq") as the Claims Administrator to supervise and administer the notice procedure for the Settlement and processing of Claims. *See* ECF No. 268 ¶ 13. In accordance with the Preliminary Approval Order, Epiq, working in conjunction with Lead Counsel: (i) mailed the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form") (collectively, the Notice and Claim Form are referred to as the "Settlement Notice Packet") via USPS First Class Mail to all identified Class Members with an associated physical address, including nominees or custodians who purchased or acquired shares of Zuora common stock during the Class Period as record owners;[4] (ii) published the Summary Notice in the national edition of *Investor's Business Weekly* and transmitted on the *PRNewswire*; and

---

[3] *See* Cornerstone Research, *Securities Class Action Settlements, 2021 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf, at Figure 5 (last accessed Dec. 7, 2023); Cornerstone Research, *Securities Class Action Settlements, 2022 Review and Analysis*, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf, at Figure 5 (last accessed Dec. 7, 2023).

[4] For the class certification stage, Epiq received from Zuora a list of shareholders of record for Zuora common stock. *See* **Exhibit 5**, Declaration of Eric Blow ("Blow Decl.") ¶ 4. In addition, Epiq has developed and maintained a proprietary database with names and addresses of the largest and most common nominee holders, including brokerage firms, banks, and financial institutions. *Id.* Epiq also received names and addresses directly from potential Class Members in the Federal Action. *Id.* This existing data was used to provide Notice of the Settlement. *Id.* ¶ 5.

(iii) updated the website for the litigation, www.ZuoraSecuritiesLitigation.com, so that copies of the Notice and Claim Form could be downloaded. *See* Blow Decl. ¶¶ 8-11, 15, 20.

52.    Collectively, the notices apprise Settlement Class Members of, *inter alia*: (i) the Settlement amount; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share of Zuora common stock; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for a representative from Lead Counsel to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to object to the Settlement; (vii) the binding effect of a judgment on Settlement Class Members; (viii) the dates and deadlines for certain Settlement-related events; and (ix) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement website.

53.    Pursuant to the Preliminary Approval Order, Epiq began mailing the Settlement Notice Packets to potential Settlement Class Members and Nominees on September 1, 2023. *See* Blow Decl. ¶ 8. As of December 7, 2023, Epiq has disseminated more than 69,000 Settlement Notice Packets to Settlement Class Members and Nominees. *Id.* ¶ 11.

54.    On September 11, 2023, in accordance with the Preliminary Approval Order, Epiq caused the Summary Notice to be published in the *Investor's Business Weekly* and transmitted on the *PRNewswire*. *Id.* ¶ 15.

55.    Epiq also updated and currently maintains the dedicated litigation website, www.ZuoraSecuritiesLitigation.com, which provides potential Settlement Class Members with information concerning the Settlement and access to copies of the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, and other relevant documents. *See* Blow Decl. ¶ 20. Lead Counsel also provided information on the Settlement on its own website, www.hbsslaw.com. Lead Counsel and Epiq will monitor and update the website as the settlement process continues. For example, Lead Plaintiff's briefing in support of final approval of the Settlement and Lead Counsel's papers in support of the fee and expense application will be made available on the

website after they are filed. Any orders entered by the Court in connection with these motions will also be posted.

56.     The deadlines for Settlement Class Members to file objections to the Settlement, Plan of Allocation, and/or the fee and expense application is December 22, 2023. To date, there have been no objections to the Settlement, the Plan of Allocation, and/or Lead Counsel's request for fees and expenses. Lead Counsel will file reply papers on or before January 5, 2024, addressing all objections that may be received.

## V.     ALLOCATION OF THE PROCEEDS OF THE SETTLEMENT

57.     Pursuant to the Preliminary Approval Order, and as set forth in the notices, Settlement Class Members who want to be eligible to receive a distribution from the Net Settlement Fund must submit a valid Claim with all required information postmarked (if mailed) or submitted online no later than December 30, 2023. As detailed in the notices, the Net Settlement Fund will be distributed among Settlement Class Members who submit eligible claims according to proposed Plan of Allocation.

58.     In developing the Plan of Allocation, Lead Counsel consulted with Lead Plaintiff's damages expert, Dr. Ronen. Lead Counsel believes that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a result of the conduct alleged in the Federal Action.

59.     The Plan of Allocation is set forth at pages 13-16 of the Notice. *See* Blow Decl., Ex. B, at pp. 13-16 ("Notice"). As described in the Notice, calculations under the Plan of Allocation are intended as a method to weigh the claims of Settlement Class Members against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund. *See* Notice ¶ 11.

60.     For the Plan of Allocation, Dr. Ronen calculated the estimated amount of artificial inflation in the per-share closing price of Zuora common stock, which was allegedly proximately caused by the Federal Action Defendants' alleged material false and misleading statements and omissions during the Class Period. *See* Notice ¶ 12. In calculating the estimated artificial inflation, Dr. Ronen considered price changes in Zuora common stock in reaction to certain public announcements allegedly revealing the truth concealed by the Federal Action Defendants' alleged

misrepresentations and material omissions, adjusting for price changes that were attributable to market or industry forces. *Id.* ¶ 13. The estimated artificial inflation in Zuora common stock during the Class Period is set out in Table 1 of the Notice and is consistent with what Dr. Ronen calculated in her merits expert report. *Id.* at p. 16.

61.    Recognized Loss Amounts are calculated under the Plan of Allocation for each purchase or acquisition of Zuora common stock that is listed on a Claimant's Claim Form and for which adequate documentation is provided. In general, Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Zuora common stock at the time of purchase or acquisition and at the time of sale (*i.e.*, the difference between the actual purchase price and sale price). *See* Notice ¶¶ 15, 18. Accordingly, in order to have a Recognized Loss under the Plan of Allocation, a Claimant must have purchased or otherwise acquired Zuora common stock during the Class Period (April 12, 2018, through May 30, 2019, inclusive) and held such Zuora common stock through the alleged corrective disclosure that removed artificial inflation from the price of Zuora common stock.[5] *Id.*

62.    Recognized Loss Amounts will depend upon several factors, including the date(s) the Claimant purchased/acquired their shares of Zuora common stock during the Class Period and whether such shares were sold and, if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *See* Notice at p. 7.

63.    In practice, for each share of Zuora common stock purchased or otherwise acquired during the Class Period and sold on or before May 30, 2019, the Recognized Loss Amount will be $0.00. *See* Notice ¶ 20. For each share purchased or otherwise acquired during the Class Period, and sold from May 31, 2019, through August 28, 2019, the Recognized Loss Amount will be the lesser of (i) $5.53 (inflation value as presented in Table 1 of the Notice) or (ii) the purchase price minus the average closing price on the sale date (value presented in Table 2 in the Notice). *Id.*

---

[5] Lead Plaintiff alleges that corrective information was released to the market on May 30, 2019, which removed the artificial inflation from the price of Zuora common stock on May 31, 2019. *See* Notice ¶ 17.

64.    As stated in the Notice, and in accordance with the PSLRA, Recognized Loss Amounts for shares of Zuora common stock sold during the 90-day period after the alleged corrective disclosure are further limited to the difference between the purchase price and the average closing price of the stock from the end of the Class Period to the date of sale. *See* Notice ¶ 20. Specifically, Recognized Loss Amounts for Zuora common stock held as of the close of trading on August 28, 2019, the end of the 90-day period, will be the lesser of (i) $5.53 (inflation value as presented in Table 1 in the Notice), or (ii) the purchase price minus $14.90, the average closing price for Zuora common stock between May 31, 2019, and August 28, 2019 (the last entry in Table 2 in the Notice). *Id.*

65.    The sum of a Claimant's Recognized Loss Amounts for all of his, her, or its purchases/acquisitions of Zuora common stock during the Class Period is the Claimant's "Recognized Claim." *See* Notice ¶ 21. The Plan of Allocation limits a Claimant's Recognized Claim to his, her, or its Market Loss in Zuora common stock transactions during the Class Period. *Id.* ¶¶ 26-27. Specifically, if a Claimant suffered an overall Market Loss but the Market Loss was less than the Claimant's Recognized Claim, then the Claimant's Recognized Claim will be limited to the amount of the Market Loss. *Id.* If a Claimant had a Market Gain, the value of the Claimant's Recognized Claim will be zero and the Claimant will still be bound by the Settlement. *Id.*

66.    Assuming all eligible Settlement Class Members submit valid claims, on average, Authorized Claimants will receive $0.69 per damaged share. As detailed in the Notice, based on the analysis performed by Lead Plaintiff's damages expert, the estimated recovery per share for a Settlement Class Member is $1.03 per share, before the deduction of any Court-approved fees, expenses, and costs. *See* Notice at p. 2. The requested fees, expenses, and costs amount to approximately $0.34 per share. *Id.* The estimated $0.69 recovery per share is therefore based on the Net Settlement Fund (*i.e.*, the $75.5 million fund net of requested fees, expenses, and costs). If fewer than all Settlement Class Members submit timely and valid Proofs of Claim, the distribution per share will be higher. *Id.*

67.    One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. If the sum total of Recognized Claims of all Authorized Claimants is greater than the Net

Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. *See* Notice ¶ 28. The *pro rata* share or "Distribution Amount" will be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. *Id.* If the Net Settlement Fund exceeds the sum total of the Recognized Claims of all Authorized Claimants entitled to receive payment out of the Net Settlement Fund, the excess amount in the Net Settlement Fund will be distributed *pro rata* to all Authorized Claimants entitled to receive payment. *Id.* ¶ 29.

68.    If any funds remain after the initial *pro rata* distribution, subsequent cost-effective distributions to Authorized Claimants will be conducted. *Id.* ¶ 30. When the residual amount left for re-distribution to Settlement Class Members is so small that a further re-distribution will not be cost effective (*i.e.*, if an Authorized Claimant would receive less than $10.00), the remaining funds will be donated to a *cy pres* recipient to be determined by the Court. *Id.*

69.    Per the Court's preliminary approval order, once the Claims Administrator, Epiq, has considered a timely submitted Proof of Claim, it shall determine whether the claim is valid, deficient, or rejected. *See* ECF No. 268 ¶ 21(d). If a Claim is determined to be deficient or rejected, Epiq will send a deficiency or reject letter, as appropriate, describing the basis of the deficiency or rejection. The Claimant would then have twenty (20) calendar days to cure the deficiency or contest the rejection, including through a review by the Court. *Id.*

70.    In sum, the Plan of Allocation was designed to fairly and rationally allocate the proceeds of the Net Settlement Fund among Settlement Class Members based on damages they suffered as a result of purchases of Zuora common stock attributable to the misconduct alleged in the Federal Action. To date, no objections to the proposed Plan of Allocation have been received.

## VI.    THE FEE AND EXPENSE APPLICATION

71.    Along with seeking final approval of the Settlement and approval of the Plan of Allocation, Lead Counsel is applying for an award of attorneys' fees and payment of litigation expenses incurred during the course of the Federal Action. Specifically, Lead Counsel is applying to the Court for an award of attorneys' fees of 30% of the Settlement Fund (the "Fee Application") and

payment of litigation expenses from the Settlement Fund in the amount of $1,100,008.81. Along with the litigation expenses, and in accordance with the PSLRA, 15 U.S.C. § 78u-4(a)(4), Lead Counsel further requests $25,000 for the value of time that Lead Plaintiff MTA employees dedicated to the Federal Action (the "Expense Application"). The legal authorities supporting the requested fee and expenses are discussed in Lead Counsel's Fee and Expense Motion.

72.    In addition, as disclosed in the Notice, State Class Counsel, Bottini & Bottini, Inc., intends to seek attorneys' fees and expenses totaling $1,000,000, based on the benefit added to the Federal Action through their efforts in the State Action. The basis for such an award is described in the Bottini Declaration. *See* Bottini Decl. ¶¶ 3, 5-20. Any award of attorneys' fees and expenses to State Class Counsel will come out of the award of attorneys' fees and expenses to Lead Counsel. *See* Stipulation ¶ 7.2. Likewise, any award for State Class Representative (who is requesting $10,000) will come out of the award of attorneys' fees and expenses to State Class Counsel (*see* Stipulation ¶ 7.5), and the basis for such an award is detailed in the declaration from the State Class Representative. *See* Olsen Decl. ¶ 4. Lead Counsel does not oppose the requests by State Class Counsel and State Class Representative. To date, there have been no objections to State Class Counsel and State Class Representative receiving fees, expenses, and a service award.

73.    The primary factual bases for Lead Counsel's requested fee and expenses are summarized below.

**A.    The Fee Application**

**1.    The Work Performed by Hagens Berman Sobol Shapiro LLP**

74.    Hagens Berman devoted substantial time to the prosecution of the Federal Action. As described above in greater detail, the work that Lead Counsel performed in the Federal Action included, among other things: (i) extensive investigation; (ii) the filing of a detailed amended complaint; (iii) a round of motion to dismiss briefing; (iv) obtaining and reviewing of tens-of-thousands of documents in discovery and conducting ten fact depositions; (v) the serving of several expert reports (vi) deposing of four expert witnesses and defending two expert witnesses; (vii) fully briefing summary judgment and *Daubert* challenges; and (viii) extensive arm's-length negotiations

with the mediator. Lead Counsel believes that this work was necessary for the successful litigation of the case.

75.    From the beginning of the case, Hagens Berman has dedicated an efficient and streamlined team to this litigation. The staffing of this case remained relatively consistent, meaning the case team had a high level of institutional knowledge, which improved litigation efficiency. We brought in additional attorneys to help with discrete tasks when needed. Those tasks were tailored to those attorneys' unique experiences and skills, resulting in additional efficiencies.

76.    Based on my involvement in the Federal Action as well as the review of time records reflecting work performed by attorneys and professional support staff employees at Hagens Berman in the Federal Action ("Timekeepers"), I directed the preparation of the chart set forth as **Exhibit 6** hereto. The chart is a detailed summary indicating the amount of time spent by each Hagens Berman attorney and professional support staff employee who worked on the Federal Action from its inception through November 30, 2023.

77.    The chart in **Exhibit 6**: (i) identifies the name and positions (*i.e.*, titles) of the Timekeepers who have spent time working on any matters related to the Federal Action; (ii) states the total number of hours that each Timekeeper spent on that work from the inception of counsel's initial investigation through November 30, 2023; (iii) lists each Timekeeper's currently hourly rate[6]; and (iv) sets forth the lodestar for each Timekeeper (and for my firm as a whole). The information summarized in this chart was prepared from time records maintained by my firm in the ordinary course of business, which are available at the request of the Court.

78.    Lead Counsel expended a total of 8,920.60 hours in the investigation, prosecution, and resolution of the Federal Action from its inception through November 30, 2023. The resulting total lodestar for Lead Counsel is $5,256,134.50 (consisting of $5,053,342.00 for attorneys' time and $202,792.50 for professional support staff time).

---

[6] The hourly rates of Lead Counsel range from $935 to $1,285 per hour for partners, $350 to $750 per hour for other attorneys, $225 to $400 per hour for paralegals and other support staff, and $200 per hour for the investigator. These hourly rates are reasonable for this type of complex securities litigation. *See* Fee and Expense Motion § III.A.4.

DECL. OF STEVE W. BERMAN IN SUPP. OF (1) MOT. FOR FINAL
APPROVAL & (2) MOT. FOR FEES, EXPENSES, & SERVICE AWARD – 21          No. 3:19-cv-03422-SI

79. As required under the Northern District of California's Procedural Guidance for Class Action Settlements, attached hereto as **Exhibit 7** is a billing category-based summary chart of the work performed by the attorneys and professional support staff employees in connection with investigating, prosecuting, and resolving the Federal Action. This chart contains the following billing categories:

(1) **Factual Investigation**: This category includes time spent on Lead Counsel's extensive investigation in the claims asserted in the Complaint, including reviewing the voluminous public record and identifying, contacting, and interviewing potential confidential witnesses; initial case development; and analysis of clients' and class losses.

(2) **Pleadings**: This category includes time spent on preparing and filing the motion for appointment of lead plaintiff and lead counsel, as well as time spent on drafting, revising, and filing the Complaint.

(3) **Discovery**: This category includes time spent on all aspects of discovery, including, among other tasks: (i) preparing for and attending the initial Rule 26(f) conference; (ii) drafting, negotiating, and finalizing the operative protective order and ESI protocol; (iii) drafting document requests and negotiating the scope of responsive discovery, including search terms and custodians; (iv) drafting responses to the Federal Action Defendants' written discovery requests; (v) collecting, reviewing, and producing documents from Lead Plaintiff; (vi) reviewing the Federal Action Defendants' production of approximately 54,000 documents and dozens of hours of video recordings of internal meetings involving Zuora executives; (vii) preparing and circulating internal memorandums and similar documents concerning the key evidence uncovered in discovery; (viii) preparing for and taking ten fact depositions; and (ix) preparing for and attending the depositions of four confidential witnesses.

(4)  **Case Management/Client Communication**: This category includes time incurred for case management and administrative tasks, including maintaining internal calendars for deadlines. This category also includes time spent by counsel and staff preparing and negotiating case management statements, stipulations, and proposed scheduling orders, as well as preparing *pro hac vice* motions. This category also includes time incurred communicating with Lead Plaintiff regarding all aspects of the Federal Action and preparing status reports and memoranda at various stages of the cases.

(5) **Motions and Legal Research**: This category includes time incurred in researching and drafting Lead Plaintiff's opposition to the Federal Defendants' motion to dismiss, Lead Plaintiff's motion for class certification, Lead Plaintiff's opposition to summary judgment, and Lead Plaintiff's three *Daubert* motions and replies. This category also includes time incurred in attending to the filing of these motions, including preparing the filings for sealing.

(6) **Court Appearances/Preparation**: This category includes time incurred in preparing for court appearances, including CMCs and the November 2022 settlement conference. This category also includes time spent preparing for the hearing on the Federal Action Defendants' motion to dismiss before the Court informed the parties that it would decide the motion on the papers, and preparation for the April 7, 2023 hearing on the Federal Action Defendants' summary

judgment motion and Lead Plaintiff's *Daubert* motions before the parties reached in the initial settlement agreement on March 31, 2023.

(7) **Experts/Consultants**: This category includes time incurred in researching and identifying potential experts for class certification and the merits, as well as time working with the experts to develop the expert reports and prepare for their depositions. This category also includes time spent to prepare for and take the depositions of the Federal Action Defendants' experts.

(8) **Settlement/Mediation**: This category includes time incurred in extended settlement negotiations with the Settling Parties, with the assistance of Robert A. Meyer, Esq. of JAMS; drafting the mediation statements for Mr. Meyer; drafting and negotiating the term sheet, Stipulation, Amended Stipulation, and related settlement documents; selecting the Claims Administrator and Escrow Agent; preparing the motion and amended motion for preliminary approval of the Settlement; preparing for the preliminary approval hearing; and all other settlement related work, including preparing the final approval motion, through November 30, 2023.

(9) **Litigation Strategy/Analysis**: This category includes time devoted to overall litigation strategy and analysis.

(10) **Trial Preparation**: This category includes time devoted specifically to preparing the Federal Action for trial.

(11) **Class Notice**: This category includes time incurred in preparing the notice sent to class members in the Federal Action and State Action, including selecting the Notice Administrator; drafting and revise the class notice; and coordinating with the State Action parties to send out the notice.

80. Lead Counsel anticipates additional fees that include drafting a reply to the fee application and the motion for final approval, preparing for and attending the final approval hearing, responding to class member inquiries, preparing a Motion for Distribution of the Net Settlement Fund, and distributing the Net Settlement Fund. Lead Counsel will not seek additional compensation for this work, and as a result, the multiplier will diminish.

81. The hourly rates for the Timekeepers, as set forth in **Exhibit 7**, are the same as those set by my firm for each listed Timekeeper (*e.g.*, partner, associate, paralegal, etc.), and are consistent with the hourly rates submitted by my firm to state and federal courts in other contingent securities class action litigations across the country. The firm's hourly rates are set based on a periodic review of rates charged by firms performing comparable work and/or rates regularly submitted to other courts as the basis for the contingent fee awards in comparably complex class actions, including a review of both plaintiff and defense firm rates for complex litigation. Different Timekeepers within the same

employment category (*e.g.*, partners, associates, paralegals, etc.) may have different rates based on a variety of factors, including years of practice, years at the firm, years in their current position (*e.g.*, years as a partner), relevant experience, and relative expertise. For personnel who are no longer employed by the firm, the "current rate" used for the lodestar calculation is the rate that was used for that person in their final year of employment with the firm.

82.     The requested fee of 30% of the Settlement Fund ($22,650,000, plus interest) therefore represents a 4.3 multiplier of Lead Counsel's lodestar. Such a request is comparable to lodestars awarded in class actions involving contingency fee risk in the Ninth Circuit and is warranted given the exceptional recovery for the Settlement Class.

### 2.     Expertise, Experience, and Work Performed by Core Team Members

83.     The expertise and experience of lead counsel is another important factor in setting a fair fee. As demonstrated by our firm resume, attached hereto as **Exhibit 8**, Hagens Berman is among the most experienced and skilled practitioners in the complex litigation field and has a long and successful track record in such cases. Hagens Berman is a nationally recognized law firm, with offices in Berkeley, Seattle, Boston, Chicago, Los Angeles, San Diego, Phoenix, New York, Austin, and London. We have been consistently rated by the National Law Journal in the top ten of plaintiffs' firms in the country. The firm has extensive experience litigating complex class actions involving securities, investment fraud, product liability, tort, antitrust, consumer fraud, employment, environmental, and ERISA cases.

84.     Based on the work of the firm, Hagens Berman has demonstrated a willingness and ability to prosecute complex cases. Hagens Berman's willingness to take the Federal Action to trial is evidenced by the fact that the case did not settle after the first mediation. Indeed, Hagens Berman made clear throughout settlement discussions that Lead Plaintiff would not accept a low-value settlement and would proceed to trial if needed. This negotiating position undoubtedly added valuable leverage in the settlement negotiations, ultimately resulting in the recovery for the Class.

85. In addition to the biographies included in the attached firm resume, attached hereto as **Exhibit 9** are summary descriptions of the principal tasks that each attorney from Hagens Berman were involved in relating to the Federal Action.

### 3. Standing and Caliber of Opposing Counsel

86. The Federal Action Defendants were represented in this matter by Paul, Weiss, Rifkind, Wharton & Garrison LLP and Wilmer Cutler Pickering Hale and Dorr LLP, firms with national reputations for the tenacious defense of class actions and other civil complex matters. Faced with this experienced and formidable opposition, Lead Counsel was able to develop a case that was sufficiently strong to persuade the Federal Action Defendants to settle the case on terms that were highly favorable to the Class.

### 4. This Was a High-Risk Litigation Undertaken on a Fully Contingent Basis

87. Hagens Berman has prosecuted this litigation on a contingent basis without any promise of compensation and was well-aware that any compensation would depend on the result achieved in the case and the Court's discretion in awarding fees and expenses. This has posed a significant risk that my firm will not be compensated for its work on this case. Nonetheless, Hagens Berman was obligated to ensure that sufficient resources were dedicated to the prosecution of this case, that funds were available to compensate attorneys and staff (who have had to forgo other legal work for which Hagens Berman could have been compensated), and to cover the considerable litigation costs required by a case like this one. With an average lag time of many years for complex cases like this one to conclude, the financial burden on contingent-fee counsel is far greater than one a firm that is paid on an ongoing basis.

88. Furthermore, the claims in this case had to be developed solely by Lead Plaintiff and Hagens Berman without subpoena power, and without the benefit of a restatement or any governmental action. There was no SEC or DOJ investigation or action on which Hagens Berman could "piggyback." Hagens Berman also faced the burden of litigating under the PSLRA's heightened pleading standard and automatic stay of discovery. And, as discussed above, this case presented additional multiple risks and uncertainties that could have prevented any recovery whatsoever.

89.    In the face of these substantial risks and uncertainties, Hagens Berman's extensive efforts achieved a significant recovery for the benefit of the Class. Accordingly, we respectfully submit that the requested fee is reasonable and should be approved.

### 5.    The Reaction of the Class to the Fee Request

90.    As noted above, as of December 7, 2023, more than 69,000 copies of the Settlement Notice Packets have been disseminated. *See* Blow Decl. ¶ 11. The Notice advised potential Class Members that Lead Counsel would apply for an award of attorneys' fees in amount not to exceed 30% of the Settlement Fund. *See* Notice at p. 2. To date, no objections to the maximum potential attorneys' request set forth in the Notice have been received by Lead Counsel or entered on the Court's docket. Any objections received after the date of this filing will be addressed in Lead Counsel's reply papers to be filed by January 5, 2024.

### 6.    Lead Plaintiff MTA Supports the Fee Request

91.    As set forth in the declaration submitted by Stephen Walker, representative of Lead Plaintiff MTA, Lead Plaintiff has concluded that Hagens Berman's requested fee is fair and reasonable based on the work performed, the recovery obtained by the Class, and the risks in the litigation. *See* Walker Decl. ¶ 8. Lead Plaintiff has been very involved in this case since its earliest stages and its endorsement of the fee request supports the reasonableness of the request and should be given weight in the Court's consideration of the fee award. *Id.* ¶ 5.

### 7.    The Requested Fee Is Fair and Reasonable

92.    In sum, Hagens Berman accepted this case on a contingency basis, committed significant resources to it, and prosecuted it for roughly four years without any compensation or guarantee of success. Based on the result obtained, the quality of the work performed, the risks of the Federal Action, and the contingent nature of the representation, we respectfully submit that a fee award of 30%, which equates to a multiplier of 4.3, is fair and reasonable, and is supported by the fee awards courts in this Circuit and others have granted in other comparable cases.

**B.      The Expense Application**

93.     Lead Counsel seeks a total of $1,100,008.81 in litigation expenses to be paid from the Settlement Fund. This includes expenses reasonably and necessarily incurred by Lead Counsel in connection with commencing, litigating, and settling the Federal Action. Lead Counsel also seeks $25,000 for the costs and expenses incurred by Lead Plaintiff directly related to his representation of the Class. Lead Counsel respectfully submits that the request for reimbursement of litigation expenses is appropriate, fair, and reasonable and should be approved in the amounts submitted herein.

94.     The Notice informed potential Class Members that Lead Counsel would be seeking reimbursement of expenses not to exceed $1,250,000 as well as a service award for Lead Plaintiff in the amount of $25,000. *See* Notice at p. 2. No objections have been raised as to these requests set forth in the Notice. If any objections to the reimbursement of litigation expenses or the service award is made after the date of this filing, Lead Counsel will address it in the reply papers.

95.     From the inception of the Federal Action, Lead Counsel were aware that it might not recover any of the expenses incurred in prosecuting the claims against the Federal Action Defendants, and, at a minimum, would not recover any expenses until the Federal Action was successfully resolved. Lead Counsel also understood that, even assuming the Federal Action was ultimately successful, an award of expenses would not compensate Lead Counsel for the lost use or opportunity costs of funds advanced to prosecute the claims against the Federal Action Defendants. Thus, Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Federal Action.

96.     The expenses for which reimbursement is requested are summarized in **Exhibit 10** hereto.

97.     The following is additional information regarding certain of the expenses set forth in **Exhibit 10**.

>       (1)    **Airfare**: $517.81. This amount includes expenses for airfare for Steve Berman to travel to Los Angeles, California, for the February 2023 mediation.
>
>       (2)    **Court Reporters/Depositions**: $100,343.18. This amount includes expenses for the remote depositions taken during the Federal Action, including court reporters and deposition transcripts. This amount also includes fees paid to the attorney who defended the depositions of the confidential witnesses.

DECL. OF STEVE W. BERMAN IN SUPP. OF (1) MOT. FOR FINAL
APPROVAL & (2) MOT. FOR FEES, EXPENSES, & SERVICE AWARD – 27          No. 3:19-cv-03422-SI

(3) **Outside Copy Service**: $58.78. This amount includes expenses from FedEx incurred in the preparation for fact and expert depositions.

(4) **Expert Fees**: $786,774.40: Lead Plaintiff retained Tavy Ronen, Ph.D., who analyzed causation and damages, and prepared the proposed Plan of Allocation. As described above, Dr. Ronen served expert reports for purposes of class certification and the merits and was deposed twice. Lead Plaintiff also served a rebuttal expert report from Charles R. Lundelius, Jr., CPA/ABV/CFF, to address certain conclusions from the Federal Action Defendants' damages expert. The Federal Action Defendants also deposed Mr. Lundelius.

(5) **Epiq Notice Costs**: $109,032.87. Hagens Berman retained the services of Epiq Systems, Inc. to distribute notice of the certified classes in the Federal and State Action.

(6) **Overnight Shipping**: $934.52. In connection with prosecuting the Federal Action, Hagens Berman incurred charges associated with overnight delivery via UPS.

(7) **Court Fees/Filing Fees**: $937.00. This amount includes: (i) court filing fees; (ii) fees paid to various courts to obtain Certificates of Good standing for submission with Northern District of California *pro hac vice* applications; and (iii) Northern District of California admission fees for Hagens Berman attorneys.

(8) **Hotel**: $780.74. This amount includes expenses for hotel accommodations in Los Angeles, California, for Steve Berman and Lucas Gilmore related to the February 2023 mediation.

(9) **Meals**: $89.43. This amount includes meal expenses related to the February 2023 mediation.

(10) **Online Services/Legal Research (LexisNexis/Westlaw/PACER)**: $9,864.16. During the course of the Federal Action, Hagens Berman incurred costs associated with online legal and factual research necessary to the investigation, prosecution, and obtainment of the Settlement. These expenses include changes from online vendors such as Westlaw, LexisNexis, Courtlink, PACER, and others, and reflect costs associated with obtaining access to court filings, financial data, and performing legal and factual research. This expense amount represents the amount billed by the vendor.

(11) **Online Services/Legal Research (Everlaw Document Hosting)**: $69,836.84. Electronic discovery through the Everlaw platform used to store, sort, and assess discovery documentation.

(12) **Messenger/Process Service**: $1,164.14. The amount reflects payments made to messenger and process servers for performing, among other tasks, the service of third-party document subpoenas.

(13) **Mediation Fees**: $17,271.00. The parties retained Robert A. Meyer, Esq. of JAMS to assist with settlement negotiations in the Federal and State Actions. The Parties conducted two formal mediation sessions with Mr. Meyer in January 2022 and February 2023, respectively. The Parties also remained in contact with Mr. Meyer over the course of the litigation for settlement purposes.

(14) **Transportation/Travel/Expenses (Taxi, Car Rental, Train)**: $180.44. These limited travel expenses were incurred in connection with tasks related to the prosecution of the Federal Action.

(15) **Parking**: $36.00. These limited parking expenses were incurred in connection with tasks related to the prosecution of the Federal Action.

(16) **Internal Prints/Copies at $0.25 per page**: $2,168.00. Hagens Berman incurred costs related to document printing and reproduction. Each time a photocopy is made or a document is printed, Hagens Berman's billing system requires that a case or administrative billing code be entered into the copy machine or computer being used.

(17) **Miscellaneous Costs (Databahn Report)**: $19.50. This cost was incurred in procuring a report that was reviewed and analyzed in preparing the opposition to summary judgment.

98.     The expenses incurred by Hagens Berman in the Action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials, and are an accurate record for the expenses incurred. I believe these expenses were reasonable and expended for the benefit of the Settlement Class.

99.     Finally, Lead Plaintiff seeks reimbursement of its reasonable costs and expenses incurred directly in connection with representing the Class in the amount of $25,000. The effort devoted by Lead Plaintiff to the Federal Action is detailed in the accompanying declaration. *See* Walker Decl. ¶ 5. Lead Counsel respectfully requests that the Court grant Lead Plaintiff's request in full.

## VII.   CONCLUSION

100.     For all the reasons set forth herein, Lead Counsel respectfully submits that the Settlement and Plan of Allocation should be approved as fair, reasonable, and adequate. Lead Counsel further submits that the requested attorneys' fees in the amount of 30% of the Settlement Amount should be approved as fair and reasonable, and the request for reimbursement of $1,100,008.81 in litigation expenses and the service award of $25,000 for Lead Plaintiff should also be approved.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of December 2023 in Seattle, Washington.

/s/ Steve Berman
STEVE BERMAN