Steve Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Attorneys for Lead Plaintiff*
*New Zealand Methodist Trust Association*

[Additional counsel on signature page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CASEY ROBERTS, individually and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ZUORA, INC., TIEN TZUO, and TYLER SLOAT,<br><br>Defendants. | No. 3:19-cv-03422-SI<br><br>CLASS ACTION<br><br>**LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF DISTRIBUTION PLAN, AND MEMORANDUM IN SUPPORT THEREOF**<br><br>Hearing Date: November 15, 2024<br>Time: 10:00 a.m.<br>Courtroom: 1, 17th Floor<br>Judge: Hon. Susan Illston |

**NOTICE OF MOTION AND MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 15, 2024, at 10:00 a.m. PST, via Zoom, the Honorable Susan Illston presiding, the Court-appointed Lead Plaintiff, New Zealand Methodist Trust Association, will and hereby does move for an Order Approving Distribution Plan ("Class Distribution Order") that will, among other things: (i) approve the Claims Administrator Epiq Class Action & Claims Solutions, Inc.'s ("Epiq") administrative determinations accepting and rejecting claims submitted in connection with the Settlement reached in the above-captioned Action; (ii) direct the Distribution of the Net Settlement Fund to Claimants whose claims are accepted by Epiq as valid and approved by the Court ("Authorized Claimants"); (iii) direct that distribution checks state that the check must be cashed within 60 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (v) approve the recommended plan for any funds remaining after the distribution; (vi) approve Epiq's fees and expenses in connection with the administration of the Settlement; (vii) release claims related to the administration process; and (viii) authorize the destruction of Claim Forms and supporting documents at an appropriate time.

This motion is supported by the memorandum of points and authorities below, the attached Declaration of Eric Blow ("Blow Declaration" or "Blow Decl."), submitted on behalf of the Court-approved Claims Administrator, Epiq, and its exhibits, the previous filings and orders in this case, and such other materials as the Court may consider.[1]

There are only two disputed claims by Settlement Class Members requiring Court review. Lead Counsel has reviewed the disputed claims and agrees with Epiq's determinations to partially accept one disputed claim and reject the second disputed claim. The Blow Declaration explains the basis for Epiq's determinations. Further, pursuant to the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of claims, including determinations as to the validity of claims or the distribution of the Net Settlement Fund. *See*

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Blow Declaration or the Amended Stipulation and Agreement of Global Settlement dated as of June 22, 2023 (ECF No. 266-1) ("Stipulation").

-i-

Stipulation ¶ 4.4; *see also* Notice at p. 12. As such, the motion is ripe for determination and Lead Counsel respectfully submits that a hearing on this motion is not required.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should enter the proposed Class Distribution Order, which will, among other things, approve the Claims Administrator's administrative determinations accepting and rejecting claims submitted in connection with the Settlement, direct the distribution of the Net Settlement Fund to Authorized Claimants, approve the recommended plan for any funds remaining after the distribution, and approve the Claims Administrator's fees and expenses.

-ii-

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      BACKGROUND

On June 1, 2023, Lead Plaintiff agreed to settle the Action in exchange for a cash payment of $75,500,000.00 for the benefit of the Settlement Class, which was deposited into an interest-earning escrow account for the benefit of the Settlement Class. The Settlement produced a favorable result for the Settlement Class by providing a substantial, certain, and immediate recovery while avoiding the significant risks of continued litigation, including the risk that the Settlement Class could recover less than the Settlement amount—or nothing at all—after years of additional litigation, appeals, and delay. The deadline for submission of claims to participate in the Settlement was December 30, 2023.

On January 16, 2024, the Court entered the Order granting Lead Plaintiff's Motion for Final Approval of Settlement (ECF No. 277) approving the Settlement, as well as an Order approving the Plan of Allocation for the Net Settlement Fund (ECF No. 278). The Settlement's "Effective Date" has now occurred, and Epiq has processed all claims. Stipulation, ¶¶ 4.14, 11.1. Accordingly, the Net Settlement Fund may now be distributed to Settlement Class Members whose claims are eligible for payment under the Plan of Allocation ("Authorized Claimants"). In accordance with paragraph 4.14 of the Stipulation, Lead Plaintiff respectfully requests that the Court enter the proposed Class Distribution Order and approve the Distribution Plan.

### II.      CLAIMS ADMINISTRATION

In accordance with the Court's Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement, For Issuance of Notice to the Class, and For Scheduling of Fairness Hearing (ECF No. 268) ("Preliminary Approval Order"), Epiq mailed the Notice of Pendency and Proposed Settlement of Class Action (the "Settlement Notice"), as well as the Proof of Claim and Release Form (the "Claim Form") (collectively, the Settlement Notice and Claim Form are referred to as the "Settlement Notice Packet") to potential Settlement Class Members, brokers, and other nominees. ECF No. 272-5, ¶¶ 3-12. Epiq has disseminated 69,864 Settlement Notice Packets to potential Settlement Class Members, brokers, and nominees. Blow Decl. ¶ 5. The

-1-

Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than December 30, 2023. *Id*. ¶ 6.

As set forth in the Blow Declaration, through October 15, 2024, Epiq received and processed 33,702 claims. *Id*. All claims received through October 15, 2024, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice, and Epiq has worked with Claimants to help them perfect their claims. *See id*. ¶¶ 6-25. Many of the claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id*. ¶¶ 18-25.

If Epiq determined a claim to be defective or ineligible, Epiq sent a letter (if the Claimant or filer filed a paper or online claim) or an email (if the Claimant or filer filed an electronic claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20-25. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 21, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Blow Declaration.

Of the 33,702 claims that are the subject of this motion, Epiq has determined that 10,254 claims are acceptable in whole, and that 23,448 claims should be rejected because they are ineligible, wholly deficient, or have no Recognized Loss Amount when calculated in accordance with the Court-approved Plan of Allocation. *Id*. ¶¶ 36-42. Lead Plaintiff respectfully requests that the Court approve Epiq's administrative determinations accepting and rejecting claims as set forth in the Blow Declaration. *See* Blow Decl. Ex. E.

## A.    Two Disputed Claims

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. Blow Decl. ¶¶ 26-27. Consistent with paragraph 4.9 of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id*. ¶ 26, and Exs. A and B.

With respect to the fully processed claims, Epiq received six (6) requests for Court review of its administrative determinations. To resolve these disputes without necessitating the Court's intervention, Epiq attempted to contact the Claimants requesting Court review and attempted to answer all questions, to explain Epiq's administrative determination of the Claim's status, and to facilitate the submission of missing information or documentation where applicable. *Id*. ¶ 27. As a result of these efforts, four (4) of the six (6) claims for which Court review had been requested have since either cured their deficiencies or retracted their request for Court review. *Id*.

At present, there are two (2) claimants whose request for Court review remains. Claim No. 518 (Ex. D-1 to the Blow Decl.) is recommended for partial acceptance because Epiq had to separate the original claim due to claiming both IRA and individual accounts together.  *Id*. ¶ 28. The Claimant's IRA claim is correctly processed but has no Recognized Loss Amount, while the individual claim does have Recognized Loss and is in good standing. *Id*. Claim No. 591 (Ex. D-2 to the Blow Decl.) is not recommended for acceptance because it was determined that the claim is showing no Recognized Loss based on the Plan of Allocation. *Id*. ¶ 29.  Although both Claimants did not request that Epiq submit their claims determinations for Court review, Epiq is presenting the claims out of an abundance of caution. *Id*. ¶¶ 28-29.

## B.    Late Claims and Final Cut-Off Date

The 33,702 claims received through October 15, 2024, include 10,662 claims that were postmarked or received after December 30, 2023, the Court-approved claim submission deadline. *Id*. ¶ 30. Those late claims have been fully processed, and 4,242 of them are, but for their late

submission, otherwise eligible to participate in the Settlement. *Id*. Although these 4,242 claims were late, they were received while the processing of timely claims was ongoing. *Id*. Epiq has not rejected any claim solely based on its late submission, and Epiq believes no delay has resulted from the provisional acceptance of these late but otherwise eligible claims. *Id*. Class Counsel has discretion to accept claims received after the claim submission deadline. *See* Preliminary Approval Order ¶ 20(b). Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other claims may be accepted. Accordingly, Lead Plaintiff respectfully requests that the Court order that any late claims received after July 30, 2024  shall not be eligible for payment *Id.* ¶ 31.

### III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, Epiq, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, and receiving and processing claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Blow Decl. ¶¶ 2, 43. Epiq's fees and expenses for its work performed are $453,198.71 which includes an estimate to complete the initial distribution. *Id*. ¶ 43. Should the estimate of fees and expenses to conduct the Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *Id*. ¶ 50. While the total amount sought by Epiq for Notice and Administration Costs of $453.198.71 is greater than the estimate originally provided by Epiq in June 2023, that estimate was based on the assumption that Epiq would mail 73,000 Settlement Notice Packets and receive 18,250 claims. Blow Decl. ¶ 45. Epiq ultimately received and processed 33,702 claims (roughly 1.84x the amount originally estimated). *Id.*  In addition, Epiq's initial estimate assumed that it would receive 30 files.

-4-

*Id*. ¶ 47.  However, Epiq received over five times as many files, 164 files, with approximately 1,740,000 transactions. *Id.* As a result, Epiq's costs are higher than initially projected, which is reasonable given that Epiq processed more claims as initially estimated. Accordingly, Lead Counsel respectfully requests, on behalf of Lead Plaintiff, that the Court approve payment of Epiq's fees and expenses. *See* Blow Decl., Ex. F.

In addition, the Notice advised banks, trustees, brokerage firms, or other nominees that they could obtain "reimbursement for reasonable costs" incurred in forwarding Settlement Notice Packets upon submission of appropriate documentation to Epiq. Blow Decl. ¶ 51. Epiq has received invoices from nominees in the total of $16,769.60. *Id.*  These costs are included in Epiq's invoices to Lead Counsel as Epiq has covered these costs. *Id.*  Lead Counsel therefore, on behalf of Lead Plaintiff, respectfully requests that the Court approve payment of the nominee's invoices.

## IV.   DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.   Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute 100% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the "Distribution"). *See* Blow Decl. ¶ 53(a). In the Distribution, Epiq will first determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund in accordance with the Plan of Allocation. *Id*. ¶ 53(a)(i). Epiq will eliminate from the Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id*. ¶ 53(a)(ii). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more pursuant to the Plan of Allocation. *Id*. ¶ 53(a)(iii).

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiff proposes that all distribution checks bear the notation, "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED WITHIN 60 DAYS OF ISSUE DATE." *Id*. ¶53(a)(iv). Authorized Claimants who do not cash their checks within the time allotted or on the conditions

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF
DISTRIBUTION PLAN AND MEMORANDUM IN SUPPORT THEREOF          Case No. 3:19-cv-03422-SI

stated in paragraph 53(a)(v) of the Blow Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *Id*. ¶ 53(a)(v).

**B.    Additional Distribution(s) of the Net Settlement Fund**

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Distribution checks, Epiq will conduct a second distribution of the Net Settlement Fund (the "Second Distribution") if Lead Counsel, in consultation with Epiq, determines that it is cost-effective to do so. *Id*. ¶ 53(b); Notice, p. 15. In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants who cashed their Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Blow Decl. ¶ 53(b). If any funds remain in the Net Settlement Fund after the Second Distribution, and if Lead Counsel, in consultation with Epiq, determines that it is cost-effective to do so, subsequent distributions will take place in an equitable and economic fashion. *Id*. ¶ 53(c)(i). Subsequently, and as set forth in the Plan of Allocation and Stipulation and if the Court so approves, the unclaimed balance will be contributed to a non-sectarian, non-profit Section 501(c)(3) organization. *Id*. Lead Plaintiff will propose such organization for Defendants' consent and for final determination by the Court. *Id.*

### V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and (ii) provide that all persons involved in any aspect of claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 4.16. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted in connection with the Settlement, or who are otherwise

-6-

involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

In this District, courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, Class Distribution Order, *Davis v. Yelp, Inc.*, No. 3:18-cv-00400 (N.D. Cal. Aug. 29, 2023), ECF No. 216 (approving substantially similar language in the order authorizing distribution of settlement proceeds); Order Granting Plaintiffs' Motion for Distribution of Class Action Settlement Funds, *Sanders v. The RealReal, Inc.*, No. 5:19-cv-07737 (N.D. Cal. June 8, 2023), ECF No. 79; Order Granting Plaintiffs' Motion for Authorization to Distribute Net Settlement Fund, *In re Dropbox, Inc. Sec. Litig.*, No. 5:19-cv-06348 (N.D. Cal. May 18, 2023), ECF No. 138; *In re Capstone Turbine Corp. Sec. Litig.*, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) (same); Order Approving Distribution Plan, *In re Splunk Inc. Sec. Litig.*, No. 4:20-cv-08600-JST (N.D. Cal. Aug. 12, 2024), ECF No. 149 (same).

## VI.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant its Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF
DISTRIBUTION PLAN AND MEMORANDUM IN SUPPORT THEREOF            Case No. 3:19-cv-03422-SI

DATED: October 15, 2024

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile:  (206) 623-0594
Email: steve@hbsslaw.com

Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

Raffi Melanson (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1 Faneuil Hall Sq., 5th Floor
Boston, MA 02109
Telephone: (708) 628-4966
Facsimile:  (708) 628-4950
raffim@hbsslaw.com

Peter A. Shaeffer (*pro hac vice*)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 North Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile:  (708) 628-4950
petersh@hbsslaw.com

*Attorneys for Lead Plaintiff*

-8-

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury under the laws of the United States that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: October 15, 2024            */s/ Steve W. Berman*
                                    Steve W. Berman

-9-